LAURA J. ROWLEY
Senior Trial Attorney
ANDREW KEIR
Trial Attorney
U.S. Department of Justice
Environment and Natural Resources Division
Environmental Enforcement Section
P.O. Box 7611, Ben Franklin Station
Washington, D.C.  20044-7611
(202) 532-5896

ALEX SILAGI
Assistant United States Attorney
District of New Jersey
United States Attorney's Office
970 Broad Street, 7th Floor
Newark, New Jersey 07102
(973) 353-6001

*Counsel for Plaintiff United States of America*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

_____

UNITED STATES OF AMERICA,       )
                                )
            Plaintiff,          )
                                )
        v.                      )        Civil Action No.  2:22-cv-7326
                                )
                                )
ALDEN LEEDS, INC., *et al.*     )
                                )
            Defendants.         )
_____ )

**THE UNITED STATES OF AMERICA'S RESPONSE
TO OCCIDENTAL CHEMICAL CORPORATION'S
<u>MOTION TO INTERVENE</u>**

# **TABLE OF CONTENTS**

BACKGROUND...............................................................................................2

   A.  The Diamond Alkali Superfund Site ...............................................2

   B.  The Allocation and Consent Decree................................................4

   C.  OxyChem's Litigation and Access to Information..........................6

ARGUMENT .................................................................................................7

   A.  The United States Agrees to Extend the Public Comment Period ....................7

   B.  The United States Does Not Oppose OxyChem's Motion to Intervene .............8

   C.  The Court Should Limit the Scope of OxyChem's Intervention..........................8

     1.  OxyChem's Apparent Plan to Seek Discovery to Challenge the Proposed Consent Decree.........................................................................9

     2.  The Court Should Impose Reasonable Conditions on OxyChem that Prohibit it from Requesting Discovery or Evidentiary Hearings ...................................11

CONCLUSION ............................................................................................17

# TABLE OF AUTHORITIES

**PAGE(S)**

## FEDERAL & STATE CASES

*Arizona v. Motorola, Inc.*,
  139 F.R.D. 141 (D. Ariz. 1991) ................................................................. 13
*Beauregard, Inc. v. Sword Servs. LLC*,
  107 F.3d 351 (5th Cir. 1997) ................................................................... 11
*Chubb Custom Ins. Co. v. Space Sys./Loral, Inc.*,
  710 F.3d 946 (9th Cir. 2013) ................................................................... 17
*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974) .................................................................... 13
*Diamond Shamrock Chems. Co. v. Aetna Cas. & Sur. Co.*,
  258 N.J. Super. 167, 609 A.2d 440 (App. Div. 1992), *certification denied by*,
  134 N.J. 481, 634 A.2d 528 (1993) ...................................................... 3, 4
*Harris v. Pernsley*,
  820 F.2d 592 (3d Cir. 1987) .................................................................... 11
*In re Cuyahoga Equip. Corp.*,
  980 F.2d 110, 119 (2d Cir. 1992) .............................................................17
*In re Tutu Water Wells CERCLA Litig.*,
  326 F.3d 201 (3d Cir. 2003) .............................................................. 12, 16
*Kelley v. Thomas Solvent Co.*,
  717 F. Supp. 507 (W.D. Mich. 1989) ...................................................... 17
*Pa. Growth All. v. Browner*,
  121 F.3d 106 (3d Cir. 1997) .............................................................. 10, 12
*Stringfellow v. Concerned Neighbors in Action*,
  480 U.S. 370 (1987) ................................................................................. 11
*United States v. Acton Corp.*,
  733 F. Supp. 869 (D.N.J. 1990) .............................................................. 13
*United States v. Albert Inv. Co.*,
  585 F.3d 1386 (10th Cir. 2009) ......................................................... 12, 14
*United States v. Andruss Fam. Tr.*,
  No. 07-6873, 2011 WL 1334391 (C.D. Cal. Apr. 7, 2011) ...................... 13
*United States v. BP Amoco Oil PLC*,
  277 F.3d 1012 (8th Cir. 2002) ................................................................. 16
*United States v. Charles George Trucking, Inc.*,
  34 F.3d 1081 (1st Cir. 1994) ............................................................. 13, 14
*United States v. City of Detroit*,
  712 F.3d 925 (6th Cir. 2013) ................................................................... 11
*United States v. Comunidades Unidas Contra la Contaminacion*,
  204 F.3d 275 (1st Cir. 2000) ................................................................... 14
*United States v. Cornell-Dubilier Elecs., Inc.*,
  No. 12-5407 (JLL), 2014 WL 4978635 (D.N.J. Oct. 3, 2014) .................. 14

