

September 12, 2023

<u>*Via CM/ECF*</u>
Hon. Leda Dunn Wettre, U.S.M.J.
United States District Court
For the District of New Jersey
MLK Federal Building & U.S. Courthouse
50 Walnut Street, Room 3C
Newark, NJ 07101

      Re:    *United States of America v. Alden Leeds, Inc., et al.*
               Civil Action No. 2:22-cv-07326-MCA-LDW

Dear Judge Wettre:

      The United States has asked the Court to extend by 60 days—to November 21, 2023—its deadline to notify the Court whether it intends to seek approval, modification, or withdrawal of the proposed settlement lodged with the Court at Dkt. No. 1. *See* Dkt. No. 249 (Sept. 1, 2023 Letter from U.S. Department of Justice ("DOJ")).

      If the Court is inclined to grant DOJ the extension it seeks, OxyChem seeks leave to use the extension period to raise an important threshold issue: whether, in evaluating the proposed settlement, the Court can consider the "nonbinding" allocation report prepared by David Batson, a former EPA employee now acting as EPA's private contractor. This "allocation report" is the sole basis on which EPA lodged the proposed settlement. *See* Dkt. No. 84-1 (Declaration of Alice Yeh, Environmental Engineer at EPA, Region 2 ("Yeh Decl.")) at ¶24.

      Whether the Court can review the Batson Report is a purely legal issue. It can and should be resolved now, *before* the United States makes further use of Mr. Batson's report in this court. CERCLA §122(e)(3) bars any use of the Batson Report in this proceeding: "The nonbinding preliminary allocation of responsibility shall not be admissible in evidence in any proceeding, and no court shall have jurisdiction to review any nonbinding allocation of responsibility [and it] … shall not constitute an apportionment or other statement on the divisibility of harm or causation." 42 U.S.C. §9622(e)(3)(C). Recognizing this statutory bar, EPA claims Mr. Batson did not conduct his allocation under CERCLA, but rather under the Administrative Dispute Resolution Act (ADR Act), 5 U.S.C. §571 *et seq*. *See* Yeh Decl. at ¶21. But even if it applied (and it does not), the ADR Act does not permit use of the Batson Report here. The Report does not comply with the requirements of that Act—most strikingly, because agency ADR proceedings must be "voluntary," 5 U.S.C. §572(c), and OxyChem did not "agree to such proceeding." *Id.* §572(a). OxyChem also

The Honorable Leda Dunn Wettre, U.S.M.J.
September 12, 2023
Page 2

did not consent to the disclosure of the report, *id.* §§574(a), 574(c), and its interests are without doubt "significantly affected by it," *id.* §572(b)(4).

Recently disclosed Freedom of Information Act responses by the United States in 2023 ("2023 FOIA Responses") have separately revealed that Mr. Batson was not a "neutral" under the ADR Act.[1] Mr. Batson, as discussed below, was subject to multiple, disabling, and undisclosed conflicts of interest: (i) he was not engaged as an ADR Neutral, but rather as an expert witness for the United States in a case *against* OxyChem, (ii) while acting as an expert witness *against* OxyChem, he was also tasked to "assign shares" of liability *to* OxyChem as a purported (but not an actual) neutral, (iii) concurrent with these conflicts, Mr. Batson agreed with the United States that he would—without OxyChem's knowledge—"fairly represent" OxyChem's interests in the allocation where he was assigning liability to OxyChem, and, (iv) Mr. Batson was paid for his work as expert witness for the United States against OxyChem, while acting as a purported neutral, creating financial conflicts of interest under the Ethics Reform Act and the False Claims Act.[2]

Whether any party can use the Batson Report in this proceeding is also ripe for decision. In CERCLA §113(f), Congress mandated that only a court can allocate response costs. To ensure this, in CERCLA §122(e) Congress prohibited any use in court of an agency's *nonbinding* allocation for any purpose. Contravening both, the United States, *see* Yeh Decl. at ¶24,[3] the SPG Settling Parties, *see* Dkt. No. 88 at 8-11; Dkt. No. 121-2 at 8, and Intervenors Pharmacia, *see* Dkt. No 93-1 at 9 nn. 3-4, and Nokia of America, *see* Dkt. No. 94-3 *passim*, have injected the content and conclusions of Mr. Batson's report into the record here, violating CERCLA §122(e) and using the report, improperly, to try to foreclose OxyChem's statutory right to the judicial allocation of response costs Congress mandated in CERCLA §113(f).

---

[1]  5 U.S.C. §573(a) (defining "neutral" and providing that a neutral "shall have no official, financial, or personal conflict of interest with respect to the issues in controversy, unless such interest is fully disclosed in writing to all parties and all parties agree that the neutral may serve").

