# Exhibit A



Kathy D. Patrick
Partner
kpatrick@gibbsbruns.com
713.751.5253

August 14, 2023

*Via Email*

The Honorable Todd Sunhwae Kim
Assistant Attorney General
Todd.Kim@usdoj.gov
Ms. Laura Rowley
Senior Trial Attorney
Laura.Rowley@usdoj.gov
Environment and Natural Resources Division
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530

      RE: Proposed Consent Decree in *United States v. Alden Leeds, Inc., et al.*, Civil Action No. 2:22-cv-07326-MCA-LDW in the United States District Court for the District of New Jersey, D.J. Ref. No. 90-11-3-07683/1

Dear Assistant Attorney General Kim and Ms. Rowley:

      Freedom of Information Act responses provided to Occidental Chemical Corporation ("OxyChem") in 2023 (the "2023 FOIA Responses") show that David Batson, the ostensible "neutral" the United States engaged to conduct a "third party allocation" to "assign shares" of liability to responsible parties in Operable Unit 2 ("OU2") of the Diamond Alkali Superfund Site, was not neutral as to the United States or OxyChem.

      The 2023 FOIA Responses reveal that in April 2016 the United States Environmental Protection Agency ("EPA") and United States Department of Justice ("DOJ") engaged Mr. Batson as an expert witness to advise the United States on how to settle its claims against OxyChem[1] in *United States v. Occidental Chemical Corporation and Chemical Land Holdings LLC*, a consent decree in which OxyChem has ongoing obligations to the United States. EPA's apparent decision to withhold from OxyChem the critical fact that Mr. Batson had been retained to advise the United States about its claims *against* OxyChem, while repeatedly assuring OxyChem that Mr. Batson was a neutral as to both the United States and OxyChem, is a serious matter. EPA never disclosed

---

[1] *See* Revised Work Plan for Task Order #096, Diamond Alkali-Lower Passaic River Allocation (Attachment D to Attachment G ("Diamond Alkali Superfund Site OU2 Allocation Guide") of the Diamond Alkali Superfund Site OU2 Allocation Recommendation Report, David Batson, Esq. Allocator (Dec. 28, 2020) (the "Batson Report"), made public in December 2022) at 1-3.

The Honorable Todd Sunhwae Kim
and Ms. Laura Rowley
August 14, 2023

to OxyChem that Mr. Batson was: (1) acting as an undisclosed expert witness for the United States in a matter *against* OxyChem while also (2) tasked with "ensur[ing]" OxyChem was "*fairly represented in the allocation process*" (as another newly disclosed work plan amendment has now revealed), all while also acting (3) in a proceeding where Mr. Batson's task was to "*assign shares*" *of liability to OxyChem* for the United States' benefit.

Mr. Batson's simultaneous engagement as an EPA contractor in these three, irreconcilably conflicted capacities was unlawful. EPA violated limits on its own authority when it signed contracts permitting Mr. Batson to serve as a neutral despite these conflicts, violating its authority again by demanding Mr. Batson sign contracts representing that he had no personal conflicts, when EPA knew Mr. Batson had multiple conflicts. Finally, applicable law required EPA to disclose *all* of Mr. Batson's conflicts to OxyChem in writing, but EPA did not. Instead, EPA misrepresented Mr. Batson was "neutral," misrepresented that Mr. Batson had no conflicts in communications with OxyChem about the allocation, and then withheld from its FOIA responses for years the critical documents that would have disclosed this conflict. This nondisclosure was also unlawful.

### 1. Relevant Background

On March 30, 2017, EPA announced its intention to "use the services of a *third party allocator*" to assist it in evaluating potential settlement offers to potentially responsible parties ("PRPs") in OU2 of the Diamond Alkali Superfund Site.[2] *See* Ex. A (3/30/2017 Letter from E. Wilson) at 2.

After EPA announced its decision to undertake a purported allocation of liability for response costs in OU2, several parties objected to the process, including on the ground that Congress in CERCLA had forbidden EPA to conduct binding allocations of liability for response costs and instead had limited EPA's authority to conducting a nonbinding allocation of responsibility (NBAR) under CERCLA Section 122. *See* Ex. B (2/13/2018 Letter from Benjamin Moore & Co.); *see also* Ex. C (11/7/2018 Letter from OxyChem) & Ex. D (1/30/2018 Letter from Small Parties Group).

Faced with these protests, EPA changed course to claim Mr. Batson was not conducting an NBAR under CERCLA but, instead, was acting as a neutral under the Administrative ADR Act. On September 11, 2018, EPA wrote again to the PRPs, now asserting it had "designed the allocation to be a confidential process covered by the Alternative Dispute Resolution Act [sic][3] (ADR), 5 U.S.C. § 574, conducted with the assistance of a *neutral allocator* and team of technical experts, i.e. AlterEcho." Ex. E (9/11/2018 Letter from S. Flanagan) at 2; *see also* Ex. F (9/18/2017

---

[2] For ease of reading, unless otherwise indicated, all emphasis is added and internal citations are omitted.

[3] The statute EPA cited, 5 U.S.C. §§ 571 et seq., codifies "the Administrative Dispute Resolution Act of 1996," not the "Alternative Dispute Resolution Act of 1998," a different statute codified at 28 U.S.C. §§ 652 et seq. Because the Alternative Dispute Resolution Act applies only in federal courts, not administrative agencies, OxyChem assumes EPA intended to invoke the statute it cited, rather than the Act it named. As used in this letter, the term "Administrative ADR Act" refers to the statute EPA cited and invoked to conduct the Batson Allocation.

