**PretiFlaherty**

Portland, ME
Augusta, ME
Concord, NH
Boston, MA
Washington, DC

Jeffrey D. Talbert
jtalbert@preti.com
207.791.3239

September 18, 2023

**VIA ECF**

Leda Dunn Wettre, U.S.M.J.
United States District Court
District of New Jersey
Martin Luther King Building & U.S. Courthouse
50 Walnut Street
Newark, NJ 07102

      RE:    *United States of America v. Alden Leeds, et al.*
                Civil Action No. 2:22-cv-07326 (MCA-LDW)
                Opposition to OxyChem's Motion for Leave to File Motion in Limine

Dear Magistrate Judge Wettre:

      The Small Parties Group settling defendants ("SPG Settling Defendants") join the United States in opposing OxyChem's newest effort to mire the Court and the parties in untimely and unnecessary motion practice concerning a consent decree ("CD") for which the United States has yet to seek entry.[1] The United States requested more time to evaluate the public comments on this CD because of OxyChem's conduct—filing an unprecedented volume of comments, including some 24,000 pages of material; submitting a slew of FOIA requests; and generating a series of gratuitous court filings—all intended to confuse the issues and consume limited agency and judicial resources.[2] As if to prove that very point, OxyChem now seeks leave to file a motion in limine to bar any party from relying on an Allocation Report[3] that assigns OxyChem primary responsibility for contaminating the Lower Passaic River. That motion is not only premature given that the United States has yet to seek entry of the CD but also consists of a patchwork of analytically unsound, legally unsupported, and factually unfounded arguments. The Court should deny OxyChem's request as unripe, and it should decline to consider the flawed contentions accompanying it.

---

[1] ECF No. 251; *see* ECF No. 250.

[2] *See, e.g.*, ECF Nos. 238, 240, 248 at 4-6, 249.

[3] The Allocation was performed by a team from a large, multi-disciplinary firm—AlterEcho—between 2017 and 2020. ECF No. 84-1 at ¶¶ 14-25 (describing the allocation process). EPA and the participating allocation parties agreed that the Final Allocation Recommendation Report and supporting documentation could be made public. *Id.* at ¶ 25. As used herein, the "Allocation" refers to that Final Allocation Recommendation Report and attachments.

Preti Flaherty
Beliveau & Pachios LLP
Attorneys at Law

One City Center, Portland, ME 04101  |  PO Box 9546, Portland, ME 04112-9546  |  Tel 207.791.3000  |  www.preti.com

20955848.2

1. **A Motion in Limine Filed Before the United States Moves for Entry is Premature.**

On December 22, 2022, the United States initiated this action by filing a complaint and a "Notice of Lodging of [CD] Subject to Public Comment."[4] The Notice of Lodging is just that: a notice that a settlement has been reached, which triggers an established statutory procedure, including the provision of public notice and opportunity for comment and the United States' consideration of any public comments to determine if it will seek judicial approval of the settlement.[5] The United States will then "file with the Court any comments received, as well as responses to the comments, and at that time, if appropriate, file a Motion to Enter the [CD]."[6] It is in that motion to enter that the United States would address the bases of the settlement embodied in the CD.

Because the United States has not yet moved to enter the CD, there is no pending request for relief before the Court,[7] and a motion in limine would be apropos of nothing. Notwithstanding the procedural posture of this case, OxyChem has leapt to an anticipated issue regarding the use of the Allocation, which has not yet been offered for any purpose. The motion in limine that OxyChem seeks leave to file is thus, as the United States has explained,[8] patently unripe.[9]

2. **OxyChem's Legal and Factual Assertions are Spurious.**

The SPG Settling Defendants also agree with the United States that OxyChem's motion for leave is "riddled with factual and legal errors" that "reflect[] a fundamental misunderstanding of the basis and authority for the United States' claim and proposed settlement."[10] Although OxyChem's arguments are not yet ripe for consideration, the SPG Settling Defendants briefly address a few of the contentions only to demonstrate that OxyChem's motion for leave is merely performative and not substantively accurate.

---

[4] ECF Nos. 1, 2, 2-1.

[5] 42 U.S.C.A. § 9622(i)(1)-(3).

[6] ECF No. 2 at 2.

