


Kathy D. Patrick
Partner
713.751.5253
kpatrick@gibbsbruns.com

October 9, 2023

<u>*Via CM/ECF*</u>
The Honorable Leda Dunn Wettre, U.S.M.J.
United States District Court
 for the District of New Jersey
MLK Building & U.S. Courthouse
50 Walnut Street, Room 4015
Newark, NJ 07102

      Re:    *United States of America v. Alden Leeds, Inc., et al.*,
              **Civil Action No. 2:22-cv-07326-MCA-LDW;**

              *Occidental Chemical Corp. v. 21st Century Fox Am., Inc., et al.*,
              **Civil Action No. 2:18-cv-11273-MCA-LDW; and**

              *Occidental Chemical Corp. v. Givaudan Fragrances Corp., et al.*,
              **Civil Action No. 2:23-cv-01699-MCA-LDW**

Dear Judge Wettre:

      Occidental Chemical Corporation ("OxyChem") responds to Passaic Valley Sewerage Commissioners' ("PVSC") September 19, 2023 letter (Dkt. 254)—joined by the SPG Defendants (Dkt. 259) and Intervenors Pharmacia LLC (Dkt. 260) and Nokia of America Corporation (Dkt. 261) (collectively, the "Letters")—all seeking an additional 60-day "adjustment to the stay" in *Occidental Chemical Corp. v. 21st Century Fox Am., Inc., et al.*, No. 2:18-cv-11273-MCA-LDW ("*21st Century Fox*") and entry of a stay in *Occidental Chemical Corp. v. Givaudan Fragrances Corp.* ("*Givaudan*"), *if* the Court grants the United States Department of Justice ("DOJ") an additional 60 days to decide whether to move forward, modify, or withdraw the proposed settlement in *United States of America v. Alden Leeds, Inc., et al.*[1] (Dkt. 249). *See* Dkt. 254 at 1.[2]

      Neither PVSC nor any other party has filed (or requested leave to file) a motion to extend the stay in *21st Century Fox* in compliance with Local Rule 16(f). Nor has any party sought leave to file supplemental briefing in *Givaudan*, where the stay motion is fully briefed. Accordingly, the

---

[1] Case No. 2:22-cv-07326-MCA-LDW. Unless otherwise noted, docket entries are in *Alden Leeds*.

[2] The Letters are filed only in *Alden Leeds*. They are not filed in either *21st Century Fox* or *Givaudan*, so no relief can be granted in those cases based on the Letters. For completeness, however, OxyChem has filed an identical copy of this response in all three cases since the Letters refer to all three.

Hon. Leda Dunn Wettre, U.S.M.J.
October 9, 2023
Page 2

Letters are not before the Court in compliance with the rules and should be disregarded.

But even if filed properly, the relief the Letters request cannot be granted. Far from "adjustments" to the schedule, the Letters seek *added* delay in *21st Century Fox*—ensuring over a year of *no* progress in a case that is already five years old. No extension can or should be granted based on the uncertain prospect that: a) the United States *might* eventually decide to seek approval of the *Alden Leeds* settlement, b) the Court *might* approve the settlement, if approval is sought, and c) in some unstated way, that *might* affect OxyChem's right to proceed against more than four dozen parties who are *not* parties to the proposed settlement. PVSC's request for a stay in *Givaudan* is equally unsupportable. *Givaudan* is a Section 107 cost recovery action. As a matter of law and binding Supreme Court precedent, the *Alden Leeds* settlement has no effect on *Givaudan*. *See United States v. Atl. Research Corp.*, 551 U.S. 128, 140 (2007) ("The settlement bar [in CERCLA §113] does not by its terms protect against cost-recovery liability under §107(a).").

