# Exhibit 4

## Declaration of Alice Yeh

United States' Motion to Enter Consent Decree,
*United States v. Alden Leeds, Inc. et al.*, Civil Action No. 22-7326 (D.N.J.)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| _____ ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No.  2:22-cv-07326 |
| ) | (MCA) (LDW) |
| ALDEN LEEDS, INC., *et al.* ) | |
| ) | |
| Defendants. ) | |
| ) | |
| PASSAIC VALLEY ) | |
| SEWERAGE ) | |
| COMMISSIONERS, *et al.,* ) | |
| ) | |
| Intervenors. ) | |
| _____ ) | |

## DECLARATION OF ALICE YEH

I, Alice Yeh, hereby make the following declaration pursuant to 28 U.S.C. §
1746:

1.  I submit this Declaration in support of the United States' Motion to Enter
Consent Decree.

2.  I am an Environmental Engineer at the United States Environmental
Protection Agency ("EPA"), Region 2. I am presently employed as an EPA Remedial
Project Manager ("Project Manager") in the Passaic/Hackensack/Newark Bay
Remediation Branch of Region 2's Superfund and Emergency Management
Division.

3.  I have been employed by EPA as an Environmental Engineer since June 12, 1994. Prior to working at EPA, I worked as an engineer at Lawler, Matusky and Skelly Engineers from 1990-1992.

4.  I earned a bachelor's degree in environmental engineering from the Massachusetts Institute of Technology in 1990 and a Master of Public Policy from Harvard's Kennedy School of Government in 1994. During my employment with EPA, I have taken numerous courses and seminars for the purpose of enhancing the skills related to my duties as a Project Manager at EPA.

5.  I have worked as a Project Manager on the Diamond Alkali Superfund Site ("Site"), focusing on the lower 8.3 miles of the Lower Passaic River, since May 2003. Among other duties, I am responsible for planning and managing the technical activities performed by contractors to advance the cleanup of the lower 8.3 miles, for overseeing the remedial design of the lower 8.3 miles conducted by Occidental Chemical Corporation ("OCC" or "OxyChem"), through related company Glenn Springs Holdings, Inc., a subsidiary of Occidental Petroleum Corporation, and for communicating with public stakeholders on the progress of the cleanup of the lower 8.3 miles. I am familiar with records and files in EPA's possession relating to the Diamond Alkali Superfund Site. I either have personal knowledge of the matters stated herein or have reviewed documents in EPA's files relating to these matters created and maintained in the regular course of its business activities.

6.  In 1984, after EPA and the State of New Jersey discovered high levels of dioxin at the former Diamond Alkali facility in Newark, EPA listed the Site on the

EPA Superfund Program's National Priorities List ("NPL"), established pursuant to

Section 105 of the Comprehensive Environmental Response, Compensation and

Liability Act of 1980, as amended ("CERCLA"), 42 U.S.C. § 9605.[1] As discussed in

EPA's 1987 Record of Decision ("OU1 ROD"), EPA and the State conducted

sampling in 1983 as part of EPA's National Dioxin Strategy targeting facilities that

produced 2,4,5-Trichlorophenoxyacetic acid ("2,4,5-T") and/or its pesticide

derivatives. EPA and the New Jersey Department of Environmental Protection

("NJDEP") found high levels of dioxins at and in the vicinity of 80 Lister Avenue

and adjoining property at 120 Lister Avenue (the "Diamond Alkali facility") and in

the Passaic River. EPA proposed the Site for the NPL in September 1983, and the

listing was finalized on September 21, 1984. Sampling and assessment of the

Passaic River conducted by Diamond Shamrock Chemicals Company (formerly

known as Diamond Alkali Company) from 1984 to 1986 showed that contaminants

from the Diamond Alkali facility, including dioxins (including 2,3,7,8-TCDD[2]);

dichlorodiphenyltrichloroethane ("DDT"); 2,4-Dichlorophenoxyacetic acid; 2,4,5-T;

and 2,4,5-Trichlorophenol, had migrated into the Lower Passaic River.[3] The river

portion of the Site is located in or flows through Essex, Hudson, Passaic, and

Bergen counties. It runs through multiple communities with environmental justice

---

[1] EPA, Record of Decision for 80 and 120 Lister Avenue,
https://semspub.epa.gov/work/02/83052.pdf (Sept. 30, 1987), at p. 1 ("OU1 ROD").

[2] 2,3,7,8-TCDD is 2,3,7,8-Tetrachlorodibenzo-p-dioxin.

[3] *See* Administrative Settlement Agreement and Order on Consent for Remedial
Design for OU2 of the Diamond Alkali Superfund Site, CERCLA Docket No. 02-
2016-2021, https://semspub.epa.gov/work/02/453915.pdf (Sept. 2016), p. 6.

concerns.[4] The Site is currently divided into the following four operable units ("OU"):

> a.  OU1 is the former Diamond Alkali Company manufacturing facility located at 80 Lister Avenue, Newark, New Jersey, and 120 Lister Avenue, an adjacent property purchased by Diamond Shamrock Chemicals Company and used in connection with the 80 Lister Avenue facility;
>
> b.  OU2 is the lower 8.3 miles of the Lower Passaic River Study Area ("LPRSA");
>
> c.  OU3 is the Newark Bay Study Area; and
>
> d.  OU4 is the LPRSA, which is the 17-mile tidal reach of the Passaic River from Newark Bay to Dundee Dam, near Garfield, New Jersey, including the lower 8.3 miles of the river.

7.  When NJDEP learned that OU1 was contaminated with dioxin as a result of sampling conducted through the National Dioxin Strategy, the Governor of New Jersey issued an executive order authorizing NJDEP to engage in emergency measures "necessary in order to fully and adequately protect the health, safety and welfare of the citizens" of New Jersey.[5] EPA and the State initiated several emergency response actions including securing the Lister Avenue property, covering

---

[4] *See* Unilateral Administrative Order for Remedial Design for OU4 of the Diamond Alkali Superfund Site, CERCLA Docket 02-2023-2011, https://semspub.epa.gov/work/02/642227.pdf (Mar. 2, 2023), p. 1.

[5] State of New Jersey, Executive Order No. 40, https://www.nj.gov/dep/passaicdocs/docs/OversightRecords/EO40.pdf (1983).

the exposed soils to prevent migration, and addressing dioxins found on nearby properties through excavation, vacuuming, and other means.[6]

8.   The Diamond Alkali facility was found to be contaminated by a number of hazardous substances including dioxin and DDT. In the 1987 OU1 ROD, EPA selected an interim remedy to address the widespread contamination (soils, structures, groundwater, and air) at the facility. The OU1 remedy is interim in nature due to the very limited options at the time of the ROD for final disposition of dioxin-contaminated wastes that are listed as hazardous substances under the Resource, Conservation and Recovery Act ("RCRA")[7]. At that time, there were no existing facilities permitted to perform the necessary treatment to allow for disposal, and there was strong opposition within the community to either treating the dioxin listed wastes on-site or permanently disposing of them at 80-120 Lister Avenue.[8] OxyChem completed the interim remedy for OU1 in 2004 under a consent decree with the United States.[9] Since that time, OxyChem, under EPA's oversight,

---

[6] OU1 ROD at pp. 1, 13.

[7] At the time the OU1 ROD was issued, dioxin-contaminated listed wastes were subject to an impending land disposal ban under Section 3004(e) of RCRA and the associated regulations (40 C.F.R. § 268.31), which prohibited the land disposal of listed dioxin wastes after November 8, 1988 without treatment. OU1 ROD, Appendix A Responsiveness Summary, at p. 8 (830520087).

[8] EPA, Fifth Five Year Review Report for Diamond Alkali Superfund Site, Essex County, New Jersey, https://semspub.epa.gov/work/02/616053.pdf (Dec. 22, 2020), p. 5 ("Fifth Five Year Review").

[9] Fifth Five Year Review at p. 7.

has performed operation and maintenance to ensure the remedy remains protective of human health and the environment.[10]

9.  In 1994, OCC agreed to an administrative order on consent with EPA to investigate a six-mile stretch of the Lower Passaic River (River Mile [("RM")] 1 to RM 7).[11] This investigation found contaminants that originated from the Diamond Alkali facility, in particular, 2,3,7,8-TCDD and pesticides, throughout the six miles, with the highest concentrations adjacent to the 80-120 Lister Avenue facility. This investigation also found many other contaminants not clearly linked to Diamond Alkali's operations and indicated that contaminated sediments had moved into and out of the six-mile stretch, leading EPA to the conclusion that a more comprehensive study was required.[12] In 2002, EPA expanded the scope of the investigation to include the entire 17-mile Lower Passaic River.

10. In 2002, EPA commenced a remedial investigation and feasibility study ("RI/FS") of OU4. In 2004, a group of potentially responsible parties known as the Cooperating Parties Group ("CPG") entered into an administrative settlement agreement under Section 122(h) of CERCLA with EPA in which members of the CPG agreed to provide funds for EPA's performance of the 17-mile LPRSA RI/FS.

---

[10] *Id.*

[11] EPA Administrative Order on Consent, CERCLA Index No. II-CERCLA-0117, https://semspub.epa.gov/work/02/85198.pdf (1994).

[12] EPA, Record of Decision for the Lower 8.3 Miles of the Lower Passaic River Part of the Diamond Alkali Superfund Site Essex and Hudson Counties, New Jersey, https://semspub.epa.gov/work/02/396055.pdf (Mar. 3, 2016) Decision Summary p. 4 ("OU2 ROD").

That settlement agreement was amended in 2005 and 2007, adding more parties. In May 2007, certain members of the CPG entered into an Administrative Settlement Agreement and Order on Consent[13] ("2007 ASAOC") with EPA in which those parties agreed to take over the performance of the RI/FS for the 17-mile LPRSA under EPA oversight. The CPG completed the RI and prepared the FS for an interim action at EPA's direction.[14] EPA selected a remedy for an interim action in the upper nine miles of the LPRSA in 2021.[15] In the proposed Consent Decree, EPA agreed to issue a notice of completion of the 2007 ASAOC, subject to certain conditions.

11. In 2002, EPA approached the full 17 miles of the LPRSA as a single study area.[16] However, during the 17-mile LPRSA RI, EPA concluded that since the lower 8.3 miles of the river contain the bulk of the contaminated sediment which is the source of most of the risk associated with the Lower Passaic River, addressing this portion of the river first would better support the overall protection of human health and the environment than would awaiting the outcome of the 17-mile LPRSA RI/FS to make a decision for the entire Lower Passaic River.[17] EPA undertook a targeted

---

[13] Administrative Settlement Agreement and Order on Consent for Remedial Investigation/Feasibility Study, CERCLA Docket No. 02-2007-2009, https://semspub.epa.gov/work/02/99864.pdf (2007).

[14] EPA, Record of Decision for an Interim Remedy in the Upper 9 Miles of the Lower Passaic River Study Area OU4 of the Diamond Alkali Superfund Site Essex, Bergen and Passaic Counties, New Jersey, https://semspub.epa.gov/work/02/630399.pdf, at pp. 6-7 (Sept. 2021)("OU4 ROD").

[15] OU4 ROD.

[16] OU2 ROD Decision Summary at p. 4.

[17] OU2 ROD Decision Summary at p. 6.

RI and Focused Feasibility Study ("FFS") of the lower 8.3 miles, which showed that the contaminants of concern ("COCs") in the LPRSA tend to bind tightly to fine-grained sediment particles. Therefore, the highest concentrations of COCs tend to be found in areas that are predominantly made up of fine-grained sediments, which, for the LPRSA, are the lower 8.3 miles.[18] As discussed in the OU2 ROD, daily tides resuspend and transport the fine-grained sediments, so that the dioxin, polychlorinated biphenyls ("PCBs") and other COCs bound to them are found bank-to-bank throughout the entirety of lower 8.3 miles. The OU2 RI showed that about 90% of the volume of contaminated sediments in the LPRSA is found in the lower 8.3 miles and that those sediments are a major source of contamination to the rest of the LPRSA and Newark Bay, largely due to sediment transport and mixing caused by the tidal nature of the Lower Passaic River.

12. Because of the high concentrations of COCs found bank-to-bank in the lower 8.3 miles, and the high volume of contaminated sediments in that portion of the river serving as a major source of contamination to the rest of the LPRSA and Newark Bay, EPA selected a remedy to address contaminated sediments in the lower 8.3 miles of the River while the comprehensive study of the 17-mile LPRSA continued.[19]

13. COCs discharged into the lower 8.3 miles have been transported by tidal action and other forces to the upper 9 miles, and COCs discharged into the upper 9

---

[18] OU2 ROD Decision Summary at p. 12.

[19] A more detailed explanation of all the reasons EPA selected the OU2 remedy can be found in the OU2 ROD.

miles have been transported to the lower 8.3 miles. As a result, COC-contaminated sediments from various sources are now commingled and deposited throughout the 17-mile Lower Passaic River. EPA's OU2 and OU4 RI Reports[20] both document that the Lower Passaic River has a salt wedge, i.e., saltwater/fresh water interface, that moves from Newark Bay north into the river and retreats back toward Newark Bay twice every day. That salt wedge erodes contaminated sediment from the bottom of the river and pushes it in a cloud that suspends and deposits sediments and contaminants in various locations in the river. Depending on river flows and other conditions, the salt wedge may be found anywhere from Newark Bay up to RM 14. Under typical river flow conditions, the salt wedge and cloud of contaminated sediment can be found moving back and forth over a four-mile stretch between RM 2 and RM 10.[21]

14. Beginning in the 1990s, EPA worked on identifying other facilities that had released or potentially released hazardous substances into the river. Since response actions began at the Site, EPA has identified and sent general notice letters to over 100 potentially responsible parties ("PRPs") for the Lower Passaic River Study Area under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a). Frequently, EPA

---

[20] Lower Eight Miles of the Passaic River, Remedial Investigation Report for the Focused Feasibility Study, https://semspub.epa.gov/work/02/703638.pdf (2014) ("OU2 RI Report"); Lower Passaic River Study Area Remedial Investigation/Feasibility Study, Remedial Investigation Report, https://semspub.epa.gov/work/02/616168.pdf ("OU4 RI Report").

[21] OU2 ROD Decision Summary at p. 16; OU4 ROD at pp. 16-17.

investigated parties in response to requests from OxyChem and/or its indemnitor, which often did their own investigation and provided EPA with the results.

15. Over the course of its work on the Site, EPA has produced volumes of scientific and technical information documenting the extent of contamination in the Lower Passaic River and the risks that the contamination poses to human health and the environment. Making that information available to the public has long been a priority for EPA as part of its community outreach efforts. In a recent example of EPA's commitment to the community, the EPA Region 2 Regional Administrator joined the Passaic River Community Advisory Group and hosted a special community workshop for a regional communication strategy to support communities during the Superfund cleanup of the Lower Passaic River.

16. On March 3, 2016, EPA issued the OU2 ROD selecting a remedy for OU2 to address contaminated sediment in the lower 8.3 miles of the Lower Passaic River, from the river's confluence with Newark Bay to RM 8.3. The remedy will include, among other things, an engineered cap to be constructed over the river bottom of the lower 8.3 miles. The cap will cover the bottom from bank to bank because the COCs are all distributed bank to bank. To avoid increasing the potential for flooding and to accommodate the Congressionally-authorized navigation channel in the 1.7 miles of the river closest to Newark Bay, the river will be dredged to various depths before the cap is installed, with the dredged material disposed of offsite. In the OU2 ROD, EPA identified many hazardous substances in OU2 sediments, but found that eight COCs pose the greatest potential risks to human health and the environment:

dioxins/furans, PCBs, mercury, DDT (and its breakdown products), polycyclic aromatic hydrocarbons ("PAHs"), dieldrin, copper, and lead. Based on EPA's human health and ecological risk assessments, of those eight COCs, dioxins/furans are responsible for as much as 81% to 94% of the risks, relative to the risks the other COCs pose. PCBs are responsible for as much as 5% to 16% of the risks.[22] The estimated cost of the remedy for OU2 is $1.38 billion.[23] The contamination and risk in the upper 9 miles of the LPRSA have been investigated and characterized and, similar to OU2, the primary risk drivers are dioxins/furans and PCBs, with mercury, DDT (and its breakdown products), PAHs, dieldrin, copper, and lead also identified as COCs.[24]

17. EPA selected an interim remedy for OU4 in a ROD issued on September 28, 2021. The estimated cost of the interim remedy is $441 million.[25] The interim remedy selected for OU4 focuses on 2,3,7,8-TCDD and PCBs and is consistent with the OU2 remedy to expedite cleanup of the river. The OU4 interim remedy is intended to complement the OU2 remedy, with the two working together to address the human health and ecological risk posed by contamination in the LPRSA.[26]

18. As required by RCRA and state laws, all landfills have chemical concentration criteria governing their acceptance of wastes. During the OU2

---

[22] OU2 ROD Decision Summary at p. 29.

[23] OU2 ROD Decision Summary at p. 88.

[24] OU4 ROD at p. 14.

[25] OU4 ROD at p. 77.

[26] OU4 ROD at p. 79.

remedial design, OxyChem and EPA found that some landfills have acceptance limits for dioxin-containing waste.[27] Since the number of landfills that will accept these wastes with high concentrations of dioxin is limited, the cost of disposal will likely be higher than for wastes that don't contain high concentrations of dioxin.

19. For OU2 and OU4, the consequence of cap failure is the breakthrough of COCs including dioxin from under the cap to the river ecosystem above the cap. Given the high toxicity of dioxin, the consequences of dioxin breakthrough to human health and the environment are particularly serious, so that, throughout the design, EPA in its oversight role was concerned that the cap had to be designed with a high level of conservatism (e.g., the cap will have to be thicker and contain more additives to bind to the COCs to prevent them from breaking through the cap).

20. On March 31, 2016, EPA notified over 100 parties that they are PRPs for the lower 8.3 miles of the LPRSA.[28] Most of these parties had previously received general notice letters from EPA related to the LPRSA, but a few were being noticed of their potential liability for the first time. EPA's notice informed the parties that under Section 107(a) of CERCLA, PRPs may be held liable for costs incurred by the government in taking response actions at OU2, and that, as responsible parties, they may also be subject to orders issued by EPA requiring one or more of the noticed parties to perform response work related to OU2.

---

[27] Oxy Glenn Springs Holdings, Inc., Sediment Waste Characterization Report, https://sharepoint.ourpassaic.org/Public%20Documents/Lower%208.3mi%20Sedime nt%20Waste%20Characterization%20Report%20Rev%202%202019-04-18.pdf (April 2019) at p. 5-1.

[28] Exhibit A, March 31, 2016, letter from Nicoletta DiForte, EPA.

21. EPA determined that an effective and timely implementation of the cleanup for OU2 would require decisions regarding which parties might appropriately be considered for performance or financing of the work, and which might appropriately be considered for cashout settlements.

22. In its March 31, 2016, notice letter, EPA explained its approach to implementing the OU2 remedy. First, EPA sought to determine if OCC would voluntarily perform the remedial design for OU2 under EPA oversight. Second, after execution of an administrative order on consent and settlement agreement for the OU2 remedial design, EPA would initiate negotiations with OCC and other major PRPs to implement and/or pay for the OU2 remedial action. Finally, EPA would identify parties that might be eligible for a cashout settlement with EPA for OU2.

23. OxyChem is currently performing the remedial design for OU2 and OU4, and EPA anticipates that remedial action will move forward when the remedial designs are done. On September 30, 2016, EPA and OCC entered into an administrative settlement agreement and order on consent, pursuant to which OCC is performing, under EPA oversight, the remedial design for the remedy selected in the OU2 ROD.[29] On March 2, 2023, EPA issued to OCC a unilateral administrative order for the remedial design of OU4.[30] On March 10, 2023 OxyChem submitted to EPA a

---

[29] Administrative Settlement Agreement and Order on Consent for Remedial Design, CERCLA Docket No. 02-2016-2021, https://semspub.epa.gov/work/02/453915.pdf (Sept. 30, 2016).

[30] Unilateral Administrative Order for Remedial Design, CERCLA Docket No. 02-2023-2011, https://semspub.epa.gov/work/02/642227.pdf (Mar. 2, 2023).

notice of intent to comply with the OU4 Unilateral Administrative Order. With the two remedial designs underway, work that will advance implementation of the cleanup of the river has proceeded uninterrupted during the time that AlterEcho performed the allocation described below, as well as during the negotiations for the proposed Consent Decree.

24. No PRP, including OCC, has made an offer to enter into a consent decree to perform the entirety of the OU2 and OU4 remedial actions.

25. In early 2017, consistent with EPA's enforcement framework, EPA identified a number of PRPs that were not associated with any of the eight COCs identified for OU2 and entered into "early" cashout settlement negotiations with those parties. In 2018, EPA and 15 PRPs entered into a non-de minimis cashout settlement agreement under Section 122(h) of CERCLA resolving those parties' liability to EPA for OU2.[31] Those settling parties collectively paid EPA $4,209,000, which was placed in EPA's special account[32] for the Site.

26. Because the PRPs had failed several times to perform an allocation themselves, [33] EPA offered to sponsor an allocation by a third-party neutral to aid it

---

[31] Administrative Settlement Agreement under Section 122(h)(1) of CERCLA, 42 U.S.C. § 9622(h)(1), CERCLA Docket No. 02-2017-2023, *available at* https://semspub.epa.gov/work/02/518131.pdf.

[32] "Special Account" means the special account, within the Hazardous Substance Superfund, established for the Diamond Alkali Superfund Site by EPA under Section 122(b)(3) of CERCLA, 42 U.S.C. § 9622(b)(3).

[33] *See* Exhibit B, May 1, 2018, letter from Juan Fajardo (EPA) to David Mandelbaum (explaining that "EPA initiated the allocation process because of the unwillingness (or inability) of the PRPs to undertake and complete their own

in identifying parties that should perform and/or finance the OU2 cleanup and parties of responsibility so small in relation to the other PRPs that they should be eligible for a cashout.[34] The allocation was not binding and was not imposed by EPA. Rather, it was performed only after a sufficient number of private PRPs agreed to participate. Ten parties did not participate (one of which did join the settlement), some parties participated in the allocation process but chose not to participate in the settlement, some parties participated in the allocation but were not offered the opportunity to participate in the settlement. And certain PRPs that had earlier resolved their liability for OU2 through administrative cashout settlements joined the proposed Consent Decree to resolve their liability for OU4.

27. In letters dated March 30, 2017 and May 17, 2017, EPA informed all the PRPs that had received notices of potentially responsibility in 2016 that the Agency intended to use the services of a third-party allocator with the expectation of offering cashout settlements to additional parties.[35] After receiving feedback from various parties including OCC, EPA hosted a meeting in its New York offices on August 28, 2017, which OCC attended, that provided the PRPs with an opportunity to share their views on EPA's framework for implementation of the OU2 remedy,

---

allocation" and describing failed allocation efforts by PRPs in 2012 and 2015 related to the Site).

[34] *See* AlterEcho, Diamond Alkali Superfund Site OU2 Final Allocation Recommendation Report (Dec. 28, 2020) ("Allocation Recommendation Report") at p. 6 (Exhibit 12 at ARR0006).

[35] Exhibit C, March 30, 2017, letter from Eric J. Wilson, EPA; Exhibit D, May 17, 2017, letter from Eric J. Wilson, EPA.

including EPA's intention to arrange for an allocation among just some of the PRPs.
At that meeting, EPA reiterated its intention to initiate negotiations with OxyChem
and other major PRPs for the implementation and funding of the remedy for OU2.

28. Initially, EPA planned for the allocation to allocate responsibility among so-
called "middle tier" parties, *i.e.* those parties not associated with dioxins, furans, or
PCBs, anticipating that PRPs associated with those contaminants would likely be
"work parties." During the August 2017 meeting, many parties provided their
thoughts and feedback and several parties argued that the allocation should be
expanded to include all noticed parties – not just the "middle tier," but also the
major PRPs as well as the Passaic Valley Sewerage Commission ("PVSC") and the
four noticed municipalities. In a September 18, 2017, letter, EPA notified the
parties that after careful consideration, the Agency had concluded that
transparency and fairness would be served by having one allocation for all the
private party PRPs, not just some of the PRPs as EPA had originally intended.[36]

29. EPA intended this EPA-sponsored allocation to be a streamlined process, so
that smaller PRPs with fewer resources would be able to participate without undue
burden alongside larger PRPs. EPA also intended the allocation to be an expedited
process that would be completed in only one or two years; in contrast, EPA has
observed that some privately sponsored allocations take many years to complete.
EPA's goal was for the allocation to be completed before the OU2 remedial design
was finished, so that the allocation results could be considered in the remedial

---

[36] *See* Exhibit E, September 18, 2017, letter from Eric Wilson, EPA.

action consent decree negotiations. The allocation was not designed to advantage or disadvantage any allocation party, including OCC, over another. To the contrary, EPA wanted the allocation to be a fair, transparent process and hoped the allocation would catalyze settlements and the cleanup of the river.

30. EPA invited OxyChem, like all the private PRPs, to participate in the allocation.

31. In 2017, through its prime contractor CSRA, later replaced by Eastern Research Group ("ERG"), EPA retained AlterEcho to perform an allocation for OU2 that would assign non-binding shares of responsibility to the OU2 PRPs (excluding the public entities), and determine relative groupings, or tiers, corresponding to the nature of the PRPs' impact on OU2 and the remedial action for OU2. On October 13, 2017, EPA hosted a meeting at its New York offices to initiate the allocation by introducing the allocator, AlterEcho, including David Batson and others on the AlterEcho team, to the PRPs and having a discussion about the allocation process.[37] EPA provided parties with an opportunity to participate in person and/or via conference call. OCC attended this meeting via conference call. After making the introduction, EPA left the meeting, and the AlterEcho allocation team discussed the allocation process with the PRPs. By that time, EPA had expanded the scope of the allocation process to include all OU2 private PRPs.

---

[37] *Id.* (inviting PRPs to the October 13, 2017 meeting); Exhibit F, AlterEcho Team for Passaic River OU2 Allocation (Oct. 2017) (handout presented by AlterEcho to PRPs at the October 13, 2017, meeting describing roles and expertise of AlterEcho allocation team members).

32. CSRA/AlterEcho, and later ERG/AlterEcho, developed work plans for the allocation, based on EPA's statement of work, that involved the following major steps. After the allocation began, the work plan was modified several times, but the major steps remained the same.[38] The allocation process is also summarized in the Allocation Recommendation Report and the Allocation Guide, which is Attachment G thereto.[39]

a. *Preliminary Work:* CSRA/AlterEcho holds a kick-off meeting with EPA to discuss tasks and expectations for the project, including strategy for conduct of the allocation, a PRP outreach plan, timeline, and schedule.

b. *Public Announcement of Project:* CSRA/AlterEcho participates in an EPA-sponsored meeting with the OU2 private party PRPs to announce and explain the allocation.

c. *Initial Allocation Process and Database Design:* CSRA/AlterEcho prepares a description of the allocation process, including recommendations for: (1) data sources to be considered for the allocation; (2) applicable allocation factors; and (3) methodology for determination of shares. CSRA/AlterEcho designs and develops a

---

[38] Exhibit G, Work Plan for Task Order #096, Diamond Alkali-Lower Passaic River Allocation (June 2017) at pp. 6-16.

[39] *See* Allocation Recommendation Report at pp. 18-19 (Exhibit 12 at ARR0018 to ARR019); Allocation Recommendation Report Attachment G, Diamond Alkali Superfund Site OU2 Allocation Guide (June 15, 2018, as amended by addendum dated July 6, 2018 and incorporating consensus of Participating Allocation Parties on March 22, 2019) at pp. 5-8 ("Allocation Guide") [Exhibit 12 at ARR0143 to ARR0146].

searchable database of non-confidential information to contain and

organize all of the information and data used in the allocation received

from EPA and the private party PRPs participating in the allocation

referred to as "participating allocation parties."

d.  *Draft and Final Allocation Process/Database Design:* CSRA/AlterEcho

meets with participating allocation parties to discuss and obtain

comments on the draft design of the allocation process and database.

CSRA/AlterEcho completes the design of the allocation process based

on input received from EPA and the participating allocation parties.

CSRA/AlterEcho, and later ERG/AlterEcho, analyze each allocation

party's contribution of each COC to OU2 sediments, as weighted by the

relative risk each COC poses to human health and the environment,

and other relevant equitable factors, discussed in more detail in

Paragraph 45, below.[40]

e.  *Draft and Final PRP Data Reports:* CSRA/AlterEcho, and later

ERG/AlterEcho, develop individual data reports for each allocation

party. The data reports summarize, organize, and analyze information

regarding each party's relation to OU2 and the OU2 COCs. The

participating allocation parties have an opportunity to review and

---

[40] The Allocation Recommendation Report provides a detailed description of the allocation methodology on pages 19-34 [Exhibit 12 at ARR0019 to ARR0034] and the Allocation Protocol is Attachment H to the Allocation Recommendation Report [Exhibit 12 at ARR0306 to ARR0358].

comment on draft data reports for themselves and the other allocation parties. ERG/AlterEcho complete final data reports that incorporate the parties' comments and that are included in Attachment J to the Allocation Recommendation Report.[41]

f. *Draft and Final Allocation Recommendation Report:* The Allocation Recommendation Report designates shares of responsibility among the private party PRPs, as appropriate based on the allocation analysis and includes a recommendation on the possible grouping of the OU2 PRPs into tiers of similar levels of responsibility. ERG/AlterEcho used a custom software program they created specifically for the allocation to calculate shares. (A spreadsheet summarizing the outputs and operations of the allocation computations is included as Attachment K to the Allocation Recommendation Report.[42])

33. PVSC and the four municipalities that received the March 31, 2016 notice of liability were not invited to participate in the allocation, and were not assigned shares of responsibility, though the allocation does incorporate an analysis of the PVSC system because it was relevant to the shares of many of the allocation parties. EPA determined after careful consideration that including public entities would not serve the main stated purpose of the allocation — identifying parties that

---

[41] Allocation Recommendation Report, Attachment J, Allocation Party Facility Data Reports [Exhibit 12 at ARR0362 to ARR2003].

[42] Allocation Recommendation Report, Attachment K, Allocation Operations Spreadsheet [Exhibit 12 at ARR2004 to ARR2006].

would be eligible for a cash-out and work party settlements. The settlement process, including the cash out settlement, negotiations with PVSC and the four municipalities, and discussions with other parties, are ongoing. EPA expects this multipronged approach to yield parties who will perform the work, parties who will contribute in-kind services, and parties who will contribute funding to implement the OU2 and OU4 remedies.

34. The allocation began in the fall of 2017. The majority of the invited PRPs agreed to participate in the allocation, but OCC and nine other parties did not participate. Both EPA and AlterEcho had encouraged all private noticed PRPs to participate. EPA and AlterEcho explained to the PRPs that the goal of the allocation was a final report that would assign shares of responsibility to all the private OU2 PRPs so it was in each party's best interest to participate in the process.

35. From the beginning of the allocation process, EPA provided opportunities for parties to participate in the allocation to increase the chances of reaching EPA's stated goal of identifying parties that would be eligible for cashout settlements.[43] The participating allocation parties were invited to submit data, information, and position papers as well as to provide input on the allocation methodology, the allocation process, and the database design, along with draft data reports and the draft Allocation Recommendation Report.[44]

---

[43] *See* Exhibit G, Work Plan for Task Order #096 Diamond Alkali-Lower Passaic River Allocation (June 2017) at p. 3.

[44] *See* Allocation Guide at pp. 15-17 [Exhibit 12 at ARR0153 to ARR0155].

36. On October 19, 2017, EPA met with OCC to address some questions and concerns OCC had about the allocation and underscore EPA's view that allocation and negotiation – not litigation – is the best approach to resolving liability for OU2. After the meeting, EPA provided a detailed, written response to address OCC's questions and again encouraged OCC to participate "actively and fully" in the allocation, but OCC still declined to participate.[45] Instead of participating in the allocation, in the summer of 2018, OCC filed the complaint in *Occidental Chemical Corporation v. 21st Century Fox America, et al.*, Civil Action No. 18-11273 (D.N.J.).

37. EPA repeatedly asked OxyChem to participate and kept OxyChem informed of EPA's efforts to address participants' comments and concerns about the allocation framework. OxyChem never accepted any of EPA's repeated invitations to participate. By declining to participate, OCC denied itself the opportunity to contribute to the design of the allocation protocols, methodology and database, review its own and the Facility Data Reports of all other facilities in the allocation, review and comment on the draft Allocation Recommendation Report, and voice its concerns with every aspect of the allocation directly to AlterEcho and the other allocation participants.

38. Once it was clear that OCC would not participate, EPA considered whether to move forward with the allocation. Almost all of the other private PRPs had agreed to participate. Given that no PRP had made an offer to perform the entirety of the remedial work, EPA still needed a strategy for addressing the large number of PRPs

---

[45] Exhibit H, November 28, 2017, letter from Eric Wilson, EPA.

it considered liable. All of the reasons for embarking on the allocation discussed above in Paragraphs 26 and 29 remained and the allocation was a rational, fair, and transparent way to identify work parties and determine which parties EPA could justify cashing out. Thus, EPA decided that – despite OxyChem's non-participation – it had sound reasons for moving forward with the allocation, in keeping with EPA's enforcement strategy for the Site.

39. EPA intended for the allocation to take advantage of the large volume of available information about the PRPs at the Site. At the beginning of the allocation, EPA provided CSRA/AlterEcho with approximately 130,000 pages of factual documentation about the noticed private parties. This included documents from EPA's files provided by parties in response to EPA information requests or independently obtained by EPA over four decades of investigation and enforcement at the Site, as well as factual material the State of New Jersey made publicly available following the settlement of its lawsuit concerning the Site.[46] Over the years, OCC and parties affiliated with OCC submitted to EPA documents with information pertaining to about 80% of the PRPs. The information EPA provided to CSRA/AlterEcho included this documentation as it had been maintained in EPA's files for the Site.

40. Throughout the allocation, the participating allocation parties submitted factual documents directly to AlterEcho, as well as position briefs and responsive

---

[46] These documents included information regarding many of the defendants in New Jersey Dep't Envtl. Prot. v. Occidental Chem. Corp., Civil Action No. L-9868-05 (N.J. Super. Ct. Law Div.), available at https://www.nj.gov/dep/passaicdocs/# (last visited Jan. 17, 2024).

briefs, expert reports, and attachments thereto – addressing their responsibility and that of other allocation parties – for CSRA/AlterEcho, and later ERG/AlterEcho, to review and consider in conducting the allocation.[47] At various points in the allocation process, EPA, in response to requests by the participating allocation parties, agreed to increase the number of pages the participating allocation parties could submit and CSRA/AlterEcho, and later ERG/AlterEcho, could review. All of the participants were able to review their own Facility Data Reports and all the other allocation parties' Facility Data Reports so that they could highlight any errors or omissions. The participants could also review and comment on the draft Allocation Recommendation Report to highlight errors or omissions and advance arguments about their own liability and the liability of other parties. The allocation used the available data and, where data were unavailable, applied logical inferences and assumptions based on professional judgment as well as consultation with the participating allocation parties and technical experts that were part of the AlterEcho allocation team.[48] For OCC and the nine other parties that did not to participate in the allocation, AlterEcho assigned additional resources to the allocation team to perform independent reviews of allocation materials and

---

[47] Certain documents shared with AlterEcho in confidence have not been disclosed to the United States or the public. These categories of ADR-confidential documents are described in the Allocation Guide. *See* Allocation Guide at pp. 10-11 [Exhibit 12 at ARR0148 to ARR0149].

[48] *See* Allocation Recommendation Report, Attachment H, Addendum to Allocation Protocol (Prepared by Allocator in Consultation with Participating Allocation Parties May 20, 2019) [Exhibit 12 at ARR0356 to ARR0358].

calculations for their facilities to ensure that they were fairly evaluated in the allocation process.

41. For budget estimation purposes, all of EPA's allocation work plans provide estimates of the average amount of time that AlterEcho would be expected to spend communicating with the participating allocation parties, and the maximum number of pages of documents that AlterEcho would be expected to review. During the allocation process, the participating allocation parties expressed concerns to AlterEcho (and sometimes EPA directly) about those estimates being insufficient. On three occasions, EPA expanded AlterEcho's budget in response to such concerns. In letters dated November 28, 2017, January 5, 2018, and February 16, 2018,[49] EPA wrote to all of the OU2 private PRPs, including OxyChem, informing them of EPA's first budget expansion (in March 2018) to add more time for AlterEcho to communicate with participating allocation parties and more pages of documents for AlterEcho to review. EPA expanded AlterEcho's budget two more times (in May 2019 and September 2019) to accommodate more communication with the allocator and more document pages to be submitted by the participating allocation parties.

42. CSRA/AlterEcho, and later ERG/AlterEcho, conducted the allocation as an alternative dispute resolution ("ADR") process pursuant to the provisions of the ADR Act of 1996, 5 U.S.C. Section 571, et seq., and relevant state authorities.[50] The participating allocation parties had numerous opportunities to provide input, by

---

[49] Allocation Recommendation Report, Attachment A [Exhibit 12 at ARR0059 to ARR0067]

[50] Allocation Recommendation Report at p. 18 [Exhibit 12 at ARR0018].

submitting factual information, position briefs, responsive briefs, and expert reports, as discussed above, and comments on various documents to CSRA/AlterEcho and later ERG/AlterEcho.

43. EPA worked with CSRA/AlterEcho, ERG/AlterEcho, and the participating allocation parties throughout the allocation to make changes to the allocation process to accommodate various developments. In addition to increasing page limits as discussed above in Paragraph 41 and developing a second early cashout opportunity as discussed below in Paragraph 46, EPA addressed confidentiality concerns raised by the parties after OCC initiated litigation.

44. The allocation resulted in the assignment of shares of responsibility for OU2 to 79 PRPs and included a total of 92 facilities. Of the 79 PRPs with facilities evaluated in the allocation (the allocation parties), 69 participated actively in the allocation process (the participating allocation parties), and ten (including OxyChem) did not participate. As shown in the Allocation Recommendation Report, AlterEcho recommended that five allocation parties should be assigned an allocation share of zero.[51] The remaining 74 allocation parties were assigned recommended shares of responsibility totaling up to 100%.

45. The shares were calculated through a process that included the steps summarized below, described in much greater detail in the allocation documents[52]:

---

[51] Allocation Recommendation Report at p. 31 [Exhibit 12 at ARR0031].

[52] *See* Allocation Recommendation Report at pp. 19-34 [Exhibit 12 at ARR0019 to ARR0034] (describing the allocation methodology).

a.  <u>How much of each COC was discharged historically by each facility?</u>
The allocation team determined the mass of each COC discharged by each facility that reached OU2 sediments historically during the time the facility was owned and/or operated by the allocation party. This calculation was based on information provided by EPA and the participating allocation parties, and considered four pathways from each facility to the river: (1) discharges to the Lower Passaic River via connection to a sewer system prior to the establishment of the PVSC sewer system; (2) discharges via the PVSC system, which included a series of combined sewer overflow ("CSO") valves and bypass valves to allow for the release of untreated sewage from the system to the Lower Passaic River during rain events; (3) direct discharges from a pipe or other discrete conveyance to the Lower Passaic River; and (4) the transport over land (generally due to rainfall or flooding) from the facility to the Lower Passaic River (this is referred to as "overland fate and transport").

b.  <u>How much of each COC is still present in the river, and who is</u>
<u>responsible for it?</u>

i.  For each facility, the allocation team calculated the total mass that remains in the river sediments currently from the total mass of each COC that reached river sediments historically by multiplying the historical mass by an attenuation factor (A%).

27

According to the allocation methodology, the attenuation factor accounts for the mix of natural forces (such as tides and storms) and human activities (such as dredging and vessel wakes) that moved sediments and the COCs bound to them around or into and out of the Lower Passaic River over time.

ii.   The allocation team then employed two different methods to proportionally distribute the unattributed mass of COCs (masses found in river sediments but not attributed to one of the allocation parties, which AlterEcho termed contributions from "Orphan Parties" or the "orphan share")[53] among the allocation facilities:

1.   The Protocol Method distributed the unattributed mass of all COCs among all allocation facilities on a pro rata basis, based on each facility's total relative responsibility for all COCs, regardless of which COCs that facility discharged to the river (e.g., a facility that only discharged PCBs was assigned an unattributed mass of all COCs). This means that

---

[53] This use of "orphan share" to refer to the share of responsibility that is not attributed to an allocation party is distinct from how EPA uses the phrase. Under EPA policy, the term "orphan share" refers to parties that are completely unable to pay a share of Site costs because they are defunct or insolvent. *See* EPA, "Orphan Share Superfund Reform Questions and Answers" https://www.epa.gov/sites/default/files/2013-10/documents/orph-sh-ref-qa.pdf (Jan. 2001) at p. 10.

facilities that did not contribute a particular COC still received a share of the unattributed mass of that COC.

2. The Alternative Method distributed the unattributed mass of COCs on a COC-by-COC basis. The allocation team assigned each facility the unattributed mass of only the COCs for which it was responsible (e.g. a facility that only discharged PCBs was only assigned a portion of the unattributed PCB mass).

   iii. AlterEcho then added each facility's attenuated mass of each COC to the facility's share of the unattributed mass of the COC. That total is the facility's COC mass.

c. <u>How much responsibility does each allocation facility bear for each COC?</u> Next the allocator calculated each facility's relative responsibility (COC share) for the total mass of each COC currently in river sediments.

d. <u>How much harm does each facility's COCs pose to humans and the environment?</u> Next, for each COC, the allocation team multiplied the COC shares calculated in Step c. (above) by the relative risk numbers ("RRNs") for the COC. As explained below in Paragraph 49, the RRN for each COC is an allocation factor calculated by AlterEcho, using information about risk presented by EPA in the OU2 and OU4 risk assessments, which combines the human health cancer risk, human

29

health non-cancer hazard, and ecological hazard associated with each
COC into a single weighting factor of environmental harm relative to
the other COCs. The products of these calculations, for each facility,
were summed to establish the facility base scores.

e.  <u>Was the allocation party cooperative or not?</u> The allocation team then
adjusted each facility base score by applying a cooperation factor and a
culpability factor.

f.  <u>Did the allocation party have more than one facility?</u> For each
allocation party, the adjusted base scores for all its facilities were
added to produce the party's base score.

g.  <u>What was each allocation party's final share?</u> The allocation team then
calculated each allocation party's percentage share by adding up all
allocation parties' base scores, dividing each allocation party's base
score by that sum, and then multiplying by 100.

h.  <u>Where did each allocation party fall with respect to the others?</u> Finally,
the allocation team established allocation tiers by grouping "similarly
situated" allocation parties along natural breaks in their percentage
shares.

46. After the allocation began, at the request of the participating allocation
parties, EPA agreed to consider whether a small number of PRPs might be eligible
for a potential second iteration of the early cashout settlement before the
completion of the allocation. To that end, EPA allowed participating allocation

parties to submit information to AlterEcho to support their early cashout requests. EPA asked AlterEcho to perform a detailed evaluation of the information provided by these self-nominated parties to determine whether they met the early cashout criteria, *i.e.*, no association with the release or disposal of any of the eight COCs into the LPRSA.[54] EPA entered into a second non-de minimis cashout settlement agreement under Section 122(h) of CERCLA with six parties/seven facilities (one party resolving its alleged liability for two facilities), which became final on April 16, 2021. This settlement was based on EPA's review of AlterEcho's evaluation. Under that settlement, the six parties paid EPA a total of $1,964,200.[55]

47. The allocation phase of the settlement process concluded in December 2020 when AlterEcho issued the Allocation Recommendation Report that recommends relative shares of responsibility for each allocation party's facility or facilities evaluated in the allocation.

48. AlterEcho recognized that inconsistent availability of historical data had limited the usefulness of comparing the numerical allocation scores assigned to "similarly situated parties."[56] With that in mind, the Allocation Recommendation Report proposed five allocation tiers. Tier 1 is comprised of one party: OxyChem.

---

[54] *See* Allocation Recommendation Report at pp. 8-9 [Exhibit 12 at ARR0146 to ARR0147].

[55] Administrative Settlement Agreement under Section 122(h)(1) of CERCLA, 42 U.S.C. § 9622(h)(1), CERCLA Docket No. 02-2020-2013, https://semspub.epa.gov/work/02/591178.pdf.

[56] Allocation Recommendation Report at pp. 34-35 (describing how and why AlterEcho established tiers) [Exhibit 12 at ARR0034 to ARR0035].

31

Tier 2 includes two parties: Nokia-Lucent Technologies and Pharmacia LLC. Tier 3

includes 8 or 9 parties, depending on whether one considers the Protocol Method or

the Alternative Method (described above in Paragraph 45.b.ii), and Tiers 4 and 5

include 63 or 62 parties, again, depending on the calculation method.[57] Five parties

were not assigned to any tier and were given zero shares of responsibility because

AlterEcho did not find a nexus between the parties' facilities and COCs in river

sediments.

49. As part of the allocation, AlterEcho developed RRNs. AlterEcho developed the

RRNs as factors to aid in allocating shares of responsibility for response costs.

AlterEcho developed the RRNs by combining the results of EPA's ecological and

human health risk assessments for the sole purpose of determining each allocation

party's share of responsibility. This differs from Superfund risk assessments

because, in Superfund risk assessment, risk assessment results are not combined in

this way. However, the RRNs are generally consistent with the results of the OU2

and OU4 risk assessments. The allocation RRNs indicate that dioxin contributes

approximately 84% of the environmental harm to the Lower Passaic River, with

PCBs contributing approximately 13% and the rest of the COCs contributing a total

of approximately 3%.[58] The OU2 and OU4 risk assessments found that 1) for human

health cancer risk, dioxin contributes approximately 68% to 94% of the risk, PCBs

---

[57] *See* Allocation Recommendation Report, Attachment Q, Exhibit 12 at ARR3240 to
ARR3241.

[58] *See* Allocation Recommendation Report, Attachment A to Attachment H, Exhibit
12 at ARR0336 to ARR0337.

contribute approximately 5% to 30%, and the other COCs contribute a combined 3% or less; 2) for human health non-cancer hazards, dioxin and PCBs combined to contribute more than 96% of the hazard.[59]

50. EPA's risk assessments considered both fish and crab consumption as pathways through which humans are exposed to the COCs.[60] Similarly, in calculating the RRNs, AlterEcho combined the risk from fish and crab consumption. Whether the RRNs were calculated by averaging the risk percentages from both pathways or by first summing the risk from both pathways would not have had a significant impact on the combined percentage share of the Settling Defendants.

51. The allocation team took into account that a number of the facilities evaluated were located on property containing historic fill. Historic fill, as this term is used by NJDEP, is material that did not originate on a property but was deposited there to raise the area's elevation, was contaminated prior to being deposited on the property, and is not connected with operations at the facility.[61]

52. For the Diamond Alkali facility, which is located on historic fill, AlterEcho calculated a mercury contribution via the Overland Fate and Transport pathway for the facility because the maximum mercury concentration was higher than the NJDEP-approved historic fill number. This is consistent with the allocation

---

[59] OU2 ROD Decision Summary at pp. 29-30; OU4 ROD at p.30, and Tables 7-5a and 7-6a.

[60] *Id.*

[61] *See* NJDEP Historic Fill Material Technical Guidance, Version 2.0, https://www.nj.gov/dep/srp/guidance/srra/historic_fill_guidance.pdf, at p. 5 (Apr. 29, 2013).

methodology. However, for copper and lead, the Allocation Recommendation Report does not explain why copper and lead contributions via the Overland Fate and Transport pathway were calculated for the facility, even though maximum copper and lead concentrations were lower than the NJDEP-approved historic fill numbers. This could have been because there was evidence of erosion or soil disturbance, some other undisclosed reason, or it could have been an oversight. Nevertheless, the resulting copper and lead base scores that were added to the other base scores to produce Diamond Alkali's overall base score were 0.0001285 (1.285E-4) and 0.0000056 (5.631E-6), respectively.[62] Given that Diamond Alkali's overall base score was 85.06 (8.506E+1),[63] the copper and lead base scores were such insignificant contributors to that overall base score that they may as well have been zero. Therefore, even if this was an oversight on the part of AlterEcho, these values did not have any effect on OCC's share in the allocation.

53. For PPG, to respond to a comment from OxyChem, EPA used information in PPG's Facility Data Computation Sheet to calculate a Direct Discharge contribution for PPG from 1902 to 1924. According to the PPG Facility Data Computation Sheet,[64] there were no data for the POTW pathway, *i.e.*, via the PVSC system, so the allocation used data from Sherwin Williams as a similar manufacturer of paint

---

[62] Allocation Recommendation Report, Appendix L, Facility Data Computation Sheets [Exhibit 12 at ARR2577].

[63] *Id.* at ARR2587.

[64] Allocation Recommendation Report, Appendix L, Facility Data Computation Sheets [Exhibit 12 at ARR2656].

and paint products, consistent with the Allocation Protocol. Specifically, EPA used the following assumptions:

a.  discharge volume of 37.5 million gallons per year (which, according to PPG's Facility Data Computation Sheet, is approximately 50% of Sherwin Williams' discharge volume because the PPG's Facility Data Report found evidence that PPG's liquid wastes may have been hauled off site for disposal);

b.  Sherwin Williams' copper (0.26 mg/l), lead (0.53 mg/l) and mercury (0.0010 mg/l) discharge concentrations;[65] and

c.  PPG's years of discharge to the Newark sewer (1902 to 1924 which is 22 years).

Under this analysis, PPG's Direct Discharge pathway could have contributed 812 kg of copper, 1655 kg of lead and 3 kg of mercury historically to the Passaic River. Using the Alternative Method, EPA recalculated PPG's base score to be approximately 0.003 (approximately 10 times higher than PPG's original base score of 0.0004 in the allocation).[66]

54. Based on a careful review of the Allocation Recommendation Report, the United States identified parties from Tiers 3, 4, and 5 that were eligible to participate in the proposed Consent Decree for the facilities evaluated in the allocation. Based on the results of the allocation, the United States concluded that

---

[65] Allocation Recommendation Report, Appendix L, Facility Data Computation Sheets [Exhibit 12 at ARR2779].

[66] Exhibit I, EPA Recalculation of PPG Base Score (Jan. 2024).

the Settling Defendants, individually and collectively, are responsible for a minor share of the response costs incurred and to be incurred at or in connection with the cleanup of OU2, for releases from the facilities identified in the proposed Consent Decree.

55. The United States then determined that it would also be appropriate to extend the settlement to include OU4. Due to the tidal nature of the 17-mile LPRSA, releases of COCs into the river have been carried up and down the LPRSA. The allocation considered releases of contaminants to the 17-mile Lower Passaic River, not just to the lower 8.3 miles, and when the Alternative Method is used, the allocation does not distinguish where in the 17-mile Lower Passaic River releases of COCs ultimately settled. Finally, the OU4 interim remedy is intended to complement the OU2 remedy, with the two working together to address the human health and ecological risk currently posed by contamination in the LPRSA.

56. After identifying which parties would be eligible to settle, the United States determined the total costs on which the settlement amount would be based, including past and future response costs for OU2 and OU4, as follows:

| OU2: estimated cost of the remedial design and remedial action | $1.38 billion |
| OU4: estimated cost of the remedial design and remedial action | $460 million[67] |
| EPA's past costs for OU2 and OU4 | $50 million |
| Total estimated OU2 and OU4 costs used for calculating settlement | $1.89 billion |

---

[67] This estimate has since been refined to $441 million, so the use of $460 million in the total site costs for settlement purposes is beneficial to non-settling parties.

36

57. After AlterEcho issued the Allocation Recommendation Report, the United

States proceeded to negotiate with the parties that comprise the Settling

Defendants in the proposed Consent Decree. Those negotiations lasted

approximately 18 months. During the negotiations, the United States made several

adjustments to the results of the Allocation Recommendation Report for purposes of

the settlement:

    a. The United States used the Alternative Method as a starting point for

       the settlement, instead of the Protocol Method, which reduced the non-

       settling parties' share of responsibility. Under the Alternative Method,

       the underlying allocation recommended the Settling Defendants be

       responsible for a collective share of under 2% for OU2.:

| Protocol Method | | Alternative Method | |
|---|---|---|---|
| Allocation Party | Allocation Share | Allocation Party | Allocation Share |
| Tier 1 (OxyChem) | 99.9396% | Tier 1 (OxyChem) | 92.9394% |
| Tier 2 | 0.0438% | Tier 2 | 5.1112% |
| Tiers 3-5 | 0.0166% | Tiers 3-5 | 1.9494% |

    b. The United States did not adopt the cooperation and culpability

       adjustments that AlterEcho had applied to each facility's base score.

       The United States concluded that these factors are subjective and that

       a cashout settlement with these Settling Defendants that did not take

       those factors into account would be more equitable and maximize

       recovery. Thus, the United States concluded that a fair settlement of

       its claim under Section 107 of CERCLA with the Settling Defendants

need not consider the "cooperation and culpability" factor in the allocation.

c.  The decisions described above resulted in a distribution of allocated shares as follows:

| Alternative Method Calculation without Cooperation/Culpability Factors | | |
|---|---|---|
| **Allocation Party** | **Tier** | **Share** |
| Occidental Chemical Corp. | 1 | 85.07% |
| Nokia and Pharmacia | 2 | 11.01% |
| *Tiers 1 & 2 Subtotal* | | *96.08%* |
| Tiers 3-5 (parties invited to settle only) | 3, 4 & 5 | 3.88% |

d.  In its calculation of an appropriate total cost against which to calculate the settlement amount, the United States included a "premium" — an additional amount to account for the fact that the remedies for OU2 and OU4 have not yet been implemented and the possibility of cost overruns. The United States applied a premium of 100% for both OU2 and OU4 estimated remedial action costs (but not to EPA's past costs).

e.  Finally, the United States included in the settlement amount an additional payment by the Settling Defendants in exchange for completion of an already existing administrative order on consent.

| How the Settlement Amount Was Calculated | |
|---|---|
| OU2 & OU4 estimated costs of the remedial designs and remedial actions: | $1.84 Billion |
| (OU2 & OU4 estimated costs of the remedial designs and remedial actions) + 100% premium: | $3.68 Billion |
| EPA's past costs for OU2 & OU4: | $50 million |
| Total OU2 & OU4 costs = OU2 & OU4 estimated costs of the remedial designs and remedial actions + 100% premium + EPA's past costs for OU2 & OU4 | $3.73 Billion |
| Tiers 3-5 Combined Share: (parties invited to settle only) | 3.88% |
| Total OU2 & OU4 costs * 3.88% share: | $144,724,000 |
| (Total OU2 & OU4 costs * 3.88%) + Additional payment re. existing admin. order: | $150,000,000 |

58. After considering all of these factors, the parties agreed to a payment of $150 million by the Settling Defendants. EPA anticipates the money will be used for the cleanup of OU2 and OU4.

59. The United States used the allocation as a starting point for settlement negotiations. If the United States had calculated the settlement amount by adding up the recommended shares for the Settling Defendants, as calculated under the Alternative Method in the Allocation Recommendation Report, and making no adjustments thereto (i.e., not removing the factors for culpability and cooperation, and not including a premium), and using the same estimated cleanup costs of $1.84 billion plus $50 million in EPA past costs, the Settling Defendants would be paying approximately $36 million.

60. The proposed Consent Decree is only one part of a larger enforcement effort that includes the selection and implementation of the cleanup and identifying and

pursuing PRPs for the payment or performance of the cleanup. In this settlement, the Settling Defendants are paying their fair share of the cleanup costs.

61. The settlement embodied in the proposed Consent Decree is not identical to the Allocation Recommendation Report. Rather, the Allocation Recommendation Report was the starting point for negotiations and the resulting settlement. While the Protocol Method proposes allocating a 99.9% share of responsibility to the Tiers 1 (OxyChem) and 2 (Nokia, Pharmacia) parties, the proposed settlement recovers nearly 8% of total estimated past and future costs for OU2 and OU4 assuming that the costs of the OU2 and OU4 remedies do not change substantially from the ROD estimates. This 8%, combined with the funds recovered already through other settlements described above, as well as a number of bankruptcy claims described below, would bring the United States' recovery to approximately 14% of the total costs incurred by EPA for OU2 and OU4, plus estimated future costs to be incurred for OU2 and OU4 combined.

62. EPA and each participating allocation party have agreed that the Allocation Recommendation Report can be made public. Thus, at the time of lodging of the proposed Consent Decree, EPA made the Allocation Recommendation Report and all of the supporting factual documentation available on its public website.[68] This material totals almost 700,000 pages. Documents are Bates numbered with the prefix "PAS", if received from EPA and "PAP" if received from a participating

---

[68] Records Collections, Diamond Alkali, Final Allocation Recommendation Report and Supporting Documents, https://semspub.epa.gov/src/collection/02/SC41378 (last visited Dec. 18, 2023).

allocation party. Downloading some of this material can be time-consuming due to the volume and size of the documentation. OCC informed EPA that, for some of the supporting documents, it took some time for the material to download, but OCC was able to download all of the supporting material before the public comment period on the proposed Consent Decree began.

63. Additionally, EPA has made more than 1,500 Site-related documents, including information on background, modeling, data, and fact sheets, available to the public in the digital library on the website http://www.ourpassaic.org/, which was established by EPA over 15 years ago.

64. Through bankruptcy proofs of claim, and the administrative settlements described above in Paragraphs 25 and 46 with various minor PRPs, the United States has recovered $37,836,503 that will reduce the liability of all other PRPs at the Site. These monies were placed in EPA's site-specific special account for the Site and are used to fund response actions. In addition, the United States filed proofs of claim in the bankruptcy of Maxus Energy Corporation, OxyChem's indemnitor. Through that bankruptcy proceeding, EPA has recovered $78,887,099.53.[69] That

---

[69] *See* Exhibit J, Liquidating Trustee's Notice of Interim Distribution Under Amended Chapter 11 Plan of Liquidation. As stated in the Liquidating Trustee's Notice of Interim Distribution Under Amended Chapter 11 Plan of Liquidation, the Liquidating Trustee made interim cash distributions under the Plan to (i) the Environmental Response/Restoration Trust ("ERRT") on account of the Class B Beneficial Interests of the Liquidating Trust in the amount of $84,439,225.50 and (ii) the holders of Class A Beneficial Interests of the Liquidating Trust on account of their Allowed Class 4 Claim in the amount of 66.7408269401600% of the Allowed amount of their Claim (the "Interim Distribution"). The Interim Distribution to the ERRT included a $61,000,000 distribution that the Liquidating Trust was directed by the ERRT to make directly to the EPA Diamond Alkali Special Account and the

disbursement also has been placed in the Site's special account for use at the

Diamond Alkali Site.

65. The availability of settlement funds will allow EPA to pay for cleanup work

at the Site when it determines that doing so will advance the cleanup in an efficient

and effective manner.

66. I declare, under penalty of perjury, that the foregoing is true and correct.


Executed on:                         ALICE YEH    Digitally signed by
                                                  ALICE YEH
                                                  Date: 2024.01.29
                                                  15:50:02 -05'00'

                                     Alice Yeh
                                     Remedial Project Manager
                                     U.S. Environmental Protection Agency,
                                       Region 2

---

DOI Diamond Alkali Account, with 50% going to EPA to be placed in the Diamond
Alkali Special Account in accordance with the Plan. Through these distributions,
EPA received a total payment of $78,887,099.53.

# Declaration of Alice Yeh

# Exhibit A

# March 31, 2016, letter from Nicoletta DiForte, EPA



**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY**

REGION II

290 BROADWAY

NEW YORK, NEW YORK 10007-1866

MAR 3 1 2016

<u>BY CERTIFIED MAIL,</u>
<u>RETURN RECEIPT REQUESTED & ELECTRONIC MAIL</u>

To:  See Attachment 1 - List of Addressees

Re:  <u>Diamond Alkali Superfund Site, Lower 8.3 Miles of Lower Passaic River,</u>
<u>Essex and Hudson Counties, New Jersey</u>

<u>Notice of Potential Liability under 42 U.S.C. § 9607(a)</u>

<u>Commencement of Negotiations for Remedial Design</u>

As you know, the U.S. Environmental Protection Agency ("EPA") is charged with responding to the release or threatened release of hazardous substances, pollutants and contaminants into the environment and with enforcement responsibilities under the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended ("CERCLA"), 42 U.S.C. §§ 9601-9675 (also known as the "Superfund" law). More information about CERCLA, including a copy of the Superfund law, may be found at www.epa.gov/superfund.

EPA has documented the release and threatened release of hazardous substances, pollutants and contaminants into the lower 8.3 miles of the Lower Passaic River, which is part of the Diamond Alkali Superfund Site (the "Site"), located in Essex and Hudson Counties, New Jersey. In response to the release and threatened release of hazardous substances into the environment at the Lower Passaic River Study Area, EPA has spent public funds and anticipates spending additional public funds.

In 1983, sampling at and in the vicinity of 80 Lister Avenue and in the Passaic River revealed high levels of dioxin. In 1984 after investigations by the state of New Jersey and the EPA, the Site was listed on the EPA Superfund program's National Priorities List ("NPL") established pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605. Dioxin, pesticides and other hazardous substances were found in the soil and groundwater at 80-120 Lister Avenue; and dioxin, polychlorinated biphenyls ("PCBs"), mercury, metals and pesticides were found in sediment in the Lower Passaic River.

In 1994, Occidental Chemicals Corporation ("OCC") signed an administrative order on consent with EPA to investigate a six-mile stretch of the Lower Passaic River, with the work performed

by Tierra Solutions, Inc. ("Tierra") on OCC's behalf. This investigation found contaminants that originated from the Diamond Alkali facility, in particular, 2,3,7,8-TCDD and pesticides, throughout the six miles, as well as other contaminants not necessarily linked to Diamond Alkali's operations, and showed that contaminated sediments moved into and out of the six-mile stretch, leading to the conclusion that a more comprehensive study was required. In 2002, EPA expanded the scope of the investigation to include the entire 17-mile Lower Passaic River.

Subsequently, EPA identified other potentially responsible parties ("PRPs") for the Lower Passaic River besides OCC. A number of companies that owned or operated facilities from which hazardous substances were potentially discharged to the river formed the Cooperating Parties Group ("CPG"). In 2004, EPA signed a settlement agreement with the CPG in which the group agreed to pay for EPA to perform the RI/FS for 17-mile Lower Passaic River Study Area ("LPRSA"). The settlement agreement was amended in 2005 and 2007, adding more parties, for a total of over 70 parties.

Also in 2004, EPA and OCC signed an agreement in which OCC agreed to conduct a separate RI/FS of the Newark Bay Study Area (Newark Bay and portions of the Hackensack River, Arthur Kill and Kill van Kull), investigating the extent of contamination under EPA oversight. As with the 1994 agreement, Tierra is performing the work on OCC's behalf. Finally, also in 2004, EPA formed a partnership with the U.S. Army Corps of Engineers, New Jersey Department of Transportation, U.S. Fish and Wildlife Service, National Oceanic and Atmospheric Administration and NJDEP to conduct a joint study of the LPRSA. The goal of the partnership was, to the extent possible, to integrate the RI/FS being performed under the Superfund program with a Feasibility Study under the Water Resources Development Act.

From 2004 to 2007, EPA investigated contamination in sediment and water of the Lower Passaic River, and investigated the major tributaries, combined sewer overflows and stormwater outfalls to the river. In 2007, the CPG entered into a new agreement with EPA in which the group agreed to take over the performance of the 17-mile LPRSA RI/FS from EPA under EPA oversight. During the course of the 17-mile study, EPA concluded that since the lower 8.3 miles of the river contain the bulk of the contaminated sediment which is the source of most of the risk associated with the Lower Passaic River, addressing this portion of the river first would better support the overall protection of human health and the environment than would awaiting the outcome of the 17-mile RI/FS to make a decision for the entire Lower Passaic River. EPA undertook a targeted RI and focused feasibility study ("FFS") of the lower 8.3 miles. Sampling results from the RI/FFS demonstrate the presence of hazardous substances in sediments of the lower 8.3 miles of the Lower Passaic River including polychlorinated dibenzo-*p*-dioxins and furans (dioxins and furans), PCBs, polycyclic aromatic hydrocarbons, dichlorodiphenyl-trichloroethane ("DDT") and its breakdown products and other pesticides, mercury, lead and other metals. The contamination present in sediments throughout the lower 8.3 miles presents an unacceptable human health and ecological risk.

EPA issued the Record of Decision selecting a remedy for the lower 8.3 miles of the Lower Passaic River on March 4, 2016. The selected remedy includes the following elements: 1) an engineered cap will be constructed over the river bottom of the lower 8.3 miles; 2) before the cap is placed, the river will be dredged bank-to-bank (approximately 3.5 million cubic yards) so the cap can be placed without increasing flooding and to allow for continued commercial use of the federally authorized navigation channel in the 1.7 miles of the river closest to Newark Bay;

3) dredged materials will be barged or pumped to a sediment processing facility in the vicinity of the Lower Passaic River/Newark Bay shoreline for dewatering, and dewatered materials will be transported to permitted treatment facilities and landfills in the United States or Canada for disposal; 4) mudflats dredged during implementation of the remedy will be covered with an engineered cap consisting of one foot of sand and one foot of mudflat reconstruction substrate; 5) institutional controls will be implemented to protect the engineered cap, and New Jersey's existing prohibitions on fish and crab consumption will remain in place and will be enhanced with additional community outreach; 6) long-term monitoring and maintenance of the engineered cap will be required to ensure its stability and integrity; and 7) long-term monitoring of fish, crab and sediment will be performed to determine when interim remediation milestones, remediation goals and remedial action objectives are reached. The estimated cost of the cleanup project is $1.38 billion. Additional information about the Site, including the lower 8.3 miles of the Lower Passaic River, such as the RI/FFS reports and appendices, the Proposed Plan and the Record of Decision, can be found on EPA Region 2's website at http://www.ourPassaic.org

The documents that form the basis for EPA's selected remedy are contained in the administrative record, which is maintained at EPA's offices in New York City, and at the following administrative record repositories located near the Site:

> Newark Public Library
> 5 Washington Street
> Newark, New Jersey
>
> Elizabeth Public Library
> 11 South Broad Street
> Elizabeth, New Jersey

You may inspect copies of the administrative record during regular business hours at EPA's offices in New York City or at the local administrative record repositories identified above. The administrative record files can also be accessed online at:
https://semspub.epa.gov/src/collection/02/AR63167

## NOTICE OF POTENTIAL LIABILITY

Under Section 107(a) of CERCLA, responsible parties may be held liable for costs incurred by EPA (including interest) in taking response actions at and around sites where hazardous substances have been released, including investigative, planning, removal, remedial, and enforcement actions. Responsible parties also may be subject to orders requiring them to take response actions themselves. Responsible parties under CERCLA include current owners or operators of a facility, past owners or operators of a facility at the time of disposal of hazardous substances, and persons who arranged for the treatment or disposal of hazardous substances which came to be located at a facility. EPA has previously notified over 100 parties of their potential liability under CERCLA for the Lower Passaic River Study Area, which includes the lower 8.3 miles. By this letter, we notify all the parties on the attached list of potential liability for the lower 8.3 miles.

## FRAMEWORK FOR REMEDIAL DESIGN/REMEDIAL ACTION IMPLEMENTATION AND SETTLEMENT

### REMEDIAL DESIGN ADMINISTRATIVE ORDER NEGOTIATIONS

EPA seeks to determine whether OCC will voluntarily perform the remedial design ("RD") for the remedy selected in the ROD. EPA intends to send a separate letter to OCC, enclosing a draft Administrative Order on Consent and Settlement Agreement for Remedial Design ("RD AOC"). EPA wishes to secure a commitment to perform the RD so as to ensure commencement of RD field work by the end of 2016. To that end, EPA will seek signature of an RD AOC by or before August 31, 2016.

This notice is not being given in accordance with the "special notice" procedures of Section 122(e) of CERCLA, 42 U.S.C. § 9622(e). EPA has decided not to use the special notice procedures as EPA does not believe that those procedures would facilitate an agreement or expedite remedial action at the Site.

### REMEDIAL ACTION CONSENT DECREE NEGOTIATIONS

After execution of the RD AOC, EPA plans to begin negotiation of a remedial action consent decree, under which OCC and the other major PRPs will implement and/or pay for EPA's selected remedy for the lower 8.3 miles of the Lower Passaic River and reimburse EPA's costs incurred for the Lower Passaic River. In the meantime, we encourage the major PRPs to meet and discuss a workable approach to sharing responsibility for implementation and funding of the remedy.

### OPPORTUNITY FOR CASH-OUT SETTLEMENT

Based on the information EPA has reviewed, the Agency believes that some of the parties that have been identified as PRPs under CERCLA, and some parties not yet named as PRPs, may be eligible for a cash out settlement with EPA for the lower 8.3 miles of the Lower Passaic River. Typically such a settlement would include: (1) a premium; (2) a covenant not to sue, which is a promise that EPA will not bring any future legal action against the settling party for the specific matters addressed in the settlement (i.e. concerning the lower 8.3 miles); and (3) protection from contribution claims, which provides a settling party with protection from being sued in a contribution action by other responsible parties for the specific matters addressed in the settlement. EPA intends to provide separate notice of the opportunity to discuss a cash out settlement at a later date.

Some or all of the costs associated with this notice may be covered by current or past insurance policies issued to you. Most insurance policies will require that you timely notify your carrier(s) of a claim against you. To evaluate whether you should notify your insurance carrier(s) of this demand, you may wish to review current and past policies, beginning with the date of your first contact with the Diamond Alkali Site, including the Lower Passaic River Study Area, up to the present. Coverage depends on many factors, such as the language of the particular policy and state law.

Finally, EPA has developed a fact sheet about the Small Business Regulatory Enforcement Fairness Act and information on resources for small businesses, which is available on the

4

Agency's website at http://www.epa.gov/compliance/small-business-resources-information-sheet.

If you have any questions regarding this letter, you may contact Juan Fajardo via email at fajardo.juan@epa.gov or by phone at (212) 637-3132, or Sarah Flanagan at flanagan.sarah@epa.gov or by phone at (212) 637-3136.

We appreciate and look forward to your prompt response to this letter.

Sincerely yours,

*Nicoletta Di Forte*

Nicoletta Di Forte
Deputy Director for Enforcement
Emergency and Remedial Response Division

Attachment 1 - List of Addressees

cc: Brian Donohue, Esq., USDOJ
    Mark Barash, Esq., USDOI
    Kate Barfield, Esq., NOAA
    John Dickinson, Esq., New Jersey Attorney General's Office

ATTACHMENT 1

**Parties that Previously Received Notice Letters**

| Company | Contact Information | Facility |
|---|---|---|
| A.E. Staley Manufacturing Co., Inc. 2200 E. Eldorado Street Decatur, IL 62521-1578<br><br>Now Tate & Lyle Ingredients Americas LLC | John R. Holsinger, Esq. Two University Plaza, Suite 300 Hackensack, NJ 07601 201-487-9000 (T) johnh@jrholsinger.com<br><br>Heidi R. Balsley, Esquire Corporate Counsel 2200 E. Eldorado Street Decatur, IL 62521 Heidi.Balsley@tateandlyle.com | 320 Schuyler Avenue and 100 Third Avenue Kearny, NJ |
| Alcan Corporation Two Alliance Center 3560 Lenox Rd Atlanta, GA 30326<br><br>Now Novelis Corp. | John Tillman, Esq. North American Regional Counsel Novelis Corporation Two Alliance Center 3560 Lenox Rd Atlanta, GA 30326 404-760-4049 (T) John.tillman@novelis.com | Jacobus Ave. Kearny, NJ |
| Alden Leeds Inc. 55 Jacobus Ave. Kearny, NJ 07032 | Mark Epstein, President Alden Leeds Inc. 55 Jacobus Ave. Kearny, NJ 07032<br><br>Joseph Fiorenzo, Esq. Sokol, Behot & Fiorenzo Continental Plaza 433 Hackensack Ave. Hackensack, NJ 07601 201-488-1300(T) jbfiorenzo@sbflawfirm.com | 2145 McCarter Highway Newark, NJ |
| Alliance Chemical, Inc. Linden Avenue Ridgefield, NJ 07657 | Fredi Pearlmutter, Esq. Lindabury, McCormick, Estabrook & Cooper, P.C. 53 Cardinal Drive Box 2369 Westfield, NJ 07091 908-233-6800 (T) fpearlmutter@lindabury.com | 33 Avenue P Newark, NJ |
| American Ref-Fuel Co. 155 Chestnut Ridge Road Montvale, NJ 07645<br><br>Now Covanta Essex Company | Nancy Tammi, Esq. VP, Associate General Counsel Covanta 445 South Street Morristown, NJ 07960 862-345-5133 | 183 Raymond Blvd & 66 Blanchard St Newark, NJ |

| | | |
|---|---|---|
| | Gary P. Gengel, Esq.<br>Kegan A. Brown, Esq.<br>Latham & Watkins, LLP<br>885 Third Avenue<br>New York, NY 10022-4834<br>Gary.gengel@lw.com | |
| Arkema Incorporated<br>2000 Market Street<br>Philadelphia, PA 19103-3222 | Paula Martin, Esq.<br>Doug Loutzenhiser<br>Legacy Site Services, LLC<br>468 Thomas Jones Way, Suite 150<br>Exton, PA 19341-2528<br>Paula.martin@total.com | Wallace & Tiernan<br>25 Main Street<br>Belleville, NJ |
| Ashland, Inc.<br>5200 Blazer Parkway<br>Dublin, OH 43017 | Robin E. Lampkin<br>Ashland Inc.<br>5200 Blazer Parkway<br>Dublin, OH 43017<br>Telephone: 614-790-3019<br>relampkin@ashland.com<br><br>William S. Hatfield, Esq.<br>Gibbons P.C.<br>One Gateway Center<br>Newark, NJ 07102<br>whatfield@gibbonslaw.com | 221 Foundry St.<br>Newark, NJ |
| Atlas Refining, Inc.<br>142 Lockwood Street<br>Newark, NJ 07105<br><br>Now Atlas Refinery, Inc. | Steven Schroeder, Jr., President & CEO<br>Atlas Refinery, Inc.<br>142 Lockwood Street<br>Newark, NJ 07105<br><br>Thomas Ryan, Esq.<br>Laddey, Clark & Ryan LLP<br>60 Blue Heron Road, Suite 300<br>Sparta, NJ 07871<br>973-729-1880(T)<br>tryan@lcrlaw.com | 142 Lockwood St.<br>Newark, NJ |
| Automatic Electro Plating Corp.<br>185 Foundry Street, Suite 3<br>Newark, NJ 07105 | Michael O'Rourke, President<br>Automatic Electro Plating Corp.<br>94 Colony Avenue<br>Park Ridge, NJ 07656-1047 | 185 Foundry Street Complex<br>Newark, NJ 07105<br>(Bldgs 19, 21, 22) |
| BASF Catalysts LLC<br>100 Campus Drive<br>Florham Park, NJ | Karyllan D. Mack, Esq. (see below) | Engelhard Corporation<br>One West Central Avenue<br>East Newark, NJ |

2

| BASF Corp.<br>3000 Continental Drive<br>Mount Olive, NJ 07828 | Karyllan D. Mack, Esq.<br>Environmental Counsel<br>BASF Corporation<br>100 Park Avenue<br>Florham Park, NJ 07932<br>Karyllan.mack@basf.com<br><br>David Schneider, Esquire<br>Bressler, Amery & Ross<br>Post Office Box 1980<br>Morristown, NJ 07962<br>dschneider@bressler.com | 50 Central Ave.<br>Kearny, NJ<br>&<br>150 Wagaraw Rd<br>Hawthorne, NJ |
|---|---|---|
| Belleville Industrial Center<br>681 Main Street<br>Building 43<br>Belleville, NJ 07109 | Carol Shapiro, President<br>Belleville Industrial Center<br>681 Main Street, Building 43<br>Belleville, NJ 07109<br>973-751-0400 (T)<br>shappyfam@aol.com<br><br>Ryder T. Ulon, Esq,<br>Gary F. Werner, Esq.<br>Schenck, Price, Smith & King, LLP<br>220 Park Avenue<br>Post Office Box 991<br>Florham Park, NJ 07932<br>973-540-7321 (T)<br>rtu@spsk.com<br>gfw@spsk.com | Helion Industries, Inc.<br>681 Main St.<br>Belleville, NJ |
| Benjamin Moore & Co.<br>51 Chestnut Ridge Rd.<br>Montvale, NJ 07645 | Mark Boyland, Esq.<br>Paul Sangillo, Esq.<br>Benjamin Moore & Co.<br>101 Paragon Drive<br>Montvale, NJ 07645<br>201.949.6318 (T)<br>Mark.boyland@benjaminmoore.com<br>Paul.sangillo@benjaminmoore.com<br><br>Susanne Peticolas, Esq.<br>Gibbons, PC<br>One Gateway Center<br>Newark, NJ 07102-5310<br>973-596-4751 (T)<br>speticolas@gibbonslaw.com | 134 Lister Ave.<br>Newark, NJ |

| | | |
|---|---|---|
| Berol Corporation<br>c/o Newell Rubbermaid Inc.<br>2707 Butterfield Road, Suite 100<br>Oak Brook, IL 60523 | Andrew Sawula, Esq.<br>Schiff Hardin LLP<br>One Westminster Place, Suite 200<br>Lake Forest, IL 60045<br>847-295-4336 (T)<br>asawula@schiffhardin.com | Faber-Castell Corporation<br>41 Dickerson Street<br>Newark, NJ |
| Campbell Foundry Company<br>800 Bergen Street<br>Harrison, NJ 07029 | Timothy J. Corriston, Esq.<br>Connell Foley LLP<br>85 Livingston Avenue<br>Roseland, NJ 07068<br>973-535-0500 (T)<br>tcorriston@connellfoley.com | 800 Bergen Street<br>Harrison, NJ |
| Canning Gum LLC<br>c/o MacDermid Incorporated<br>1401 Blake Street<br>Denver, CO 80202 | John Cordani, Esq.<br>VP, General Counsel<br>MacDermid Inc.<br>245 Freight Street<br>Waterbury, CT 06702 | Frederick Gumm Chemical Co.<br>538 Forest Street<br>Kearny, NJ |
| Celanese Ltd.<br>Route 202-206<br>P.O. Box 2500<br>Somerville, NJ 08876<br><br>CNA Holdings LLC participating on behalf of Celanese Ltd | Katheryn Coggon, Esq.<br>Associate General Counsel<br>Celanese International Corporation Law Department<br>1601 West LBJ Freeway<br>Dallas, TX 75234<br>972-443-4547 (T)<br>Katheryn.coggon@celanese.com<br><br>Duke K. McCall, III, Esq.<br>Bingham McCutchen LLP<br>2020 K Street, N.W.<br>Washington, DC 20006-1806<br>202-373-6607 (T)<br>duke.mccall@bingham.com | 354 Doremus Ave<br>Newark, NJ |
| Chargeurs, Inc.<br>178 Wool Road<br>Jamestown, SC 29453 | James. R. Brendel, Esq.<br>Thorp Reed & Armstrong, LLP<br>One Oxford Centre<br>301 Grant Street, 14th floor<br>Pittsburgh, PA 15219-1425<br>412-394-2373 (T)<br>jbrendel@thorpreed.com | United Piece Dye Works<br>199 and 205 Main Street and 42 Arnot Street<br>Lodi, NJ |

4

| Chevron Texaco Corporation 6001 Bollinger Canyon Rd. K-2056 San Ramon, CA 94583 Chevron Environmental Management Company participating for itself, Texaco, Inc. and TRMI-H LLC | Shawn Raymond DeMerse Chevron U.S.A. Inc. Law Department 1400 Smith Street, Rm 07090 Houston, TX 77002 shawndemerse@chevron.com Louis M. DeStefano, Esq. Buchanan Ingersoll & Rooney, PC 550 Broad Street, Suite 810 Newark, NJ 07102-4517 973.273.9800 (T) louis.destefano@bipc.com | Getty Newark Terminal 86 Doremus Ave. Newark, NJ |
|---|---|---|
| Coats & Clark, Inc. 3420 Toringdon Way, Suite 301 Charlotte, NC 28277 | Dan Riesel, Esq. Jeff Gracer, Esq. Sive Paget & Riesel, P.C. 460 Park Avenue New York, NY 10022 212-421-2150 driesel@spr.com | Clark Thread Co. 260 Ogden Street Newark NJ 900 Passaic Avenue East Newark NJ 735 Broad Street Bloomfield NJ |
| Coltec Industries Inc. 5605 Carnegie Boulevard Charlotte, NC 28209 | Tom Price, Esq. EnPro Industries 5605 Carnegie Boulevard Charlotte, NC 28209 704-731-1525 (T) tom.price@enproindustries.com Charles E. Merill, Esquire Husch Blackwell Sanders LLP 190 Carondelet Plaza, Suite 600 St. Louis, MO 63105 314-480-1952 charlie.merrill@huschblackwell.com | Crucible Steel Co. 1000 South Fourth St. Harrison, NJ |
| Congoleum Corp. 3705 Quakerbridge Road Mercerville, NJ 08619 | Russell Hewit, Esq. Dughi, Hewit & Domolewski, P.C. 340 North Avenue Cranford, NJ 07016 908-272-0200(T) rhewit@dughihewit.com | 195 Belgrove Drive Kearny, NJ |

5

| | | |
|---|---|---|
| Cooper Industries, Inc.<br>600 Travis Street<br>Houston, TX 77002 | Ms. RosaMaria Villagomez<br>Cooper Industries<br>600 Travis Street, Suite 5600<br>Houston, TX 77002<br>RosaMaria.Villagomes@cooperindustries.com<br><br>Gerard J. Pels, Esq.<br>Locke Lord<br>2800 JPMorgan Chase Tower<br>600 Travis<br>Houston, TX 77002<br>Gpels@lockelord.com | J. Wiss & Sons Co<br>7, 13, 26 Bank Street and<br>33 Littleton Avenue (aka 400<br>West Market Street)<br>Newark, NJ |
| Cooper Industries, LLC<br>600 Travis Street, Suite 5800<br>Houston, TX 77002 | (see above) | Thomas A. Edison, Inc.<br>Belleville Avenue &<br>Sherman Avenue<br>Bloomfield, NJ<br>75 Belmont Avenue<br>Belleville, NJ |
| Croda Inc.<br>300-A Columbus Circle<br>Edison, NJ 08837 | Norman Spindel, Esq.<br>Lowenstein Sandler PC<br>65 Livingston Avenue<br>Roseland, NJ 07068<br>973-597-2514(T)<br>nspindel@lowenstein.com | Hummel Lanolin<br>185 Foundry Street Complex<br>Newark, NJ<br>(Block 5005, Lot 21; Bld 39) |
| Curtiss-Wright Corp.<br>4 Becker Farm Road<br>Roseland, NJ 07068 | Diana Buongiorno<br>Chiesa Shahinian & Giantomassi, PC<br>One Boland Drive<br>West Orange, NJ 07052<br>973-530-2075(T)<br>dbuongiorno@csglaw.com | 1 Passaic St.<br>Woodridge, NJ |
| Darling International, Inc.<br>251 O'Connor Ridge Boulevard,<br>Suite 300<br>Irving, TX 75038 | Steven Singer, Esq.<br>34 Hillside Avenue<br>Montclair, NJ 07042<br>973-744-6093<br>stsinger@verizon.net | Standard Tallow Corp.<br>61 Blanchard Street,<br>Newark, NJ<br>1215 Harrison Avenue,<br>Kearny, NJ |
| DII Industries, LLC<br>c/o Halliburton<br>2101 City West Blvd.<br>Houston, TX 77042-3021 | Thomas C. Jackson, Esq.<br>Joshua Frank, Esq.<br>Baker Botts LLP<br>1299 Pennsylvania Ave., N.W.<br>Washington, DC 20004-2400<br>202-639-7710 (T)<br>Thomas.Jackson@bakerbotts.com<br>Joshua.frank@bakerbotts.com | Worthington Corp. &<br>Dresser Industries, Inc.<br>401 Worthington Avenue<br>Harrison, NJ |

| | | |
|---|---|---|
| DiLorenzo Properties Company<br>c/o 401 East 74th Street<br>New York, NY 10021-3919 | Steven R. Gray, Esq.<br>Waters, McPherson, McNeill<br>300 Lighting Way<br>PO Box 1560<br>Secaucus, NJ 07096<br>201-863-4400 (T)<br>sgray@lawwmm.com | American Modern Metals<br>44 Passaic Ave. (a/k/a 25<br>Belgrove Drive)<br>Kearny, NJ |
| Drum Service of Newark, Inc.<br>38 Laurel Drive<br>Wayne, NJ 07470 | Ralph Foglia<br>38 Laurel Drive<br>Wayne, NJ 07470 | Hilton-Davis<br>120 Lister Ave.<br>Newark, NJ |
| Eden Wood Corporation<br>47 Parsippany Road<br>Whippany, NJ 07981 | Warren L. Dean, Jr.<br>Thompson Coburn LLP<br>1909 K Street, N.W.<br>Suite 600<br>Washington, D.C. 20006-1167<br>202.585.6908 (T)<br>wdean@thompsoncoburn.com | Whippany Paper Board<br>1 Ackerman Avenue<br>Clifton, NJ |
| E.I. duPont de Nemours & Co.<br>1007 Market Street<br>Wilmington, DE 19898 | Bernard Reilly, Esq.<br>Chemours Legal Department<br>1007 Market Street<br>Wilmington, DE 19898<br>302-774-5445(T)<br>bernard.j.reilly@usa.dupont.com | Pitt Consol<br>191 Doremus Ave.<br>Newark, NJ |
| Elan Chemical Co.<br>268 Doremus Ave.<br>Newark, NJ 07105 | Jocelyn Kapp Manship, CEO<br>Elan Chemical Company Inc.<br>268 Doremus Avenue<br>Newark, NJ 07105<br><br>Randy Schillinger, Esq.<br>Saiber Schlesinger Staz & Goldstein<br>One Gateway Center, 13th Fl<br>Newark, NJ 07102<br>973-622-3333(T)<br>rs@saiber.com | 268 Doremus Ave.<br>Newark, NJ |
| El Paso Tennessee Pipeline Co.<br>1001 Louisania Street<br>Houston, TX 77002<br><br>EPEC Polymers Inc.<br>participating on behalf of itself<br>and EPEC Oil Company<br>Liquidating Trust | Andrea A. Lipuma, Esquire<br>Saul Ewing LLP<br>750 College Road East<br>Suite 100<br>Princeton, NJ 08540-6617<br>Telephone: 609-452-5032<br>alipuma@saul.com | Tenneco, Inc.<br>290 River Drive<br>Garfield, NJ |

7

| | | |
|---|---|---|
| EM Sergeant Pulp & Chemical Co.<br>6 Chelsea Road<br>Clifton, NJ 07012 | Messrs. Scott and Alan Reisch<br>EM Sergeant Pulp & Chemical Co.<br>6 Chelsea Road<br>Clifton, NJ 07012 | 120 Lister Avenue<br>Newark, NJ |
| Essex Chemical Corp.<br>2030 WMDC<br>Midland, MI 48674 | Kenneth Mack, Esq.<br>Linda Mack, Esq.<br>Fox Rothschild LLP<br>Post Office Box 5231<br>Princeton, NJ  08543-5231<br><br>Princeton Pike Corp.  Center<br>997 Lenox Drive, Bldg. 3<br>Lawrenceville, NJ 08648<br>609-896-3000(T)<br>kmack@foxrothschild.com | 330 Doremus Ave.<br>Newark, NJ |
| Everett Smith Group, Ltd.<br>330 East Kilbourn Avenue, Ste 750<br>Milwaukee, WI  53202 | Katherine M. Behm, Esq.<br>Assistant General Counsel<br>Everett Smith Group, Ltd.<br>330 East Kilbourn Avenue, Ste 750<br>Milwaukee, WI  53202<br>414-223-1560 (T) | Blanchard Bro. & Lane, Inc.<br>40 Bruen Street<br>Newark, NJ |
| Fiske Brothers Refining Co.<br>129 Lockwood Street<br>Newark, NJ | Damon Sedita, Esq.<br>Sedita, Campisano & Campisano, LLC<br>Wayne Plaza 1<br>145 Route 46 West<br>Suite 102<br>Wayne, NJ  07470<br>dsedita@scclegal.com<br>973-787-0299 | 129 Lockwood Street<br>Newark, NJ |
| Flexon Industries Corp.<br>One Flexon Plaza<br>366 Frelinghuysen Avenue<br>Newark, NJ 07114 | Tom Spiesman<br>Porzio Bromberg & Newman, PC<br>100 Southgate Parkway<br>PO Box 1997<br>Morristown, NJ  07962<br>973-889-4208 (T)<br>pbnlaw.com | 666 Washington Avenue<br>Belleville, NJ |
| Foundry Street Corporation<br>260 Knoll Drive<br>Park Ridge, NJ 07656 | Gerard Boriello<br>Foundry Street Corporation<br>260 Knoll Drive<br>Park Ridge, NJ 07656 | 185 Foundry Street Complex<br>Newark, NJ<br>(Block 5005, Lot 22 – Bldgs 19, 21, 22) |

| | | |
|---|---|---|
| Fragrances North America<br>1775 Windsor Road<br>Teaneck, NJ 07666<br><br>Now Givaudan Corp. | Richard Wroblewski, P.G.<br>Environmental Specialist<br>Givaudan Fragrances Corp. 300 Waterloo<br>Valley Road<br>Mount Olive, NJ 07828<br>richard.wroblewski@givaudan.com<br><br>William Hatfield, Esq.<br>Gibbons, PC<br>One Gateway Center<br>Newark, NJ 07102-5310<br>973-596-4511 (T)<br>whatfield@gibbonslaw.com | Givaudan Fragrances<br>125 Delawanna Avenue<br>Clifton, NJ |
| Franklin Burlington Plastics,<br>Inc.<br>113 Passaic Ave.<br>Kearny, NJ 07032 | Norman Spindel, Esq.<br>Lowenstein Sandler PC<br>65 Livingston Avenue<br>Roseland, NJ 07068<br>973-597-2514(T)<br>nspindel@lowenstein.com | 113 Passaic Ave.<br>Kearny, NJ |
| Garfield Molding Company, Inc.<br>10 Midland Avenue<br>Wallington, NJ 07057 | Steve Miller, Esq.<br>Stephen W. Miller, Esq.<br>Ricci Tyrrell Johnson & Grey<br>1515 Market Street, Suite 700<br>Philadelphia, PA 19102<br>215-320-2088 (T)<br>smiller@rtjglaw.com | 10 Midland Avenue<br>Wallington, NJ |
| General Electric Company<br>3135 Easton Turnpike<br>Fairfield, CT 06828-0001 | Roger Florio, Esq.<br>General Electric<br>640 Freedom Business Center<br>King of Prussia, PA 19406<br><br>Gary Gengel, Esq.<br>Latham & Watkins, LLP<br>One Newark Center, 16th floor<br>Newark, NJ 07101<br>973-639-7287 (T)<br>gary.gengel@lw.com | 415 South 5th Street<br>& 1000 South 2nd Street<br>Harrison, NJ |
| Goodrich Corporation<br>Four Coliseum Centre<br>2730 West Tyvola Road<br>Charlotte, NC 28217 | Earl W. Phillips, Jr., Esq.<br>Robinson & Cole LLP<br>280 Trumbull Street<br>Hartford, CT 06103-3597<br>860-275-8220 (T)<br>ephillips@rc.com | Kalama Chemical<br>290 River Drive<br>Garfield, NJ |

| | | |
|---|---|---|
| Harrison Supply Company<br>800 Passaic Avenue<br>East Newark, NJ 07029 | Timothy J. Corriston, Esq.<br>Connell Foley LLP<br>85 Livingston Avenue<br>Roseland, NJ 07068<br>973-535-0500 (T)<br>tcorriston@connellfoley.com | 800 Passaic Avenue<br>East Newark, NJ |
| Hexcel Corp.<br>2 Stamford Plaza<br>Stamford, CT 06901 | Steve Leifer, Esq.<br>Baker Botts LLP<br>1299 Pennsylvania Ave., NW<br>Washington, DC 20004<br>202-639-7723(T)<br>sleifer@bakerbotts.com | 205 Main St.<br>Lodi, NJ |
| Hoffman-La Roche Inc.<br>340 Kingsland Street<br>Nutley, NJ 07110 | Ms.  Mary Alice Barrett.<br>Hoffman-La Roche Inc.<br>340 Kingsland Street<br>Nutley, NJ 07110<br>973-235-4850 (T)<br>maryalice.barrett@roche.com | 340 Kingsland Road<br>Nutley, NJ |
| Honeywell International, Inc.<br>P.O. Box 2245<br>Morristown, NJ  07962 | Jeremy Karpatkin, Esq.<br>Arnold & Porter<br>555 Twelfth Street, NW<br>Washington, DC 20004-1206<br>202-942-5564 (T) | General Chemical Co.<br>65 Lodi Street/8[th] Street<br>Passaic, NJ |
| ISP Chemicals, Inc.<br>1361 Alps Road<br>Wayne, NJ  07470<br><br>now ISP Chemicals LLC | Robin E. Lampkin<br>Ashland Inc.<br>5200 Blazer Parkway<br>Dublin, OH  43017<br>614-790-3019 (T)<br>relampkin@ashland.com<br><br>William Hatfield, Esq.<br>Gibbons, PC<br>One Gateway Center<br>Newark, NJ  07102-5310<br>973-596-4511 (T)<br>whatfield@gibbonslaw.com | ISP Van Dyk, Inc.<br>1 Main St./11 William St.<br>Wayne, NJ |
| ITT Industries, Inc.<br>77 River Road<br>Clifton, NJ  07014<br><br>participating as Exelis Inc. for<br>itself and ITT Industries, Inc | Susanne Peticolas, Esq.<br>Gibbons, PC<br>One Gateway Center<br>Newark, NJ  07102-5310<br>973-596-4751 (T)<br>speticolas@gibbonslaw.com | 100 Kingsland Drive<br>Clifton, NJ |

10

| | | |
|---|---|---|
| Kearny Smelting & Refining<br>936 Harrison Ave #5<br>Kearny, NJ 07032 | Ms. Francine Rothschild, President<br>Kearny Smelting & Refining<br>936 Harrison Ave<br>Kearny, NJ 07032<br>201-991-7276 (T) | 936 Harrison Ave.<br>Kearny, NJ |
| Lucent Technologies<br>600 Mountain Avenue<br>Murray Hill, NJ 07974<br><br>now Alcatel-Lucent USA, Inc. | Ralph McMurry, Esq.<br>Ralph L. McMurry Law Office<br>30 Vesey Street, 15th Floor<br>New York, NY  10007<br>212-608-5444/5053 (T)<br>rlmcmurry@earthlink.net<br><br>Gary M. Fisher, Esq.<br>Alcatel-Lucent<br>Environment, Health & Safety Corporate<br>Center<br>600 Mountain Avenue<br>Room 1F-102G<br>Murray Hill, NJ  07974<br>gary.fisher@alcatel-lucent.com | AT&T/Western Electric<br>100 Central Ave.<br>Kearny, NJ |
| Mallinckrodt, Inc.<br>675 McDonnell Blvd.<br>Hazelwood, Missouri<br>63042 | William Hatfield, Esq.<br>Gibbons P.C.<br>One Gateway Center<br>Newark, NJ 07102<br>973-596-4511 (T)<br>whatfield@gibbonslaw.com<br><br>Eric Berry, Esq.<br>Vice President – Environmental Law<br>Mallinckrodt Pharmaceuticals<br>975 McDonnell Blvd<br>Hazelwood, MO 63042 | 165-167 Main St.<br>Lodi, NJ |
| Monsanto Co.<br>800 North Lindbergh Blvd.<br>St. Louis, Missouri 63167<br><br>Pharmacia Corporation (f/k/a<br>Monsanto Company) | John F. Gullace, Esq.<br>Manko, Gold, Katcher & Fox, LLP<br>401 City Avenue, Suite 500<br>Bala Cynwd, PA  19004<br>484-430-2326(T)<br>jgullace@mgkflaw.com | Monsanto Co.<br>Foot of Pennsylvania Ave.<br>Kearny, NJ |
| National-Standard Company<br>1618 Terminal Road<br>Niles, MI 49120<br><br>Now National-Standard LLC | Susanne Peticolas, Esq.<br>Gibbons, PC<br>One Gateway Center<br>Newark, NJ  07102-5310<br>973-596-4751(T)<br>speticolas@gibbonslaw.com | 714-716 Clifton Avenue<br>Clifton, NJ |

11

| Newark Morning Ledger<br>1 Star Ledger Plaza<br>Newark, NJ 07102 | Daryl Kessler, Esq.<br>Sabin, Bermant & Gould, LLP<br>4 Times Square, 23rd floor<br>New York, NY<br>212-381-7026<br>dkessler@sbandg.com | 1 Star Ledger Plaza<br>Newark, NJ |
|---|---|---|
| Newell Rubbermaid, Inc.<br>29 E. Stephenson Street<br>Freeport, IL 60132 | Andrew Sawula, Esq.<br>Schiff Hardin LLP<br>One Westminster Place, Suite 200<br>Lake Forest, IL 60045<br>847-295-4336 (T)<br>asawula@schiffhardin.com | Goody Products<br>969 Newark Turnpike<br>Kearny, NJ |
| News America Inc.<br>767 Fifth Ave., 46th Floor<br>New York, NY 10153<br><br>fka News Publishing Australia,<br>Ltd., now Twenty-First Century<br>Fox America | Peter Simshauer, Esq.<br>Skadden, Arps, Slate, Meagher & Flom LLP<br>One Beacon Street<br>Boston, MA 02108-3194<br>617-573-4880(T)<br>psimshau@skadden.com | Chris-Craft Inc./Montrose<br>Chemical Co.<br>100 Lister Ave.<br>Newark, NJ |
| Occidental Chemical Corp.<br>Occidental Tower<br>5005 LBJ Freeway<br>Dallas, TX 75244 | Dennis F. Blake<br>Senior Vice President<br>Occidental Chemical Corp.<br>5005 LBJ Freeway<br>Dallas, TX 75244<br><br>Benjamin S. Lippard, Esq.<br>Vinson & Elkins, LLP<br>2200 Pennsylvania Avenue, Suite 500 West<br>Washington, CD 20037-1701<br>713-758-2528(T)<br>blippard@velaw.com | Diamond Shamrock<br>Chemicals Co.<br>80 and 120 Lister Ave.<br>Newark, NJ |
| The Okonite Company, Inc.<br>102 Hilltop Road<br>Ramsey, New Jersey 07446 | Francis Giuliano, Esq.<br>VP and General Counsel<br>The Okonite Company, Inc.<br>102 Hilltop Road<br>Ramsey, NJ 07446<br>201-825-0300(T) | Canal and Jefferson Streets<br>Passaic, NJ |
| Otis Elevator Co.<br>North America Operations<br>10 Farm Springs Road<br>Farmington, CT 06032 | Earl W. Phillips, Jr., Esq.<br>Robinson & Cole LLP<br>280 Trumbull Street<br>Hartford, CT 06103-3597<br>860-275-8220(T)<br>ephillips@rc.com | 1000 First St.<br>Harrison, NJ |

12

| | | |
|---|---|---|
| Pabst Brewing Company<br>9014 Heritage Parkway, Suite 308<br>Woodridge, IL   60517 | Eugene Kashper, Chairman & CEO<br>Pabst Brewing Company<br>10635 Santa Monica Blvd Ste 350<br>Los Angeles, CA 90025 | 400 Grove Street<br>Newark, NJ |
| Passaic Pioneer Properties<br>PO Box 327<br>35 Eighth Street<br>Passaic, NJ 07055 | Passaic Pioneer Properties<br>PO Box 327<br>35 Eighth Street<br>Passaic, NJ 07055<br>973-473-1050 (T) | 35 Eighth Street<br>Passaic, NJ |
| Pfizer Inc.<br>235 E. 42nd St.<br>New York, NY 10017 | Michael McThomas, Esq.<br>Michael P. McThomas PLLC<br>One Lee Hill Road<br>Andover, NJ  07821<br>973-691-4711(T)<br>973-985-3740(M)<br>mpm@mmctlaw.com | 230 Brighton Road<br>Clifton, NJ |
| PMC, Inc.<br>12243 Branford Street<br>Sun Valley, CA 91352 | Phillip Kamins, President & CEO<br>PMC Global, Inc.<br>12243 Branford St<br>Sun Valley, CA 91352<br>818-896-1101(T) | Kleer Kast<br>450 Schuyler Avenue<br>Kearny, NJ |
| Power Test of New Jersey, Inc.<br>125 Jericho Turnpike<br>Jericho, NY 11753<br><br>now Leemilt's Petroleum, Inc., successor to Power Test of NJ, Inc. | Christine Fitter, Asst Secretary<br>Leemilt's Petroleum, Inc.<br>125 Jericho Turnpike, Suite 103<br>Jericho, NY  11753<br>cfitter@gettyrealty.com<br><br>Nicole Moshang, Esq.<br>Manko, Gold Katcher & Fox LLP<br>401 City Avenue, Ste. 500<br>Bala Cynwyd, PA  19004<br>484-430-2324 (T)<br>nmoshang@mgkflaw.com | Getty Newark Terminal<br>86 Doremus Ave.<br>Newark, NJ |
| PPG Industries, Inc.<br>One PPG Place<br>Pittsburgh, PA 15272 | Peter T. Stinson, Esq.<br>Dickie McCamey & Chilcote P.C.<br>Two PPG Place, Suite 400<br>Pittsburgh, PA  15222-5402<br>412-392-5432(T)<br>pstinson@dmclaw.com | 29 Riverside Ave.<br>Newark, NJ |

| | | |
|---|---|---|
| PSE&G Corp.<br>P.O. Box 570<br>Newark, NJ 07101 | John F. Doherty, Esq.<br>Associate General Litigation Counsel<br>PSE&G Services Corporation<br>80 Park Plaza, T5D<br>Post Office Box 570<br>Newark, NJ  07102<br>973-430-6478(T)<br>John.doherty@pseg.com<br><br>Kevin R. Gardner, Esq.<br>Connell Foley<br>85 Livingston Avenue<br>Roseland, NJ  07068<br>973-535-0500(T)<br>kgardner@connellfoley.com | 155 Raymond Blvd.<br>Newark, NJ<br>&<br>4th St.<br>Harrison, NJ |
| Purdue Pharma Technologies, Inc.<br>One Stamford Forum<br>Stamford, CT 06901 | James (Jay) Stewart, Esq.<br>Lowenstein Sandler PC<br>65 Livingston Avenue<br>Roseland, NJ 07068<br>973-597-2522(T)<br>jstewart@lowenstein.com | Napp Technologies<br>199 Main St.<br>Lodi, NJ |
| Quality Distribution, Inc.<br>150 East Pennsylvania Avenue<br>Suite 450<br>Downingtown, PA 19335<br><br>Quality Carriers, Inc. | Bonni Kaufman, Esq.<br>Holland & Knight, LLP<br>2099 Pennsylvania Avenue, N.W.<br>Suite 100<br>Washington, DC  20006<br>202-419-2547<br>Telecopier:  202-955-5564<br>Bonni.kaufman@hklaw.com | Chemical Leaman Tank Lines<br>80 Doremus Avenue<br>Newark, NJ |
| Reilly Industries, Inc.<br>1510 Market Square Center<br>151 North Delaware St.<br>Indianapolis, IN 46204<br><br>now Vertellus Specialties Inc. | Thomas Mesevage, Esq.<br>Corporate Counsel, Environmental<br>Vertellus Specialties Inc.<br>900 Lanidex Plaza, Suite 250<br>Parsippany, NJ  07054-2739<br>973-515-8611(T)<br>973-945-7069(M)<br>tmesevage@vertellus.com<br><br>Glenn Harris, Esq.<br>Ballard Spahr Andrews & Ingersoll<br>Plaza 1000, Suite 500<br>Main Street<br>Voorhees, NJ  08043<br>856-761-3400(T)<br>harrisg@ballardspahr.com | 191 Doremus Ave.<br>Newark, NJ |

| | | |
|---|---|---|
| Roman Asphalt Corporation<br>14 Ogden Street<br>Newark, NJ 07104 | Michael La Morgese, President<br>Roman Asphalt Corporation<br>14 Ogden St<br>Newark, NJ 07104<br>973-482-1113(T) | 14 Ogden Street<br>Newark |
| Royce Associates<br>366 N. Broadway, Ste. 400<br>Jericho, NJ 11753 | A.J.Royce, President<br>Royce Associates, ALP<br>35 Carlton Ave<br>East Rutherford, NJ 07073<br>201-438-5200(T)<br><br>Ronald Bluestein, Esq.<br>Flamm Walton<br>794 Penllyn Pike<br>Blue Bell, PA 19422<br>267-419-1500 (T)<br>rbluestein@flammlaw.com | Royce Chemical Company<br>17 Carlton Avenue<br>East Rutherford, NJ |
| RSR Corp.<br>2777 Stemmons Freeway, Suite 1800<br>Dallas, TX 75207<br><br>now Revere Smelting and Refining Corporation | Jane C. Luxton, Esq.<br>Christopher Clare, Esq.<br>Clark Hill PLC<br>601 Pennsylvania Avenue NW<br>North Building, Suite 1000<br>Washington, DC 20004<br>202-572-8674(T)<br>703-598-3275(M)<br>jluxton@clarkhill.com<br>cclare@clarkhill.com | Revere Smelting & Refining<br>387 Avenue P<br>Newark, NJ |
| RTC Properties, Inc.<br>79 Fifth Avenue<br>New York, NY 10003 | Michael L. Rodburg, Esq.<br>Lowenstein Sandler, PC<br>65 Livingston Avenue<br>Roseland, NJ 07068<br>973-597-2466(T)<br>mrodburg@lowenstein.com | AT&T/Western Electric<br>100 Central Ave.<br>Kearny, NJ |
| S&A Realty Corp.<br>55 Passaic Avenue<br>Kearny, NJ 07032 | Jeffrey Pollock, Esq.<br>Fox Rothschild<br>P.O. Box 5231<br>Princeton, NJ 08543<br>609-896-7660(T)<br>jmpollock@foxrothschild.com | American Modern Metals<br>44 Passaic Ave. (a/k/a 25 Belgrove Drive)<br>Kearny, NJ |
| Safety Kleen Envirosystems Co.<br>1301 Gervais St.<br>Columbia, SC 29201<br><br>McKesson Corporation for itself and for Safety-Kleen Envirosystems, Inc. | John Edgcomb, Esq.<br>Law Offices of John Edgcomb<br>115 Sansome St., Suite 805<br>San Francisco, CA 94104<br>415-399-1555(T)<br>jedgcomb@edgcomb-law.com | 600 Doremus Ave.<br>Newark, NJ |

15

| | | |
|---|---|---|
| Schiffenhaus Packaging Corp.<br>c/o Rock-Tenn Company<br>504 Thrasher Street<br>Norcross, GA  30071 | Camille V. Otero, Esq.<br>Gibbons, PC<br>One Gateway Center<br>Newark, NJ  07102-5310<br>cotero@gibbonslaw.com | 204 Academy Street<br>49 Fourth Street<br>2013 McCarter Highway<br>Newark, NJ |
| Sequa Corporation<br>200 Park Avenue<br>New York, NY 10166 | Brian L. Buniva, Esq.<br>Senior Counsel & Senior Director<br>Environment, Health & Safety Sequa<br>Corporation<br>707 E. Main Street, Suite 1450<br>Richmond, VA 23219<br>845-230-7374 (Direct)<br>804-873-0610 (Mobile)<br>Brian_Buniva@sequa.com<br><br>Gary P. Gengel, Esq.<br>Kegan A. Brown, Esq.<br>Latham & Watkins, LLP<br>885 Third Avenue<br>New York, NY  10022-4834 | Sun Chemical Corporation<br>185 Foundry Street<br>Newark, NJ<br>(prior to 1987) |
| Seton Company, Inc.<br>1000 Madison Avenue<br>Norristown, PA 19403\<br><br>now Seton Tanning | Lawrence E. Bradford, Esq.<br>Cole Schotz, PC<br>PO Box 800<br>25 Main Street<br>Hackensack, NJ  07601-7015<br>201-525-6205(T)<br>lbradford@coleschotz.com | Seton Leather Company<br>849 Broadway<br>Newark, NY  07104 |
| SpectraServ, Inc.<br>75 Jacobus Avenue<br>Kearny, NJ 07032 | Diana Buongiorno, Esq.<br>Chiesa Shahinian & Giantomassi, PC<br>One Boland Dr<br>West Orange, NJ 07052<br>973-530-2075(T)<br>dbuongiorno@csglaw.com | 75 Jacobus Ave.<br>Kearny, NJ |
| STWB, Inc.<br>c/o Bayer Corporation<br>100 Bayer Road<br>Pittsburgh, PA  15205 | Timothy I. Duffy, Esq.<br>Coughlin Duffy LLP<br>Post Office Box 1917<br>350 Mount Kemble Avenue<br>Morristown, NJ  07962-1917<br>973-631-6002(T)<br>tduffy@coughlinduffy.com<br>lhall@coughlinduffy.com (Assistant) | Lehn & Fink Products Corp.<br>192-194 Bloomfield Avenue<br>Bloomfield, NJ 07003<br><br>Thomasett Colors/Sterling<br>120 Lister Ave.<br>Newark, NJ |

16

| | | |
|---|---|---|
| Sun Chemical Corporation<br>35 Waterview Boulevard<br>Parsippany, NJ 07054-1285 | Warren W. Faure, Esq.<br>EH&S Counsel<br>Sun Chemical Corporation<br>35 Waterview Boulevard<br>Parsippany, NJ 07054<br>973-404-6590(T)<br>Warren.faure@sunchemical.com<br><br>Ted Wolff, Esq.<br>Manatt, Phelps & Phillips, LLP<br>7 Times Square<br>New York, NY 10036<br>twolff@manatt.com | Sun Chemical Corporation<br>185 Foundry Street<br>Newark, NJ<br>(1987 to present) |
| Teval Corporation<br>99 Cherry Hill Road, Suite 105<br>Parsippany, NJ 07054 | Lee D. Henig-Elona, Esq.<br>Gordon & Rees<br>18 Columbia Turnpike, Suite 220<br>Florham Park, NJ 07932<br>973-549-2520(T direct)<br>973-549-2500(T office)<br>lhenig-elona@gordonrees.com | Guyon Pipe<br>900-1000 South 4th Street<br>Harrison, NJ |
| Teva Pharmaceuticals USA, Inc.<br>1090 Horsham Road<br>North Wales, PA 19454 | Gail Port, Esq.<br>Proskauer Rose LLP<br>11 Times Square<br>New York, NY 10036-8299<br>212-969-3243(T)<br>gport@proskauer.com | Biocraft Laboratories<br>12 Industrial Park<br>Waldwick, NJ |
| Textron, Inc.<br>40 Westminster Street<br>Providence, RI 02903 | Jamie Schiff, Esq.<br>Textron, Inc.<br>40 Westminster Street<br>Providence, RI 02903<br>401-457-2422 (T)<br>jschiff@textron.com | Spencer Kellogg Division<br>400 Doremus Avenue |
| The Andrew Jergens Co.<br>2535 Spring Grove Ave.<br>Cincinnati, OH 45214<br><br>now KAO U.S.A Inc. | Richard T. La Jeunesse, Esq.<br>Graydon Head & Ritchey LLP<br>1900 Fifth Third Center<br>511 Walnut Street<br>Cincinnati, OH 45202<br>513-629-2702(T)<br>rlajeunesse@graydon.com | 1 Franklin Ave.<br>Belleville, NJ |

17

| | | |
|---|---|---|
| The BOC Group, Inc.<br>575 Mountain Avenue<br>Murray Hill, NJ 07974<br><br>now Linde LLC on behalf of<br>The BOC Group, Inc. | James (Jay) Stewart, Esq.<br>Lowenstein Sandler PC<br>65 Livingston Avenue<br>Roseland, NJ 07068<br>973-597-2522(T)<br>jstewart@lowenstein.com<br><br>Mike Resh, Esq.<br>The BOC Group, Inc.<br>575 Mountain Avenue,<br>Murray Hill, NJ 07974<br>Mike.resh@boc.com | 681 Main Street<br>Belleville, NJ |
| The Hartz Mountain<br>Corporation<br>400 Plaza Drive<br>Secaucus, NJ 07094<br><br>The Hartz Consumer Group,<br>Inc. on behalf of The Hartz<br>Mountain Corporation | Curtis L. Michael, Esq.<br>VP and Assistant General Counsel<br>The Hartz Consumer Group, Inc.<br>400 Plaza Drive<br>PO Box 1515<br>Secaucus, NJ 07096-1515<br>201-272-5306 (T)<br>curt.michael@hartzmountain.com | 600/700 South 4th Street<br>Harrison, NJ |
| The Newark Group, Inc.<br>20 Jackson Drive<br>Cranford, NJ 07016 | David M. Meezan, Esq.<br>Kazmarek Mowrey Cloud Laseter LLP<br>1230 Peachtree Street N.E.<br>Suite 3600<br>Atlanta, GA 30309<br>404-969-0733<br>dmeezan@kmcllaw.com | The Newark Boxboard Co.<br>17 Blanchard Street<br>Newark, NJ |
| The Sherwin Williams Co.<br>101 Prospect Ave., N.W.<br>Cleveland, OH 44115 | Donald McConnell, Esq.<br>The Sherwin Williams Co.<br>101 Prospect Ave, NW<br>Cleveland, OH 44115<br>216-566-3741(T)<br>216-515-4400(F)<br>don.j.mcconnell@sherwin.com<br><br>Herbert (Bart) Bennett, Esq.<br>Sokol, Behot & Fiorenzo<br>229 Nassau Street<br>Princeton, NJ 08542-4601<br>609-279-0900(T)<br>hbbennett@sbflawfirm.com | 60 Lister Ave.<br>Newark, NJ |
| The Stanley Works<br>1000 Stanley Drive<br>New Britain, CT 06053<br><br>now Stanley Black & Decker,<br>Inc. | Andrew Kolesar, Esq.<br>Thompson Hine LLP<br>312 Walnut Street, 14th Floor<br>Cincinnati, OH 45202<br>513-352-6545(T)<br>andrew.kolesar@thompsonhine.com | Stanley Tools<br>140 Chapel St.<br>Newark, NJ |

18

| | | |
|---|---|---|
| Three County Volkswagen<br>701 Riverside Ave.<br>Lyndhurst, NJ 07071 | Miriam Villani, Esq.<br>Sahn Ward & Baker PLLC<br>333 Earle Ovington Blvd, Suite 601<br>Uniondale, NY 11553<br>516-228-1300(T)<br>mvillani@swcblaw.com | 701 Riverside Ave.<br>Lyndhurst, NJ |
| Tiffany & Co.<br>727 Fifth Avenue<br>New York, NY 10022 | John Klock, Esq.<br>Gibbons, PC<br>One Gateway Center<br>Newark, NJ 07102-5310<br>973-596-4757 (T)<br>jklock@gibbonslaw.com | 820 Highland Avenue<br>Newark, NJ |
| Unilever Bestfoods<br>International Plaza<br>Sylvan Avenue<br>Englewood Cliffs, NJ 07632<br><br>Conopco, Inc., d/b/a Unilever<br>(as successpr to CPC/Bestfoods,<br>former parent of the Penick<br>Corporation | Andrew Shakalis, Esq.<br>Associate General Counsel – Environmental<br>& Safety<br>Unilever<br>700 Sylvan Avenue<br>Englewood Cliffs, NJ 07632<br>201-894-2763 (T)<br>201-894-2727 (F)<br>Andrew.shakalis@unilever.com | Penick Corporation<br>540 New York Avenue<br>Lyndhurst, NJ |
| Viacom Inc.<br>11 Stanwix St.<br>Pittsburgh, PA 15222<br><br>Now CBS Corporation | Jeffrey B. Groy, Esq.<br>VP, Sr. Counsel/ Environmental<br>CBS Corporation<br>333 West Wacker Drive, 27th Floor<br>Chicago, IL 60606<br>312-288-3851(T)<br>312-288-3801(F)<br>Jeff.Groy@cbs.com | Westinghouse Electric<br>95 Orange St.<br>Newark, NJ |

19

| | | |
|---|---|---|
| Vulcan Materials Co.<br>1200 Urban Center Drive<br>Birmingham, AL 35242<br><br>Now Legacy Vulcan Corp. | Eva Fromm O'Brien, Esq.<br>Fulbright & Jaworski<br>Fulbright Tower<br>1301 McKinney<br>Suite 5100<br>Houston, TX 77010-3095<br>713-651-5321 (T)<br>713-651-5246 (F)<br>eobrien@fulbright.com<br><br>John M. Floyd, Esq.<br>Senior Attorney<br>Vulcan Materials Company<br>1200 Urban Center Drive<br>Birmingham, AL 35242<br>205-298-3745 (Direct)<br>205-492-4219 (Cell)<br>205-298-2960 (F)<br>floydj@vmcmail.com | 600 Doremus Ave.<br>Newark, NJ |
| Wiggins Plastics Inc.<br>186 Kingsland Road<br>Clifton, NJ 07014 | Glenn Tucker, Esq.<br>Sheryl Reba, Esq.<br>sreba@greenbergdauber.com<br>Greenberg Dauber<br>One Gateway Center, Suite 600<br>Newark, NJ 07102<br>973-643-3700(T)<br>973-643-1218(F)<br>gtucker@greenbergdauber.com | 180 Kingsland Road<br>Clifton, NJ |
| Wyeth<br>5 Giralda Farms<br>Madison, NJ 07940 | Ronald J. Schott, Esq.<br>Corporate Counsel<br>Pfizer<br>5 Giralda Farms<br>Madison, NJ 07940<br>973-660-6641(T)<br>973-660-7176(F)<br>ronald.schott@pfizer.com<br><br>Seth Kerschner, Esq.White & Case LLP<br>1155 Avenue of the Americas<br>New York, NY 10036-2787<br>212-819-8630(T)<br>212-354-8113(F)<br>Seth.kerschner@whitecase.com | Shulton Inc. and<br>American Cyanamid Co.<br>697 Route 46<br>Clifton, NJ |

20

## New Recipients of Notice Letters

| | | |
|---|---|---|
| Palin Enterprises | Mr. Michael Palin<br>Palin Enterprises<br>235 Park Avenue South, #8<br>New York, NY 10003-1045 | American Modern Metals<br>44 Passaic Ave. (a/k/a 25<br>Belgrove Drive)<br>Kearny, NJ |
| Passaic Valley Sewerage Commission | Gregory A. Tramontozzi, Esq<br>Executive Director<br>Passaic Valley Sewerage Commissioners<br>600 Wilson Avenue<br>Newark, NJ 07105<br><br>Michael Witt, Esq.<br>Chasan Leyner & Lamparello, PC<br>300 Harmon Meadow Blvd.<br>Secaucus, NJ 07094<br>201-801-6093<br>mwitt@chasan.com | |
| City of Newark | Honorable Ras J. Baraka, Mayor<br>City of Newark<br>City Hall<br>920 Broad Street, Suite 200<br>Newark, New Jersey 07102<br><br>City of Newark Department of Law<br>Room 316, City Hall<br>920 Broad Street<br>Newark, NJ 07102 | |
| Borough of East Newark | Honorable Joseph R. Smith, Mayor<br>Borough of East Newark<br>34 Sherman Avenue<br>East Newark NJ 07029 | |
| Town of Harrison | Honorable James A. Fife, Mayor<br>Town of Harrison<br>318 Harrison Avenue<br>Harrison, New Jersey 07029<br><br>Mr. Paul J. Zarbetski, Esq.<br>Town of Harrison<br>318 Harrison Avenue<br>Harrison, New Jersey 07029 | |
| Town of Kearny | Honorable Alberto G. Santos, Mayor<br>Town of Kearny<br>402 Kearny Avenue<br>Kearny, NJ 07032 | |

21

# Declaration of Alice Yeh

# Exhibit B

# May 1, 2018, letter from Juan Fajardo (EPA) to David Mandelbaum



**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY**
REGION 2
290 BROADWAY
NEW YORK, NY 10007-1866

MAY − 1 2018

<u>By Email and Regular Mail</u>

David G. Mandlebaum, Esq.
Eric S. Aronson, Esq.
Greenberg Traurig, LLP
2700 Two Commerce Square
2001 Market Street
Philadelphia, PA 19103

Re:     <u>Diamond Alkali Superfund Site ("Site") - OU2 Allocation Proceeding</u>

Dear Messrs. Mandlebaum and Aronson:

We understand that David Batson of AlterEcho will be responding to your letter of April 10, 2016 [sic] regarding the allocation process for Operable Unit 2 (OU2) of the Diamond Alkali Superfund Site (Site). There are, however, statements in your letter that the U.S. Environmental Protection Agency (EPA) Region 2 seeks to clarify and correct.

The OU2 allocation process is not mandatory. As you know, Eric Wilson of EPA issued a letter dated September 18, 2017 to 80 potentially responsible parties (PRPs) inviting those parties to participate in the allocation. Some of the parties have declined to do so, including, as you note, Occidental Chemical Corporation (OCC). That EPA's contractor AlterEcho, after consideration of the facts through the allocation, will assign a share to all 80 PRPs invited to participate does not make participation in the allocation process mandatory.

Your letter also states that EPA prohibited the parties from undertaking their own allocation. That is not the case. Rather than preventing the parties from undertaking an allocation, EPA initiated the allocation process because of the unwillingness (or inability) of the PRPs to undertake and complete their own allocation. For example, the Lower Passaic River Cooperating Parties Group (CPG) retained an allocator in 2015, but failed to complete the allocation. Similarly, in 2012, the CPG initiated an allocation effort intended to apply to the costs of the removal action at River Mile 10.9, an effort that also was unsuccessful. This track record is what has led EPA to offer the PRPs the opportunity to participate in the present allocation process.

Initially, EPA intended to facilitate a more limited allocation process than the present one. As you know, EPA intended to limit the allocation to parties not associated with the release of dioxin, furans and polychlorinated biphenyls (PCBs), the contaminants of concern (COCs) driving the remedy for OU2. Numerous parties contacted EPA, requesting that we expand the allocation process to include all the OU2 PRPs. After much consideration, EPA agreed to include all OU2 PRPs, apart from the PRPs that settle pursuant to EPA's "early" cash out settlement offered in March 2017, and the Passaic Valley Sewerage Commission and four municipal PRPs.

Further, EPA has responded to concerns raised by parties participating in the allocation and supplemented the allocation contract to allow the parties to submit additional documents, to provide additional time for the parties to consult with the allocator and to include an "off-ramp" in the allocation process.

Confidentiality

For the OU2 allocation, confidentiality is addressed in EPA's prime contract with CSRA (through which EPA retained AlterEcho), [1] and in the Task Order Statement of Work (SOW), pursuant to which AlterEcho is performing the allocation. The SOW, a copy of which was provided to the allocation parties, contains the confidentiality terms in EPA's agreement with CSRA-AlterEcho and references the Administrative Dispute Resolution Act of 1996 (ADR Act).

Section 2.0 of the SOW states, in relevant part:

> Unless otherwise noted herein, all allocation related communications by the CSRA Team involving the OU2 PRPs or representatives of EPA or DOJ, individually or in groups, will be held confidential pursuant to the provisions of the ADR Act of 1996, 5 USC 574.

> In order to ensure a common expectation of confidentiality, all PRP participants in the allocation process will be required to enter, and EPA will appropriately acknowledge, a confidentiality agreement.

Section 3.0 of the SOW reads, in relevant part:

> CSRA will approach this task in accordance with the basic terms of the contract and according to the established norms and ethical standards of ADR professionals. Except as otherwise noted herein, information provided to the ADR professional by any of the parties, including EPA, communications between parties and the ADR professional, and notes and dispute resolution work product generated by the ADR professional during

---

[1] The allocation parties were also provided with the web link (https://www.epa.gov/sites/production/files/2015-09/documents/adr_contract_sow.pdf) to EPA's prime contract with CSRA when the OU2 allocation SOW was provided to the parties.

work pursuant to the Task Order will be maintained as confidential by the ADR professional pursuant to the provisions of the ADR Act of 1996 (Public Law 104-320; 5 USC 571 et al.) and applicable federal, state and judicial requirements.

The information that is not confidential is noted in Section 4, Task 3 of the SOW that reads, in relevant part:

> The allocation process will be designed based upon information received during consultations with EPA and OU2 PRPs on the allocation database and using all relevant non-confidential received information, including data, records, and other documents.

> No confidential information will be included in the allocation database. Though to be designed for purposes of conducting the allocation, the database will be designed in such a way as to allow access and use by EPA and DOJ staff for their settlement purposes following submission of the Allocation Data Reports in Task 8.

Confidentiality is also addressed in the ADR Act, a federal statute that EPA, as a federal agency, is required to abide by even in the absence of a signed confidentiality agreement. The Interagency ADR Working Group, established by Presidential Memorandum dated May 1, 1998, provides guidance on the confidentiality provisions of the ADR Act at https://www.adr.gov/adrguide/ch29.html. In summary, the guidance states the following:

- The ADR Act affirmatively bans neutrals from voluntarily disclosing dispute resolution communications and any communication provided in confidence to the neutral unless one of four statutory exceptions apply (see guidance for exceptions).
- Parties to an ADR proceeding have a similar prohibition on releasing information unless one of seven exceptions apply. Those exceptions include the following (see guidance for a listing of all seven exceptions):
    - Dispute resolution communications relevant in disputes involving a settlement agreement reached in an ADR; and
    - A dispute resolution communication **(except those generated by the neutral)** that was provided or available to all parties to the ADR proceeding.
- The common law of evidence and Federal Rules of Evidence (FRE) 408 have long restricted the admission of settlement discussions – like those in ADR – into evidence to prove or disprove liability or a defense.
- It should be noted that confidentiality clauses in a settlement agreement may not withstand a request under FOIA

3

With the above guidance in mind, EPA has endeavored to protect the confidentiality of the OU2 allocation communications as much as possible in the following ways:

- EPA does not participate in the meetings between AlterEcho and the allocation parties.
- The allocation work plan specifies that AlterEcho will provide summaries of input obtained from the allocation parties at various steps in the allocation process, without attribution to contributions of individual participants.
- AlterEcho will not share with EPA the position briefs and reply briefs submitted by the allocation parties.

However, given the limitations in the ADR Act, there are allocation documents that EPA does not believe can be protected. First, the nexus documents contained in the document repository (or SharePoint site) are not confidential. In addition, EPA does not expect it will be able to protect the data in the allocation database from disclosure under FOIA or common law protection or privilege. Accordingly, the SOW specifies that "No confidential information will be included in the allocation database".[2] The allocation parties should not, therefore, include confidential information in their submissions to the document repository. If a document is within the categories of documents that must be submitted and certified to, and it contains confidential business information, it would be prudent to redact the protected information. If the allocation parties are concerned that the certification requires them to submit documents or material that is entitled to confidentiality under the attorney-client privilege or other privilege, that concern could be resolved by addressing the language of the certification.

With respect to the Allocation Data Reports and the draft and final Allocation Recommendation Reports, which are the work product of neutral but that the allocation parties and EPA will all receive and review, EPA has the following observations:

- In responding to a FOIA request, EPA may assert FOIA Exemption 3, which allows the withholding of information prohibited from release by another federal statute, in this case the ADR Act, as a basis to withhold disclosure of any confidential communication in the possession of an internal neutral. Note that this protection from disclosure pursuant to FOIA does not apply to communications not protected by the ADR Act, such as written communications shared directly by a party with all other parties to the process, even if the parties have agreed in writing that such communications are confidential. Also, because the contents of the Data Reports and the draft and final Allocation Recommendation Reports will be shared with the allocation parties and EPA, and will be relevant to any settlement that the United States is able to enter into, it is possible that

---

[2] Also note that the ADR Act does not protect documents that are exchanged during an ADR process but were produced for an entirely different purpose, and are not otherwise protected from disclosure, such as a document required to be prepared by regulation or discussions regarding an unrelated subject. Much of the information submitted by the allocation parties is likely to fall into this category.

the data reports and the final allocation report cannot be protected from disclosure under FOIA, unless they are deemed to comprise communications generated by the neutral, which under Section 574(7) would not be subject to release.

As described in EPA's September 18, 2017 letter, the OU2 allocation is intended to result in cash-out settlement offers from EPA to those parties that are not associated with the release or disposal of dioxin, furans and/or PCBs, and is also intended to identify those parties that should participate in consent decree negotiations for the performance of the remedial action for OU2 due to their association with the release or disposal of dioxin, furans and/or PCBs into the lower 8.3 miles of the Lower Passaic River.

Any settlement entered into by EPA will require public notice before becoming effective, thereby providing interested parties with an opportunity to comment on the proposed settlement. EPA will respond to comments received and may modify or withdraw from the proposed settlement if comments demonstrate that the proposed settlement is inappropriate, improper or inadequate. In responding to any such comments, and in seeking entry by the court of a consent decree, EPA will very likely need to rely on documentary evidence. EPA, along with the Department of Justice, will make every effort to use documents that are not confidential, such as those from the SharePoint site. However, even if the court were to request the Allocation Recommendation Report, EPA and the Department of Justice can take steps to protect it, such as objecting or moving to file it under seal.

We hope this letter clarifies for you EPA's position with respect to the various categories of information that will be part of the OU2 allocation process.

Sincerely,

Juan M. Fajardo
Assistant Regional Counsel

cc:     David Batson, Esq., AlterEcho *(by email)*
        Brian Donohue, Esq., USDOJ *(by email)*
        Laura Rowley, Esq., USDOJ *(by email)*
        David Moora, Esq., US EPA *(by email)*
        Allocation Parties, Appendix A *(by email)*

5

**Appendix A**
**Diamond Alkali Superfund Site - Operable Unit 2**
**Participating Allocation Parties**

1. 21st Century Fox
2. Alliance Chemical
3. Arkema / Legacy Site Services
4. Ashland
5. Atlantic Richfield
6. Atlas Refinery
7. BASF
8. Benjamin Moore
9. Campbell Foundry
10. Canning Gumm
11. CBS Corp
12. Celanese
13. Chargeurs
14. Chevron Environmental Management
15. Coats & Clark
16. Congoleum
17. Conopco
18. Cooper Industries
19. Covanta Essex
20. Croda
21. Curtiss Wright
22. Darling Ingredients
23. DII
24. Eden Wood
25. Elan Chemical
26. EnPro Holdings
27. EPEC Polymers
28. Essex Chemical
29. Everett Smith Group
30. Franklin Burlington
31. Garfield Molding
32. General Electric
33. Givaudan Fragrances
34. Goodrich
35. Hartz Consumer Group
36. Hexcel
37. Hoffman – LaRoche
38. Honeywell
39. ISP Chemicals
40. ITT/Excelis/Harris
41. Kearney Smelting
42. Leemilt Petroleum
43. Legacy Vulcan
44. Lucent Technologies
45. National Standard
46. Newark Group
47. Newark Morning Ledger
48. Newell Brands
49. Okonite
50. Otis Elevator
51. Palin Industries
52. Pabst Brewing
53. Passaic Properties
54. Pharmacia
55. Pitt-Consol Chemical
56. PPG Industries
57. PSEG
58. Purdue Pharma Technologies
59. Quality Carriers
60. Revere Smelting
61. Safety Kleen – McKesson
62. Sequa
63. Sherwin Williams
64. Spectraserv
65. Stanley Back & Decker
66. STWB
67. Sun Chemical
68. Tate & Lyle
69. Teval
70. Textron
71. Tiffany

# Declaration of Alice Yeh

# Exhibit C

# March 30, 2017, letter from
# Eric J. Wilson, EPA



**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY**

REGION II

290 BROADWAY

NEW YORK, NEW YORK 10007-1866

**MAR 3 0 2017;**

BY CERTIFIED MAIL,
RETURN RECEIPT REQUESTED & ELECTRONIC MAIL

To:    See List of Addressees – Attachment A

Re:    Diamond Alkali Superfund Site, Lower 8.3 Miles of Lower Passaic River,
       Essex and Hudson Counties, New Jersey

       Notice regarding Next Steps Including Initial Cash Out Settlement

The United States Environmental Protection Agency ("EPA") has documented the release and threatened release of hazardous substances, pollutants and contaminants at the Diamond Alkali Site ("Site") in Essex, Bergen, Hudson and Passaic Counties, New Jersey. The Site includes the former Diamond Alkali facility at 80-120 Lister Avenue, Newark, New Jersey, the Lower Passaic River Study Area ("LPRSA"), the Newark Bay Study Area, and the areal extent of contamination.

The Site was placed on the National Priorities List ("NPL") in 1984. In 1987, EPA issued a Record of Decision for Operable Unit 1 ("OU1"), the former Diamond Alkali facility at 80-120 Lister Avenue, Newark, New Jersey. On March 3, 2016, EPA issued a ROD for Operable Unit 2 ("OU2"), the lower 8.3 miles of the Lower Passaic River. Currently, remedial investigation/feasibility studies are being conducted for the 17-mile LPRSA and the Newark Bay Study Area.

The OU2 ROD was issued by EPA to address human health and environmental risks posed by contaminated sediments found in the lower 8.3 miles of the Lower Passaic River, an area from the river's confluence with Newark Bay to River Mile 8.3 near the border between the City of Newark and Belleville Township, New Jersey. The OU2 ROD calls for, among other things, the construction of an engineered cap bank to bank over the river bottom of the lower 8.3 miles of the river, dredging of the river bottom prior to placement of the cap, and implementation of institutional controls designed to protect the engineered cap.

On March 31, 2016, EPA notified each Addressee that it may be a potentially responsible party under Section 107(a) of the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended ("CERCLA"), 42 U.S.C. § 9607(a), with respect to OU2 for the Site. That letter also notified the recipients that EPA intended to: a) negotiate a settlement with Occidental Chemical Corporation ("OCC") for OCC's performance of the remedial design
for the remedy selected in the OU2 ROD; b) negotiate a remedial action consent decree under which OCC and other major parties will implement and pay for the remedy selected in the OU2 ROD; and c) identify parties that may be eligible for a cash out settlement with EPA for the lower 8.3 miles of the Lower Passaic River.

On September 30, 2016, EPA and OCC entered into Administrative Settlement Agreement and Order on Consent for Remedial Design, CERCLA Docket No. 02-2016-2021, for OCC's performance of the remedial design selected in the OU2 ROD, under EPA oversight.

**NEXT STEPS**

As of the date of this letter, EPA is notifying 20 parties that EPA has identified them as candidates for early cash out settlements. The 20 parties are listed in the enclosure to this letter. EPA has identified for immediate settlement those parties that are not associated with a disposal or release of any of the contaminants of concern ("COCs") for OU2, as identified in the OU2 ROD.

Parties that are responsible for the release or discharge of dioxins, furans, or polychlorinated biphenyls ("PCBs") into the Lower Passaic River should participate in implementing or funding the remedy selected for the lower 8.3 miles of the Lower Passaic River. EPA will provide notice to those parties shortly, as well as an opportunity to meet with EPA to discuss their status.

For parties that are not one of the 20 early cash out parties and are also not associated with the release of dioxins, furans, or PCBs into the Lower Passaic River, a cash out settlement might be appropriate. This determination requires additional complex settlement analysis. EPA expects to use the services of a third party allocator before extending cash out settlement offers to any such party. In a subsequent letter, EPA will identify the parties that should be part of the allocation process. There will be a future opportunity for OU2 PRPs to offer input on the factors that they think should be considered in the allocation process, and to provide feedback on the overall design of the allocation process.

If you have any questions regarding this letter, you may contact Juan Fajardo via email at fajardo.juan@epa.gov or by phone at (212) 637-3132.

We look forward to working with you.

Sincerely yours,

Eric J. Wilson
Deputy Director for Enforcement and Homeland Security
Emergency and Remedial Response Division

Enclosure: List of Early Cash Out Parties

cc: Brian Donohue, Esq., USDOJ
    Mark Barash, Esq., USDOI
    Kate Barfield, Esq., NOAA
    John Dickinson, Esq., New Jersey Attorney General's Office

**Attachment A - List of Addressees**

**Diamond Alkali Superfund Site**
**Lower 8.3 Miles - Passaic River**
**Notice of Next Steps**

| Company | Contact Information | Facility |
|---------|-------------------|----------|
| A.E. Staley Manufacturing Co., Inc.<br>2200 E. Eldorado Street<br>Decatur, IL 62521-1578<br><br>Now Tate & Lyle Ingredients Americas LLC | John R. Holsinger, Esq.<br>Two University Plaza, Suite 300<br>Hackensack, NJ 07601<br>201-487-9000 (T)<br>johnh@jrholsinger.com<br><br>Heidi R. Balsley, Esquire<br>Corporate Counsel<br>A.E. Staley<br>Manufacturing Co., Inc.<br>2200 E. Eldorado Street<br>Decatur, IL 62521<br>Heidi.Balsley@tateandlyle.com | 320 Schuyler Avenue and 100 Third Avenue<br>Kearny, NJ |
| Alcan Corporation<br>Two Alliance Center<br>3560 Lenox Rd<br>Atlanta, GA 30326<br><br>Now Novelis Corp. | John Tillman, Esq.<br>North American Regional Counsel<br>Novelis Corporation<br>Two Alliance Center<br>3560 Lenox Rd<br>Atlanta, GA 30326<br>404-760-4049 (T)<br>John.tillman@novelis.com | Jacobus Ave.<br>Kearny, NJ |
| Alden Leeds Inc.<br>55 Jacobus Ave.<br>Kearny, NJ 07032 | Mark Epstein, President<br>Alden Leeds Inc.<br>55 Jacobus Ave.<br>Kearny, NJ 07032<br><br>Joseph Fiorenzo, Esq.<br>Sills Cummis & Gross<br>The Legal Center<br>One Riverfront Plaza<br>Newark, NJ 07102<br>973-643-7000 (T)<br>jfiorenzo@sillscummis.com | 2145 McCarter Highway<br>Newark, NJ<br><br>55 Jacobus Avenue<br>Kearny, NJ |
| Alliance Chemical, Inc.<br>Linden Avenue<br>Ridgefield, NJ 07657 | Fredi Pearlmutter, Esq.<br>Lindabury, McCormick, Estabrook & Cooper, P.C.<br>53 Cardinal Drive<br>Box 2369<br>Westfield, NJ 07091<br>908-233-6800 (T)<br>fpearlmutter@lindabury.com | 33 Avenue P<br>Newark, NJ |

| | | |
|---|---|---|
| American Ref-Fuel Co.<br>155 Chestnut Ridge Road<br>Montvale, NJ 07645<br><br>Now Covanta Essex Company | Nancy Tammi, Esq.<br>VP, Associate General Counsel<br>Covanta<br>445 South Street<br>Morristown, NJ 07960<br>862-345-5133 | 183 Raymond Blvd & 66<br>Blanchard St<br>Newark, NJ |
| | Barbara Hopkinson Kelly, Esq.<br>Wilson Elser Moskowitz Edelman &<br>Dicker LLP<br>200 Campus Drive<br>Florham Park, NJ 07932-0668<br>973.735.5765 (Direct)<br>609.213.8589 (Cell)<br>973.624.0808 (Fax)<br>barbara.kelly@wilsonelser.com | |
| Arkema Incorporated<br>2000 Market Street<br>Philadelphia, PA 19103-3222 | Paula Martin, Esq.<br>Doug Loutzenhiser<br>Legacy Site Services, LLC<br>468 Thomas Jones Way, Suite 150<br>Exton, PA 19341-2528<br>Paula.martin@total.com | Wallace & Tiernan<br>25 Main Street<br>Belleville, NJ |
| Ashland, Inc.<br>5200 Blazer Parkway<br>Dublin, OH 43017 | Robin E. Lampkin<br>Ashland Inc.<br>5200 Blazer Parkway<br>Dublin, OH 43017<br>Telephone: 614-790-3019<br>realmpkin@ashland.com<br><br>William S. Hatfield, Esq.<br>Gibbons P.C.<br>One Gateway Center<br>Newark, NJ 07102<br>whatfield@gibbonslaw.com | 221 Foundry St.<br>Newark, NJ |
| Atlas Refining, Inc.<br>142 Lockwood Street<br>Newark, NJ 07105<br><br>Now Atlas Refinery, Inc. | Steven Schroeder, Jr., President & CEO<br>Atlas Refinery, Inc.<br>142 Lockwood Street<br>Newark, NJ 07105<br><br>Thomas Ryan, Esq.<br>Laddey, Clark & Ryan LLP<br>60 Blue Heron Road, Suite 300<br>Sparta, NJ 07871<br>973-729-1880(T)<br>tryan@lcrlaw.com | 142 Lockwood St.<br>Newark, NJ |

2

| | | |
|---|---|---|
| Automatic Electro Plating Corp.<br>185 Foundry Street, Suite 3<br>Newark, NJ 07105 | Michael O'Rourke, President<br>Automatic Electro Plating Corp.<br>1017 Applegate Parkway<br>Waxhaw, NC 28173-6738<br>Michael.orourke@aol.com | 185 Foundry Street Complex<br>Newark, NJ<br>(Bldgs 19, 21, 22) |
| BASF Catalysts LLC<br>100 Campus Drive<br>Florham Park, NJ | Karyllan D. Mack, Esq. (see below) | Engelhard Corporation<br>One West Central Avenue<br>East Newark, NJ |
| BASF Corp.<br>3000 Continental Drive<br>Mount Olive, NJ 07828 | Karyllan D. Mack, Esq.<br>Environmental Counsel<br>BASF Corporation<br>100 Park Avenue<br>Florham Park, NJ 07932<br>Karyllan.mack@basf.com<br><br>David Schneider, Esquire<br>Bressler, Amery & Ross<br>Post Office Box 1980<br>Morristown, NJ 07962<br>dschneider@bressler.com | 50 Central Ave.<br>Kearny, NJ<br>&<br>150 Wagaraw Rd<br>Hawthorne, NJ |
| Belleville Industrial Center<br>681 Main Street<br>Building 43<br>Belleville, NJ 07109 | Carol Shapiro, President<br>Belleville Industrial Center<br>681 Main Street, Building 43<br>Belleville, NJ 07109<br>973-751-0400 (T)<br>shappyfam@aol.com<br><br>Ryder T. Ulon, Esq,<br>Gary F. Werner, Esq.<br>Schenck, Price, Smith & King, LLP<br>220 Park Avenue<br>Post Office Box 991<br>Florham Park, NJ 07932<br>973-540-7321 (T)<br>rtu@spsk.com<br>gfw@spsk.com | Helion Industries, Inc.<br>681 Main St.<br>Belleville, NJ |

| Benjamin Moore & Co.<br>51 Chestnut Ridge Rd.<br>Montvale, NJ 07645 | Mark Boyland, Esq.<br>Paul Sangillo, Esq.<br>Benjamin Moore & Co.<br>101 Paragon Drive<br>Montvale, NJ 07645<br>201.949.6318 (T)<br>Mark.boyland@benjaminmoore.com<br>Paul.sangillo@benjaminmoore.com<br><br>Eric S. Aronson, Esq.<br>David G. Mandelbaum, Esq.<br>GreenbergTraurig<br>500 Campus Drive<br>Suite 400<br>Florham Park, NJ 07932<br>aronsone@gtlaw.com<br>973-360-7935 | 134 Lister Ave.<br>Newark, NJ |
| Berol Corporation<br>c/o Newell Rubbermaid Inc.<br>2707 Butterfield Road, Suite 100<br>Oak Brook, IL 60523 | Andrew Sawula, Esq.<br>Schiff Hardin LLP<br>One Westminster Place, Suite 200<br>Lake Forest, IL 60045<br>847-295-4336 (T)<br>asawula@schiffhardin.com | Faber-Castell Corporation<br>41 Dickerson Street<br>Newark, NJ |
| Campbell Foundry Company<br>800 Bergen Street<br>Harrison, NJ 07029 | Timothy J. Corriston, Esq.<br>Connell Foley LLP<br>85 Livingston Avenue<br>Roseland, NJ 07068<br>973-535-0500 (T)<br>tcorriston@connellfoley.com | 800 Bergen Street<br>Harrison, NJ |
| Canning Gum LLC<br>c/o MacDermid Incorporated<br>1401 Blake Street<br>Denver, CO 80202 | John Cordani, Esq.<br>VP, General Counsel<br>MacDermid Inc.<br>245 Freight Street<br>Waterbury, CT 06702 | Frederick Gumm Chemical Co.<br>538 Forest Street<br>Kearny, NJ |

| | | |
|---|---|---|
| Celanese Ltd.<br>Route 202-206<br>P.O. Box 2500<br>Somerville, NJ 08876<br><br>CNA Holdings LLC<br>participating on behalf of<br>Celanese Ltd | Duke K. McCall, III, Esq.<br>Bingham McCutchen LLP<br>2020 K Street, N.W.<br>Washington, DC 20006-1806<br>202-373-6607 (T)<br>duke.mccall@bingham.com<br><br>James J. Dragna<br>Morgan Lewis<br>300 South Grand Ave., 22nd Floor<br>Los Angeles, CA 90071-3132<br>Jim.dragna@morganlewis.com<br><br>James O'Toole, Esq.<br>Buchanan Ingersoll & Rooney PC<br>Two Liberty Place<br>50 S. 16th Street, Suite 3200<br>Philadelphia, PA 19102-2555<br>James.otoole@blpc.com | 354 Doremus Ave<br>Newark, NJ |
| Chargeurs, Inc.<br>178 Wool Road<br>Jamestown, SC 29453 | James. R. Brendel, Esq.<br>Thorp Reed & Armstrong, LLP<br>One Oxford Centre<br>301 Grant Street, 14th floor<br>Pittsburgh, PA 15219-1425<br>412-394-2373 (T)<br>jbrendel@thorpreed.com | United Piece Dye Works<br>199 and 205 Main Street and<br>42 Arnot Street<br>Lodi, NJ |
| Chevron Texaco Corporation<br>6001 Bollinger Canyon Rd.<br>K-2056<br>San Ramon, CA 94583<br><br>Chevron Environmental<br>Management Company<br>participating for itself, Texaco,<br>Inc. and TRMI-H LLC | Shawn Raymond DeMerse<br>Chevron U.S.A. Inc.<br>Law Department<br>1400 Smith Street, Rm 07090<br>Houston, TX 77002<br>shawndemerse@chevron.com<br><br>Louis M. DeStefano, Esq.<br>Buchanan Ingersoll & Rooney, PC<br>550 Broad Street, Suite 810<br>Newark, NJ 07102-4517<br>973.273.9800 (T)<br>louis.destefano@bipc.com | Getty Newark Terminal<br>86 Doremus Ave.<br>Newark, NJ |
| Coats & Clark, Inc.<br>3420 Toringdon Way, Suite 301<br>Charlotte, NC 28277 | Dan Riesel, Esq.<br>Jeff Gracer, Esq.<br>Sive Paget & Riesel, P.C.<br>460 Park Avenue<br>New York, NY 10022<br>212-421-2150<br>driesel@spr.com | Clark Thread Co.<br>260 Ogden Street<br>Newark NJ<br>900 Passaic Avenue<br>East Newark NJ<br>735 Broad Street<br>Bloomfield NJ |

| | | |
|---|---|---|
| EnPro Holdings LLC as assignee of Coltec Industries Inc.<br><br>5605 Carnegie Boulevard Charlotte, NC 28209 | Tom Price, Esq.<br>EnPro Industries<br>5605 Carnegie Boulevard<br>Charlotte, NC 28209<br>704-731-1525 (T)<br>tom.price@enproindustries.com<br><br>Charles E. Merrill, Esquire<br>Husch Blackwell Sanders LLP<br>190 Carondelet Plaza, Suite 600<br>St. Louis, MO 63105<br>314-480-1952<br>charlie.merrill@huschblackwell.com | Crucible Steel Co.<br>1000 South Fourth St.<br>Harrison, NJ |
| Congoleum Corp.<br>3705 Quakerbridge Road<br>Mercerville, NJ 08619 | Russell Hewit, Esq.<br>Dughi, Hewit & Domolewski, P.C.<br>340 North Avenue<br>Cranford, NJ 07016<br>908-272-0200(T)<br>rhewit@dughihewit.com | 195 Belgrove Drive<br>Kearny, NJ |
| Cooper Industries, Inc.<br>600 Travis Street<br>Houston, TX 77002 | Lisa D. Sutton<br>Vice Present/Chief Counsel – EHS<br>Eaton Corporation<br>1000 Eaton Boulevard<br>Cleveland, OH 44122<br>440-523-4358 (T)<br><br>John F. Cermak<br>Sonja A. Inglin<br>Baker Hostetler<br>11601 Wilshire Boulevard, Ste 1400<br>Los Angeles, CA 90025-0509<br>310-442-8889 (T) (Cermak)<br>310-442-8885 (T) (Inglin)<br>jcermak@bakerlaw.com<br>singlin@bakerlaw.com | J. Wiss & Sons Co<br>7, 13, 26 Bank Street and<br>33 Littleton Avenue (aka 400 West Market Street)<br>Newark, NJ |
| Cooper Industries, LLC<br>600 Travis Street, Suite 5800<br>Houston, TX 77002 | (see above) | Thomas A. Edison, Inc.<br>Belleville Avenue & Sherman Avenue<br>Bloomfield, NJ<br>75 Belmont Avenue<br>Belleville, NJ |
| Croda Inc.<br>300-A Columbus Circle<br>Edison, NJ 08837 | Stephen Swedlow, Esq.<br>Quinn, Emanuel, Urquhart & Sullivan, LLP<br>500 West Madison St., Suite 2450<br>Chicago, IL 60601<br>312-705-7400<br>stephenswedlow@quinnemanuel.com | Hummel Lanolin<br>185 Foundry Street Complex<br>Newark, NJ<br>(Block 5005, Lot 21; Bld 39) |

| | | |
|---|---|---|
| Curtiss-Wright Corp.<br>4 Becker Farm Road<br>Roseland, NJ 07068 | Diana Buongiorno<br>Chiesa Shahinian & Giantomassi, PC<br>One Boland Drive<br>West Orange, NJ 07052<br>973-530-2075(T)<br>dbuongiorno@csglaw.com | 1 Passaic St.<br>Woodridge, NJ |
| Darling International, Inc.<br>251 O'Connor Ridge Boulevard,<br>Suite 300<br>Irving, TX 75038 | Steven Singer, Esq.<br>34 Hillside Avenue<br>Montclair, NJ 07042<br>973-744-6093<br>stsinger@verizon.net | Standard Tallow Corp.<br>61 Blanchard Street,<br>Newark, NJ<br>1215 Harrison Avenue,<br>Kearny, NJ |
| DII Industries, LLC<br>c/o Halliburton<br>2101 City West Blvd.<br>Houston, TX 77042-3021 | Thomas C. Jackson, Esq.<br>Joshua Frank, Esq.<br>Baker Botts LLP<br>1299 Pennsylvania Ave., N.W.<br>Washington, DC 20004-2400<br>202-639-7710 (T)<br>Thomas.Jackson@bakerbotts.com<br>Joshua.frank@bakerbotts.com | Worthington Corp. &<br>Dresser Industries, Inc.<br>401 Worthington Avenue<br>Harrison, NJ |
| DiLorenzo Properties Company<br>c/o 401 East 74th Street<br>New York, NY 10021-3919 | David Kohane, Esq.<br>Cole Schotz, PC<br>PO Box 800<br>25 Main Street<br>Hackensack, NJ 07601-7015<br>DKohane@coleschotz.com<br><br>For estate of Alex DiLorenzo<br>Gary P. Gengel, Esq.<br>Latham & Watkins, LLP<br>885 Third Avenue<br>New York, NY 10022-4834<br>Gary.Gengel@lw.com | American Modern Metals<br>44 Passaic Ave. (a/k/a 25<br>Belgrove Drive)<br>Kearny, NJ |
| Drum Service of Newark, Inc.<br>38 Laurel Drive<br>Wayne, NJ 07470 | Ralph Foglia<br>38 Laurel Drive<br>Wayne, NJ 07470 | Hilton-Davis<br>120 Lister Ave.<br>Newark, NJ |
| Eden Wood Corporation<br>47 Parsippany Road<br>Whippany, NJ 07981 | Warren L. Dean, Jr.<br>Thompson Coburn LLP<br>1909 K Street, N.W.<br>Suite 600<br>Washington, D.C. 20006-1167<br>202.585.6908 (T)<br>wdean@thompsoncoburn.com | Whippany Paper Board<br>1 Ackerman Avenue<br>Clifton, NJ |

| E.I. duPont de Nemours & Co.<br>1007 Market Street<br>Wilmington, DE 19898 | Bernard Reilly, Esq.<br>Chemours Legal Department<br>1007 Market Street<br>Wilmington, DE 19898<br>302-774-5445(T)<br>bernard.j.reilly@usa.dupont.com | Pitt Consol<br>191 Doremus Ave.<br>Newark, NJ |
|---|---|---|
| Elan Chemical Co.<br>268 Doremus Ave.<br>Newark, NJ 07105 | Jocelyn Kapp Manship, CEO<br>Elan Chemical Company Inc.<br>268 Doremus Avenue<br>Newark, NJ  07105<br><br>Randy Schillinger, Esq.<br>Saiber Schlesinger Staz & Goldstein<br>One Gateway Center, 13th Fl<br>Newark, NJ 07102<br>973-622-3333(T)<br>rs@saiber.com | 268 Doremus Ave.<br>Newark, NJ |
| El Paso Tennessee Pipeline Co.<br>1001 Louisania Street<br>Houston, TX 77002<br><br>EPEC Polymers Inc.<br>participating on behalf of itself<br>and EPEC Oil Company<br>Liquidating Trust | Andrea A. Lipuma, Esquire<br>Saul Ewing LLP<br>750 College Road East<br>Suite 100<br>Princeton, NJ  08540-6617<br>Telephone:  609-452-5032<br>alipuma@saul.com | Tenneco, Inc.<br>290 River Drive<br>Garfield, NJ |
| EM Sergeant Pulp & Chemical<br>Co.<br>6 Chelsea Road<br>Clifton, NJ 07012 | Messrs. Scott and Alan Reisch<br>EM Sergeant Pulp & Chemical Co.<br>6 Chelsea Road<br>Clifton, NJ 07012<br><br>Ivo Balabanov<br>qc@sgtnutra.com | 120 Lister Avenue<br>Newark, NJ |
| Essex Chemical Corp.<br>2030 WMDC<br>Midland, MI 48674 | Kenneth Mack, Esq.<br>Linda Mack, Esq.<br>Fox Rothschild LLP<br>Post Office Box 5231<br>Princeton, NJ  08543-5231<br><br>Princeton Pike Corp. Center<br>997 Lenox Drive, Bldg. 3<br>Lawrenceville, NJ 08648<br>609-896-3000(T)<br>kmack@foxrothschild.com | 330 Doremus Ave.<br>Newark, NJ |

8

| | | |
|---|---|---|
| Everett Smith Group, Ltd.<br>330 East Kilbourn Avenue, Ste 750<br>Milwaukee, WI 53202 | Sarah A. Slack, Esq.<br>Foley & Lardner, LLP<br>Suite 500<br>150 East Gilman Street<br>Madison, WI 53703-1482<br>608-258-4239<br>sslack@foley.com | Blanchard Bro. & Lane, Inc.<br>40 Bruen Street<br>Newark, NJ |
| Fiske Brothers Refining Co.<br>129 Lockwood Street<br>Newark, NJ | Damon Sedita, Esq.<br>Sedita, Campisano & Campisano, LLC<br>Wayne Plaza 1<br>145 Route 46 West<br>Suite 102<br>Wayne, NJ 07470<br>973-787-0299<br>dsedita@scclegal.com | 129 Lockwood Street<br>Newark, NJ |
| Flexon Industries Corp.<br>One Flexon Plaza<br>366 Frelinghuysen Avenue<br>Newark, NJ 07114 | Tom Spiesman, Esq.<br>Porzio Bromberg & Newman, PC<br>100 Southgate Parkway<br>PO Box 1997<br>Morristown, NJ 07962<br>973-889-4208 (T)<br>tspiesman@pbnlaw.com | 666 Washington Avenue<br>Belleville, NJ |
| Foundry Street Corporation<br>67 Kettle Hole Road 2524<br>Montauk, NY 11954-5084 | Gerald Borriello<br>Foundry Street Corporation<br>67 Kettle Hole Road 2524<br>Montauk, NY 11954-5084<br>geraldborriello@gmail.com | 185 Foundry Street Complex<br>Newark, NJ<br>(Block 5005, Lot 22 -- Bldgs 19, 21, 22) |
| Fragrances North America<br>1775 Windsor Road<br>Teaneck, NJ 07666<br><br>Now Givaudan Corp. | Richard Wroblewski, P.G.<br>Environmental Specialist<br>Givaudan Fragrances Corp.<br>300 Waterloo Valley Road<br>Mount Olive, NJ 07828<br>richard.wroblewski@givaudan.com<br><br>William Hatfield, Esq.<br>Gibbons, PC<br>One Gateway Center<br>Newark, NJ 07102-5310<br>973-596-4511 (T)<br>whatfield@gibbonslaw.com | Givaudan Fragrances<br>125 Delawanna Avenue<br>Clifton, NJ |
| Franklin Burlington Plastics, Inc.<br>113 Passaic Ave.<br>Kearny, NJ 07032 | Norman Spindel, Esq.<br>Lowenstein Sandler PC<br>65 Livingston Avenue<br>Roseland, NJ 07068<br>973-597-2514(T)<br>nspindel@lowenstein.com | 113 Passaic Ave.<br>Kearny, NJ |

9

| | | |
|---|---|---|
| Garfield Molding Company, Inc.<br>10 Midland Avenue<br>Wallington, NJ 07057 | Stephen W. Miller, Esq.<br>Ricci Tyrrell Johnson & Grey<br>1515 Market Street, Suite 700<br>Philadelphia, PA 19102<br>215-320-2088 (T)<br>smiller@rtjglaw.com | 10 Midland Avenue<br>Wallington, NJ |
| General Electric Company<br>3135 Easton Turnpike<br>Fairfield, CT 06828-0001 | Roger Florio, Esq.<br>General Electric<br>640 Freedom Business Center<br>King of Prussia, PA 19406<br>Roger.florio@ge.com<br><br>Gary P. Gengel, Esq.<br>Latham & Watkins, LLP<br>One Newark Center, 16th floor<br>Newark, NJ 07101<br>973-639-7287 (T)<br>gary.gengel@lw.com | 415 South 5th Street<br>& 1000 South 2nd Street<br>Harrison, NJ |
| Goodrich Corporation<br>Four Coliseum Centre<br>2730 West Tyvola Road<br>Charlotte, NC 28217 | Earl W. Phillips, Jr., Esq.<br>Robinson & Cole LLP<br>280 Trumbull Street<br>Hartford, CT 06103-3597<br>860-275-8220 (T)<br>ephillips@rc.com | Kalama Chemical<br>290 River Drive<br>Garfield, NJ |
| Harrison Supply Company<br>800 Passaic Avenue<br>East Newark, NJ 07029 | Timothy J. Corriston, Esq.<br>Connell Foley LLP<br>85 Livingston Avenue<br>Roseland, NJ 07068<br>973-535-0500 (T)<br>tcorriston@connellfoley.com | 800 Passaic Avenue<br>East Newark, NJ |
| Hexcel Corp.<br>2 Stamford Plaza<br>Stamford, CT 06901 | Steve Leifer, Esq.<br>Baker Botts LLP<br>1299 Pennsylvania Ave., NW<br>Washington, DC 20004<br>202-639-7723(T)<br>sleifer@bakerbotts.com | 205 Main St.<br>Lodi, NJ |
| Hoffman-La Roche Inc.<br>340 Kingsland Street<br>Nutley, NJ 07110 | John Klock, Esq.<br>Gibbons, PC<br>One Gateway Center<br>Newark, NJ 07102<br>jklock@gibbonslaw.com<br><br>Frederick Kentz, Esq.<br>Vice President and General Counsel<br>Hoffmann-La Roche Inc.<br>150 Clove Road,<br>Little Falls, NJ 07424 | 340 Kingsland Road<br>Nutley, NJ |

| | | |
|---|---|---|
| Honeywell International, Inc.<br>P.O. Box 2245<br>Morristown, NJ 07962 | Jeremy Karpatkin, Esq.<br>Arnold & Porter<br>555 Twelfth Street, NW<br>Washington, DC 20004-1206<br>202-942-5564 (T)<br>Jeremy.karpatkin@apks.com | General Chemical Co.<br>65 Lodi Street/8th Street<br>Passaic, NJ |
| ISP Chemicals, Inc.<br>1361 Alps Road<br>Wayne, NJ 07470<br><br>now ISP Chemicals LLC | Robin E. Lampkin<br>Ashland Inc.<br>5200 Blazer Parkway<br>Dublin, OH 43017<br>614-790-3019 (T)<br>relampkin@ashland.com<br><br>William Hatfield, Esq.<br>Gibbons, PC<br>One Gateway Center<br>Newark, NJ 07102-5310<br>973-596-4511 (T)<br>whatfield@gibbonslaw.com | ISP Van Dyk, Inc.<br>1 Main St./11 William St.<br>Wayne, NJ |
| ITT Industries, Inc.<br>77 River Road<br>Clifton, NJ 07014<br><br>participating as Exelis Inc. for<br>itself and ITT Industries, Inc | Susanne Peticolas, Esq.<br>Gibbons, PC<br>One Gateway Center<br>Newark, NJ 07102-5310<br>973-596-4751 (T)<br>speticolas@gibbonslaw.com | 100 Kingsland Drive<br>Clifton, NJ |
| Kearny Smelting & Refining<br>936 Harrison Ave #5<br>Kearny, NJ 07032 | Ms. Francine Rothschild, President<br>Kearny Smelting & Refining<br>936 Harrison Ave<br>Kearny, NJ 07032<br>201-991-7276 (T)<br><br>Lee D. Henig-Elona, Esq.<br>Gordon & Rees<br>18 Columbia Turnpike, Suite 220<br>Florham Park, NJ 07932<br>973-549-2520(T direct)<br>973-549-2500(T office)<br>lhenig-elona@gordonrees.com | 936 Harrison Ave.<br>Kearny, NJ |

| | | |
|---|---|---|
| Lucent Technologies<br>600 Mountain Avenue<br>Murray Hill, NJ 07974<br><br>now Alcatel-Lucent USA, Inc. | Ralph McMurry, Esq.<br>Ralph L. McMurry Law Office<br>30 Vesey Street, 15th Floor<br>New York, NY 10007<br>212-608-5444/5053 (T)<br>rlmcmurry@earthlink.net<br><br>Gary M. Fisher, Esq.<br>Alcatel-Lucent<br>Environment, Health & Safety Corporate<br>Center<br>600 Mountain Avenue<br>Room 1F-102G<br>Murray Hill, NJ 07974<br>gary.fisher@alcatel-lucent.com | AT&T/Western Electric<br>100 Central Ave.<br>Kearny, NJ |
| Mallinckrodt, Inc.<br>675 McDonnell Blvd.<br>Hazelwood, Missouri<br>63042 | William Hatfield, Esq.<br>Gibbons P.C.<br>One Gateway Center<br>Newark, NJ 07102<br>973-596-4511 (T)<br>whatfield@gibbonslaw.com<br><br>Eric Berry, Esq.<br>Vice President – Environmental Law<br>Mallinckrodt Pharmaceuticals<br>975 McDonnell Blvd<br>Hazelwood, MO 63042<br>Eric.Berry@mallinckrodt.com | 165-167 Main St.<br>Lodi, NJ |
| Monsanto Co.<br>800 North Lindbergh Blvd.<br>St. Louis, Missouri 63167<br><br>Pharmacia Corporation (f/k/a<br>Monsanto Company) | John F. Gullace, Esq.<br>Manko, Gold, Katcher & Fox, LLP<br>401 City Avenue, Suite 500<br>Bala Cynwd, PA 19004<br>484-430-2326(T)<br>jgullace@mgkflaw.com | Monsanto Co.<br>Foot of Pennsylvania Ave.<br>Kearny, NJ |
| National-Standard Company<br>1618 Terminal Road<br>Niles, MI 49120<br><br>Now National-Standard LLC | Susanne Peticolas, Esq.<br>Gibbons, PC<br>One Gateway Center<br>Newark, NJ 07102-5310<br>973-596-4751(T)<br>speticolas@gibbonslaw.com | 714-716 Clifton Avenue<br>Clifton, NJ |
| Newark Morning Ledger<br>1 Star Ledger Plaza<br>Newark, NJ 07102 | Daryl Kessler, Esq.<br>Sabin, Bermant & Gould, LLP<br>One World Trade Center -44th Floor<br>New York, NY 10007-2915<br>212-381-7026<br>dkessler@sabinfirm.com | 1 Star Ledger Plaza<br>Newark, NJ |

| | | |
|---|---|---|
| Newell Rubbermaid, Inc.<br>29 E. Stephenson Street<br>Freeport, IL 60132 | Andrew Sawula, Esq.<br>Schiff Hardin LLP<br>One Westminster Place, Suite 200<br>Lake Forest, IL 60045<br>847-295-4336 (T)<br>asawula@schiffhardin.com | Goody Products<br>969 Newark Turnpike<br>Kearny, NJ |
| News America Inc.<br>767 Fifth Ave., 46th Floor<br>New York, NY 10153<br><br>fka News Publishing Australia,<br>Ltd., now Twenty-First Century<br>Fox America | Peter Simshauer, Esq.<br>Skadden, Arps, Slate, Meagher & Flom LLP<br>500 Boylston Street<br>Boston, MA 02116<br>617-573-4880(T)<br>psimshau@skadden.com | Chris-Craft Inc./Montrose<br>Chemical Co.<br>100 Lister Ave.<br>Newark, NJ |
| Occidental Chemical Corp.<br>Occidental Tower<br>5005 LBJ Freeway<br>Dallas, TX 75244 | Dennis F. Blake<br>Senior Vice President<br>Occidental Chemical Corp.<br>5005 LBJ Freeway<br>Dallas, TX 75244<br><br>Larry Silver, Esq.<br>Langsam Stevens Silver<br>1818 Market Street, Suite 2610<br>Philadelphia, PA 19103-5319<br>215- 239.9023<br>lsilver@lssh-law.com | Diamond Shamrock<br>Chemicals Co.<br>80 and 120 Lister Ave.<br>Newark, NJ |
| The Okonite Company, Inc.<br>102 Hilltop Road<br>Ramsey, New Jersey 07446 | David Brook, Esq.<br>McCullough Ginsberg Montano &<br>Partners LLP<br>55 Bleeker Street<br>Millburn, NJ 07041<br>dbrook@mgpllp.com | Canal and Jefferson Streets<br>Passaic, NJ |
| Otis Elevator Co.<br>North America Operations<br>10 Farm Springs Road<br>Farmington, CT 06032 | Earl W. Phillips, Jr., Esq.<br>Robinson & Cole LLP<br>280 Trumbull Street<br>Hartford, CT 06103-3597<br>860-275-8220(T)<br>ephillips@rc.com | 1000 First St.<br>Harrison, NJ |
| Pabst Brewing Company<br>9014 Heritage Parkway, Suite<br>308<br>Woodridge, IL 60517 | Eugene Kashper, Chairman & CEO<br>Pabst Brewing Company<br>10635 Santa Monica Blvd Ste 350<br>Los Angeles, CA 90025 | 400 Grove Street<br>Newark, NJ |
| Palin Enterprises | Mr. Michael Palin<br>Palin Enterprises<br>235 Park Avenue South, #8<br>New York, NY 10003-1045 | American Modern Metals<br>44 Passaic Ave. (a/k/a 25<br>Belgrove Drive)<br><br>Kearny, NJ |

| | | |
|---|---|---|
| Passaic Pioneer Properties<br>PO Box 327<br>35 Eighth Street<br>Passaic, NJ 07055 | Timothy J. Corriston, Esq.<br>Connell Foley LLP<br>85 Livingston Avenue<br>Roseland, NJ 07068<br>973-535-0500 (T)<br>tcorriston@connellfoley.com | 35 Eighth Street<br>Passaic, NJ |
| Pfizer Inc.<br>235 E. 42nd St.<br>New York, NY 10017 | Seth Kerschner, Esq.<br>White & Case LLP 1155 Avenue of the<br>Americas<br>New York, NY 10036-2787<br>212-819-8630(T)<br>212-354-8113(F)<br>Seth.kerschner@whitecase.com | 230 Brighton Road<br>Clifton, NJ |
| PMC, Inc.<br>12243 Branford Street<br>Sun Valley, CA 91352 | Phillip Kamins, President & CEO<br>PMC Global, Inc.<br>12243 Branford St<br>Sun Valley, CA 91352<br>818-896-1101(T) | Kleer Kast<br>450 Schuyler Avenue<br>Kearny, NJ |
| Power Test of New Jersey, Inc.<br>125 Jericho Turnpike<br>Jericho, NY 11753<br><br>now Leemilt's Petroleum, Inc.,<br>successor to Power Test of NJ,<br>Inc. | Christine Fitter, Asst Secretary<br>Leemilt's Petroleum, Inc.<br>125 Jericho Turnpike, Suite 103<br>Jericho, NY 11753<br>cfitter@gettyrealty.com<br><br>Nicole Moshang, Esq.<br>Manko, Gold Katcher & Fox LLP<br>401 City Avenue, Ste. 500<br>Bala Cynwyd, PA 19004<br>484-430-2324 (T)<br>nmoshang@mgkflaw.com | Getty Newark Terminal<br>86 Doremus Ave.<br>Newark, NJ |
| PPG Industries, Inc.<br>One PPG Place<br>Pittsburgh, PA 15272 | Gary P. Gengel, Esq.<br>Latham & Watkins, LLP<br>885 Third Avenue<br>New York, NY 10022-4834<br>gary.gengel@lw.com | 29 Riverside Ave.<br>Newark, NJ |

| | | |
|---|---|---|
| PSE&G Corp.<br>P.O. Box 570<br>Newark, NJ 07101 | John F. Doherty, Esq.<br>Associate General Litigation Counsel<br>PSE&G Services Corporation<br>80 Park Plaza, T5D<br>Post Office Box 570<br>Newark, NJ 07102<br>973-430-6478(T)<br>John.doherty@pseg.com<br><br>Kevin R. Gardner, Esq.<br>Connell Foley<br>85 Livingston Avenue<br>Roseland, NJ 07068<br>973-535-0500(T)<br>kgardner@connellfoley.com | 155 Raymond Blvd.<br>Newark, NJ<br>&<br>4th St.<br>Harrison, NJ |
| Purdue Pharma Technologies, Inc.<br>One Stamford Forum<br>Stamford, CT 06901 | James (Jay) Stewart, Esq.<br>Lowenstein Sandler PC<br>65 Livingston Avenue<br>Roseland, NJ 07068<br>973-597-2522(T)<br>jstewart@lowenstein.com | Napp Technologies<br>199 Main St.<br>Lodi, NJ |
| Quality Distribution, Inc.<br>150 East Pennsylvania Avenue<br>Suite 450<br>Downingtown, PA 19335<br><br>Quality Carriers, Inc. | Bonni Kaufman, Esq.<br>Holland & Knight, LLP<br>800 17th Street N.W. Suite 1100<br>Washington, DC 20006<br>202-419-2547<br>Bonni.kaufman@hklaw.com | Chemical Leaman Tank Lines<br>80 Doremus Avenue<br>Newark, NJ |
| Roman Asphalt Corporation<br>14 Ogden Street<br>Newark, NJ 07104 | Michael La Morgese, President<br>Roman Asphalt Corporation<br>14 Ogden St<br>Newark, NJ 07104<br>973-482-1113(T)<br>Roman@romanasphalt.com | 14 Ogden Street<br>Newark, NJ |
| Royce Associates<br>366 N. Broadway, Ste. 400<br>Jericho, NJ 11753 | A.J.Royce, President<br>Royce Associates, ALP<br>35 Carlton Ave<br>East Rutherford, NJ 07073<br>201-438-5200(T)<br><br>Ronald Bluestein, Esq.<br>Flamm Walton<br>794 Penllyn Pike<br>Blue Bell, PA 19422<br>267-419-1500 (T)<br>rbluestein@flammlaw.com | Royce Chemical Company<br>17 Carlton Avenue<br>East Rutherford, NJ |

| | | |
|---|---|---|
| RSR Corp.<br>2777 Stemmons Freeway, Suite 1800<br>Dallas, TX 75207<br><br>now Revere Smelting and Refining Corporation | Jane C. Luxton, Esq.<br>Christopher Clare, Esq.<br>Clark Hill PLC<br>601 Pennsylvania Avenue NW<br>North Building, Suite 1000<br>Washington, DC 20004<br>202-572-8674(T)<br>703-598-3275(M)<br>jluxton@clarkhill.com<br>cclare@clarkhill.com | Revere Smelting & Refining<br>387 Avenue P<br>Newark, NJ |
| RTC Properties, Inc.<br>79 Fifth Avenue<br>New York, NY 10003 | Michael L. Rodburg, Esq.<br>Lowenstein Sandler, PC<br>65 Livingston Avenue<br>Roseland, NJ 07068<br>973-597-2466(T)<br>mrodburg@lowenstein.com | AT&T/Western Electric<br>100 Central Ave.<br>Kearny, NJ |
| S&A Realty Corp.<br>55 Passaic Avenue<br>Kearny, NJ 07032 | Jeffrey Pollock, Esq.<br>Fox Rothschild<br>P.O. Box 5231<br>Princeton, NJ 08543<br>609-896-7660(T)<br>jmpollock@foxrothschild.com | American Modern Metals<br>44 Passaic Ave. (a/k/a 25 Belgrove Drive)<br>Kearny, NJ |
| Safety Kleen Envirosystems Co.<br>1301 Gervais St.<br>Columbia, SC 29201<br><br>McKesson Corporation for itself and for Safety-Kleen Envirosystems, Inc. | John Edgcomb, Esq.<br>Edgcomb Law Group, LLP<br>One Post Street, Suite 2100<br>San Francisco, California 94104-5225<br>415-399-1555 (T)<br>jedgcomb@edgcomb-law.com | 600 Doremus Ave.<br>Newark, NJ |
| Schiffenhaus Packaging Corp.<br>c/o Rock-Tenn Company<br>504 Thrasher Street<br>Norcross, GA 30071 | Camille V. Otero, Esq.<br>Gibbons, PC<br>One Gateway Center<br>Newark, NJ 07102-5310<br>cotero@gibbonslaw.com | 204 Academy Street<br>49 Fourth Street<br>2013 McCarter Highway<br>Newark, NJ |

| | | |
|---|---|---|
| Sequa Corporation<br>200 Park Avenue<br>New York, NY 10166 | Brian L. Buniva, Esq.<br>Senior Counsel & Senior Director<br>Environment, Health & Safety Sequa<br>Corporation<br>707 E. Main Street, Suite 1450<br>Richmond, VA 23219<br>845-230-7374 (Direct)<br>804-873-0610 (Mobile)<br>Brian_Buniva@sequa.com<br><br>Gary P. Gengel, Esq.<br>Kegan A. Brown, Esq.<br>Latham & Watkins, LLP<br>885 Third Avenue<br>New York, NY 10022-4834<br>gary.gengel@lw.com | Sun Chemical Corporation<br>185 Foundry Street<br>Newark, NJ<br>(prior to 1987) |
| Seton Company, Inc.<br>1000 Madison Avenue<br>Norristown, PA 19403\<br><br>now Seton Tanning | Lawrence E. Bradford, Esq.<br>Cole Schotz, PC<br>PO Box 800<br>25 Main Street<br>Hackensack, NJ 07601-7015<br>201-525-6205(T)<br>lbradford@coleschotz.com | Seton Leather Company<br>849 Broadway<br>Newark, NY 07104 |
| SpectraServ, Inc.<br>75 Jacobus Avenue<br>Kearny, NJ 07032 | Diana Buongiorno, Esq.<br>Chiesa Shahinian & Giantomassi, PC<br>One Boland Dr<br>West Orange, NJ 07052<br>973-530-2075(T)<br>dbuongiorno@csglaw.com | 75 Jacobus Ave.<br>Kearny, NJ |
| STWB, Inc.<br>c/o Bayer Corporation<br>100 Bayer Road<br>Pittsburgh, PA 15205 | Timothy I. Duffy, Esq.<br>Coughlin Duffy LLP<br>Post Office Box 1917<br>350 Mount Kemble Avenue<br>Morristown, NJ 07962-1917<br>973-631-6002(T)<br>tduffy@coughlinduffy.com<br>lhall@coughlinduffy.com (Assistant) | Lehn & Fink Products Corp.<br>192-194 Bloomfield Avenue<br>Bloomfield, NJ 07003<br><br>Thomasett Colors/Sterling<br>120 Lister Ave.<br>Newark, NJ |

| | | |
|---|---|---|
| Sun Chemical Corporation<br>35 Waterview Boulevard<br>Parsippany, NJ 07054-1285 | Warren W. Faure, Esq.<br>EH&S Counsel<br>Sun Chemical Corporation<br>35 Waterview Boulevard<br>Parsippany, NJ 07054<br>973-404-6590(T)<br>Warren.faure@sunchemical.com<br><br>Ted Wolff, Esq.<br>Manatt, Phelps & Phillips, LLP<br>7 Times Square<br>New York, NY 10036<br>twolff@manatt.com | Sun Chemical Corporation<br>185 Foundry Street<br>Newark, NJ<br>(1987 to present) |
| Teval Corporation<br>99 Cherry Hill Road, Suite 105<br>Parsippany, NJ 07054 | Lee D. Henig-Elona, Esq.<br>Gordon & Rees<br>18 Columbia Turnpike, Suite 220<br>Florham Park, NJ 07932<br>973-549-2520(T direct)<br>973-549-2500(T office)<br>lhenig-elona@gordonrees.com | Guyon Pipe<br>900-1000 South 4th Street<br>Harrison, NJ |
| Teva Pharmaceuticals USA, Inc.<br>1090 Horsham Road<br>North Wales, PA 19454 | Gail Port, Esq.<br>Proskauer Rose LLP<br>11 Times Square<br>New York, NY 10036-8299<br>212-969-3243(T)<br>gport@proskauer.com | Biocraft Laboratories<br>12 Industrial Park<br>Waldwick, NJ |
| Textron, Inc.<br>40 Westminster Street<br>Providence, RI 02903 | Jamie Schiff, Esq.<br>Textron, Inc.<br>40 Westminster Street<br>Providence, RI 02903<br>401-457-2422 (T)<br>jschiff@textron.com | Spencer Kellogg Division<br>400 Doremus Avenue<br><br>Newark, NJ |
| The Andrew Jergens Co.<br>2535 Spring Grove Ave.<br>Cincinnati, OH 45214<br><br>now KAO U.S.A Inc. | Richard T. La Jeunesse, Esq.<br>Graydon Head & Ritchey LLP<br>1900 Fifth Third Center<br>511 Walnut Street<br>Cincinnati, OH 45202<br>513-629-2702(T)<br>rlajeunesse@graydon.com | 1 Franklin Ave.<br>Belleville, NJ |

| | | |
|---|---|---|
| The BOC Group, Inc.<br>575 Mountain Avenue<br>Murray Hill, NJ 07974<br><br>now Linde LLC on behalf of<br>The BOC Group, Inc. | James (Jay) Stewart, Esq.<br>Lowenstein Sandler PC<br>65 Livingston Avenue<br>Roseland, NJ 07068<br>973-597-2522(T)<br>jstewart@lowenstein.com | 681 Main Street<br>Belleville, NJ |
| The Hartz Mountain<br>Corporation<br>400 Plaza Drive<br>Secaucus, NJ 07094<br><br>The Hartz Consumer Group,<br>Inc. on behalf of The Hartz<br>Mountain Corporation | Curtis L. Michael, Esq.<br>Horowitz, Rubino & Patton<br>400 Plaza Drive<br>PO Box 2038<br>Secaucus, NJ 07094-2038<br>Curt.michael@hrplaw.com | 600/700 South 4th Street<br>Harrison, NJ |
| The Newark Group, Inc.<br>20 Jackson Drive<br>Cranford, NJ 07016 | David M. Meezan, Esq.<br>Kazmarek Mowrey Cloud Laseter LLP<br>1230 Peachtree Street N.E.<br>Suite 3600<br>Atlanta, GA 30309<br>404-969-0733<br>dmeezan@kmcllaw.com | The Newark Boxboard Co.<br>17 Blanchard Street<br>Newark, NJ |
| The Sherwin Williams Co.<br>101 Prospect Ave., N.W.<br>Cleveland, OH 44115 | Donald McConnell, Esq.<br>The Sherwin Williams Co.<br>101 Prospect Ave, NW<br>Cleveland, OH 44115<br>216-566-3741(T)<br>216-515-4400(F)<br>don.j.mcconnell@sherwin.com<br><br>Herbert (Bart) Bennett, Esq.<br>Sokol, Behot & Fiorenzo<br>229 Nassau Street<br>Princeton, NJ 08542-4601<br>609-279-0900(T)<br>hbbennett@sbflawfirm.com | 60 Lister Ave.<br>Newark, NJ |
| The Stanley Works<br>1000 Stanley Drive<br>New Britain, CT 06053<br><br>now Stanley Black & Decker,<br>Inc. | Andrew Kolesar, Esq.<br>Thompson Hine LLP<br>312 Walnut Street, 14th Floor<br>Cincinnati, OH 45202<br>513-352-6545(T)<br>andrew.kolesar@thompsonhine.com | Stanley Tools<br>140 Chapel St.<br>Newark, NJ |

| | | |
|---|---|---|
| Three County Volkswagen<br>701 Riverside Ave.<br>Lyndhurst, NJ 07071 | Lee D. Henig-Elona, Esq.<br>Gordon & Rees<br>18 Columbia Turnpike, Suite 220<br>Florham Park, NJ 07932<br>973-549-2520(T direct)<br>973-549-2500(T office)<br>lhenig-elona@gordonrees.com | 701 Riverside Ave.<br>Lyndhurst, NJ |
| Tiffany & Co.<br>727 Fifth Avenue<br>New York, NY 10022 | John Klock, Esq.<br>Gibbons, PC<br>One Gateway Center<br>Newark, NJ 07102-5310<br>973-596-4757 (T)<br>jklock@gibbonslaw.com | 820 Highland Avenue<br>Newark, NJ |
| Unilever Bestfoods<br>International Plaza<br>Sylvan Avenue<br>Englewood Cliffs, NJ 07632<br><br>Conopco, Inc., d/b/a Unilever<br>(as successpr to CPC/Bestfoods,<br>former parent of the Penick<br>Corporation | Joshua Frank, Esq.<br>Baker Botts<br>1299 Pennsylvania Ave., N.W.<br>Washington, DC 20004-2400<br>202-639-7710 (T)<br>Joshua.frank@bakerbotts.com<br><br>Andrew Shakalis, Esq.<br>Associate General Counsel – Environmental<br>& Safety<br>Unilever<br>700 Sylvan Avenue<br>Englewood Cliffs, NJ 07632<br>201-894-2763 (T)<br>201-894-2727 (F)<br>Andrew.shakalis@unilever.com | Penick Corporation<br>540 New York Avenue<br>Lyndhurst, NJ |
| Viacom Inc.<br>11 Stanwix St.<br>Pittsburgh, PA 15222<br><br>Now CBS Corporation | Jeffrey B. Groy, Esq.<br>VP, Sr. Counsel/ Environmental<br>CBS Corporation<br>333 West Wacker Drive, 27th Floor<br>Chicago, IL 60606<br>312-288-3851(T)<br>312-288-3801(F)<br>Jeff.Groy@cbs.com | Westinghouse Electric<br>95 Orange St.<br>Newark, NJ |

20

| | | |
|---|---|---|
| Vulcan Materials Co.<br>1200 Urban Center Drive<br>Birmingham, AL 35242<br><br>Now Legacy Vulcan Corp. | Eva Fromm O'Brien, Esq.<br>Fulbright & Jaworski<br>Fulbright Tower<br>1301 McKinney<br>Suite 5100<br>Houston, TX 77010-3095<br>713-651-5321 (T)<br>713-651-5246 (F)<br>eobrien@fulbright.com<br><br>John M. Floyd, Esq.<br>Senior Attorney<br>Vulcan Materials Company<br>1200 Urban Center Drive<br>Birmingham, AL 35242<br>205-298-3745 (Direct)<br>205-492-4219 (Cell)<br>205-298-2960 (F)<br>floydj@vmcmail.com | 600 Doremus Ave.<br>Newark, NJ |
| Wiggins Plastics Inc.<br>186 Kingsland Road<br>Clifton, NJ 07014 | Glenn Tucker, Esq.<br>Sheryl Reba, Esq.<br>Greenberg Dauber<br>One Gateway Center, Suite 600<br>Newark, NJ 07102<br>973-643-3700(T)<br>973-643-1218(F)<br>gtucker@greenbergdauber.com<br>sreba@greenbergdauber.com | 180 Kingsland Road<br>Clifton, NJ |
| Wyeth<br>5 Giralda Farms<br>Madison, NJ 07940 | Ronald J. Schott, Esq.<br>Corporate Counsel<br>Pfizer<br>5 Giralda Farms<br>Madison, NJ 07940<br>973-660-6641(T)<br>973-660-7176(F)<br>ronald.schott@pfizer.com<br><br>Seth Kerschner, Esq.<br>White & Case LLP 1155 Avenue of the<br>Americas<br>New York, NY 10036-2787<br>212-819-8630(T)<br>212-354-8113(F)<br>Seth.kerschner@whitecase.com | Shulton Inc. and<br>American Cyanamid Co.<br>697 Route 46<br>Clifton, NJ |

| | | |
|---|---|---|
| Passaic Valley Sewerage Commission | Gregory A. Tramontozzi, Esq<br>Executive Director<br>Passaic Valley Sewerage Commissioners<br>600 Wilson Avenue<br>Newark, NJ 07105<br><br>Michael Witt, Esq.<br>Chasan Leyner & Lamparello, PC<br>300 Harmon Meadow Blvd.<br>Secaucus, NJ 07094<br>201-801-6093<br>mwitt@chasan.com | |
| City of Newark | Angela Foster, Esq.<br>First Assistant Corporation<br>Counsel<br>City of Newark Department of Law<br>Room 316, City Hall<br>920 Broad Street<br>Newark, NJ 07102<br>973-733-3880<br>fostera@ci.newark.nj.us | |
| Borough of East Newark | Honorable Joseph R. Smith, Mayor<br>Borough of East Newark<br>34 Sherman Avenue<br>East Newark NJ 07029 | |
| Town of Harrison | Honorable James A. Fife, Mayor<br>Town of Harrison<br>318 Harrison Avenue<br>Harrison, New Jersey 07029<br><br>Mr. Paul J. Zarbetski, Esq.<br>Town of Harrison<br>318 Harrison Avenue<br>Harrison, New Jersey 07029 | |
| Town of Kearny | Honorable Alberto G. Santos, Mayor<br>Town of Kearny<br>402 Kearny Avenue<br>Kearny, NJ 07032 | |

**Proposed Cash Out Parties**
**Lower 8.3 Miles of the Lower Passaic River**
**Diamond Alkali Superfund Site**

1. Alcan Corporation - now Novelis Corp.

2. Alden Leeds Inc.

3. Belleville Industrial Center

4. DiLorenzo Properties Company

5. EM Sergeant Pulp & Chemical Co.

6. Fiske Brothers Refining Co.

7. Flexon Industries Corp.

8. Harrison Supply Company

9. Mallinckrodt, Inc.

10. Palin Enterprises

11. Pfizer Inc.

12. Roman Asphalt Corporation

13. RTC Properties, Inc.

14. S&A Realty Corp.

15. Teva Pharmaceuticals USA, Inc.

16. The Andrew Jergens Co. - now KAO U.S.A Inc.

17. The BOC Group, Inc. - now Linde LLC on behalf of The BOC Group, Inc.

18. Three County Volkswagen

19. Wiggins Plastics Inc.

20. Wyeth

# Declaration of Alice Yeh

# Exhibit D

# May 17, 2017, letter from
# Eric J. Wilson, EPA



**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY**
REGION 2
290 Broadway
New York, NY 10007-1866

MAY 17 2017,

<u>BY EMAIL AND REGULAR MAIL</u>

To:   <u>See List of Addressees – Attachment A</u>

Re:   <u>Diamond Alkali Superfund Site, Lower 8.3 Miles of Lower Passaic River,
Essex and Hudson Counties, New Jersey</u>

Dear Sir/Madam:

On March 30, 2017 the U.S. Environmental Protection Agency (the "EPA") notified 20 parties that EPA had identified them as candidates for an early cash out settlement related to their potential liability for Operable Unit 2 ("OU2") of the Diamond Alkali Superfund Site (the "Site"). On that same date, EPA wrote to all of the potentially responsible parties ("PRPs") for OU2 notifying them of, among other things, EPA's early cash out offer to the 20 parties. Since then, EPA has been contacted by several PRPs requesting information on EPA's proposed early cash out offer and requests to be included in the early cash out settlement.

EPA's decision to offer an early cash out settlement to 20 parties is based on a number of factors, tied to the remedial action selected in the Record of Decision ("ROD") issued for OU2.

<u>Lower 8.3 Miles of the Lower Passaic River – OU2</u>

On March 3, 2016 EPA issued the OU2 ROD to address unacceptable risks to human health and the environment posed by contaminated sediments in the lower 8.3 miles of the Lower Passaic River. While EPA has identified many hazardous substances in the lower 8.3 mile sediments, the ROD explains that eight hazardous substances pose the greatest potential risks to human health and the environment in the lower 8.3 miles. Those eight hazardous substances, namely, polychlorinated dibenzo-*p*-dioxins and furans ("dioxins/furans"), polychlorinated biphenyls ("PCBs"), mercury, dichlorodiphenyltrichloroethane ("DDT") (and its primary breakdown products), copper, dieldrin, lead and polycyclic aromatic hydrocarbons ("PAHs"), are identified in the OU2 ROD as the contaminants of concern ("COCs") for OU2. Accordingly, the objectives of remedial action selected for OU2 (see Section 8 of the OU2 ROD) are to:

- Reduce cancer risks and noncancer health hazards for people eating fish and crab by reducing the concentrations of COCs in the sediments of the lower 8.3 miles.

- Reduce the risks to ecological receptors by reducing the concentrations of COCs in the sediments of the lower 8.3 miles.

- Reduce the migration of COC-contaminated sediments from the lower 8.3 miles to upstream portions of the Lower Passaic River and to Newark Bay and the New York-New Jersey Harbor Estuary.

<u>Early Cash Out Settlement Recipients</u>

Prior to the issuance of the ROD, EPA received many requests from parties wishing to be considered for cash out settlements, presenting arguments and information in support of such settlements. In particular, certain parties argued that their legal exposure for the Site was such that the transaction costs for them to remain within a group of performing parties were disproportionate to their liability. EPA also received information that the Lower Passaic River Study Area Cooperating Parties Group ("CPG") was unwilling to undertake an allocation.

Based on the above, EPA reached several conclusions. One was that it would be useful for EPA to create a settlement framework to resolve the liability of parties that might be eligible to be cashed out from further OU2 work. Another was that this process would be sufficiently complex that in the interim it would be appropriate to offer a first, early cash out to those parties not associated with a release or disposal of a COC into the Lower Passaic River. The early cash out settlement would allow the parties to pay a sum certain to EPA and in return receive a covenant not to sue from EPA for OU2 as well as contribution protection related to OU2.

The parties that EPA identified as eligible for an early cash out settlement are those that, based on information reviewed by EPA, are not associated with the release or disposal of any of the COCs for OU2, as identified in the ROD, into the Lower Passaic River. Given the scope of the OU2 remedy, a remedial action that is expected to cost close to $1.4 billion dollars, the Agency has taken great care in identifying parties eligible for the settlement. For the proposed settling parties, the documents that EPA relied on are posted on the Diamond Alkali Superfund Site web site[1]. EPA also considered the "Tierra Solutions' Nexus Documents"[2] that were made available as part of the New Jersey Department of Environmental Protection's (NJDEP's) Passaic River Litigation. As proposed by EPA, each of the proposed settling parties would pay the same amount ($280,600). The settlement payment takes into account the cost of the remedial action, and EPA's policy requiring a premium to account for uncertainties associated with the cost of the future work.

EPA's goal in offering this settlement was to remove these 20 parties from the OU2 RD/RA process. It is important to note that EPA's settlement offer is limited to liability associated with releases or disposal from the identified facilities. If EPA learns that a party receiving an early cash out offer is responsible for another facility that released hazardous substances to the Lower Passaic River, potential liability associated with that other facility would not be covered by this cash out settlement. However, it is also important to understand that EPA's goal was not to settle

---

[1] https://cumulis.epa.gov/supercpad/SiteProfiles/index.cfm?fuseaction=second.scs&id=0200613
[2] http://www.nj.gov/dep/passaicdocs/thirdparty-tierra.html

parties out piece-meal, i.e., one facility at a time, but rather to identify the parties that could be released from OU2 altogether.

Some PRPs that did not receive the cash-out offer have contacted EPA to explain that they are similarly situated to certain proposed cash-out parties, and have argued that by analogy, they too should have received such an offer. If an early cash out settlement has not been offered by EPA to a PRP, it is because EPA could not determine with confidence that the PRP met the criteria for this early cash out settlement. Such PRPs may be considered by EPA for another cash out opportunity.

Moreover, if someone is aware of reasons that a proposed settling party should not have been included, that information should be provided to EPA. If evidence exists connecting a proposed settling party with a release of COCs to the Lower Passaic River, EPA will consider that information and evaluate whether to remove the party in question from the proposed cash out settlement. However, we do not expect to engage in an additional round of document review and negotiations aimed at expanding the parties subject to an early cash out settlement.

Rather, in order to address these complexities, as indicated in EPA's March 30, 2017 "Next Steps" letter to the PRPs, EPA intends to use the services of a third party allocator with the expectation of offering cash out settlements to additional parties. Thus, parties that have not received an early cash out settlement offer from EPA may still be able to participate in a cash out settlement for OU2 with EPA in the future.

Sincerely yours,

Eric J. Wilson
Deputy Director for Enforcement and Homeland Security
Emergency and Remedial Response Division

**Attachment A - List of Addressees**

**Diamond Alkali Superfund Site**
**Lower 8.3 Miles - Passaic River**

| Company | Contact Information | Facility |
|---|---|---|
| A.E. Staley Manufacturing Co., Inc.<br>2200 E. Eldorado Street<br>Decatur, IL 62521-1578<br><br>Now Tate & Lyle Ingredients Americas LLC | John R. Holsinger, Esq.<br>Two University Plaza, Suite 300<br>Hackensack, NJ 07601<br>201-487-9000 (T)<br>johnh@jrholsinger.com<br><br>Heidi R. Balsley, Esquire<br>Corporate Counsel<br>A.E. Staley<br>Manufacturing Co., Inc.<br>2200 E. Eldorado Street<br>Decatur, IL 62521<br>Heidi.Balsley@tateandlyle.com | 320 Schuyler Avenue and 100 Third Avenue<br>Kearny, NJ |
| Alcan Corporation<br>Two Alliance Center<br>3560 Lenox Rd<br>Atlanta, GA 30326<br><br>Now Novelis Corp. | John Tillman, Esq.<br>North American Regional Counsel<br>Novelis Corporation<br>Two Alliance Center<br>3560 Lenox Rd<br>Atlanta, GA 30326<br>404-760-4049 (T)<br>John.tillman@novelis.com | Jacobus Ave.<br>Kearny, NJ |
| Alden Leeds Inc.<br>55 Jacobus Ave.<br>Kearny, NJ 07032 | Mark Epstein, President<br>Alden Leeds Inc.<br>55 Jacobus Ave.<br>Kearny, NJ 07032<br><br>Joseph Fiorenzo, Esq.<br>Sills Cummis & Gross<br>The Legal Center<br>One Riverfront Plaza<br>Newark, NJ 07102<br>973-643-7000 (T)<br>jfiorenzo@sillscummis.com | 2145 McCarter Highway<br>Newark, NJ<br><br>55 Jacobus Avenue<br>Kearny, NJ |
| Alliance Chemical, Inc.<br>Linden Avenue<br>Ridgefield, NJ 07657 | Fredi Pearlmutter, Esq.<br>Lindabury, McCormick, Estabrook & Cooper, P.C.<br>53 Cardinal Drive<br>Box 2369<br>Westfield, NJ 07091<br>908-233-6800 (T)<br>fpearlmutter@lindabury.com | 33 Avenue P<br>Newark, NJ |

| American Ref-Fuel Co.<br>155 Chestnut Ridge Road<br>Montvale, NJ 07645<br><br>Now Covanta Essex Company | Nancy Tammi, Esq.<br>VP, Associate General Counsel<br>Covanta<br>445 South Street<br>Morristown, NJ 07960<br>862-345-5133 | 183 Raymond Blvd & 66<br>Blanchard St<br>Newark, NJ |
| | Barbara Hopkinson Kelly, Esq.<br>Wilson Elser Moskowitz Edelman &<br>Dicker LLP<br>200 Campus Drive<br>Florham Park, NJ 07932-0668<br>973.735.5765 (Direct)<br>609.213.8589 (Cell)<br>973.624.0808 (Fax)<br>barbara.kelly@wilsonelser.com | |
| Arkema Incorporated<br>2000 Market Street<br>Philadelphia, PA 19103-3222 | Paula Martin, Esq.<br>Doug Loutzenhiser<br>Legacy Site Services, LLC<br>468 Thomas Jones Way, Suite 150<br>Exton, PA 19341-2528<br>Paula.martin@total.com | Wallace & Tiernan<br>25 Main Street<br>Belleville, NJ |
| Ashland, Inc.<br>5200 Blazer Parkway<br>Dublin, OH 43017 | Robin E. Lampkin<br>Ashland Inc.<br>5200 Blazer Parkway<br>Dublin, OH 43017<br>Telephone: 614-790-3019<br>realmpkin@ashland.com<br><br>William S. Hatfield, Esq.<br>Gibbons P.C.<br>One Gateway Center<br>Newark, NJ 07102<br>whatfield@gibbonslaw.com | 221 Foundry St.<br>Newark, NJ |
| Atlas Refining, Inc.<br>142 Lockwood Street<br>Newark, NJ 07105<br><br>Now Atlas Refinery, Inc. | Steven Schroeder, Jr., President & CEO<br>Atlas Refinery, Inc.<br>142 Lockwood Street<br>Newark, NJ 07105<br><br>Thomas Ryan, Esq.<br>Laddey, Clark & Ryan LLP<br>60 Blue Heron Road, Suite 300<br>Sparta, NJ 07871<br>973-729-1880(T)<br>tryan@lcrlaw.com | 142 Lockwood St.<br>Newark, NJ |

| | | |
|---|---|---|
| Automatic Electro Plating Corp.<br>185 Foundry Street, Suite 3<br>Newark, NJ 07105 | Michael O'Rourke, President<br>Automatic Electro Plating Corp.<br>1017 Applegate Parkway<br>Waxhaw, NC 28173-6738<br>Michael.orourke@aol.com | 185 Foundry Street Complex<br>Newark, NJ<br>(Bldgs 19, 21, 22) |
| BASF Catalysts LLC<br>100 Campus Drive<br>Florham Park, NJ | Karyllan D. Mack, Esq. (see below) | Engelhard Corporation<br>One West Central Avenue<br>East Newark, NJ |
| BASF Corp.<br>3000 Continental Drive<br>Mount Olive, NJ 07828 | Karyllan D. Mack, Esq.<br>Environmental Counsel<br>BASF Corporation<br>100 Park Avenue<br>Florham Park, NJ 07932<br>Karyllan.mack@basf.com<br><br>David Schneider, Esquire<br>Bressler, Amery & Ross<br>Post Office Box 1980<br>Morristown, NJ 07962<br>dschneider@bressler.com | 50 Central Ave.<br>Kearny, NJ<br>&<br>150 Wagaraw Rd<br>Hawthorne, NJ |
| Belleville Industrial Center<br>681 Main Street<br>Building 43<br>Belleville, NJ 07109 | Carol Shapiro, President<br>Belleville Industrial Center<br>681 Main Street, Building 43<br>Belleville, NJ 07109<br>973-751-0400 (T)<br>shappyfam@aol.com<br><br>Ryder T. Ulon, Esq.<br>Gary F. Werner, Esq.<br>Schenck, Price, Smith & King, LLP<br>220 Park Avenue<br>Post Office Box 991<br>Florham Park, NJ 07932<br>973-540-7321 (T)<br>rtu@spsk.com<br>gfw@spsk.com | Helion Industries, Inc.<br>681 Main St.<br>Belleville, NJ |

| | | |
|---|---|---|
| Benjamin Moore & Co.<br>51 Chestnut Ridge Rd.<br>Montvale, NJ 07645 | Paul Sangillo, Esq.<br>Benjamin Moore & Co.<br>101 Paragon Drive<br>Montvale, NJ 07645<br>201.949.6318 (T)<br>Paul.sangillo@benjaminmoore.com<br><br>Eric S. Aronson, Esq.<br>David G. Mandelbaum, Esq.<br>GreenbergTraurig<br>500 Campus Drive<br>Suite 400<br>Florham Park, NJ 07932<br>aronsone@gtlaw.com<br>973-360-7935 | 134 Lister Ave.<br>Newark, NJ |
| Berol Corporation<br>c/o Newell Rubbermaid Inc.<br>2707 Butterfield Road, Suite 100<br>Oak Brook, IL 60523 | Andrew Sawula, Esq.<br>Schiff Hardin LLP<br>One Westminster Place, Suite 200<br>Lake Forest, IL 60045<br>847-295-4336 (T)<br>asawula@schiffhardin.com | Faber-Castell Corporation<br>41 Dickerson Street<br>Newark, NJ |
| Campbell Foundry Company<br>800 Bergen Street<br>Harrison, NJ 07029 | Timothy J. Corriston, Esq.<br>Connell Foley LLP<br>85 Livingston Avenue<br>Roseland, NJ 07068<br>973-535-0500 (T)<br>tcorriston@connellfoley.com | 800 Bergen Street<br>Harrison, NJ |
| Canning Gum LLC<br>c/o MacDermid Incorporated<br>1401 Blake Street<br>Denver, CO 80202 | John Cordani, Esq.<br>VP, General Counsel<br>MacDermid Inc.<br>245 Freight Street<br>Waterbury, CT 06702 | Frederick Gumm Chemical Co.<br>538 Forest Street<br>Kearny, NJ |

| | | |
|---|---|---|
| Celanese Ltd.<br>Route 202-206<br>P.O. Box 2500<br>Somerville, NJ 08876<br><br>CNA Holdings LLC<br>participating on behalf of<br>Celanese Ltd | Duke K. McCall, III, Esq.<br>Bingham McCutchen LLP<br>2020 K Street, N.W.<br>Washington, DC 20006-1806<br>202-373-6607 (T)<br>duke.mccall@bingham.com<br><br>James J. Dragna<br>Morgan Lewis<br>300 South Grand Ave., 22nd Floor<br>Los Angeles, CA 90071-3132<br>Jim.dragna@morganlewis.com<br><br>James O'Toole, Esq.<br>Buchanan Ingersoll & Rooney PC<br>Two Liberty Place<br>50 S. 16th Street, Suite 3200<br>Philadelphia, PA 19102-2555<br>James.otoole@blpc.com | 354 Doremus Ave<br>Newark, NJ |
| Chargeurs, Inc.<br>178 Wool Road<br>Jamestown, SC 29453 | James. R. Brendel, Esq.<br>Thorp Reed & Armstrong, LLP<br>One Oxford Centre<br>301 Grant Street, 14th floor<br>Pittsburgh, PA 15219-1425<br>412-394-2373 (T)<br>jbrendel@thorpreed.com | United Piece Dye Works<br>199 and 205 Main Street and<br>42 Arnot Street<br>Lodi, NJ |
| Chevron Texaco Corporation<br>6001 Bollinger Canyon Rd.<br>K-2056<br>San Ramon, CA 94583<br><br>Chevron Environmental<br>Management Company<br>participating for itself, Texaco,<br>Inc. and TRMI-H LLC | Shawn Raymond DeMerse<br>Chevron U.S.A. Inc.<br>Law Department<br>1400 Smith Street, Rm 07090<br>Houston, TX 77002<br>shawndemerse@chevron.com<br><br>Louis M. DeStefano, Esq.<br>Buchanan Ingersoll & Rooney, PC<br>550 Broad Street, Suite 810<br>Newark, NJ 07102-4517<br>973.273.9800 (T)<br>louis.destefano@bipc.com | Getty Newark Terminal<br>86 Doremus Ave.<br>Newark, NJ |
| Coats & Clark, Inc.<br>3420 Toringdon Way, Suite 301<br>Charlotte, NC 28277 | Dan Riesel, Esq.<br>Jeff Gracer, Esq.<br>Sive Paget & Riesel, P.C.<br>460 Park Avenue<br>New York, NY 10022<br>212-421-2150<br>driesel@sprlaw.com | Clark Thread Co.<br>260 Ogden Street<br>Newark NJ<br>900 Passaic Avenue<br>East Newark NJ<br>735 Broad Street<br>Bloomfield NJ |

| EnPro Holdings LLC as assignee of Coltec Industries Inc.<br><br>5605 Carnegie Boulevard Charlotte, NC 28209 | Tom Price, Esq.<br>EnPro Industries<br>5605 Carnegie Boulevard<br>Charlotte, NC 28209<br>704-731-1525 (T)<br>tom.price@enproindustries.com<br><br>Charles E. Merrill, Esquire<br>Husch Blackwell Sanders LLP<br>190 Carondelet Plaza, Suite 600<br>St. Louis, MO 63105<br>314-480-1952<br>charlie.merrill@huschblackwell.com | Crucible Steel Co.<br>1000 South Fourth St.<br>Harrison, NJ |
|---|---|---|
| Congoleum Corp.<br>3705 Quakerbridge Road<br>Mercerville, NJ 08619 | Russell Hewit, Esq.<br>Dughi, Hewit & Domolewski, P.C.<br>340 North Avenue<br>Cranford, NJ 07016<br>908-272-0200(T)<br>rhewit@dughihewit.com | 195 Belgrove Drive<br>Kearny, NJ |
| Cooper Industries, Inc.<br>600 Travis Street<br>Houston, TX 77002 | Lisa D. Sutton<br>Vice Present/Chief Counsel – EHS<br>Eaton Corporation<br>1000 Eaton Boulevard<br>Cleveland, OH 44122<br>440-523-4358 (T)<br><br>John F. Cermak<br>Sonja A. Inglin<br>Baker Hostetler<br>11601 Wilshire Boulevard, Ste 1400<br>Los Angeles, CA 90025-0509<br>310-442-8889 (T) (Cermak)<br>310-442-8885 (T) (Inglin)<br>jcermak@bakerlaw.com<br>singlin@bakerlaw.com | J. Wiss & Sons Co<br>7, 13, 26 Bank Street and<br>33 Littleton Avenue (aka 400 West Market Street)<br>Newark, NJ |
| Cooper Industries, LLC<br>600 Travis Street, Suite 5800<br>Houston, TX 77002 | (see above) | Thomas A. Edison, Inc.<br>Belleville Avenue &<br>Sherman Avenue<br>Bloomfield, NJ<br>75 Belmont Avenue<br>Belleville, NJ |
| Croda Inc.<br>300-A Columbus Circle<br>Edison, NJ 08837 | Stephen Swedlow, Esq.<br>Quinn, Emanuel, Urquhart & Sullivan, LLP<br>500 West Madison St., Suite 2450<br>Chicago, IL 60661<br>312-705-7400<br>stephenswedlow@quinnemanuel.com | Hummel Lanolin<br>185 Foundry Street Complex<br>Newark, NJ<br>(Block 5005, Lot 21; Bld 39) |

| | | |
|---|---|---|
| Curtiss-Wright Corp.<br>4 Becker Farm Road<br>Roseland, NJ 07068 | Diana Buongiorno<br>Chiesa Shahinian & Giantomassi, PC<br>One Boland Drive<br>West Orange, NJ 07052<br>973-530-2075(T)<br>dbuongiorno@csglaw.com | 1 Passaic St.<br>Woodridge, NJ |
| Darling International, Inc.<br>251 O'Connor Ridge Boulevard,<br>Suite 300<br>Irving, TX 75038 | Steven Singer, Esq.<br>34 Hillside Avenue<br>Montclair, NJ 07042<br>973-744-6093<br>stsinger@verizon.net | Standard Tallow Corp.<br>61 Blanchard Street,<br>Newark, NJ<br>1215 Harrison Avenue,<br>Kearny, NJ |
| DII Industries, LLC<br>c/o Halliburton<br>2101 City West Blvd.<br>Houston, TX 77042-3021 | Thomas C. Jackson, Esq.<br>Joshua Frank, Esq.<br>Baker Botts LLP<br>1299 Pennsylvania Ave., N.W.<br>Washington, DC 20004-2400<br>202-639-7710 (T)<br>Thomas.Jackson@bakerbotts.com<br>Joshua.frank@bakerbotts.com | Worthington Corp. &<br>Dresser Industries, Inc.<br>401 Worthington Avenue<br>Harrison, NJ |
| DiLorenzo Properties Company<br>c/o 401 East 74th Street<br>New York, NY 10021-3919 | David Kohane, Esq.<br>Cole Schotz, PC<br>PO Box 800<br>25 Main Street<br>Hackensack, NJ 07601-7015<br>DKohane@coleschotz.com<br><br>For estate of Alex DiLorenzo<br>Gary P. Gengel, Esq.<br>Latham & Watkins, LLP<br>885 Third Avenue<br>New York, NY 10022-4834<br>Gary.Gengel@lw.com | American Modern Metals<br>44 Passaic Ave. (a/k/a 25<br>Belgrove Drive)<br>Kearny, NJ |
| Drum Service of Newark, Inc.<br>38 Laurel Drive<br>Wayne, NJ 07470 | Ralph Foglia<br>38 Laurel Drive<br>Wayne, NJ 07470 | Hilton-Davis<br>120 Lister Ave.<br>Newark, NJ |
| Eden Wood Corporation<br>47 Parsippany Road<br>Whippany, NJ 07981 | Warren L. Dean, Jr.<br>Thompson Coburn LLP<br>1909 K Street, N.W.<br>Suite 600<br>Washington, D.C. 20006-1167<br>202.585.6908 (T)<br>wdean@thompsoncoburn.com | Whippany Paper Board<br>1 Ackerman Avenue<br>Clifton, NJ |

| | | |
|---|---|---|
| E.I. duPont de Nemours & Co.<br>1007 Market Street<br>Wilmington, DE 19898 | Stephen Rahaim, Esq.<br>E.I. DuPont de Nemours &<br>Co.<br>974 Center Road<br>Building 721/1164<br>Wilmington, DE 19803<br>302-996-8278(T)<br>Stephen.Rahaim@dupont.com | Pitt Consol<br>191 Doremus Ave.<br>Newark, NJ |
| Elan Chemical Co.<br>268 Doremus Ave.<br>Newark, NJ 07105 | Jocelyn Kapp Manship, CEO<br>Elan Chemical Company Inc.<br>268 Doremus Avenue<br>Newark, NJ 07105<br><br>Randy Schillinger, Esq.<br>Saiber Schlesinger Staz & Goldstein<br>One Gateway Center, 13th Fl<br>Newark, NJ 07102<br>973-622-3333(T)<br>rs@saiber.com | 268 Doremus Ave.<br>Newark, NJ |
| El Paso Tennessee Pipeline Co.<br>1001 Louisania Street<br>Houston, TX 77002<br><br>EPEC Polymers Inc.<br>participating on behalf of itself<br>and EPEC Oil Company<br>Liquidating Trust | Andrea A. Lipuma, Esquire<br>Saul Ewing LLP<br>750 College Road East<br>Suite 100<br>Princeton, NJ 08540-6617<br>Telephone: 609-452-5032<br>alipuma@saul.com | Tenneco, Inc.<br>290 River Drive<br>Garfield, NJ |
| EM Sergeant Pulp & Chemical<br>Co.<br>6 Chelsea Road<br>Clifton, NJ 07012 | Messrs. Scott and Alan Reisch<br>EM Sergeant Pulp & Chemical Co.<br>6 Chelsea Road<br>Clifton, NJ 07012<br><br>Mark L. Freed, Esq.<br>Curtin & Heefner LLP<br>Doylestown Commerce Center<br>2005 South Easton Road, Suite 100<br>Doylestown, PA 18901<br>MLF@curtinheefner.com<br>267 898-0507 | 120 Lister Avenue<br>Newark, NJ |

| | | |
|---|---|---|
| Essex Chemical Corp.<br>2030 WMDC<br>Midland, MI 48674 | Kenneth Mack, Esq.<br>Linda Mack, Esq.<br>Fox Rothschild LLP<br>Post Office Box 5231<br>Princeton, NJ 08543-5231<br><br>Princeton Pike Corp. Center<br>997 Lenox Drive, Bldg. 3<br>Lawrenceville, NJ 08648<br>609-896-3000(T)<br>kmack@foxrothschild.com | 330 Doremus Ave.<br>Newark, NJ |
| Everett Smith Group, Ltd.<br>330 East Kilbourn Avenue, Ste 750<br>Milwaukee, WI 53202 | Sarah A. Slack, Esq.<br>Foley & Lardner, LLP<br>Suite 500<br>150 East Gilman Street<br>Madison, WI 53703-1482<br>608-258-4239<br>sslack@foley.com | Blanchard Bro. & Lane, Inc.<br>40 Bruen Street<br>Newark, NJ |
| Fiske Brothers Refining Co.<br>129 Lockwood Street<br>Newark, NJ | Damon Sedita, Esq.<br>Sedita, Campisano & Campisano, LLC<br>55 Lane Road, Suite 170<br>Fairfield, NJ 07004<br>973-787-0299<br>dsedita@scclegal.com | 129 Lockwood Street<br>Newark, NJ |
| Flexon Industries Corp.<br>One Flexon Plaza<br>366 Frelinghuysen Avenue<br>Newark, NJ 07114 | Tom Spiesman, Esq.<br>Porzio Bromberg & Newman, PC<br>100 Southgate Parkway<br>PO Box 1997<br>Morristown, NJ 07962<br>973-889-4208 (T)<br>tspiesman@pbnlaw.com | 666 Washington Avenue<br>Belleville, NJ |
| Foundry Street Corporation<br>67 Kettle Hole Road 2524<br>Montauk, NY 11954-5084 | Gerald Borriello<br>Foundry Street Corporation<br>67 Kettle Hole Road 2524<br>Montauk, NY 11954-5084 | 185 Foundry Street Complex<br>Newark, NJ<br>(Block 5005, Lot 22 – Bldgs 19, 21, 22) |

| | | |
|---|---|---|
| Fragrances North America<br>1775 Windsor Road<br>Teaneck, NJ 07666<br><br>Now Givaudan Corp. | Richard Wroblewski, P.G.<br>Environmental Specialist<br>Givaudan Fragrances Corp.<br>300 Waterloo Valley Road<br>Mount Olive, NJ 07828<br>richard.wroblewski@givaudan.com<br><br>William Hatfield, Esq.<br>Gibbons, PC<br>One Gateway Center<br>Newark, NJ 07102-5310<br>973-596-4511 (T)<br>whatfield@gibbonslaw.com | Givaudan Fragrances<br>125 Delawanna Avenue<br>Clifton, NJ |
| Franklin Burlington Plastics,<br>Inc.<br>113 Passaic Ave.<br>Kearny, NJ 07032 | Norman Spindel, Esq.<br>Lowenstein Sandler PC<br>65 Livingston Avenue<br>Roseland, NJ 07068<br>973-597-2514(T)<br>nspindel@lowenstein.com | 113 Passaic Ave.<br>Kearny, NJ |
| Garfield Molding Company, Inc.<br>1115 Inman Avenue, #196<br>Edison, NJ 08820 | Patrick J. McStravick<br>Ricci Tyrrell Johnson & Grey<br>1515 Market Street, Suite 700<br>Philadelphia, PA 19102<br>215-320-2087 (T)<br>PMcStravick@rtjglaw.com | 10 Midland Avenue<br>Wallington, NJ |
| General Electric Company<br>3135 Easton Turnpike<br>Fairfield, CT 06828-0001 | Roger Florio, Esq.<br>General Electric<br>640 Freedom Business Center<br>King of Prussia, PA 19406<br>Roger.florio@ge.com<br><br>Gary P. Gengel, Esq.<br>Latham & Watkins, LLP<br>One Newark Center, 16th floor<br>Newark, NJ 07101<br>973-639-7287 (T)<br>gary.gengel@lw.com | 415 South 5th Street<br>& 1000 South 2nd Street<br>Harrison, NJ |

| | | |
|---|---|---|
| Goodrich Corporation<br>Four Coliseum Centre<br>2730 West Tyvola Road<br>Charlotte, NC 28217 | Earl W. Phillips, Jr., Esq.<br>Robinson & Cole LLP<br>280 Trumbull Street<br>Hartford, CT 06103-3597<br>860-275-8220 (T)<br>ephillips@rc.com<br><br>Brian Freeman, Esq.<br>Robinson & Cole LLP 280 Trumbull Street<br>Hartford, CT 06103-3597<br>860-275-8220 (T)<br>bfreeman@rc.com | Kalama Chemical<br>290 River Drive<br>Garfield, NJ |
| Harrison Supply Company<br>800 Passaic Avenue<br>East Newark, NJ 07029 | Timothy J. Corriston, Esq.<br>Connell Foley LLP<br>85 Livingston Avenue<br>Roseland, NJ 07068<br>973-535-0500 (T)<br>tcorriston@connellfoley.com | 800 Passaic Avenue<br>East Newark, NJ |
| Hexcel Corp.<br>2 Stamford Plaza<br>Stamford, CT 06901 | Steve Leifer, Esq.<br>Baker Botts LLP<br>1299 Pennsylvania Ave., NW<br>Washington, DC 20004<br>202-639-7723(T)<br>sleifer@bakerbotts.com | 205 Main St.<br>Lodi, NJ |
| Hoffman-La Roche Inc.<br>340 Kingsland Street<br>Nutley, NJ 07110 | John Klock, Esq.<br>Gibbons, PC<br>One Gateway Center<br>Newark, NJ 07102<br>jklock@gibbonslaw.com<br><br>Frederick Kentz, Esq.<br>Vice President and General Counsel<br>Hoffmann-La Roche Inc.<br>150 Clove Road,<br>Little Falls, NJ 07424 | 340 Kingsland Road<br>Nutley, NJ |

11

| Honeywell International, Inc.<br>P.O. Box 2245<br>Morristown, NJ 07962 | Jeremy Karpatkin, Esq.<br>Arnold & Porter Kaye<br>Scholer LLP<br>601 Massachusetts Ave. NW<br>Washington, DC 20004-3743<br>202-942-5564 (T)<br>jeremy.karpatkin@apks.com | General Chemical Co.<br>65 Lodi Street/8th Street<br>Passaic, NJ |
|---|---|---|
| ISP Chemicals, Inc.<br>1361 Alps Road<br>Wayne, NJ 07470<br><br>now ISP Chemicals LLC | Robin E. Lampkin<br>Ashland Inc.<br>5200 Blazer Parkway<br>Dublin, OH 43017<br>614-790-3019 (T)<br>relampkin@ashland.com<br><br>William Hatfield, Esq.<br>Gibbons, PC<br>One Gateway Center<br>Newark, NJ 07102-5310<br>973-596-4511 (T)<br>whatfield@gibbonslaw.com | ISP Van Dyk, Inc.<br>1 Main St./11 William St.<br>Wayne, NJ |
| ITT Industries, Inc.<br>77 River Road<br>Clifton, NJ 07014<br><br>participating as Exelis Inc. for<br>itself and ITT Industries, Inc | Susanne Peticolas, Esq.<br>Gibbons, PC<br>One Gateway Center<br>Newark, NJ 07102-5310<br>973-596-4751 (T)<br>speticolas@gibbonslaw.com | 100 Kingsland Drive<br>Clifton, NJ |
| Kearny Smelting & Refining<br>936 Harrison Ave #5<br>Kearny, NJ 07032 | Ms. Francine Rothschild, President<br>Kearny Smelting & Refining<br>936 Harrison Ave<br>Kearny, NJ 07032<br>201-991-7276 (T)<br><br>Lee D. Henig-Elona, Esq.<br>Gordon & Rees<br>18 Columbia Turnpike, Suite 220<br>Florham Park, NJ 07932<br>973-549-2520(T direct)<br>973-549-2500(T office)<br>lhenig-elona@gordonrees.com | 936 Harrison Ave.<br>Kearny, NJ |

| Lucent Technologies<br>600 Mountain Avenue<br>Murray Hill, NJ 07974<br><br>now Alcatel-Lucent USA, Inc. | Jay Stewart, Partner<br>Lowenstein Sandler LLP<br>65 Livingston Avenue<br>Roseland, NJ 07068<br>T 973.597.2522<br>F 973.597.2523<br>M 201.572.3844<br>jstewart@lowenstein.com<br><br>Gary M. Fisher, Esq.<br>Alcatel-Lucent<br>Environment, Health & Safety Corporate Center<br>600 Mountain Avenue<br>Room 1F-102G<br>Murray Hill, NJ 07974<br>gary.fisher@alcatel-lucent.com | AT&T/Western Electric<br>100 Central Ave.<br>Kearny, NJ |
| Mallinckrodt, Inc.<br>675 McDonnell Blvd.<br>Hazelwood, Missouri<br>63042 | William Hatfield, Esq.<br>Gibbons P.C.<br>One Gateway Center<br>Newark, NJ 07102<br>973-596-4511 (T)<br>whatfield@gibbonslaw.com<br><br>Eric Berry, Esq.<br>Vice President – Environmental Law<br>Mallinckrodt Pharmaceuticals<br>975 McDonnell Blvd<br>Hazelwood, MO 63042<br>Eric.Berry@mallinckrodt.com | 165-167 Main St.<br>Lodi, NJ |
| Monsanto Co.<br>800 North Lindbergh Blvd.<br>St. Louis, Missouri 63167<br><br>Pharmacia Corporation (f/k/a Monsanto Company) | John F. Gullace, Esq.<br>Manko, Gold, Katcher & Fox, LLP<br>401 City Avenue, Suite 500<br>Bala Cynwd, PA 19004<br>484-430-2326(T)<br>jgullace@mgkflaw.com | Monsanto Co.<br>Foot of Pennsylvania Ave.<br>Kearny, NJ |
| National-Standard Company<br>1618 Terminal Road<br>Niles, MI 49120<br><br>Now National-Standard LLC | Susanne Peticolas, Esq.<br>Gibbons, PC<br>One Gateway Center<br>Newark, NJ 07102-5310<br>973-596-4751(T)<br>speticolas@gibbonslaw.com | 714-716 Clifton Avenue<br>Clifton, NJ |

13

| | | |
|---|---|---|
| Newark Morning Ledger<br>1 Star Ledger Plaza<br>Newark, NJ 07102 | Michael J. Anderson, Esq.<br>Sabin, Bermant & Gould LLP<br>One World Trade Center, 44th Floor<br>New York, New York 10007<br>Direct No. (212) 381-7068<br>Fax No. (212) 381-7201<br>manderson@sabinfirm.com<br><br>Frances B. Stella, Esq.<br>Brach Eichler L.L.C.<br>101 Eisenhower Parkway<br>Roseland, New Jersey 07068<br>Direct No. (973) 403-3149<br>Fax No. (973) 618-5549<br>fstella@bracheichler.com | 1 Star Ledger Plaza<br>Newark, NJ |
| Newell Rubbermaid, Inc.<br>29 E. Stephenson Street<br>Freeport, IL 60132 | Andrew Sawula, Esq.<br>Schiff Hardin LLP<br>One Westminster Place, Suite 200<br>Lake Forest, IL 60045<br>847-295-4336 (T)<br>asawula@schiffhardin.com | Goody Products<br>969 Newark Turnpike<br>Kearny, NJ |
| News America Inc.<br>767 Fifth Ave., 46th Floor<br>New York, NY 10153<br><br>fka News Publishing Australia,<br>Ltd., now Twenty-First Century<br>Fox America | Peter Simshauer, Esq.<br>Skadden, Arps, Slate, Meagher & Flom LLP<br>500 Boylston Street<br>Boston, MA 02116<br>617-573-4880(T)<br>psimshau@skadden.com | Chris-Craft Inc./Montrose<br>Chemical Co.<br>100 Lister Ave.<br>Newark, NJ |
| Occidental Chemical Corp.<br>Occidental Tower<br>5005 LBJ Freeway<br>Dallas, TX 75244 | Dennis F. Blake<br>Senior Vice President<br>Occidental Chemical Corp.<br>5005 LBJ Freeway<br>Dallas, TX 75244<br><br>Larry Silver, Esq.<br>Langsam Stevens Silver<br>1818 Market Street, Suite 2610<br>Philadelphia, PA 19103-5319<br>215- 239.9023<br>lsilver@lssh-law.com | Diamond Shamrock<br>Chemicals Co.<br>80 and 120 Lister Ave.<br>Newark, NJ |
| The Okonite Company, Inc.<br>102 Hilltop Road<br>Ramsey, New Jersey 07446 | David Brook, Esq.<br>McCullough Ginsberg Montano &<br>Partners LLP<br>55 Bleeker Street<br>Millburn, NJ 07041<br>dbrook@mgpllp.com | Canal and Jefferson Streets<br>Passaic, NJ |

| Otis Elevator Co.<br>North America Operations<br>10 Farm Springs Road<br>Farmington, CT 06032 | Earl W. Phillips, Jr., Esq.<br>Robinson & Cole LLP<br>280 Trumbull Street<br>Hartford, CT 06103-3597<br>860-275-8220(T)<br>ephillips@rc.com<br><br>Brian Freeman, Esq.<br>Robinson & Cole LLP<br>280 Trumbull Street<br>Hartford, CT 06103-3597<br>860-275-8220(T)<br>bfreeman@rc.com | 1000 First St.<br>Harrison, NJ |
|---|---|---|
| Pabst Brewing Company<br>9014 Heritage Parkway, Suite 308<br>Woodridge, IL 60517 | Eugene Kashper, Chairman & CEO<br>Pabst Brewing Company<br>10635 Santa Monica Blvd Ste 350<br>Los Angeles, CA 90025 | 400 Grove Street<br>Newark, NJ |
| Palin Enterprises | Mr. Michael Palin<br>Palin Enterprises<br>235 Park Avenue South, #8<br>New York, NY 10003-1045 | American Modern Metals<br>44 Passaic Ave. (a/k/a 25 Belgrove Drive)<br><br>Kearny, NJ |
| Passaic Pioneer Properties<br>PO Box 327<br>35 Eighth Street<br>Passaic, NJ 07055 | Timothy J. Corriston, Esq.<br>Connell Foley LLP<br>85 Livingston Avenue<br>Roseland, NJ 07068<br>973-535-0500 (T)<br>tcorriston@connellfoley.com | 35 Eighth Street<br>Passaic, NJ |
| Pfizer Inc.<br>235 E. 42nd St.<br>New York, NY 10017 | Seth Kerschner, Esq.<br>White & Case LLP 1155 Avenue of the Americas<br>New York, NY 10036-2787<br>212-819-8630(T)<br>212-354-8113(F)<br>Seth.kerschner@whitecase.com | 230 Brighton Road<br>Clifton, NJ |
| PMC, Inc.<br>12243 Branford Street<br>Sun Valley, CA 91352 | Phillip Kamins, President & CEO<br>PMC Global, Inc.<br>12243 Branford St<br>Sun Valley, CA 91352<br>818-896-1101(T) | Kleer Kast<br>450 Schuyler Avenue<br>Kearny, NJ |

| | | |
|---|---|---|
| Power Test of New Jersey, Inc.<br>125 Jericho Turnpike<br>Jericho, NY 11753<br><br>now Leemilt's Petroleum, Inc.,<br>successor to Power Test of NJ,<br>Inc. | Christine Fitter, Asst Secretary<br>Leemilt's Petroleum, Inc.<br>125 Jericho Turnpike, Suite 103<br>Jericho, NY 11753<br>cfitter@gettyrealty.com<br><br>Nicole Moshang, Esq.<br>Manko, Gold Katcher & Fox LLP<br>401 City Avenue, Ste. 500<br>Bala Cynwyd, PA 19004<br>484-430-2324 (T)<br>nmoshang@mgkflaw.com | Getty Newark Terminal<br>86 Doremus Ave.<br>Newark, NJ |
| PPG Industries, Inc.<br>One PPG Place<br>Pittsburgh, PA 15272 | Gary P. Gengel, Esq.<br>Latham & Watkins, LLP<br>885 Third Avenue<br>New York, NY 10022-4834<br>gary.gengel@lw.com | 29 Riverside Ave.<br>Newark, NJ |
| PSE&G Corp.<br>P.O. Box 570<br>Newark, NJ 07101 | John F. Doherty, Esq.<br>Associate General Litigation Counsel<br>PSE&G Services Corporation<br>80 Park Plaza, T5D<br>Post Office Box 570<br>Newark, NJ 07102<br>973-430-6478(T)<br>John.doherty@pseg.com<br><br>Kevin R. Gardner, Esq.<br>Connell Foley<br>85 Livingston Avenue<br>Roseland, NJ 07068<br>973-535-0500(T)<br>kgardner@connellfoley.com | 155 Raymond Blvd.<br>Newark, NJ<br>&<br>4th St.<br>Harrison, NJ |
| Purdue Pharma Technologies,<br>Inc.<br>One Stamford Forum<br>Stamford, CT 06901 | James (Jay) Stewart, Esq.<br>Lowenstein Sandler PC<br>65 Livingston Avenue<br>Roseland, NJ 07068<br>973-597-2522(T)<br>jstewart@lowenstein.com | Napp Technologies<br>199 Main St.<br>Lodi, NJ |
| Quality Distribution, Inc.<br>150 East Pennsylvania Avenue<br>Suite 450<br>Downingtown, PA 19335<br><br>Quality Carriers, Inc. | Bonni Kaufman, Esq.<br>Holland & Knight, LLP<br>800 17th Street N.W. Suite 1100<br>Washington, DC 20006<br>202-419-2547<br>Bonni.kaufman@hklaw.com | Chemical Leaman Tank<br>Lines<br>80 Doremus Avenue<br>Newark, NJ |

16

| | | |
|---|---|---|
| Roman Asphalt Corporation<br>14 Ogden Street<br>Newark, NJ 07104 | Michael La Morgese, President<br>Roman Asphalt Corporation<br>14 Ogden St<br>Newark, NJ 07104<br>973-482-1113(T)<br>Roman@romanasphalt.com | 14 Ogden Street<br>Newark, NJ |
| Royce Associates<br>366 N. Broadway, Ste. 400<br>Jericho, NJ 11753 | A.J.Royce, President<br>Royce Associates, ALP<br>35 Carlton Ave<br>East Rutherford, NJ 07073<br>201-438-5200(T)<br><br>Ronald Bluestein, Esq.<br>Flamm Walton<br>794 Penllyn Pike<br>Blue Bell, PA 19422<br>267-419-1500 (T)<br>rbluestein@flammlaw.com | Royce Chemical Company<br>17 Carlton Avenue<br>East Rutherford, NJ |
| RSR Corp.<br>2777 Stemmons Freeway, Suite 1800<br>Dallas, TX 75207<br><br>now Revere Smelting and Refining Corporation | Jane C. Luxton, Esq.<br>Christopher Clare, Esq.<br>Clark Hill PLC<br>601 Pennsylvania Avenue NW<br>North Building, Suite 1000<br>Washington, DC 20004<br>202-572-8674(T)<br>703-598-3275(M)<br>jluxton@clarkhill.com<br>cclare@clarkhill.com | Revere Smelting & Refining<br>387 Avenue P<br>Newark, NJ |
| RTC Properties, Inc.<br>79 Fifth Avenue<br>New York, NY 10003 | John S. Stolz, Esq.<br>Lowenstein Sandler, PC<br>65 Livingston Avenue<br>Roseland, NJ 07068<br>973-597-6228(T)<br>mrodburg@lowenstein.com | AT&T/Western Electric<br>100 Central Ave.<br>Kearny, NJ |
| S&A Realty Corp.<br>55 Passaic Avenue<br>Kearny, NJ 07032 | Jeffrey Pollock, Esq.<br>Fox Rothschild<br>P.O. Box 5231<br>Princeton, NJ 08543<br>609-896-7660(T)<br>jmpollock@foxrothschild.com | American Modern Metals<br>44 Passaic Ave. (a/k/a 25 Belgrove Drive)<br>Kearny, NJ |
| Safety Kleen Envirosystems Co.<br>1301 Gervais St.<br>Columbia, SC 29201<br><br>McKesson Corporation for itself and for Safety-Kleen Envirosystems, Inc. | John Edgcomb, Esq.<br>Edgcomb Law Group, LLP<br>One Post Street, Suite 2100<br>San Francisco, California 94104-5225<br>415-399-1555 (T)<br>jedgcomb@edgcomb-law.com | 600 Doremus Ave.<br>Newark, NJ |

17

| | | |
|---|---|---|
| Schiffenhaus Packaging Corp.<br>c/o Rock-Tenn Company<br>504 Thrasher Street<br>Norcross, GA 30071 | Camille V. Otero, Esq.<br>Gibbons, PC<br>One Gateway Center<br>Newark, NJ 07102-5310<br>cotero@gibbonslaw.com | 204 Academy Street<br>49 Fourth Street<br>2013 McCarter Highway<br>Newark, NJ |
| Sequa Corporation<br>200 Park Avenue<br>New York, NY 10166 | Brian L. Buniva, Esq.<br>Senior Counsel & Senior Director<br>Environment, Health & Safety Sequa<br>Corporation<br>707 E. Main Street, Suite 1450<br>Richmond, VA 23219<br>845-230-7374 (Direct)<br>804-873-0610 (Mobile)<br>Brian_Buniva@sequa.com<br><br>Gary P. Gengel, Esq.<br>Kegan A. Brown, Esq.<br>Latham & Watkins, LLP<br>885 Third Avenue<br>New York, NY 10022-4834<br>gary.gengel@lw.com | Sun Chemical Corporation<br>185 Foundry Street<br>Newark, NJ<br>(prior to 1987) |
| Seton Company, Inc.<br>1000 Madison Avenue<br>Norristown, PA 19403\<br><br>now Seton Tanning | David M. Kohane, Esq.<br>Cole Schotz, PC<br>PO Box 800<br>25 Main Street<br>Hackensack, NJ 07601-7015<br>201-525-6267(T)<br>dkohane@coleschotz.com | Seton Leather Company<br>849 Broadway<br>Newark, NY 07104 |
| SpectraServ, Inc.<br>75 Jacobus Avenue<br>Kearny, NJ 07032 | Diana Buongiorno, Esq.<br>Chiesa Shahinian & Giantomassi, PC<br>One Boland Dr<br>West Orange, NJ 07052<br>973-530-2075(T)<br>dbuongiorno@csglaw.com | 75 Jacobus Ave.<br>Kearny, NJ |
| STWB, Inc.<br>c/o Bayer Corporation<br>100 Bayer Road<br>Pittsburgh, PA 15205 | Timothy I. Duffy, Esq.<br>Coughlin Duffy LLP<br>Post Office Box 1917<br>350 Mount Kemble Avenue<br>Morristown, NJ 07962-1917<br>973-631-6002(T)<br>tduffy@coughlinduffy.com<br>lhall@coughlinduffy.com (Assistant) | Lehn & Fink Products Corp.<br>192-194 Bloomfield Avenue<br>Bloomfield, NJ 07003<br><br>Thomasett Colors/Sterling<br>120 Lister Ave.<br>Newark, NJ |

18

| | | |
|---|---|---|
| Sun Chemical Corporation<br>35 Waterview Boulevard<br>Parsippany, NJ 07054-1285 | Warren W. Faure, Esq.<br>EH&S Counsel<br>Sun Chemical Corporation<br>35 Waterview Boulevard<br>Parsippany, NJ 07054<br>973-404-6590(T)<br>Warren.faure@sunchemical.com<br><br>Ted Wolff, Esq.<br>Manatt, Phelps & Phillips, LLP<br>7 Times Square<br>New York, NY 10036<br>twolff@manatt.com | Sun Chemical Corporation<br>185 Foundry Street<br>Newark, NJ<br>(1987 to present) |
| Teval Corporation<br>99 Cherry Hill Road, Suite 105<br>Parsippany, NJ 07054 | Lee D. Henig-Elona, Esq.<br>Gordon & Rees<br>18 Columbia Turnpike, Suite 220<br>Florham Park, NJ 07932<br>973-549-2520(T direct)<br>973-549-2500(T office)<br>lhenig-elona@gordonrees.com | Guyon Pipe<br>900-1000 South 4th Street<br>Harrison, NJ |
| Teva Pharmaceuticals USA, Inc.<br>1090 Horsham Road<br>North Wales, PA 19454 | Gail Port, Esq.<br>Proskauer Rose LLP<br>11 Times Square<br>New York, NY 10036-8299<br>212-969-3243(T)<br>gport@proskauer.com | Biocraft Laboratories<br>12 Industrial Park<br>Waldwick, NJ |
| Textron, Inc.<br>40 Westminster Street<br>Providence, RI 02903 | Jamie Schiff, Esq.<br>Textron, Inc.<br>40 Westminster Street<br>Providence, RI 02903<br>401-457-2422 (T)<br>jschiff@textron.com<br><br>Bonni Kaufman, Esq.<br>Holland & Knight<br>800 17th Street, NW<br>Suite 1100<br>Washington, DC 20006<br>202 955-3000<br>bonni.kaufman@hklaw.com | Spencer Kellogg Division<br>400 Doremus Avenue<br><br>Newark, NJ |
| The Andrew Jergens Co.<br>2535 Spring Grove Ave.<br>Cincinnati, OH 45214<br><br>now KAO U.S.A Inc. | Richard T. La Jeunesse, Esq.<br>Graydon Head & Ritchey LLP<br>1900 Fifth Third Center<br>511 Walnut Street<br>Cincinnati, OH 45202<br>513-629-2702(T)<br>rlajeunesse@graydon.com | 1 Franklin Ave.<br>Belleville, NJ |

| The BOC Group, Inc.<br>575 Mountain Avenue<br>Murray Hill, NJ 07974<br><br>now Linde LLC on behalf of<br>The BOC Group, Inc. | James (Jay) Stewart, Esq.<br>Lowenstein Sandler PC<br>65 Livingston Avenue<br>Roseland, NJ 07068<br>973-597-2522(T)<br>jstewart@lowenstein.com | 681 Main Street<br>Belleville, NJ |
|---|---|---|
| The Hartz Mountain<br>Corporation<br>400 Plaza Drive<br>Secaucus, NJ 07094<br><br>The Hartz Consumer Group,<br>Inc. on behalf of The Hartz<br>Mountain Corporation | Curtis L. Michael, Esq.<br>Horowitz, Rubino & Patton<br>400 Plaza Drive<br>PO Box 2038<br>Secaucus, NJ 07094-2038<br>Curt.michael@hrplaw.com | 600/700 South 4th Street<br>Harrison, NJ |
| The Newark Group, Inc.<br>20 Jackson Drive<br>Cranford, NJ 07016 | David M. Meezan, Esq.<br>Kazmarek Mowrey Cloud Laseter LLP<br>1230 Peachtree Street N.E.<br>Suite 3600<br>Atlanta, GA 30309<br>404-969-0733<br>dmeezan@kmcllaw.com | The Newark Boxboard Co.<br>17 Blanchard Street<br>Newark, NJ |
| The Sherwin Williams Co.<br>101 Prospect Ave., N.W.<br>Cleveland, OH 44115 | Jason Perdion<br>The Sherwin Williams Co.<br>101 Prospect Ave, NW<br>Cleveland, OH 44115<br>216-566-3741(T)<br>216-515-4400(F)<br>don.j.mcconnell@sherwin.com<br><br>Herbert (Bart) Bennett, Esq.<br>Sokol, Behot & Fiorenzo<br>229 Nassau Street<br>Princeton, NJ 08542-4601<br>609-279-0900(T)<br>hbennett@cullenanddykman.com | 60 Lister Ave.<br>Newark, NJ |
| The Stanley Works<br>1000 Stanley Drive<br>New Britain, CT 06053<br><br>now Stanley Black & Decker,<br>Inc. | Andrew Kolesar, Esq.<br>Thompson Hine LLP<br>312 Walnut Street, 14th Floor<br>Cincinnati, OH 45202<br>513-352-6545(T)<br>andrew.kolesar@thompsonhine.com | Stanley Tools<br>140 Chapel St.<br>Newark, NJ |

20

| | | |
|---|---|---|
| Three County Volkswagen<br>701 Riverside Ave.<br>Lyndhurst, NJ 07071 | Lee D. Henig-Elona, Esq.<br>Gordon & Rees<br>18 Columbia Turnpike, Suite 220<br>Florham Park, NJ 07932<br>973-549-2520(T direct)<br>973-549-2500(T office)<br>lhenig-elona@gordonrees.com | 701 Riverside Ave.<br>Lyndhurst, NJ |
| Tiffany & Co.<br>727 Fifth Avenue<br>New York, NY 10022 | John Klock, Esq.<br>Gibbons, PC<br>One Gateway Center<br>Newark, NJ  07102-5310<br>973-596-4757 (T)<br>jklock@gibbonslaw.com | 820 Highland Avenue<br>Newark, NJ |
| Unilever Bestfoods<br>International Plaza<br>Sylvan Avenue<br>Englewood Cliffs, NJ 07632<br><br>Conopco, Inc., d/b/a Unilever<br>(as successpr to CPC/Bestfoods,<br>former parent of the Penick<br>Corporation | Joshua Frank, Esq.<br>Baker Botts<br>1299 Pennsylvania Ave., N.W.<br>Washington, DC  20004-2400<br>202-639-7710 (T)<br>Joshua.frank@bakerbotts.com<br><br>Andrew Shakalis, Esq.<br>Associate General Counsel – Environmental<br>& Safety<br>Unilever<br>700 Sylvan Avenue<br>Englewood Cliffs, NJ  07632<br>201-894-2763 (T)<br>201-894-2727 (F)<br>Andrew.shakalis@unilever.com | Penick Corporation<br>540 New York Avenue<br>Lyndhurst, NJ |
| Viacom Inc.<br>11 Stanwix St.<br>Pittsburgh, PA 15222<br><br>Now CBS Corporation | Jeffrey B. Groy, Esq.<br>VP, Sr. Counsel/ Environmental<br>CBS Law Department<br>CBS Corporation<br>2 East Mifflin Street, Suite 200<br>Madison, WI 53703<br>262 705-0579(T)<br>Jeff.Groy@cbs.com | Westinghouse Electric<br>95 Orange St.<br>Newark, NJ |

| | | |
|---|---|---|
| Vulcan Materials Co.<br>1200 Urban Center Drive<br>Birmingham, AL 35242<br><br>Now Legacy Vulcan Corp. | Eva Fromm O'Brien, Esq.<br>Fulbright & Jaworski<br>Fulbright Tower<br>1301 McKinney<br>Suite 5100<br>Houston, TX 77010-3095<br>713-651-5321 (T)<br>713-651-5246 (F)<br>eobrien@fulbright.com<br><br>John M. Floyd, Esq.<br>Senior Attorney<br>Vulcan Materials Company<br>1200 Urban Center Drive<br>Birmingham, AL 35242<br>205-298-3745 (Direct)<br>205-492-4219 (Cell)<br>205-298-2960 (F)<br>floydj@vmcmail.com | 600 Doremus Ave.<br>Newark, NJ |
| Wiggins Plastics Inc.<br>186 Kingsland Road<br>Clifton, NJ 07014 | Glenn Tucker, Esq.<br>Sheryl Reba, Esq.<br>Greenberg Dauber<br>One Gateway Center, Suite 600<br>Newark, NJ 07102<br>973-643-3700(T)<br>973-643-1218(F)<br>gtucker@greenbergdauber.com<br>sreba@greenbergdauber.com | 180 Kingsland Road<br>Clifton, NJ |
| Wyeth<br>5 Giralda Farms<br>Madison, NJ 07940 | Ronald J. Schott, Esq.<br>Corporate Counsel<br>Pfizer<br>5 Giralda Farms<br>Madison, NJ 07940<br>973-660-6641(T)<br>973-660-7176(F)<br>ronald.schott@pfizer.com<br><br>Seth Kerschner, Esq.<br>White & Case LLP 1155 Avenue of the<br>Americas<br>New York, NY 10036-2787<br>212-819-8630(T)<br>212-354-8113(F)<br>Seth.kerschner@whitecase.com | Shulton Inc. and<br>American Cyanamid Co.<br>697 Route 46<br>Clifton, NJ |

| | | |
|---|---|---|
| Passaic Valley Sewerage Commission | Gregory A. Tramontozzi, Esq<br>Executive Director<br>Passaic Valley Sewerage Commissioners<br>600 Wilson Avenue<br>Newark, NJ 07105<br><br>Michael Witt, Esq.<br>Chasan Leyner & Lamparello, PC<br>300 Harmon Meadow Blvd.<br>Secaucus, NJ 07094<br>201-801-6093<br>mwitt@chasanlaw.com | |
| City of Newark | Joanne Vos, Esq.<br>Maraziti Falcon, LLP<br>150 John F. Kennedy Parkway<br>Short Hills, NJ 07078<br>973 912-9008<br>jvos@mfhenlaw.com<br><br>Angela Foster, Esq.<br>First Assistant Corporation<br>Counsel<br>City of Newark Department of Law<br>Room 316, City Hall<br>920 Broad Street<br>Newark, NJ 07102<br>973-733-3880<br>fostera@ci.newark.nj.us | |
| Borough of East Newark | Honorable Joseph R. Smith, Mayor<br>Borough of East Newark<br>34 Sherman Avenue<br>East Newark NJ 07029 | |
| Town of Harrison | Honorable James A. Fife, Mayor<br>Town of Harrison<br>318 Harrison Avenue<br>Harrison, New Jersey 07029<br><br>Mr. Paul J. Zarbetski, Esq.<br>Town of Harrison<br>318 Harrison Avenue<br>Harrison, New Jersey 07029 | |
| Town of Kearny | Honorable Alberto G. Santos, Mayor<br>Town of Kearny<br>402 Kearny Avenue<br>Kearny, NJ 07032 | |

# Declaration of Alice Yeh

# Exhibit E

# September 18, 2017, letter
# from Eric Wilson, EPA



**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY**
REGION 2
290 BROADWAY
NEW YORK, NY 10007-1866

SEP 18 2017

**BY EMAIL AND CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

To:    See List of Addressees - Attachment A

Re:    Allocation for Operable Unit 2 Remedial Action
       Diamond Alkali Superfund Site, Essex and Hudson Counties, New Jersey

Dear Sir/Madam:

On August 28, 2017, the U.S. Environmental Protection Agency ("EPA") hosted a meeting at its New York City offices to provide you with an opportunity to share your views on the Agency's proposed settlement framework for implementation of the remedy selected for the lower 8.3 miles of the Passaic River, which is Operable Unit 2 ("OU2") of the Diamond Alkali Superfund Site (the "Site"). I want to once again thank all of the parties that participated in the meeting. Your participation has helped both EPA and the other parties better understand the issues and concerns regarding the framework.

After careful consideration, the Agency has concluded that the allocation process should include all of the potentially responsible parties ("PRPs") for OU2 (apart from the Passaic Valley Sewerage Commission ("PVSC"), the four municipal PRPs referred to below, and the PRPs that settle pursuant to the "early" cash-out settlement that EPA offered in March 2017), and should not be limited to the "middle tier" parties. Transparency and fairness are concepts that EPA has consistently stated are of importance to the Agency in this matter and, after considering your comments and concerns, we think those concepts are best served by having one allocation for all of these parties.

Numerous parties at the August 28, 2017 meeting expressed concern regarding the financial burden that would be placed on PRPs that are not responsible for the release of dioxins, furans and/or polychlorinated biphenyls ("PCBs") into the Lower Passaic River if those parties are not given the opportunity to settle with the United States for their OU2 liability, as opposed to having to implement the remedial action for OU2. EPA appreciates those concerns. As we have stated, we anticipate that with the help of the allocation process, EPA will be able to offer cash-out settlements to a number of the parties.

Similarly, EPA's expectation that the private PRPs responsible for the release of dioxins, furans and/or PCBs will perform the OU2 remedial action has not changed. It is therefore our goal that, in addition to supporting potential additional cash-out settlements, the allocation will lead to a consent decree in which those parties agree to perform the OU2 remedial action under EPA oversight.

To perform the allocation, EPA has retained AlterEcho and its senior allocation specialist, Mr. David Batson, Esq., through the Agency's prime contract with CSRA. EPA and AlterEcho invite you to attend a meeting to introduce the allocation process. Among other things, the allocation will provide opportunities for participating parties to comment on factors that should be part of the allocation and to contribute relevant information about themselves and other parties for use in the allocation. This meeting will be held on October 13, 2017 at 9:00 A.M. on the 27th floor of EPA's offices, which are located at 290 Broadway, New York, NY 10007.

Mr. Batson has requested that each party designate a primary contact for future communications on the allocation and that the primary contact attend the October 13th meeting in person. EPA has established a conference line for others wishing to participate. The call-in number is 866-299-3188, and the conference code is 212-637-3136. Please respond to EPA by October 5, 2017 with the following information: 1) name of and party represented by the primary contact attending the meeting; 2) names of other representatives planning to call in for each such party. Your response should be directed to Alice Yeh, Remedial Project Manager, Emergency and Remedial Response Division at yeh.alice@EPA.gov or U.S. EPA Region 2, 290 Broadway - 19th Floor, New York, NY 10007.

After the allocator assigns shares to the parties, EPA will make a decision as to which parties should receive cash-out settlement offers, the dollar amount of each offer, and how the money raised by the cash-out settlements will be applied towards OU2 costs.

During the August 28, 2017 meeting, several parties raised questions concerning EPA's enforcement approach for PVSC and the municipalities to which EPA issued notices of potential liability (the City of Newark, Borough of East Newark, Town of Harrison and Town of Kearny). EPA has initiated discussions with PVSC and the municipalities about substantial contributions that, collectively, they might make to the OU2 remedy. At this time, we do not believe it would be helpful to include them in the allocation.

If you have any questions regarding this matter, please contact Assistant Regional Counsel Juan Fajardo at 212-637-3132 or fajardo.juan@epa.gov.

Very truly yours,

Eric J. Wilson
Deputy Director for Enforcement and Homeland Security
Emergency and Remedial Response Division

cc: Brian Donohue, Esq., USDOJ
    Mark Barash, Esq., USDOI
    Kate Barfield, Esq., NOAA
    John Dickinson, Esq., New Jersey Attorney General's Office

2

**Attachment A – List of Addressees**

**Diamond Alkali Superfund Site**
**Lower 8.3 Miles - Passaic River**

| Company | Contact Information | Facility |
|---|---|---|
| A.E. Staley Manufacturing Co., Inc.<br>2200 E. Eldorado Street<br>Decatur, IL  62521-1578<br><br>Now Tate & Lyle Ingredients Americas LLC | John R. Holsinger, Esq.<br>Two University Plaza, Suite 300<br>Hackensack, NJ 07601<br>201-487-9000 (T)<br>johnh@jrholsinger.com<br><br>Heidi R. Balsley, Esquire<br>Corporate Counsel<br>A.E. Staley<br>Manufacturing Co., Inc.<br>2200 E. Eldorado Street<br>Decatur, IL  62521<br>Heidi.Balsley@tateandlyle.com | 320 Schuyler Avenue and 100 Third Avenue<br>Kearny, NJ |
| Alden Leeds Inc.<br>55 Jacobus Ave.<br>Kearny, NJ 07032 | Mark Epstein, President<br>Alden Leeds Inc.<br>55 Jacobus Ave.<br>Kearny, NJ 07032<br><br>Joseph Fiorenzo, Esq.<br>Sills Cummis & Gross<br>The Legal Center<br>One Riverfront Plaza<br>Newark, NJ 07102<br>973-643-7000 (T)<br>jfiorenzo@sillscummis.com | 2145 McCarter Highway<br>Newark, NJ<br><br>55 Jacobus Avenue<br> Kearny, NJ |
| Alliance Chemical, Inc.<br>Linden Avenue<br>Ridgefield, NJ 07657 | Fredi Pearlmutter, Esq.<br>Lindabury, McCormick, Estabrook & Cooper, P.C.<br>53 Cardinal Drive<br>Box 2369<br>Westfield, NJ  07091<br>908-233-6800 (T)<br>fpearlmutter@lindabury.com | 33 Avenue P<br>Newark, NJ |

| | | |
|---|---|---|
| American Ref-Fuel Co.<br>155 Chestnut Ridge Road<br>Montvale, NJ 07645<br><br>Now Covanta Essex Company | Nancy Tammi, Esq.<br>VP, Associate General Counsel<br>Covanta<br>445 South Street<br>Morristown, NJ 07960<br>862-345-5133 | 183 Raymond Blvd & 66<br>Blanchard St<br>Newark, NJ |
| | Barbara Hopkinson Kelly, Esq.<br>Wilson Elser Moskowitz Edelman &<br>Dicker LLP<br>200 Campus Drive<br>Florham Park, NJ 07932-0668<br>973.735.5765 (Direct)<br>609.213.8589 (Cell)<br>973.624.0808 (Fax)<br>barbara.kelly@wilsonelser.com | |
| Arkema Incorporated<br>2000 Market Street<br>Philadelphia, PA 19103-3222 | Paula Martin, Esq.<br>Doug Loutzenhiser<br>Legacy Site Services, LLC<br>468 Thomas Jones Way, Suite 150<br>Exton, PA 19341-2528<br>Paula.martin@total.com | Wallace & Tiernan<br>25 Main Street<br>Belleville, NJ |
| Ashland, Inc.<br>5200 Blazer Parkway<br>Dublin, OH 43017 | Robin E. Lampkin<br>Ashland Inc.<br>5200 Blazer Parkway<br>Dublin, OH 43017<br>Telephone: 614-790-3019<br>realmpkin@ashland.com<br><br>William S. Hatfield, Esq.<br>Gibbons P.C.<br>One Gateway Center<br>Newark, NJ 07102<br>whatfield@gibbonslaw.com | 221 Foundry St.<br>Newark, NJ |
| Atlas Refining, Inc.<br>142 Lockwood Street<br>Newark, NJ 07105<br><br>Now Atlas Refinery, Inc. | Steven Schroeder, Jr., President & CEO<br>Atlas Refinery, Inc.<br>142 Lockwood Street<br>Newark, NJ 07105<br><br>Thomas H. Prol, Esq.<br>Laddey, Clark & Ryan,<br>LLP<br>60 Blue Heron Road, Suite 300<br>Sparta, NJ 07871<br>tryan@lcrlaw.com<br>tprol@lcrlaw.com | 142 Lockwood St.<br>Newark, NJ |

| Automatic Electro Plating Corp.<br>185 Foundry Street, Suite 3<br>Newark, NJ 07105 | Michael O'Rourke, President<br>Automatic Electro Plating Corp.<br>1017 Applegate Parkway<br>Waxhaw, NC 28173-6738<br>Michael.orourke@aol.com | 185 Foundry Street Complex<br>Newark, NJ<br>(Bldgs 19, 21, 22) |
|---|---|---|
| BASF Catalysts LLC<br>100 Campus Drive<br>Florham Park, NJ | Karyllan D. Mack, Esq. (see below) | Engelhard Corporation<br>One West Central Avenue<br>East Newark, NJ |
| BASF Corp.<br>3000 Continental Drive<br>Mount Olive, NJ 07828 | Karyllan D. Mack, Esq.<br>Environmental Counsel<br>BASF Corporation<br>100 Park Avenue<br>Florham Park, NJ 07932<br>Karyllan.mack@basf.com<br><br>David Schneider, Esquire<br>Bressler, Amery & Ross<br>Post Office Box 1980<br>Morristown, NJ 07962<br>dschneider@bressler.com | 50 Central Ave.<br>Kearny, NJ<br>&<br>150 Wagaraw Rd<br>Hawthorne, NJ |
| Benjamin Moore & Co.<br>51 Chestnut Ridge Rd.<br>Montvale, NJ 07645 | Paul Sangillo, Esq.<br>Benjamin Moore & Co.<br>101 Paragon Drive<br>Montvale, NJ 07645<br>201.949.6318 (T)<br>Paul.sangillo@benjaminmoore.com<br><br>Eric S. Aronson, Esq.<br>David G. Mandelbaum, Esq.<br>GreenbergTraurig<br>500 Campus Drive<br>Suite 400<br>Florham Park, NJ 07932<br>aronsone@gtlaw.com | 134 Lister Ave.<br>Newark, NJ |
| Berol Corporation<br>c/o Newell Rubbermaid Inc.<br>2707 Butterfield Road, Suite 100<br>Oak Brook, IL 60523 | Andrew Sawula, Esq.<br>Schiff Hardin LLP<br>One Westminster Place, Suite 200<br>Lake Forest, IL 60045<br>847-295-4336 (T)<br>asawula@schiffhardin.com | Faber-Castell Corporation<br>41 Dickerson Street<br>Newark, NJ |

| | | |
|---|---|---|
| Campbell Foundry Company<br>800 Bergen Street<br>Harrison, NJ 07029 | Timothy J. Corriston, Esq.<br>Connell Foley LLP<br>85 Livingston Avenue<br>Roseland, NJ 07068<br>973-535-0500 (T)<br>tcorriston@connellfoley.com | 800 Bergen Street<br>Harrison, NJ |
| Canning Gum LLC<br>c/o MacDermid Incorporated<br>1401 Blake Street<br>Denver, CO 80202 | Richard A. Nave, CHMM<br>Corporate Director EH&S<br>Platform Specialty Products Corp.<br>245 Freight Street<br>Waterbury, CT 06702 | Frederick Gumm Chemical<br>Co.<br>538 Forest Street<br>Kearny, NJ |
| Celanese Ltd.<br>Route 202-206<br>P.O. Box 2500<br>Somerville, NJ 08876<br><br>CNA Holdings LLC<br>participating on behalf of<br>Celanese Ltd | Duke K. McCall, III, Esq.<br>Morgan, Lewis & Bockius<br>LLP<br>1111 Pennsylvania Ave., NW<br>Washington, DC 20004-2541<br>202-373-6607 (T)<br>duke.mccall@morganlewis.com<br><br>James J. Dragna<br>Morgan Lewis<br>300 South Grand Ave., 22nd Floor<br>Los Angeles, CA 90071-3132<br>Jim.dragna@morganlewis.com<br><br>James O'Toole, Esq.<br>Buchanan Ingersoll & Rooney PC<br>Two Liberty Place<br>50 S. 16th Street, Suite 3200<br>Philadelphia, PA 19102-2555<br>James.otoole@blnc.com | 354 Doremus Ave<br>Newark, NJ |
| Chargeurs, Inc.<br>178 Wool Road<br>Jamestown, SC 29453 | James. R. Brendel, Esq.<br>Clark Hill PLC<br>One Oxford Centre<br>301 Grant Street, 14th floor<br>Pittsburgh, PA 15219<br>412-394-2373 (T)<br>jbrendel@clarkhill.com | United Piece Dye Works<br>199 and 205 Main Street and<br>42 Arnot Street<br>Lodi, NJ |

4

| | | |
|---|---|---|
| Chevron Texaco Corporation<br>6001 Bollinger Canyon Rd.<br>K-2056<br>San Ramon, CA 94583<br><br>Chevron Environmental<br>Management Company<br>participating for itself, Texaco,<br>Inc. and TRMI-H LLC | Shawn Raymond DeMerse<br>Chevron U.S.A. Inc.<br>Law Department<br>1400 Smith Street, Rm 07090<br>Houston, TX 77002<br>shawndemerse@chevron.com<br><br>Louis M. DeStefano, Esq.<br>Buchanan Ingersoll & Rooney, PC<br>550 Broad Street, Suite 810<br>Newark, NJ  07102-4517<br>973.273.9800 (T)<br>louis.destefano@bipc.com | Getty Newark Terminal<br>86 Doremus Ave.<br>Newark, NJ |
| Coats & Clark, Inc.<br>3420 Toringdon Way, Suite 301<br>Charlotte, NC 28277 | Dan Riesel, Esq.<br>Jeff Gracer, Esq.<br>Sive Paget & Riesel, P.C.<br>460 Park Avenue<br>New York, NY  10022<br>212-421-2150<br>driesel@spr.com | Clark Thread Co.<br>260 Ogden Street<br>Newark NJ<br>900 Passaic Avenue<br>East Newark NJ<br>735 Broad Street<br>Bloomfield NJ |
| EnPro Holdings LLC as<br>assignee of Coltec<br>Industries Inc.<br><br>5605 Carnegie Boulevard<br>Charlotte, NC 28209 | Tom Price, Esq.<br>EnPro Industries<br>5605 Carnegie Boulevard<br>Charlotte, NC 28209<br>704-731-1525 (T)<br>tom.price@enproindustries.com<br><br>Charles E. Merrill, Esquire<br>Husch Blackwell Sanders LLP<br>190 Carondelet Plaza, Suite 600<br>St. Louis, MO  63105<br>314-480-1952<br>charlie.merrill@huschblackwell.com | Crucible Steel Co.<br>1000 South Fourth St.<br>Harrison, NJ |
| Congoleum Corp.<br>3705 Quakerbridge Road<br>Mercerville, NJ 08619 | Russell Hewit, Esq.<br>Dughi, Hewit & Domolewski, P.C.<br>340 North Avenue<br>Cranford, NJ 07016<br>908-272-0200(T)<br>rhewit@dughihewit.com | 195 Belgrove Drive<br>Kearny, NJ |

| | | |
|---|---|---|
| Cooper Industries, Inc.<br>600 Travis Street<br>Houston, TX 77002 | Lisa D. Sutton<br>Vice Present/Chief Counsel – EHS<br>Eaton Corporation<br>1000 Eaton Boulevard<br>Cleveland, OH 44122<br>440-523-4358 (T)<br><br>John F. Cermak<br>Sonja A. Inglin<br>Baker Hostetler<br>11601 Wilshire Boulevard, Ste 1400<br>Los Angeles, CA 90025-0509<br>310-442-8889 (T) (Cermak)<br>310-442-8885 (T) (Inglin)<br>jcermak@bakerlaw.com<br>singlin@bakerlaw.com | J. Wiss & Sons Co<br>7, 13, 26 Bank Street and<br>33 Littleton Avenue (aka 400<br>West Market Street)<br>Newark, NJ |
| Cooper Industries, LLC<br>600 Travis Street, Suite 5800<br>Houston, TX 77002 | (see above) | Thomas A. Edison, Inc.<br>Belleville Avenue &<br>Sherman Avenue<br>Bloomfield, NJ<br>75 Belmont Avenue<br>Belleville, NJ |
| Croda Inc.<br>300-A Columbus Circle<br>Edison, NJ 08837 | Stephen Swedlow, Esq.<br>Quinn, Emanuel, Urquhart & Sullivan, LLP<br>191 N. Wacker Drive, Suite 2700<br>Chicago, IL 60606<br>stephenswedlow@quinnemanuel.com | Hummel Lanolin<br>185 Foundry Street Complex<br>Newark, NJ<br>(Block 5005, Lot 21; Bld 39) |
| Curtiss-Wright Corp.<br>4 Becker Farm Road<br>Roseland, NJ 07068 | Diana Buongiorno<br>Chiesa Shahinian & Giantomassi, PC<br>One Boland Drive<br>West Orange, NJ 07052<br>973-530-2075(T)<br>dbuongiorno@csglaw.com | 1 Passaic St.<br>Woodridge, NJ |
| Darling International, Inc.<br>251 O'Connor Ridge Boulevard,<br>Suite 300<br>Irving, TX 75038 | Steven Singer, Esq.<br>34 Hillside Avenue<br>Montclair, NJ 07042<br>973-744-6093<br>stsinger@verizon.net | Standard Tallow Corp.<br>61 Blanchard Street,<br>Newark, NJ<br>1215 Harrison Avenue,<br>Kearny, NJ |
| DII Industries, LLC<br>c/o Halliburton<br>2101 City West Blvd.<br>Houston, TX 77042-3021 | Thomas C. Jackson, Esq.<br>Joshua Frank, Esq.<br>Baker Botts LLP<br>1299 Pennsylvania Ave., N.W.<br>Washington, DC 20004-2400<br>202-639-7710 (T)<br>Thomas.Jackson@bakerbotts.com<br>Joshua.frank@bakerbotts.com | Worthington Corp. &<br>Dresser Industries, Inc.<br>401 Worthington Avenue<br>Harrison, NJ |

6

| | | |
|---|---|---|
| Drum Service of Newark, Inc.<br>104 Lister Ave.<br>Newark, NJ 07105 | Ralph Foglia<br>104 Lister Ave.<br>Newark, NJ<br>07105 | Hilton-Davis<br>120 Lister Ave.<br>Newark, NJ |
| Eden Wood Corporation<br>47 Parsippany Road<br>Whippany, NJ 07981 | Warren L. Dean, Jr.<br>Thompson Coburn LLP<br>1909 K Street, N.W.<br>Suite 600<br>Washington, D.C. 20006-1167<br>202.585.6908 (T)<br>wdean@thompsoncoburn.com | Whippany Paper Board<br>1 Ackerman Avenue<br>Clifton, NJ |
| E.I. duPont de Nemours & Co.<br>1007 Market Street<br>Wilmington, DE 19898 | Stephen Rahaim, Esq.<br>Chief Environmental<br>Counsel<br>E.I. duPont de Nemours and<br>Company<br>Chestnut Run Plaza<br>721/1264<br>974 Centre Road<br>P.O. Box 2915<br>Wilmington, DE 19805<br>302-996-8278(T)<br>stephen.rahaim@dupont.com | Pitt Consol<br>191 Doremus Ave.<br>Newark, NJ |
| Elan Chemical Co.<br>268 Doremus Ave.<br>Newark, NJ 07105 | Jocelyn Kapp Manship, CEO<br>Elan Chemical Company Inc.<br>268 Doremus Avenue<br>Newark, NJ 07105<br><br>Randy Schillinger, Esq.<br>Saiber Schlesinger Staz & Goldstein<br>One Gateway Center, 13th Fl<br>Newark, NJ 07102<br>973-622-3333(T)<br>rs@saiber.com | 268 Doremus Ave.<br>Newark, NJ |
| El Paso Tennessee Pipeline Co.<br>1001 Louisania Street<br>Houston, TX 77002<br><br>EPEC Polymers Inc.<br>participating on behalf of itself<br>and EPEC Oil Company<br>Liquidating Trust | Andrea A. Lipuma, Esq.<br>Saul Ewing LLP<br>650 College Road East<br>Suite 4000<br>Princeton, NJ 08540-6603<br>Telephone: 609-452-5032<br>alipuma@saul.com | Tenneco, Inc.<br>290 River Drive<br>Garfield, NJ |

7

| Essex Chemical Corp.<br>2030 WMDC<br>Midland, MI 48674 | Kenneth Mack, Esq.<br>Linda Mack, Esq.<br>Fox Rothschild LLP<br>Post Office Box 5231<br>Princeton, NJ 08543-5231<br><br>Princeton Pike Corp. Center<br>997 Lenox Drive, Bldg. 3<br>Lawrenceville, NJ 08648<br>609-896-3000(T)<br>kmack@foxrothschild.com | 330 Doremus Ave.<br>Newark, NJ |
| Everett Smith Group, Ltd.<br>330 East Kilbourn Avenue, Ste 750<br>Milwaukee, WI 53202 | Sarah A. Slack, Esq.<br>Foley & Lardner, LLP<br>Suite 500<br>150 East Gilman Street<br>Madison, WI 53703-1482<br>608-258-4239<br>sslack@foley.com | Blanchard Bro. & Lane, Inc.<br>40 Bruen Street<br>Newark, NJ |
| Foundry Street Corporation<br>67 Kettle Hole Road 2524<br>Montauk, NY 11954-5084 | Gerald Borriello<br>Foundry Street Corporation<br>67 Kettle Hole Road 2524<br>Montauk, NY 11954-5084<br>geraldborriello@gmail.com | 185 Foundry Street Complex<br>Newark, NJ<br>(Block 5005, Lot 22 – Bldgs 19, 21, 22) |
| Fragrances North America<br>1775 Windsor Road<br>Teaneck, NJ 07666<br><br>Now Givaudan Corp. | Richard Wroblewski, P.G.<br>Environmental Specialist<br>Givaudan Fragrances Corp.<br>300 Waterloo Valley Road<br>Mount Olive, NJ 07828<br>richard.wroblewski@givaudan.com<br><br>William Hatfield, Esq.<br>Gibbons, PC<br>One Gateway Center<br>Newark, NJ 07102-5310<br>973-596-4511 (T)<br>whatfield@gibbonslaw.com | Givaudan Fragrances<br>125 Delawanna Avenue<br>Clifton, NJ |
| Franklin Burlington Plastics, Inc.<br>113 Passaic Ave.<br>Kearny, NJ 07032 | Norman Spindel, Esq.<br>Lowenstein Sandler PC<br>65 Livingston Avenue<br>Roseland, NJ 07068<br>973-597-2514(T)<br>nspindel@lowenstein.com | 113 Passaic Ave.<br>Kearny, NJ |

8

| | | |
|---|---|---|
| Garfield Molding Company, Inc.<br>1115 Inman Ave. #196<br>Edison, NJ 08820 | Patrick J. McStravick,<br>Ricci Tyrrell Johnson<br>& Grey 1515 Market<br>Street, Suite 700<br>Philadelphia, PA 19102<br>215-320-2087 (T)<br>PMcStravick@rtjglaw.com | 10 Midland Avenue<br>Wallington, NJ |
| General Electric Company<br>3135 Easton Turnpike<br>Fairfield, CT 06828-0001 | Roger Florio, Esq.<br>General Electric<br>640 Freedom Business Center<br>King of Prussia, PA 19406<br>Roger.florio@ge.com<br><br>Gary P. Gengel, Esq.<br>Latham & Watkins, LLP<br>One Newark Center, 16th floor<br>Newark, NJ 07101<br>973-639-7287 (T)<br>gary.gengel@lw.com | 415 South 5th Street<br>& 1000 South 2nd Street<br>Harrison, NJ |
| Goodrich Corporation<br>Four Coliseum Centre<br>2730 West Tyvola Road<br>Charlotte, NC 28217 | Earl W. Phillips, Jr., Esq.<br>Robinson & Cole LLP<br>280 Trumbull Street<br>Hartford, CT 06103-3597<br>860-275-8220 (T)<br>ephillips@rc.com | Kalama Chemical<br>290 River Drive<br>Garfield, NJ |
| Hexcel Corp.<br>2 Stamford Plaza<br>Stamford, CT 06901 | Steve Leifer, Esq.<br>Baker Botts LLP<br>1299 Pennsylvania Ave., NW<br>Washington, DC 20004<br>202-639-7723(T)<br>sleifer@bakerbotts.com | 205 Main St.<br>Lodi, NJ |
| Hoffman-La Roche Inc.<br>340 Kingsland Street<br>Nutley, NJ 07110 | John Klock, Esq.<br>Gibbons, PC<br>One Gateway Center<br>Newark, NJ 07102<br>jklock@gibbonslaw.com<br><br>Frederick Kentz, Esq.<br>Vice President and General Counsel<br>Hoffmann-La Roche Inc.<br>150 Clove Road,<br>Little Falls, NJ 07424 | 340 Kingsland Road<br>Nutley, NJ |

9

| Honeywell International, Inc.<br>P.O. Box 2245<br>Morristown, NJ 07962 | Jeremy Karpatkin, Esq.<br>Arnold & Porter Kaye<br>Scholer LLP<br>601 Massachusetts Ave.,<br>NW<br>Washington, DC 20001<br>202-942-5564 (T)<br>Jeremy.karpatkin@apks.com | General Chemical Co.<br>65 Lodi Street/8th Street<br>Passaic, NJ |
| --- | --- | --- |
| ISP Chemicals, Inc.<br>1361 Alps Road<br>Wayne, NJ 07470<br><br>now ISP Chemicals LLC | Robin E. Lampkin<br>Ashland Inc.<br>5200 Blazer Parkway<br>Dublin, OH 43017<br>614-790-3019 (T)<br>relampkin@ashland.com<br><br>William Hatfield, Esq.<br>Gibbons, PC<br>One Gateway Center<br>Newark, NJ 07102-5310<br>973-596-4511 (T)<br>whatfield@gibbonslaw.com | ISP Van Dyk, Inc.<br>1 Main St./11 William St.<br>Wayne, NJ |
| ITT Industries, Inc.<br>77 River Road<br>Clifton, NJ 07014<br><br>participating as Exelis Inc. for<br>itself and ITT Industries, Inc | Susanne Peticolas, Esq.<br>Gibbons, PC<br>One Gateway Center<br>Newark, NJ 07102-5310<br>973-596-4751 (T)<br>speticolas@gibbonslaw.com | 100 Kingsland Drive<br>Clifton, NJ |
| Kearny Smelting & Refining<br>936 Harrison Ave #5<br>Kearny, NJ 07032 | Ms. Francine Rothschild, President<br>Kearny Smelting & Refining<br>936 Harrison Ave<br>Kearny, NJ 07032<br>201-991-7276 (T)<br><br>Lee D. Henig-Elona, Esq.<br>Gordon & Rees<br>18 Columbia Turnpike, Suite 220<br>Florham Park, NJ 07932<br>973-549-2520(T direct)<br>973-549-2500(T office)<br>lhenig-elona@gordonrees.com | 936 Harrison Ave.<br>Kearny, NJ |

| Lucent Technologies<br>600 Mountain Avenue<br>Murray Hill, NJ 07974<br><br>now Alcatel-Lucent USA, Inc. | James (Jay) Stewart, Esq.<br>Lowenstein Sandler LLP<br>65 Livingston Avenue<br>Roseland, NJ 07068<br>973-597-2522 (T)<br>jstewart@lowenstein.com<br><br>Gary M. Fisher, Esq.<br>Alcatel-Lucent<br>Environment, Health & Safety Corporate<br>Center<br>600 Mountain Avenue<br>Room 1F-102G<br>Murray Hill, NJ 07974<br>gary.fisher@alcatel-lucent.com | AT&T/Western Electric<br>100 Central Ave.<br>Kearny, NJ |
| --- | --- | --- |
| Monsanto Co.<br>800 North Lindbergh Blvd.<br>St. Louis, Missouri 63167<br><br>Pharmacia Corporation (f/k/a<br>Monsanto Company) | John F. Gullace, Esq.<br>Manko, Gold, Katcher & Fox, LLP<br>401 City Avenue, Suite 500<br>Bala Cynwd, PA  19004<br>484-430-2326(T)<br>jgullace@mgkflaw.com | Monsanto Co.<br>Foot of Pennsylvania Ave.<br>Kearny, NJ |
| National-Standard Company<br>1618 Terminal Road<br>Niles, MI 49120<br><br>Now National-Standard LLC | Susanne Peticolas, Esq.<br>Gibbons, PC<br>One Gateway Center<br>Newark, NJ  07102-5310<br>973-596-4751(T)<br>speticolas@gibbonslaw.com | 714-716 Clifton Avenue<br>Clifton, NJ |
| Newark Morning Ledger<br>1 Star Ledger Plaza<br>Newark, NJ  07102 | Michael J. Anderson, Esq.<br>Sabin, Bermant & Gould LLP<br>One World Trade Center, 44th Floor<br>New York, New York 10007<br>Direct No. (212) 381-7068<br>Fax No. (212) 381-7201<br>manderson@sabinfirm.com<br><br>Frances B. Stella, Esq.<br>Brach Eichler L.L.C.<br>101 Eisenhower Parkway<br>Roseland, New Jersey 07068<br>Direct No. (973) 403-3149<br>Fax No. (973) 618-5549<br>fstella@bracheichler.com | 1 Star Ledger Plaza<br>Newark, NJ |

| | | |
|---|---|---|
| Newell Rubbermaid, Inc.<br>29 E. Stephenson Street<br>Freeport, IL 60132 | Andrew Sawula, Esq.<br>Schiff Hardin LLP<br>One Westminster Place, Suite 200<br>Lake Forest, IL 60045<br>847-295-4336 (T)<br>asawula@schiffhardin.com | Goody Products<br>969 Newark Turnpike<br>Kearny, NJ |
| News America Inc.<br>767 Fifth Ave., 46th Floor<br>New York, NY 10153<br><br>fka News Publishing Australia,<br>Ltd., now Twenty-First Century<br>Fox America | Peter Simshauer, Esq.<br>Skadden, Arps, Slate, Meagher & Flom LLP<br>500 Boylston Street<br>Boston, MA 02116<br>617-573-4880(T)<br>psimshau@skadden.com | Chris-Craft Inc./Montrose<br>Chemical Co.<br>100 Lister Ave.<br>Newark, NJ |
| Occidental Chemical Corp.<br>Occidental Tower<br>5005 LBJ Freeway<br>Dallas, TX 75244 | Dennis F. Blake<br>Senior Vice President<br>Occidental Chemical Corp.<br>5005 LBJ Freeway<br>Dallas, TX 75244<br><br>Larry Silver, Esq.<br>Langsam Stevens Silver<br>1818 Market Street, Suite 2610<br>Philadelphia, PA 19103-5319<br>215- 239.9023<br>lsilver@lssh-law.com | Diamond Shamrock<br>Chemicals Co.<br>80 and 120 Lister Ave.<br>Newark, NJ |
| The Okonite Company, Inc.<br>102 Hilltop Road<br>Ramsey, New Jersey 07446 | David Brook, Esq.<br>McCullough Ginsberg Montano &<br>Partners LLP<br>55 Bleeker Street<br>Millburn, NJ 07041<br>dbrook@mgpllp.com | Canal and Jefferson Streets<br>Passaic, NJ |
| Otis Elevator Co.<br>North America Operations<br>10 Farm Springs Road<br>Farmington, CT 06032 | Earl W. Phillips, Jr., Esq.<br>Robinson & Cole LLP<br>280 Trumbull Street<br>Hartford, CT 06103-3597<br>860-275-8220(T)<br>ephillips@rc.com | 1000 First St.<br>Harrison, NJ |
| Pabst Brewing Company<br>9014 Heritage Parkway<br>Suite 308<br>Woodridge, IL 60517 | Eugene Kashper, Chairman & CEO<br>Pabst Brewing Company<br>10635 Santa Monica Blvd Ste 350<br>Los Angeles, CA 90025 | 400 Grove Street<br>Newark, NJ |

12

| Palin Enterprises | Diana Buongiorno, Chiesa Shahinian & Giantomasi PC One Boland Dr. West Orange, NJ 07052 dbuongiorno@csglaw.com<br><br>Mr. Michael Palin Palin Enterprises 235 Park Avenue South, #8 New York, NY 10003-1045 | American Modern Metals 44 Passaic Ave. (a/k/a 25 Belgrove Drive)<br><br>Kearny, NJ |
|---|---|---|
| Passaic Pioneer Properties PO Box 327 35 Eighth Street Passaic, NJ 07055 | Timothy J. Corriston, Esq. Connell Foley LLP 85 Livingston Avenue Roseland, NJ 07068 973-535-0500 (T) tcorriston@connellfoley.com | 35 Eighth Street Passaic, NJ |
| PMC, Inc. 12243 Branford Street Sun Valley, CA 91352 | Phillip Kamins, President & CEO PMC Global, Inc. 12243 Branford St Sun Valley, CA 91352 818-896-1101(T) | Kleer Kast 450 Schuyler Avenue Kearny, NJ |
| Power Test of New Jersey, Inc. 125 Jericho Turnpike Jericho, NY 11753<br><br>now Leemilt's Petroleum, Inc., successor to Power Test of NJ, Inc. | Christine Fitter, Asst Secretary Leemilt's Petroleum, Inc. 125 Jericho Turnpike, Suite 103 Jericho, NY 11753 cfitter@gettyrealty.com<br><br>Nicole Moshang, Esq. Manko, Gold Katcher & Fox LLP 401 City Avenue, Ste. 500 Bala Cynwyd, PA 19004 484-430-2324 (T) nmoshang@mgkflaw.com | Getty Newark Terminal 86 Doremus Ave. Newark, NJ |
| PPG Industries, Inc. One PPG Place Pittsburgh, PA 15272 | Gary P. Gengel, Esq. Latham & Watkins, LLP 885 Third Avenue New York, NY 10022-4834 gary.gengel@lw.com | 29 Riverside Ave. Newark, NJ |

| PSE&G Corp.<br>P.O. Box 570<br>Newark, NJ 07101 | John F. Doherty, Esq.<br>Associate General Litigation Counsel<br>PSE&G Services Corporation<br>80 Park Plaza, T5D<br>Post Office Box 570<br>Newark, NJ  07102<br>973-430-6478(T)<br>John.doherty@pseg.com<br><br>Kevin R. Gardner, Esq.<br>Connell Foley<br>85 Livingston Avenue<br>Roseland, NJ  07068<br>973-535-0500(T)<br>kgardner@connellfoley.com | 155 Raymond Blvd.<br>Newark, NJ<br>&<br>4th St.<br>Harrison, NJ |
| --- | --- | --- |
| Purdue Pharma Technologies, Inc.<br>One Stamford Forum<br>Stamford, CT 06901 | James (Jay) Stewart, Esq.<br>Lowenstein Sandler PC<br>65 Livingston Avenue<br>Roseland, NJ 07068<br>973-597-2522(T)<br>jstewart@lowenstein.com | Napp Technologies<br>199 Main St.<br>Lodi, NJ |
| Quality Distribution, Inc.<br>150 East Pennsylvania Avenue<br>Suite 450<br>Downingtown, PA 19335<br><br>Quality Carriers, Inc. | Bonni Kaufman, Esq.<br>Holland & Knight, LLP<br>800 17th Street N.W. Suite 1100<br>Washington, DC  20006<br>202-419-2547<br>Bonni.kaufman@hklaw.com | Chemical Leaman Tank Lines<br>80 Doremus Avenue<br>Newark, NJ |
| Royce Associates<br>366 N. Broadway, Ste. 400<br>Jericho, NJ 11753 | A.J.Royce, President<br>Royce Associates, ALP<br>35 Carlton Ave<br>East Rutherford, NJ 07073<br>201-438-5200(T)<br><br>Ronald Bluestein, Esq.<br>Flamm Walton<br>794 Penllyn Pike<br>Blue Bell, PA  19422<br>267-419-1500 (T)<br>rbluestein@flammlaw.com | Royce Chemical Company<br>17 Carlton Avenue<br>East Rutherford, NJ |

| | | |
|---|---|---|
| RSR Corp.<br>2777 Stemmons Freeway<br>Suite 1800<br>Dallas, TX 75207<br><br>now Revere Smelting and<br>Refining Corporation | Jane C. Luxton, Esq.<br>Christopher Clare, Esq.<br>Clark Hill PLC<br>1001 Pennsylvania Avenue<br>NW, Suite 1300 South<br>Washington, DC 20004<br>202-572-8674(T)<br>703-598-3275(M)<br>jluxton@clarkhill.com<br>cclare@clarkhill.com | Revere Smelting & Refining<br>387 Avenue P<br>Newark, NJ |
| Safety Kleen Envirosystems Co.<br>1301 Gervais St.<br>Columbia, SC 29201<br><br>McKesson Corporation for itself<br>and for Safety-Kleen<br>Envirosystems, Inc. | Marylin Jenkins, Esq.<br>Edgcomb Law Group<br>One Post Street, Suite 2100<br>San Francisco, California 94104-5225<br>707-755-4341 (T)<br>mjenkins@edgcomb-law.com | 600 Doremus Ave.<br>Newark, NJ |
| Schiffenhaus Packaging Corp.<br>c/o Rock-Tenn Company<br>504 Thrasher Street<br>Norcross, GA 30071 | Camille V. Otero, Esq.<br>Gibbons, PC<br>One Gateway Center<br>Newark, NJ 07102-5310<br>cotero@gibbonslaw.com | 204 Academy Street<br>49 Fourth Street<br>2013 McCarter Highway<br>Newark, NJ |
| Sequa Corporation<br>200 Park Avenue<br>New York, NY 10166 | Brian L. Buniva, Esq.<br>Senior Counsel & Senior Director<br>Environment, Health & Safety<br>Sequa Corporation<br>919 E. Main Street, Suite 1300<br>Richmond, VA 23219<br>845-230-7374 (Direct)<br>804-873-0610 (Mobile)<br>Brian_Buniva@sequa.com<br><br>Gary P. Gengel, Esq.<br>Kegan A. Brown, Esq.<br>Latham & Watkins, LLP<br>885 Third Avenue<br>New York, NY 10022-4834<br>gary.gengel@lw.com | Sun Chemical Corporation<br>185 Foundry Street<br>Newark, NJ<br>(prior to 1987) |
| Seton Company, Inc.<br>1000 Madison Avenue<br>Norristown, PA 19403\<br><br>now Seton Tanning | David M. Kohane, Esq.<br>Cole Schotz, PC<br>PO Box 800<br>25 Main Street<br>Hackensack, NJ 07601-7015<br>201-525-6267(T)<br><br>DKipimuaohane.bradford@coleschotz.com | Seton Leather Company<br>849 Broadway<br>Newark, NY 07104 |

| SpectraServ, Inc.<br>75 Jacobus Avenue<br>Kearny, NJ 07032 | Diana Buongiorno, Esq.<br>Chiesa Shahinian & Giantomassi, PC<br>One Boland Dr<br>West Orange, NJ 07052<br>973-530-2075(T)<br>dbuongiorno@csglaw.com | 75 Jacobus Ave.<br>Kearny, NJ |
|---|---|---|
| STWB, Inc.<br>c/o Bayer Corporation<br>100 Bayer Road<br>Pittsburgh, PA 15205 | Timothy I. Duffy, Esq.<br>Coughlin Duffy LLP<br>Post Office Box 1917<br>350 Mount Kemble Avenue<br>Morristown, NJ 07962-1917<br>973-631-6002(T)<br>tduffy@coughlinduffy.com<br>lhall@coughlinduffy.com (Assistant) | Lehn & Fink Products Corp.<br>192-194 Bloomfield Avenue<br>Bloomfield, NJ 07003<br><br>Thomasett Colors/Sterling<br>120 Lister Ave.<br>Newark, NJ |
| Sun Chemical Corporation<br>35 Waterview Boulevard<br>Parsippany, NJ 07054-1285 | Warren W. Faure, Esq.<br>EH&S Counsel<br>Sun Chemical Corporation<br>35 Waterview Boulevard<br>Parsippany, NJ 07054<br>973-404-6590(T)<br>Warren.faure@sunchemical.com<br><br>Ted Wolff, Esq.<br>Manatt, Phelps & Phillips, LLP<br>7 Times Square<br>New York, NY 10036<br>twolff@manatt.com | Sun Chemical Corporation<br>185 Foundry Street<br>Newark, NJ<br>(1987 to present) |
| Teval Corporation<br>99 Cherry Hill Road, Suite 105<br>Parsippany, NJ 07054 | Lee D. Henig-Elona, Esq.<br>Gordon & Rees<br>18 Columbia Turnpike, Suite 220<br>Florham Park, NJ 07932<br>973-549-2520(T direct)<br>973-549-2500(T office)<br>lhenig-elona@gordonrees.com | Guyon Pipe<br>900-1000 South 4th Street<br>Harrison, NJ |
| Textron, Inc.<br>40 Westminster Street<br>Providence, RI 02903 | Jamie Schiff, Esq.<br>Textron, Inc.<br>40 Westminster Street<br>Providence, RI 02903<br>401-457-2422 (T)<br>jschiff@textron.com<br><br>Bonni Kaufman, Esq.<br>Holland & Knight<br>800 17th Street, NW<br>Suite 1100<br>Washington, DC 20006<br>202-955-3000<br>bonni.kaufman@hklaw.com | Spencer Kellogg Division<br>400 Doremus Avenue<br><br>Newark, NJ |

16

| | | |
|---|---|---|
| The Hartz Mountain Corporation<br>400 Plaza Drive<br>Secaucus, NJ 07094<br><br>The Hartz Consumer Group, Inc. on behalf of The Hartz Mountain Corporation | Curtis L. Michael, Esq.<br>Horowitz, Rubino & Patton<br>400 Plaza Drive<br>PO Box 2038<br>Secaucus, NJ 07094-2038<br>Curt.michael@hrplaw.com | 600/700 South 4th Street<br>Harrison, NJ |
| The Newark Group, Inc.<br>20 Jackson Drive<br>Cranford, NJ 07016 | David M. Meezan, Esq.<br>Kazmarek Mowrey Cloud Laseter LLP<br>1230 Peachtree Street N.E.<br>Suite 3600<br>Atlanta, GA 30309<br>404-969-0733<br>dmeezan@kmcllaw.com | The Newark Boxboard Co.<br>17 Blanchard Street<br>Newark, NJ |
| The Sherwin Williams Co.<br>101 Prospect Ave., N.W.<br>Cleveland, OH 44115 | Herbert (Bart) Bennett, Esq.<br>Sokol, Behot & Fiorenzo<br>229 Nassau Street<br>Princeton, NJ 08542-4601<br>609-279-0900(T)<br>hbbennett@sbflawfirm.com | 60 Lister Ave.<br>Newark, NJ |
| The Stanley Works<br>1000 Stanley Drive<br>New Britain, CT 06053<br><br>now Stanley Black & Decker, Inc. | Andrew Kolesar, Esq.<br>Thompson Hine LLP<br>312 Walnut Street, 14th Floor<br>Cincinnati, OH 45202<br>513-352-6545(T)<br>andrew.kolesar@thompsonhine.com | Stanley Tools<br>140 Chapel St.<br>Newark, NJ |
| Tiffany & Co.<br>727 Fifth Avenue<br>New York, NY 10022 | John Klock, Esq.<br>Gibbons, PC<br>One Gateway Center<br>Newark, NJ 07102-5310<br>973-596-4757 (T)<br>jklock@gibbonslaw.com | 820 Highland Avenue<br>Newark, NJ |

| | | |
|---|---|---|
| Unilever Bestfoods<br>International Plaza<br>Sylvan Avenue<br>Englewood Cliffs, NJ 07632<br><br>Conopco, Inc., d/b/a Unilever<br>(as successpr to CPC/Bestfoods,<br>former parent of the Penick<br>Corporation | Joshua Frank, Esq.<br>Baker Botts<br>1299 Pennsylvania Ave., N.W.<br>Washington, DC 20004-2400<br>202-639-7710 (T)<br>Joshua.frank@bakerbotts.com<br><br>Andrew Shakalis, Esq.<br>Associate General Counsel – Environmental<br>& Safety<br>Unilever<br>700 Sylvan Avenue<br>Englewood Cliffs, NJ 07632<br>201-894-2763 (T)<br>201-894-2727 (F)<br>Andrew.shakalis@unilever.com | Penick Corporation<br>540 New York Avenue<br>Lyndhurst, NJ |
| Viacom Inc.<br>11 Stanwix St.<br>Pittsburgh, PA 15222<br><br>Now CBS Corporation | Jeffrey B. Groy, Esq.<br>VP, Sr. Counsel/ Environmental<br>CBS Law Department<br>CBS Corporation<br>2 East Mifflin Street, Suite 200<br>Madison, WI 53703<br>262-705-0579(T)<br>jeff.groy@cbs.com | Westinghouse Electric<br>95 Orange St.<br>Newark, NJ |
| Vulcan Materials Co.<br>1200 Urban Center Drive<br>Birmingham, AL 35242<br><br>Now Legacy Vulcan Corp. | Eva Fromm O'Brien, Esq.<br>Fulbright & Jaworski<br>Fulbright Tower<br>1301 McKinney<br>Suite 5100<br>Houston, TX 77010-3095<br>713-651-5321 (T)<br>713-651-5246 (F)<br>eobrien@fulbright.com<br><br>John M. Floyd, Esq.<br>Senior Attorney<br>Vulcan Materials Company<br>1200 Urban Center Drive<br>Birmingham, AL 35242<br>205-298-3745 (Direct)<br>205-492-4219 (Cell)<br>205-298-2960 (F)<br>floydj@vmcmail.com | 600 Doremus Ave.<br>Newark, NJ |

| | | |
|---|---|---|
| Roman Asphalt Corporation 14 Ogden Street Newark, NJ 07104 | Michael V. Calabro, Esq. Law Offices of Michael V. Calabro 475 Bloomfield Avenue Newark, NJ 07107 973 482-1085 Mcalabro475@gmail.com | 14 Ogden Street Newark, NJ |

# Declaration of Alice Yeh

# Exhibit F

# AlterEcho Team for Passaic River OU2 Allocation (Oct. 2017)

## AlterEcho Team for Passaic River OU2 Allocation

| Individual and Project Role | Years of Exper. | Education | Expertise |
|---|---|---|---|
| David Batson, Senior Allocation Specialist | 37 | JD, Law; BA, History | Extensive experience assisting private and government parties resolve complex hazardous waste and environmental disputes, including over 25 years as an ADR neutral and consulting expert with service in 350 environmental, natural resource, public policy, organization, and business disputes.  Has served as an allocation specialist, convening neutral, and mediator at more than 50 hazardous waste sites, including contaminated riverine/estuarine sediment and groundwater sites, landfills, abandoned mines, and chemical treatment/disposal facilities. |
| Judy Manley, Senior Project Manager/Data Management | 30 | BS, Botany | Environmental consulting experience with a focus on cost allocation, PRP searches and data analysis.  Managed and/or worked on more than 300 projects nationwide involving the collection, compilation and analysis of site data to identify PRPs and allocate costs among parties.  20+ years of experience conducting PRP searches for the EPA.  Extensive experience gathering and analyzing government and private party documents, compiling industrial surveys, and preparing spreadsheets and databases to compile and organize collected data. |
| Jennifer Conklin, Technical Lead | 10 | BS, Geology Professional Geologist (PG) | Has conducted and managed PRP searches and conducted regulatory oversight at federal CERCLA/Superfund and/or RCRA-regulated sites.  Has performed data analysis, conducted sampling and sampling oversight—including Phase I and Phase II investigations—prepared numerous reports, conducted site monitoring, and prepared and overseen contaminant fate and transport models.  Also has experience with file coding. |
| Karla Brasaemle, Hydrogeologist | 32 | MS, Geology, Geophysics, BS, Physics | Has provided extensive support for remediation management and oversight activities at a variety of federal facility and private sites.  Expertise includes the design, management, and coordination of hazardous waste investigations involving geophysics and surface water/ground water/sediment contamination and remediation. |
| Travis Kline, Toxicologist | 23 | BA, Cellular Biology/Genetics, MEM, Environmental Toxicology | Extensive experience with human health and ecological risk assessments under federal and state regulatory programs.  Has provided technical review and oversight of risk assessments at hundreds of facilities nationwide, and has specialized expertise in the assessment exposures to heavy metals and problematic organics such as arsenic, mercury, PCDD/PCDF, PAHs and PCBs. |

ADR CONFIDENTIAL

No longer ADR Confidential -- Released by AlterEcho via email on October 12, 2017 to
Participating Allocation Parties as well as parties that did not participate in the allocation

## AlterEcho Team for Passaic River OU2 Allocation

| Individual and Project Role | Years of Exper. | Education | Expertise |
|---|---|---|---|
| Erman Evcimen, Database Designer | 37 | BS, Engineering | Network engineer and technician with extensive experience designing web based front-end and MS SQL back-end programs for environmental topics. |
| Sandra Lunceford Researcher/Coder | 17 | MPA, Public Policy and Administration, BA, Environmental Sciences | Experience conducting PRP search/cost allocation activities, including data screening, extraction and compilation; records management, interviews, corporate and financial research, and preparation of PRP reports.  Experience also includes review of site remediation documents and preparation of community outreach plans. |
| Amber Kozacek, Researcher/Coder | 1 | BS, Environmental Sciences | Has experience conducting PRP search/cost allocation activities, including site history research, PRP nexus reports, corporate and financial research, and database entry. |

ADR CONFIDENTIAL

No longer ADR Confidential -- Released by AlterEcho via email on October 12, 2017 to
Participating Allocation Parties as well as parties that did not participate in the allocation

# Declaration of Alice Yeh

# Exhibit G

# Work Plan for Task Order #096 Diamond Alkali-Lower Passaic River Allocation (June 2017)

# Work Plan

## EPA Conflict Prevention and Resolution Services Contract

## Contract # EP-W-14-020

## Work Plan for Task Order #096

## Diamond Alkali-Lower Passaic River Allocation

**Prepared for:**

US Environmental Protection Agency
Washington, DC 20460

| | |
|---|---|
| EPA Program Office: | Region 2 |
| EPA Task Order Contracting Officer's Representative (TOCOR): | Alice Yeh |
| CSRA Task Order Manager (TOM): | Mary Apostolico |
| Subcontractor Task Manager: | David Batson<br>TechLaw / AlterEcho |

This Work Plan describes CSRA's approach for performing the tasks described in the Statement of Work. It includes a description of the activities associated with each task as well as a list of transmittals and deliverables and their due dates. A cost estimate for this Task Order Work Plan is provided as a separate attachment.

The Work Plan is organized as follows:

Section 1.0 - Background
Section 2.0 - Assumptions
Section 3.0 - Project Methodology and Approach
Section 4.0 - Work Tasks
Section 5.0 - Reports, Transmittals and Deliverables
Section 6.0 - Staffing Plan
Section 7.0 - Quality Management
Section 8.0 - Conflict of Interest
Section 9.0 - Cyber Security
Section 10.0 - Project Budget
Section 11.0 - Period of Performance

## 1.0    Background

The Diamond Alkali Site (the Site) has a long history, involving over 100 potentially responsible parties (PRPs). Since the late 1800s, the Lower Passaic River has been a highly industrialized waterway, receiving direct and indirect discharges from numerous industrial facilities. Data collected in the Lower Passaic River, and EPA's analyses, show that contaminated sediment in the lower 8.3 miles are a major source of contamination to the rest of the river and Newark Bay and pose an unacceptable risk to human health and the environment due to the presence of a variety of contaminants that stay in the environment for a long time and can build up in fish and shellfish. These contaminants include dioxins and furans, PCBs, mercury, DDT and its primary breakdown products, copper, dieldrin, PAHs, and lead.

On March 4, 2016, EPA issued a record of decision selecting the remedy for the lower 8.3 miles of the Lower Passaic River, which is Operable Unit 2 (OU2) of the Site. Currently, the remedial design (RD) for OU2 is being performed by Occidental Chemical Corporation (OCC) pursuant to an administrative order on consent. The cost of the remedial action (RA), estimated for purposes of remedy selection, is $1.38 billion.

Region 2 has issued a notice of potential liability to approximately 100 parties, informing them of their responsibility for the RD/RA for OU2. The Region has offered a first round of cash-out settlements to a group of approximately 20 PRPs. The Region expects to separately address the liability of municipalities and public entities. For the remaining PRPs, the Region expects to enter into settlement negotiations for performance and funding of the remedy with OCC and other parties (the "Major PRPs") that the Region considers to be major PRPs for OU2. The Region plans another round of cash-out settlements with "Middle Tier PRPs", i.e., not part of the phase 1 cash-out group, but also not Major PRPs. The Region requires the services of a third party allocator to develop a settlement framework and evaluate the 80 Middle Tier and Major parties within the framework.

Region 2 understands that the PRP group (the Cooperating Parties Group, or CPG) has made at least two previous attempts to develop a mutually acceptable allocation of liability to promote settlement with EPA for costs and work at the Site, however both efforts fell short of agreement. Region 2 believes that because of these previous efforts, additional information available from responses to CERCLA 104(e) letters, information available from previous litigation at the state level and numerous conversations with PRPs over the years, the project will be able to be built primarily upon existing information and contacts. Some minor augmentation of background, data and allocation factors may need to occur to develop what is hoped to be an acceptable settlement proposal and structure. In 2016, the Department of Justice retained a mediator/allocation specialist, David Batson of TechLaw/AlterEcho, to assist in settlement analysis. Those discussions and analyses have resulted in this effort.

## 2.0    Assumptions

This work plan and the attached cost estimate are based on the following assumptions, in addition to Task-specific assumptions noted in Section 4.0 of the Work Plan. All work will be conducted in accordance with the specific tasks in the Work Plan to the performance metrics specified therein.

General Assumptions:

- EPA will provide the CSRA Team with a list of parties noticed regarding their responsibility for the RD/RA for OU2, including:
  - a list of Major and Middle Tier Parties ("OU2 PRPs");
  - a list of Phase 1 cash-out parties; and
  - a list of other OU2 parties, including municipalities and other entities
- Maximum of 80 PRPs will be provided an opportunity to participate in or be evaluated for the purpose of determining a share of responsibility in the allocation process
- All OU2 PRPs will be provided an opportunity to participate in the design of the allocation database and process and to provide additional Site-related information for possible addition to the database, and will be designated a share of responsibility in the Final Allocation Recommendation Report
- The Final Allocation Recommendation Report will also divide the parties into logical groupings of similarly-situated PRPs
- EPA will provide the CSRA Team with a listing and contact information for each OU2 PRP; Reference herein to meetings or other forms of communication with the OU2 PRPs means communication with the identified representatives of such parties
- A maximum of 150,000 pages of documents will reviewed and utilized to conduct the allocation, including;
  - A maximum of 130,000 pages of documents received from EPA for CSRA Team review
  - A maximum of 20,000 extra pages of documents received from PRPs for CSRA review
- All communications by the CSRA Team will be by phone or email unless meeting noted
- Maximum of 4 hours of combined project status/update calls will be held by the CSRA Team with EPA per month
- Out-of-DC Area Meetings:
  - 3 meetings involving 2 contractor staff
- Out-of-DC area meetings will be held at the EPA Region 2 offices or other location in the greater New York City metropolitan area as determined by EPA, or OU2 PRPs they supply meeting space
- Travel for and timing of out-of-DC area meetings will be scheduled to allow CSRA Team members to travel from Washington, DC and return on the same day

- Meetings will be scheduled and held within noted timeframes
- The allocation database will be designed and organized primarily for purposes of allocation
- Space and equipment for meetings will be provided by EPA or PRPs
- The CSRA Team will provide EPA with a copy of all communications sent to OU2 PRPs regarding the subject, substance, and logistics of OU2 PRP meetings with CSRA Team members
- Any part of a communication, attachment to a communication, presentation, or written material provided to OU2 PRPs by the CSRA Team that involves a description of the Site or EPA actions or activities will be provided to EPA for review and approval prior to submission to the OU2 PRPs
- Unless otherwise noted herein, all allocation related communications by the CSRA Team involving the OU2 PRPs or representatives of EPA or DOJ, individually or in groups, will be held confidential pursuant to the provisions of the ADR Act of 1996, 5 USC 574
- In order to ensure a common expectation of confidentiality, all PRP participants in the allocation process will be required to enter, and EPA will appropriately acknowledge, a confidentiality agreement
- The CSRA Team will provide invoices to EPA at the end of each month in which a task is completed (activity, transmittal, and/or deliverable) identified in Section 5.0 of the Work Plan, with a written Progress Report detailing associated activities accomplished during the reporting period, how such activities meet Task Order performance standards, and associated labor and other direct costs
- Invoices and progress reports will be provided at the end of the month in each a task is completed.  Task activities, transmittals and deliverables are described below in Section 4. Work Tasks.
- "Staffing" referenced in Section 4.0 Work Tasks refers to TechLaw staff.
- This Task Order can be modified to change the statement of work or add funding.

## 3.0     Project Methodology and Approach

The proposed methodology and approach consists of the following:
- To support this Task Order, CSRA selected TechLaw support.
- CSRA and TechLaw (the CSRA Team) will not interpret EPA policy on behalf of the EPA or make decisions on items of policy, regulation or statutes. The CSRA Team also will not take a stand on the merits of substantive items under discussion including, but not limited to, any substantive issues raised by OU2 PRPs.  The CSRA Team will not interpret EPA's March 4, 2016, record of decision selecting the remedy for OU2 of the Site.
- In gathering information or performing research with parties outside the EPA, CSRA Team members will identify themselves as contractors to EPA and not as EPA employees.
- CSRA will approach this task in accordance with the basic terms of the contract and according to the established norms and ethical standards of ADR professionals. Except as otherwise noted herein, information provided to the ADR professional by any of the parties, including EPA, communications between parties and the ADR professional, and notes and dispute resolution work product generated by the ADR professional during work pursuant to the Task Order will be maintained as confidential by the ADR professional pursuant to the provisions of the ADR Act of 1996 (Public Law 104-320; 5 USC 571 et al.) and applicable federal, state and judicial requirements.

- To enhance the positive substantive, relational, and procedural outcomes from ADR cases, CSRA will direct all ADR professionals providing ADR services under this task order to do the following prior to the mediation or facilitation and throughout the process:
  - o Inquire about whether individual participants have the time, financial, and logistical resources necessary to participate effectively in the process and – where resources are inadequate – assist them in identifying appropriate resources or in making necessary adjustments to the process to accommodate resource constraints;
  - o Assist the participants in identifying the issues that are important to resolving any controversy and solutions that will address the needs shared by the participants;
  - o Conduct the process to promote active engagement from all participants;
  - o Explore with the participants appropriate ways to incorporate high quality and relevant information resources necessary to resolve the issues; and
  - o To support productive dialogue and effective implementation of any agreements reached by the participants, ensure that participants have appropriate authority to make commitments on behalf of their organizations.

As prime contractor, CSRA will support this Task Order through the following activities:
- Provide progress reports at the end of each month in which an activity, transmittal, and/or deliverable identified in Section 5.0 of the Work Plan is completed;
- Communicate and coordinate with the EPA Task Order Contracting Officer's Representative (TOCOR) by phone as needed;
- Coordinate with the subcontractor, TechLaw;
- Incorporate the principles of Quality Management while carrying out this task;
- Provide deliverables in electronic format (as agreed to by the TOCOR) to the EPA TOCOR; and
- NOTIFY THE EPA PROJECT DIRECTOR AND PROGRAM OFFICE CONTACT WHEN 75% OF THE FUNDS PROVIDED HAVE BEEN EXPENDED.

## 4.0    Work Tasks

Task 0.0    **Task Order Management**

In accordance with proper contract implementation, CSRA and TechLaw will ensure effective management of the resources and deliverables required by EPA.

Specifically, the CSRA Task Order Manager (TOM) for this effort will:
- Ensure that all technical direction received falls into the scope of work prior to initiating any action;
- Ensure completion and maintain copies of all contract transmittals and deliverables;
- Oversee subcontractor activities through regular and periodic conversations with the subcontractor to ensure effective performance;
- Ensure that progress and financial reports accurately clearly articulate the work completed as per the approved work plan, and identify any problems encountered and activities to address them;
- Speak on an as-needed basis with the EPA TOCOR to review the financial and work status of the project;
- Review the progress report and invoice with the EPA TOCOR; and

- Update the Dashboard task order management tracking system as invoices are submitted.

The CSRA Team developed this Work Plan to provide a detailed explanation of all activities associated with and a proposed approach for completing each of the defined tasks. The CSRA Team identified the transmittals and deliverables and their associated due dates and developed a detailed fixed price budget, including a breakout of labor and travel costs.

| Item | Title | Due No Later Than[†] | Type |
|------|-------|----------------------|------|
| 0.1 | Work Plan | Within 10 days* of SOW issuance or as approved by the EPA CO | **Deliverable** |
| 0.2 | Progress Reports | Submitted after completion of each task and with submission of invoice | **Deliverable** |

[†] Or as otherwise directed by the TOCOR
* All references to "days" refer to business days

**Task 1          Preliminary Work**

| Item | Title | Due No Later Than[†] | Type |
|------|-------|----------------------|------|
| 1.1 | Task Order Kick-Off Meeting | Within 20 days* of Task Order approval | Transmittal |

[†] Or as otherwise directed by the TOCOR
* All references to "days" refer to business days

The CSRA Team will prepare for and participate in a meeting with EPA to discuss tasks described in the Task Order, EPA's expectations for the project, and a plan for conducting the outreach to PRPs. Prior to the meeting, the CSRA Team will develop its overall strategy for conduct of the allocation process, including a timeline of tasks and strategy for communications with the OU2 PRPs.  During the meeting, the EPA will advise the CSRA Team regarding the identity of the OU2 PRPs and the scope and nature of the selected remedy.  Following the meeting, the CSRA Team will send an email summarizing the agreed-upon PRP Outreach Plan for approval of the EPA technical lead in consultation with EPA legal personnel.  The developed PRP outreach plan will include a process for contacting and receiving information from PRPs, including for meetings and conference calls with the OU2 PRPs as a group, and individual OU2 PRP contacts via email, letter, or phone, and confidentiality procedures.

This task will require the following efforts on the part of the CSRA Team:
- Development of a plan for conducting outreach to OU2 PRPs that includes an opportunity for all OU2 PRPs to (1) provide feedback on the design of the allocation, including additional data, information or factors which should be considered in design of the database, (2) review their individual PRP data report for accuracy, (3) provide suggestions regarding design of the allocation  process and (4) provide feedback on the allocation report. The plan will also explain how the CSRA Team will update EPA on PRP outreach efforts
- Drafting and submission of an email summarizing the agreed-upon PRP outreach plan for approval of the EPA technical lead
- The CSRA Team will supply two (2) senior staff located in Washington, DC for the meeting

Tech Law Staffing - Senior Allocation Specialist; Senior Project Manager

*Performance Standards/Metrics:*
- The CSRA Team participates in the Task Order Kick-Off Meeting
- The submitted summary of the PRP Outreach Plan provides a summary of the agreement reached at the Task Order Kick-Off Meeting regarding the plan for communications by the CSRA Team with the OU2 PRPs

**Task 2        Public Announcement of Project**

| Item | Title | Due No Later Than[†] | Type |
|------|-------|---------------------|------|
| 2.1 | EPA Project Public Announcement Meeting | Within 40 days* of Task Order approval | Activity |

† Or as otherwise directed by the TOCOR
* All references to "days" refer to business days

The CSRA Team will participate in a meeting, sponsored by EPA, with the OU2 PRPs to announce and explain the allocation project, including opportunities for participation of the OU2 PRPs in the development of the allocation process.  Following the project announcement meeting noted in Task 2, the CSRA Team will work to obtain and record signatures of the OU2 PRPs and acknowledgement of EPA to the Participation Agreement distributed during the project announcement meeting.

This task will require the following efforts on the part of the CSRA Team:
- Preparation of talking points and handout material for participants regarding the allocation process in consultation with the EPA technical lead in consultation with EPA legal personnel
- Preparation of a written Participation Agreement for consideration and execution of the OU2 PRPs, incorporating an explanation of relevant confidentiality protections and requirements associated with the allocation process
- The CSRA Team will supply two (2) senior staff located in Washington, DC to participate in the meeting
- Communication via email, and as required via phone, with the OU2 PRPs as a group regarding execution of and to answer questions regarding the Participation Agreement
- Recording and compilation of executed Participation Agreement signature pages

Conduct of this task is dependent upon EPA's ability to successfully make arrangements for and schedule the meeting, and communicate with OU2 PRPs regarding the meeting, and upon receipt of EPA's final approval of the PRP outreach plan agreed upon during the Task Order Kick-Off Meeting within 10 business days of the meeting.

Staffing - Senior Allocation Specialist, Senior Project Manager

*Performance Standards/Metrics:*
- Talking points and materials prepared for the meeting provide an overview of the project and opportunities for PRP participation noted in the PRP Outreach Plan developed in Task 1
- The CSRA Team participates in the Task Order Kick-Off Meeting
- A majority of the members of the OU2 PRPs execute the Participation Agreement

**Task 3          Initial Allocation Process and Database Design**

| Item | Title | Due No Later Than[†] | Type |
|------|-------|---------------------|------|
| 3.1 | Submit initial allocation process and database design to EPA | Within 100 days* of Task Order approval | Transmittal |

† Or as otherwise directed by the TOCOR
* All references to "days" refer to business days

The CSRA Team will review documents received from EPA and prepare a written descriptive summary of the initial design for the allocation process, including a design of the allocation database, and submit to EPA for review.

The allocation process will be designed based upon information received during consultations with EPA and OU2 PRPs on the allocation database and using all relevant non-confidential received information, including data, records, and other documents. The initial design will include recommendations for: (1) data sources to be considered for the allocation; (2) applicable allocation factors; and (3) methodology for determination of shares.

The searchable database will be designed to have the capability to contain and organize all of the information and data used in the allocation, including received PRP disclosure statements and nexus documents from third party litigation. No confidential information will be included in the allocation database. Though to be designed for purposes of conducting the allocation, the database will be designed in such a way as to allow access and use by EPA and DOJ staff for their settlement purposes following submission of the Allocation Data Reports in Task 8. The CSRA Team will, as an interim measure, create and provide EPA access to a SharePoint site in which any site documents received from the OU2 PRPs will be maintained.

This task will require the following efforts on the part of the CSRA Team:
- Conduct a preliminary review of Site data on OU2 contaminants of concern as identified in the OU2 ROD to determine appropriate allocation data sets
- Conduct preliminary research, analysis, and determine applicable case law, legal requirements, and equitable considerations for use in conducting allocation
- Conduct initial review and analysis of EPA selected remedy for OU2 to determine method to account for differential impact of contaminants of concern and source location
- Conduct a preliminary review of information received from EPA, including PRP disclosure statements and nexus documents from third party litigation, in order to determine the appropriate design of the database required to support conduct of the allocation process
- Conduct initial coding of data and loading of coded data into database to determine credibility of database design concept
- Establish preliminary recommendations regarding allocation computations appropriate for OU2, procedures for use of data in allocation computations, and appropriate allocation methodology, and the design of a searchable database with capability to contain and organize all of the information and data used in the allocation
- Preparation of a written descriptive summary of the initial design for the allocation process, including (1) a timeline for submission of allocation related documents,

including PRP position briefs and reply briefs, and (2) a written description of the design of the database with a suggested method for providing OU2 PRPs specific information on the contents of the database, suggestions on methods for resolving data gaps in data regarding OU2 PRPs not identified in documents received from EPA, and if practical, images of anticipated data screens.

- Establish a SharePoint site that provides EPA access to documents received from OU2 PRPs

Conduct of this task is dependent upon; (1) receipt of all allocation documents and information regarding the site remedy from EPA within 20 business days of approval of the Task Order, and (2) receipt of all information from EPA as individual documents in OCR searchable pdf format to allow loading into the allocation database.

Staffing - Senior Allocation Specialist; Senior Project Manager; Database Designer

*Performance Standards/Metrics:*
- The CSRA Team submits a written descriptive summary of the initial design for the allocation process, including a database design, within the noted timeframe
- The submitted written descriptive summary of the initial design for the allocation process includes a summary of the basis of and anticipated conduct the allocation process, including preliminary recommendations on data sources to be considered for the allocation, applicable allocation factors, and methodology for determination of shares
- The submitted initial database design provides a written description of the database, including, suggested method for providing OU2 PRPs specific information on the contents of the database, suggestions on methods for resolving data gaps in data regarding OU2 PRPs not available in documents received from EPA, and if practical, images of anticipated data screens

## Task 4          Conference Call w EPA on Initial Database Design

| Item | Title | Due No Later Than[†] | Type |
|------|-------|------------------|------|
| 4.1 | Conference Call with EPA on Initial Allocation Process and Database Design | Within 10 days* of submission of initial allocation process and database design | Activity |

† Or as otherwise directed by the TOCOR
* All references to "days" refer to business days

Task 4.1 – The CSRA Team will prepare for and participate in a conference call with EPA regarding the initial allocation process and database design. The purpose of the call will be to advise and consult with EPA regarding the submitted initial allocation process and database design and to discuss and resolve any EPA comments. Following the conference call, the CSRA Team will edit the initial allocation process and database design based on received EPA comments to create a draft design for submission to the OU2 PRPs.

This task will require the following efforts on the part of the CSRA Team:
- The CSRA Team will supply two (2) senior project staff located in Washington, DC to participate in the conference call
- Conference call assumed to be no more than two (2) hours in length

Staffing – Senior Allocation Specialist; Senior Project Manager

*Performance Standards/Metrics:*
- The CSRA Team participates in the draft Database Design conference call

**Task 5        Meeting with PRPs on Draft Allocation Process and Database Design**

| Item | Title | Due No Later Than† | Type |
|------|-------|-------------------|------|
| 5.1 | Conduct Meeting with PRPs on Draft Allocation Process and Database Design | Within 40 days* of submission of initial allocation process and database design to EPA | Activity |
| 5.2 | Conference Call with EPA on Meeting with PRPs on Draft Allocation Process and Database Design | Within 10 days* following the Meeting with PRPs on Draft Allocation Process and Database Design | Activity |

† Or as otherwise directed by the TOCOR
* All references to "days" refer to business days

Task 5.1 - The CSRA Team will plan, schedule, and conduct a meeting with the OU2 PRPs as a group regarding the draft design of the allocation process and database. The purpose of the meeting will be to advise the OU2 PRPs as a group regarding the anticipated conduct of the allocation process and the anticipated organization of data and contents of the database, and to obtain PRP comments regarding the draft allocation process and database design. The CSRA Team will also communicate with the OU2 PRPs individually to obtain the input of OU2 PRPs, including those that did or were unable to attend the outreach meeting, regarding suggestions on the effective design and conduct of the allocation process and database, and to obtain additional records and information, if any, for the allocation database. The CSRA Team will establish a deadline of 60 business days following the meeting with PRPs on draft allocation process and database design for the submission by OU2 PRPs of additional data for inclusion in the allocation database.

This task will require the following efforts on the part of the CSRA Team:
- Making arrangements for a meeting in the greater New York City metropolitan area sufficient to accommodate the OU2 PRPs as a group
- Coordination of meeting space and equipment for meetings provided by EPA or OU2 PRPs
- Communication via email with the OU2 PRPs regarding substance, date/time, and location of meeting
- Development of meeting agenda
- Development of participant materials, including a descriptive summary of Site information received from EPA and a description of the draft allocation process and database design
- Travel of two (2) senior staff from Washington, DC to attend meeting
- Communications by Senior Allocation Specialist via phone, email, or other electronic media as required with OU2 PRPs; Communications will be limited to an average of 20 minutes for each OU2 PRP
- Record PRP comments regarding allocation process and database design and conduct, without attribution to individual OU2 PRP comments

Staffing – Senior Allocation Specialist; Senior Project Manager

*Performance Standards/Metrics:*
- The CSRA Team conducts a meeting with the OU2 PRPs as a group regarding design of the allocation process and database
- A majority of the members of the OU2 PRPs as a group attend the meeting either in person or remotely
- The CSRA Team copies the EPA technical lead on its email communication to the OU2 PRPs regarding substance, date/time, and location of meeting, and provides EPA with a copy of utilized meeting materials


Task 5.2 - The CSRA Team will schedule and hold, within 10 business days of holding the meeting with the OU2 PRPs on the draft allocation process and database design, a conference call with EPA regarding the findings of the meeting.

This task will require the following efforts on the part of the CSRA Team:
- Scheduling and participating in a conference call with EPA to provide EPA information on the meeting, including a list of participants at the meeting and summary of suggestions received regarding the allocation process and database design
- Conference call assumed to be no more than two (2) hours in length

Timing of this task is dependent upon the availability of assigned EPA staff to participate in a conference call within noted timeframe.

Staffing – Senior Allocation Specialist; Senior Project Manager

*Performance Standards/Metrics:*
- The CSRA Team participates in a conference call with EPA regarding the findings of the meeting following the Database Design Outreach Meeting
- In conducting the post-meeting conference call with EPA, the CSRA Team provides a summary of information and suggestions obtained from the OU2 PRPs without attribution to contributions of individual participants

**Task 6**          **Final Allocation Design**

| Item | Title | Due No Later Than[†] | Type |
|------|-------|----------------------|------|
| 6.1 | Submit Final Allocation Design to EPA and PRPs | Within 50 days* following the Meeting with PRPs on Draft Allocation Process and Database Design | Transmittal |

† Or as otherwise directed by the TOCOR
* All references to "days" refer to business days

The CSRA Team will complete the design of the allocation process based on input received from EPA and PRPs for submission to the OU2 PRPs and EPA.

This task will require the following efforts on the part of the CSRA Team:
- Conduct coding of data and loading of coded data into database

- Communications by Senior Allocation Specialist via phone, email, or other electronic media as required with OU2 PRPs; Communications will be limited to an average of 20 minutes for each OU2 PRP
- Record, compile, and organize suggestions of OU2 PRPs regarding allocation process design and conduct without attribution to individual comments
- Edit draft allocation design based on analysis of received Site data, EPA comments on the draft allocation design, and consideration of input received from OU2 PRPs during meeting and other outreach methods to prepare a written descriptive summary of the final allocation design and submit to EPA and the OU2 PRPs

Staffing - Senior Allocation Specialist; Senior Project Manager

*Performance Standards/Metrics:*
- The CSRA Team submits a written descriptive summary of the final design for the allocation process within the noted timeframe
- The submitted written descriptive summary of the final design for the allocation process includes a description of the basis of and anticipated conduct of the allocation process, addresses any identified ambiguities in the draft report, and includes a summary of how the comments of EPA and the OU2 PRPs regarding the draft allocation design were, or were not, taken into account in the final allocation design, without attribution.

## Task 7            Draft PRP Data Reports

| Item | Title | Due No Later Than† | Type |
|------|-------|---------------------|------|
| 7.1 | Submit Draft PRP Data Reports to PRPs | Within 100 days* following the Meeting with PRPs on Draft Allocation Process and Database Design | Transmittal |

† Or as otherwise directed by the TOCOR
* All references to "days" refer to business days

The CSRA Team will organize and conduct a technical and scientific evaluation of data in the allocation database to develop individual data reports for each of the OU2 PRPs. The PRP Data Reports will provide selected information regarding each OU2 PRP's relation to OU2 and OU2 contaminants of concern that will be used in conduct of the allocation. The CSRA Team will establish a deadline of 40 business days from receipt of the data report for submission of corrections or suggestions by the OU2 PRPs for improving the quality of the received OU2 PRP's data report.

This task will require the following efforts on the part of the CSRA Team:
- Conduct coding of data and loading of coded data into database obtained from OU2 PRPs
- Review Site data loaded into database to determine appropriate organization for allocation
- Compile and organize Site data in database to support allocation analysis and share computations
- Organize data in allocation database into individual PRP data reports
- Provide a copy of the PRP data reports to the OU2 PRPs

Conduct of this task is dependent upon the following:

- Access by the CSRA Team to EPA technical data regarding Site conditions and the selected OU2 remedy
- Sufficient data on identified PRPs to allow analysis of associated contaminants of concern and hazardous substance fate and transport at the Site
- Successful establishment of the allocation database
- Receipt of additional data from OU2 PRPs for inclusion in the allocation database by 60 business days following the meeting with PRPs on draft allocation process and database design

Staffing - Data Analysts; Senior Scientist; Senior Project Manager; Senior Allocation Specialist

*Performance Standards/Metrics*
- The CSRA Team submits the PRP Data Reports to the OU2 PRPs within the noted timeframe
- The submitted written individual PRP Data Reports include a summary of information in the allocation database that is relevant to a determination regarding the associated OU2 PRP's relation to OU2 and OU2 contaminants of concern for use in conduct of the allocation
- The CSRA Team copies the EPA technical lead on the email communications to the OU2 PRPs providing a copy of their data report

## Task 8          Final Data Reports

| Item | Title | Due No Later Than[†] | Type |
|------|-------|---------------------|------|
| 8.1 | Submit Final PRP Data Reports to EPA and PRPs | Within 40 days* following the deadline for submission of corrected PRP data reports | Transmittal |
| 8.2 | Provide EPA Access to Allocation Database | Upon submission of corrected PRP data reports | Activity |

† Or as otherwise directed by the TOCOR
* All references to "days" refer to business days

The CSRA Team will analyze corrections or suggestions for improving the quality of the data reports received from OU2 PRPs to determine whether modifications of the original data reports are warranted.  Based on this analysis, the CSRA Team will modify the data reports, as deemed appropriate.  The CSRA Team will then provide a copy of all of the revised data reports to EPA and a revised copy of their own individual data reports to each of the OU2 PRPs, with an explanation of how suggested changes were, or were not, incorporated.

This task will require the following efforts on the part of the CSRA Team:
- Analyze received suggestions and corrections to data reports in relation to existing Site data and the final allocation design in order to determine appropriate modifications
- Modify the individual data reports, as warranted based on above analysis
- Provide an explanation to the OU2 PRPs regarding whether, and if so how, received suggestions resulting in changes to their individual data report, including a

description of why their suggestions and comments were, or were not, taken into account
- As required, the CSRA Team will conduct communications with individual OU2 PRPs to answer questions regarding their final data report

Timing of this task is dependent upon receipt of comments from OU2 PRPs regarding their data report within established timeframes

Staffing - Data Analysts; Senior Scientist; Senior Project Manager; Senior Allocation Specialist

*Performance Standards/Metrics*
- The CSRA Team submits the Final PRP Data Reports to EPA and OU2 PRPs within the noted timeframe
- The submitted revised Final PRP Data Reports address any identified ambiguities in the draft reports and includes a summary of how received comments regarding the draft PRP Data Reports were, or were not, taken into account in the final reports
- The CSRA Team copies the EPA technical lead on the email communications to the OU2 PRPs providing a copy of their individual data report

## Task 9        Draft Allocation Report

| Item | Title | Due No Later Than[†] | Type |
|------|-------|----------------------|------|
| 9.1 | Submit Draft Allocation Recommendation Report | Within 90 days* following submittal of final PRP Data Reports | Transmittal |

† Or as otherwise directed by the TOCOR
* All references to "days" refer to business days

The CSRA Team will prepare a first draft of the allocation recommendation report and submit to the OU2 PRPs and EPA for review. The draft allocation report will designate shares of responsibility among the OU2 PRPs, as appropriate based on the allocation analysis. The draft allocation report will include a recommendation on the possible grouping of the OU2 PRPs into tiers of similar levels of responsibility.

This task will require the following efforts on the part of the CSRA Team:
- Review and consideration of input regarding allocation received from the OU2 PRPs and EPA
- Review and understand the basis for EPA's selected remedy for OU2, in consultation with EPA technical and legal personnel
- Review and understand the relative toxicity of identified contaminants of concern relevant to the selection of the OU2 remedy, in consultation with EPA technical and legal personnel
- Analyze the relative toxicity of materials discharged by OU2 PRPs and other differentiating factors, including fate and transport of hazardous substances released by PRPs based on the data contained in the RI/FS, in relation to the selected remedy
- Compilation and analysis of allocation data related to each OU2 PRP, including contaminants of concern, to establish the relative impact of the actions of each OU2 PRP on the conditions that resulted in EPA selecting the OU2 remedy
- Establish appropriate allocation algorithms

- Load compiled PRP data into allocation calculations to determine relative relationships among the OU2 PRPs
- As appropriate, establish appropriate tiers of OU2 PRP responsibility based on calculations and consideration of equitable factors
- Prepare draft allocation recommendation report
- Submission of the draft report to the OU2 PRPs and EPA

Timing of this task is dependent upon receipt of position briefs and reply briefs regarding allocation from OU2 PRPs within established timeframes

Staffing - Senior Allocation Specialist; Senior Project Manager

*Performance Standards/Metrics:*
- The CSRA Team submits the Draft Allocation Recommendation Report within the noted timeframe
- The submitted written Draft Allocation Recommendation Report includes an overview of the basis for the determinations of shares among the OU2 PRPs, including a description of the use of data sources and application of allocation factors and methodology utilized, and reason for potential vulnerabilities, if any, in the resulting allocation
- The report identifies and explains the rationale, if applicable, for grouping OU2 PRPs into tiers of similar relative responsibility

**Task 10**      <u>**Final Allocation Recommendation Report**</u>

| Item | Title | Due No Later Than† | Type |
|------|-------|--------------------|------|
| 10.1 | Conference Call with EPA regarding Draft Allocation Recommendation Report | Within 10 days* of submittal of Draft Allocation Report | Transmittal |
| 10.2 | Submit Final Allocation Recommendation Report to OU2 PRPs and EPA | Within 60 days* of submittal of Draft Allocation Report | **Deliverable** |

† Or as otherwise directed by the TOCOR
* All references to "days" refer to business days

Task 10.1 - The CSRA Team will prepare for and participate in a meeting with EPA regarding the submitted draft allocation recommendation report. The purpose of the meeting will be to obtain EPA comments regarding the submitted draft allocation report, including the basis and findings of the draft allocation report and the report format.

This task will require the following efforts on the part of the CSRA Team:
- The CSRA Team will supply one (2) senior staff located in Washington, DC to participate in the conference call
- Conference call assumed to be no more than two (2) hours in length

Staffing - Senior Allocation Specialist

Performance Standards/Metrics:
    The CSRA Team participates in the meeting regarding the submitted draft allocation recommendation report

Task 10.2 - The CSRA Team will prepare a Final Allocation Recommendation Report. The Final Allocation Recommendation Report will take into consideration comments on the draft allocation recommendation report received during consultation with EPA and during meetings with and received in position and reply briefs from the OU2 PRPs.

This task will require the following efforts on the part of the CSRA Team:
- Review and consider the comments by OU2 PRPs and EPA regarding the draft allocation recommendation report
- Editing of the draft allocation recommendation report to incorporate appropriate modifications based on OU2 and EPA comments to produce the Final Allocation Recommendation Report

Staffing - Senior Allocation Specialist; Senior Project  Manager

*Performance Standards/Metrics:*
- The CSRA Team submits a Final Allocation Recommendation Report within the noted timeframe
- The submitted Final Allocation Recommendation Report includes the elements of the Draft Allocation Recommendation Report described in Task 17, addresses any identified ambiguities in the draft report, and provides a summary, without attribution to individual comments, of how comments of the OU2 PRPs and EPA regarding the Draft Allocation Recommendation Report were, or were not, taken into account in the final report, without attribution.

## Task 11          Final PRP Outreach Report

| Item | Title | Due No Later Than[†] | Type |
|------|-------|---------------------|------|
| 11.1 | Submit Final PRP Outreach Report | Within 10 days* of submittal of Final Allocation Report | Activity |

† Or as otherwise directed by the TOCOR
* All references to "days" refer to business days

The CSRA Team will prepare and provide to EPA a report regarding outreach efforts conducted with the OU2 PRPs, including a list of participants in outreach efforts, a description of topics discussed, and a summary of issues or concerns raised.

This task will require the following efforts on the part of the CSRA Team:
- Review and organize the comments of OU2 PRPs received during conduct of the Task Order, without attribution to individual OU2 PRPs
- Prepare and provide EPA an overview of conducted outreach efforts, including a list of OU2 PRPs that have participated in outreach meetings, conference calls, or individual communications with the CSRA Team and a summary of suggestions received from the OU2 PRPs regarding the allocation process

Staffing - Senior Allocation Specialist; Senior Project Manager

*Performance Standards/Metrics:*
- The CSRA Team submits a written summary of PRP outreach efforts within the noted timeframe

- The Final PRP Outreach Report includes a summary of conducted PRP outreach efforts, including a list of OU2 PRPs that have participated in outreach meetings, conference calls, or individual communications with the CSRA Team and a summary of suggestions received from the OU2 PRPs regarding the allocation process
- In drafting the Final PRP Outreach Report, the CSRA Team provides a summary of information and suggestions obtained from the OU2 PRPs without attribution to contributions of individual participants

**Task 12**          **Task Order Closeout Report**

| Item | Title | Due No Later Than† | Type |
|------|-------|---------------------|------|
| 12.1 | Submit Draft Task Order Closeout Report | Within 10 days* of submittal of Final Allocation Report | Transmittal |
| 12.2 | Final Task Order Closeout Report | Within 10 days* of receipt of EPA's comments on Draft Task Order Closeout Report | **Deliverable** |

† Or as otherwise directed by the TOCOR
* All references to "days" refer to business days

Task 12.1 - The CSRA Team will design and produce the first draft of a report regarding the conduct of tasks pursuant to the Task Order and submit it for review by EPA. The report will not contain any confidential or sensitive information. The contents of the Draft Task Order Close-Out Report will include:

- A half-page description of the project that describes the nature of the project, the parties, the process, and the outcomes
- If appropriate, a short section reflecting on the process and procedural lessons learned and recommendation for improvements and identification of those activities conducted that contributed to the success of the process
- A brief summary of the final costs of the project broken out by percentage of labor hours and other direct costs

This task will require the following efforts on the part of the CSRA Team:

- Review of project activities and compilation of project summary
- Consideration and compilation of thoughts on lessons learned regarding project
- Compilation of project budget costs
- Preparation of the Draft Task Order Close-out Report

Staffing - Senior Allocation Specialist; Senior Project Manager

*Performance Standards/Metrics:*

- The CSRA Team submits a Draft Task Order Closeout Report within the noted timeframe
- The submitted Draft Task Order Closeout Report includes the items noted above as contents of the report

Task 12.2 - The CSRA Team will prepare a Final Task Order Closeout Report and submit to EPA. The Final Task Order Closeout Report will take into consideration comments received from EPA regarding the draft of the Task Order closeout report. CSRA will provide one (1) copy of the Final Task Order Closeout Report to the PO and one (1) copy to the TOCOR in electronic format.

This task will require the following efforts on the part of the CSRA Team:
- Review and consideration of comments by EPA regarding the draft Task Order Closeout Report
- Editing, and as required redesign, of the closeout report to incorporate modifications based on EPA comments in order to produce the Final Task Order Closeout Report

Staffing - Senior Allocation Specialist; Senior Project Manager

*Performance Standards/Metrics:*
- The CSRA Team submits a Final Task Order Closeout Report within the noted timeframe
- The submitted Final Task Order Closeout Report addresses any identified ambiguities in the draft report and includes a summary of how EPA's comments regarding the Draft Allocation Recommendation Report were, or were not, taken into account in the final report

## 5.0    Reports, Transmittals and Deliverables

CSRA will provide EPA all reports in accordance with the contract.

Copies of all contract deliverables will be sent to both the PO and the TOCOR. If oral briefings are scheduled for EPA staff, the PO will be notified in time to attend.

*Public Version*

**Schedule**

| Item | Title | Due No Later Than† | Type |
|------|-------|-------------------|------|
| 1 | Task Order Kick-Off Meeting | Within 20 days* of Task Order approval | Transmittal |
| 2 | EPA Project Public Announcement Meeting | Within 40 days* of Task Order approval | Activity |
| 3 | Submit initial allocation process and database design to EPA | Within 100 days* of Task Order approval | Transmittal |
| 4 | Conference Call with EPA on Initial Allocation Process and Database Design | Within 10 days* of submission of initial allocation process and database design | Activity |
| 5.1 | Conduct Meeting with PRPs on Draft Allocation Process and Database Design | Within 40 days* of submission of initial allocation process and database design to EPA | Activity |
| 5.2 | Conference Call with EPA on Meeting with PRPs on Draft Allocation Process and Database Design | Within 10 days* following the Meeting with PRPs on Draft Allocation Process and Database Design | Activity |
| 6 | Submit Final Allocation Design to EPA and PRPs | Within 50 days* following the Meeting with PRPs on Draft Allocation Process and Database Design | Transmittal |
| 7 | Submit Draft PRP Data Reports to PRPs | Within 100 days* following the Meeting with PRPs on Draft Allocation Process and Database Design | Transmittal |
| 8.1 | Submit Final PRP Data Reports to EPA and PRPs | Within 40 days* following the deadline for submission of corrected PRP data reports | Transmittal |
| 8.2 | Provide EPA Access to Allocation Database | Upon submission of corrected PRP data reports | Activity |
| 9 | Submit Draft Allocation Recommendation Report | Within 90 days* following submittal of final PRP Data Reports | Transmittal |
| 10.1 | Conference Call with EPA regarding Draft Allocation Recommendation Report | Within 10 days* of submittal of Draft Allocation Report | Transmittal |
| 10.2 | Submit Final Allocation Recommendation Report to OU2 PRPs and EPA | Within 60 days* of submittal of Draft Allocation Report | **Deliverable** |
| 11 | Submit Final PRP Outreach Report | Within 10 days*  of submittal of Final Allocation Report | Activity |
| 12.1 | Submit Draft Task Order Closeout Report | Within 20 days*  of submittal of Final Allocation Report | Transmittal |
| 12.2 | Final Task Order Closeout Report | Within 10 days* of receipt of EPA's comments on Draft Task Order Closeout Report | **Deliverable** |

*\* All references to days in this chart refer to business days*

## 6.0    Staffing Plan

This Task Order will be staffed as follows:

| Team Member Name[†] | Role in the Project |
|---|---|
| Mary Apostolico<br>CSRA International | Overall Contract Management, Quality Assurance, Task Order Management |
| Jennifer Cutrona<br>CSRA | Dashboard and Financial Tracking |
| David Batson<br>TechLaw | Senior Allocation Specialist |
| Judy Manley<br>TechLaw | Senior Project Manager |
| Travis Kline<br>TechLaw | Senior Toxicologist |
| Erman Evcimen<br>TechLaw | Database Designer |
| Amber Kozacek<br>TechLaw | Researcher |

[†]Other team members than those listed in the above table may work on this task order to complete the required work.

[*]The task order mainly will be managed by the TOM listed in the above table; however, additional team members may conduct task order management activities to ensure coverage during periods when the TOM is unavailable (e.g., vacation, illness, business travel, time constraints).

## 7.0    Quality Management

As part of its quality assurance practices, CSRA TOM will:
- Review this Work Plan with the EPA TOCOR, as requested by the TOCOR;
- Meet or hold conference calls as needed with the TOCOR to review progress; and
- Speak regularly with the subcontractor to receive project status updates.

In addition, all work on this Task Order will be performed in accordance with CSRA's strict quality assurance practices, including but not limited to incorporating quality management principles and processes into the development of the required transmittals, deliverables, and the consulting services offered. Although CSRA will ensure the timely delivery of all transmittals and deliverables, CSRA will not perform a review of these documents prepared by the subcontractor.

## 8.0    Conflict of Interest

Based on our review and understanding of the legal requirements of this work, CSRA certifies that no real, apparent, or potential organizational or individual conflict of interest exists with this assignment, based on previous or ongoing work, or other potential conflicts.

**9.0     Cyber Security**

CSRA has interpreted compliance with information assurance / security provisions contained in this contract as a requirement to provide its standard CSRA information system and procedures. CSRA contract pricing does not include or reflect any additional requirements or certification and accreditation for the CSRA information system or procedures, connectivity to the Government system(s), or storage of any Government-provided data or project data, or for stand-alone development or storage environments. Should the Government require increased or specialized information assurance security or other actions beyond those reflected in the standard CSRA information system or procedures, then the Government will notify CSRA and such revisions will be provided in accordance with the "changes" clause of this contract.

**10.0     Project Budget**

The budget for this task is provided as an Attachment.

**11.0     Period of Performance**

The task order period of performance runs through June 15, 2019.

# Declaration of Alice Yeh

# Exhibit H

# November 28, 2017, letter from Eric Wilson, EPA to Occidental



**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY**
REGION 2
290 BROADWAY
NEW YORK, NY 10007-1866

November 28, 2017

## CERTIFIED MAIL
## RETURN RECEIPT REQUESTED

Ms. Marcia E. Backus
Senior Vice President and General Counsel
Occidental Petroleum Corporation
5 Greenway Plaza, Suite 110
Houston, Texas 77046

      Re:    Allocation Process for Operable Unit 2 of the Diamond Alkali Superfund Site
              Essex and Hudson Counties, New Jersey

Dear Ms. Backus:

On behalf of the U.S. Environmental Protection Agency, Region 2 (EPA or the Agency), I would like to thank you and your team for coming to our offices on Thursday, October 19, 2017, to discuss the allocation for Operable Unit 2 (OU2) of the Diamond Alkali Superfund Site (Site). Given the frank discussion that took place, we now have a better understanding of concerns raised by Occidental Chemical Corporation (OCC) regarding the proposed allocation. We are also pleased that we were able to resolve certain misunderstandings concerning EPA's enforcement framework for OU2 of the Site.

Our recent meeting was very productive and addressed many of the issues raised in your October 12, 2017 letter (Letter). This letter further responds to your Letter and addresses issues that were not discussed at our meeting.

Transparency Regarding EPA's Enforcement Approach and Timely Notification of the Proposed Allocation for OU2

With regard to EPA's communications with the responsible parties about the proposed enforcement approach, we note that as early as March 30, 2016, shortly after the Record of Decision for OU2 was signed, EPA informed the OU2 potentially responsible parties (PRPs) of the Agency's enforcement strategy for OU2 including that the Agency believed that some parties should perform the work while others should contribute to funding the work through cash-out settlements with the Agency. The Agency provided greater specificity in its "Next Steps" letter of March 30, 2017 in which we notified the parties of EPA's intention "to use the services of a third party allocator." We again informed the PRPs of our intention to use the services of a third party allocator in our letter of May 17, 2017. Then, based on comments we had received from some PRPs regarding EPA's allocation approach, EPA issued a letter on August 3, 2017, inviting

the OU2 PRPs to a meeting at EPA's New York offices to discuss the Agency's proposed allocation framework. That meeting, which took place on August 28, 2017, was attended by representatives of OCC both in-person in New York and by phone. During that meeting, parties including OCC raised questions regarding EPA's enforcement approach and discussed the relative merits of proceeding with an allocation including only "middle tier" parties or expanding the scope of the allocation to include additional parties.

In addition to these letters and the August meeting, this past summer, staff from EPA's Office of Regional Counsel spoke with representatives of OCC concerning the proposed allocation for OU2. During those discussions, OCC expressed its concern about participating in an allocation given OCC's belief that an allocation would not assure "compulsory disclosure" of all documents and information regarding PRPs' releases or potential releases into the Lower Passaic River.

Proposed Allocation and the Record of Decision for OU2

Again, we are pleased that we were able to clarify at the October 19 meeting that EPA intends to pursue all the OU2 PRPs and not simply those parties responsible for the release of dioxin, furans and/or polychlorinated biphenyls (PCBs) into the Lower Passaic River. As we stated at the meeting, EPA continues to believe that parties responsible for the release of dioxins, furans and/or PCBs into the lower 8.3 miles of Lower Passaic River Study Area should perform the remedial action for OU2 under a consent decree with the United States, and that the remaining PRPs should contribute their fair share of the costs of the remedial action by providing funding for the remedial work, and/or by providing in-kind services.

As we discussed during our October 19 meeting, whether and to what extent hazardous substances other than contaminants of concern (COCs) will be taken into consideration in the allocation is a question that should be raised with AlterEcho within the process established by the allocator for the parties to offer feedback on the design of the allocation.

The Agency intends to pursue all of the OU2 PRPs and is committed to ensuring that all of the OU2 PRPs contribute their fair share towards the costs for OU2 of the Site. While we may at a future point conclude that some PRPs – perhaps, but not necessarily, those not responsible for dioxin, furans and/or PCBs – are eligible for cash-out settlements, any such cash-out would be based on such parties' fair share (with an appropriate premium), and monies recovered would go towards funding of the OU2 remedial action. Importantly, EPA expects future cash-out settlements to be in the form of a judicial consent decree or decrees, subject to public comment and federal court review and approval.

Sufficiency of Information for the Allocation

We also had a productive conversation at our October 19 meeting regarding OCC's views and concerns with the amount, veracity, and completeness of information available for OU2 and the allocation. We understand that OCC is concerned that without the type of compelled production

of documents and depositions available in litigation, certain parties may not produce all relevant information. We do, however, remain optimistic given our discussion at our October 19 meeting that OCC will see the opportunities provided by the non-binding allocation process, described by David Batson at the October 13, 2017 allocation "kick off" meeting. During the allocation, OCC will have the ability to share its concerns about information with the allocator and the other participants in the allocation process. The allocator will be able to take OCC's concerns into consideration in shaping the allocation process, or bring them back to EPA, as appropriate.

Moreover, as indicated at the October 19 meeting, if gaps in the information or data available to AlterEcho threaten to impede the effectiveness of the process, the Agency will consider using its enforcement resources to supplement the information provided by the Agency and PRPs. Further, should EPA conclude that additional cash-out settlements are warranted, we will consider how to incorporate a suitable certification from the settling parties about the completeness of their disclosures.

We note, with regard to the statement in your Letter that "[a]llocation is a judicial, not an administrative, function under CERCLA" that allocation of Superfund site costs outside of court is a commonly used approach. In fact, at large multiparty sites, allocation is a conventional approach to sharing costs and responsibility. EPA has a Conflict Prevention and Resolution Center that provides alternative dispute resolution and conflict resolution services such as the use of third party neutrals.

As we have stated, we do not think that litigation is the best approach to resolving liability for OU2. While this Site has proven to be particularly challenging in that the PRPs have been unable to reach sufficient consensus to begin their own allocation for OU2, we continue to think that the resources expended in litigation coupled with the uncertainty of a legal proceeding and loss of control over the process will far outweigh the challenges associated with the allocation process.

The Allocation Should Be Completed Before Negotiations for the Remedial Action Begin

You state in the Letter that there are "significant unknowns and uncertainties that exist concerning how much the remedy will eventually cost" and that therefore "OCC believes it is premature and inequitable for EPA to attempt to allocate the costs of the remedy" until the remedial design is completed.

EPA conducted a remedial investigation and focused feasibility study for OU2 and selected the remedy for OU2 based on a very large data set, and there is a large amount of data in the record that provides a detailed understanding of both the COCs that drive the risk, and also the hazardous substances that are not COCs but may affect costs. In addition, OCC, through Tierra Solutions, Inc., has already conducted a removal action in the river and has the data from that work. Similarly, the Cooperating Parties Group capped a highly contaminated mudflat and is currently monitoring the results.

The purpose of allocation is to provide recommendations regarding the relative shares of responsibility of the parties. Parties will be assigned a percentage share of liability in relation to the other PRPs, not dollar amounts. To the extent that information gathered during the OU2 remedial design affects the ultimate costs of the remedy, EPA will be able to take that information and those additional costs into account in any potential settlements with the PRPs.

Delaying the allocation until the remedial design is completed would defeat a primary goal of the allocation, namely, to have a remedial action consent decree in place so that the remedial action work can begin without delay following completion of the remedial design. While EPA agrees that the remedial design for OU2 may provide additional information that could be relevant to the allocation, the Agency does not believe information gathered during the remedial design will materially affect the factors that drive the costs of the OU2 remedy.

Allocation Will Not Create a Barrier to Settlement

We agree that a fair, carefully structured, information-based allocation is necessary to promote settlements. This is why we initiated the allocation process. We have received numerous requests over the decade that work has been underway for an equitable resolution that would allow parties with minimal responsibility to exit the process so as not to incur transaction costs far in excess of their liability. It is not our view that the allocation, and any cash-out settlements based on the allocation, will create disincentives to any remaining PRPs to assume responsibility for the remedial action especially in light of the fact that we envision that such early settlements would include a premium. Rather than reducing the pool of responsible parties, settlements with such parties will bring funds to the remedial action, and should streamline the negotiation of a remedial action consent decree.

We appreciate OCC's concern that all costs, including long-term "maintenance obligations…must be borne by the parties responsible for them." We did discuss, at some length, OCC's concerns during our October 19 meeting and I believe those discussions were worthwhile and hope that our discussions assured OCC of the Agency's intention to pursue all of the OU2 PRPs for their fair share of OU2 costs.

As we discussed during our meeting, the proposed allocation is non-binding and participation in the allocation does not require any party to forgo its right to contribution or its cost recovery rights. Parties that participate in the allocation process will not be obliged to accept any settlement offers that EPA may make, or to refrain from challenging a settlement offer made to another party. The allocation process is structured to allow OCC and other participants to participate in the design of the allocation and the factors to be considered. And again, assuming EPA identifies additional parties for cash-out settlements, such settlements would take the form of a judicial consent decree, which would be lodged with the federal court, and would be subject to public comment and judicial review and approval. We hope these facts will address the Company's concern that the proposed allocation will "come at the expense of OCC's legal rights to obtain contribution and cost recovery from all responsible PRPs who have contaminated the sediments of the Lower Passaic River."

Most important, we understand that to be successful, the allocation must be fair, and that all PRPs, whether those responsible for the COCs driving the remedial costs or others, are more likely to enter into a settlement or settlements with the United States for implementation and/or funding of the remedial action if they find that the settlements are also fair and reasonable.

The Agency is Hearing and Considering OCC's Concerns

As noted, EPA appreciates OCCs concerns and we are listening. We worked with OCC and the other creditors throughout the Maxus Energy Corporation bankruptcy proceeding to achieve a positive result. We intend to continue our efforts at having an open and transparent relationship with OCC, as with other OU2 PRPs, and hope that OCC shares our goal of having the remedial design and remedial action for OU2 performed timely and effectively. As we discussed at the October 19 meeting, we encourage OCC to participate actively and fully in the allocation process and to raise its concerns with the allocator so that they can be addressed in the allocation process.

Sincerely,

Eric J. Wilson
Deputy Director for Enforcement and Homeland Security
Emergency and Remedial Response Division

cc: Brian Donohue, Esq., USDOJ

# Declaration of Alice Yeh

# Exhibit I

# EPA Recalculation of PPG Base Score (Jan. 2024)

**PPG: Base Score (Alternative Method)**  Tier 5

*(columns correspond to Facility Data Computation Sheets, Attachment L PDF pages 646 and 648; Facility Base Score on PDF page 656)*

| COC | Overland Fate & Transport C% | Dmass | PrePVSC C% | Dmass | PVSC C% | Dmass | Direct Discharge C% | Dmass | COC Total Pathway Cmass (PPG) kg | A% | COC Historic Cmass (PPG) kg | Relative Risk Number RRN | Total COC Mass in OU2 Today (Tmass) kg | Total Cmass (All Parties Historically) kg | Total OS COC ACmass (Unattributed) Today kg | COC% | COC Historic Cmass (PPG) kg | Facility OS COC Cmass (PPG's Share of Unattributed) kg | COC Relative Contribution (Alternative) | COC Base Score (Alternative) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| copper | 100% | 32.69 | 100% | - | 0.00% | - | 100% | - | 32.69 | 0.010188170 | 0.33 | 0.69% | 2,100,000.00 | 276,960.25 | 2,097,178.28 | 0.0001180 | 0.33 | 247.53 | 0.0001180 | 0.0000814 |
| lead | 100% | 283.93 | 100% | - | 0.00% | - | 100% | - | 283.93 | 0.010188170 | 2.89 | 0.01% | 3,200,000.00 | 288,577.67 | 3,197,059.92 | 0.0009839 | 2.89 | 3,145.57 | 0.0009839 | 0.0000898 |
| mercury | 100% | 0.31 | 100% | - | 0.00% | - | 100% | - | 0.31 | 0.010188170 | 0.00 | 0.95% | 42,000.00 | 4,322.53 | 41,955.96 | 0.0000717 | | 3.01 | 0.0000717 | 0.0000681 |
| HPAHs | 100% | 0.83 | 100% | - | 0.00% | - | 100% | - | 0.83 | 0.010188170 | 0.01 | 0.05% | 240,000.00 | 4,346,388.50 | 195,718.24 | 0.0000002 | 0.01 | 0.04 | 0.0000002 | 0.0000000 |
| LPAHs | 100% | 5.26 | 100% | - | 0.00% | - | 100% | - | 5.26 | 0.010188170 | 0.05 | 0.01% | 170,000.00 | 3,012,835.14 | 139,304.72 | 0.0000017 | 0.05 | 0.24 | 0.0000017 | 0.0000000 |
| PCBs | 100% | 0.38 | 100% | - | 0.00% | - | 100% | - | 0.38 | 0.010188170 | 0.00 | 12.87% | 26,000.00 | 20,066.54 | 25,795.56 | 0.0000189 | 0.00 | 0.49 | 0.0000189 | 0.0002437 |
| DDx | 100% | - | 100% | - | 0.00% | - | 100% | - | - | 0.010188170 | 0.00 | 1.37% | 27,000.00 | 2,516.93 | 26,974.36 | 0.0000000 | - | - | - | 0.0000000 |
| Dieldrin | 100% | - | 100% | - | 0.00% | - | 100% | - | - | 0.010188170 | 0.00 | 0.13% | 390.00 | 1.27 | 389.99 | 0.0000000 | - | - | - | 0.0000000 |
| Dioxins/Furans | 100% | - | 100% | - | 0.00% | - | 100% | - | - | 0.010188170 | 0.00 | 83.92% | 38.00 | 3729.82 | 0.00 | 0.0000000 | - | - | - | 0.0000000 |
| | | | | | | | | | *CALCULATED* | | *CALCULATED* | | | | | *CALCULATED* | | *CALCULATED* | *CALCULATED* | **0.0004032** *<--Base Score (PDF p. 656)* |

**CALCULATION FROM CASH OUT COMMENTS:**

| COC | Overland Fate & Transport C% | Dmass | PrePVSC C% | Dmass | PVSC C% | Dmass | Direct Discharge C% | Dmass | COC Total Pathway Cmass (PPG) kg | A% | COC Historic Cmass (PPG) kg | Relative Risk Number RRN | Total COC Mass in OU2 Today (Tmass) kg | Total Cmass (All Parties Historically) kg | Total OS COC ACmass (Unattributed) Today kg | COC% | COC Historic Cmass (PPG) kg | Facility OS COC Cmass (PPG's Share of Unattributed) kg | COC Relative Contribution (Alternative) | COC Base Score (Alternative) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| copper | 100% | 32.69 | 100% | - | 0.00% | - | 100% | 811.88 | 844.57 | 0.010188170 | 8.60 | 0.69% | 2,100,000.00 | 277,772.13 | 2,096,366.40 | 0.0030405 | 8.60 | 6,374.05 | 0.0030394 | 0.0029972 |
| lead | 100% | 283.93 | 100% | - | 0.00% | - | 100% | 1,654.99 | 1,938.92 | 0.010188170 | 19.75 | 0.01% | 3,200,000.00 | 290,232.66 | 3,195,404.93 | 0.0066806 | 19.75 | 21,347.14 | 0.0066772 | 0.0000668 |
| mercury | 100% | 0.31 | 100% | - | 0.00% | - | 100% | 3.12 | 3.43 | 0.010188170 | 0.03 | 0.95% | 42,000.00 | 4,325.65 | 41,952.84 | 0.0007936 | 0.03 | 33.29 | 0.0007935 | 0.0007538 |
| HPAHs | 100% | 0.83 | 100% | - | 0.00% | - | 100% | - | 0.83 | 0.010188170 | 0.01 | 0.05% | 240,000.00 | 4,346,388.50 | 195,718.24 | 0.0000002 | 0.01 | 0.04 | 0.0000002 | 0.0000000 |
| LPAHs | 100% | 5.26 | 100% | - | 0.00% | - | 100% | - | 5.26 | 0.010188170 | 0.00 | 0.05% | 170,000.00 | 3,012,835.14 | 139,304.72 | 0.0000017 | 0.05 | 0.24 | 0.0000017 | 0.0000000 |
| PCBs | 100% | 0.38 | 100% | - | 0.00% | - | 100% | - | 0.38 | 0.010188170 | 0.00 | 1.37% | 26,000.00 | 20,066.54 | 25,795.56 | 0.0000189 | 0.00 | 0.49 | 0.0000189 | 0.0002437 |
| DDx | 100% | - | 100% | - | 0.00% | - | 100% | - | - | 0.010188170 | 0.00 | 1.37% | 27,000.00 | 2,516.93 | 26,974.36 | 0.0000000 | - | - | - | 0.0000000 |
| Dieldrin | 100% | - | 100% | - | 0.00% | - | 100% | - | - | 0.010188170 | 0.00 | 0.13% | 390.00 | 1.27 | 389.99 | 0.0000000 | - | 0.00 | - | 0.0000000 |
| Dioxins/Furans | 100% | - | 100% | - | 0.00% | - | 100% | - | - | 0.010188170 | 0.00 | 83.92% | 38.00 | 3,729.82 | - | 0.0000000 | - | 0.00 | - | 0.0000000 |
| | | | | | | | | | *CALCULATED* | | *CALCULATED* | | | *CALCULATED* | *CALCULATED* | *CALCULATED* | | *CALCULATED* | *CALCULATED* | **0.0031615** *<-- Base Score* |

# Declaration of Alice Yeh

# Exhibit J

# Liquidating Trustee's Notice of Interim Distribution Under Amended Chapter 11 Plan of Liquidation (October 2023)

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| MAXUS ENERGY CORPORATION, *et al.*,[1] | ) Case No. 16-11501 (CTG) |
| | ) |
| Debtors. | ) Jointly Administered |
| | ) |

## LIQUIDATING TRUSTEE'S NOTICE OF INTERIM
## DISTRIBUTION UNDER AMENDED CHAPTER 11 PLAN OF LIQUIDATION

**PLEASE TAKE NOTICE** that on May 22, 2017, the United States Bankruptcy Court for the District of Delaware entered the *Order Confirming Amended Chapter 11 Plan of Liquidation* [Docket No. 1460] (the "Confirmation Order"), which confirmed the *Amended Chapter 11 Plan of Liquidation Proposed by Maxus Energy Corporation, et al. and the Official Committee of Unsecured Creditors* (as the same may be amended, modified, and/or supplemented from time to time, the "Plan").

**PLEASE TAKE FURTHER NOTICE** that the Plan established a liquidating trust (the "Liquidating Trust") for the purpose of liquidating and distributing the Debtors' assets for the benefit of the Liquidating Trust Beneficiaries.[2]

**PLEASE TAKE FURTHER NOTICE** that on July 17, 2017, the Debtors filed the *Notice of (I) Entry of Order Confirming Amended Chapter 11 Plan, (III) Occurrence of Effective Date, and (III) Related Bar Dates* [Docket No. 1701], informing parties in interest that the Plan became effective on July 14, 2017 (the "Effective Date").

**PLEASE TAKE FURTHER NOTICE** that beginning on October 6, 2023 and ending on October 24, 2023, the Liquidating Trustee made interim cash distributions under the Plan to (i) the Environmental Response/Restoration Trust ("ERRT") on account of the Class B Beneficial Interests of the Liquidating Trust in the amount of $84,439,225.50 and (ii) the holders of Class A Beneficial Interests of the Liquidating Trust on account of their Allowed Class 4 Claim in the amount of 66.7408269401600% of the Allowed amount of their Claim (the "Interim Distribution").

---

[1] The Debtors in the above-captioned chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Maxus Energy Corporation (1531), Tierra Solutions, Inc. (0498), Maxus International Energy Company (7260), Maxus (U.S.) Exploration Company (2439), and Gateway Coal Company (7425). The address of each of the Debtors is 10333 Richmond Avenue, Suite 1050, Houston, Texas 77042.

[2] Capitalized terms used but not otherwise defined in this Notice have the meanings ascribed to them in the Plan.

**PLEASE TAKE FURTHER NOTICE** that the Interim Distribution to the ERRT included a $61,000,000 distribution the Liquidating Trust was directed by the ERRT to make directly to the EPA Diamond Alkali Special Account and the DOI Diamond Alkali Account in accordance with written instructions provided by the United States. Plan Art.IX.B(b). Plan Art. IX.B.(b) provides that this amount "be allocated (i) 50% to the EPA to be paid to the EPA Diamond Alkali Special Account in accordance with instructions to be provided by the United States and (ii) 50% to fund NRD restoration activities related to the Diamond Alkali Site, which shall be paid to the DOI Diamond Alkali Account in accordance with instructions to be provided by the United States." Pursuant to and set forth more fully in the Plan, "the amount of Cash received by the United States with respect to the first $61 million (not the total amount of the United States Class 5 Claim) shall be credited as a recovery by the United States with respect to the Diamond Alkali Site, which credit shall reduce the liability of non-Debtor potentially responsible parties at the Diamond Alkali Site by the amount of such credit." *Id.* Pursuant to Plan Art. IX.B.(c), the remaining $23,439,225.50 distributed to the ERRT, after payment of expenses, shall be allocated "(i) 90% to fund environmental remediation related activities at the Diamond Alkali Site in accordance with the Diamond Alkali Remediation Allocation; and (ii) 10% to fund restoration activities related to NRDs at the Diamond Alkali Site in accordance with the Diamond Alkali Remediation Allocation. *Id.* The Diamond Alkali Remediation Allocation is defined as "97.5% allocated to Operable Unit 2 and 2.5% allocated to Operable Unit 4." *See* Plan Art. I.A. 46.

This notice of Interim Distribution is **not** a Funds Available Notice (as defined by the Notice of the ERRT Trustee to PRPs and NRD Trustee [Docket No. 1713]), which shall be filed with the Bankruptcy Court by the ERRT Trustee in due course.

**PLEASE TAKE FURTHER NOTICE** that Interim Distributions were made to the United States on behalf of its United States Diamond Alkali Class 4 Claim in the amount of $96,774,199.06. Pursuant to and subject to the terms of the Plan, "[a]ny recovery received by the United States on account of the United States Diamond Alkali Class 4 Claim shall be paid: 50% to fund NRD assessment and/or restoration activities related to the Diamond Alkali Site in accordance with instructions to be provided by the United States with the first $300,051 paid to the NOAA Diamond Alkali Account and the remainder paid to the DOI Diamond Alkali Account; and 50% to the EPA Diamond Alkali Special Account in accordance with instructions to be provided by the United States." Plan Art I.A. 209. Pursuant to and subject to the terms of the Plan, "the amount of Cash received by the United States with respect to this Claim, and not the total amount of the Allowed Claim, shall be credited as a recovery by the United States with respect to the Diamond Alkali Site, which credit shall reduce the liability of non-debtor potentially responsible parties at the Diamond Alkali Site by the amount of the credit." *Id.*

**PLEASE TAKE FURTHER NOTICE** that Interim Distributions were made to the United States on behalf of its United States Milwaukee Solvay Class 4 Claim in the amount of $464,757.09. Pursuant to and subject to the terms of the Plan, "the amount of Cash received by the United States with respect to this Claim, and not the total amount of the Allowed Claim, shall be credited as a recovery by the United States with respect to the Milwaukee Solvay Site, which credit shall reduce the liability of non-debtor potentially responsible parties at the Milwaukee Solvay Site by the amount of the credit." Plan Art I.A. 211.

**PLEASE TAKE FURTHER NOTICE** that the Interim Distributions are distributing only a portion of property that is ultimately to be distributed, and that the Liquidating Trustee anticipates making one or more additional distributions in accordance with the Plan, after the Liquidating Trustee resolves certain remaining issues, but the timing and amount of such distribution(s) are uncertain at this time.

Dated October 27, 2023
Wilmington, Delaware

FARNAN LLP

By:      */s/ Michael J. Farnan*
Michael J. Farnan (Bar No. 5165)
919 North Market St., 12th Floor
Wilmington, DE 19801
Telephone:      (302) 777-0300
Facsimile:      (302) 777-0301
mfarnan@farnanlaw.com

—and—

WHITE & CASE LLP
J. Christopher Shore (admitted *pro hac vice*)
Thomas MacWright (admitted *pro hac vice*)
Brett L. Bakemeyer (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, NY 10020
Telephone:  (212) 819-8200
Facsimile:  (212) 354-8113
cshore@whitecase.com
tmacwright@whitecase.com
brett.bakemeyer@whitecase.com

*Counsel for Liquidating Trustee of the Maxus Liquidating Trust*