*United States v. Ketchikan Pulp Co.*,
  430 F. Supp. 83 (D. Alaska 1977) ........................................................................ 16
*United States v. New Jersey*,
  No. 10-91 (KSH), 2012 WL 3265905 (D.N.J. June 12, 2012), *aff'd*,
  522 F. App'x 167 (3d Cir. 2013) ......................................................................... 14
*United States v. Rohm & Haas Co.*,
  721 F. Supp. 666 (D.N.J. 1989) .............................................................. 12, 13, 16
*United States v. S. Fla. Water Mgmt. Distr.*,
  922 F.2d 704 (11th Cir. 1991) ........................................................................... 12
*Vinson v. Wash. Gas Light Co.*,
  321 U.S. 489 (1944) ........................................................................................ 12

## FEDERAL & STATE STATUTES

42 U.S.C. § 9607(a) ............................................................................................ 1
42 U.S.C. § 9613(i) ............................................................................................ 8
42 U.S.C. § 9622(d)(2) .................................................................................... 7, 15
N.J.S.A. § 58:10-23.11 ....................................................................................... 3

## RULES

Fed. R. Civ. P. 24 ............................................................................................ 11
Fed. R. Civ. P. 24(a) .......................................................................................... 8
Fed. R. Civ. P. 24(b) .......................................................................................... 8
Fed. R. Civ. P. 24(c) .......................................................................................... 8

## REGULATIONS

28 C.F.R. § 50.7 .............................................................................................. 15
28 C.F.R. § 50.7(b) ............................................................................................ 7
87 Fed. Reg. 78711 ............................................................................................ 1
88 Fed. Reg. 2133 .......................................................................................... 1, 7

The proposed consent decree before this court is a settlement with 85 parties for $150 million, which EPA expects to use for the cleanup of the Passaic River portion of the Diamond Alkali Superfund Site. This Site has been on EPA's National Priorities List since 1984, and runs through multiple environmental justice communities. Exhibit ("Exh.") 1, Declaration of Alice Yeh, at ¶ 6. On December 16, 2022, the United States filed a complaint alleging that, under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), the named defendants are liable for costs incurred and to be incurred by the United States in cleaning up Operable Unit 2 and Operable Unit 4 of the Diamond Alkali Superfund Site ("Site"). ECF No. 1. Simultaneously, the United States lodged a proposed Consent Decree with the named defendants (the "Settling Defendants") resolving their liability as alleged in the complaint. ECF No. 2, 2-1. On December 22, 2022, the United States published notice of the lodging of the proposed consent decree in the Federal Register, opening a 45-day public comment period. 87 Fed. Reg. 78711.  On January 12, 2023, the United States published a notice in the Federal Register, extending the public comment period to March 22 for a total of 90 days. 88 Fed. Reg. 2133.

On December 23, 2022, Occidental Chemical Corporation ("OxyChem" or "OCC"),[1] a non-settling potentially responsible party ("PRP") filed a Notice of Motion to Intervene and For Extension of Time to Comment on Proposed Consent Decree. ECF No. 34. OxyChem seeks to extend the public comment period to 90

---

[1] EPA generally uses the abbreviation "OCC", but the United States will use OxyChem in this proceeding to conform to Occidental Chemical Corporation's abbreviation.

days, and seeks intervention in order to oppose the consent decree and for other unspecified purposes.

The United States responds in three parts to OxyChem's motion. First, in response, the United States has extended the public notice and comment period to 90 days. Second, the United States does not oppose OxyChem's request to intervene. Third, if the Court permits OxyChem to intervene, the Court should limit the scope of intervention to (i) filing legal briefs in response to a motion by the United States to enter the proposed Consent Decree, and (ii) filing an appeal should the Consent Decree be entered over OxyChem's objections. Such limitations are appropriate given the nature of this Consent Decree approval proceeding and CERCLA's preference for settlement and prompt funding of environmental remediation.