[2]  When it learned of Mr. Batson's conflicts through the 2023 FOIA Responses, OxyChem wrote to the United States objecting to what they revealed about his many and disabling conflicts of interest, all of which were inherent in the structure of his newly produced engagement agreements with the United States. *See* **Ex. A** (Aug. 14, 2023 OxyChem Letter), attached without exhibits. The issues raised in OxyChem's letter may be the unspecified "contracting issues" DOJ alluded to when it requested more time to evaluate the proposed settlement. *See* Dkt. No. 249 at 2.

[3]  *See also Notice of Lodging of Proposed Consent Decree Under the Comprehensive Environmental Response, Compensation, and Liability Act*, 88 Fed. Reg. 2133, 2133 (Jan. 12, 2023) ("Based on the results of the allocation, the United States concluded that the Settling Defendants . . . are responsible for a minor share of the response costs[.]"); Dkt. No. 119-1 (United States Sur-Reply to OxyChem Motion to Intervene) at 5 ("[B]oth [Federal Register] notices state that the proposed settlement is based on an Allocation Recommendation Report[.]").

The Honorable Leda Dunn Wettre, U.S.M.J.
September 12, 2023
Page 3

    Continued use of the report in violation of CERCLA, the ADR Act, and the Federal Rules of Evidence raises important threshold legal issues. They should be resolved now—*before* the parties and the Court invest substantial time and resources to evaluate whether the substance of the proposed settlement (which rests entirely on a report the Court *cannot* consider) meets the requirements of procedural and substantive fairness. Resolving them will also conserve the parties' and the Court's resources. Any one of these issues would preclude EPA from relying on Mr. Batson's report in seeking approval of the settlement. And without the report, as Ms. Yeh's Declaration concedes, *see* Dkt. No. 84-1 at ¶24, there is no basis for the settlement at all.

    OxyChem therefore respectfully seeks leave to file a motion in limine explaining that no party may offer—and the Court cannot consider—the Batson Report or its contents because:

- CERCLA §122, 42 U.S.C. §9622(e)(3)(C), deprives the Court of jurisdiction to review the report and prohibits any party from offering it in evidence, whether to support a settlement or otherwise.

- Although CERCLA §122, 42 U.S.C. §9622(e)(3)(A), grants the President authority to conduct *nonbinding* and *inadmissible* allocations of responsibility to promote settlements, the statute does not authorize EPA to delegate that function to a private contractor, so the report is procedurally and legally improper.

- CERCLA §113(f), 42 U.S.C. §9613(f), authorizes only a district court to make a binding allocation of response costs. EPA has no authority to allocate response costs, nor can it use the Batson Report to bind any party to an agency allocation of response costs prepared by a private EPA contractor.

- No other statute and no rule of evidence permits the use of the Batson Report here.

    An agency has only the authority Congress gives it. *See La. Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 374 (1986) ("[A]n agency literally has no power to act … unless and until Congress confers power upon it."). EPA cannot avoid express limits that Congress imposed on it in CERCLA §113 and §122 by invoking broad, general language from a different statute.[4]

    Even were it available, the ADR Act affords no party the right to disclose the Batson Report or its contents to the Court in these circumstances. Use of the report in this judicial proceeding contravenes §§572(a), 572(b), 572(c), 573, 574(a), 574(b), and 574(c) of the ADR Act, all of which

---

[4] *See, e.g.*, *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012) (when "a general permission or prohibition is contradicted by a specific prohibition or permission," the "terms of the specific authorization must be complied with"); *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992) (recognizing the "commonplace of statutory construction that the specific governs the general"); *cf. West Virginia v. EPA*, ___ U.S. ___, 142 S.Ct. 2587, 2609 (2022) ("Agencies have only those powers given to them by Congress, and enabling legislation is generally not an open book to which the agency may add pages and change the plot line.").

prohibit use of an ADR report if the ADR proceeding "substantially affects" the liability of a non-party or disclosure of ADR materials is made without the consent of all parties.

More fundamentally, as the 2023 FOIA Responses show, Mr. Batson was not a "neutral" under ADR Act §573:

- Mr. Batson was first (and secretly) retained by the United States in April 2016 as its expert witness in a case *against* OxyChem that, to this day, imposes ongoing obligations on OxyChem relating to the Diamond Alkali Superfund Site.

- The United States renewed Mr. Batson's engagement as an expert witness in the case adverse to OxyChem repeatedly *throughout* Mr. Batson's alleged "neutral" allocation, each time expressly and consciously choosing *not* to retain him as an "ADR Neutral."