2

The Honorable Todd Sunhwae Kim
and Ms. Laura Rowley
August 14, 2023

Letter from E. Wilson) at 2 ("To perform the allocation, EPA has retained AlterEcho and its senior allocation specialist, Mr. David Batson, Esq., through the Agency's prime contract with CSRA.")[4]; *Alden Leeds* Dkt. No. 84-1 (Declaration of Alice Yeh) ("Yeh Decl.") at ¶21.[5] Mr. Batson's allocation report makes the same claim, asserting the "Allocation was conducted as an alternative dispute resolution (ADR) process pursuant to the provisions of the ADR Act of 1996, 5 USC 571, et seq., and relevant state authorities."[6]

### 1.  OxyChem's FOIA Requests Leading to the 2023 FOIA Responses

OxyChem issued two FOIA Requests to DOJ that led to the 2023 FOIA Responses.

- First, on **December 12, 2022**, based on the work plan ultimately attached to the Batson Allocation, OxyChem sought documents related to "the Department of Justice's retention in 2016 of David Batson of Techlaw… as referenced at page 2 of the Task Order titled 'Diamond Alkali-Lower Passaic River Allocation' and dated June 27, 2019 . . . and amounts paid by DOJ to Techlaw or David Batson for this retention." *See* Ex. G (1/26/2023 Letter from DOJ) at 1 (regarding FOIA No. 2023-06019). After OxyChem "agreed to first receive [DOJ's] official contracting documents," *id.*, DOJ produced 13 pages of documents on January 26, 2023. *Id.*

- Second, on **April 28, 2023**. OxyChem sought "all confidentiality agreements entered into at any time between the U.S. Department of Justice and Mr. David C. Batson, with Mr. Batson acting in any capacity, including, without limitation, Mediation Specialist, Senior ADR Specialist, Deputy Dispute Resolution Specialist, Senior Collaboration & ADR Specialist, ADR Counsel, and Expert Witness." *See* Ex. H (6/27/2023 Letter from DOJ) at 1 (regarding FOIA No. 2023-06154). DOJ responded on June 27, 2023, by producing a single document—an April 1, 2016 expert witness confidentiality agreement with Mr. Batson.

---

[4] Brian Donohue, a lawyer for the Department of Justice whom the 2023 FOIA Responses revealed had retained Mr. Batson in 2016 not as an ADR neutral—but rather as an expert witness for the United States in *Chemical Land*—was copied on all three EPA letters, raising further questions about why Mr. Batson's adverse, expert witness conflicting interest was not disclosed to all parties from the outset. *See* Ex. A (3/30/2017 Letter from E. Wilson) at 2; Ex. F (9/18/2017 Letter from E. Wilson) at 2; Ex. E (9/11/2018 Letter from S. Flanagan) at 3.

[5] The United States reiterated that claim in court. *See Alden Leeds* Dkt. No. 119-1 (United States Sur-Reply to OxyChem's Motion to Intervene) at 5 n.4 ("Contrary to OxyChem's assertions, the Allocation Recommendation Report is not a nonbinding preliminary allocation of responsibility (a.k.a. 'NBAR') as that term is used in Section 122(e)(3) of CERCLA.").

[6] Batson Report at 18.

The Honorable Todd Sunhwae Kim
and Ms. Laura Rowley
August 14, 2023

### 2. The 2023 FOIA Responses Show That Mr. Batson Could Not Have Served as a Neutral Under the Administrative ADR Act

EPA admits the Batson Allocation is the sole basis for the proposed settlement it lodged with the Court in *Alden Leeds*,[7] a settlement for which EPA solicited public comment at 88 Fed. Reg. 2133.[8] Essential to EPA's thesis that it can rely on and use the Batson Allocation is its claim that Mr. Batson was a "neutral" and "third party" allocator under the ADR Act.

The 2023 FOIA Responses show Mr. Batson was neither neutral nor a third party to the United States. Mr. Batson had disabling conflicts of interest, none of which EPA disclosed as the Administrative ADR Act mandates. The agency thus acted unlawfully by retaining Mr. Batson to serve as an alleged "neutral" to conduct the allocation.

We begin with a review of EPA's initial claims that Mr. Batson was "neutral" followed by a discussion of the new, contradictory information provided in the 2023 FOIA Responses.

#### a. EPA Repeatedly Claimed Mr. Batson Was a "Neutral" Under the Administrative ADR Act

OxyChem's 2022 and 2023 FOIA requests were not the first time it sought information about Mr. Batson's scope of work, the contracts under which EPA employed him, and his expected approach.[9] OxyChem also sought this information in 2019 and 2021. When EPA responded to OxyChem's earlier requests, it withheld key information about Mr. Batson's conflicts and represented falsely that Mr. Batson was an entirely neutral mediator/allocator as to OxyChem.

According to an "Allocator Work Plan" produced by EPA, "In 2016, the Department of Justice retained a *mediator/allocation specialist*, David Batson of TechLaw/AlterEcho, to assist in

---

[7] *See* Yeh Decl. at ¶21; *see also Alden Leeds* Dkt. No. 119-1 (United States Sur-Reply to OxyChem Motion to Intervene) at 5 ("both [Federal Register] notices state that the proposed settlement is based on an Allocation Recommendation Report").

[8] *See Notice of Lodging of Proposed Consent Decree Under the Comprehensive Environmental Response, Compensation, and Liability Act*, 88 Fed. Reg. 2133, 2133 (Jan. 12, 2023) ("Fed. Register Notice") (soliciting public comments and stating, "*Based on the results of the allocation*, the United States concluded that the Settling Defendants, individually and collectively, are responsible for a minor share of the response costs . . . .").