[7] *See id.* ("[T]he United States requests that the Court take no action on the proposed [CD] at this time.").

[8] ECF No. 251.

[9] *See Texas v. United States*, 523 U.S. 296, 300 (1998) (concluding that a request for relief "is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all" (quotation marks omitted)); *see also Rivera v. Guevara*, No. 12-CV-04428, 2018 WL 11468648, at *2 (N.D. Ill. May 31, 2018) (denying as unripe a motion in limine because a ruling on the merits would be tantamount to "an advisory opinion on a set of facts that may never come to be").

[10] ECF No. 251 at 2 n.3.

First, contrary to OxyChem's fundamental mischaracterization of CERCLA, a judicial allocation of site costs is not necessary when a CERCLA settlement is reached. Far from usurping the power of the court, CERCLA's preference for settlement is intended to streamline resolution and obviate the need for a judicial allocation of costs.[11] To credit OxyChem's arguments—that EPA is not permitted to conduct or oversee a non-judicial allocation of costs or that the United States is precluded from using a non-judicial allocation of costs to meet its burden for approval of the CD—would be to resign the government and potential settling defendants to litigation at the hands of one recalcitrant, litigious non-settling party. To allow a single uncooperative party to scuttle any chance at settlement would be especially absurd given CERCLA's express preference for settlement over litigation and grant of broad settlement authority to EPA.[12]

This misunderstanding of the law is further evident in the fact that OxyChem incorrectly frames the use of the Allocation as a "threshold issue." The legal standard applicable to the Court's consideration of the CD is whether the *settlement*—not the Allocation—is fair, reasonable, and consistent with CERCLA.[13]

OxyChem next argues that whether the United States may use and whether the Court may consider the Allocation in this proceeding are "purely legal" issues. This is incorrect. The use of the Allocation is dependent on a host of factual details that are not yet developed because, again, the United States has not yet filed a motion to enter. Indeed, it is telling that after characterizing these issues as purely legal, OxyChem dedicates the next few pages of its letter to its version of the underlying facts.

OxyChem further claims that the Allocation is the "sole basis" for the settlement, misciting the Declaration of Alice Yeh (an EPA Remedial Project Manager) as authority for this statement.

---

[11] *See United States v. DiBiase*, 45 F.3d 541, 545-46 (1st Cir. 1995) ("[S]ettlements reduce excessive litigation expenses and transaction costs, thereby preserving scarce resources for CERCLA's real goal: the expeditious cleanup of hazardous waste sites.").

[12] *See* 42 U.S.C.A. §§ 9622(a), 9622(h)(1); *United States v. Cornell-Dubilier Elecs., Inc.*, No. 12-5407 (JLL), 2014 WL 4978635, at *3 (D.N.J. Oct. 3, 2014) ("[CERCLA] encourages the use of [CDs] as a means of advancing the public interest and minimizing litigation."); *United States v. Occidental Chem. Corp.*, 200 F.3d 143, 148, 150-51 (3d Cir. 1999) (characterizing EPA's settlement authority as "unqualified, express authority" conferred by CERCLA and explaining that "the usual federal policy encouraging settlements is even stronger in the CERCLA context" (quotation marks omitted)); *United States v. Gen. Elec. Co.*, 670 F.3d 377, 392 (1st Cir. 2012) ("CERCLA seeks to provide EPA with the necessary tools to achieve prompt cleanups, one of which must be the ability to foster incentives for timely settlements." (alteration and quotation marks omitted)).

[13] *See DiBiase*, 45 F.3d at 543 ("[The Court's] function is circumscribed: it must ponder the proposal only to the extent needed to satisfy itself that the settlement is reasonable, fair, and consistent with the purposes that CERCLA is intended to serve." (quotation marks omitted)); *accord In re Tutu Water Wells CERCLA Litig.*, 326 F.3d 201, 207 (3d Cir. 2003).

Preti Flaherty

Leda Dunn Wettre
September 18, 2023
Page 4

The Allocation is not the "sole basis" for the settlement, and the declaration says no such thing.[14] Rather, EPA had an ample basis on which to assess responsibility and reach a settlement independent from the Allocation, including its forty years of experience with the Diamond Alkali Superfund Site and an accompanying abundant record containing historical site information, sampling data, and expert analysis. The proposed CD is also the result of lengthy and exhaustive settlement negotiations separate and apart from the Allocation.