1. **The Letters do not meet their burden of proof to extend the stay in *21st Century Fox* or establish the need for a stay in *Givaudan*.**

Six years have passed since EPA announced that an "allocation" process conducted by its contractor David Batson would serve as the basis of a settlement at the Passaic River. *See* **Ex. A** (9/18/17 EPA Ltr.) at 1-2. Two years passed between Mr. Batson's submission of his deeply conflicted report and the United States' announcement that it had achieved a possible settlement with certain responsible parties. Over nine months have passed since the United States lodged EPA's proposed settlement. *See* Dkt. 2 (12/16/22 Notice of Lodging). And more than six months have passed since the period for submitting public comments closed on March 22, 2023. *See* 88 Fed. Reg. 2133, 2133 (Jan. 12, 2023). But the United States still has not decided whether it will seek to approve, modify, or abandon the settlement. *See* Dkt. 251 (9/14/23 DOJ Ltr.) (additional 60 days is needed "to fully evaluate all comments and make a final decision whether the Government will move to enter the Consent Decree or take some other action").

Submissions by the United States and other parties establish that what they seek is the impermissible, immoderate, and *indefinite* delay prohibited by *Landis* and related cases. For the reasons stated below, the Letters' requests should be denied.

A. **The Court should not extend the already lengthy *21st Century Fox* stay.**

The *21st Century Fox* stay has run its course and should not be extended. OxyChem is the only party performing work on the Passaic cleanup.[3] The stay imposes prejudicial delay on its statutory right to seek contribution and cost recovery from other responsible parties in *21st Century Fox*. When the stay lifts on November 10, 2023, *see 21st Century Fox* Dkt. 2317 at 3, it will have lasted nearly eleven months from the parties' initial agreement to stay the case for just six months.[4]

---

[3] *See* Dkt. 110-4 (summary of OxyChem cooperation regarding remedy for lower 8 miles).

[4] OxyChem originally agreed to a six month stay in *21st Century Fox* to permit all parties to comment on the proposed settlement. *See* **Ex. B** (12/21/22 SPG Ltr.) at 1 ("all parties—including

OxyChem *never* agreed to an indefinite stay of claims it has been pursuing *since 2018* for recovery of the costs OxyChem alone has incurred to design the remedy in Operable Unit 2 of the Diamond Alkali Superfund Site ("DASS"). The record before the Court also affords no certainty that, at the end of the stay, there will even be a settlement, much less a settlement that can or will be approved. Accordingly, the stay in *21st Century Fox* should not be extended.

The "stay of a civil proceeding is an extraordinary remedy," *Ullman v. Express Scripts, Inc.*, No. 06-3065 (MLC), 2010 WL 421094 at *4 (D.N.J. Feb. 2, 2010) (quoting *S. Freedman & Co. v. Raab*, No. 06-3723(RBK), 2008 WL 4534069 at *2 (D.N.J. Oct. 6, 2008)), and "is immoderate and hence unlawful unless so framed in its inception that its force will be spent within reasonable limits . . . ."[5] *Landis v. N. Am. Co.*, 299 U.S. 248, 257 (1936); *see also Cheney State Coll. Faculty v. Hufstedler*, 703 F.2d 732, 735 (3d Cir. 1983) (stays must be "of moderate length, and not [] of indefinite duration which require a party to take affirmative steps for dissolution"); *Dellinger v. Mitchell*, 442 F.2d 782, 787 (D.C. Cir. 1971) (granting stay requires both "a showing of 'need' in terms of protecting the other litigation involved [and] a balanced finding that such need overrides the injury to the parties being stayed."). Applying these principles, the District of New Jersey has repeatedly declined to impose or extend stays of civil cases. *See, e.g.*, *Ford Motor Credit Co. v. Chiorazzo*, 529 F. Supp. 2d 535, 542 (D.N.J. 2008); *Gerald Chamales Corp. v. Oki Data Am.s, Inc.*, 247 F.R.D. 453, 456-57 (D.N.J. 2007); *Ullman*, 2010 WL 421094 at *1; *S. Freedman & Co.*, 2008 WL 4534069 at *4; *see also 21st Century Fox* Dkt. 2002 (3/8/22 Special Master Decision Denying Motion for Stay) at 11-17. The Letters meet none of these requirements.