## BACKGROUND

### A. The Diamond Alkali Superfund Site

The Diamond Alkali Superfund Site includes the 17-mile, tidal portion of the Passaic River from Dundee Dam as it is located in or flows through Essex, Hudson, Passaic, and Bergen counties to Newark Bay. Exh. 1, Yeh Decl., at ¶ 6. Operable Unit 4 ("OU4") of the Site consists of the response action selected by EPA to address the contamination in the 17-mile tidal portion of the Passaic River (known as the Lower Passaic River), including an interim response action to address the contaminated sediments in the upper 9 miles of the Lower Passaic River. *Id.* at ¶¶ 6, 8.  Operable Unit 2 of the Site ("OU2") consists of the response action selected by

EPA to address the contamination in the lower 8.3 miles of the Lower Passaic River. *Id.* at ¶ 6.

The Diamond Alkali Company and other corporate predecessors of OxyChem operated a manufacturing facility located at 80 Lister Avenue in Newark, New Jersey (the "Lister Plant"), which produced agricultural chemicals, including, among other products, the defoliant known as "Agent Orange." A byproduct of the manufacturing processes was 2,3,7,8-TCDD (2,3,7,8-tetrachlorodibenzo-p-dioxin, or "dioxin"), which OxyChem released and disposed of from the Lister Plant into the Passaic River. *Diamond Shamrock Chems. Co. v. Aetna Cas. & Sur. Co.*, 258 N.J. Super. 167, 180, 609 A.2d 440, 446 (App. Div. 1992), *certif. denied*, 134 N.J. 481, 634 A.2d 528 (1993). A significant record of OxyChem's disposal of dioxin and other hazardous substances into the Passaic River has been developed through related litigation. This Court has found that OxyChem is the corporate successor to the Diamond Alkali Company, and thus "as a matter of law that OxyChem may be held liable for CERCLA response costs flowing from [Diamond Alkali's] operation of the Lister Plant." *Occidental Chem. Corp. v. 21st Century Fox Am., et al.*, Civil Action No. 18-11273, ECF No. 1105 at 4. The Superior Court of New Jersey has found OxyChem jointly and severally liable under New Jersey's Spill Compensation and Control Act, N.J.S.A. Section 58:10-23.11 *et seq.*, which is similar to CERCLA, for past and future cleanup costs incurred by the State of New Jersey associated with the discharges of hazardous substances, including dioxin, from the Lister Plant. *See* Exhibit (Exh.) 2 (Order). And the Superior Court, Appellate Division, confirmed

that OxyChem's insurers were not liable for cleanup costs associated with the Lister Plant because, "We are convinced from our examination of the record that Diamond intentionally and knowingly discharged hazardous pollutants with full awareness of their inevitable migration to and devastating impact upon the environment." *Diamond Shamrock Chems. Co.*, 258 N.J. Super. at 183, 609 A.2d at 447.

EPA has notified OxyChem and over 100 other parties that they are potential responsible parties ("PRPs") for OU2. Exh. 1, Yeh Decl., Paragraphs 7, 9. EPA has investigated and overseen investigations of the Site, and has selected a final remedy (i.e., cleanup) for OU2, and an interim remedy for OU4. Exh. 2, Yeh Decl., at ¶ 8. EPA has incurred unreimbursed costs in response to the release of hazardous substances at the Site, and will continue to incur costs. The estimated cost to implement the remedy for OU2 is $1.38 billion, and the estimated cost to implement the interim remedy for OU4 is $441 million. Exh. 1, Yeh Decl., at ¶ 8.

**B. The Allocation and Consent Decree**

As part of its enforcement framework, EPA hired a contractor in 2017 to perform an allocation among the private party PRPs. Exh. 1, Yeh Decl., at ¶¶ 13, 14. EPA communicated to OxyChem and other PRPs its intention to use the allocation to identify parties appropriate for a cashout settlement, and to initiate negotiations with OxyChem[2] and other major PRPs for the implementation and

---

[2] Given the extensive record developed in various related litigation regarding OxyChem's disposal of dioxin from the Lister Plant, and based on EPA's human health and ecological risk assessments, which concluded that dioxins/furans are responsible for 80-90% of the risks associated with OU2, EPA identified OxyChem as a major PRP.

funding of the cleanup remedy for OU2. *Id.* at ¶ 13. OxyChem provided feedback on EPA's proposal to hire a third-party to perform an allocation, and attended the meeting between EPA and PRPs regarding EPA's proposal to hire an allocator to perform an allocation for OU2. *Id.* at ¶¶ 13, 18. Initially, EPA had planned to sponsor the allocation among some, but not all, of the private party PRPs, but EPA made adjustments to its original proposal for an allocation by expanding it to include all of the private party PRPs. *Id.* at ¶ 13. While OxyChem attended the initial kick-off meeting via conference call with EPA's allocation contractor, AlterEcho, OxyChem ultimately did not participate in the allocation. *Id.* at ¶ 14. EPA's contractor then performed the allocation and issued its final Allocation Recommendation Report in December 2020. *Id.* at ¶¶ 15-24.