- Mr. Batson remained engaged as the United States' expert witness *against* OxyChem throughout his work as a "neutral" assigning liability *to* OxyChem in his allocation.

Mr. Batson multiplied his existing (and undisclosed) expert witness conflicts by agreeing with the United States (but not with OxyChem) that he (i) would "fairly" *represent OxyChem's interests* in the same allocation where he was acting as a claimed neutral to "assign shares" of liability *to* OxyChem, and (ii) would allow other PRPs participating in the allocation to review and edit his report, anonymizing their comments to obscure whether his allegedly "neutral" allocation report reflects his own work or that of OxyChem's corporate adversaries.

The same 2023 FOIA Responses reveal Mr. Batson had a separate "official, financial, and personal" conflict of interest under ADR Act §573. Mr. Batson performed significant work on the Diamond Alkali Superfund Site while employed by EPA. Under Ethics Reform Act §207(a), 18 U.S.C. §207(a), Mr. Batson was subject to a lifetime ban barring him from working on the same matter in the private sector, unless an exception applied. In theory, Mr. Batson's work as a testifying expert witness for the United States *against* OxyChem might exempt him from the lifetime ban. *See* 5 C.F.R. §2641.301(f). But alignment with the United States as an expert witness *against* OxyChem destroyed his neutrality *toward* OxyChem under the ADR Act. A further conflict arises under the False Claims Act if Mr. Batson was working as an ADR neutral but billing his time as a testifying expert witness while failing to disclose his many conflicts.[5]

---

[5] The Department of Justice Inspector General has twice admonished its Environment and Natural Resources Division, which represents the United States here, that it must ensure testifying experts and neutrals are compensated in accordance with strict rules governing contracts and the use of appropriated funds for experts. *See* U.S. Dept. of Justice Office of the Inspector General, *Audit of the Environment and Natural Resources Division's Procurement and Administration of Expert Witness Contracts*, Audit Report 20-108 (September 2020); U.S. Dept. of Justice Office of the Inspector General, *Audit of the Department of Justice's Oversight of Costs Incurred Through the Fees and Expenses of Witnesses Appropriation*, Audit Report 14-32 (September 2014).

The Honorable Leda Dunn Wettre, U.S.M.J.
September 12, 2023
Page 5

The 2023 FOIA Responses confirm the United States knew about Mr. Batson's myriad conflicts throughout the allocation process. But the United States never disclosed Mr. Batson's conflicts in writing as ADR Act §573(a) requires. Instead, the United States concealed Mr. Batson's conflicting engagement as an adverse expert witness against OxyChem, hid his agreement to "represent" OxyChem while assigning liability "to" OxyChem, and then withheld for years the evidence of his personal financial conflicts, all while representing to OxyChem—and eventually to this Court—that Mr. Batson was a "neutral" when he was not.

Use of the Batson Report in this Court is prohibited by CERCLA, the ADR Act, and the Rules of Evidence for all these reasons. Addressing its use now is essential to ensure fundamental procedural fairness. OxyChem's statutory right to a judicial allocation of responsibility by the District Court is so fundamental that the Third Circuit prohibits even a United States magistrate judge from performing this task. *See Beazer E. v. Mead Data Corp.*, 412 F.3d 429, 449 (3d Cir. 2005) (holding that allocation of response costs is a "quintessentially judicial endeavor," and overturning a magistrate judge's allocation of costs as "an abdication of the judicial function").

EPA's attempt to thwart the Court's authority to allocate costs, by usurping and outsourcing that "quintessentially judicial" function to a conflicted private contractor, injured OxyChem. This injury threatens to become irreparable if the Court permits any party to continue to use Mr. Batson's conflicted, unlawful allocation report in this proceeding.

OxyChem therefore respectfully requests that the Court grant it leave to file a prompt motion in limine seeking an order precluding any party from offering as evidence or relying on the Batson Report or its contents in any manner in this proceeding.[6] Resolving these threshold legal issues *before* the United States makes its final notification on the settlement will guide all parties as this matter moves forward, ensure the efficient use of the Court's and the parties' resources, and vindicate OxyChem's right to fundamental fairness and the judicial allocation of responsibility guaranteed to it by Congress.

Respectfully submitted,

*[signature: Kathy Patrick]*

Kathy D. Patrick

/s/ *John J. McDermott*

John J. McDermott

cc:   All counsel of record (via ECF)

---

[6] Pursuant to L. Civ. R. 16.1(f), OxyChem sought to confer with counsel for the parties regarding this request for leave. Counsel for the United States, the Small Parties Group, and Passaic Valley Sewerage Commission each declined to confer, stating their clients oppose the request for leave.