[9] *See, e.g.,* Ex. I (Confirmation of 7/26/2019 FOIA Request by OxyChem (EPA-R2-2019-007617)) (asking for "[a]ny amendments, changes, or revisions to the Revised Work Plan attached to this request"); Ex. J (Confirmation of 12/5/2019 FOIA Request by OxyChem (EPA-R2-2020-001533)) ("All documents and communications shared between EPA and any representative of TechLaw/AlterEcho concerning additional revisions to the Revised Work Plan for Contract # EP-W-14-020 as revised on May 31, 2019 . . . ."); Ex. K (Confirmation of 5/27/2021 Modified FOIA Request by OxyChem (EPA-R2-2021-002471, originally submitted 2/5/2021)) (seeking *inter alia* "[a]ll documents and communications shared between EPA and any representative of ERG and/or AlterEcho concerning the Final Allocation Recommendation Report or any drafts thereof").

The Honorable Todd Sunhwae Kim
and Ms. Laura Rowley
August 14, 2023

settlement analysis."[10] That work plan represented that, "Based on our review and understanding of the legal requirements of this work, CSRA certifies that no real, apparent, or potential organizational *or individual conflict of interest exists with this assignment*, based on previous or ongoing work or other potential conflicts." Ex. L (Task Order 96) at 20, § 8.0. The period for performance under that task order, by its terms, ran "through June 15, 2019." *Id.* at 21, § 11.0.

In each revised work plan, EPA reiterated the same claims that Mr. Batson was a "mediation/allocation specialist" and had *no* conflicts of interest.[11] A "revised" work plan shows that Mr. Batson's "allocation" work plan was first submitted on June 30, 2017, revised in March 2018, and submitted again on May 31, 2019, without any change to the representation that Mr. Batson had no conflicts of interest.[12] And then again, on September 3, 2019, EPA submitted a work plan which asserted Mr. Batson would approach the allocation according "to the established norms and ethical standards of ADR professionals."[13] Another version of the task order from around the same time period, which certain settling defendants filed with the Court, made the same representations; namely, that Mr. Batson was a neutral allocator, would conform to the ethics of ADR Professionals, and had no individual conflict of interest as to the assignment.[14]

Finally, on July 28, 2020, EPA modified the Task Order "to improve the managerial oversight of the project schedule," again describing Mr. Batson's task as to "*provide neutral, unbiased support for development of an allocation for potentially responsible parties (PRPs) at the Diamond Alkali Superfund Site in New Jersey*. . . . This Task Order continues the allocation work started under Contract EP-W-14-020, Task Order 96."[15]

---

[10] *See* Ex. L (Public Version, Work Plan EPA Conflict Prevention and Resolution Services Contract, Contract #EP-W-14-020 Work Plan for Task Order #096 Diamond Alkali-Lower Passaic River Allocation) ("Task Order 96") at 3. The Task Order reinforced the representation that Mr. Batson was and would be neutral by ostensibly mandating that he and his team "will also *not take a stand on the merits of substantive items under discussion*, including but not limited to, any substantive issues raised by OU2 PRPs," would "approach this task in accordance with the basic terms of the contract and *according to the established norms and ethical standards of ADR professionals*," and that the "work pursuant to the Task Order will be maintained as confidential by the ADR professional pursuant to the provisions of the ADR Act of 1996 (Public Law 104-320; 5 U.S.C. 571 et al.) and applicable federal, state and judicial requirements." *Id.* at 4-5. These documents were retrieved online in response to FOIA Request EPA-R2-2018-004579, which OxyChem did not submit, *see* https://foiaonline.gov/foiaonline/action/public/search/quickSearch.

[11] *See, e.g.*, Ex. M (Task Order 96, Rev. May 31, 2019) at 3-5 (regarding neutrality and requirement to conform to the norms of the Administrative ADR Act and alternative dispute resolution professionals).

[12] *See* Ex. M (Revised Work Plan, submitted May 31, 2019) at 1.

[13] *See* Ex. N (Redacted 9/20/2019 ERG "Revised Work Plan and Pricing Estimate for Task Order Request #013, Diamond Alkali-Lower Passaic River Allocation," originally submitted September 3, 2019) at 10.

[14] *See* Dkt. No. 370-5, filed October 24, 2018, in *Occidental Chemical Company v. 21st Century Fox et al.*, Case No. 2:18-cv-11273 in the United States District Court for the District of New Jersey, at 4-5 and Section 8.0 (July 23, 2019 Revised Work Plan for Task Order #96 making the same representations that Mr. Batson was acting as a neutral, would conform to the ethics of ADR professionals, and had no personal conflicts of interest).

[15] *See* Ex. O (7/28/2020 EPA memorandum and request for task order modification) at 1.

5

The Honorable Todd Sunhwae Kim
and Ms. Laura Rowley
August 14, 2023

### b. In 2023, EPA Provided FOIA Responses Revealing That Mr. Batson Had Multiple, Disabling Conflicts of Interest in the *Chemical Land* Case Where He Was Retained as an Expert Witness and as to the Allocation

In the 2023 FOIA Responses, EPA produced for the first time previously withheld documents from the 2016-2020 period when Mr. Batson was purportedly acting as a neutral allocator. These newly-produced documents reveal that EPA and DOJ did *not* engage Mr. Batson in 2016 as an ADR neutral, as EPA's letters to PRPs and the Task Order 96 work plans claimed.

Instead, beginning on April 1, 2016, and continuing at all times pertinent to his "allocation," Mr. Batson was retained by DOJ and EPA to serve as an "expert witness" for the United States in a matter adverse to OxyChem.