What the Alice Yeh Declaration does say is that "dioxins/furans are responsible for as much as 80% to 90% of the risks, relative to the risks the other contaminants of concern pose," in the Lower Passaic River.[15] Dioxin is the primary contaminant of concern, and it is well documented— independent of the Allocation—that OxyChem is by far the primary contributor of dioxin to the Lower Passaic River. Indeed, in a dispute over the same Superfund site with the State of New Jersey nearly a decade ago, the State required OxyChem and its indemnitors to bear responsibility for roughly 90% of the total environmental damages.[16] Notably, OxyChem, using the same playbook as it does today, was the very last party to settle with the State. Given this history, it should come as no surprise that the Allocation assigned OxyChem more than 99% of the responsibility for the Site. OxyChem's dissatisfaction with the results provides no basis for its premature effort to suppress them.

Finally, OxyChem's allegations of ethical missteps related to the Allocation appear to be just another of its calculated attempts to take the Court and the parties on a wasteful detour. Rather than await the result of the United States' review of the CD comments, OxyChem has inundated the federal agencies with FOIA requests and then preemptively lobbed ethical allegations against one of the people involved in the allocation. The United States will no doubt address OxyChem's allegations at the appropriate time, but it is worth pointing out that the Allocation was completed by a large, multidisciplinary firm, AlterEcho, after a detailed four-year process developed and approved by EPA.[17] OxyChem was invited to participate in that process; if it had, it could have

---

[14] Paragraph 24 of the Alice Yeh Declaration, to which OxyChem cites for this proposition, states only that the Allocation was issued and that EPA also instituted negotiations for a cashout settlement, not that the Allocation was the sole basis for the settlement: "AlterEcho issued the Allocation Report at the end of December 2020. EPA and the Department of Justice (DOJ) reviewed the Allocation Report and determined that many parties should be eligible for cashout settlements for the facilities evaluated in the allocation, while others should be responsible for funding and/or implementing the remedy." ECF No. 84-1 at ¶ 24.

[15] ECF No. 84-1 at ¶ 8.

[16] *See New Jersey Dep't of Env't. Prot. v. Occidental Chem. Corp.*, No. L9868-05, Consent Judgment (Super. Ct. N.J. Law Div. Dec. 16, 2004), available at www.nj.gov/dep/passaicdocs; New Jersey Dep't of Env't Prot., Comments Concerning Proposed Consent Judgment and Settlement Agreement at Att. A (Sept. 30, 2013) in *id.*; New Jersey Dep't of Env't Prot., Comments Concerning Proposed Consent Judgment and Settlement Agreement at Att. A (Nov. 6, 2014) in *id.*; New Jersey Dep't of Env't Prot., Brief in Support of Plaintiffs' Motion to Approve Defendants' Settlement Agreement and Third-Party Consent Judgment and Enter Orders at 33, 40 (Oct. 28, 2013) in *id.*

[17] *See supra* note 3.

PRETI FLAHERTY

Leda Dunn Wettre
September 18, 2023
Page 5

raised any arguments it had about the allocator, methodology, information submissions, or results of the Allocation. OxyChem declined to participate in the allocation, apparently preferring to advance a bevy of meritless, after-the-fact challenges to the process.

      In short, the Allocation that OxyChem so seeks to hide reflects years of careful work and fundamentally confirms what has been known for decades: OxyChem is substantially responsible for cleaning up the Lower Passaic River. For the foregoing reasons, the SPG Settling Defendants request that the Court deny OxyChem's motion for leave to file a motion in limine to exclude the Allocation and that the Court decline to consider OxyChem's premature substantive arguments. Thank you for your attention to this matter.

                              Very truly yours,

                              s/ *Jeffrey D. Talbert*
                              Jeffrey D. Talbert
                              PRETI FLAHERTY BELIVEAU & PACHIOS, LLP
                              PO Box 9546
                              One City Center
                              Portland, ME 04112-9546
                              Tel: 207-791-3000
                              Email: jtalbert@preti.com
                              *Common Counsel for SPG Settling Defendants*

cc:    All counsel of record

20955848.2