First, the Letters do not show any need to "protect the other litigation involved…[and] that such need overrides the injury to the parties being stayed." *Ford Motor Credit*, 529 F. Supp. at 542. The *21st Century Fox* case is five years old. Twenty-nine depositions have been taken, hundreds of requests for admission have been answered, all parties have answered standard interrogatories, and millions of pages of documents have been produced. There are also 79 parties in *21st Century Fox* that are *not* parties to the proposed *Alden Leeds* settlement.[6] The *21st Century Fox* case will thus have to be resolved regardless of any speculative effect of the proposed settlement in *Alden Leeds*. None of the Letters even attempts to show how a stay in *21st Century Fox* is necessary to "protect" the later-filed *Alden Leeds* case. Extension of the stay in *21st Century Fox* should be denied for this reason alone. *Cf. Ullman*, 2010 WL 421094 at *5 (denying stay where court and parties had "expended considerable efforts … in fact discovery as well as dispositive motion practice").

Second, no party has shown that OxyChem will not be prejudiced by a further stay. Nor is any such showing possible. OxyChem has a statutory right to prompt resolution of its claims in

---

OxyChem—have agreed to stay all pending or scheduled discovery and discovery disputes") & *21st Century Fox* Dkt. 2246 (12/20/22 SPG Ltr.) at 1 (seeking a six-month stay). Considering the Court's amendments to that initial, agreed upon stay, *see 21st Century Fox* Dkt. 2287 (3/1/23 Order) at 4 (granting stay "pending the outcome of the United States' request for judicial approval of" proposed decree), *amended by* Dkt. 2289, the stay will have extended almost *eleven months* from the parties' initial agreement when it expires by its terms on November 10, 2023.

[5] Unless otherwise noted, all emphasis is added and citations are simplified for ease of reading.

[6] *See 21st Century Fox* Dkt. 2296 (4/26/23 OxyChem Ltr.) at 7.

*21st Century Fox*, as well as a right to timely determination of more than $100 million in counterclaims filed against it by parties who now seek to stay all progress of this case toward trial and the judicial allocation of responsibility CERCLA §113 mandates. *21st Century Fox* was filed in June of 2018. Cooperative pursuit of discovery (rather than continual efforts to thwart it for a purported settlement that—like Godot--somehow never arrives)[7] would have allowed *21st Century Fox* to be discovered, made ready for trial, and likely resolved in that time. Defendants' preference to continue to impose prejudicial delay, while pursuing an uncertain settlement EPA may never move to enter, does not meet their burden to show an extension of the stay is warranted. This is the opposite of what the Supreme Court mandated in *Landis*. *See* 299 U.S. at 257 ("We think the answer is inadequate that in the contingencies suggested the respondents will be at liberty to move to vacate the stay, and will prevail upon that motion if they can satisfy the court that its restraints are then oppressive."); *id*. ("***If a second stay is necessary . . . , the petitioners must bear the burden, when that stage shall have arrived, of making obvious the need***.").

Rather than address the factors necessary to support a stay, *see, e.g.*, *Akishev v. Kapustin*, 23 F. Supp. 3d 440, 446 (D.N.J. 2014), PVSC next alleges without support that "the United States' need for an extension in *Alden Leeds* was caused by OxyChem." Dkt. 254 at 2. The record refutes this. At each stage of the United States' settlement efforts, it has taken *years* for the United States to make progress, without any involvement by OxyChem at all. The government's settlement progress began in 2017 when EPA, in violation of its authority,[8] outsourced an allocation process to a private contractor. *See* Dkt. 84-1 (Yeh Decl.) ¶¶ 13-14, 17. OxyChem declined to participate in that process from the outset; it has played no role in it since.[9] Three years later, in December of 2020, the contractor finally issued his report to EPA, *id*. ¶ 24, again without OxyChem's knowledge or involvement. The report was followed by two years of *ex parte* settlement negotiations, ending with the proposed settlement's lodging on December 16, 2022. *See* Dkt. 2 (12/16/22 Notice of Lodging). In total, the United States spent *five years* working on the proposed decree in *Alden*