After a thorough review of the Allocation Recommendation Report, the United States determined it could be the basis for settlement negotiations with parties it identified as eligible for a cashout settlement, and ultimately reached the agreement in the proposed Consent Decree. Although the United States and OxyChem have had numerous discussions related to the response work needed for OU2 and OU4, at no point in time prior to or since the United States reached the proposed cashout settlement with the Settling Defendants has OxyChem offered to settle with EPA "for the *full* cost of clean-up – or for the completion of the actual work." *See Occidental Chemical Corporation's Brief in Support of Motion to Intervene and For Extension of Time to Comment on Proposed Consent Decree* ("Mot. Br.") at 11, ECF No. 34-1 (emphasis included in source).

### C. OxyChem's Litigation and Access to Information

Rather than participate in the allocation, in June 2018, OxyChem filed a civil action in this Court seeking, *inter alia*, CERCLA contribution from over one hundred PRPs, including nearly all the Settling Defendants. *See Occidental Chem. Corp. v. 21st Century Fox Am., et al.*, Civil Action No. 18-11273. In that litigation, OxyChem has engaged in discovery with the Settling Defendants. The parties to that litigation have engaged in voluminous discovery; hundreds of thousands of documents have been exchanged.[3]

Further, EPA has received and responded to many Freedom of Information Act ("FOIA") requests related to the Site. Since 2017, attorneys for OxyChem have submitted to EPA at least 18 FOIA requests. In response to FOIA requests from OxyChem and others, EPA has released more than 23,000 Site-related documents, totaling over 400,000 pages since 2013 when EPA began posting FOIA documents to a publicly available website called FOIAonline, https://foiaonline.gov/.[4] More Site related documents are available to the public in a digital library on the website established by EPA over 15 years ago to provide information about the investigation and cleanup of the Lower Passaic River, http://www.ourpassaic.org/. Exh. 1, Yeh Decl., ¶¶ 26, 27.

---

[3] Decision of Special Master Denying Small Parties Group's Motion to Compel Responses to Contention Interrogatories, and Granting in Part and Denying in Part Occidental Chemical Corporation's Motion for Protective Order (June 25, 2021), Case No. 2:18-cv-11273, ECF No. 1249 at 6.
[4] Prior to the advent of FOIAonline in 2013, EPA received and responded to hundreds of other FOIAs. Exh. 1, Yeh Decl., at ¶ 26.

EPA, with agreement of the parties who participated in the allocation, has made the Allocation Recommendation Report and supporting factual documents public on its website, https://sempub.epa.gov/src/collection/02/SC41378. Exh. 1, Yeh Decl., ¶ 25, and n.5.

## ARGUMENT

As noted above, the United States responds to OxyChem's motion in three parts, set forth below.

### A. The United States Agrees to Extend the Public Comment Period.

The United States initially set a 45-day public comment period in this matter, which surpassed the standard time period of 30 days set by CERCLA for cleanup agreements, and by Department of Justice policy, 42 U.S.C. § 9622(d)(2) and 28 C.F.R. § 50.7(b). *See* ECF No. 2. In response to OxyChem's request, *see* Mot. Br. at 21-22, the United States has now extended the public comment period to 90 days. 88 Fed. Reg. 2133. It is atypical to extend the comment period to such a length (OxyChem cites no cases to support its request), but the United States agrees to the 90-day public comment period in the interest of narrowing the issues before this Court.[5]

---

[5] Contrary to OxyChem's claim, the United States did not delay lodging the proposed Consent Decree until "the height of the holiday season." Mot. Br. at 21. The Settling Defendants executed the proposed Consent Decree by October 10, 2022. After that, the United States obtained its necessary internal approvals and prepared the allocation documents for publication on the EPA website. When the United States completed those processes, it promptly filed this action. Also, OxyChem notes difficulty with accessing some of the allocation documents that were made publicly available online. Mot. Br. at 21. However, EPA resolved the technical issues before the public comment period began. *See* Exh. 1, Yeh Decl., at ¶ 25.