In June of 2023, EPA's supplemental FOIA response included a confidentiality agreement in which Mr. Batson agreed to serve as an "expert witness" for the DOJ in DJ# 90-11-3-0768311.[16] The relevant excerpt from this document is below:

**Confidentiality Agreement**
In consideration of potential employment by the U.S. Department of Justice ("DOJ") as an expert witness (the term "expert witness" shall also include litigative consultants), the expert hereby agrees to the following:

Signature of Expert Witness/Employee: [signature]    Date: 4/1/16
Printed Name of Expert Witness/Employee: David C. Batson
Company Name: Alter Echo
Case Name: Passaic River
DJ#: 90-11-3-07683/1

ees ver 8Mar2005

A related document, produced by EPA for the first time in a January 2023 FOIA response, confirms that the DOJ engaged Mr. Batson in April 2016 *not* as a neutral, but instead as an "expert witness" for the United States, contains the same DJ File number and indicates the following case name: *United States v. Chemical Land Holdings, LLC*, a case filed by the United States *against* OxyChem. *See* Ex. G (1/26/2023 Letter from DOJ regarding FOIA No. 2023-06019) at 3 (4/12/2016 Contract/Purchase Order, attached to letter), excerpted below:

---

[16] *See* Ex. H (6/27/2023 Letter from DOJ regarding FOIA No. 2023-06154) at 3 (2016 D. Batson Confidentiality Agreement, attached to letter).

6

The Honorable Todd Sunhwae Kim
and Ms. Laura Rowley
August 14, 2023

**Attachment to Exhibit G: United States' Engagement of David Batson To Provide "Expert Testimony on Behalf of U.S." in "U.S. v. Chemical Land Holdings"**



DOJ's reference to *Chemical Land Holdings* fails to mention that the lead defendant in "*United States v. Chemical Land Holdings*" is OxyChem:[17]

<hr />

[17] Ex. P, C.A. No. 89-5025, *United States v. Occidental Chem. Corp., Chemical Land Holdings, Inc.* (Complaint of the United States against OxyChem and related Consent Decree). Though *Chemical Land* is closed on the court docket, the consent decree imposes continuing performance obligations on OxyChem over which the Court retains continuing jurisdiction. *See id.* Art. XXXIV at pg. 79 ("Continuing Jurisdiction. This Court retains jurisdiction over both the subject matter of this Consent Decree and over all Parties for the duration of the performance of the terms and provisions of this Consent Decree for the purposes of issuing such further orders or directions as may be necessary or appropriate to construe or modify the terms of this Decree, or to effectuate compliance with its terms, to the extent allowed by law.").

7

The Honorable Todd Sunhwae Kim
and Ms. Laura Rowley
August 14, 2023

As shown by the caption, when EPA and DOJ retained Mr. Batson in 2016 as an expert witness in the *Chemical Land* case to "assist in settlement analysis" of the United States' claims, both agencies knew the government's claims (and its interests) in that case *were adverse to OxyChem*. The United States *sued* OxyChem in *Chemical Land*, Ex. P, asserting OxyChem was liable to the United States under CERCLA Sections 106 and 107 and was obliged to perform response work at the Diamond Alkali Superfund Site—the same site now at issue in the pending consent decree in *Alden Leeds*.

These documents refute any argument that Mr. Batson—retained in 2016 as an expert witness for the United States in *Chemical Land*—was "neutral" on the question of OxyChem's liability for response costs in the Diamond Alkali Superfund Site. Indeed, the judgment in the *Chemical Land* case imposes significant and *ongoing* remedial and monitoring responsibilities on OxyChem, *see id*. at Paragraph D (providing that OCC would contract to perform the work required by the decree); *see also id.* Paragraph V, B, 1 ("OCC shall design, implement, and complete the Work in accordance with the provisions of the National Contingency Plan…"),[18] obligations that remain in effect, even after the initial remedial construction was completed. *See id.* ¶12 (requiring OxyChem to "Implement suitable monitoring, contingency, operation and maintenance, …during the Remedial Construction *and after completion of the Remedial Construction*.").

In sum, in 2016, the United States engaged Mr. Batson as an expert witness in a matter involving the Diamond Alkali Superfund Site in which the interests of the United States are, and remain, directly *adverse to OxyChem.* It continued to engage him in the same capacity throughout the "allocation" he was engaged to conduct. Mr. Batson was in no way a "neutral" in *any matter involving the Passaic River and the Diamond Alkali Superfund Site*, or on the question of OxyChem's alleged liability.

### c. The DJ File Number Used by DOJ for Mr. Batson's Engagement Links Mr. Batson's Work as an Expert Witness to His Work as a Purported "Neutral" Allocator

DOJ used the same DJ File number on the form engaging Mr. Batson as an expert witness against OxyChem in the *Chemical Land* matter that it used for the allocation engagement and the public comment on the proposed settlement in *Alden Leeds*. In other words, in the exact same file, Mr. Batson was retained as an expert witness for the United States in a case *against* OxyChem and purported to perform work as a neutral to assign a share of liability *to* OxyChem in the allocation that is the sole support for the settlement EPA submitted for public comment in *Alden Leeds*. It would be disqualifying for Mr. Batson to work as a neutral in any matter *related to* one in which he had served as an expert witness for the United States. Here, his conflicted work was performed in the *exact same DJ File number*.

---

[18] Section III, B provides that "CLH [Chemical Land Holdings] is a party to this Consent Decree for a specific, limited purpose. CLH shall allow access to the Site as provided …and shall abide by the agreements on conveyance and use of this property."

8

The Honorable Todd Sunhwae Kim
and Ms. Laura Rowley
August 14, 2023

Specifically, the same DJ File No. 90-11-3-07683/1 appears in all of the following documents:

1. Mr. Batson's **April 1, 2016**, confidentiality agreement (Ex. H at 3) where he agreed to serve as an expert witness, produced in the June 2023 FOIA Response:



2. The **April 12, 2016,** DOJ document engaging Mr. Batson to serve as an expert witness to provide expert testimony on behalf of the United States *agains*t OxyChem in *Chemical Land* (Ex. G at 3), produced for the first time in the January 2023 FOIA Responses:

9

The Honorable Todd Sunhwae Kim
and Ms. Laura Rowley
August 14, 2023

3. The **July 24, 2018** renewal by DOJ of Mr. Batson's engagement as an *expert witness* against OxyChem in *Chemical Land* (Ex. G at 15), also produced for the first time in January of 2023.