---

[7] *Cf. Pub. Citizen Health Research Group v. Chao*, 314 F.3d 143, 156 (3d Cir. 2002) (OSHA "cannot let workers suffer while it awaits the Godot of scientific certainty." (quoting *United Steelworkers of Am. v. Marshall*, 647 F.2d 1189, 1266 (D.C. Cir. 1980))); *see also Chang v. United States*, No. 02-2010 (EGS/JMF), 2011 WL 13262594 at *3 (D.D.C. 2011) ("[W]e may await indefinitely for a 'report' that never comes. It made more sense for the two tramps to wait for Godot in Samuel Beckett's play 'Waiting for Godot.'"). As the Third Circuit recognized in a different context, OxyChem has been waiting for years "with no resolution." *Lee v. Stickman*, 357 F.3d 338, 343 (3d Cir. 2004). "Under these circumstances, the burden [is] on the government [and PVSC and SPG] to demonstrate why [OxyChem] should continue to wait for Godot." *Id*. No party has met this burden.

[8] *See* Dkt. 250 (OxyChem Mtn. for Leave) at 3; *see also* **Ex. C** (2/13/18 Benjamin Moore & Co. Ltr.) at 1-2 (objecting that EPA had no authority to convene allocation process outside of a non-binding allocation for settlement purposes).

[9] When OxyChem declined to participate, EPA—without OxyChem's knowledge or consent—tasked its purported neutral, Mr. Batson, to "represent" OxyChem's interest in the allocation while simultaneously "assigning shares" of liability to OxyChem, an impermissible and disabling conflict created by EPA, not by OxyChem. *See* Dkt. 250 (OxyChem Mtn. for Leave) at 4.

Hon. Leda Dunn Wettre, U.S.M.J.
October 9, 2023
Page 5

*Leeds* before it filed it with the Court, all with *no* involvement by OxyChem at all.

The United States' uncertainty about how to respond to public comments pointing out the many and grave factual and scientific mistakes Mr. Batson made (to say nothing of his disabling conflicts), is neither OxyChem's fault nor a reason to freeze OxyChem's pursuit of its *21st Century Fox* claims for relief. Reality is non-negotiable. Here, the undisputed facts show EPA knew for *years* that its decision to outsource an executive function of the agency to a private contractor was not authorized by CERCLA's plain terms, but EPA chose to proceed anyway. *See, e.g.*, *21st Century Fox* Dkt. 1953-3 (10/12/17 OxyChem Ltr.) (noting process would be neither transparent nor fair); **Ex. D** (11/7/18 OxyChem Ltr.) at 3-4 ("By the plain language of Sections 113 and 122 of CERCLA, Congress did not give EPA the prerogative to divest Occidental of its rights to seek recovery of the costs Occidental itself has alone expended . . . .") ; Ex. C (2/13/18 Benjamin Moore & Co. Ltr.) at 1 ("There appears to be no statutory basis for the Batson allocation . . . ."). EPA also knew that (even if it applied), the Administrative ADR Act prohibited it from using a conflicted "neutral" in an agency ADR process unless all such conflicts were disclosed and agreed to in writing. 5 U.S.C. § 573(a). Ignoring this, in April 2016, EPA retained Mr. Batson *not* as an ADR neutral, but rather as an expert witness against OxyChem in a pending consent decree action, *United States v. Occidental Chemical Corp. and Chemical Land Holdings*,[10] *see* Dkt. 250-1 (8/14/23 OxyChem Ltr. re. conflicts) at 6-7, then made no written disclosure of this conflict to anyone, concealing it until late 2022, early 2023 FOIA requests by OxyChem sought information about Mr. Batson's scope of work. *See* Dkt. 250-1 (8/14/23 OxyChem Ltr.). EPA, in sum, knew about *all* these objections before it embarked on this hopelessly conflicted and unauthorized process six years ago, so EPA's purported need for additional time is in no way *OxyChem*'s fault.