## B. The United States Does Not Oppose OxyChem's Motion to Intervene.

OxyChem has moved to intervene as of right under Rule 24(a) of the Federal Rules of Civil Procedure and CERCLA Section 113(i), 42 U.S.C. § 9613(i), or for permissive intervention under Rule 24(b). As noted above, courts have found that OxyChem is responsible for devastating environmental harm caused by its intentional and continuous disposal of dioxin, and other hazardous substances, from the Lister Plant into the Passaic River. EPA's human health and environmental risk assessments have identified dioxin as by far the most serious of the contaminants of concern in the Passaic River. For these reasons, the United States does not oppose OxyChem's request to join this case as an intervenor, and takes no position on its assertions that it meets the requirements to intervene under these rules or Third Circuit precedent. *See, e.g.*, Mot. Br. 15-20.[6]

## C. The Court Should Limit the Scope of OxyChem's Intervention.

If the Court grants OxyChem's motion to intervene, the United States respectfully requests the Court limit the scope of OxyChem's rights as an intervenor to: (1) filing legal briefs in response to a motion by the United States to enter the proposed Consent Decree, in the event that the United States seeks entry of the

---

[6] The United States does not concede that OxyChem's proposed Complaint in Intervention, ECF No. 34-8, states a claim upon which relief can be granted. Federal Rule of Civil Procedure 24(c) requires putative intervenors to file "a pleading setting forth the claim or defense for which intervention is sought." Because OxyChem's proposed Complaint contains no causes of action, it is unclear what claims for which they seek intervention. The United States' non-opposition to OxyChem's intervention in this case should not be understood as conceding to the validity of any claims in that pleading.

Decree, and (2) the filing of an appeal should the Consent Decree be entered over OxyChem's objections. As explained below, the Court has authority to limit intervention along these lines, district courts routinely place such limits on intervenors in CERCLA settlement matters, and these reasonable conditions will promote efficient conduct of these proceedings.

    1.  <u>OxyChem's Apparent Plan to Seek Discovery to Challenge the Proposed Consent Decree</u>

    While OxyChem does not say so expressly in its Motion, it seems that OxyChem intends to intervene not only to challenge the proposed Consent Decree, but also to use this proceeding as a vehicle to seek discovery and hold evidentiary hearings. Counsel for the United States consulted with counsel for OxyChem to see if it would agree to limit the scope of intervention as proposed above, but OxyChem declined. In addition, the arguments in OxyChem's brief compel this conclusion. Beyond raising legal arguments regarding the settlement and the allocation, OxyChem previews its plan to request discovery and possibly an evidentiary hearing to support its challenges by saying that the Allocation Recommendation Report is "factually flawed" before it has thoroughly reviewed it. Mot. Br. at 6. And OxyChem suggests it could seek a *Daubert*-like hearing to confront the author of the Allocation Recommendation Report. *Id.* at 18-19. Further, in OxyChem's related contribution action before this Court, *Occidental Chem. Corp. v. 21st Century Fox Am., Inc., et al.*, Civil Action No. 18-11273 (MCA) (LDW), which is subject to a pending motion to stay discovery in light of this proposed settlement, OxyChem has been seeking discovery from many of the Settling Defendants based on the same

submissions for years, *see, e.g.*, ECF No. 2218 (summarizing proposed depositions and discovery disputes concerning documents submitted to EPA by certain Settling Defendants in this matter), ECF No. 2263 ( stating that it "expressly reserves its right to seek all submissions or communications relating to the Batson allocation process and his report, because Defendants have waived any privilege asserted as a basis to withhold such materials from discovery."). There is good reason to believe OxyChem plans to use its intervenor status in this case to launch another discovery campaign here, which would serve no purpose other than to stymie this proceeding. The Court should not grant OxyChem the ability to do so.[7]

---

[7] Indeed, OxyChem seems to believe that it can pursue, as an intervenor in this Consent Decree proceeding, the contribution and cost recovery claims it filed in *Occidental Chem. Corp. v. 21st Century Fox Am.*, Civil Action No. 18-11273 (MCA) (LDW). OxyChem's proposed Complaint in Intervention states that it "incorporates in this Petition in Intervention its current live pleading [in *Occidental Chem. Corp. v. 21st Century Fox Am.*], which seeks relief in the form of a response costs judgment and a declaratory judgment against the Defendants in this action as well as other parties to the OxyChem Response Cost Action." Proposed Compl. ¶ 7 n.2, ECF No. 34-8. It is unclear how Occidental intends to incorporate claims from that action into this lawsuit without the attendant, voluminous discovery it seeks before the special master in that action. The Court should not permit OxyChem to incorporate (or, effectively, consolidate) its discovery-laden contribution action into this matter. Nor should the Court permit the discovery battles in that action to spill over into this settlement-only matter. As explained below, the relevant law with respect to intervention provides that OxyChem is not permitted to change the nature of this lawsuit. Rather, it must address only the pending issue of whether the proposed consent decree is fair, reasonable and in the public interest, and may not enlarge that issue. *See infra* pp. 12-13; *Southwest Pa. Growth All. v. Browner*, 121 F.3d 106, 121 (3d Cir. 1997).