10

The Honorable Todd Sunhwae Kim
and Ms. Laura Rowley
August 14, 2023

Finally, removing all doubt that Mr. Batson's conflicted engagement as an expert witness *was* in the same matter where he was performing the allegedly (but not actually) neutral allocation, the identical DJ Ref. Number appears in the Federal Register Notice inviting public comment on the settlement based on the Batson Allocation Report.[19]

> **DEPARTMENT OF JUSTICE**
>
> **Notice of Lodging of Proposed Consent Decree Under the Comprehensive Environmental Response, Compensation, and Liability Act**
>
> On December 16, 2022, the Department of Justice lodged a proposed Consent Decree with the United States District Court for the District of New Jersey in *United States* v. *Alden Leeds, Inc., et al.,* Civil Action No. 2:22–cv–07326. The proposed Consent Decree resolves the United States' claim against 85 defendants under section 107(a) of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), 42 U.S.C. 9607(a), relating to Operable Unit 2 and Operable Unit 4 of the Diamond Alkali Superfund Site ("Site") in New Jersey.
>
> On December 22, 2022, the Department of Justice published a notice in the **Federal Register** opening a public comment period on the consent decree for a period of forty-five (45) days. 87 FR 78711. By this notice, the Department of Justice is extending the public comment by an additional forty-five (45) days, through March 22, 2023. Comments should be addressed to the Assistant Attorney General, Environment and Natural Resources Division, and should refer to *United States* v. *Alden Leeds, Inc., et al.,* Civil Action No. 2:22–cv–07326, D.J. Ref. No. 90–11–3–07683/1. All comments must be submitted no later than March 22, 2023. Comments may be submitted either by email or by mail:

### d. EPA Multiplied Mr. Batson's Conflicts by Also Requiring Him, Without Disclosure to OxyChem, to "Fairly Represent" OxyChem in the Allocation

Mr. Batson's conflicts began when he was engaged as an expert involving claims by the United States *against* OxyChem while concurrently acting as a neutral to "assign shares" of liability *to* OxyChem. But they did not end there.

In a September 2019 revised work plan EPA revealed it had expanded Mr. Batson's "expert witness" engagement to include another conflicted role.[20] Now, EPA mandated—and Mr. Batson agreed—that while acting as an expert for the United States against OxyChem, he would also "fairly represent" OxyChem's interests in his work to assign liability *to* OxyChem in the allocation. The work plan excerpt reflecting this addition of yet another conflict to his work is below:

---

[19] *See* Fed. Register Notice at 2133.

[20] *See* Ex. Q (ERG Work Plan for period of "Task Order Issuance to October 30, 2020," as attached to Batson Report).

11

The Honorable Todd Sunhwae Kim
and Ms. Laura Rowley
August 14, 2023

> **ERG's Understanding of the Work**
>
> ERG's work plan reflects our team's understanding of what work has already been completed on this allocation project and what work remains to be done. As the project has evolved, some key numbers and factors have changed, such that this estimate may differ from previous projections regarding the level of effort needed to complete the tasks envisioned in the SOW. Specific factors that have evolved include:
>
> - There has been an increase in the number of facilities that must be calculated an equitable share, from 83 to 92 (+11%).
> - **Occidental (OCC) not being a participating party as had been anticipated and OCC filing a lawsuit against PAPs have substantially increased the level of effort required of the Allocation Team, which will spend additional resources to ensure that OCC is fairly represented in the allocation process, and complicates communications and other considerations regarding maintaining confidentiality.**

Mr. Batson's expanded and conflicted engagement—allegedly to now "fairly represent" OxyChem—was revealed to OxyChem when the United States lodged the proposed settlement in *Alden Leeds* and included the revised work order as an attachment to the Batson Report.[21] This conflict was never disclosed to OxyChem. And OxyChem never agreed the United States' expert against it in a continuing consent decree against it could "assign shares" of liability to it for the claims the government made in that case.

There is no doubt these matters are all linked and all tainted by Mr. Batson's multiple conflicts of interest. On July 28, 2020, EPA again expanded the scope of Mr. Batson's existing engagement in a task modification order that refers back to the same, underlying task order, Task Plan 96. *See* Ex. O (7/28/2020 EPA memorandum and request for task order modification) at 1. This agreement mandates explicitly that Mr. Batson adhere to "Alternative Dispute Resolution (ADR) Best Practices" and observe an Ethical Code of Conduct to ensure his neutrality[22]—an impossible standard given that he was concurrently serving as an expert witness for the United States in a case *against* OxyChem. The relevant ethical provisions, which EPA knew Mr. Batson could not observe given his disabling conflicts, are excerpted below.

> A. **Alternative Dispute Resolution (ADR) Best Practices:**
> The Contractor shall approach this task in accordance with terms of the basic contract and according to the established norms and ethical standards of ADR professionals. Based on EPA's evaluation of a large number of ADR cases, the Agency has determined that the following practices are significantly related to positive substantive, relational, and procedural outcomes from ADR cases. The contractor shall ensure that this direction is provided to ADR professionals providing services under this task order:

---

[21] The referenced work plan is Attachment E to the Batson Report, which was released on the same day that the proposed decree was lodged.

[22] *Id.* at 7.