Third, while EPA may not have expected Mr. Batson to bungle the job assigned to him by making huge math errors, misapplying scientific concepts, and ignoring relevant information, EPA certainly should have been prepared to respond expeditiously to comments about its authority to conduct an outsourced allocation process with a private contractor—as well as those about Mr. Batson's concealed and disabling conflicts—because EPA has known about both issues for many years. EPA also had *two years* to review and assess its conflicted contractor's report *before* it agreed to the proposed settlement. EPA has also had ten months since then, including *six months* since the comments were filed. By way of comparison, OxyChem had no advance knowledge of the report, its contents, the information Mr. Batson considered, his methodology, his scope of work, or his myriad conflicts of interest. Yet OxyChem still submitted comprehensive comments on the "almost 700,000 pages" of material the United States produced with the proposed decree within the *90-day* comment period.[11] That the United States, after receiving those comments, first asserted it needed

---

[10] C.A. No. 89-5064 (JWB) in the United States District Court for the District of New Jersey. *See* Dkt. 250-1 (8/14/23 OxyChem Ltr., without exhibits), regarding Mr. Batson's conflicts.

[11] On December 16, 2022, DOJ made public for the first time the contractor's report "and all of the supporting factual documentation"—"total[ling] almost 700,000 pages." Dkt. 84-1 ¶ 25. OxyChem submitted comments by the March 22, 2023 deadline—just over three months later.

Hon. Leda Dunn Wettre, U.S.M.J.
October 9, 2023
Page 6

six months[12] (and now claims it needs even more time to address the recent revelations that EPA knew Mr. Batson had disabling, undisclosed conflicts of interest beginning in 2016), is not OxyChem's fault.[13]

Fourth, PVSC's claim that reviewing OxyChem's comments on the settlement has "strained the United States' resources" is not credible.[14] Echoing Mr. Batson's innumeracy, PVSC overstates by an order of magnitude OxyChem's *comments*, asserting they number "tens of thousands of pages" (Dkt. 254 at 2). In fact, OxyChem's comments totaled just 176 pages, supported by 12 expert declarations (an additional 601 pages) and citations to specific pages in accompanying exhibits. But even if their volume is "unprecedented," the record shows comprehensive comments were essential. EPA's Batson process and resulting settlement are themselves unprecedented, as are the number and scope of serious factual, technical, and mathematical errors found throughout the Batson Report.

Fifth, while PVSC criticizes OxyChem's comments and urges the court to *penalize* OxyChem for exercising its statutory right to comment on the proposed settlement,[15] PVSC agrees with one key comment: the proposed settlement cannot meet the standard for court approval because it shifts the risk of liability from the settling parties to New Jersey public entities, posing a "catastrophic monetary risk" to PVSC and its member municipalities. *Compare* Dkt. 209 (4/21/23 OxyChem Ltr. enclosing comments), enclosure at 45-47, *with Givaudan* Dkt. 108-3 (3/21/23 PVSC public comment). The SPG is similarly hypocritical when it criticizes OxyChem comments questioning the reliability of Batson's methodology. In 2021, before the Batson Report was publicly disclosed, SPG member Atlantic Richfield Company used the report to cross-examine Mr. Batson in open court, attacking its unsupportable conclusions and using it to discredit his allocation work in an unrelated case. *See* **Ex. E** (Excerpt of 10/14/21 Transcript of Bench Trial in *Columbia Falls Aluminum Co. v. Atl. Richfield Co.*, No. 9:18-00131 (D. Mon.)) at 414:22-415:22 (criticizing Mr. Batson's allocation as contrived to assign a supermajority of liability to a disfavored party).[16]

---

[12] *See* Dkt. 244 (6/12/23 Court Order on Preliminary Case Management Issues) at 3 (imposing Sept. 22, 2023 deadline for DOJ to notify whether it will move to enter the proposed decree).

[13] PVSC's assertion that OxyChem's inadvertent inclusion of *four* "confidential" documents in its comments contributed to DOJ's need for more time is also specious. OxyChem has resolved its inadvertent inclusion by providing DOJ a redacted set of comment exhibits.