2. The Court Should Impose Reasonable Conditions on OxyChem that Prohibit it from Requesting Discovery or Evidentiary Hearings

The Court has broad discretion to place reasonable conditions on OxyChem's intervention. The facts and law support the Court exercising that discretion to prohibit OxyChem from being able to seek discovery or request evidentiary hearings in this settlement proceeding. OxyChem has had access to hundreds of thousands of documents pertaining to this Site and the PRPs (*see supra*, n.3), and will have ample opportunity to use its vast collection of information to voice its specific objections to the proposed Consent Decree, and make legal arguments.

The Federal Rules and case law recognize a district court's broad power to limit the rights of an intervenor.[8] The Third Circuit has emphasized this point, noting that it may be "necessary in some cases" to limit the scope of intervention, especially "given the complexity of much public law litigation[.]" *Harris v. Pernsley*, 820 F.2d 592, 599 n.11 (3d Cir. 1987). *See also Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370, 383 (1987) (Brennan, J., concurring) ("[R]estrictions on participation may also be placed on an intervenor of right and on an original party.").[9]

---

[8] The Advisory Committee Notes to Rule 24 state that "intervention of right . . . may be subject to appropriate conditions or restrictions responsive among other things to the requirements of efficient conduct of the proceedings." Fed. R. Civ. P. 24, 1966 Advisory Committee Notes.

[9] *See also Beauregard, Inc. v. Sword Servs. LLC*, 107 F.3d 351, 352-353 (5th Cir. 1997) (affirming "a firmly established principle that reasonable conditions may be imposed even upon one who intervenes as of right"); *United States v. City of Detroit*, 712 F.3d 925, 931-32 (6th Cir. 2013) ("But courts are not faced with an all-or-

The reason that courts may limit intervenors' rights is simple. The intervenor "is admitted to the proceeding as it stands[.]" *Vinson v. Wash. Gas Light Co.*, 321 U.S. 489, 498 (1944). The intervenor is not granted unlimited access to the lawsuit; its role as intervenor is limited by "the pending issues, [it] is not permitted to enlarge those issues or compel an alteration of the nature of the proceeding." *Id.* Put differently, "an intervenor may argue only the issues raised by the principal parties and may not enlarge those issues." *Southwest Pa. Growth All. v. Browner*, 121 F.3d 106, 121 (3d Cir. 1997).

The scope of OxyChem's intervenor rights thus is defined by the issues in this settlement-only proceeding. If the United States seeks entry of the proposed Consent Decree after considering all of the public comments, including those from OxyChem, the sole issue will be whether the settlement terms are "fair, reasonable, and consistent with CERCLA's goals." *In re Tutu Water Wells CERCLA Litig.*, 326 F.3d 201, 207 (3d Cir. 2003). In reviewing the settlement, as well as the public comments, responses thereto, and briefing submitted for or against a motion to enter, the Court's "core concern" will be to "ensur[e] that the decree furthers the public interest as expressed in CERCLA." *United States v. Rohm & Haas Co.*, 721 F. Supp. 666, 680 (D.N.J. 1989). As such, the nature of this proceeding is different from typical adversarial litigation: the Court "must eschew any rubber stamp

---

nothing choice between grant or denial: Rule 24 also provides for limited-in-scope intervention."); *United States v. Albert Inv. Co.*, 585 F.3d 1386, 1396 (10th Cir. 2009) (noting that intervention as of right may be subject to appropriate conditions or restrictions); *United States v. S. Fla. Water Mgmt. Distr.*, 922 F.2d 704, 710 (11th Cir. 1991) (same).

approval . . . yet, at the same time, it must stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case." *Rohm & Haas Co.*, 721 F. Supp. at 680 (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 462 (2d Cir. 1974)). "A more intrusive role would prove unduly burdensome and contravene Congressional intent by having this Court substitute its judgment for that of the statutorily appointed representatives of the public interest, EPA and the Department of Justice." *United States v. Acton Corp.*, 733 F. Supp. 869, 872 (D.N.J. 1990).