12

The Honorable Todd Sunhwae Kim
and Ms. Laura Rowley
August 14, 2023

> B. Ethical Codes of Conduct:
> The Contractor shall ensure that ADR professionals serving as neutral third parties under this contract receive information about and perform in accordance with ethical codes applicable to the practice of dispute resolution professionals. Relevant examples of ethical codes include those adopted by the American Arbitration Association, American Bar Association, Association for Conflict Resolution:
> https://www.americanbar.org/groups/dispute_resolution/resources/Ethics/

e. **Mr. Batson's Work as an Expert Witness Adverse to OxyChem in *Chemical Land* Disqualified Him from Serving as a "Neutral" Under the Administrative ADR Act**

Even if the Administrative ADR Act were available to EPA as a basis for convening and relying on the Batson Allocation (under CERCLA Section 122, it is not), the 2023 FOIA Responses show EPA violated the Administrative ADR Act. EPA's actions are unlawful, "in excess of [its] statutory jurisdiction, authority or limitations," and "without observance of procedure required by law," 5 U.S.C. § 706(2)(A) and (D), and are otherwise "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.* at § 706(2)(C).

Section 573 of the Administrative ADR Act states that, "A neutral shall have no official, financial, or personal conflict of interest with respect to the issues in controversy, unless such interest is fully disclosed in writing to all parties and all parties agree that a neutral may serve."

Given Mr. Batson's conflicts of interest, which were known to EPA and DOJ at the time, it was unlawful for EPA to engage him to convene and conduct the Batson Allocation. It would also be unlawful for EPA to use it for any purpose and would additionally be arbitrary and capricious for EPA to rely in any way on the Batson Allocation, whether under the Administrative ADR Act or otherwise.

**First**, Mr. Batson was not a "neutral" under Administrative ADR Act § 573(a). The 2023 FOIA Responses show he had multiple undisclosed and disabling conflicts of interests with OxyChem. The 2023 Responses also show EPA's earlier representations to OxyChem that Mr. Batson was a "third party" and "neutral" as to OxyChem were materially false.

- EPA's letters represented to OxyChem that EPA had engaged Mr. Batson as a third party "neutral" under the Administrative ADR Act.

    o The 2023 FOIA Responses show DOJ engaged Mr. Batson as an expert witness in a continuing consent decree against OxyChem in *Chemical Land* and *not* as a neutral.

13

The Honorable Todd Sunhwae Kim
and Ms. Laura Rowley
August 14, 2023

- - Further, while the forms DOJ used to engage Mr. Batson in *Chemical Land* included an option to engage Mr. Batson as an "ADR Neutral," **DOJ affirmatively chose not to engage Mr. Batson in that capacity.**

  - **Instead, each time, when presented with the same choice, DOJ engaged Mr. Batson as an expert witness on behalf of the United States in *Chemical Land*, the pending case against OxyChem, and did not engage him as an ADR Neutral.**

- The 2023 FOIA Responses also reveal the United States engaged Mr. Batson to serve as an "expert witness" in the *Chemical Land* case *against OxyChem* beginning in 2016, *before* EPA made its 2017 announcement that it was engaging him to perform the purportedly neutral allocation at issue now in the *Alden Leeds* settlement.

- EPA continued to engage Mr. Batson as *an expert witness* throughout the period he was performing the purportedly neutral allocation. The 2023 FOIA Responses confirm Mr. Batson's "allocation work" spanned the entire period in which he was engaged by DOJ *not* as an ADR Neutral, but rather as an expert witness in a matter adverse to OxyChem, *Chemical Land.*

- EPA then provided repeated FOIA Responses to OxyChem that failed to disclose the facts about Mr. Batson's conflicts. In every FOIA Response until 2023, EPA withheld information about Mr. Batson's employment as the United States' expert in *Chemical Land*, instead producing only the documents that described him—falsely—as a "neutral" and represented that he had no personal conflicts of interest in the matter.

EPA cannot both retain Mr. Batson as an expert witness for the United States *against* OxyChem, while directing him to "assign shares" of liability *to* OxyChem as a purported "neutral." Here, EPA's actions in excess of its authority are made worse by EPA having failed to disclose the conflict to OxyChem in the FOIA responses it provided to OxyChem *for years*.

**Second**, EPA's failure to disclose in writing Mr. Batson's multiple "official, financial, and personal conflicts of interest with respect to the issues in controversy" violated Administrative ADR Act § 573(a). The repeated misrepresentations to OxyChem that Mr. Batson had *no* personal conflicts of interest in correspondence and work plans provided to OxyChem, when Mr. Batson was concurrently retained as an expert witness in *Chemical Land*, a case against OxyChem, were unlawful. Mr. Batson was engaged and repeatedly re-engaged by EPA/DOJ as an expert witness, and pointedly was *not* engaged as a neutral, all while EPA failed to disclose that information to OxyChem and asserted (falsely) that he was a neutral and had no conflict of interest.

**Third**, Mr. Batson's now-revealed concurrent service as an expert witness for the United States in a consent decree arising from the United States' claims *against* OxyChem, while purportedly allocating the liability *of* OxyChem to the United States as a purported neutral is a disqualifying conflict of interest. It violated Task Plan 96 and later work order versions, which all required Mr. Batson to be free of any personal or financial conflicts of interest. It also violated

14

The Honorable Todd Sunhwae Kim
and Ms. Laura Rowley
August 14, 2023

New Jersey Rules of Professional Conduct ("NJRPC") 1.12, governing the subsequent employment of ADR neutrals, and NJRPC 1.7, which prohibits a lawyer from accepting an engagement where "there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibility to another client...." The ethical rules in Maryland and North Carolina, where Mr. Batson is licensed to practice law, are similar. *See* Maryland Attorneys' Rules of Professional Conduct Rule 19-301.7(a)(2) (same); North Carolina Rules of Professional Conduct (prohibiting employment in a case where "the representation of one or more clients may be materially limited by the lawyer's responsibilities to another client…."). Finally, it also violated ethical rules for mediators, which EPA incorporated into Mr. Batson's contracts in Task 96, including Model Standard III.[23] *See also CEATS, Inc. v. Continental Airlines, Inc.*, 755 F.3d 1356, 1362 (Fed. Cir. 2014) ("Because parties arguably have a more intimate relationship with mediators than with judges, it is critical that potential mediators not project any reasonable hint of bias or partiality. Indeed, all mediation standards *require* the mediator to disclose any facts or circumstances that even *reasonably* create a presumption of bias.") (emphasis in original) (citing Am. Bar Ass'n Model Standards of Conduct for Mediators § III.C (2005)).