[14] Dkt. 254 at 2. In fact, as PVSC well knows, DOJ also received dozens of comments from taxpayers, municipalities, and other entities opposing the settlement. *See*, *e.g.*, *Givaudan* Dkt. 108-3, 108-4, 108-5, 108-6, 108-7, 108-8 (collecting public comments). Presumably the United States has been reviewing those comments as well.

[15] *See* Dkt. 254 at 2 (PVSC arguing extension of stay "would be particularly appropriate" because of OxyChem's comprehensive comments, as well as its "numerous FOIA requests").

[16] The District Court agreed with ARCO, rejecting Batson's allocation for that reason, among other flaws it identified. *See* 2021 WL 3769886 at *47 (D. Mon. Aug. 25, 2021) ("Batson's allocation

Next, PVSC's argument that it and its municipal members bear "heightened risks," Dkt. 254 at 2, in *21st Century Fox* fails as a matter of law. Public entities do not enjoy preferred status under CERCLA. "Congress expressly included municipalities, states, and other political subdivisions within its definition of persons who can incur [] liability under § 9607" of CERCLA. *B.F. Goodrich Co. v. Murtha*, 958 F.2d 1192, 1198 (2d Cir. 1992); *see also FMC Corp. v. Dep't of Commerce*, 29 F.3d 833, 841 (3d Cir. 1994) ("CERCLA permits the imposition of liability on states and local governments"); 42 U.S.C. § 9601(21) ("person" includes a "municipality, commission, [and] political subdivision of a State"). Routine litigation costs—whether borne by public entities or others—are not a basis for a stay. *See Cammie's Spectacular Salon v. Mid-Century Ins. Co.*, No. 20-12324(RBK/MJS), 2022 WL 488945 at *2 ("routine costs of litigation, without more, do not constitute a particular hardship" (internal quotation marks omitted)). Nor are purported settlement negotiations. *See 21st Century Fox* Dkt. 2002 (3/8/22 Special Master Decision) at 12 (argument that stay should be imposed "because some parties *may* finalize settlements with the EPA, . . . is based on too much speculation and assumption"). PVSC's public-entity status alters none of these principles.[17]

Finally, responding to FOIA requests is not debilitating for the United States. FOIA imposes on an agency the duty to conduct a reasonable search for responsive records. *Abdelfattah v. Dep't of Homeland Sec.*, 488 F.3d 178, 182 (3d Cir. 2007); *see also Manatt v. Dep't of Homeland Security*, 473 F.Supp.3d 409, 416 (E.D. Pa. 2020) ("The law applies to federal agencies…just like it does to everyone else."). PVSC can cite no law supporting its suggestion that complying with FOIA obligations is a basis to stay private litigation, because no such law exists. "If circumstances have made FOIA compliance impossible, then [the government's] remedy is to ask Congress to change the law." *Manatt*, 473 F. Supp. 3d at 416.

In sum, none of the Letters carries the heavy burden to support a further extension of the already lengthy stay in *21st Century Fox*. Accordingly, all requests to extend the stay in *21st Century Fox* should be denied.

---

places the maximum cost burden on the opposing party. As ARCO points out, Batson's allocation was rejected by the court in *El Paso Natural Gas Company, LLC v. United States*, 390 F. Supp. 3d 1025 (D. Ariz. 2019), the single other case where Batson's proposed methodology was subject to judicial review."). *See* **Ex. F** (Excerpt from Dkt. 29, *Columbia Falls Aluminum Co. v. Atl. Richfield Co.*, No. 21-36042 (9th Cir.) (ARCO's 8/1/22 Answer Brief)) at 18 ("The court rejected [Batson's] approach … [finding] that Batson's allocation 'places the maximum cost burden on the opposing party,' which Mr. Batson previously had been criticized for doing by another court (the only other court to have evaluated an allocation by Batson.").