Because OxyChem's role as an intervenor must be limited by these principles, the Court should preclude OxyChem from requesting discovery or evidentiary hearings. Courts, including in this District, "routinely den[y]" requests for discovery or evidentiary hearings in CERCLA settlement matters. *United States v. Charles George Trucking, Inc.*, 34 F.3d 1081, 1085 (1st Cir. 1994) (explaining that requests for evidentiary hearings are "routinely denied—and properly so—at the consent decree stage in environmental cases"); *Rohm & Haas Co.*, 721 F. Supp. at 686 ("Courts have consistently held that lengthy evidentiary hearings are not required under CERCLA when a court is merely deciding whether a non-de minimis monetary settlement is fair, adequate and reasonable"). *See also United States v. Andruss Fam. Tr.*, No. 07-6873, 2011 WL 1334391, at *4-5 (C.D. Cal. Apr. 7, 2011) (denying intervenor's discovery requests concerning terms of proposed consent decree); *Arizona v. Motorola, Inc.*, 139 F.R.D. 141, 147-49 (D. Ariz. 1991) (denying discovery and an evidentiary hearing).

Discovery and evidentiary hearings would delay the matter and frustrate efforts to timely resolve the settlement, contrary to the specific purposes underlying CERCLA to encourage timely resolution of claims and the cleanup of Sites. *United States v. Cornell-Dubilier Elecs., Inc.*, No. 12-5407 (JLL), 2014 WL 4978635, at *1 (D.N.J. Oct. 3, 2014) (declining to hold evidentiary hearing and quoting *United States v. Charles George Trucking, Inc.*, 34 F.3d 1081, 1085 (1st Cir.1994) for proposition that "[r]equiring hearings to review the reasonableness of CERCLA consent decrees as a matter of course would frustrate the statutory objective of expeditious settlement"); *United States v. New Jersey*, No. 10-91 (KSH), 2012 WL 3265905, at *28 (D.N.J. June 12, 2012) ("[T]o the extent the [proposed intervenors] appear to suggest that they should be entitled to conduct discovery of their own, such a system would be unworkable, as it would create unmanageably wide open litigation."), *aff'd*, 522 F. App'x 167 (3d Cir. 2013).[10]

Further, placing such reasonable conditions on OxyChem's intervention rights will not prejudice OxyChem, which can provide meaningful input without discovery or hearings. OxyChem will benefit from an unusually long 90-day public comment period. It has the right to submit comments, consistent with the Federal Register notice. OxyChem has been litigating and taking discovery from the

---

[10] *See also United States v. Albert Inv. Co.*, 585 F.3d 1386, 1396 (10th Cir. 2009) (collecting cases and noting district court "has the ability to lessen any potential delay by denying discovery or by denying an evidentiary hearing"); *United States v. Comunidades Unidas Contra la Contaminacion*, 204 F.3d 275, 279 (1st Cir. 2000) (denying evidentiary hearing because "allow[ing] evidentiary hearings on the call of any party allowed to intervene would delay, complicate, and perhaps jeopardize the timely resolution of the issues").

Settling Defendants since 2018 in its CERCLA contribution suit and prior to that it was a beneficiary of extensive discovery taken by its indemnitor, Maxus Energy Corporation, of many of the Settling Defendants in the New Jersey Spill Act litigation. Since 2017, even prior to filing its suit, it has submitted 18 FOIA requests to EPA and had access to EPA's responses to other FOIA requests. It now has access to the full Allocation Recommendation Report, including detailed data reports compiling factual information for each private party PRP as well as the allocator's methodology, calculations, and analysis. EPA made publicly available on its website hundreds of thousands of pages of factual documents that the allocator reviewed and considered, and OxyChem has downloaded these materials from the EPA website. It will be able to use its extensive collection of information to mount any challenges it deems appropriate to the proposed Consent Decree during the public comment period. The United States will then, consistent with Section 122(d)(2) of CERCLA, consider the comments. Based on the comments, the United States may withdraw support for the proposed Consent Decree. 42 U.S.C. § 9622(d)(2). If the United States continues to support the proposed Consent Decree after consideration of the comments, it will file with the Court all comments, along with responses thereto, for the Court's review in considering whether to approve the proposed Consent Decree. *Id.*; 28 C.F.R. § 50.7.