Here, Mr. Batson's conflict was even worse. He is both a lawyer bound by the ethical rules of the profession and purportedly acting as a mediator bound by the "norms" of "ADR professionals." *See* Ex. L (Task Order 96) at pp. 4-5 and Section 8.0. No rule of professional responsibility, no provision of the Administrative ADR Act, and no provision of Task Order 96 permitted Mr. Batson to secretly—and *without full disclosure or OxyChem's consent*—agree to "represent" OxyChem's interest in a supposedly neutral dispute resolution proceeding he was conducting in which OxyChem had declined to participate. There is also no *ethical* circumstance in which *a lawyer* like Mr. Batson (who undertook an obligation to *represent* OxyChem's interest) could permissibly have allowed the settling parties to dictate the information he would consider, allowed them to submit *ex parte* expert reports[24] about OxyChem (without any notice to OxyChem), or allowed those adverse parties to edit *and anonymize* comments to his report,[25] all of which Mr. Batson did—at EPA's behest.

---

[23] "A mediator shall avoid a conflict of interest or the appearance of a conflict of interest during and after a mediation. A conflict of interest can arise from involvement by a mediator with the subject matter of the dispute or from any relationship between a mediator and any mediation participant, whether past or present, personal or professional, that reasonably raises a question of the mediator's impartiality." *See also* III(C) (requiring mediator disclosure of all actual and potential conflicts known to the mediator) and III(D) (requiring withdrawal if a conflict on the part of the mediator would undermine the integrity of the mediation).

[24] A reference to an expert report authored by Robert Parette on page 4 of the "Occidental Chemical Corporation Facility Data Report" in Attachment J to the Batson Report recently led OxyChem to discover certain *Alden Leeds* settling defendants retained Dr. Parette to submit an expert report to Mr. Batson entitled, "Opinions on the Discharges of COCs from 80 Lister Avenue (Newark, NJ) into the Lower Passaic River." *See* Ex. R (8/3/2023 Letter from EPA re FOIA No. EPA-R2-2023-004728), Attachment at 1.

[25] *See* Ex. N (Sept. 20, 2019 EC Conflict Prevention and Resolution Services, Contract #68HERH19D0033 Revised Work Plan and Pricing Estimate for Task Order Request #013 Diamond Alkali Lower Passaic River Allocation) at Section 5, Task B (requiring Batson and allocation team to "solicit from PRPs participating in the allocation positions on the drafting of the recommendation report" and to record all "general comments regarding the draft allocation report, without attribution to individual OU2 PRP comments.")

15

The Honorable Todd Sunhwae Kim
and Ms. Laura Rowley
August 14, 2023

**Fourth**, EPA made OxyChem an *involuntary* party to the Batson Allocation process when it amended Mr. Batson's work plan to mandate that Mr. Batson should also "fairly represent" OxyChem's interests while purportedly acting as a neutral, while concurrently assigning liability to OxyChem, and while concurrently, and secretly, working as an expert witness in a case against OxyChem. OxyChem was not informed of these multiple conflicts in writing by EPA, as Administrative ADR Act § 573(a) requires. And OxyChem certainly did not consent to Mr. Batson's serving as a purported "neutral" despite his many undisclosed conflicts. EPA can therefore make no use of the Batson Allocation or Batson Report in any proceeding, because to do so would be unlawful under Administrative ADR Act § 574(a) and (b).

**Finally**, the 2023 FOIA Responses raise serious issues under the Ethics Reform Act. The 2023 FOIA Responses suggest EPA exceeded its authority under the Ethics Reform Act in several ways, not least by: (1) allowing a former employee to work in the private sector on a matter on which he worked while employed by EPA; (2) engaging him as an "expert witness" in that matter, in an apparent attempt to avoid the lifetime ban imposed by 18 U.S.C. § 207(a); and (3) portraying him to affected parties like OxyChem as a purported "neutral" in the same matter (thus rendering him ineligible to serve as an expert witness within the meaning of 5 C.F.R. § 2641.301(f)). The government also appears to have allowed Mr. Batson to do this while billing Mr. Batson's work to the taxpayers *not* as a neutral but rather as an expert witness.

Section 207 of the Ethics in Government Act imposes a lifetime ban on former federal employees, prohibiting them from profiting in the private sector on work they performed for the government.[26] Although working as an "expert witness" *for the United States* is an arguable exception to this ban, *see* 5 C.F.R. § 2641.301(f), as set forth in the prior section, *acting* as an expert witness for the United States *against* OxyChem, while allocating shares of liability *to* OxyChem as a purported "neutral" created another problem. If Mr. Batson was an expert witness *for* the United States, then he was not a neutral under the Administrative ADR Act; conversely, if he was a neutral, then he was not acting as an expert witness aligned with the United States.

While it appears EPA continues to withhold critical documents,[27] the limited information that has been disclosed raises serious questions about whether it was lawful for Mr. Batson to serve as a contractor to both DOJ and EPA in these circumstances. Put directly, if Mr. Batson was working as a purported neutral, but the government allowed him to bill his time as an "expert

---

[26] There is no dispute that Mr. Batson worked extensively on the Diamond Alkali Superfund Site while employed at EPA.