[17] *Cf. Murtha*, 958 F.2d at 1204 (local governments' CERCLA liability results "in taxpayers within their jurisdictions shouldering the costs of cleanup," a result not "adverse to Congress' aim"). PVSC's attack on OxyChem's alleged "scorched earth" tactics is equally groundless. PVSC omits to mention it was the SPG (not OxyChem) that joined PVSC and the municipalities as parties in *21st Century Fox*, *see* Dkt. 1170 (SPG Third Party Complaint) at *passim*, after which the SPG *and* PVSC *declined* OxyChem's proposal to stay proceedings against the governmental entities to spare them litigation costs. *Compare* Dkt. 1941 (1/14/22 OxyChem Proposal) at 1, *with* SPG Response at Dkt. 1944-5 & PVSC Response at Dkt. 1949.

Hon. Leda Dunn Wettre, U.S.M.J.
October 9, 2023
Page 8

### B.   *Givaudan* should not be stayed.

PVSC's letter also seeks entry of a stay in *Givaudan*, where the motion for stay is already fully briefed. *Givaudan* is a CERCLA § 107 cost recovery action seeking recovery of nearly $100 million in estimated costs OxyChem will incur to design the remedy for OU4.

OxyChem's cost recovery claims under CERCLA § 107 cannot be barred by the *Alden Leeds* proposed settlement. "The settlement bar [of CERCLA §113(f)] does not by its terms protect against cost-recovery liability under §107(a)." *Atl. Research Corp.*, 551 U.S. at 140. For these reasons, and those in the already fully briefed opposition to defendants' motion to stay *Givaudan*, no basis exists to stay the *Givaudan* case.[18]

### 2.   *Alden Leeds*' uncertain status cannot thwart progress in other cases.

Facts are facts. The United States, after months of time, has still made no decision about whether it will pursue approval of the *Alden Leeds* settlement. Dkt. 251 (9/14/23 DOJ Ltr.) at 2 (noting "possibility" DOJ "will withdraw or seek to modify" decree).

The law is the law. Another extended stay in *21st Century Fox*—or a new stay in *Givaudan*—cannot be obtained merely by pointing to the in-limbo settlement in *Alden Leeds*. *Cf. 21st Century Fox* Dkt. 2002 (3/8/22 Special Master Decision denying stay) at 12.[19] Parties seeking a stay bear the burden to show they seek a stay of "moderate length," *Dellinger*, 442 F.2d at 787, supported by a "need" to protect other litigation, *id.*, which need "overrides the injury" to OxyChem from a stay. *Id.* The Letters make no part of this required showing. These stays are *not* of a moderate length, are *not* needed to protect the litigation in *Alden Leeds*, and OxyChem *will* be prejudiced if the stay in *21st Century Fox* is extended beyond its already eleven-month long length and if a stay of any length is imposed in *Givaudan*.

The *Alden Leeds* settlement may never happen. What is certain is this: OxyChem has a constitutional right to proceed to trial of its claims in *21st Century Fox* and in *Givaudan*. The Letters' improper requests to extend or impose stays in these cases should therefore be denied.

---

[18] *See Givaudan* Dkts. 98 (7/5/23 SPG & PVSC brief in support); 108 (8/7/23 OxyChem Opposition); 113 (8/28/23 SPG & PVSC Reply) & 114 (8/28/23 Givaudan Reply).

[19] OxyChem recognizes courts favor settlement. OxyChem made written, good faith offers to enter into agreements with EPA to implement the remedies in Operable Units 2 and 4—estimated to cost $1.8 billion in total—if the United States would agree not to try to bar OxyChem's right to seek contribution for these costs under CERCLA §113. EPA spurned OxyChem's clean-up offers in favor of the *Alden Leeds* settlement, which cleans up *nothing*. OxyChem has also conferred with the United States to try to resolve OxyChem's objections to the proposed settlement in *Alden Leeds*, again to no avail. The abject failure of these efforts proves continued delay to "facilitate" settlements that never arrive serves no purpose.

Hon. Leda Dunn Wettre, U.S.M.J.
October 9, 2023
Page 9

                                                Very truly yours,

                                                Kathy D. Patrick

                                                /s/ *John J. McDermott*

                                                John J. McDermott

cc:    All counsel of record (via ECF)