If the United States moves to enter the Consent Decree after the public comment period, OxyChem will have an opportunity to challenge the proposed settlement by raising legal arguments in a brief opposing the motion to enter. As an

intervenor, it also has the right to appeal the entry of the Consent Decree over its objection. As the Third Circuit explained when affirming a district court's denial of an evidentiary hearing, the court "provided the [challenger] an opportunity to submit evidence and present arguments to challenge the proposed CERCLA consent decree." *In re Tutu Water Wells CERCLA Litig.*, 326 F.3d at 209. *See also United States v. BP Amoco Oil PLC*, 277 F.3d 1012, 1017 (8th Cir. 2002) (holding district court denial of discovery did not abuse discretion where intervenor had a "meaningful and sufficient opportunity to present arguments and submit evidence in opposition") (cited with approval in *In re Tutu Water Wells*); *United States v. Ketchikan Pulp Co.*, 430 F. Supp. 83, 85 (D. Alaska 1977) ("[O]nce intervenors have been given the opportunity to object to the decree they have had an appropriate day in court and a judgment on consent may be entered.").

Thus, the United States' request to limit the scope of intervention would promote the efficient resolution of these proceedings, while still allowing extensive participation by OxyChem.

Conversely, if OxyChem were permitted to seek discovery and evidentiary hearings and treat this as an extension of its contribution litigation, it would harm the public interest, delay EPA's enforcement and cleanup efforts, and cause the United States and the settling parties to incur additional, gratuitous costs. *See Rohm & Haas Co.*, 721 F. Supp. at 686 (noting "[o]bviously, EPA cannot comply" with CERCLA's "command to 'as promptly as possible reach a final settlement' . . . if such settlements are going to be accompanied by an evidentiary review as careful as

a trial on the merits"); *Kelley v. Thomas Solvent Co.*, 717 F. Supp. 507, 519 (W.D. Mich. 1989) (denying discovery and entering consent decree, finding "no reason to subvert the very purpose of [the] settlement agreement, which is to avoid the costs of extended litigation"). It will also have impacts beyond this matter, as parties may not see the value in entering into early settlements with the United States to avoid protracted litigation and associated transaction costs. Such a result is inconsistent with CERCLA's emphasis on swift settlements to maximize amounts available for cleanup. *See Chubb Custom Ins. Co. v. Space Sys./Loral, Inc.*, 710 F.3d 946, 971 (9th Cir. 2013); *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 119 (2d Cir. 1992) ("Congress sought through CERCLA . . . to encourage settlements that would reduce the inefficient expenditure of public funds on lengthy litigation.").

## <u>CONCLUSION</u>

For the foregoing reasons, the United States respectfully requests that the Court limit the scope of OxyChem's participation as an intervenor to: (1) filing legal briefs in response to a motion by the United States to enter the proposed Consent Decree and (2) filing an appeal should the Consent Decree be entered.

Respectfully submitted,

TODD KIM
Assistant Attorney General
Environment and Natural Resources Division

*/s/ Laura J. Rowley*
Laura J. Rowley, Senior Trial Attorney
Andrew W. Keir, Trial Attorney

17

Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611, Ben Franklin Station
Washington, DC 20044-7611
(202) 532-5896
laura.rowley@usdoj.gov


VIKAS KHANNA
First Assistant United States Attorney
District of New Jersey


Alex Silagi
Assistant United States Attorney
District of New Jersey
United States Attorney's Office
970 Broad Street, 7th Floor
Newark, New Jersey 07102
973-353-6001



OF COUNSEL:

Sarah Flanagan
Juan Fajardo
Kathryn DeLuca
Frances Zizila
Office of Regional Counsel
U.S. Environmental Protection Agency, Region 2
290 Broadway
New York, NY 10007

CERTIFICATE OF SERVICE

I certify that on January 17, 2023, I caused to be served the foregoing "The United States of America's Response to Occidental Chemical Corporation's Motion to Intervene" by email upon counsel for each defendant, as listed in the table included in the Certificate of Service for the Notice of Lodging, ECF No. 2, in addition to the service through ECF for all counsel of record.

/s/ Laura J. Rowley
LAURA J. ROWLEY
Senior Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611, Ben Franklin Station
Washington, DC 20044-7611
(202) 532-5896
laura.rowley@usdoj.gov