[27] EPA's 2023 FOIA Responses are limited. EPA's responses, for example, do not include any analysis of Ethics Reform Act requirements for either Mr. Batson or EPA itself. OxyChem is aware that a public interest group has filed a complaint with EPA's Inspector General complaining about a different aspect of Mr. Batson's obligations under the Ethics Reform Act; namely, EPA's decision to contract with him on a matter in which he worked while employed at the government. *See* Ellie Borst, *Watchdog group dings ex-EPA official in N.J. Superfund cleanup* (Apr. 4, 2023), https://subscriber.politicopro.com/article/eenews/2023/04/04/watchdog-group-dings-ex-epa-official-in-n-j-superfund-cleanup-00090382 (discussing Apr. 3, 2023 letter from Protect the Public's Trust, re: "Request for Investigation into Potential Violation by David Batson of the Lifetime Ethics Ban (18 U.S.C. § 207).").

The Honorable Todd Sunhwae Kim
and Ms. Laura Rowley
August 14, 2023

witness" to avoid what would otherwise have been a lifetime ban on his employment under the Ethics Reform Act, then that is a serious matter. Equally serious is the government's failure to disclose to OxyChem the highly-material fact that Mr. Batson had been engaged *not* as a neutral but rather as an *expert witness* for the United States against OxyChem in the *Chemical Land* case. Both facts create serious conflict issues for Mr. Batson and EPA as it pertains to the Batson Allocation.

Government contractors can face significant consequences if they are found to have violated the Ethics Reform Act's lifetime ban or the post-employment conflict of interest rules that bind them. *See, e.g.*, 18 U.S.C. § 207(a)(1). Submitting invoices to the United States that inaccurately describe work performed, while disguising or concealing a conflict of interest that burdens that work, may also raise issues under the False Claims Act. 31 U.S.C. §§ 3729-3733; *see also Universal Health Svcs v. United States*, 579 U.S. 176, 186-87 (2016) (applying False Claims Act to hold, "When . . . a defendant makes representations in submitting a claim but omits its violations of statutory, regulatory, or contractual requirements, those omissions can be a basis for liability if they render the defendant's representations misleading with respect to the goods or services provided.").

The information in the 2023 FOIA Responses reveals that the Batson Allocation was a fundamentally flawed, highly-conflicted proceeding. To proceed with the settlement lodged in *Alden Leeds*, when the sole basis for it is the profoundly conflicted Batson Allocation, would be unlawful not only for the reasons OxyChem has already outlined in its comments on that proposed settlement, but also because EPA's reliance on an allocation performed under serious conflicts of interest makes the settlement procedurally unfair and a violation of due process. *See, e.g.*, *In re Tutu Water Wells CERCLA Litig.*, 326 F.3d 201, 207 (3d Cir. 2003) (court must review proposed CERCLA consent decree for "procedural and substantive fairness"). The fact that Mr. Batson clearly was not neutral eliminates one of the key safeguards that courts regularly rely on when finding a consent decree procedurally fair. *See, e.g.*, *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, No. MDL 2672 CRB (JSC), 2017 WL 2214655, at *4 (N.D. Cal. May 17, 2017) (settlement master); *Heim v. Heim*, No. 5:10-CV-03816-EJD, 2014 WL 1340063, at *6 (N.D. Cal. Apr. 2, 2014) ("neutral mediator"); *United States v. Schlumberger Tech. Corp.*, No. 11-CV-399-JPG, 2014 WL 1304233, at *2 (S.D. Ill. Apr. 1, 2014) ("neutral third party").

Given Mr. Batson's evident conflicts of interest, his allocation—which assigned the vast majority of potential liability to OxyChem, the party as to whom Mr. Batson was adverse and conflicted—cannot be remotely described as procedurally fair. Nor is it consistent with CERCLA's policies, which favor settlement only on the understanding that settlements will be reached in a manner that is fair to all the affected parties rather than through a conflicted process. Nor is it consistent with the basic constitutional guarantee of due process, which "demands impartiality on the part of those who function in judicial or quasi-judicial capacities." *Schweiker v. McClure*, 456 U.S. 188, 195 (1982); *see Gibson v. Berryhill*, 411 U.S. 564, 579 (1973) (recognizing that "[m]ost of the law concerning disqualification because of interest applies with equal force to . . . administrative adjudicators"). Because Mr. Batson was hired to "serve[] as both accuser and adjudicator," his allocation reflects "an unconstitutional potential for bias" and cannot be the basis for any procedurally fair and constitutionally valid settlement. *Williams v. Pennsylvania*, 579 U.S. 1, 8 (2016).

The Honorable Todd Sunhwae Kim
and Ms. Laura Rowley
August 14, 2023

For all these reasons, EPA should withdraw from the settlement in its entirety. It would be seriously unlawful for EPA to proceed with its proposed settlement in light of the grave conflicts of Mr. Batson that have come to light in EPA's delayed 2023 FOIA Responses. OxyChem further submits that EPA must include this letter in the administrative record in any proceeding related to these issues, including the pending settlement lodged with the court in *United States v. Alden Leeds, Inc., et al.*, Civil Action No. 2:22-cv-07326-MCA-LDW, in the United States District Court for the District of New Jersey ("*Alden Leeds*").

OxyChem reserves its right to demand discovery in *Alden Leeds* regarding these issues, as the matters addressed herein concern serious, previously undisclosed, and disabling conflicts of interest on Mr. Batson's part. OxyChem also reserves all other rights arising from the prejudice and injuries to OxyChem as a result of the undisclosed conflicts of interest set forth above.

Sincerely,

Kathy D. Patrick

Cc:
Ms. Erin Murphy
Mr. Harker Rhodes
Ms. Melissa Hunt
Ms. Stacy Neal

18