# Exhibit 12 Part 3

## Attachments B-G to Allocation Recommendation Report (ARR0075-ARR0304)

United States' Motion to Enter Consent Decree,
*United States v. Alden Leeds, Inc. et al.*, Civil Action No. 22-7326 (D.N.J.)

**ATTACHMENT B**

**LIST OF ALLOCATION PARTIES & RELATED FACILITIES**

**ARR0075**

**Allocation Parties & Related Facilities**

| Allocation Party | Related OU2 Facility Address | Entities Associated w Property for Which Allocation Party Allegedly has CERCLA Responsibility re Entities' Ownership/Operation of Facility |
|---|---|---|
| **21st Century Fox America, Inc. (21CFA)** | > 100 Lister Ave. Newark, NJ | Chris-Craft Industries, Inc. Baldwin- Montrose Chemical Co. Montrose Chemical Co. |
| **Alden Leeds Inc.** | > 2145 McCarter Highway<br>> 100 Hakensack Ave Newark, NJ<br>> 55 Jacobus Avenue Kearny, NJ | Leeds<br>Terminal<br>Q-Pak |
| **Alliance Chemical Inc.** | > 33 Avenue P Newark, NJ | Pfister<br>Pfister Urban Renewal Corporation |
| **Arkema Inc.** (Legacy Site Services) | > 25 & 67 Main  Street Belleville, NJ | Wallace & Tiernan<br>Elf Atochem North America Inc. |
| **Ashland LLC** | > 221 Foundry St.<br>  Newark, NJ | Ashland Chemical Company |
| **Atlantic Richfield (ARCO)** | > 86 Doremus Ave. Newark, NJ | The Atlantic Refining Company |
| **Atlas Refining, Inc.** | > 142 Lockwood St. Newark, NJ | |
| **Automatic Electro Plating Corp.** | > 185 Foundry Street Complex<br>  Newark, NJ (Bldgs 19, 21, 22) | |
| **BASF Corporation** on its own behalf, and on behalf of its wholly owned subsidiary, BASF Catalysts, LLC | > BASF Catalysts, LLC<br>  One West Central Avenue East<br>  Newark, NJ<br>> BASF Corporation 50 Central Ave.<br>  Kearny, NJ | Hanovia<br>Engelhard Corporation<br>BASF Wyandotte Corporation<br>United Cork |
| **Benjamin Moore & Co** | > 134 Lister Ave. Newark, NJ | |

ARR0076

| Allocation Party | Related OU2 Facility Address | Entities Associated w Property for Which Allocation Party Allegedly has CERCLA Responsibility re Entities' Ownership/Operation of Facility |
|---|---|---|
| **Berol Corporation** | > 41 Dickerson Street Newark, NJ | |
| **Campbell Foundry Company** | > 800 Bergen Street Harrison, NJ | |
| **Canning Gumm LLC** (c/o MacDermid Inc) | > 538 Forest Street Kearny, NJ | Frederick Gumm Chemical Co |
| **CBS Corporation** | > 95 Orange St. Newark, NJ | Westinghouse Electric Corporation |
| **Celanese Ltd./CNA Holdings LLC** (Essex County Improvement Authority - indemnitor of Celanese) | > 290 Ferry St<br>> 226 Rome St<br>> 354 Doremus Ave Newark, NJ | |
| **Chevron Environmental Management Company** | > Getty Newark Terminal 86 Doremus Ave. Newark, NJ | Texaco Inc. TRMI-H LLC |
| **Coats and Clark Inc.** (as successor to Clark Thread Company) | > 260 Ogden St/900 Passaic Ave Newark/East Newark, NJ<br>> 735 Broad Street Bloomfield, NJ | Clark Thread Co. |
| **Congoleum Corporation** | > 195 Belgrove Drive<br>> 113 Passaic Avenue Kearney, NJ | |
| **Conopco, Inc** d/b/a Unilever (as successor to CPC/Bestfoods, former parent of the Penick Corporation) | > 540 New York Avenue Lyndhurst, NJ | Penick Corporation |

| Allocation Party | Related OU2 Facility Address | Entities Associated w Property for Which Allocation Party Allegedly has CERCLA Responsibility re Entities' Ownership/Operation of Facility |
|---|---|---|
| **Cooper Industries LLC** | > 7, 13, & 26 Bank Street<br>> 33 Littleton Avenue<br>  (aka 400 West Market Street)<br>  Newark, NJ<br>> 75 Belmont Avenue Bellevile, NJ | J. Wiss & Sons Co<br><br>Thomas A. Edison, Inc. |
| **Covanta Essex Co.** | > 183 Raymond Blvd<br>> 66 Blanchard St Newark, NJ | American Ref-Fuel |
| **Curtiss-Wright Corporation** | > 1 Passaic St. Woodridge, NJ | |
| **DII Industries, LLC** (c/o Halliburton) | > 401 Worthington Avenue Harrison, NJ | Worthington Corp. & Dresser Industries, Inc. |
| **Drum Service of Newark, Inc.** | > 120 Lister Ave Newark, NJ | Hilton-Davis<br>360 North Pastoria |
| **Elan Chemical Co., Inc.** | > 268 Doremus Ave. Newark, NJ | |
| **EnPro Holdings, Inc.** | > 900-1000 South Fourth St. Harrison, NJ | Crucible Steel Co. Coltec Industries |
| **EPEC Polymers** | > 290 River Drive Garfield, NJ | |
| **Essex Chemical Corporation** | > 330 Doremus Ave.<br>  &<br>> 352 Doremus Ave. Newark, NJ<br>  (contiuous lots) | Essex Industrial Chemicals, Inc. |
| **Everett Smith Group** | > 20 Bruen Street Newark, NJ | Blanchard Bro. & Lane, Inc. |

ARR0078

| Allocation Party | Related OU2 Facility Address | Entities Associated w Property for Which Allocation Party Allegedly has CERCLA Responsibility re Entities' Ownership/Operation of Facility |
|---|---|---|
| **Foundry Street Corporation** | > 185 Foundry Street Complex Newark, NJ (Block 5005, Lot 22 - Bldgs 19, 21, 22) | Automatic Electroplating Morrel Truck Grignard Honig Norpak Avon Berg County Lift Truck Conus Chemical Arkansas Chemical |
| **Franklin-Burlington Plastics** | > 113 Passaic Ave Kearny, NJ | Spartech |
| **Garfield Molding Company, Inc.** | > 10 Midland Avenue Wallington, NJ | |
| **General Electric Company** | > 415 South 5th Street<br>> 1000 South 2nd Street Harrison, NJ | RCA |
| **Givaudan Fragrances Corp** (originally known as Fragrances North America) | > 125 Delawanna Avenue Clifton, NJ | Givaudan Roure |
| **Goodrich Corp.** | > Kalama Chemical 290 River Drive Garfield, NJ | Kalama Chemical, Inc. |
| **Goody Products, Inc. on behalf of itself and Newell Brands Inc. (f/k/a Newell Rubbermaid Inc.)** | > 969 Newark Turnpike Kearny, NJ | |

ARR0079

| Allocation Party | Related OU2 Facility Address | Entities Associated w Property for Which Allocation Party Allegedly has CERCLA Responsibility re Entities' Ownership/Operation of Facility |
|---|---|---|
| **Hartz Consumer Group, Inc.** | > 600/700 South 4th Street   Harrison, NJ | |
| **Hexcel Corporation** | > 205 Main St. Lodi, NJ | |
| **Hoffmann-LaRoche Inc.** | > 340 Kingsland Road Nutley, NJ | |
| **Honeywell International, Inc.** | > 65 Lodi Street/8th Street Passaic, NJ | General Chemical Co. |
| **ISP Chemicals LLC** | > 1 Main St./11 William St. Belleville, NJ | ISP Van Dyk, Inc. International Specialty Products |
| **Harris Corporation,** for itself and as successor in interest to Exelis, Inc. successor in interest to the former defense business ITT Corporation | > 100 Kingsland Drive > 77 River Road Clifton, NJ (contiguous properties) > 500 Washington Avenue > 390 Washington Avenue > 417 River Road > 491/493 River Road > 483 River Road > 492 River Road Nutley, NJ (contiguous properties) | |
| **Kearny Smelting** | > 936 Harrison Ave.   Kearny, NJ | MAC Metals |
| **Leemilt's Petroleum, Inc.** (successor by merger to Power Test of New Jersey, Inc.) | > 86 Doremus Ave. Newark, NJ | |
| **Legacy Vulcan Corporation** (f/k/a Vulcan Materials Company) | > 600 Doremus Ave. Newark, NJ | |

| Allocation Party | Related OU2 Facility Address | Entities Associated w Property for Which Allocation Party Allegedly has CERCLA Responsibility re Entities' Ownership/Operation of Facility |
|---|---|---|
| **Lucent Technologies** (now known as Nokia of America Corporation.) | > Kearny Works 100 Central Avenue Kearney, NJ | AT&T/Western Electric |
| **National Standard LLC** | > 714-716 Clifton Avenue Clifton, NJ | Iron Oxide Corp. |
| **Newark Group, Inc.** | > 17 Blanchard Street Newark, NJ | The Newark Boxboard Co. |
| **Newark Morning Ledger Co.** | > 1 Star Ledger Plaza Newark, NJ | |
| **Neu Holdings** (f/k/a Eden Wood Corporation) | > 1 Ackerman Avenue Clifton, NJ | Whippany Paper Board |
| **Occidental Chemical Corp.** | > 80 & 120 Lister Ave. Newark, NJ | Diamond Shamrock Chemicals Company |
| **The Okonite Company, Inc.** | > Canal and Jefferson Streets Passaic, NJ | |
| **Otis Elevator Co.** | > 1000 First St Harrison, NJ | |
| **Pabst Brewing Company** | > 400 Grove Street Newark, NJ | |
| **Passaic Pioneer Properties Co** | > 35 Eighth Street > 65 Lodi Street/8th Street Passaic, NJ | Eclipse Interstate Dyeing Parra Sun Brite |

**ARR0081**

| Allocation Party | Related OU2 Facility Address | Entities Associated w Property for Which Allocation Party Allegedly has CERCLA Responsibility re Entities' Ownership/Operation of Facility |
|---|---|---|
| **Pharmacia LLC** | > Foot of Pennsylvania Ave. Kearny, NJ | Monsanto Company (now known as Pharmacia LLC) |
| **Pitt-Consol Chemical Company** | > 191 Doremus Ave. Newark, NJ | |
| **PMC, Inc.** | > 450 Schuyler Avenue Kearny, NJ | American Polymers Ampol HD Acquisitions K&M Plastics King Finishing Kleer Kast Plastics Manufacturing |
| **PPG Industries, Inc.** | > 29 Riverside Ave. Newark, NJ | |
| **PSEG (Public Service Enterprise Group)** | > 155 Raymond BlvdNewark, NJ <br><br> > 4th St. Harrison, NJ | |
| **Purdue Pharma Technologies** | > 199 Main St. Lodi, NJ | Napp Technologies |
| **Quality Carriers, Inc.** | > 80 Doremus Avenue Newark, NJ | Chemical Leaman Tank Lines Quala Systems, Inc. |
| **Revere Smelting & Refining Corp / RSR Corp** | > 387 Avenue P Newark, NJ | |
| **Roman Asphalt Corporation** | > 14 Ogden Street Newark,  NJ 07104 | |

**ARR0082**

| Allocation Party | Related OU2 Facility Address | Entities Associated w Property for Which Allocation Party Allegedly has CERCLA Responsibility re Entities' Ownership/Operation of Facility |
|---|---|---|
| **Royce Associates** | > 17 Carlton Avenue East Rutherford, NJ | Royce Chemical Company |
| **Safety Kleen Envirosystems Company/McKesson Corp.** | > 600 Doremus Ave. Newark, NJ | McKesson Envirosystems Company/McKesson Corp. Inland Chemical Corporation |
| **Schiffenhaus Packaging Corp.** (c/o Rock-Tenn Company) | > 204 Academy Street > 49 Fourth Street > 2013 McCarter Highway Newark, NJ | Southern Consolidated |
| **Sequa Corporation** | > 185 Foundry Street Newark, NJ | |
| **Seton Company, Inc.** (now Seton Tanning) | > 349 Oraton Street > 849 Broadway > 62 Verona Ave Newark, NJ 07104 | Radel Seton Leather Company |
| **Sherwin Williams Company** | > 60 Lister Ave. Newark, NJ | |
| **Spectraserv, Inc.** | > 75 Jacobus Ave Kearny, NJ | Modern Transportation |
| **Stanley Black & Decker, Inc.** (formerly known as The Stanley Works) | > 140 Chapel St. Newark, NJ | Stanley Tools Atha Tool Company |
| **STWB Inc.** (c/o Bayer Corporation) | > 192-194 Bloomfield Avenue Bloomfield, NJ 07003 > 120 Lister Ave. Newark, NJ | Lehn & Fink Products Corp. Thomasett Colors/Sterling Hilton-Davis Chemical Company |

ARR0083

| Allocation Party | Related OU2 Facility Address | Entities Associated w Property for Which Allocation Party Allegedly has CERCLA Responsibility re Entities' Ownership/Operation of Facility |
|---|---|---|
| **Sun Chemical** | > 185 Foundry Street Newark, NJ | |
| **Tate & Lyle Ingredients Americas LLC** (A.E. Staley Maufacturing Company & its former division Staley Chemical Company) | > 320 Schuyler Avenue & <br><br> > 100 Third Avenue Kearny, NJ | |
| **Teval Corporation** | > 900-1000 South 4th Street Harrison, NJ | Guyon<br>Pipe<br>Crucible<br>Steel Van<br>Leeuwen<br>Smith International |
| **Textron Inc.** | > Spencer Kellogg Division 400 Doremus Avenue Newark, NJ <br><br> > 681 Main Street Belleville, NJ | |
| **Tiffany and Company** | > 820 Highland Avenue Newark, NJ | |

ARR0084

**ATTACHMENT C**

**FACILITY LOCATION AND PVSC SEWER SYSTEM MAPS**

**ARR0085**

**ALLOCATION PARTY FACILITY LOCATIONS**

ARR0086



# Allocation Facilities

*Lower Passic River*

Allocation Facilities

PVSC Service Area

ALTERECHO
plan · act · grow

0 1.25 2.5 5 Miles

N

ARR0087



Leemilt's Petroleum, Inc.
(formerly Chevron Env. MGMT. Co.,
formerly Atlantic Richfield ARCO)

Quality Carriers, Inc./
Quala Systems

Automatic Electro
Plating Corp.

Sequa Corp.

Sun Chemical Co.

Foundry Street
Corporation

Ashland Inc.

Pitt Consol
Chemical Co.

Lucent Technologies

Elan Chemical
Co., Inc.

Alliance
Chemical Co.

Revere Smelting &
Refining Corp.
of Delaware

Essex Chemical
Corporation
330 and 352
Doremus Ave.

BASF Corporation
50 Central Ave.

Celanese Ltd./
CNA Holdings LLC.,
354 Doremus Ave.

Celanese Ltd./
CNA Holdings LLC
354 Doremus Ave.

KEARNY

NEWARK

JERSEY CITY

Safety Kleen Envirosystems Co./
McKesson Corp.
(formerly Legacy Vulcan Corp.)

**Foundry Street Complex**
1. Ashland Inc.
2. Automatic Electroplating Corporation
3. Foundry Street Corp.
4. Sequa Corporation
5. Sun Chemical Corporation

# Allocation Facilities & Historic Fill

*River Mile 1 of the Lower Passaic River*

ALTERECHO
plan · act · grow

0   250   500        1,000 Feet

N

Legend:
- Allocation Facility Location
- Allocation Facility Property Boundary
- Historic Fill
- Municipality
- Contour Elevations (ft above sea level)
- # River Mile

**NOTE:**
When only a point symbol is present for an Allocation Facility, no Polygon facility property boundary could be attained.

Newark

Area Enlarged

**ARR0088**



Allocation Facilities
& Historic Fill

*River Miles 2-4 of the Lower Passaic River*

Kearny Smelting & Refining

Goody Products Inc.

Dll Industries, LLC

Occidental Chemical Corp. (80 and 120 Lister Ave.)

Drum Services of Newark Inc. Formerly STWB Inc. (120 Lister Ave.)

Benjamin Moore & Co.

Pharmacia LLC

Campbell Foundry Company

KEARNY

HARRISON

Covanta Essex Co. 66 Blanchard St. & 183 Raymond Blvd.

Sherwin Williams Co.

PSE&G 155 Raymond Blvd.

EnPro Holdings, Inc.

NEWARK

Stanley Black & Decker, Inc.

Spectraserv Inc.

Alden Leeds Inc. 55 Jacobus Ave.

21st Century Fox America, Inc. (21CFA)

Newark Group, Inc.

Atlas Refining Inc.

**Legend:**

- Allocation Facility Location
- Municipality
- Allocation Facility Property Boundary
- Contour Elevations (ft above sea level)
- Historic Fill
- River Mile

**NOTE:**
When only a point symbol is present for an Allocation Facility, no Polygon facility property boundary could be attained.

0   500   1,000   2,000
Feet

N

ALTER ECHO
plan · act · grow

Area Enlarged

Newark

ARR0089



**Allocation Facilities & Historic Fill**

*River Miles 4-6 of the Lower Passaic River*

Facility labels:
- Schiffenhaus Packaging Corp. 49 4th St.
- Coats & Clark, Inc. 260 Ogden St.
- BASF Catalyst 1 West Central Ave.
- Coats & Clark, Inc. 900 Passaic Ave. (multiple boundaries)
- EAST NEWARK
- Berol Corporation
- CBS Corporation
- DII Industries, LLC
- General Electric Co. 415 South 5th St.
- Campbell Foundry Co.
- Otis Elevator Co.
- HARRISON
- NEWARK
- General Electric Co. 1000 South 2nd St.
- Hartz Consumer Group, Inc.
- Teval/Guyon
- EnPro Holdings, Inc.
- Schiffenhaus Packaging Corp. 204 Academy St.
- Cooper Industries LLC 7, 13, 26 Bank St.
- Newark Morning Ledger Co.
- Everett Smith Group
- PSE&G Corp. 4th St.

INSET
- Cooper Industries LLC 33 Littleton Ave.
- NEWARK
- Pabst Brewing Company

**Legend:**
- Allocation Facility Location
- Municipality
- Allocation Facility Property Boundary
- Contour Elevations (ft above sea level)
- Historic Fill
- # River Mile

**NOTE:**
When only a point symbol is present for an Allocation Facility, no Polygon facility property boundary could be attained.

0  500  1,000  2,000 Feet

ALTERECHO
plan · act · grow

ARR0090



Cooper Industries LLC
75 Belmont Ave.

Schiffenhaus Packaging Corp.
2013 McCarter Hwy.

Seton Company, Inc.
349 Oraton St.

Canning Gumm LLC

PPG Industries Inc.

PMC, Inc.

Roman Asphalt Corporation

Tate & Lyle Ingredients
Americas LLC
320 Schuyler Ave.

Congoleum Corp.
195 Belgrove Ave.
& 113 Passaic Ave.)

Tate & Lyle Ingredients
Americas LLC
100 3rd Ave.

Franklin Burlington Plastics Inc.
(Previously Congoleum Corp.)
113 Passaic Ave.

Coats & Clark, Inc.
900 Passaic Ave.

Coats & Clark, Inc.
260 Ogden St.

BASF Catalyst 1 West Central Ave.

BLOOMFIELD
BELLEVILLE
NEWARK
KEARNY
EAST NEWARK
HARRISON

## Allocation Facilities & Historic Fill

*River Miles 6-8 of the Lower Passaic River*

0   500   1,000   2,000
Feet
N

ALTERECHO
plan · act · grow

- Allocation Facility Location
- Allocation Facility Property Boundary
- Historic Fill

- Municipality
- Contour Elevations (ft above sea level)
- # River Mile

**NOTE:**
When only a point symbol is present for an Allocation Facility, no Polygon facility property boundary could be attained.

ARR0091



Allocation Facilities
& Historic Fill

*River Miles 8-10 of the Lower Passaic River*

Textron Inc.
681 Main St.

ISP Chemicals LLC
11 William St.

Arkema Inc. 25 Main St.

Arkema Inc. 67 Main St.

ISP Chemicals LLC
1 Main St.

Tiffany and Company

STWB Inc.
192, 194 Bloomfield Ave.

Cooper Industries LLC
75 Belmont Ave.

Seton Company, Inc.
62 Verona Ave.

Seton Company, Inc.
849 Broadway

Alden Leeds Inc.
2145 McCarter Hwy.

Schiffenhaus Packaging Corp.
2013 McCarter Hwy.

Seton Company, Inc.
349 Oraton St.

Canning Gumm LLC

GLEN RIDGE
BELLEVILLE
BLOOMFIELD
NORTH ARLINGTON
LYNDHURST
NEWARK
EAST ORANGE
KEARNY

Legend:
- Allocation Facility Location
- Allocation Facility Property Boundary
- Historic Fill
- Municipality
- Contour Elevations (ft above sea level)
- # River Mile

**NOTE:**
When only a point symbol is present for an Allocation Facility, no Polygon facility property boundary could be attained.

0   750   1,500   3,000
Feet

ALTERECHO
plan · act · grow

N

ARR0092



Hoffman-La Roche Inc.

Givaudan Fragrances Corp.

CLIFTON

Harris Corporation

12

RUTHERFORD

NUTLEY

11

LYNDHURST

Conopco, Inc.

**Allocation Facilities
& Historic Fill**

*River Miles 11-12 of the Lower Passaic River*

ALTERECHO
plan · act · grow

Allocation Facility Property Boundary

Historic Fill

# River Mile

Municipality

Contour Elevations (ft above sea level)

0   500   1,000        2,000
Feet

N

Area Enlarged

Clifton       Passaic

Montclair

Bloomfield

**ARR0093**



The Okonite Company

16   GARFIELD   SOUTH HACKENSACK   LODI

Garfield Molding Company, Inc.

Honeywell International, Inc.
65 Lodi St.

PASSAIC

Curtiss-Wright Corporation

HASBROUCK HEIGHTS

Passaic Pioneer Properties Co.

15

WALLINGTON

WOOD-RIDGE

14

EAST RUTHERFORD

CARLSTADT

RUTHERFORD   Royce Associates

## Allocation Facilities & Historic Fill

*River Miles 13-16 of the Lower Passaic River*

0   500   1,000   2,000
Feet

N

**ALTERECHO**
plan · act · grow

● Allocation Facility Location

▢ Allocation Facility Property Boundary

▢ Historic Fill

▢ Municipality

Contour Elevations (ft above sea level)

\# River Mile

**NOTE:**
When only a point symbol is present for an Allocation Facility, no Polygon facility property boundary could be attained.

Passaic
*Area Enlarged*

Clifton

**ARR0094**



# Allocation Facilities & Historic Fill

*River Miles 16-17 of the Lower Passaic River*

ALTERECHO
plan · act · grow

0 500 1,000 2,000
Feet

N

Allocation Facility Property Boundary

Historic Fill

# River Mile

Municipality

Contour Elevations
(ft above sea level)

ARR0095

**PVSC SEWER COLLECTION FIELDS**

**ARR0096**



CITY DOCK

HARRISON

Freeman Street

Jackson Street

Polk Street

NEWARK

Everett Smith Group

JACKSON STREET

FREEMAN STREET

Celanese Ltd./
CAN Holdings LLC
290 Ferry St.

Celanese Ltd./CAN Holdings LLC
226 Rome St.

POLK STREET

**Jackson Street:** (City of Newark; 83 Acres)
**Facilities within Collection Area:**
1.  Everett Smith Group (1937-1939).
Depending on the exact Facility boundary, it
is possible that part of the Facility could lie
within Jackson Street CSO Collection Area.

**Polk Street:** (City of Newark; 199 Acres)
**Facilities within Collection Area:**
1. Celanese Ltd./CAN Holdings LLC - 290 Ferry St. (1890-1973).
Underlined Facilities above indicate operation
before (or partially before) PVSC Installation.

**Freeman Street:** (City of Newark; 149 Acres)
**Facilities within Collection Area:**
1. None that we currently know of

## CSO Collection Areas
*Jackson St., Polk St., and Freeman St.
at River Mile 4*

ALTERECHO
plan · act · grow

0    500    1,000
Feet

N

| Legend | |
|---|---|
| CSO (Combined Sewer Overflow) | Regulator |
| CSO Collection Area | PVSC Trunk Line |
| Allocation Facility Location | Sanitary Sewer |
| Allocation Facility Property Boundary | Combined Sewer |
| Municipality | Stormwater Sewer |
| | River Mile |
| | Bypass |

ARR0097



Schiffenhaus Packaging Corp.
204 Academy St.

SAYBROOK PLACE

HARRISON

City Dock

Cooper Industries LLC
7, 13, 26 Bank St.

Jackson Street

Newark Morning Ledger Co.

CITY DOCK

Everett Smith Group

JACKSON STREET

NEWARK

POLK STREET

**City Dock:** (City of Newark; 380 Acres)
**Facilities within Collection Area:**
1. Cooper Industries - 7, 13, and 26 Bank St. (1848-1887)
2. Newark Morning Ledger Co. (1966-1992)
3. Everett Smith Group (1937-1939)
4. Schiffenhaus Packaging Corp. - 204 Academy St. (1895-1908)
Underlined Facilities above indicate operation
before PVSC Installation.

# CSO Collection Area
*City Dock at River Mile 5*

ALTERECHO
plan · act · grow

0   500   1,000
Feet

N

**CSO (Combined Sewer Overflow)**
**CSO Collection Area**
● **Allocation Facility Location**
**Allocation Facility Property Boundary**
**Municipality**

◆ **Regulator**
**Bypass**
**PVSC Trunk Line**
**Sanitary Sewer**
**Combined Sewer**
**Stormwater Sewer**
# **River Mile**

**NOTE:**
When only a point symbol is present
for an Allocation Facility, no Polygon
facility property boundary could be attained.

Newark Area

ARR0098



CLAY STREET

Cleveland Avenue
Harrison Avenue
Dey Street
Bergen Street
Saybrook Place
Middlesex Street
5

SAYBROOK PLACE

Schiffenhaus Packaging Corp.
204 Academy St.

CITY DOCK

City Dock

**Saybrook Place:**
(City of Newark; 306 Acres)
**Facilities within Collection Area:**
1. Schiffenhaus Packaging Corp. (1985-1908).
Underlined Facilities above indicate operation
before PVSC Installation.

## CSO Collection Area
*Saybrook Place at River Mile 5*

ALTERECHO
plan · act · grow

0    500   1,000
Feet

N

CSO (Combined Sewer Overflow)
CSO Collection Area
Allocation Facility Location
Allocation Facility Property Boundary
Municipality
River Mile

Regulator
Bypass
PVSC Trunk Line
Sanitary Sewer
Combined Sewer
Stormwater Sewer

**NOTE:**
When only a point symbol is present for
an Allocation Facility, no Polygon facility
property boundary could be attained.

East Orange    Kearny
Area
Enlarged
Newark

ARR0099



Coats & Clark, Inc. 900 Passaic Ave.

JOHNSTON AVENUE

EAST NEWARK

CENTRAL AVENUE

Central Avenue

Dukes Street

BASF Catalyst
1 West Central Ave.

Clay Street

CLAY STREET

HARRISON AVENUE

HARRISON

Kearny Smelting & Refining

KEARNY

Hamilton Avenue

WORTHINGTON AVENUE

Cleveland Avenue   CLEVELAND AVENUE

DII Industries, LLC

NEWARK

Harrison Avenue

Campbell Foundry Company

Dey Street

DEY ST.

BERGEN STREET

General Electric Company
415 South 5th St.

Bergen Street

Hartz Consumer
Group, Inc.

Saybrook Place

MIDDLESEX AVENUE

Middlesex Street

Otis Elevator Co.

Teval/Guyon
Formerly EnPro Holdings, Inc.

Worthington Avenue

SAYBROOK PLACE

PSE&G Corp
4th St.

General Electric Co.
1000 South 2nd St.

**Central Avenue:** (City of East Newark; 26 Acres)
**Facilities within Collection Area:**
1. Coats and Clark, Inc. - 900 Passaic Ave. (1880-1931)
Underlined Facilities above indicate operation
before (or partially before) PVSC Installation.

**Worthington Avenue:** (City of Harrison; 177 Acres)
**Facilities within Collection Area:**
1. Kearny Smelting and Refining (1944-Present)
2. DII Industries, LLC (1985-1993)
3. Cambell Foundry Complex (1927-Present)

**Bergen Street:** (City of Harrison; 72 Acres)
**Facilities within Collection Area:**
1. General Electric Co. - 415 S. 5th St. (1882-1976)
Underlined Facilities above indicate operation
before (or partially before) PVSC Installation.

**Middlesex Avenue:** (City of Harrison; 62 Acres)
**Facilities within Collection Area:**
1. Otis Elevator Co. (1910-1980)
2. Hartz Consumer Group, Inc. (1971-1996)
Underlined Facilities above indicate operation
before (or partially before) PVSC Installation.

## CSO Collection Areas
*Central Ave., Worthington Ave.,
Bergen St., Middlesex Ave.
at River Miles 5-6*

| Legend | |
|---|---|
| CSO (Combined Sewer Overflow) | Regulator |
| CSO Collection Area | PVSC Trunk Line |
| Allocation Facility Location | Sanitary Sewer |
| Allocation Facility Property Boundary | Combined Sewer |
| Municipality | Stormwater Sewer |
| | Bypass |
| | River Mile |
| | Waterway |

0    500    1,000
Feet

N

ALTERECHO
plan · act · grow

Area Enlarged

ARR0100



**Clay Street:** (City of Newark; 1,621 Acres)
**Facilities within Collection Area:**
1. Berol Corporation (1919-1996)
2. CBS Corporation (1889-1984)
3. Cooper Industries LLC - 33 Littleton Ave. (1976-1985)
4. Schiffenhaus Packaging Corp. - 49 4th St. (1909-1924)
Underlined Facilities above indicate operation
before (or partially before) PVSC Installation.

**Fourth Avenue:** (City of Newark; 225 Acres)
**Facilities within Collection Area:**
1. Roman Asphalt Corporation (1964-2006)

**NOTE:**
When only a point symbol is present
for an Allocation Facility, no Polygon
facility property boundary could be attained.

BELLEVILLE

HERBERT PLACE

EAST ORANGE

Roman Asphalt Corp.

Nairne Avenue

FOURTH AVENUE

KEARNY

Fourth Avenue

Johnston Ave.

CLAY STREET

6

Clay Street    Central Ave.

EAST NEWARK

Schiffenhaus Packaging Corp. 49 4th St.

Berol Corporation

CBS Corporation

Hamilton Avenue

Cleveland Ave.
Harrison Ave.

Cooper Industries LLC 33 Littleton Ave.

Dey Street

HARRISON

NEWARK

Bergen Street

Saybrook Place

SAYBROOK PLACE

## CSO Collection Areas
*Clay St. & Fourth Ave.
at River Mile 6*

ALTER ECHO
plan · act · grow

0   500  1,000       2,000
Feet

N

| Symbol | Legend | Symbol | Legend |
|---|---|---|---|
| | CSO (Combined Sewer Overflow) | | Regulator |
| | CSO Collection Area | | Bypass |
| | Allocation Facility Location | | PVSC Trunk Line |
| | Allocation Facility Property Boundary | | Sanitary Sewer |
| | Municipality | | Combined Sewer |
| | River Mile | | Stormwater Sewer |
| | | | Waterway |

Area Enlarged

Kearny

East Orange

Newark

ARR0101



CSO Collection Areas
*Johnston Avenue*
*at River Miles 6-7*

**Legend:**

CSO (Combined Sewer Overflow)
CSO Collection Area
Allocation Facility Location
Allocation Facility Property Boundary
Municipality

Regulator
Bypass
PVSC Trunk Line
Sanitary Sewer
Combined Sewer
Stormwater Sewer
River Mile

0   250   500 Feet

ALTERECHO
plan · act · grow

ARR0102



**Herbert Place:** (City of Newark; 298 Acres)
**Facilities within Collection Area:**
1. None that we currently know of.

VERONA AVENUE

CLAY STREET

HERBERT PLACE

FOURTH AVENUE

Seton Company, Inc.849 Broadway

Seton Company, Inc. 349 Oraton St.

Seton Company, Inc 62 Verona Ave.

Schiffenhaus Packaging Corp. (2013 McCarter Hwy)

DELAVAN AVENUE

NEWARK

KEARNY

Delavan Avenue

NAIRNE AVENUE

7
Herbert Place

PPG Industries Inc.

FOURTH AVENUE

Roman Asphalt Corporation

**Delavan Avenue:** (City of Newark; 88 Acres)
**Facilities within Collection Area:**
1. Seton Company, Inc.
   349 Oraton St. (1906-2006)
Underlined Facilities above indicate operation before (or partially before) PVSC Installation.

**NOTE:**
When only a point symbol is present for an Allocation Facility, no Polygon facility property boundary could be attained.

## CSO Collection Areas
*Herbert Place and Delavan Avenue at River Mile 7*

ALTERECHO
plan · act · grow

0   250   500 Feet

N

| Legend | |
|---|---|
| CSO (Combined Sewer Overflow) | Regulator |
| CSO Collection Area | Bypass |
| Allocation Facility Location | PVSC Trunk Line |
| Allocation Facility Property Boundary | Sanitary Sewer |
| Municipality | Combined Sewer |
| River Mile | Stormwater Sewer |

Area Enlarged

Newark

ARR0103



**NORTH ARLINGTON**

**BELLEVILLE**

**Ivy Street:** (City of Newark; 607 Acres)
**Facilities within Collection Area:**
1. Canning Gymm LLC (1933-2002)
2. Tate and Lyle Ingredients - 100 3rd Ave. (1968-1978)
3. Tate and Lyle Ingedients - 320 Schuyler Ave. (1968-1976)
4. PMC, Inc. (1971-2007)

**Nairne Avenue:**
(City of Newark; 176 Acres)
**Facilities within Collection Area:**
1. Congoleum Corporation (1886-1974)

Union Outlet

**VERONA AVENUE**

Stewart Avenue

Verona Avenue

**8**

**KEARNY**

Canning Gumm LLC

**IVY STREET**

**NEWARK**

Delavan Avenue

**NAIRNE AVENUE**

Herbert Place

**7**

PMC, Inc.

Congoleum Corp.

Tate & Lyle Ingredients Americas LLC 100 3rd Ave.

Tate & Lyle Ingredients Americas LLC 320 Schuyler Ave.

Nairne Avenue

Ivy Street

**JOHNSTON AVENUE**

HERBERT PLACE

DELAVAN AVENUE

**CSO Collection Areas**
*Ivy St. & Nairne Ave. at River Miles 7-8*

ALTER ECHO
plan · act · grow

0    500    1,000 Feet

N

| Legend | |
|---|---|
| CSO (Combined Sewer Overflow) | Regulator |
| CSO Collection Area | Bypass |
| Allocation Facility Location | PVSC Trunk Line |
| Allocation Facility Property Boundary | Sanitary Sewer |
| Municipality | Combined Sewer |
| River Mile | Stormwater Sewer |
| | Waterway |

Area Enlarged

Kearny

**ARR0104**



**Verona Avenue:** (City of Newark; 367 Acres)
**Facilities within Collection Area:**
1. Tiffany and Company (1897-1986)
2. Seton Company, Inc. - 62 Verona Ave. (1906-2006)
3. Seton Company, Inc. - 849 Broadway (1906-2006)
Underlined Facilities above indicate operation before (or partially before) PVSC Installation.

## CSO Collection Area
*Verona Avenue & Union Outlet at River Mile 8*

**NOTE:**
When only a point symbol is present for an Allocation Facility, no Polygon facility property boundary could be attained.

Legend:
- CSO (Combined Sewer Overflow)
- CSO Collection Area
- Allocation Facility Location
- Allocation Facility Property Boundary
- Municipality
- River Mile
- Regulator
- Bypass
- PVSC Trunk Line
- Sanitary Sewer
- Combined Sewer
- Stormwater Sewer
- Union River Outlet

0   500   1,000 Feet

ALTERECHO
plan·act·grow

ARR0105

**PVSC SEWER SYSTEM**

ARR0106



Sewer System Overview
*Lower Passic River*

**Bypass**
**CSO (Combined Sewer Overflow)**
PVSC Trunk Line and Branch Intercepting Sewer
CSO Collection
PVSC POTW (Newark Bay)

ALTERECHO
plan · act · grow

0    1.25    2.5         5 Miles

N

ARR0107



**Facilities within City of Newark:**
1. 21st Century Fox America, Inc. (1939-1972)
2. Alliance Chemical, Inc. (1945-2001)
3. Ashland, Inc. (1968-1992)
4. Atlantic Richfield ARC) (1930-1951)
5. Atlas Refining Inc. (1897-Present)
6. Automatic Electro Plating Corp. (1970-2005)
7. Celanese Ltd./CAN Holdings LLC 354 Doremus Ave. (1954-1996)
8. Chevron Env Management Co. (1951-1984)
9. Covanta Essex Co. - (1990-Present)
10. Elan Chemical Co., Inc. (1977-Present)
11. Essex Chemical Co. (1955-1989)
12. Foundry Street Corp. (1970-2001)
13. Leemilt's Petroleum, Inc. (1985-1997)
14. Legacy Vulcan Corp. (1952-1975)
15. Newark Group, Inc. (1912-2003)
16. Pitt Consol Chemical Co. (1955-1983)
17. PSE&G Essex - 155 Raymond Blvd. (1915-Present)
18. Quality Carriers, Inc./Quala Systems (1970-2007)
19. Revere Smelting & Refining Corp. (1970-1972)
20. Safety Kleen Envirosystems Co./ McKesson Corp. (1975-1982)
21. Sequa Corp. (1967-1986)
22. Sun Chemical Corp. (1986-2003)
Underlined Facilites above indicate operation before (or partially before) PVSC installation.

**NOTEa:**
1. Roanoke Avenue CSO is owned and operated by the City of Newark (constructed in 1983).
2. Kearny Point Facilities are features in a separate figure.

Covanta Essex Company
66 Blanchard St. &
183 Raymond Blvd.

PSE&G Essex
155 Raymond Blvd.

Automatiic Electro
Plating Corp.

Quality Carriers, Inc./
Quala Systems

Newark
Group, Inc.

Sequa
Corp.

Sun Chemical
Corp.

Foundry Street
Corporation

Leemilt's Petroleum, Inc.
(formerly Chevron Env.
MGMT. Co., formerly
Atlantic Richfield ARCO)

Roanoke Avenue

Ashland Inc.

Pitt Consol
Chemical Co.

Elan Chemical Co., Inc.

Alliance
Chemical Inc.

Ashland Inc.

**NEWARK**

**KEARNY**

Revere Semlting
and Refining Corp.
of Delaware

Essex Chemical Corporation
330 and 352 Doremus Ave.

Fisk Street

Celanese Ltd./
CNA Holdings LLC
354 Doremus Ave.

**JERSEY CITY**

Safety Kleen Envirosystems Co.
/McKesson Corp.
Formerly Legacy Vulcan Corp.

**Foundry
Street
Complex**
1. Ashland Inc.
2. Automatic Electroplating Corporation
3. Foundry Street Corp.
4. Sequa Corporation
5. Sun Chemical Corporation

DSN002

**NOTE:**
When only a point symbol is present for an Allocation Facility, no Polygon facility property boundary could be attained.

## Sewer Network

*River Miles 1-2, Lower Passaic River*

**ALTER ECHO**
plan • act • grow

0   500   1,000 Feet

N

| Legend | |
|---|---|
| CSO (Combined Sewer Overflow) | Regulator |
| Newark Bay Bypass | POTW |
| Allocation Facility Location | POTW Oufall |
| Allocation Facility Property Boundary | PVSC Trunk Line |
| Municipality | Sanitary Sewer |
| River Mile | Combined Sewer |
| | Stormwater Sewer |

Newark

Area Enlarged

**ARR0108**



**Facilities within Town of Kearny (Kearny Point):**
1. Aldeen Leeds Inc. - 100 Hackensack Ave. (1993-2005)
2. Aldeen Leeds Inc. - 55 Jacobus Ave. (1993-2005)
3. BASF Corp - 50 Central Ave. (1936-1990)
4. Goody Products, Inc. (1968-1994)
5. Nokia-Lucent Technologies (1925-1984)
6. Pharmacia LLC (1955-1991)
7. SpectraServ, Inc. (1962-Present)

**NOTE:** The Town of Kearny operated the Meadows Sewage Pumping Station (1924-1955), which became the South Kearny Sewage Treatment Plant (1955-1990), all of which discharged into the Hackensack River. In 1990, a Pumping Station and Pipe was installed that discharged directly to the PVSC POTW across Newark Bay.

SECAUCUS

Goody Products Inc.

Pharmacia LLC

**KEARNY**

Spectraserv Inc.

Alden Leeds Inc. 100 Hakensack Ave.

Alden Leeds Inc. 55 Jacobus Ave.

Duncan Avenue

**NEWARK**

Passaic River

Hackensack River

Clendenny Avenue

Roanoke Avenue

Lucent Technologies

**JERSEY CITY**

Claremont Avenue

Fisk Street

BASF Corporation 50 Central Ave.

Newark Bay

**NOTE:**
When only a point symbol is present for an Allocation Facility, no Polygon facility property boundary could be attained.

## Sewer Network
*Kearny Point at River Miles 1-2*

ALTER ECHO
plan · act · grow

0   500   1,000 Feet

N

| Symbol | Description | Symbol | Description |
|---|---|---|---|
| | CSO (Combined Sewer Overflow) | | Regulator |
| | Bypass | | POTW |
| | Allocation Facility Location | | POTW Bypass |
| | Allocation Facility Property Boundary | | PVSC Trunk Line |
| | Municipality | | Sanitary Sewer |
| # | River Mile | | Combined Sewer |
| | | | Stormwater Sewer |

Newark

Area Enlarged

**ARR0109**



**Facilities within City of Newark:**
1. 21st Century Fox America, Inc.(1939-1972)
2. Atlas Refining, Inc. (1897-Present)
3. Benjamin Moore and Co. (1925-Present)
4. Covanta Essex Company (1990-Present)
5. Drum Services of Newark Inc. (1997-2004)
6. Newark Group, Inc. (1912-2003)
7. Occidental Chemical Corp. (1946-1986)
8. PSE&G Corp. (1915-Present)
9. Sherwin Williams Co. (1901-1999)
10. Stanley Black and Decker, Inc. (1875-1985)
11. STWB Inc. - 120 Lister Ave. (1957-1986)
Underlined Facilities above indicate operation before (or partially before) PVSC Installation.

Ivy Street

Dukes Street

WORTHINGTON AVENUE

Occidental Chemical Corp. (80 and 120 Lister Ave.)

21st Century Fox America, Inc.

PSE&G Essex 155 Raymond Blvd.

3

Drum Services of Newark Inc. Formerly STWB Inc. (120 Lister Ave.)

Brown Street Interceptor (1924)

Benjamin Moore & Co.

Worthington Avenue

Sherwin Williams Co.

Stanley Black & Decker, Inc.

Atlas Refining Inc.

4

Freeman Street

Newark Group, Inc.

Covanta Essex Co. 66 Blanchard St. & 183 Raymond Blvd.

FREEMAN STREET

## Sewer Network

*River Miles 2-4, Lower Passaic River*

ALTER ECHO
plan · act · grow

0    500    1,000 Feet

N

| | |
|---|---|
| CSO Collection Area | Regulator |
| CSO (Combined Sewer Overflow) | Bypass |
| Allocation Facility Property Boundary | PVSC Trunk Line |
| Municipality | Sanitary Sewer |
| | Combined Sewer |
| River Mile | Stormwater Sewer |
| | Stream/River |

Orange

Area Enlarged

Newark

ARR0110



BERGEN STREET

Bergen Street

Saybrook Place

MIDDLESEX AVENUE

Hartz Consumer Group, Inc.

Middlesex Street

Otis Elevator Co.

SAYBROOK PLACE

General Electric Co. 1000 South 2nd St.

Teval/Guyon Formerly EnPro Holdings, Inc.

EnPro Holdings, Inc.

HARRISON

NEWARK

PSE&G Harrison 4th St.

City Dock

CITY DOCK

Freeman Street

Jackson Street

Polk Street

JACKSON STREET

FREEEMAN STREET

**Sewer Network**

*Harrison, NJ side of Passaic River at River Miles 4-5*

CSO (Combined Sewer Overflow)

CSO Collection Area

Allocation Facility Location

Allocation Facility Property Boundary

Municipality

Bypass

PVSC Trunk Line

Sanitary Sewer

Combined Sewer

Stormwater Sewer

Waterway

River Mile

**Harrison, NJ side of Passaic River at River Mile 4-5:**
1. EnPro Holdings, Inc. (1900-1947)
2. Hartz Consumer Group, Inc. (1971-1996)
3. Otis Elevator Co. (1910-1980)
4. PSE&G Harrison - 4th Street (1902-Present)
5. Teval/Guyon (1947-1992)
Underlined Facilities above indicate operation before (or partially before) PVSC Installation.

ALTER ECHO
plan · act · grow

0   250   500
Feet

N

Area Enlarged

ARR0111



**Facilities located between River Miles 8-17:**
(Cities of Belleville, Bloomfield, Clifton, East Rutherford, Garfield, Lodi, Lyndhurst, Newark, Nutely, Passaic, Wallington, Wood-Ridge)
1. Alden Leeds, Inc. (1964-1971)
2. Arkema Inc. - 25 Main St. (1921-1969)
3. Arkema Inc. - 67 Main St. (1964-1989)
4. Coopeer Industries LLC - 75 Belmont Ave. (1895-1987)
5. Coats & Clark, Inc. - 735 Broad St. (1922-late1940s)
6. Conopco, Inc. (1941-1986)
7. Curtiss-Wright Corp. (1942-1983)
8. EPEC Polymers (1900-1982)
9. Garfield Molding Co., Inc. (1917-2014)
10. Goodrich Corp. (1982-1994)
11. Harris Corp. (1946-Present)
12. Hexcel Corp. (1973-1986)
13. Hoffman-LaRoche, Inc. (1930-2015)
14. Honeywell International, Inc. (1899-1987)
15. ISP Chemicals LLC (1992-2001)
16. National Standard LLC (1938-1987)
17. Neu Holdings (Eden Wood Corp.) (1933-1987)
18. Okonite Company (1885-1989)
19. Passaic Pioneer Properties Co. (1936-1966)
20. Purdue Pharma Technologies, Inc. (1971-1995)
21. STWB, Inc. - 192 &194 Bloomfield Ave. (1925-1965)
22. Seton Company, Inc. (1906-2006)
23. Textron, Inc. (1956-1962)
24. Tiffany and Company (1897-1986)
Underlined Facilities above indicate operation before (or partially before) PVSC Installation.

Labels on map:
- Purdue Pharma Technologies Inc.
- Hexcel Corp.
- Neu Holdings (Eden Wood Corporation)
- Goodrich Corp. Formerly EPEC Polymers
- National Standard LLC
- The Okonite Company
- Curtiss-Wright Corporation
- Honeywell International, Inc.
- Garfield Molding Company, Inc.
- Passaic Pioneer Properties Co.
- Royce Associates
- Givaudan Fragrances Corp.
- Hoffman-La Roche Inc.
- ITT/Harris Corporation
- Yantacaw St. Bypass
- Coats & Clark, Inc. 735 Broad St.
- Conopco, Inc.
- STWB Inc. 192, 194 Bloomfield Ave.
- ISP Chemicals LLC 11 William St.
- ISP Chemicals LLC 1 Main St.
- Textron Inc. 681 Main St.
- Cooper Industries LLC 75 Belmont Ave.
- Arkema Inc. 67 Main St.
- Tiffany and Co.
- Arkema Inc. 25 Main St.
- Union Outlet
- Seton Company
- Alden Leeds, Inc. 2145 MaCarter Highway

## Sewer Network
*North of Dam (River Miles 8-17)*

ALTERECHO
plan · act · grow

0   2,000   4,000 Feet

Legend:
- CSO Collection Area
- Allocation Facility Location
- Municipality
- # River Mile
- Regulator
- Bypass
- PVSC Trunk Line
- Sanitary Sewer
- Combined Sewer
- Stormwater Sewer

Area Enlarged

ARR0112

**ATTACHMENT D**

**CONTAMINANTS OF CONCERN FROM THE ROD**

**ARR0113**

For Public Disclosure by Consent of the Participating Allocation Parties and EPA (Fall 2022)

# ATTACHMENT D

## Contaminants of Concern

The following is the description of the COCs from the ROD for the Diamond Alkali Superfund Site.

*EPA has identified many hazardous substances in the lower 8.3-mile sediments. The following eight COCs[1] pose the greatest potential risks to human health and the environment in the lower 8.3 miles of the Lower Passaic River.*

*Dioxins and furans are human health and ecological COCs. They are by-products of chemical manufacturing, combustion (either in natural or industrial settings), metal processing and paper manufacturing. The dioxin congener[2] 2,3,7,8-TCDD is the most toxic form of dioxin. 2,3,7,8- TCDD and other dioxin congeners were by-products in manufacturing processes at the former Diamond Alkali facility and elsewhere. The herbicides manufactured at the former Diamond Alkali facility included "Agent Orange," a defoliant manufactured for military purposes and shipped in drums with an orange stripe. Dioxins stay in the environment for a long time and bioaccumulate in fish and crab. Dioxins are classified as a probable human carcinogen. Toxic effects in humans include reproductive problems, problems in fetal development or early childhood, immune system damage and cancer. In birds and mammals, effects include developmental and reproductive problems, hemorrhaging and immune system problems.*

*PCBs are human health and ecological COCs. They are manmade chemicals that were banned in the late 1970s. PCBs refers to a group of 209 congeners. Some of the congeners are referred to as dioxin-like PCBs, because they have chemical structures, physico-chemical properties and toxic responses similar to 2,3,7,8-TCDD. Some commercial PCB mixtures are known in the United States by an industrial trade name, Aroclor. Because they do not burn easily and are good insulating materials, PCBs were used widely as coolants and oils, and in the manufacture of paints, caulking and building material. PCBs stay in the environment for a long time and bioaccumulate in fish and crab. PCBs are classified as probable human carcinogens. Children exposed to PCBs may*

---

[1] *This section identifies whether a chemical was identified as a human health and/or an ecological COC for the lower 8.3 miles of the Lower Passaic River in the risk assessments. While all of the ecological COCs cause unacceptable risks to some or all of the receptors evaluated, risk-based preliminary remediation goals (PRGs) were developed for dioxins, PCBs, mercury and Total DDx, because they are representative COCs and because there were multiple lines of evidence developed to evaluate how the alternatives would achieve PRGs for these four COCs after remediation.*

[2] *The "dioxins and furans" referred to in this ROD describe 75 individual polychlorinated dibenzo-p-dioxins and 135 polychlorinated dibenzofurans that are considered related compounds, or "congeners." Tetrachlorodibenzo-p-dioxin (TCDD), refers to a group of dioxin congeners with four chlorine atoms, and 2,3,7,8-TCDD is a congener with a specific arrangement of those chlorine atoms in its molecular structure.*

ARR0114

For Public Disclosure by Consent of the Participating Allocation Parties and EPA (Fall 2022)

develop learning and behavioral problems later in life. PCBs are known to impact the immune system and may cause cancer in people who have been exposed to them over a long time. In birds and mammals, PCBs can cause adverse effects such as anemia and injuries to the liver, stomach and thyroid gland. PCBs also can cause problems with the immune system, behavioral problems and impaired reproduction.

**Mercury** is a human health and ecological COC. It is a metal that is released to the environment through a variety of processes, including metals processing, burning of coal, improper disposal of medical and other wastes, industrial effluent discharge, and atmospheric deposition. Mercury stays in the environment for a long time and bioaccumulates in fish and crab. Once mercury is released to the environment, it can be converted to the biologically toxic form of methyl mercury. Most of the mercury in fish and crab tissue is present as methyl mercury, so the RI/FFS risk assessments evaluated all of the mercury detected in fish and crab as methyl mercury. Toxic effects in humans include developmental and reproductive problems, and effects on the brain, nervous system and kidney. In birds and mammals, mercury can cause adverse effects in the central nervous system.

**DDT (dichlorodiphenyltrichloroethane) and its primary breakdown products**, dichlorodiphenyldichloroethane (DDD) and dichlorodiphenyldichloroethylene (DDE), are ecological COCs. DDT is a pesticide that was banned for use in the United States in 1972. It was used widely to control insects on crops and to control mosquitoes that spread malaria. These compounds bioaccumulate in fish and crab, are persistent in the environment and can cause adverse reproductive effects such as eggshell thinning in birds. The concentrations of these three forms of DDT are summed together for evaluation and collectively referred to as Total DDx throughout the ROD and associated documents.

**Copper** is an ecological COC. It is a metal that enters the environment through releases from factories that make or use copper metal or compounds, leachate from landfills, combustion of fossil fuels, wood processing, fertilizer production and from natural sources such as dust from soils, volcanoes and forest fires. Although copper is an essential dietary element at low levels, at higher levels it is highly toxic in aquatic environments and bioaccumulates in fish and crab. Copper can cause adverse effects in fish, invertebrates and amphibians. Copper impacts growth, development and causes organ problems in birds and mammals.

**Dieldrin** is an ecological COC. It is a pesticide that is no longer produced or used, but was once used extensively as an insecticide on crops or to control termites. It bioaccumulates in fish and crab, and is persistent in the environment. Dieldrin is highly toxic to aquatic crustaceans and fish. Dieldrin also causes liver

ARR0115

For Public Disclosure by Consent of the Participating Allocation Parties and EPA (Fall 2022)

Diamond Alkali Superfund Site OU2 Allocation Recommendation Report
*ADR Confidential*

*damage, central nervous system effects and suppression of the immune system in mammals and eggshell thinning in birds.*

**PAHs** *are ecological COCs. These chemicals are a major component of petroleum products, and are formed during incomplete burning of coal, oil, gas, wood or other substances. PAH molecules are composed of two or more carbon and hydrogen rings. Low molecular weight (LMW) PAHs have two or three rings, while high molecular weight (HMW) PAHs have more than three rings. There are more than 100 different PAHs, which generally occur as complex mixtures. Typically, PAHs are readily metabolized by fish and wildlife, and do not bioaccumulate in aquatic food webs. They can persist in the environment under certain conditions. PAHs are toxic to invertebrates and cause inhibited reproduction, delayed emergence, sediment avoidance and mortality. In fish, PAHs cause liver abnormalities and impairment of the immune system. PAHs can cause adverse effects on reproduction, development and immunity in birds and mammals.*

**Lead** *is an ecological COC. Lead occurs naturally in the environment, but most of the higher levels found in the environment come from mining or factories that use lead compounds. Lead is also released into the air during the burning of coal, oil or waste. Lead is persistent in the environment, but does not bioaccumulate in aquatic organisms. Lead can cause muscular and neurological effects in fish. It is also toxic to invertebrates and can cause damage to the nervous system in birds and mammals.*

**ARR0116**

**ATTACHMENT E**

**REVISED WORK PLAN FOR THE ALLOCATION**

**ARR0117**



**Conflict Prevention and Resolution Services**

**Contract # 68HERH19D0033**

# Task Order #009

# Diamond Alkali-Lower Passaic River Allocation

| EPA Customer | EPA Region 2 |
|---|---|
| EPA Task Order Contracting Officer's Representative (TOCOR) | Alice Yeh, EPA Region 2<br>212-637-4427<br>yeh.alice@epa.gov |
| ERG Task Order Manager (TOM) | Laura Bachle<br>703-841-1705<br>laura.bachle@erg.com |
| Period of Performance | Task Order Issuance to October 30, 2020 |

ARR0118

# Contents

1. Background
2. Assumptions
3. Project Methods and Approach
4. Work Tasks
5. Reports, Transmittals, and Deliverables
6. Staffing Plan

## 1. Background

The lower 8.3 miles of the Lower Passaic River are one of four Operable Units (OUs) of the Diamond Alkali Superfund site. This OU is designated as OU2. The site has been on the National Priorities List since 1984. Contaminated sediments in this portion of the river are a significant source of contamination to the rest of the river down to Newark Bay. Contaminants including dioxins, mercury, PCBs, and DDT and its breakdown products can accumulate in in aquatic life and pose an unacceptable risk to human health and the environment.

Under an administrative order on consent (AOC), Occidental Chemical Corporation (OCC) is performing the remedial design for this OU. The cost for remedial action (RA) is estimated at $1.38 billion. EPA Region 2 has issued a notice of potential liability to approximately 100 parties and has offered a first round of cash-out settlements to approximately 20 potentially responsible parties (PRPs). Region 2 will address the liability of municipalities and public entities separately.

Under this TO, a third-party allocator will support Region 2 in assigning a share of responsibility to 83 non-public, non-municipal PRPs (representing 97 facilities) not included in the first round of cash-out settlements. The Region expects to use the results of the allocation to enter into settlement agreements with the subset of PRPs with the greatest share of responsibility to perform the RA and enter into another round of cash-out settlements. This effort will be based in part on existing information and contacts generated from previous attempts to develop a mutually acceptable allocation of liability.

This is an ongoing project with a well-qualified service provider already in place under a previous contract. ERG has selected the same service provider, AlterEcho, as the most effective way to continue the work.

## 2. Assumptions

This work plan and pricing estimate are based on the following assumptions:

General Assumptions

- Activities and pricing are included for the entire 13-month period of performance.

- ERG reserves the right to adjust the amount of the budget for general task order management if the contract and task order periods of performance are extended beyond the current period of performance.

- This TO can be modified to change the statement of work or add funding.

**ARR0119**

ERG's Understanding of the Work

ERG's work plan reflects our team's understanding of what work has already been completed on this allocation project and what work remains to be done. As the project has evolved, some key numbers and factors have changed, such that this estimate may differ from previous projections regarding the level of effort needed to complete the tasks envisioned in the SOW. Specific factors that have evolved include:

- There has been an increase in the number of facilities that must be calculated an equitable share, from 83 to 92 (+11%).

- Occidental (OCC) not being a participating party as had been anticipated and OCC filing a lawsuit against PAPs have substantially increased the level of effort required of the Allocation Team, which will spend additional resources to ensure that OCC is fairly represented in the allocation process, and  complicates communications and other considerations regarding maintaining confidentiality.

- The level of anticipated interaction required with PAP counsel, including the volume of comments that will be received and that will require analysis and confirmation, is substantially greater than anticipated.

- The complexity of the required allocation analysis is greater than anticipated as a result of:

  o Data gaps relating to facility operation and contaminant discharge data, significant variability of available data across the PAP facilities, and the need for equitable analysis to discern and develop appropriate surrogate data

  o The pervasiveness of historic fill at facility locations.

  o The large volume of data on OCC submitted by PAPs

  o The complexity and multiplicity of overflow valves and bypasses and each facility's specific connections and historic uses of system.

  o Different dredging events have varied with respect to area and sediment removal impacts, which in turn varies the potential for contaminant removal

  o The diverse hydrology of impacted area, fate and transport of contaminants, and tidal influences on the system.

Task B: Allocation Design and Production

- A maximum of 83 PRPs will be provided an opportunity to participate in or be evaluated for the purpose of determining a share of responsibility in the allocation process. They are designated herein as Allocation Parties. Ten of these PRPs are non-participating parties.

- The allocation will cover a maximum of 92 facilities associated with the 83 Allocation Parties.

- All OU2 Allocation Parties will be designated a share of responsibility in the Final Allocation Recommendation Report.

- All OU2 PRPs which have agreed or agree in the future to participate in the allocation by executing the OU2 Allocation Guide and Confidentiality Agreement (Participating Allocation Parties or PAPs) will be provided an opportunity to participate in the design of the allocation database and process and to provide additional site-related information for possible addition to the database.

- The Final Allocation Recommendation Report will divide the Allocation Parties into logical groupings of similarly situated PRPs

**ARR0120**

- EPA will provide the ERG Team with a listing and contact information for each OU2 PAP. Reference herein to meetings or other forms of communication with the OU2 PAPs means communication with the identified representatives of such parties.

- A maximum of 593,895 pages of documents will be reviewed and utilized to conduct the allocation, including:

  - A maximum of 130,000 pages of documents received from EPA for ERG Team review under the previous contract.

  - A maximum of 413,895 extra pages of documents received from PRPs for ERG Team review under the previous contract.

  - The PAPs have indicated to the ERG Team that they have an additional 50,000 pages of relevant documents to submit over the remainder of the project.

- At the time of termination of the prior Task Order, the contractor was awaiting notice from EPA on its determination regarding an offer of Early Settlement to 20 of the PAPs. Consequently, the contractor was unable to complete Draft Facility Data Reports for the PAPs being considered for a possible EPA Early Settlement offer. Therefore, Draft Facility Data Reports for such PAPs will be completed pursuant to the current work plan. The timing of EPA's determination regarding Early Settlement offers may affect the contractor's ability to complete the tasks specified in Tasks B4 and B5 within specified deadlines. For the Work Plan, the ERG Team is assuming receipt of notice of EPA's determination regarding Early Settlement offers on or before October 31, 2019.

- All communications by the ERG Team will be by phone or email unless a meeting is noted.

- The ERG Team estimates 4 hours of communications per PAP over the remainder of the project. This time is presented as communications in Tasks B3, B4, and B5, and meetings in Tasks B5 and B6. This partially responds to the PRP outreach requirements specified in Section II.B.2 of the SOW.

- A maximum of 4 hours of combined project status/update calls will be held by the ERG Team with EPA per month. ERG assumes these calls will be held on a weekly basis. This time is included under Task A3.

- The allocation database will be designed and organized primarily for purposes of allocation.

- Any part of a communication, attachment to a communication, presentation, or written material provided to OU2 PRPs by the ERG Team that involves a description of the site or EPA actions or activities will be provided to EPA for review and approval prior to submission to the OU2 PAPs.

- Unless otherwise noted herein, all allocation-related communications by the ERG Team involving the OU2 PAPs or representatives of EPA or DOJ, individually or in groups, will be held confidential pursuant to the provisions of the ADR Act of 1996, 5 USC 574.

- In order to ensure a common expectation of confidentiality, all PAP participants in the allocation process have entered, and EPA has appropriately acknowledged, a confidentiality agreement.

Pricing Estimate

- Travel:

  - Key project meetings will be held at the EPA Region 2 office or another location in the greater New York City metropolitan area as determined by EPA or hosted by OU2 PAPs if they supply meeting space. These meetings will require travel for ERG's selected service provider, whose

key staff for this project are located in the Washington, DC, area.

- o Four meetings, each involving two staff from ERG's selected service provider, are assumed. Two of these four meetings will require overnight stays.

- Space and equipment for meetings will be provided by EPA or PAPs.

## 3.   Project Methods and Approach

- As agreed upon with EPA, all reports, transmittals and deliverables—with the exception of Items B-5 and B-6 in Table 3—will be submitted to the TOCOR and Project Officer (PO). Items B-2 and B-3 will be submitted with Item B-7.

- ERG will be responsible for evaluating the service provider's performance at the end of the project and during the project if it lasts through the annual contract evaluation performance schedule.

- ERG understands that during the performance of this work, Region 2 may share information with the ERG Team that is pre-decisional and deliberative or is considered to be attorney work product in preparation of potential litigation. ERG recognizes that such work is privileged to the United States and EPA under the Freedom of Information Act. While the ERG Team will conduct the allocation process in a manner transparent to the public to the extent possible, the ERG Team will consult with EPA before releasing information to the public to ensure confidential information is protected.

In conducting this work, ERG will comply with all terms in the overall contract, including—but not limited to—the following requirements:

- ERG and subcontractor AlterEcho (ERG Team) will not interpret EPA policy on behalf of the EPA or make decisions on items of policy, regulation or statutes. The ERG Team also will not take a stand on the merits of substantive items under discussion.

- In gathering information or performing research with parties outside the EPA, ERG Team members will identify themselves as contractors to EPA and not as EPA employees.

- ERG will approach this task in accordance with the basic terms of the contract and according to the established norms and ethical standards of ADR professionals. Specifically, ERG will ensure that ADR professionals supporting this TO abide by ethical codes of conduct such as those defined in the SOW. Information provided to the ADR professional by any of the parties, communications between parties and the ADR professional, and notes and dispute resolution work product generated by the ADR professional during work pursuant to the TO will be maintained as confidential by the ADR professional pursuant to the provisions of the ADR Act of 1996 (Public Law 104-320; 5 USC 571 et al.) and applicable federal, state, and judicial requirements.

- To enhance the positive substantive, relational, and procedural outcomes from ADR cases, ERG will direct all ADR professionals providing services under this TO to do the following prior to the mediation or facilitation and throughout the process:

- o Inquire about whether individual participants have the time, financial, and logistical resources necessary to participate effectively in the process and—where resources are inadequate— assist them in identifying appropriate resources or in making necessary adjustments to the process to accommodate resource constraints.

- o Assist the participants in identifying the issues that are important to resolving any controversy and solutions that will address the needs shared by the participants.

- o Conduct the process to promote active engagement from all participants.
- o Explore with the participants appropriate ways to incorporate high quality and relevant information resources necessary to resolve the issues.
- o To support productive dialogue and effective implementation of any agreements reached by the participants, ensure that participants have appropriate authority to make commitments on behalf of their organizations.
- Obtain approval in writing for any long-distance travel.

## 4.   Work Tasks

Task B: Allocation Design and Production

*Task B1: Initial Review*

Under the previous contract, EPA provided the contractor with the information, materials, and reports generated pertaining to the allocation. AlterEcho organized and reviewed this information under that contract. No further activity or level of effort is anticipated for this task.

*Task B2: PRP Outreach*

Throughout the course of the allocation, the ERG Team will conduct outreach to OU2 PRPs participating in the allocation to provide them with the opportunity to comment on and correct the draft data reports produced under the previous contract and to provide input on the drafting of the allocation recommendation report. This will include:

- Ensuring that each PRP's data or information used in the allocation is correctly input into the database.
- Soliciting PRP positions on the drafting of the allocation recommendation report.
- Communicating how their input was or was not taken into consideration in developing the allocation recommendation report.

The activities and level of effort associated with the PRP outreach activities described above are directly linked to the Allocation Design and Production task described below. They are incorporated into the descriptions and estimates for those tasks.

Per Section II.B.2.b of the SOW, the ERG Team will prepare and provide to EPA a report regarding outreach efforts conducted with the OU2 PAPs during the entire project, including a list of participants in outreach efforts, a description of topics discussed, and a summary of issues or concerns raised.

This task will require the following efforts on the part of the ERG Team:

- Review and provide EPA with a generalized description of topics discussed and summary of issues or concerns raised by OU2 PAPs during conduct of the TO, without attribution to individual OU2 PAPs.
- Prepare and provide EPA an overview of conducted outreach efforts, including a list of OU2 PAPs that have participated in outreach meetings, conference calls, or individual communications with the ERG Team.

**ARR0123**

*Task B3: Searchable Database*

Per Section II.B.3 of the SOW, the ERG Team will maintain and update the searchable database developed under the previous contract. The searchable database contains and organizes all of the information and data used in the allocation.

- Under the previous contract, the database was designed and initially populated with information received from EPA, including PRP disclosure statements and nexus documents from third party litigation totaling approximately 130,000 pages.

- Under the previous contract, the database was also populated with up to 413,895 pages of documents received from PRPs deemed relevant to the allocation by the previous contractor and any other information used in the allocation.

- The database is designed in such a way as to allow access and use by EPA and DOJ staff for their settlement purposes.

- Completion of database: The ERG Team will upload applicable new documents received as part of the TO activities. The PAPs have indicated to the ERG Team that they have an additional 50,000 pages of relevant documents to submit. The ERG Team will complete the database and provide the completed database to EPA when the final allocation recommendation report, described in Task B7, is complete.

*Task B4: Draft and Final Facility Data Reports*

Per Section II.B.4.a of the SOW, the ERG Team will organize and conduct a technical and scientific evaluation of data in the allocation database to develop individual data reports for each of the OU2 PAP facilities for which an early settlement was not offered by EPA. Under the previous contract, 72 Draft PRP Data Reports were completed and made available to the PAPs for submission of corrections or suggestions. At the time of termination of the prior contract, the contractor was awaiting notice from EPA on its determination regarding an offer of Early Settlement to 20 additional PAPs. Consequently, the contractor was unable to complete Draft Facility Data Reports for the PAPs being considered for a possible EPA Early Settlement offer. Therefore, Draft Facility Data Reports for such PAPs will be completed pursuant to this work plan. For this work plan, the ERG Team is assuming receipt of notice of EPA's determination regarding Early Settlement offers on or before October 31, 2019. The Draft Facility Data Reports for the up to 20 Early Settlement facilities will supplement existing limited scope data reports prepared for those facilities to support the Early Settlement evaluation process and criteria. This will include review and evaluation of additional Facility Questionnaire information and supporting documents to be submitted and expanding the depth of data review focused on mass of contaminants associated with the facility. The reports will provide selected information regarding each OU2 PAP's relation to OU2 and OU2 contaminants of concern that will be used in conduct of the allocation. The ERG Team will establish a deadline of 10 business days from receipt of the Draft Facility Data Reports for submission of corrections or suggestions by the OU2 PAPs for improving the quality of the received Draft Facility Data Reports.

This task will require the following efforts on the part of the ERG Team:

- Conduct coding of data and loading of coded data obtained from OU2 PAPs into database.

- Review preliminary factual submission by OU2 PAPs.

- Review site data loaded into database to determine appropriate organization for allocation.

**ARR0124**

- Compile and organize site data in database to support allocation analysis and share computations.

- Organize data in allocation database into and draft individual OU2 PRP data reports for each of the OU2 PAP facilities for which an early settlement was not offered by EPA (up to 20 facilities).

- Provide a copy of the Draft Facility Data Reports to the OU2 PAPs for review.

Timing of this task is dependent upon receipt of notice of EPA's determination regarding Early Settlement offers on or before October 31, 2019.

Conduct of this task is dependent upon the following factors:

- Access by the ERG Team to EPA technical data regarding site conditions and the selected OU2 remedy.

- Sufficient data on identified PRPs to allow analysis of associated contaminants of concern and hazardous substance fate and transport at the site.

- Successful establishment of the allocation database.

- Receipt of additional data from OU2 PAPs for inclusion in the allocation database within established timeframes.

- As indicated in the Assumptions section of this Work Plan, it is assumed that there are an additional 50,000 pages of relevant documents to submit over the remainder of the project.

Per Section II.B.4.c of the SOW, the ERG Team will analyze corrections or suggestions for improving the quality of the Draft Facility Data Reports received from OU2 PAPs to determine whether modifications of the original draft data reports are warranted. Based on this analysis, the ERG Team will modify the data reports, as deemed appropriate. The ERG Team will then provide a copy of all of the Final Facility Data Reports to the OU2 PRPs, with an explanation of how suggested changes were, or were not, incorporated.

- This task will require the following efforts on the part of the ERG Team: Employ a rigorous approach to filling data gaps with additional information requested and obtained from EPA or the PAPs (e.g., industry resources, EPA/NJDEP files, Sanborn Fire Insurance Maps, aerial photographs and possibly supplemental 104e requests) in accordance with the protocol for handling data gaps and ambiguities included in the Allocation Methodology.

- Analyze received suggestions and corrections to Draft Facility Data Reports in relation to existing Site data and the final allocation design in order to determine appropriate modifications.

- Modify the individual data reports, as warranted based on the above analysis.

- Provide an explanation to the OU2 PAPs regarding whether, and if so how, received suggestions resulted in changes to their individual data report, including a description of why their suggestions and comments were, or were not, taken into account. Upload Final Facility Data Reports to the confidential allocation document repository.

- As required, the ERG Team will conduct communications with individual OU2 PAPs to answer questions regarding their Final Facility Data Reports.

Timing of this task is dependent upon the following factors:

**ARR0125**

- Receipt of comments from OU2 PRPs regarding their Draft Facility Data Reports within established timeframes.
- Receipt of notice of EPA's determination regarding Early Settlement offers on or before October 31, 2019.

*Task B5: Allocation and Allocation Recommendation Report*

The ERG Team will ensure that each PRP's data or information used in the allocation is accurately input into the database and will solicit from the PRPs participating in the allocation positions on the drafting of the allocation recommendation report (as described below). AlterEcho will perform the allocation. The activities and level of effort associated with performing the allocation are directly linked to the subtasks described below. They are incorporated into the descriptions and estimates for those tasks.

Per Section II.B.5.a and b of the SOW, the ERG Team will prepare a first draft of the allocation recommendation report and submit it to the OU2 PAPs for review. The draft allocation report will designate shares of responsibility among the OU2 PRPs, as appropriate based on the allocation analysis. The draft allocation report will include a recommendation on the possible grouping of the OU2 PRPs into tiers of similar levels of responsibility.

This task will require the following efforts on the part of the ERG Team:

- Conduct communications, including conference calls and/or meetings, with OU2 PAPs regarding recommendations on and legal/equitable theories pertinent to conduct of the allocation raised in Position and Response Briefs received from the OU2 PAPs. The ERG Team will focus on establishing routine group communication calls and electronic updates to achieve greater efficiency in communication and as a means to reduce individual PAP-initiated calls and electronic inquiries.

- Review and consider input regarding allocation received from the OU2 PAPs and EPA.

- Review and understand the basis for EPA's selected remedy for OU2, in consultation with EPA technical and legal personnel.

- Analyze the relative toxicity of materials discharged by OU2 PRPs and other differentiating factors, including fate and transport of hazardous substances released by PRPs based on the data contained in the RI/FFS, in relation to the selected remedy.

- Compile and analyze allocation data related to each OU2 PRP, including contaminants of concern, to establish the relative impact of the actions of each OU2 PRP on the conditions that resulted in EPA selecting the OU2 remedy.

- Load compiled PRP data into allocation calculations to determine relative relationships among the OU2 PRPs.

- As appropriate, establish appropriate tiers of OU2 PRP responsibility based on calculations and consideration of equitable factors.

- Prepare the draft allocation recommendation report.

- Submit the draft report to the OU2 PAPs for review and comment.

Timing of this task is dependent upon receipt of position briefs and reply briefs regarding allocation from OU2 PAPs within established timeframes.

**ARR0126**

Per Section II.B.5.c of the SOW, the ERG Team will plan, schedule, and conduct a meeting with the OU2 PAPs as a group regarding the draft allocation recommendation report. The purpose of the meeting will be to advise the OU2 PAPs as a group regarding the draft allocation recommendation report and to obtain preliminary PAP comments regarding the draft allocation recommendation report. The ERG Team will also communicate with the OU2 PAPs individually as necessary to obtain the input of OU2 PAPs, including those that did or were unable to attend the meeting, regarding the draft allocation recommendation report. As noted previously, the ERG Team will focus on establishing routine group communication calls and electronic updates to achieve greater efficiency in communication and as a means to reduce individual PAP initiated calls and electronic inquiries.

This task will require the following efforts on the part of the ERG Team:

- Making arrangements for a meeting in the greater New York City metropolitan area sufficient to accommodate the OU2 PAPs as a group.

- Coordination of meeting space and equipment for meetings provided by EPA or OU2 PAPs.

- Communication via email with the OU2 PAPs regarding substance, date/time, and location of meeting.

- Development of the meeting agenda.

- Development of participant materials, as needed.

- Travel of two senior staff from Washington, DC, to attend the meeting.

- Communications by a Dispute Resolution Professional via phone, email, or other electronic media with OU2 PAPs as required.

- Recording of PAP general comments regarding the draft allocation recommendation report, without attribution to individual OU2 PAP comments.

Per Section II.B.5.c of the SOW, the ERG Team will prepare a Final Allocation Recommendation Report. The Final Allocation Recommendation Report will take into consideration comments on the Draft Allocation Recommendation Report received during meetings with and received in position and reply briefs from the OU2 PAPs and during communications with EPA regarding the nature and scope of the Final Allocation Recommendation Report; address any identified ambiguities in the draft report; include references to all materials considered and relied upon, and a complete description of the allocation process and the basis upon which shares were assigned. The Final Allocation Recommendation Report will include an overview of the basis for the determinations of shares among the OU2 PRPs, including a description of the use of data sources and application of allocation factors and methodology utilized, and reason for potential vulnerabilities, if any, in the resulting allocation. The report will identify and explain the rationale, if applicable, for grouping OU2 PRPs into tiers of similar relative responsibility. The Final Allocation Recommendation Report will also address any identified ambiguities in the draft report and provide a summary of how comments of the OU2 PRPs regarding the Draft Allocation Recommendation Report were, or were not, taken into account in the final report, without attribution to individual comments.

This task will require the following efforts on the part of the ERG Team:

- Review and consider the comments received from OU2 PAPs regarding the Draft Allocation Recommendation Report.

- Conduct communications, including conference calls and/or meetings, with OU2 PAPs regarding

comments regarding the Draft Allocation Recommendation Report received from OU2 PAPs.

- Edit the Draft Allocation Recommendation Report to incorporate appropriate modifications based on received comments to produce the Final Allocation Recommendation Report.

The ERG Team will provide access the OU2 Allocation Database to identified members of the EPA Case Team. This task will require the following efforts on the part of the ERG Team:

- Submission to members of the EPA Case Team Review of credentials and instructions for accessing information in the OU2 Allocation Database.

### Task B6: Meetings or Conference Calls

The activities and level of effort associated with performing the allocation are directly linked to the other tasks in this work plan. They are incorporated into the descriptions and estimates for those tasks as noted. The ERG Team will attend and participate in the following meetings either in person or by telephone or video conference at EPA's discretion.

- Progress meetings or conference calls. Please see Task A2 of this work plan.

- Kickoff meeting or conference call with EPA. Please see Task A2 of this work plan.

- Draft allocation recommendation report meeting or conference call with PRPs. Please see Task B5 of this work plan.

It is anticipated that all meetings will be held at EPA or PRP-provided facilities.

### Task B7: Task Order Closeout Report

Per Section II.B.7 of the SOW, the ERG Team will design and produce the first draft of a report regarding the conduct of tasks pursuant to the TO and submit it for review by EPA. The report will not contain any confidential or sensitive information. The contents of the Draft Task Order Closeout Report will include:

- A half-page description of the project that describes the nature of the project, the parties, the process, and the outcomes.

- If appropriate, a short section reflecting on the process and procedural lessons learned and recommendation for improvements and identification of those activities conducted that contributed to the success of the process.

- A brief summary of the final costs of the project, broken out by percentage of labor hours and other direct costs.

This task will require the following efforts on the part of the ERG Team:

- Review of project activities and compilation of a project summary.

- Consideration and compilation of thoughts on lessons learned regarding this project.

- Compilation of project budget costs.

- Preparation of the Draft Task Order Closeout Report.

The ERG Team will prepare a Final Task Order Closeout Report and submit it to EPA. The Final Task Order Closeout Report will take into consideration comments received from EPA regarding the draft of the Task

Order closeout report. ERG will provide one copy of the Final Task Order Closeout Report to the PO and one copy to the TOCOR in electronic format.

This task will require the following efforts on the part of the ERG Team:

- Review and consideration of comments by EPA regarding the draft Task Order Closeout Report.

- Editing, and as required redesign, of the closeout report to incorporate modifications based on EPA comments in order to produce the Final Task Order Closeout Report.

- As directed by the TOCOR, the ERG Team will participate in a post-process debriefing with EPA officials to discuss lessons learned and potential next steps.

Per discussions with EPA, while the Final Allocation Report is referenced under this task in the EPA SOW, report development is not included under this task, but rather under Task B5.

*Task B8: Post-Process Debriefing*

As directed by the EPA TOCOR, the ERG Team will participate in a post-process debriefing with EPA officials, including the PO, TOCOR, and relevant EPA management, to discuss lessons learned and next steps. It is anticipated that this meeting will take place via teleconference.

Table 3. Transmittals and Deliverables Under Task B

| Item | Title | Due no later than* | Type |
|------|-------|--------------------|------|
| B-1 | Kickoff meeting or conference call | Within 20 business days of work plan approval | Activity |
| B-2 | Completion of searchable database | Upon submission of final allocation recommendation report | Deliverable |
| B-3 | Completion of final facility data reports | Within 40 business days of work plan approval | Transmittal |
| B-4 | Perform allocation | 140 business days after completion of final facility data reports | Activity |
| B-5 | Draft allocation recommendation report | 140 business days after completion of final facility data reports | Transmittal |
| B-6 | Draft allocation recommendation report meeting | Within 20 business days of submittal of draft allocation recommendation report | Transmittal |
| B-7 | Final allocation recommendation report | 65 business days after completion of draft allocation recommendation report | Deliverable |
| B-8 | Final PRP outreach report | 10 business days after completion of final allocation recommendation report | Transmittal |
| B-9 | Draft case closure report | 10 business days after acceptance of final allocation recommendation report | Transmittal |
| B-10 | Final case closure report | 10 business days after receipt of EPA comments | Deliverable |

## 5.   Reports, Transmittals, and Deliverables

ERG will submit deliverables in accordance with the contract. As agreed upon with EPA, with the exception of Items B-5 and B-6 in Table 3, copies of all contract deliverables will be sent to both the PO

and the TOCOR. Items B-2 and B-3 will be submitted with Item B-7. If oral briefings are scheduled for EPA staff, the PO will be notified in time to attend. Specific deliverables and the timing of their delivery are identified in the tables in Section 5 above.

## 6.   Staffing Plan

This task order will be staffed as described in Table 4.

Table 4. Preliminary Staffing Matrix

| Individual (firm)† | Labor category | Project role |
|---|---|---|
| David Batson (AlterEcho) | Dispute Resolution Professional - Level 3A | Senior allocation specialist; conduct allocation and prepare draft and final allocation recommendation reports; lead communication and meetings with PAPs |
| Mark Heaney (AlterEcho) | Scientific/Technical Consultant or Analyst- Level 3A | Subcontractor's project manager; quality assurance; deliverable preparation; draft and final facility data reports; draft and final allocation recommendation reports |
| Ann Schnitz, Ph.D. (AlterEcho) | Scientific/Technical Consultant or Analyst - Level 3A | Senior human health toxicologist; support performance of allocation |
| Mike Carney, Ph.D. (AlterEcho) | Scientific/Technical Consultant or Analyst - Level 3A | Senior ecological toxicologist; support performance of allocation |
| Rachel Shay (AlterEcho) | Scientific/Technical Consultant or Analyst - Level 1A | Researcher; maintenance of searchable database; preparation of draft and final facility data reports; preparation of PRP Outreach Report |
| Derek Lawrence (AlterEcho) | Scientific/Technical Consultant or Analyst - Level 2B | Researcher; preparation of draft and final facility data reports |
| Lynne Larsen (AlterEcho) | Scientific/Technical Consultant or Analyst - Level 1A | Researcher; preparation of draft and final facility data reports |
| Dan Michor (AlterEcho) | Communications Specialist Level 3 | GIS specialist; draft and final facility data reports; draft and final allocation recommendation reports |

**ARR0130**

| Individual (firm)[†] | Labor category | Project role |
|---|---|---|
| Holly Sprunger (AlterEcho) | Scientific/Technical Consultant or Analyst - Level 2B | Quality assurance; draft and final facility data reports; draft and final allocation recommendation reports data management |
| Pam Ginger (AlterEcho) | Administrative Clerical/Technical Support A | Administrative; monthly reports |
| Rachel Ireland (AlterEcho) | Scientific/Technical Consultant or Analyst - Level 2B | Researcher and data specialist; draft and final facility data reports; draft and final allocation recommendation reports data management |
| Amanda Rohrbaugh (AlterEcho) | Scientific/Technical Consultant or Analyst - Level 2B | Researcher and data specialist; draft and final facility data reports; draft and final allocation recommendation reports data management |
| Judy Manley (AlterEcho) | Scientific/Technical Consultant or Analyst - Level 3A | Data specialist; quality assurance; maintenance of searchable database; draft and final facility data reports; draft and final allocation recommendation reports |
| Karla Brasaemle (AlterEcho) | Scientific/Technical Consultant or Analyst - Level 3A | Contaminant fate and transport specialist; support allocation; draft and final allocation recommendation reports |
| Nicole Goers (AlterEcho) | Scientific/Technical Consultant or Analyst - Level 3A | Senior engineer; quality assurance; draft and final facility data reports; support allocation; draft and final allocation recommendation reports data management |
| Kristen Rapal (AlterEcho) | Scientific/Technical Consultant or Analyst - Level 3A | Researcher and data specialist; draft and final facility data reports; draft and final allocation recommendation reports data management |

**ATTACHMENT F**

**OU2 ALLOCATION CONFIDENTIALITY AGREEMENT**

ARR0132

**Diamond Alkali Superfund Site OU2 Allocation**
**Confidentiality Agreement**

This Confidentiality Agreement made and entered into by and among the Allocation Neutral and those Participants whose authorized representatives have executed this Agreement (collectively, the "Participants" and individually, a "Participant").

RECITALS

1.      The Participants to this Confidentiality Agreement have been offered an opportunity to participate in the design and conduct of an allocation of certain costs associated with remediation of OU2 of the Diamond Alkali Superfund Site (the "Site") as described in the letter from Eric Wilson, Deputy Director for Enforcement and Homeland Security, Emergency and Remedial Response Division, US EPA, dated September 18, 2017.  The allocation is intended to establish an impartial third-party expert recommendation that may be considered by the United States and the Participants as the basis of settlements equitably resolving potential liabilities associated with the Site.

2.      The Participants have a common interest in working together to consider and establish a fair and reasonable, impartial allocation process for equitably resolving potential liabilities associated with the Site.

3.      The Confidentiality Agreement is intended to document the common understanding of the Participants regarding the confidentiality of the allocation process and shall not be construed as an admission of liability or against interest or otherwise cited or used in any way against any Participant in any other dispute or proceeding.

AGREEMENT

1.      <u>Confidentiality</u>.

        (a)     To promote frank and productive discussion, the Participants agree that the allocation process shall be confidential.  All oral and written communications regarding this matter by or between the Participants, including communications at meetings (whether by telephone or in person) with Participants present, or by or to the Allocation Neutral, shall be Dispute Resolution Communications.  Such Dispute Resolution Communications are confidential, and shall not be disclosed to third persons by the Allocation Neutral, any Participant, their elected and appointed officials and officers, representatives, employees, agents, financial auditors, insurance carriers, or other persons associated with the Participant, except as provided elsewhere in the agreement, or with the consent of the Participants to this dispute, or as required by law to be made public.

ADR CONFIDENTIAL

**ARR0133**

## Diamond Alkali Superfund Site OU2
## ALLOCATION CONFIDENTIALITY AGREEMENT

(b)     The allocation process, including all dispute resolution communications, is confidential pursuant to the Administrative Dispute Resolution Act of 1996, 5 U.S.C. Section 574, ("ADR Act") and all other applicable federal and state laws. The allocation process shall be treated as compromise negotiations under Rule 408 of the Federal Rules of Evidence and applicable state law.

(c)     The Allocation Neutral shall not disclose to any Participant or any third party information conveyed to him in confidence by any other Participant, unless authorized to do so by that Participant or as required by law, of which requirement Allocation Neutral shall advise the Participant in writing prior to disclosure. Except as specified in the allocation process design, the Allocation Neutral shall, upon termination of the allocation process, destroy any notes and written records created by or provided to him, unless a Participant requests the return of written records, in which case the Allocation Neutral shall return the original and all copies of the requested materials to the Participant. Allocation meetings and other sessions shall not be recorded verbatim and no formal minutes or transcripts shall be maintained.

(d)     Participation in the allocation process, including attendance at meetings, statements made and documents prepared or furnished by any Participant, or other participant, for the purposes of the process shall not be construed as an admission of liability or against interest or otherwise cited or used in any way against any Participant in any other dispute or proceeding. Where a Participant references, discusses, or produces documents or information during settlement discussions, doing so will not render otherwise discoverable documents or information confidential, privileged, non-discoverable, or inadmissible.

(e)     The Allocation Neutral shall not be deemed a "necessary or indispensable" party, as defined in Rule 19 of the Federal Rules of Civil Procedure and any equivalent state law, in any pending or future judicial, administrative or arbitral action related to matters discussed in the allocation process. No Participant shall subpoena or otherwise seek from the Allocation Neutral any information provided to him by another Participant that relates to the allocation. In no event shall the Allocation Neutral voluntarily testify on behalf of a Participant, or participate as a consultant or expert, in any pending or future judicial, administrative, or arbitral action related to matters discussed in the allocation.

(f)     The Participants and the Allocation Neutral shall remain bound by these confidentiality provisions following termination or expiration of this Agreement without regard to whether any legal actions or issues arising out of the case are settled or concluded by final judgment or otherwise.

2.     Expiration.  This Confidentiality Agreement will expire upon completion of the allocation process or as otherwise agreed by a consensus of the Participants.

ARR0134

**Diamond Alkali Superfund Site OU2**
**ALLOCATION CONFIDENTIALITY AGREEMENT**

3.      <u>Withdrawal</u>.  Any Participant may withdraw from the allocation referred to herein upon written notice to the other Participants and Allocation Neutral.

4.      <u>Modification</u>.  All provisions of this Confidentiality Agreement may be modified by unanimous written consent of all Participants, who have not withdrawn from this Agreement.

5.      <u>Counterparts</u>.  This Confidentiality Agreement may be executed in multiple counterparts, each of which will be deemed an original, but all of which will constitute one and the same instrument.

6.      <u>Entire Agreement</u>.  This Confidentiality Agreement constitutes the entire understanding of the Participants with respect to its subject matter.

7.      <u>Governing Law</u>.  This Confidentiality Agreement is to be construed under and in accordance with the laws of the State of New Jersey.

8.      <u>Survival</u>.  The respective obligations of the Allocation Neutral and the Participant hereunder shall survive the expiration or sooner termination of this Confidentiality Agreement.

9.      <u>Recitals</u>.  The recitals to this Confidentiality Agreement are incorporated herein as though set forth in full.

[Signatures follow on succeeding pages]

ARR0135

**Diamond Alkali Superfund Site OU2**
**ALLOCATION CONFIDENTIALITY AGREEMENT**

**We agree to abide by the terms and conditions of this Confidentiality Agreement and indicate our assent by signing this document below.**

Date: _____          By: _____

Title: _____

_____
[Signature]

On Behalf of: _____

ARR0136

**Diamond Alkali Superfund Site OU2**
**ALLOCATION CONFIDENTIALITY AGREEMENT**

**I agree to abide by the terms and conditions of this Confidentiality Agreement and indicate my assent by signing this document below.**

**ALLOCATION NEUTRAL:**

Date: <u>October 17, 2017</u>        _____
                                                    David C. Batson

ARR0137

**ATTACHMENT G**

**DIAMOND ALKALI SUPERFUND SITE OU2 ALLOCATION GUIDE**

**ARR0138**

# Diamond Alkali Superfund Site OU2 Allocation Guide

## June 15, 2018
## As amended by addendum dated July 6, 2018 and incorporating consensus of Participating Allocation Parties on March 22, 2019

**David Batson, Esq.**
**Allocator**



1440 G Street, NW / Suite 8210
Washington, DC  20005
P: (202) 499-6021
C: (202) 494-8702
David.Batson@AlterEcho.com
www.AlterEcho.com

***ADR CONFIDENTIAL DOCUMENT***

*This document is a confidential dispute resolution communication provided by a neutral to parties involved in resolving an issue in controversy and, as such, may not be disclosed pursuant to the provisions of the ADR Act of 1996 and all relevant state and federal authorities.*
*Do Not Release Under FOIA*

Diamond Alkali Superfund Site OU2 Allocation Guide
*ADR Confidential*

# <u>TABLE OF CONTENTS</u>

1. **PURPOSE OF ALLOCATION GUIDE** ..................................................................**3**

2. **DEFINITIONS** ............................................................................**3**

3. **SCOPE OF ALLOCATION** .................................................................**4**

    **3.1 Determination of Relative Relationship between identified Allocation Parties** ..**4**
    **3.2 Retention of Rights** .............................................................**5**

4. **PHASES AND TIMING OF ALLOCATION PROCESS** ...........................................**5**

    **4.1 Allocation Related Tasks and Timeline** ..............................................**5**
    **4.2 Early Settlement Option** ..........................................................**8**
    **4.3 Document Repositories** ...........................................................**8**
    **4.4 Allocation Party Data Reports** ..................................................**10**
    **4.5 Participating Allocation Party Certifications of Relevant Document Search** ...**10**

5. **RIGHTS & RESPONISIBILITIES OF PARTICIPANTS** ........................................**11**

    **5.1 Submission of Joint Papers/Presentations** .......................................**11**
    **5.2 Communications with Allocator** ..................................................**12**

6. **CONFIDENTIALITY** .....................................................................**12**

    **6.1 Confidentiality Agreement** ......................................................**12**
    **6.2 Scope of Confidentiality Protections** ...........................................**12**
    **6.3 Exceptions to Confidentiality of the Allocation Process** ........................**12**

7. **CONDUCT OF ALLOCATION** ............................................................**12**

    **7.1 General Information** ............................................................**12**
    **7.2 Purpose and Role of Allocation** .................................................**14**
    **7.3 Allocation Parameters** ..........................................................**14**
    **7.4 Advocacy Briefs** ...............................................................**14**
    **7.5 Allocation Recommendation Report** ...............................................**15**
    **7.6 Determination of Equitable Factors and Methodology** .............................**15**

    **TABLE OF ATTACHMENTS** ...............................................................**16**

**ARR0140**

For Public Disclosure by Consent of the Participating Allocation Parties and EPA (Fall 2022)
Case 2:22-cv-07326-MCA-LDW   Document 289-2   Filed 01/31/24   Page 68 of 231 PageID: 4958
Diamond Alkali Superfund Site OU2 Allocation Guide
*ADR Confidential*

# Diamond Alkali Superfund Site OU2
# Allocation Guide

1. **PURPOSE OF ALLOCATION GUIDE**

   a. This Allocation Guide (Guide), created by the Allocator in consultation with the Participating Allocation Parties and EPA, documents the understanding of the Participating Allocation Parties and EPA regarding the conduct of the two (2) phase facilitated settlement process for the resolution of the liability of Allocation Parties related to OU2 as described herein.

   b. By participating in Phase 1 of the facilitated settlement process, a Participating Allocation Party commits to do so in compliance with the provisions of the Guide.

   c. The failure of a Participating Allocation Party to participate in compliance with the provisions of the Guide may be considered by the Allocator as a factor in determining such party's allocated share.

2. **DEFINITIONS**

   a. **Allocation**: The confidential process, conducted pursuant to this Guide with the assistance of the Allocator, consisting of the first phase of a two-phase ADR facilitated settlement process to support settlement between EPA and the Allocation Parties.

   b. **Allocation Party:** One of eighty-three (83) entities identified by EPA as a potentially responsible party (PRP) for operable unit 2 (OU2) of the Diamond Alkali Superfund Site (the Site) and issued a General Notice Letter (GNL) for one or more particular facility location, as noted on Attachment A.

   c. **Allocation Team:** The Allocator and professional staff of AlterEcho who are supporting conduct of the Allocation.

   d. **Allocator:** David C. Batson, the individual contracted by EPA and accepted by the Participating Allocation Parties to conduct the Allocation process.

   e. **Chemicals of Concern (COCs):** The following eight (8) chemicals designated as COCs by EPA in the Record of Decision for OU2 of the Site, dated March 3, 2016 (ROD) (Attachment K):

      1. Dioxin/Furans

         a. Polychlorinated dibenzo-p-dioxins (PCDD), Polychlorinated dibenzofurans (PCDF)

      2. PAH Polycyclic aromatic hydrocarbon

         a. LMW PAHs: acenaphthene, acenaphthylene, anthracene, fluorene, naphthalene, phenanthrene, and 2-methylnaphthalene

         b. HMW PAHs: benzo(a)anthracene, benzo(a)pyrene, benzo(b)fluoranthene, benzo(g,h,i)perylene, benzo(k)fluoranthene, chrysene, dibenzo(a,h)anthracene, fluoranthene, indeno(1,2,3-cd)pyrene and pyrene

      3. PCB Polychlorinated biphenyl

      4. DDx Dichlorodiphenyltrichloroethane (DDT), and its primary breakdown products; Dichlorodiphenyldichloroethane (DDD) and Dichlorodiphenyldichloroethylene (DDE)

      5. Mercury

ARR0141

Diamond Alkali Superfund Site OU2 Allocation Guide
*ADR Confidential*

      6.  Copper

      7.  Lead

      8.  Dieldrin

  f.  **EPA**:  The United States Environmental Protection Agency.

  g.  **Operable Unit 2 (OU2):**  An operable unit of the Site consisting of the lower 8.3 miles of the Passaic River, in or about Essex and Hudson Counties, as defined by the EPA in the ROD.

  h.  **Participating Allocation Party (PAP)**:  An Allocation Party that has agreed to participate in the Allocation, as noted in Attachment B.

## 3. SCOPE OF ALLOCATION

### 3.1 Determination of relative relationship between identified Allocation Parties

  a.  The Allocation is being conducted at the direction of EPA, as set forth in, among other things: (i) EPA's letters to the Allocation Parties dated September 18, 2017, November 28, 2017, January 5, 2018, February 16, 2018, February 23, 2018, and May 1, 2018 (Attachment C); and (ii) the Revised Work Plan for the Allocation (denoted as Task Order #096 under Contract EP-W-14-020) (Attachment D).

  b.  EPA has designated the Allocation as the first phase of a two (2) phase ADR facilitated settlement process to obtain future cash-out and work party settlements with the Allocation Parties.  The first phase (Phase 1) is the Allocation conducted by Allocator David Batson.  The second phase (Phase 2) is subsequent negotiations between the Allocation Parties and EPA utilizing the Allocator's recommendation.  In its September 18, 2017 letter to the Allocation Parties, EPA notes that the OU2 allocation is intended to result in cash-out settlement offers from EPA and identify those parties that should participate in consent decree negotiations for the performance of the remedial action for OU2.

  c.  As structured by EPA, the goal of the Allocation is to provide the EPA with a basis for such future settlements with the Allocation Parties.  Through conduct of the Allocation, the Allocator will recommend relative shares of responsibility between and among the Allocation Parties for that portion of the costs associated with the remedial design and remedial action for Diamond Alkali OU2 determined, during Phase 2, to be attributable to the Allocation Parties as a group.  The Allocator will recommend a share for each Allocation Party with respect to each facility identified with each such Allocation Party in Attachment A (but not including relative shares for those facilities for which an Allocation Party has settled with the EPA as part of the Early Settlement Option pursuant to Section 4.2), whether the party participates in the allocation process or not.  The allocated shares recommended by the Allocator shall total to 100% of the aggregate responsibility of the Allocation Parties (but not including those facilities for which an early cash-out settlement has been reached pursuant to Section 4.2) to be determined during Phase 2.

  d.  While neither EPA nor the Allocation Parties are bound by the results of the Allocation and subject to EPA's acceptance of the Final Allocation Recommendation Report consistent with the provisions of the Revised Work Plan, EPA has committed to use the Allocator's recommended shares of relative responsibility among the Allocation Parties as a primary factor in its future negotiations in Phase 2 with the goal of reaching agreement with the Allocation Parties on future cash-out and work party settlements.

ARR0142

For Public Disclosure by Consent of the Participating Allocation Parties and EPA (Fall 2022)
Case 2:22-cv-07326-MCA-LDW   Document 289-2   Filed 01/31/24   Page 70 of 231 PageID: 4960
Diamond Alkali Superfund Site OU2 Allocation Guide
*ADR Confidential*

e.  Exclusions from the Allocation - The Allocator will not recommend shares of responsibility for the costs associated with OU2 during Phase 1 to any person or entity not noticed or designated by EPA as an Allocation Party.  However, the Allocator's Preliminary Allocation Recommendation Report and Final Allocation Recommendation Report may include factual and other information about parties that are not Allocation Parties to the extent such facts and information are relevant to the relative responsibility of any of the Allocation Parties.

## 3.2 Retention of Rights

By participating in the Allocation, no Participating Allocation Party waives, releases or otherwise relinquishes any legal or equitable defense in any subsequent proceeding, nor any right or ability to later object in any fashion to any aspect of the Allocation, including without limitation to object based on the exclusions contained in paragraph 3.1.e., nor an argument that the Allocation does not support a settlement between EPA and one or more Allocation Parties.  Participation in the Allocation is not an indication of liability regarding OU2 or any aspect of the Diamond Alkali Superfund Site.

## 4. ALLOCATION TIMELINE (INCLUDING SUBMISSION DEADLINES AND DESCRIPTIONS OF VARIOUS TASKS)

### 4.1 Allocation Related Tasks and Timeline

The Allocation Team and PAPs will complete the following allocation related tasks in compliance with the following timeline:

**a.  Tasks Required of All PAPs and the Allocation Team**

6/11/18   Allocation Team completes Guide in consultation with PAPs and EPA

6/15/18   PAPs provide non-confidential documents deemed relevant by EPA, as identified in email from Judy Manley dated 5/25/18, to Allocation Team and Allocation Team loads documents into non-confidential document repository

**b.  Tasks Required of PAPs Requesting Early Settlement Opportunity and the Allocation Team**

6/22/18   PAPs interested in submitting a request for consideration for early settlement with respect to a facility identified with such PAP in Attachment A send a notice of intent to the Allocation Team.

6/29/18   In compliance with Section 4.2, PAPs submit to Allocation Team and all other PAPs: (1) a written self-designation as eligible for early settlement with respect to relevant facility location (up to 3-page description, exclusive of attachments), and (2) completed Preliminary Questionnaire, with expert report as deemed necessary by the submitting PAP to support facts indicated in such Preliminary Questionnaire.  Each expert report shall be limited to a maximum of twenty-five (25) pages of text and include a minimum of a one page executive summary.  In addition, each PAP requesting early settlement consideration shall, in such form as directed by the Allocation Team, submit indices of non-

ARR0143

For Public Disclosure by Consent of the Participating Allocation Parties and EPA (Fall 2022)
Case 2:22-cv-07326-MCA-LDW Document 289-2 Filed 01/31/24 Page 71 of 231 PageID: 4961
Diamond Alkali Superfund Site OU2 Allocation Guide
*ADR Confidential*

confidential and confidential documents, and copy of all documents noted in such indices, that either: (1) based on a search of documents in its possession and control consistent with guidance set forth in the "List of Relevant Document Categories for Allocation" (Attachment F) were not previously submitted to the Allocation Team with respect to such facility location; or (2) were relied upon in drafting its written self-designation as eligible for early settlement and Preliminary Questionnaire, and were not previously provided to the Allocation Team for loading into an appropriate confidential or non-confidential document repository.

| | |
|---|---|
| 7/6/18 | Allocation Team submits recommendation on relevancy of additional non-confidential documents to PAPs and EPA |
| 7/20/18 | *(EPA communicates decision regarding relevancy of additional non-confidential documents to Participating Allocation Parties and the Allocation Team)* |
| 7/20/18 | Allocation Team loads documents into appropriate non-confidential or confidential document repository |
| 7/27/18 | Allocation Team submits preliminary draft Data Reports for Early Settlement Facilities to PAPs for review (Comments due to Allocation Team by 8/3/18) |
| 8/10/18 | Allocation Team submits draft Data Reports for Early Settlement Facilities to PAPs and EPA |
| 8/24/18 | PAPs submit comments on draft Data Reports for Early Settlement Facilities |
| 8/31/18 | Allocation Team submits final Early Settlement Facility Data Report to PAPs and EPA |
| 8/31/18 | Allocation Team submits preliminary draft recommendations regarding Early Settlement Facilities to PAPs for review (Comments due to Allocation Team by 9/7/18) |
| 9/7/18 | PAPs with Early Settlement Facilities submit executed certification of data search regarding non-confidential documents |
| | Upon receipt of executed certification, Allocation Team loads Early Settlement Facility Data reports into ADR Confidential repository |
| 9/25/18 | Allocation Team submits draft recommendations regarding Early Settlement Facilities to PAPs and EPA |
| 10/12/18 | PAPs submit comments on draft Early Settlement Facility recommendations |

ARR0144

For Public Disclosure by Consent of the Participating Allocation Parties and EPA (Fall 2022)
Case 2:22-cv-07326-MCA-LDW   Document 289-2   Filed 01/31/24   Page 72 of 231 PageID: 4962
Diamond Alkali Superfund Site OU2 Allocation Guide
*ADR Confidential*

| 10/19/18 | Allocation Team submits final Early Settlement Facility recommendations to EPA and PAPs |
|---|---|
| TBD | (*EPA communicates determination regarding facilities eligible for early settlement*) |

**c. Tasks Required of the Allocation Team and PAPs for Facilities Not Self-Designated by PAPs as Early Settlement Facilities**

| 4/19/19 | PAPs submit to Allocation Team and all other PAPs, with respect to each of the PAPs' identified facilities: (1) a Preliminary Factual Statement, which includes a written summary of facts regarding the facility's connection with OU2 (up to 5-page description, exclusive of attachments), and (2) completed Preliminary Questionnaire, with expert report(s) as deemed necessary by the submitting PAP to support facts indicated in such Preliminary Questionnaire. Each expert report shall be limited to a maximum of twenty-five (25) pages of text and include a minimum of a one page executive summary. In addition, each PAP shall, in such form as directed by the Allocation Team, submit indices of non-confidential and confidential documents, and a copy of all documents noted in such indices, that either: (1) based on a search of documents in its possession and control consistent with guidance set forth in the "List of Relevant Document Categories for Allocation" (Attachment F) were not previously submitted to the Allocation Team with respect to such facilities; or (2) were relied upon in drafting its Preliminary Factual Statement(s) and Preliminary Questionnaire(s), and were not previously provided to the Allocation Team for loading into an appropriate confidential or non-confidential document repository. |
|---|---|
| 5/3/19 | Allocation Team submits determination on relevancy of additional non-confidential documents to PAPs |
| 5/10/19 | Allocation Team loads approved documents into appropriate non-confidential or confidential document repository |
| 5/17/19 | Allocation Team submits a preliminary recommendation regarding allocation factors and methodology for the determination of relative shares of responsibility for relevant facility locations between and among the Allocation Parties to PAPs and EPA |
| 5/24/19 | Allocation Team meeting with the PAPs regarding preliminary recommendation on allocation factors and methodology |
| 6/7/19 | Allocation Team submits a final allocation factors and methodology for the determination of relative shares of responsibility for relevant facility locations between and among the Allocation Parties to PAPs and EPA |
| 6/28/19 | Allocation Team submits draft Data Reports for all remaining identified facilities of Allocation Parties to PAPs for review |
| 8/23/19 | PAPs submit comments on draft Allocation Party Facility Data Reports |

ARR0145

9/20/19 Allocation Team submits final Allocation Party Facility Data Reports to PAPs

9/27/19 PAPs submit executed certification regarding search for non-confidential documents, to Allocation Team with copies to PAPs

    Upon receipt of executed certification, Allocation Team loads Allocation Party Facility Data Reports into ADR Confidential repository

11/15/19 PAPs submit Position Briefs, with expert report as deemed necessary by the submitting PAP, to Allocation Team and all PAPs

1/10/20 PAPs submit Responsive Briefs, with expert report as deemed necessary by the submitting PAP, to Allocation Team and all PAPs

4/3/20 Allocation Team submits Preliminary Allocation Recommendation Report to PAPs for consideration

5/1/20 Allocation Team meeting with PAPs regarding Preliminary Allocation Recommendation Report

6/5/20 PAPs submit comments on Preliminary Allocation Recommendation Report to Allocation Team and all PAPs

7/3/20 Allocation Team submits Final Allocation Recommendation Report to PAPs and EPA

## 4.2 Early Settlement Option

Each Participating Allocation Party with an identified facility that meets eligibility criteria established by EPA will have the opportunity to seek an early cash-out settlement with EPA as an alternative to participation in the Allocation with respect to such facility.

**a. EPA eligibility criteria** – A PAP must demonstrate that its identified facility meets the requirements established by EPA to be eligible for consideration of an early cash-out settlement with EPA and removal from consideration in the allocation process. Eligibility criteria were established in the letter from Eric Wilson to the Operable Unit 2 potentially responsible parties, dated May 17, 2017 (Attachment C), as further refined through discussions between EPA staff and the Allocator (which the Allocator communicated to the Participating Allocation parties via email on April 6, 2018 and during the April 24 meeting of the Participating Allocation Parties). Based on these communications, a PAP facility may qualify for an early cash-out settlement in the following circumstances:

(i) The PAP is able, based on information in the non-confidential document repository or submitted by the PAP to support its written self-designation as eligible for early settlement and Preliminary Questionnaire and without the need to provide expert analysis of facts regarding the fate and transport of COCs, to show a lack of discharge/release of any of the COCs from the relevant facility into the Lower Passaic River, whether from facility operations or from contamination otherwise present on the property, including from contaminated soils. For example, if a PAP did not use the COCs on the

For Public Disclosure by Consent of the Participating Allocation Parties and EPA (Fall 2022)
Case 2:22-cv-07326-MCA-LDW   Document 289-2   Filed 01/31/24   Page 74 of 231 PageID: 4964
Diamond Alkali Superfund Site OU2 Allocation Guide
*ADR Confidential*

facility site or the PAP can show that any COCs did not leave the facility, then the PAP may be eligible for an early cash-out settlement with respect to such facility.

b. **Process for Requesting Early Settlement Consideration** – A PAP may request the recommendation of the Allocator that its identified facility be considered a candidate for an early cash-out settlement with EPA by submitting the documents noted in 4.2.c to the Allocation Team and all PAPs on or before the deadline noted in 4.1.b. above, June 29, 2018.

c. **Required Submissions** - The following submissions are required of a PAP that requests consideration for an early settlement opportunity with respect to one or more of its identified facility(ies):

    (i) Justification of Eligibility for Early Settlement – This document shall comprise a written explanation of no more than three (3) pages detailing the reasons that the PAP's facility meets the established criteria for consideration for an early settlement with EPA.

    (ii) Preliminary Questionnaire – Requesting parties shall provide a completed Preliminary Questionnaire in compliance with the requirements and deadline of 4.1.b. above.

    (iii) Certification – Requesting parties shall provide an executed certification of their data search regarding non-confidential documents in compliance with the requirements and deadline of 4.1.b. above. A template for creation of such certification is at Attachment H.

d. **Role of Allocator** – The Allocator will review and provide a final recommendation on whether a requesting party's facility meets the criteria for consideration by EPA for an early settlement in compliance with the tasks and deadlines noted in 4.1.b. above.

e. **Anticipated EPA Settlement** – It is anticipated that any Party with which EPA enters a settlement following the early cash-out recommendation of the Allocator will be offered a settlement on the same terms and conditions as the cash-out settlement agreements previously entered by the United States with OU2 PRPs (See Administrative Settlement Agreement, CERCLA Docket No. 02-2017-2023). Any PAP that enters a settlement with EPA with respect to a facility will not be assigned a recommended allocation share by the Allocator for such facility. To the extent such facility was the only facility identified for the PAP on Attachment A, such PAP will be removed from the list of Allocation Parties.

f. **No Adverse Effect** - The request by a PAP for a recommendation of the Allocator that it be considered a candidate for an early cash-out settlement with EPA pursuant to Section 4.2.c. regarding one of multiple facilities identified by EPA noted in Attachment A shall not affect the ability of such PAP to participate in the subsequent Allocation activities regarding another of its identified facilities.

g. **Ability to Rejoin Allocation** - Any PAP that EPA initially determines ineligible for an early settlement and any PAP EPA determines is eligible for an early settlement (based on the recommendation of the Allocator) but does not enter a settlement with EPA for any reason, may rejoin ongoing allocation activities on the same basis and with the same rights as other PAPs. Reasonable accommodation, commensurate with the time in the Allocation process a PAP rejoins, will be provided by the Allocator to ensure that any party rejoining ongoing allocation activities may augment prior submissions or provide any submission required to fulfill its responsibilities, or otherwise avail itself of any rights, under 4.1.c. above.

ARR0147

### 4.3 Document Repositories

The Allocator will establish limited access, password protected, electronic databases as required to maintain and allow PAPs, and EPA as designated herein, to view documents and information used in conduct of the Allocation.

a. **Non-confidential Document Repositories** – Documents in the non-confidential document repository may be viewed by the Allocation Team, PAPs, and EPA, and used by EPA and the PAPs for any purpose.

    (i)    Non-Confidential allocation documents – Documents in the non-confidential repository will come from the following sources;

        1. Documents received by the Allocator from EPA, and

        2. Non-confidential documents recommended for inclusion by PAPs and deemed relevant to conduct of the Allocation by EPA or the Allocator.

        3. If the number of pages of documents submitted by a PAP is determined to be unreasonably excessive, AlterEcho will discuss the issue with EPA as a contractual matter and propose a resolution.

    (ii)    Determination of PAP Recommended Documents for Inclusion in Non-Confidential Document Repository - In compliance with the timeframes specified in Section 4.1, additional documents for the non-confidential document repository are determined in the following manner:

        1. PAPs submit an index of additional documents recommended for inclusion in the non-confidential document repository to the Allocator based on a search of documents in its possession and control consistent with guidance set forth in the "List of Relevant Document Categories for Allocation" (Attachment F);

        2. The Allocator submits a determination on relevancy of recommended additional documents to conduct of the allocation to PAPs, with an explanation for the exclusion of any recommended document;

b. **Confidential EPA-Accessible Document Repository** - Documents in the confidential EPA-accessible document repository may be viewed by the Allocation Team, PAPs, and EPA, but are ADR confidential and may be utilized only for purposes of the 2-phase ADR facilitated settlement process.

    (i)    Confidential EPA-accessible repository documents – Documents in the confidential EPA-accessible document repository will comprise ADR confidential work product of the Allocator created for purposes of the allocation, including:

        1. Allocator's Final Early Settlement Recommendation Report; and

        2. Allocator's Final Allocation Recommendation Report.

c. **Confidential Document Repository** - Documents in the confidential document repository may be viewed by only the Allocation Team and PAPs, are ADR confidential, and may be utilized only for purposes of the 2-phase ADR facilitated settlement process.

    (i)    Confidential repository documents – Documents in the confidential document repository will comprise ADR confidential documents provided to the Allocator by PAPs during the conduct of the Allocation, including party work product, submissions, and expert reports. Documents in the confidential document repository will not be used as the main factual basis for the allocation share assigned by the

ARR0148

Allocator in the Final Allocation Recommendation Report. Documents in the confidential document repository will include the following:

1.  Preliminary Questionnaire

2.  Self-Designation of Eligibility for Early Settlement

3.  Preliminary Factual Statement

4.  Position Brief

5.  Responsive Brief

**4.4 Allocation Party Facility Data Reports**

a.  **Purpose of Data Reports** – The Allocation Team will prepare a data report for each facility identified with an Allocation Party in Attachment A that summarizes the site-related, factual information available to the Allocation Team regarding the impact of the Party's use, storage, generation, disposal, remediation, and/or handling of COCs related to the facility on the need for and costs of the OU2 remedy.

b.  **Content of Data Reports** – A template to be used by the Allocation Team in drafting the Allocation Party Facility Data Reports is included as Attachment G.

   (i)  If an Allocation Party has more than one facility, it will receive a data report for each of the different facilities. The Allocation Team may combine the Facility Data Reports of an Allocation Party that has more than one facility to avoid duplication of reported data.

   (ii)  An Allocation Party's data report will include information on the ownership and/or operations of an entity associated with an Allocation Party's facility identified by EPA listed in Attachment A and identified by EPA or the Allocation Team as affiliated with the Allocation Party, unless the Allocation Party disagrees that it has accepted responsibility for the entity's actions or liabilities. If EPA or the Allocation Team has listed an entity as being affiliated with an Allocation Party facility but the Allocation Party disagrees that it has responsibility for the actions or liabilities of such entity, the Allocation Team and Allocation Party will raise the matter with EPA for resolution.

**4.5 Participating Allocation Party Certifications of Relevant Document Search**

a.  In compliance with the time frames specified in Section 4.1., the PAPs will execute and provide to the Allocation Team a certification regarding the nature of their search and provision of non-confidential documents for use in conduct of the Allocation. A template for use in creating such certifications is included as Attachment H.

b.  The Preliminary Questionnaire to be submitted in compliance with Section 4.1 (Attachment I) includes a required certification regarding the nature of their search and provision of documents for use in conduct of the Allocation.

c.  PAPs shall include and execute the following certification regarding the nature of their search and provision of documents for use in conduct of the Allocation as part of any Justification of Eligibility for Early Settlement, Advocacy Brief, and Responsive Brief submitted in compliance with Section 4.1.

ARR0149

For Public Disclosure by Consent of the Participating Allocation Parties and EPA (Fall 2022)
Case 2:22-cv-07326-MCA-LDW   Document 289-2   Filed 01/31/24   Page 77 of 231 PageID: 4967
Diamond Alkali Superfund Site OU2 Allocation Guide
*ADR Confidential*

CERTIFICATION

By signing this certification, the Allocation Party identified below certifies that, to the best of its knowledge and belief, the factual information reflected in its [*include name of submitted document*] is (1) true, correct, and complete, and (2) based on the result of the search for documents pursuant to the Allocation Guide. The Allocation Party further certifies that, to the extent it relied on documents in preparing its [*include name of submitted document*] that had not already been submitted to the Allocator, it has submitted such documents to the Allocator for inclusion in the appropriate allocation document repository and use in the Allocation.


FOR _____ _____ :
[*Insert Name of Allocation Party*]



_____
Dated[*Insert Name of Signatory*]
[*Title*]
[*Company*]
[*Address*]


**5.  RIGHTS & RESPONSIBILITIES OF PARTICIPANTS**

**5.1  Submission of Joint Papers/Presentations**

   a.  With the exception of submissions related to Early Settlement consideration (Section 4.2.c.) and submission of individual Preliminary Questionnaires (Section 4.1.c.) and Certifications (Section 4.5), any PAP may satisfy its requirement for a required submission, in whole or in part, by identifying itself as the member of a subgroup of the Allocation Parties providing the submission on behalf of its subgroup members.  In addition to required submissions, any PAP or group of PAPs may voluntarily submit a separate certified Preliminary Factual Statement and/or Preliminary Questionnaire regarding a facility of a non-participating Allocation Party.

**5.2  Communications with Allocator**

   a.  Communications with the Allocator or the Allocation Team shall be limited to communications specified in this Section 5.2 of the Guide.

   b.  *Ex Parte* Rules - Communications by a PAP or group of PAPs to the Allocator and the Allocation Team shall be limited to required submissions and communications during participation in meetings or conference calls of the group of PAPs convened by the Allocator.

   c.  Exceptions to *Ex Parte* Rule - A PAP or group of PAPs may communicate via email;

      (i)  with the Allocator for any purpose so long as all PAPs are copied on such communication, and

      (ii)  with a member of the Allocation Team for a purely technical reason, such as assistance with difficulty accessing the database, however, the Allocator retains the discretion to share such communications with all other PAPs as deemed prudent.

   d.  The Allocator may contact and conduct communications with PAPs, individually or in groups, in any manner he deems appropriate to support conduct of the Allocation.

ARR0150

e.  The Allocator and Allocation Team shall limit communications with EPA to communications that are either; (1) specifically required by the Revised Work Plan (Attachment D), (2) related to the administration of EPA's contract EP-W-14-020 with AlterEcho, or (3) required in the judgment of the Allocator for the efficient functioning of the Allocation. Except for communications relating to payment for services pursuant to AlterEcho's contract with EPA or communications that are required by the Revised Work Plan or AlterEcho's contract with EPA, all communications between AlterEcho and EPA shall be in writing with a copy provided to all Participating Allocation Parties.

f.  Except for communications relating to payment for services pursuant to AlterEcho's contract with EPA or communications that are required by the Revised Work Plan or AlterEcho's contract with EPA, the Allocator shall notify the Participating Allocation Parties in writing of any communication from EPA, not made pursuant to Section 5.2.e, received by the Allocator or the Allocation Team regarding the Allocation, with a description, subject to appropriate confidentiality protections, of the communication and any associated discussions.

## 6. CONFIDENTIALITY

### 6.1 Confidentiality Agreement

a.  Each of the PAPs previously executed the Diamond Alkali Superfund Site OU2 Allocation Confidentiality Agreement (Attachment J). This Section 6 supplements and clarifies the understanding of the PAPs regarding the confidentiality of the Allocation process.

### 6.2 Scope of Confidentiality Protections

a.  Except as specifically enumerated in Section 6.3 below, all communications and submissions related to conduct of the Allocation, are protected by and will be held confidential by the Participating Allocation Parties, the Allocation Team, and EPA, pursuant to the provisions of 5 USC 574 and other applicable authorities, the OU2 Allocation Confidentiality Agreement between and among the PAPs and Allocation Team (Attachment J), and the terms of the Revised Work Plan between the Allocation Team and EPA (Attachment D).

b.  The PAP representatives, on behalf of their clients, and the Allocator, on behalf of the Allocation Team, have entered a Confidentiality Agreement (Attachment J) evidencing their understanding of the confidentiality requirements of 5 USC 574 and their agreement to maintain the confidentiality of all allocation related communications. Through its letters to the Allocation Parties dated May 1, 2018 (Attachment A) EPA has set forth its understanding of the confidentiality requirements of 5 USC 574.

### 6.3 Exceptions to the Confidentiality of the Allocation Process

a.  It is the understanding of the PAPs and EPA that the documents noted in 4.3.a.(i) will be considered non-confidential documents and available for use by EPA and the Participating Allocation Parties for any purpose.

## 7. CONDUCT OF ALLOCATION

### 7.1 General Information

At Superfund sites involving contaminated sediments, such as OU2 of the Diamond Alkali Superfund Site, an equitable allocation involves the consideration and application of relevant allocation factors to the facts of the case in order to determine the relative responsibility of PRPs for the costs associated with remediation of harm created by each party's activities. In such cases, allocations are based primarily on an analysis of activities of parties that contributed to the need for

**ARR0151**

For Public Disclosure by Consent of the Participating Allocation Parties and EPA (Fall 2022)
Case 2:22-cv-07326-MCA-LDW   Document 289-2   Filed 01/31/24   Page 79 of 231 PageID: 4969
Diamond Alkali Superfund Site OU2 Allocation Guide
*ADR Confidential*

and scope of remedial efforts to address the contamination at issue (i.e., that are driving the need for and cost associated with the investigation and remediation of OU2).

An allocation, as an equitable distribution of remedy costs, should consider the type of anticipated remedy in order to determine the relationship between a Party's activities and the costs of the remedy. (See; United States v. Atlas Minerals and Chems., Inc., Civ. A. No. 91-5118, 1995 U.S. Dist. LEXIS 13097, at *271 (E.D. Pa. Aug. 22, 1995) ("Ultimately, the allocation of response costs should consider each party's relative responsibility for (1) the need for remediation at the site, (2) the selection of the particular remedy, and (3) the cost of the selected remedy.")

The remedy selected for OU2 of the Diamond Alkali Site addresses contaminated sediments in the lower 8.3 miles of the Passaic River. Varieties of facilities adjacent to, or within the sewershed of the waterway, have engaged in operations or practices that have led to the release of a wide variety of hazardous substances into the environment over an extended period. These substances have ultimately migrated to the aquatic sediments through various pathways, including process discharges, spills, dumping, sewer systems, surface (land) runoff, and surface and groundwater flow. The current presence of these substances in the sediments has been affected by daily tidal flows, daily river flows, storm events, contributions from upstream and downstream sources, and navigational dredging.

EPA has determined that sediments of the lower 8.3 miles of the Lower Passaic River pose an unacceptable risk to human health and the environment due to the presence of eight identified COCs which are bound to fine-grained sediment particles located primarily in this reach of the river. The EPA identified COCs include dioxin/furans, PCBs, mercury, DDx, copper, dieldrin, PAHs, and lead.

As noted in the Record of Decision for OU2 (Attachment K), the remedy selected for OU2 is a final action for sediments and an interim action for the water column. The primary components of this selected remedy include the following:

- An engineered cap, generally consisting of two feet of sand and armored where necessary to prevent erosion constructed over the river bottom of the lower 8.3 miles

- Before installation of the engineered cap, dredging of the river bank to bank will occur (approximately 3.5 million cubic yards) so that the cap can be placed without increasing the potential for flooding, to allow for the continued commercial use of a federally-authorized navigation channel in the 1.7 miles of the river closest to Newark Bay, and to accommodate reasonably-anticipated future recreational use above River Mile 1.7.

- Dredged materials will be barged or pumped to a sediment processing facility in the vicinity of the Lower Passaic River/Newark Bay shoreline for dewatering and transport to permitted treatment facilities and landfills in the United States or Canada for disposal

- Mudflats dredged during implementation of the remedy will be covered with an engineered cap consisting of one foot of sand and one foot of mudflat reconstruction (habitat) substrate

- Institutional controls will be implemented to protect the engineered cap and current New Jersey prohibitions on fish and crab consumption will be enhanced with additional community outreach, and

ARR0152

- Long-term monitoring and maintenance of the engineered cap and long-term monitoring of fish, crab, sediment and water column will be performed to determine when remedial action objectives and remedial goals are reached

The selected remedy addresses all 8.3 miles of OU2 without variation in remedial action based on the existence or location of a specific COC or contaminant level. The primary design parameter for dredging is to allow for placement of the engineered cap without an increase in the potential for flooding of the Lower Passaic River and to allow for continued use of a part of the navigation channel.

## 7.2 Purpose and Role of Allocation

a. As noted in Section 3.1, the Allocation is intended to serve as the first phase of a two-stage settlement process to obtain cash-out and work party agreements between the EPA and the Allocation Parties. As such, it is an intentional variation of how a typical private allocation process would be conducted. Unlike a typical allocation, the outcome of which is a recommendation on the share of responsibility of each PRP for total site related costs, this Allocation will provide a recommendation on the relative shares of responsibility between and among the Allocation Parties for that portion of the costs associated with the remedial design and remedial action for Diamond Alkali OU2 determined in the future to be attributable to the Allocation Parties as a group.

## 7.3 Allocation Parameters

a. The Allocator will provide a recommendation on the share of responsibility of the Allocation Parties related to each of the facilities identified by EPA listed in Attachment A.

b. The responsibility of Allocation Parties will be analyzed and calculated only for the period of their actual ownership/operation of each of their related facility(ies) and any additional period for which they have legal liability for the actions of another entity associated with the facility.

c. Though neither the natural flow of groundwater or rainwater bearing COCs under or across the surface of a PAP's facility will be considered for purposes of determining the responsibility of such a PAP during the Allocation, the substantial actions of a PAP that causes contamination by COCs of groundwater or rainwater (such as a spill, drum burial, or disturbance of contaminated soil without appropriate protections) that has the potential to reach the Passaic River may be considered by the Allocator in conduct of the Allocation.

## 7.4 Advocacy Briefs

a. In compliance with the schedule specified in Section 4.1.c., each PAP has the opportunity to submit an Allocation Position Brief and Responsive Brief for each facility identified with such PAP in Attachment A for the consideration of the Allocator.

b. Allocation Position Brief – Allocation Position Briefs shall be no longer than twenty (20) pages in length, exclusive of attachments. Each expert report shall be limited to a maximum of twenty-five (25) pages of text and shall include a minimum of a one page executive summary. PAPs may use Allocation Position Briefs to provide the Allocator with perspective and suggestions deemed relevant to the Allocation by the submitting PAP, including opinions regarding allocation methodology and equitable factors for use in conduct of the Allocation, legal and equitable considerations for determining the responsibility of the submitting PAP, , other PAPs, and non-participating Allocation Parties, the distribution of responsibility among the Allocation Parties, and other information deemed relevant by the submitting PAP for the consideration of the Allocator.

ARR0153

For Public Disclosure by Consent of the Participating Allocation Parties and EPA (Fall 2022)
Case 2:22-cv-07326-MCA-LDW   Document 289-2   Filed 01/31/24   Page 81 of 231 PageID: 4971
Diamond Alkali Superfund Site OU2 Allocation Guide
***ADR Confidential***

c.  Responsive Brief – Responsive Briefs shall be no longer than fifteen (15) pages in length, exclusive of attachments.  Each expert report shall be limited to a maximum of twenty (25) pages of text and shall include a minimum of a one page executive summary.  PAPs may use Responsive Briefs to provide the Allocator with perspective and suggestions deemed relevant to the Allocation by the submitting PAP, including comment on the perspective and suggestions of other PAPs expressed in their submission of an Advocacy Brief.

## 7.5  Allocation Recommendation Report

a.  In compliance with the schedule specified in Section 4.1.c. and the provisions of the Revised Work Plan, the Allocator will provide to the Allocation Parties a Preliminary and Final Allocation Recommendation Report and to EPA a Final Allocation Recommendation Report for their use in Phase 2 of the facilitated settlement process.  The Allocation Recommendation Report will recommend relative shares of responsibility between and among the Allocation Parties for that portion of the costs associated with the remedial design and remedial action for Diamond Alkali OU2 determined, during Phase 2, to be attributable to the Allocation Parties as a group.  The Allocator will recommend an equitable share for each Allocation Party's related facilities (other than for those facilities for which an Allocation Party has settled as part of an early cash-out settlement pursuant to Section 4.2), whether the Allocation Party has participated in the Allocation or not.

b.  In compliance with the schedule specified in Section 4.1.c., PAPs may provide comments and suggestions regarding the Preliminary Allocation Recommendation Report for the consideration of the Allocator.  Such written comments shall be no longer than fifteen (15) pages in length.

c.  The Allocator will develop the Allocation Recommendation report in consultation with the Participating Allocation Parties, taking into consideration the equitable factors, principles, and methodology to be developed pursuant to Section 7.6.

d.  The Final Allocation Recommendation Report will include an explanation of the basis upon which the Allocator made his allocation determinations, including how ambiguities or gaps in site data were resolved or taken into account.  In addition, the Final Allocation Recommendation Report will include as attachments, or EPA will be provided access to, the sources of data upon which the recommendation of the Allocator is premised, including the Allocation Party Facility Data Reports, and the Participating Allocation Party Certifications of Relevant Document Search submitted pursuant to Section 4.5.

## 7.6  Determination of Equitable Factors and Methodology

a.  In compliance with the schedule specified in Section 4.1.c., the Allocator will develop relevant allocation factors and methodology for the determination of relative shares of responsibility between and among the Allocation Parties for that portion of the costs associated with the remedial design and remedial action for Diamond Alkali OU2 determined in the future to be attributable to the Allocation Parties as a group in consultation with the PAPs and EPA.  Such allocation factors and methodology shall be developed in consideration of case law, judicial dicta, and practice standards of allocation professionals relevant to the allocation of responsibility of PRPs at similar contaminated sediment hazardous waste sites.

b.  Based on analysis of received allocation documents and site technical information, review of case law, judicial dicta, and practice standards of allocation professionals relevant to the allocation of responsibility of PRPs at similar contaminated sediment hazardous waste sites, and prior input from the PAPs and EPA, the Allocator will provide the PAPs and EPA with his preliminary recommendation regarding allocation factors and methodology for the determination of relative shares of responsibility between and among the Allocation Parties for

ARR0154

that portion of the costs associated with the remedial design and remedial action for Diamond Alkali OU2 determined in the future to be attributable to the Allocation Parties as a group for their consideration in compliance with the schedule specified in Section 4.1.c.

c. PAPs will have the opportunity to provide opinions and recommendations to the Allocator regarding the application of such relevant allocation factors and methodology through the submittal of Allocation Position Briefs, Responsive Briefs, and comments on the Allocator's Preliminary Allocation Recommendation Report.

## TABLE OF ATTACHMENTS

A. CHART OF ALLOCATION PARTIES, FACILITIES, AND REPRESENTATIVES

B. LIST OF PARTICIPATING PARTIES

C. LETTERS FROM ERIC WILSON, EPA, TO THE ALLOCATION PARTIES DATED SEPTEMBER 18, 2017, NOVEMBER 28, 2017, JANUARY 5, 2018, FEBRUARY 16, 2018, FEBRUARY 23, 2018, AND MAY 1, 2018

D. REVISED WORK PLAN FOR THE ALLOCATION (DENOTED AS TASK ORDER #096 UNDER CONTRACT EP-W-14-020)

E. LETTER FROM ERIC WILSON, EPA, TO THE OPERABLE UNIT 2 POTENTIALLY RESPONSIBLE PARTIES, DATED MAY 17, 2017

F. LIST OF RELEVANT DOCUMENT CATEGORIES FOR ALLOCATION

G. TEMPLATE: ALLOCATION PARTY DATA REPORT

H. TEMPLATE: CERTIFICATION OF PARTICIPATING ALLOCATION PARTY REGARDING CONDUCT OF SEARCH FOR NON-CONFIDENTIAL DOCUMENTS

I. PRELIMINARY FACTUAL QUESTIONNAIRE

J. DIAMOND ALKALI SUPERFUND SITE OU2 ALLOCATION CONFIDENTIALITY AGREEMENT

K. RECORD OF DECISION FOR OU2

ARR0155

**Diamond Alkali Superfund Site OU2**
**Allocation Guide**

# Attachment A

**ATTACHMENT A**

| Allocation Party | Related OU2 Facility Address | Entities Associated w Property for Which Allocation Party Allegedly has CERCLA Responsibility re Entities' Ownership/Operation of Facility |
|---|---|---|
| **21st Century Fox America, Inc. (21CFA)** | > 100 Lister Ave. Newark, NJ | Chris-Craft Industries, Inc.        Baldwin-Montrose Chemical Co. Montrose Chemical Co. |
| **Alden Leeds Inc.** | > 2145 McCarter Highway<br>> 100 Hakensack Ave Newark, NJ<br><br>> 55 Jacobus Avenue Kearny, NJ | Leeds Terminal<br>Q-Pak |
| **Alliance Chemical Inc.** | > 33 Avenue P Newark, NJ | Pfister<br>Pfister Urban Renewal Corporation |
| **Arkema Inc.** (Legacy Site Services) | > 25 & 67 Main Street Belleville, NJ | Wallace & Tiernan<br>Elf Atochem North America Inc |
| **Ashland LLC** | > 221 Foundry St. Newark, NJ | Ashland Chemical Company |

**ARR0157**

**ATTACHMENT A**

| Allocation Party | Related OU2 Facility Address | Entities Associated w Property for Which Allocation Party Allegedly  has CERCLA Responsibility re Entities' Ownership/Operation of Facility |
|---|---|---|
| **Atlantic Richfield (ARCO)** | > 86 Doremus Ave.<br>  Newark, NJ | The Atlantic Refining Company |
| **Atlas Refining, Inc.** | > 142 Lockwood St.<br>  Newark, NJ | |
| **Automatic Electro Plating Corp.** | > 185 Foundry Street Complex<br>  Newark, NJ<br>  (Bldgs 19, 21, 22) | |

**ARR0158**

**ATTACHMENT A**

| Allocation Party | Related OU2 Facility Address | Entities Associated w Property for Which Allocation Party Allegedly has CERCLA Responsibility re Entities' Ownership/Operation of Facility |
|---|---|---|
| **BASF Corporation** on its own behalf, and on behalf of its wholly owned susidiary, BASF Catalysts, LLC | > BASF Catalysts, LLC   One West Central Avenue   East Newark, NJ<br><br>BASF Corporation   50 Central Ave.   Kearny, NJ | > Hanovia Engelhard Corporation BASF Wyandotte Corporation    United Cork |
| **Benjamin Moore & Co** | > 134 Lister Ave.   Newark, NJ | |
| **Berol Corporation** | > 41 Dickerson Street   Newark, NJ | |
| **Campbell Foundry Company** | > 800 Bergen Street   Harrison, NJ | |
| **Canning Gumm LLC** (c/o MacDermid Inc) | > 538 Forest Street   Kearny, NJ | Frederick Gumm Chemical Co |

**ARR0159**

**ATTACHMENT A**

| Allocation Party | Related OU2 Facility Address | Entities Associated w Property for Which Allocation Party Allegedly has CERCLA Responsibility re Entities' Ownership/Operation of Facility |
|---|---|---|
| CBS Corporation | > 95 Orange St.<br>   Newark, NJ | Westinghouse Electric Corporation |
| Celanese Ltd./CNA Holdings LLC<br><br>(Essex County Improvement Authority - indemnitor of Celanese) | > 290 Ferry St<br>> 354 Doremus Ave<br>   Newark, NJ | |
| Chargeurs, Inc. | > 199 Main Street<br>> 205 Main Street<br>> 42 Arnot Street<br>   Lodi, NJ | The United Piece Dye Works |
| Chevron Environmental Management Company | > Getty Newark Terminal<br>   86 Doremus Ave.<br>   Newark, NJ | Texaco Inc.<br>TRMI-H LLC |
| Coats and Clark Inc.<br><br>(as successor to Clark Thread Company) | > 260 Ogden St/900 Passaic Ave<br>   Newark/East Newark, NJ<br><br>> 735 Broad Street<br>   Bloomfield, NJ | Clark Thread Co. |
| Congoleum Corporation | > 195 Belgrove Drive<br>> 113 Passaic Avenue<br>   Kearney, NJ | |

**ARR0160**

For Public Disclosure by Consent of the Participating Allocation Parties and EPA (Fall 2022)

**ATTACHMENT A**

| Allocation Party | Related OU2 Facility Address | Entities Associated w Property for Which Allocation Party Allegedly has CERCLA Responsibility re Entities' Ownership/Operation of Facility |
|---|---|---|
| **Conopco, Inc** d/b/a Unilever<br><br>(as successor to CPC/Bestfoods, former parent of the Penick Corporation) | > 540 New York Avenue<br>  Lyndhurst, NJ | Penick Corporation |
| **Cooper Industries LLC** | > 7, 13, & 26 Bank Street<br>> 33 Littleton Avenue<br>  (aka 400 West Market Street)<br>  Newark, NJ<br><br>> Belleville Avenue & Sherman Avenue<br>  Bloomfield, NJ<br><br>> 75 Belmont Avenue<br>  Bellevile, NJ | J. Wiss & Sons Co<br><br><br><br>Thomas A. Edison, Inc. |
| **Covanta Essex Co.** | > 183 Raymond Blvd<br>> 66 Blanchard St<br>  Newark, NJ | American Ref-Fuel |
| **Croda, Inc.** | > 185 Foundry Street Complex<br>  Newark, NJ<br>  (Block 5005, Lot 21; Bldg 39) | Hummel Lanolin |

**ARR0161**

**ATTACHMENT A**

| Allocation Party | Related OU2 Facility Address | Entities Associated w Property for Which Allocation Party Allegedly has CERCLA Responsibility re Entities' Ownership/Operation of Facility |
|---|---|---|
| **Curtiss-Wright Corporation** | > 1 Passaic St. Woodridge, NJ | |

ARR0162

For Public Disclosure by Consent of the Participating Allocation Parties and EPA (Fall 2022)

**ATTACHMENT A**

| Allocation Party | Related OU2 Facility Address | Entities Associated w Property for Which Allocation Party Allegedly has CERCLA Responsibility re Entities' Ownership/Operation of Facility |
|---|---|---|
| **Darling Ingredients Inc.** | > 61 Blanchard Street<br>  Newark, NJ<br><br>> 1215 Harrison Avenue<br>  Kearny, NJ | Standard Tallow Corp. |
| **DII Industries, LLC**<br><br>(c/o Halliburton) | > Worthington Corp. & Dresser<br>  Industries, Inc.<br>  401 Worthington Avenue<br>  Harrison, NJ | |
| **Drum Service of Newark, Inc.** | > 120 Lister Ave.<br>  Newark, NJ | Hilton-Davis<br><br>360 North Pastoria |
| **Eden Wood Corporation** | > 1 Ackerman Avenue<br>  Clifton, NJ | Whippany Paper Board |
| **Elan Chemical Co., Inc.** | > 268 Doremus Ave.<br>  Newark, NJ | |

**ARR0163**

For Public Disclosure by Consent of the Participating Allocation Parties and EPA (Fall 2022)

**ATTACHMENT A**

| Allocation Party | Related OU2 Facility Address | Entities Associated w Property for Which Allocation Party Allegedly has CERCLA Responsibility re Entities' Ownership/Operation of Facility |
|---|---|---|
| **EnPro Holdings, Inc.** | > 900-1000 South Fourth St.<br>  Harrison, NJ | Crucible Steel Co.<br>Coltec Industries |
| **EPEC Polymers** | > 290 River Drive<br>  Garfield, NJ | |

**ARR0164**

**ATTACHMENT A**

| Allocation Party | Related OU2 Facility Address | Entities Associated w Property for Which Allocation Party Allegedly has CERCLA Responsibility re Entities' Ownership/Operation of Facility |
|---|---|---|
| **Essex Chemical Corporation** | > 330 Doremus Ave.<br>       &<br>> 352 Doremus Ave.<br>   Newark, NJ<br>   (contiuous lots) | Essex Industrial Chemicals, Inc. |
| **Everett Smith Group** | > 20 Bruen Street<br>   Newark, NJ | Blanchard Bro. & Lane, Inc. |
| **Foundry Street Corporation** | > 185 Foundry Street Complex<br>   Newark, NJ<br>   (Block 5005, Lot 22 - Bldgs<br>    19, 21, 22) | Automatic Electroplating<br>Morrel Truck<br>Grignard<br>Honig<br>Norpak<br>Avon<br>Berg<br>County Lift Truck<br>Conus Chemical<br>Arkansas Chemical |
| **Franklin-Burlington Plastics** | > 113 Passaic Ave.<br>   Kearny, NJ | Spartech |
| **Garfield Molding Company, Inc.** | > 10 Midland Avenue<br>   Wallington, NJ | |

**ARR0165**

For Public Disclosure by Consent of the Participating Allocation Parties and EPA (Fall 2022)

**ATTACHMENT A**

| Allocation Party | Related OU2 Facility Address | Entities Associated w Property for Which Allocation Party Allegedly has CERCLA Responsibility re Entities' Ownership/Operation of Facility |
|---|---|---|
| **General Electric Company** | > 415 South 5th Street<br>&<br>> 1000 South 2nd Street<br>Harrison, NJ | RCA |
| **Givaudan Fragrances Corp**<br><br>(originally known as Fragrances North America) | > 125 Delawanna Avenue<br>Clifton, NJ | Givaudan Roure |
| **Goodrich Corp.** | > Kalama Chemical<br>290 River Drive<br>Garfield, NJ | Kalama Chemical, Inc. |
| **Goody Products, Inc. on behalf of itself and Newell Brands Inc. (f/k/a Newell Rubbermaid Inc.)** | > 969 Newark Turnpike<br>Kearny, NJ | |

**ARR0166**

**ATTACHMENT A**

| Allocation Party | Related OU2 Facility Address | Entities Associated w Property for Which Allocation Party Allegedly has CERCLA Responsibility re Entities' Ownership/Operation of Facility |
|---|---|---|
| **Hartz Consumer Group, Inc.** | > 600/700 South 4th Street<br>   Harrison, NJ | |
| **Hexcel Corporation** | > 205 Main St.<br>   Lodi, NJ | |
| **Hoffmann-LaRoche Inc.** | > 340 Kingsland Road<br>   Nutley, NJ | |

**ARR0167**

**ATTACHMENT A**

| Allocation Party | Related OU2 Facility Address | Entities Associated w Property for Which Allocation Party Allegedly has CERCLA Responsibility re Entities' Ownership/Operation of Facility |
|---|---|---|
| **Honeywell International, Inc.** | > General Chemical Co.<br>  65 Lodi Street/8th Street<br>  Passaic, NJ | |
| **ISP Chemicals LLC** | > ISP Van Dyk, Inc.<br>  1 Main St./11 William St.<br>  Belleville, NJ | International Specialty Products |
| **Harris Corporation,**<br>for itself and as successor in interest to Exelis, Inc. successor in interest to the former defense business ITT Corporation | > 100 Kingsland Drive<br>> 77 River Road<br>  Clifton, NJ (contiguous<br>          properties)<br><br>> 500 Washington Avenue<br>> 390 Washington Avenue<br>> 417 River Road<br>> 491/493 River Road<br>> 483 River Road<br>> 492 River Road<br>  Nutley, NJ (contiguous<br>          properties) | |
| **Kearny Smelting** | > 936 Harrison Ave.<br>  Kearny, NJ | MAC Metals |

**ARR0168**

**ATTACHMENT A**

| Allocation Party | Related OU2 Facility Address | Entities Associated w Property for Which Allocation Party Allegedly has CERCLA Responsibility re Entities' Ownership/Operation of Facility |
|---|---|---|
| **Leemilt's Petroleum, Inc.** (successor by merger to Power Test of New Jersey, Inc.) | > 86 Doremus Ave. Newark, NJ | |
| **Legacy Vulcan Corporation** (formerly known as Vulcan Materials Company) | > 600 Doremus Ave. Newark, NJ | |
| **Lucent Technologies** (now known as Nokia of America Corporation.) | > Kearny Works 100 Central Avenue Kearney, NJ | AT&T/Western Electric |
| **National Standard LLC** | > 714-716 Clifton Avenue Clifton, NJ | Iron Oxide Corp. |
| **Newark Group, Inc.** | > 17 Blanchard Street Newark, NJ | The Newark Boxboard Co. |
| **Newark Morning Ledger Co.** | > 1 Star Ledger Plaza Newark, NJ | |
| **Occidental Chemical Corp.** | > 80 & 120 Lister Ave. Newark, NJ | Diamond Shamrock Chemicals Company |
| **The Okonite Company, Inc.** | > Canal and Jefferson Streets Passaic, NJ | |

**ARR0169**

For Public Disclosure by Consent of the Participating Allocation Parties and EPA (Fall 2022)

**ATTACHMENT A**

| Allocation Party | Related OU2 Facility Address | Entities Associated w Property for Which Allocation Party Allegedly has CERCLA Responsibility re Entities' Ownership/Operation of Facility |
|---|---|---|
| **Otis Elevator Co.** | > 1000 First St.<br>  Harrison, NJ | |
| **Palin Enterprises** | > 44 Passaic Ave.<br>  (a/k/a 25 Belgrove Drive)<br>  Kearny, NJ | American Modern Metals |
| **Pabst Brewing Company** | > 400 Grove Street<br>  Newark, NJ | |
| **Passaic Pioneer Properties Co** | > 35 Eighth Street<br>> 65 Lodi Street/8th Street<br>  Passaic, NJ | Eclipse<br>Interstate Dyeing<br>Parra<br>Sun Brite |
| **Pharmacia LLC** | > Foot of Pennsylvania Ave.<br>  Kearny, NJ | Monsanto Company<br>(now known as Pharmacia LLC) |
| **Pitt-Consol Chemical Company** | > 191 Doremus Ave.<br>  Newark, NJ | |

**ARR0170**

For Public Disclosure by Consent of the Participating Allocation Parties and EPA (Fall 2022)

**ATTACHMENT A**

| Allocation Party | Related OU2 Facility Address | Entities Associated w Property for Which Allocation Party Allegedly  has CERCLA Responsibility re Entities' Ownership/Operation of Facility |
|---|---|---|
| PMC, Inc. | > 450 Schuyler Avenue Kearny, NJ | American Polymers Ampol HD Acquisitions K&M Plastics King Finishing Kleer Kast Plastics Manufacturing |
| PPG Industries, Inc. | > 29 Riverside Ave. Newark, NJ | |
| PSEG (Public Service Enterprise Group) | > 155 Raymond Blvd. Newark, NJ > 4th St. Harrison, NJ | |
| Purdue Pharma Technologies | > 199 Main St. Lodi, NJ | Napp Technologies |

**ARR0171**

**ATTACHMENT A**

| Allocation Party | Related OU2 Facility Address | Entities Associated w Property for Which Allocation Party Allegedly has CERCLA Responsibility re Entities' Ownership/Operation of Facility |
|---|---|---|
| **Quality Carriers, Inc.** | > 80 Doremus Avenue<br>  Newark, NJ | Chemical Leaman Tank Lines<br>Quala Systems, Inc. |
| **Revere Smelting & Refining Corp / RSR Corp** | > 387 Avenue P<br>  Newark, NJ | |
| **Roman Asphalt Corporation** | > 14 Ogden Street<br>  Newark,  NJ  07104 | |
| **Royce Associates** | > 17 Carlton Avenue<br>  East Rutherford, NJ | Royce Chemical Company |
| **Safety Kleen Envirosystems Company/McKesson Corp.** | > 600 Doremus Ave.<br>  Newark, NJ | McKesson Envirosystems<br>  Company/McKesson Corp.<br>Inland Chemical Corporation |
| **Schiffenhaus Packaging Corp.**<br><br>(c/o Rock-Tenn Company) | > 204 Academy Street<br>> 49 Fourth Street<br>> 2013 McCarter Highway<br>  Newark, NJ | Southern Consolidated |

**ARR0172**

**ATTACHMENT A**

| Allocation Party | Related OU2 Facility Address | Entities Associated w Property for Which Allocation Party Allegedly has CERCLA Responsibility re Entities' Ownership/Operation of Facility |
|---|---|---|
| **Sequa Corporation** | > 185 Foundry Street<br>  Newark, NJ | |
| **Seton Company, Inc.**<br>(now Seton Tanning) | > 349 Oraton Street<br>> 849 Broadway<br>> 62 Verona Ave<br>  Newark, NJ 07104 | Radel<br>Seton Leather Company |
| **Sherwin Williams Company** | > 60 Lister Ave.<br>  Newark, NJ | |
| **Spectraserv, Inc.** | > 75 Jacobus Ave.<br>  Kearny, NJ | Modern Transportation |
| **Stanley Black & Decker, Inc.**<br>(formerly known as The Stanley Works) | > 140 Chapel St.<br>  Newark, NJ | Stanley Tools<br>Atha Tool Company |

**ARR0173**

**ATTACHMENT A**

| Allocation Party | Related OU2 Facility Address | Entities Associated w Property for Which Allocation Party Allegedly has CERCLA Responsibility re Entities' Ownership/Operation of Facility |
|---|---|---|
| **STWB Inc.**<br><br>(c/o Bayer Corporation) | > 192-194 Bloomfield Avenue<br>  Bloomfield, NJ 07003<br><br>> 120 Lister Ave.<br>  Newark, NJ | Lehn & Fink Products Corp.<br><br><br>Thomasett Colors/Sterling<br><br>Hilton-Davis Chemical Company |
| **Sun Chemical** | > 185 Foundry Street<br>  Newark, NJ | |
| **Tate & Lyle Ingredients Americas LLC**<br>(A.E. Staley Maufacturing Company & its former division Staley Chemical Company) | > 320 Schuyler Avenue<br>  &<br>> 100 Third Avenue<br>  Kearny, NJ | |
| **Teval Corporation** | > 900-1000 South 4th Street<br>  Harrison, NJ | Guyon Pipe<br>Crucible Steel<br>Van Leeuwen<br>Smith International |

**ARR0174**

For Public Disclosure by Consent of the Participating Allocation Parties and EPA (Fall 2022)

**ATTACHMENT A**

| Allocation Party | Related OU2 Facility Address | Entities Associated w Property for Which Allocation Party Allegedly  has CERCLA Responsibility re Entities' Ownership/Operation of Facility |
|---|---|---|
| **Textron Inc.** | > Spencer Kellogg Division<br>  400 Doremus Avenue<br>  Newark, NJ<br><br>> 681 Main Street<br>  Belleville, NJ | |
| **Tiffany and Company** | > 820 Highland Avenue<br>  Newark, NJ | |

ARR0175

**Diamond Alkali Superfund Site OU2
Allocation Guide**

# Attachment B

ARR0176

**Diamond Alkali SF Site OU2**
**Participating Allocation Parties**

1. 21st Century Fox America Inc.(21CFA)
2. Alliance Chemical Inc.
3. Arkema / Legacy Site Services
4. Ashland LLC
5. Atlantic Richfield (ARCO)
6. Atlas Refining Inc.
7. BASF Corporation
8. Benjamin Moore & Co
9. Berol Corporation
10. Campbell Foundry Company
11. Canning Gumm LLC
12. CBS Corporation
13. Celanese Ltd./CNA Holdings LLC
14. Chargeurs Inc.
15. Chevron Environmental Management Company
16. Coats and Clark Inc.
17. Congoleum Corporation
18. Conopco Inc
19. Cooper Industries LLC
20. Covanta Essex Co.
21. Croda Inc.
22. Curtiss-Wright Corporation
23. Darling Ingredients Inc.
24. DII Industries, LLC
25. Eden Wood Corporation
26. Elan Chemical Co Inc.
27. EnPro Holdings Inc.
28. EPEC Polymers
29. Essex Chemical Corporation
30. Everett Smith Group
31. Franklin –Burlington Plastics
32. Garfield Molding Company Inc.
33. General Electric Company
34. Givaudan Fragrances Corp
35. Goodrich  Corp
36. Goody Products, Inc. on behalf of itself and Newell Brands Inc. (f/k/a Newell Rubbermaid Inc.)
37. Hartz Consumer Group Inc.
38. Hexcel Corporation
39. Hoffman – LaRoche Inc.
40. Honeywell International Inc.
41. ISP Chemicals LLC
42. Harris Corporation
43. Kearny Smelting
44. Leemilt's Petroleum Inc.
45. Legacy Vulcan Corporation
46. Lucent Technologies
47. National Standard LLC
48. Newark Group Inc.
49. Newark Morning Ledger Co.
50. The Okonite Company, Inc.
51. Otis Elevator Co.
52. Palin Enterprises
53. Pabst Brewing Company
54. Passaic  Pioneer Properties Co
55. Pharmacia LLC
56. Pitt-Consol Chemical Company
57. PPG Industries Inc.
58. PSEG (Public Service Enterprise Group)
59. Purdue Pharma Technologies
60. Quality Carriers Inc.
61. Revere Smelting & Refining Corp/RSR Corp
62. Safety Kleen Ecirosystems Company/ McKesson Corp.
63. Sequa Corporation
64. Sherwin Williams Company
65. Spectraserv Inc.
66. Stanley Black & Decker Inc.
67. STWB Inc.
68. Sun Chemical
69. Tate & Lyle Ingredients Americas LLC
70. Teval Corporation
71. Textron Inc.
72. Tiffany and Company

**ARR0177**

**Diamond Alkali Superfund Site OU2
Allocation Guide**

# Attachment C



**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY**
REGION 2
290 BROADWAY
NEW YORK, NY 10007-1866

SEP 18 2017

## BY EMAIL AND CERTIFIED MAIL
## RETURN RECEIPT REQUESTED

To:   See List of Addressees - Attachment A

Re:   Allocation for Operable Unit 2 Remedial Action
      Diamond Alkali Superfund Site, Essex and Hudson Counties, New Jersey

Dear Sir/Madam:

On August 28, 2017, the U.S. Environmental Protection Agency ("EPA") hosted a meeting at its New York City offices to provide you with an opportunity to share your views on the Agency's proposed settlement framework for implementation of the remedy selected for the lower 8.3 miles of the Passaic River, which is Operable Unit 2 ("OU2") of the Diamond Alkali Superfund Site (the "Site"). I want to once again thank all of the parties that participated in the meeting. Your participation has helped both EPA and the other parties better understand the issues and concerns regarding the framework.

After careful consideration, the Agency has concluded that the allocation process should include all of the potentially responsible parties ("PRPs") for OU2 (apart from the Passaic Valley Sewerage Commission ("PVSC"), the four municipal PRPs referred to below, and the PRPs that settle pursuant to the "early" cash-out settlement that EPA offered in March 2017), and should not be limited to the "middle tier" parties. Transparency and fairness are concepts that EPA has consistently stated are of importance to the Agency in this matter and, after considering your comments and concerns, we think those concepts are best served by having one allocation for all of these parties.

Numerous parties at the August 28, 2017 meeting expressed concern regarding the financial burden that would be placed on PRPs that are not responsible for the release of dioxins, furans and/or polychlorinated biphenyls ("PCBs") into the Lower Passaic River if those parties are not given the opportunity to settle with the United States for their OU2 liability, as opposed to having to implement the remedial action for OU2. EPA appreciates those concerns. As we have stated, we anticipate that with the help of the allocation process, EPA will be able to offer cash-out settlements to a number of the parties.

Similarly, EPA's expectation that the private PRPs responsible for the release of dioxins, furans and/or PCBs will perform the OU2 remedial action has not changed. It is therefore our goal that, in addition to supporting potential additional cash-out settlements, the allocation will lead to a consent decree in which those parties agree to perform the OU2 remedial action under EPA oversight.

ARR0179

To perform the allocation, EPA has retained AlterEcho and its senior allocation specialist, Mr. David Batson, Esq., through the Agency's prime contract with CSRA. EPA and AlterEcho invite you to attend a meeting to introduce the allocation process. Among other things, the allocation will provide opportunities for participating parties to comment on factors that should be part of the allocation and to contribute relevant information about themselves and other parties for use in the allocation. This meeting will be held on October 13, 2017 at 9:00 A.M. on the 27th floor of EPA's offices, which are located at 290 Broadway, New York, NY 10007.

Mr. Batson has requested that each party designate a primary contact for future communications on the allocation and that the primary contact attend the October 13th meeting in person. EPA has established a conference line for others wishing to participate. The call-in number is 866-299-3188, and the conference code is 212-637-3136. Please respond to EPA by October 5, 2017 with the following information: 1) name of and party represented by the primary contact attending the meeting; 2) names of other representatives planning to call in for each such party. Your response should be directed to Alice Yeh, Remedial Project Manager, Emergency and Remedial Response Division at yeh.alice@EPA.gov or U.S. EPA Region 2, 290 Broadway - 19th Floor, New York, NY 10007.

After the allocator assigns shares to the parties, EPA will make a decision as to which parties should receive cash-out settlement offers, the dollar amount of each offer, and how the money raised by the cash-out settlements will be applied towards OU2 costs.

During the August 28, 2017 meeting, several parties raised questions concerning EPA's enforcement approach for PVSC and the municipalities to which EPA issued notices of potential liability (the City of Newark, Borough of East Newark, Town of Harrison and Town of Kearny). EPA has initiated discussions with PVSC and the municipalities about substantial contributions that, collectively, they might make to the OU2 remedy. At this time, we do not believe it would be helpful to include them in the allocation.

If you have any questions regarding this matter, please contact Assistant Regional Counsel Juan Fajardo at 212-637-3132 or fajardo.juan@epa.gov.

Very truly yours,

Eric J. Wilson
Deputy Director for Enforcement and Homeland Security
Emergency and Remedial Response Division

cc: Brian Donohue, Esq., USDOJ
    Mark Barash, Esq., USDOI
    Kate Barfield, Esq., NOAA
    John Dickinson, Esq., New Jersey Attorney General's Office

ARR0180

**Attachment A – List of Addressees**

**Diamond Alkali Superfund Site**
**Lower 8.3 Miles - Passaic River**

| Company | Contact Information | Facility |
|---|---|---|
| A.E. Staley Manufacturing Co., Inc.<br>2200 E. Eldorado Street<br>Decatur, IL  62521-1578<br><br>Now Tate & Lyle Ingredients Americas LLC | John R. Holsinger, Esq.<br>Two University Plaza, Suite 300<br>Hackensack, NJ 07601<br>201-487-9000 (T)<br>johnh@jrholsinger.com<br><br>Heidi R. Balsley, Esquire<br>Corporate Counsel<br>A.E. Staley<br>Manufacturing Co., Inc.<br>2200 E. Eldorado Street<br>Decatur, IL  52521<br>Heidi.Balsley@tateandlyle.com | 320 Schuyler Avenue and 100 Third Avenue<br>Kearny, NJ |
| Alden Leeds Inc.<br>55 Jacobus Ave.<br>Kearny, NJ 07032 | Mark Epstein, President<br>Alden Leeds Inc.<br>55 Jacobus Ave.<br>Kearny, NJ 07032<br><br>Joseph Fiorenzo, Esq.<br>Sills Cummis & Gross<br>The Legal Center<br>One Riverfront Plaza<br>Newark, NJ 07102<br>973-643-7000 (T)<br>jfiorenzo@sillscummis.com | 2145 McCarter Highway<br>Newark, NJ<br><br>55 Jacobus Avenue<br>Kearny, NJ |
| Alliance Chemical, Inc.<br>Linden Avenue<br>Ridgefield, NJ 07657 | Fredi Pearlmutter, Esq.<br>Lindabury, McCormick, Estabrook & Cooper, P.C.<br>53 Cardinal Drive<br>Box 2369<br>Westfield, NJ  07091<br>908-233-6800 (T)<br>fpearlmutter@lindabury.com | 33 Avenue P<br>Newark, NJ |

| | | |
|---|---|---|
| American Ref-Fuel Co.<br>155 Chestnut Ridge Road<br>Montvale, NJ 07645<br><br>Now Covanta Essex Company | Nancy Tammi, Esq.<br>VP, Associate General Counsel<br>Covanta<br>445 South Street<br>Morristown, NJ 07960<br>862-345-5133 | 183 Raymond Blvd & 66<br>Blanchard St<br>Newark, NJ |
| | Barbara Hopkinson Kelly, Esq.<br>Wilson Elser Moskowitz Edelman &<br>Dicker LLP<br>200 Campus Drive<br>Florham Park, NJ 07932-0668<br>973.735.5765 (Direct)<br>609.213.8589 (Cell)<br>973.624.0808 (Fax)<br>barbara.kelly@wilsonelser.com | |
| Arkema Incorporated<br>2000 Market Street<br>Philadelphia, PA 19103-3222 | Paula Martin, Esq.<br>Doug Loutzenhiser<br>Legacy Site Services, LLC<br>468 Thomas Jones Way, Suite 150<br>Exton, PA 19341-2528<br>Paula.martin@total.com | Wallace & Tiernan<br>25 Main Street<br>Belleville, NJ |
| Ashland, Inc.<br>5200 Blazer Parkway<br>Dublin, OH 43017 | Robin E. Lampkin<br>Ashland Inc.<br>5200 Blazer Parkway<br>Dublin, OH  43017<br>Telephone:  614-790-3019<br>realmpkin@ashland.com<br><br>William S. Hatfield, Esq.<br>Gibbons P.C.<br>One Gateway Center<br>Newark, NJ 07102<br>whatfield@gibbonslaw.com | 221 Foundry St.<br>Newark, NJ |
| Atlas Refining, Inc.<br>142 Lockwood Street<br>Newark, NJ 07105<br><br>Now Atlas Refinery, Inc. | Steven Schroeder, Jr., President & CEO<br>Atlas Refinery, Inc.<br>142 Lockwood Street<br>Newark, NJ 07105<br><br>Thomas H. Prol, Esq.<br>Laddey, Clark & Ryan,<br>LLP<br>60 Blue Heron Road, Suite 300<br>Sparta, NJ 07871<br>tryan@lcrlaw.com<br>tprol@lcrlaw.com | 142 Lockwood St.<br>Newark, NJ |

ARR0182

| | | |
|---|---|---|
| Automatic Electro Plating Corp.<br>185 Foundry Street, Suite 3<br>Newark, NJ 07105 | Michael O'Rourke, President<br>Automatic Electro Plating Corp.<br>1017 Applegate Parkway<br>Waxhaw, NC 28173-6738<br>Michael.orourke@aol.com | 185 Foundry Street Complex<br>Newark, NJ<br>(Bldgs 19, 21, 22) |
| BASF Catalysts LLC<br>100 Campus Drive<br>Florham Park, NJ | Karyllan D. Mack, Esq. (see below) | Engelhard Corporation<br>One West Central Avenue<br>East Newark, NJ |
| BASF Corp.<br>3000 Continental Drive<br>Mount Olive, NJ 07828 | Karyllan D. Mack, Esq.<br>Environmental Counsel<br>BASF Corporation<br>100 Park Avenue<br>Florham Park, NJ 07932<br>Karyllan.mack@basf.com<br><br>David Schneider, Esquire<br>Bressler, Amery & Ross<br>Post Office Box 1980<br>Morristown, NJ 07962<br>dschneider@bressler.com | 50 Central Ave.<br>Kearny, NJ<br>&<br>150 Wagaraw Rd<br>Hawthorne, NJ |
| Benjamin Moore & Co.<br>51 Chestnut Ridge Rd.<br>Montvale, NJ 07645 | Paul Sangillo, Esq.<br>Benjamin Moore & Co.<br>101 Paragon Drive<br>Montvale, NJ 07645<br>201.949.6318 (T)<br>Paul.sangillo@benjaminmoore.com<br><br>Eric S. Aronson, Esq.<br>David G. Mandelbaum, Esq.<br>GreenbergTraurig<br>500 Campus Drive<br>Suite 400<br>Florham Park, NJ 07932<br>aronsone@gtlaw.com | 134 Lister Ave.<br>Newark, NJ |
| Berol Corporation<br>c/o Newell Rubbermaid Inc.<br>2707 Butterfield Road, Suite 100<br>Oak Brook, IL 60523 | Andrew Sawula, Esq.<br>Schiff Hardin LLP<br>One Westminster Place, Suite 200<br>Lake Forest, IL 60045<br>847-295-4336 (T)<br>asawula@schiffhardin.com | Faber-Castell Corporation<br>41 Dickerson Street<br>Newark, NJ |

3

ARR0183

| | | |
|---|---|---|
| Campbell Foundry Company<br>800 Bergen Street<br>Harrison, NJ 07029 | Timothy J. Corriston, Esq.<br>Connell Foley LLP<br>85 Livingston Avenue<br>Roseland, NJ 07068<br>973-535-0500 (T)<br>tcorriston@connellfoley.com | 800 Bergen Street<br>Harrison, NJ |
| Canning Gum LLC<br>c/o MacDermid Incorporated<br>1401 Blake Street<br>Denver, CO 80202 | Richard A. Nave, CHMM<br>Corporate Director EH&S<br>Platform Specialty Products Corp.<br>245 Freight Street<br>Waterbury, CT 06702 | Frederick Gumm Chemical Co.<br>538 Forest Street<br>Kearny, NJ |
| Celanese Ltd.<br>Route 202-206<br>P.O. Box 2500<br>Somerville, NJ 08876<br><br>CNA Holdings LLC<br>participating on behalf of<br>Celanese Ltd | Duke K. McCall, III, Esq.<br>Morgan, Lewis & Bockius LLP<br>1111 Pennsylvania Ave., NW<br>Washington, DC 20004-2541<br>202-373-6607 (T)<br>duke.mccall@morganlewis.com<br><br>James J. Dragna<br>Morgan Lewis<br>300 South Grand Ave., 22nd Floor<br>Los Angeles, CA 90071-3132<br>Jim.dragna@morganlewis.com<br><br>James O'Toole, Esq.<br>Buchanan Ingersoll & Rooney PC<br>Two Liberty Place<br>50 S. 16th Street, Suite 3200<br>Philadelphia, PA 19102-2555<br>James.otoole@blnc.com | 354 Doremus Ave<br>Newark, NJ |
| Chargeurs, Inc.<br>178 Wool Road<br>Jamestown, SC 29453 | James. R. Brendel, Esq.<br>Clark Hill PLC<br>One Oxford Centre<br>301 Grant Street, 14th floor<br>Pittsburgh, PA 15219<br>412-394-2373 (T)<br>jbrendel@clarkhill.com | United Piece Dye Works<br>199 and 205 Main Street and<br>42 Arnot Street<br>Lodi, NJ |

ARR0184

| | | |
|---|---|---|
| Chevron Texaco Corporation<br>6001 Bollinger Canyon Rd.<br>K-2056<br>San Ramon, CA 94583<br><br>Chevron Environmental<br>Management Company<br>participating for itself, Texaco,<br>Inc. and TRMI-H LLC | Shawn Raymond DeMerse<br>Chevron U.S.A. Inc.<br>Law Department<br>1400 Smith Street, Rm 07090<br>Houston, TX 77002<br>shawndemerse@chevron.com<br><br>Louis M. DeStefano, Esq.<br>Buchanan Ingersoll & Rooney, PC<br>550 Broad Street, Suite 810<br>Newark, NJ  07102-4517<br>973.273.9800 (T)<br>louis.destefano@bipc.com | Getty Newark Terminal<br>86 Doremus Ave.<br>Newark, NJ |
| Coats & Clark, Inc.<br>3420 Toringdon Way, Suite 301<br>Charlotte, NC 28277 | Dan Riesel, Esq.<br>Jeff Gracer, Esq.<br>Sive Paget & Riesel, P.C.<br>460 Park Avenue<br>New York, NY  10022<br>212-421-2150<br>driesel@spr.com | Clark Thread Co.<br>260 Ogden Street<br>Newark NJ<br>900 Passaic Avenue<br>East Newark NJ<br>735 Broad Street<br>Bloomfield NJ |
| EnPro Holdings LLC as<br>assignee of Coltec<br>Industries Inc.<br><br>5605 Carnegie Boulevard<br>Charlotte, NC 28209 | Tom Price, Esq.<br>EnPro Industries<br>5605 Carnegie Boulevard<br>Charlotte, NC 28209<br>704-731-1525 (T)<br>tom.price@enproindustries.com<br><br>Charles E. Merrill, Esquire<br>Husch Blackwell Sanders LLP<br>190 Carondelet Plaza, Suite 600<br>St. Louis, MO 63105<br>314-480-1952<br>charlie.merrill@huschblackwell.com | Crucible Steel Co.<br>1000 South Fourth St.<br>Harrison, NJ |
| Congoleum Corp.<br>3705 Quakerbridge Road<br>Mercerville, NJ 08619 | Russell Hewit, Esq.<br>Dughi, Hewit & Domolewski, P.C.<br>340 North Avenue<br>Cranford, NJ 07016<br>908-272-0200(T)<br>rhewit@dughihewit.com | 195 Belgrove Drive<br>Kearny, NJ |

ARR0185

| Cooper Industries, Inc.<br>600 Travis Street<br>Houston, TX 77002 | Lisa D. Sutton<br>Vice Present/Chief Counsel – EHS<br>Eaton Corporation<br>1000 Eaton Boulevard<br>Cleveland, OH 44122<br>440-523-4358 (T)<br><br>John F. Cermak<br>Sonja A. Inglin<br>Baker Hostetler<br>11601 Wilshire Boulevard, Ste 1400<br>Los Angeles, CA 90025-0509<br>310-442-8889 (T) (Cermak)<br>310-442-8885 (T) (Inglin)<br>jcermak@bakerlaw.com<br>singlin@bakerlaw.com | J. Wiss & Sons Co<br>7, 13, 26 Bank Street and<br>33 Littleton Avenue (aka 400<br>West Market Street)<br>Newark, NJ |
| --- | --- | --- |
| Cooper Industries, LLC<br>600 Travis Street, Suite 5800<br>Houston, TX 77002 | (see above) | Thomas A. Edison, Inc.<br>Belleville Avenue &<br>Sherman Avenue<br>Bloomfield, NJ<br>75 Belmont Avenue<br>Belleville, NJ |
| Croda Inc.<br>300-A Columbus Circle<br>Edison, NJ 08837 | Stephen Swedlow, Esq.<br>Quinn, Emanuel, Urquhart & Sullivan, LLP<br>191 N. Wacker Drive, Suite 2700<br>Chicago, IL 60606<br>stephenswedlow@quinnemanuel.com | Hummel Lanolin<br>185 Foundry Street Complex<br>Newark, NJ<br>(Block 5005, Lot 21; Bld 39) |
| Curtiss-Wright Corp.<br>4 Becker Farm Road<br>Roseland, NJ 07068 | Diana Buongiorno<br>Chiesa Shahinian & Giantomassi, PC<br>One Boland Drive<br>West Orange, NJ 07052<br>973-530-2075(T)<br>dbuongiorno@csglaw.com | 1 Passaic St.<br>Woodridge, NJ |
| Darling International, Inc.<br>251 O'Connor Ridge Boulevard,<br>Suite 300<br>Irving, TX 75038 | Steven Singer, Esq.<br>34 Hillside Avenue<br>Montclair, NJ 07042<br>973-744-6093<br>stsinger@verizon.net | Standard Tallow Corp.<br>61 Blanchard Street,<br>Newark, NJ<br>1215 Harrison Avenue,<br>Kearny, NJ |
| DII Industries, LLC<br>c/o Halliburton<br>2101 City West Blvd.<br>Houston, TX 77042-3021 | Thomas C. Jackson, Esq.<br>Joshua Frank, Esq.<br>Baker Botts LLP<br>1299 Pennsylvania Ave., N.W.<br>Washington, DC 20004-2400<br>202-639-7710 (T)<br>Thomas.Jackson@bakerbotts.com<br>Joshua.frank@bakerbotts.com | Worthington Corp. &<br>Dresser Industries, Inc.<br>401 Worthington Avenue<br>Harrison, NJ |

ARR0186

| Drum Service of Newark, Inc.<br>104 Lister Ave.<br>Newark, NJ 07105 | Ralph Foglia<br>104 Lister Ave.<br>Newark, NJ<br>07105 | Hilton-Davis<br>120 Lister Ave.<br>Newark, NJ |
| --- | --- | --- |
| Eden Wood Corporation<br>47 Parsippany Road<br>Whippany, NJ 07981 | Warren L. Dean, Jr.<br>Thompson Coburn LLP<br>1909 K Street, N.W.<br>Suite 600<br>Washington, D.C. 20006-1167<br>202.585.6908 (T)<br>wdean@thompsoncoburn.com | Whippany Paper Board<br>1 Ackerman Avenue<br>Clifton, NJ |
| E.I. duPont de Nemours & Co.<br>1007 Market Street<br>Wilmington, DE 19898 | Stephen Rahaim, Esq.<br>Chief Environmental<br>Counsel<br>E.I. duPont de Nemours and<br>Company<br>Chestnut Run Plaza<br>721/1264<br>974 Centre Road<br>P.O. Box 2915<br>Wilmington, DE 19805<br>302-996-8278(T)<br>stephen.rahaim@dupont.com | Pitt Consol<br>191 Doremus Ave.<br>Newark, NJ |
| Elan Chemical Co.<br>268 Doremus Ave.<br>Newark, NJ 07105 | Jocelyn Kapp Manship, CEO<br>Elan Chemical Company Inc.<br>268 Doremus Avenue<br>Newark, NJ 07105<br><br>Randy Schillinger, Esq.<br>Saiber Schlesinger Staz & Goldstein<br>One Gateway Center, 13th Fl<br>Newark, NJ 07102<br>973-622-3333(T)<br>rs@saiber.com | 268 Doremus Ave.<br>Newark, NJ |
| El Paso Tennessee Pipeline Co.<br>1001 Louisania Street<br>Houston, TX 77002<br><br>EPEC Polymers Inc.<br>participating on behalf of itself<br>and EPEC Oil Company<br>Liquidating Trust | Andrea A. Lipuma, Esq.<br>Saul Ewing LLP<br>650 College Road East<br>Suite 4000<br>Princeton, NJ 08540-6603<br>Telephone: 609-452-5032<br>alipuma@saul.com | Tenneco, Inc.<br>290 River Drive<br>Garfield, NJ |

ARR0187

| | | |
|---|---|---|
| Essex Chemical Corp.<br>2030 WMDC<br>Midland, MI 48674 | Kenneth Mack, Esq.<br>Linda Mack, Esq.<br>Fox Rothschild LLP<br>Post Office Box 5231<br>Princeton, NJ 08543-5231<br><br>Princeton Pike Corp. Center<br>997 Lenox Drive, Bldg. 3<br>Lawrenceville, NJ 08648<br>609-896-3000(T)<br>kmack@foxrothschild.com | 330 Doremus Ave.<br>Newark, NJ |
| Everett Smith Group, Ltd.<br>330 East Kilbourn Avenue, Ste 750<br>Milwaukee, WI 53202 | Sarah A. Slack, Esq.<br>Foley & Lardner, LLP<br>Suite 500<br>150 East Gilman Street<br>Madison, WI 53703-1482<br>608-258-4239<br>sslack@foley.com | Blanchard Bro. & Lane, Inc.<br>40 Bruen Street<br>Newark, NJ |
| Foundry Street Corporation<br>67 Kettle Hole Road 2524<br>Montauk, NY 11954-5084 | Gerald Borriello<br>Foundry Street Corporation<br>67 Kettle Hole Road 2524<br>Montauk, NY 11954-5084<br>geraldborriello@gmail.com | 185 Foundry Street Complex<br>Newark, NJ<br>(Block 5005, Lot 22 – Bldgs 19, 21, 22) |
| Fragrances North America<br>1775 Windsor Road<br>Teaneck, NJ 07666<br><br>Now Givaudan Corp. | Richard Wroblewski, P.G.<br>Environmental Specialist<br>Givaudan Fragrances Corp.<br>300 Waterloo Valley Road<br>Mount Olive, NJ 07828<br>richard.wroblewski@givaudan.com<br><br>William Hatfield, Esq.<br>Gibbons, PC<br>One Gateway Center<br>Newark, NJ 07102-5310<br>973-596-4511 (T)<br>whatfield@gibbonslaw.com | Givaudan Fragrances<br>125 Delawanna Avenue<br>Clifton, NJ |
| Franklin Burlington Plastics, Inc.<br>113 Passaic Ave.<br>Kearny, NJ 07032 | Norman Spindel, Esq.<br>Lowenstein Sandler PC<br>65 Livingston Avenue<br>Roseland, NJ 07068<br>973-597-2514(T)<br>nspindel@lowenstein.com | 113 Passaic Ave.<br>Kearny, NJ |

8

ARR0188

| | | |
|---|---|---|
| Garfield Molding Company, Inc.<br>1115 Inman Ave. #196<br>Edison, NJ 08820 | Patrick J. McStravick,<br>Ricci Tyrrell Johnson<br>& Grey 1515 Market<br>Street, Suite 700<br>Philadelphia, PA 19102<br>215-320-2087 (T)<br>PMcStravick@rtjglaw.com | 10 Midland Avenue<br>Wallington, NJ |
| General Electric Company<br>3135 Easton Turnpike<br>Fairfield, CT 06828-0001 | Roger Florio, Esq.<br>General Electric<br>640 Freedom Business Center<br>King of Prussia, PA 19406<br>Roger.florio@ge.com<br><br>Gary P. Gengel, Esq.<br>Latham & Watkins, LLP<br>One Newark Center, 16th floor<br>Newark, NJ 07101<br>973-639-7287 (T)<br>gary.gengel@lw.com | 415 South 5th Street<br>& 1000 South 2nd Street<br>Harrison, NJ |
| Goodrich Corporation<br>Four Coliseum Centre<br>2730 West Tyvola Road<br>Charlotte, NC 28217 | Earl W. Phillips, Jr., Esq.<br>Robinson & Cole LLP<br>280 Trumbull Street<br>Hartford, CT 06103-3597<br>860-275-8220 (T)<br>ephillips@rc.com | Kalama Chemical<br>290 River Drive<br>Garfield, NJ |
| Hexcel Corp.<br>2 Stamford Plaza<br>Stamford, CT 06901 | Steve Leifer, Esq.<br>Baker Botts LLP<br>1299 Pennsylvania Ave., NW<br>Washington, DC 20004<br>202-639-7723(T)<br>sleifer@bakerbotts.com | 205 Main St.<br>Lodi, NJ |
| Hoffman-La Roche Inc.<br>340 Kingsland Street<br>Nutley, NJ 07110 | John Klock, Esq.<br>Gibbons, PC<br>One Gateway Center<br>Newark, NJ 07102<br>jklock@gibbonslaw.com<br><br>Frederick Kentz, Esq.<br>Vice President and General Counsel<br>Hoffmann-La Roche Inc.<br>150 Clove Road,<br>Little Falls, NJ 07424 | 340 Kingsland Road<br>Nutley, NJ |

ARR0189

| | | |
|---|---|---|
| Honeywell International, Inc.<br>P.O. Box 2245<br>Morristown, NJ 07962 | Jeremy Karpatkin, Esq.<br>Arnold & Porter Kaye<br>Scholer LLP<br>601 Massachusetts Ave.,<br>NW<br>Washington, DC 20001<br>202-942-5564 (T)<br>Jeremy.karpatkin@apks.com | General Chemical Co.<br>65 Lodi Street/8th Street<br>Passaic, NJ |
| ISP Chemicals, Inc.<br>1361 Alps Road<br>Wayne, NJ 07470<br><br>now ISP Chemicals LLC | Robin E. Lampkin<br>Ashland Inc.<br>5200 Blazer Parkway<br>Dublin, OH 43017<br>614-790-3019 (T)<br>relampkin@ashland.com<br><br>William Hatfield, Esq.<br>Gibbons, PC<br>One Gateway Center<br>Newark, NJ 07102-5310<br>973-596-4511 (T)<br>whatfield@gibbonslaw.com | ISP Van Dyk, Inc.<br>1 Main St./11 William St.<br>Wayne, NJ |
| ITT Industries, Inc.<br>77 River Road<br>Clifton, NJ 07014<br><br>participating as Exelis Inc. for<br>itself and ITT Industries, Inc | Susanne Peticolas, Esq.<br>Gibbons, PC<br>One Gateway Center<br>Newark, NJ 07102-5310<br>973-596-4751 (T)<br>speticolas@gibbonslaw.com | 100 Kingsland Drive<br>Clifton, NJ |
| Kearny Smelting & Refining<br>936 Harrison Ave #5<br>Kearny, NJ 07032 | Ms. Francine Rothschild, President<br>Kearny Smelting & Refining<br>936 Harrison Ave<br>Kearny, NJ 07032<br>201-991-7276 (T)<br><br>Lee D. Henig-Elona, Esq.<br>Gordon & Rees<br>18 Columbia Turnpike, Suite 220<br>Florham Park, NJ 07932<br>973-549-2520(T direct)<br>973-549-2500(T office)<br>lhenig-elona@gordonrees.com | 936 Harrison Ave.<br>Kearny, NJ |

ARR0190

| | | |
|---|---|---|
| Lucent Technologies<br>600 Mountain Avenue<br>Murray Hill, NJ 07974<br><br>now Alcatel-Lucent USA, Inc. | James (Jay) Stewart, Esq.<br>Lowenstein Sandler LLP<br>65 Livingston Avenue<br>Roseland, NJ 07068<br>973-597-2522 (T)<br>jstewart@lowenstein.com<br><br>Gary M. Fisher, Esq.<br>Alcatel-Lucent<br>Environment, Health & Safety Corporate Center<br>600 Mountain Avenue<br>Room 1F-102G<br>Murray Hill, NJ  07974<br>gary.fisher@alcatel-lucent.com | AT&T/Western Electric<br>100 Central Ave.<br>Kearny, NJ |
| Monsanto Co.<br>800 North Lindbergh Blvd.<br>St. Louis, Missouri 63167<br><br>Pharmacia Corporation (f/k/a Monsanto Company) | John F. Gullace, Esq.<br>Manko, Gold, Katcher & Fox, LLP<br>401 City Avenue, Suite 500<br>Bala Cynwd, PA  19004<br>484-430-2326(T)<br>jgullace@mgkflaw.com | Monsanto Co.<br>Foot of Pennsylvania Ave.<br>Kearny, NJ |
| National-Standard Company<br>1618 Terminal Road<br>Niles, MI 49120<br><br>Now National-Standard LLC | Susanne Peticolas, Esq.<br>Gibbons, PC<br>One Gateway Center<br>Newark, NJ  07102-5310<br>973-596-4751(T)<br>speticolas@gibbonslaw.com | 714-716 Clifton Avenue<br>Clifton, NJ |
| Newark Morning Ledger<br>1 Star Ledger Plaza<br>Newark, NJ  07102 | Michael J. Anderson, Esq.<br>Sabin, Bermant & Gould LLP<br>One World Trade Center, 44th Floor<br>New York, New York 10007<br>Direct No. (212) 381-7068<br>Fax No. (212) 381-7201<br>manderson@sabinfirm.com<br><br>Frances B. Stella, Esq.<br>Brach Eichler L.L.C.<br>101 Eisenhower Parkway<br>Roseland, New Jersey 07068<br>Direct No. (973) 403-3149<br>Fax No. (973) 618-5549<br>fstella@bracheichler.com | 1 Star Ledger Plaza<br>Newark, NJ |

11

**ARR0191**

| Newell Rubbermaid, Inc.<br>29 E. Stephenson Street<br>Freeport, IL 60132 | Andrew Sawula, Esq.<br>Schiff Hardin LLP<br>One Westminster Place, Suite 200<br>Lake Forest, IL 60045<br>847-295-4336 (T)<br>asawula@schiffhardin.com | Goody Products<br>969 Newark Turnpike<br>Kearny, NJ |
| --- | --- | --- |
| News America Inc.<br>767 Fifth Ave., 46th Floor<br>New York, NY 10153<br><br>fka News Publishing Australia,<br>Ltd., now Twenty-First Century<br>Fox America | Peter Simshauer, Esq.<br>Skadden, Arps, Slate, Meagher & Flom LLP<br>500 Boylston Street<br>Boston, MA 02116<br>617-573-4880(T)<br>psimshau@skadden.com | Chris-Craft Inc./Montrose<br>Chemical Co.<br>100 Lister Ave.<br>Newark, NJ |
| Occidental Chemical Corp.<br>Occidental Tower<br>5005 LBJ Freeway<br>Dallas, TX 75244 | Dennis F. Blake<br>Senior Vice President<br>Occidental Chemical Corp.<br>5005 LBJ Freeway<br>Dallas, TX 75244<br><br>Larry Silver, Esq.<br>Langsam Stevens Silver<br>1818 Market Street, Suite 2610<br>Philadelphia, PA 19103-5319<br>215- 239.9023<br>lsilver@lssh-law.com | Diamond Shamrock<br>Chemicals Co.<br>80 and 120 Lister Ave.<br>Newark, NJ |
| The Okonite Company, Inc.<br>102 Hilltop Road<br>Ramsey, New Jersey 07446 | David Brook, Esq.<br>McCullough Ginsberg Montano &<br>Partners LLP<br>55 Bleeker Street<br>Millburn, NJ 07041<br>dbrook@mgpllp.com | Canal and Jefferson Streets<br>Passaic, NJ |
| Otis Elevator Co.<br>North America Operations<br>10 Farm Springs Road<br>Farmington, CT 06032 | Earl W. Phillips, Jr., Esq.<br>Robinson & Cole LLP<br>280 Trumbull Street<br>Hartford, CT 06103-3597<br>860-275-8220(T)<br>ephillips@rc.com | 1000 First St.<br>Harrison, NJ |
| Pabst Brewing Company<br>9014 Heritage Parkway<br>Suite 308<br>Woodridge, IL 60517 | Eugene Kashper, Chairman & CEO<br>Pabst Brewing Company<br>10635 Santa Monica Blvd Ste 350<br>Los Angeles, CA 90025 | 400 Grove Street<br>Newark, NJ |

**ARR0192**

| | | |
|---|---|---|
| Palin Enterprises | Diana Buongiorno, Chiesa Shahinian & Giantomasi PC One Boland Dr. West Orange, NJ 07052 dbuongiorno@csglaw.com<br><br>Mr. Michael Palin Palin Enterprises 235 Park Avenue South, #8 New York, NY 10003-1045 | American Modern Metals 44 Passaic Ave. (a/k/a 25 Belgrove Drive)<br><br>Kearny, NJ |
| Passaic Pioneer Properties PO Box 327 35 Eighth Street Passaic, NJ 07055 | Timothy J. Corriston, Esq. Connell Foley LLP 85 Livingston Avenue Roseland, NJ 07068 973-535-0500 (T) tcorriston@connellfoley.com | 35 Eighth Street Passaic, NJ |
| PMC, Inc. 12243 Branford Street Sun Valley, CA 91352 | Phillip Kamins, President & CEO PMC Global, Inc. 12243 Branford St Sun Valley, CA 91352 818-896-1101(T) | Kleer Kast 450 Schuyler Avenue Kearny, NJ |
| Power Test of New Jersey, Inc. 125 Jericho Turnpike Jericho, NY 11753<br><br>now Leemilt's Petroleum, Inc., successor to Power Test of NJ, Inc. | Christine Fitter, Asst Secretary Leemilt's Petroleum, Inc. 125 Jericho Turnpike, Suite 103 Jericho, NY 11753 cfitter@gettyrealty.com<br><br>Nicole Moshang, Esq. Manko, Gold Katcher & Fox LLP 401 City Avenue, Ste. 500 Bala Cynwyd, PA 19004 484-430-2324 (T) nmoshang@mgkflaw.com | Getty Newark Terminal 86 Doremus Ave. Newark, NJ |
| PPG Industries, Inc. One PPG Place Pittsburgh, PA 15272 | Gary P. Gengel, Esq. Latham & Watkins, LLP 885 Third Avenue New York, NY 10022-4834 gary.gengel@lw.com | 29 Riverside Ave. Newark, NJ |

ARR0193

| | | |
|---|---|---|
| PSE&G Corp.<br>P.O. Box 570<br>Newark, NJ 07101 | John F. Doherty, Esq.<br>Associate General Litigation Counsel<br>PSE&G Services Corporation<br>80 Park Plaza, T5D<br>Post Office Box 570<br>Newark, NJ  07102<br>973-430-6478(T)<br>John.doherty@pseg.com<br><br>Kevin R. Gardner, Esq.<br>Connell Foley<br>85 Livingston Avenue<br>Roseland, NJ  07068<br>973-535-0500(T)<br>kgardner@connellfoley.com | 155 Raymond Blvd.<br>Newark, NJ<br>&<br>4th St.<br>Harrison, NJ |
| Purdue Pharma Technologies, Inc.<br>One Stamford Forum<br>Stamford, CT 06901 | James (Jay) Stewart, Esq.<br>Lowenstein Sandler PC<br>65 Livingston Avenue<br>Roseland, NJ 07068<br>973-597-2522(T)<br>jstewart@lowenstein.com | Napp Technologies<br>199 Main St.<br>Lodi, NJ |
| Quality Distribution, Inc.<br>150 East Pennsylvania Avenue<br>Suite 450<br>Downingtown, PA 19335<br><br>Quality Carriers, Inc. | Bonni Kaufman, Esq.<br>Holland & Knight, LLP<br>800 17th Street N.W. Suite 1100<br>Washington, DC  20006<br>202-419-2547<br>Bonni.kaufman@hklaw.com | Chemical Leaman Tank Lines<br>80 Doremus Avenue<br>Newark, NJ |
| Royce Associates<br>366 N. Broadway, Ste. 400<br>Jericho, NJ 11753 | A.J.Royce, President<br>Royce Associates, ALP<br>35 Carlton Ave<br>East Rutherford, NJ 07073<br>201-438-5200(T)<br><br>Ronald Bluestein, Esq.<br>Flamm Walton<br>794 Penllyn Pike<br>Blue Bell, PA  19422<br>267-419-1500 (T)<br>rbluestein@flammlaw.com | Royce Chemical Company<br>17 Carlton Avenue<br>East Rutherford, NJ |

ARR0194

| | | |
|---|---|---|
| RSR Corp.<br>2777 Stemmons Freeway<br>Suite 1800<br>Dallas, TX 75207<br><br>now Revere Smelting and Refining Corporation | Jane C. Luxton, Esq.<br>Christopher Clare, Esq.<br>Clark Hill PLC<br>1001 Pennsylvania Avenue NW, Suite 1300 South<br>Washington, DC 20004<br>202-572-8674(T)<br>703-598-3275(M)<br>jluxton@clarkhill.com<br>cclare@clarkhill.com | Revere Smelting & Refining<br>387 Avenue P<br>Newark, NJ |
| Safety Kleen Envirosystems Co.<br>1301 Gervais St.<br>Columbia, SC 29201<br><br>McKesson Corporation for itself and for Safety-Kleen Envirosystems, Inc. | Marylin Jenkins, Esq.<br>Edgcomb Law Group<br>One Post Street, Suite 2100<br>San Francisco, California 94104-5225<br>707-755-4341 (T)<br>mjenkins@edgcomb-law.com | 600 Doremus Ave.<br>Newark, NJ |
| Schiffenhaus Packaging Corp.<br>c/o Rock-Tenn Company<br>504 Thrasher Street<br>Norcross, GA 30071 | Camille V. Otero, Esq.<br>Gibbons, PC<br>One Gateway Center<br>Newark, NJ 07102-5310<br>cotero@gibbonslaw.com | 204 Academy Street<br>49 Fourth Street<br>2013 McCarter Highway<br>Newark, NJ |
| Sequa Corporation<br>200 Park Avenue<br>New York, NY 10166 | Brian L. Buniva, Esq.<br>Senior Counsel & Senior Director<br>Environment, Health & Safety<br>Sequa Corporation<br>919 E. Main Street, Suite 1300<br>Richmond, VA 23219<br>845-230-7374 (Direct)<br>804-873-0610 (Mobile)<br>Brian_Buniva@sequa.com<br><br>Gary P. Gengel, Esq.<br>Kegan A. Brown, Esq.<br>Latham & Watkins, LLP<br>885 Third Avenue<br>New York, NY 10022-4834<br>gary.gengel@lw.com | Sun Chemical Corporation<br>185 Foundry Street<br>Newark, NJ<br>(prior to 1987) |
| Seton Company, Inc.<br>1000 Madison Avenue<br>Norristown, PA 19403\<br><br>now Seton Tanning | David M. Kohane, Esq.<br>Cole Schotz, PC<br>PO Box 800<br>25 Main Street<br>Hackensack, NJ 07601-7015<br>201-525-6267(T)<br><br>DKipimuaohane.bradford@coleschotz.com | Seton Leather Company<br>849 Broadway<br>Newark, NY 07104 |

15

**ARR0195**

| SpectraServ, Inc.<br>75 Jacobus Avenue<br>Kearny, NJ 07032 | Diana Buongiorno, Esq.<br>Chiesa Shahinian & Giantomassi, PC<br>One Boland Dr<br>West Orange, NJ 07052<br>973-530-2075(T)<br>dbuongiorno@csglaw.com | 75 Jacobus Ave.<br>Kearny, NJ |
|---|---|---|
| STWB, Inc.<br>c/o Bayer Corporation<br>100 Bayer Road<br>Pittsburgh, PA 15205 | Timothy I. Duffy, Esq.<br>Coughlin Duffy LLP<br>Post Office Box 1917<br>350 Mount Kemble Avenue<br>Morristown, NJ 07962-1917<br>973-631-6002(T)<br>tduffy@coughlinduffy.com<br>lhall@coughlinduffy.com (Assistant) | Lehn & Fink Products Corp.<br>192-194 Bloomfield Avenue<br>Bloomfield, NJ 07003<br><br>Thomasett Colors/Sterling<br>120 Lister Ave.<br>Newark, NJ |
| Sun Chemical Corporation<br>35 Waterview Boulevard<br>Parsippany, NJ 07054-1285 | Warren W. Faure, Esq.<br>EH&S Counsel<br>Sun Chemical Corporation<br>35 Waterview Boulevard<br>Parsippany, NJ 07054<br>973-404-6590(T)<br>Warren.faure@sunchemical.com<br><br>Ted Wolff, Esq.<br>Manatt, Phelps & Phillips, LLP<br>7 Times Square<br>New York, NY 10036<br>twolff@manatt.com | Sun Chemical Corporation<br>185 Foundry Street<br>Newark, NJ<br>(1987 to present) |
| Teval Corporation<br>99 Cherry Hill Road, Suite 105<br>Parsippany, NJ 07054 | Lee D. Henig-Elona, Esq.<br>Gordon & Rees<br>18 Columbia Turnpike, Suite 220<br>Florham Park, NJ 07932<br>973-549-2520(T direct)<br>973-549-2500(T office)<br>lhenig-elona@gordonrees.com | Guyon Pipe<br>900-1000 South 4th Street<br>Harrison, NJ |
| Textron, Inc.<br>40 Westminster Street<br>Providence, RI 02903 | Jamie Schiff, Esq.<br>Textron, Inc.<br>40 Westminster Street<br>Providence, RI 02903<br>401-457-2422 (T)<br>jschiff@textron.com<br><br>Bonni Kaufman, Esq.<br>Holland & Knight<br>800 17th Street, NW<br>Suite 1100<br>Washington, DC 20006<br>202-955-3000<br>bonni.kaufman@hklaw.com | Spencer Kellogg Division<br>400 Doremus Avenue<br><br>Newark, NJ |

ARR0196

| | | |
|---|---|---|
| The Hartz Mountain Corporation<br>400 Plaza Drive<br>Secaucus, NJ 07094<br><br>The Hartz Consumer Group, Inc. on behalf of The Hartz Mountain Corporation | Curtis L. Michael, Esq.<br>Horowitz, Rubino & Patton<br>400 Plaza Drive<br>PO Box 2038<br>Secaucus, NJ 07094-2038<br>Curt.michael@hrplaw.com | 600/700 South 4th Street<br>Harrison, NJ |
| The Newark Group, Inc.<br>20 Jackson Drive<br>Cranford, NJ 07016 | David M. Meezan, Esq.<br>Kazmarek Mowrey Cloud Laseter LLP<br>1230 Peachtree Street N.E.<br>Suite 3600<br>Atlanta, GA 30309<br>404-969-0733<br>dmeezan@kmcllaw.com | The Newark Boxboard Co.<br>17 Blanchard Street<br>Newark, NJ |
| The Sherwin Williams Co.<br>101 Prospect Ave., N.W.<br>Cleveland, OH 44115 | Herbert (Bart) Bennett, Esq.<br>Sokol, Behot & Fiorenzo<br>229 Nassau Street<br>Princeton, NJ 08542-4601<br>609-279-0900(T)<br>hbbennett@sbflawfirm.com | 60 Lister Ave.<br>Newark, NJ |
| The Stanley Works<br>1000 Stanley Drive<br>New Britain, CT 06053<br><br>now Stanley Black & Decker, Inc. | Andrew Kolesar, Esq.<br>Thompson Hine LLP<br>312 Walnut Street, 14th Floor<br>Cincinnati, OH 45202<br>513-352-6545(T)<br>andrew.kolesar@thompsonhine.com | Stanley Tools<br>140 Chapel St.<br>Newark, NJ |
| Tiffany & Co.<br>727 Fifth Avenue<br>New York, NY 10022 | John Klock, Esq.<br>Gibbons, PC<br>One Gateway Center<br>Newark, NJ 07102-5310<br>973-596-4757 (T)<br>jklock@gibbonslaw.com | 820 Highland Avenue<br>Newark, NJ |

ARR0197

| | | |
|---|---|---|
| Unilever Bestfoods International Plaza Sylvan Avenue Englewood Cliffs, NJ 07632<br><br>Conopco, Inc., d/b/a Unilever (as successpr to CPC/Bestfoods, former parent of the Penick Corporation | Joshua Frank, Esq. Baker Botts 1299 Pennsylvania Ave., N.W. Washington, DC  20004-2400 202-639-7710 (T) Joshua.frank@bakerbotts.com<br><br>Andrew Shakalis, Esq. Associate General Counsel – Environmental & Safety Unilever 700 Sylvan Avenue Englewood Cliffs, NJ  07632 201-894-2763 (T) 201-894-2727 (F) Andrew.shakalis@unilever.com | Penick Corporation 540 New York Avenue Lyndhurst, NJ |
| Viacom Inc. 11 Stanwix St. Pittsburgh, PA 15222<br><br>Now CBS Corporation | Jeffrey B. Groy, Esq. VP, Sr. Counsel/ Environmental CBS Law Department CBS Corporation 2 East Mifflin Street, Suite 200 Madison, WI  5 3 7 0 3 262-705-0579(T) jeff.groy@cbs.com | Westinghouse Electric 95 Orange St. Newark, NJ |
| Vulcan Materials Co. 1200 Urban Center Drive Birmingham, AL 35242<br><br>Now Legacy Vulcan Corp. | Eva Fromm O'Brien, Esq. Fulbright & Jaworski Fulbright Tower 1301 McKinney Suite 5100 Houston, TX  77010-3095 713-651-5321 (T) 713-651-5246 (F) eobrien@fulbright.com<br><br>John M. Floyd, Esq. Senior Attorney Vulcan Materials Company 1200 Urban Center Drive Birmingham, AL  35242 205-298-3745 (Direct) 205-492-4219 (Cell) 205-298-2960 (F) floydj@vmcmail.com | 600 Doremus Ave. Newark, NJ |

ARR0198

| | | |
|---|---|---|
| Roman Asphalt Corporation 14 Ogden Street Newark, NJ 07104 | Michael V. Calabro, Esq. Law Offices of Michael V. Calabro 475 Bloomfield Avenue Newark, NJ 07107 973 482-1085 Mcalabro475@gmail.com | 14 Ogden Street Newark, NJ |

ARR0199

ARR0200



**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY**
REGION 2
290 BROADWAY
NEW YORK, NY 10007-1866

November 28, 2017

Via Electronic Mail

To:   Diamond Alkali – Lower 8.3 Miles Contact Group

Re:   Allocation for Operable Unit 2 Remedial Action
      Diamond Alkali Superfund Site, Essex and Hudson Counties, New Jersey

Dear Sir/Madam:

On September 18, 2017, we notified you that the U.S. Environmental Protection Agency (EPA), through the Agency's prime contract with CSRA, had retained AlterEcho and its senior allocation specialist Mr. David Batson, Esq., to perform an allocation for implementation of the remedy selected for the lower 8.3 miles of the Lower Passaic River Study Area. We also invited you to attend a "kick-off" meeting with Mr. Batson on October 13, 2017 at EPA's offices in New York.

Since that time, we understand that some parties have raised several issues of concern with Mr. Batson, including limits in the current allocation contract. For instance, several parties would like to exceed the limits in the current allocation contract on the amount of documents that can be submitted to the allocator, and on the number of meetings that parties can have with Mr. Batson. We also understand that some parties are seeking to include within the allocation process an opportunity to exit the allocation "early" and be considered by EPA for cash out settlement offers, ahead of the schedule established in current scope of work with CSRA.

With this in mind, EPA is notifying you that it is considering the above requests to modify the current allocation contract. EPA will discuss with Mr. Batson potential changes to the current allocation process, taking into account the feedback received from parties participating in the allocation.

Please keep in mind that EPA established an allocation process for the lower 8.3 miles and has entered into a contract for the performance of that allocation. Separate agreements concerning EPA's allocation for the lower 8.3 miles, might not be consistent with EPA's current allocation contract; might undermine the current allocation process; and/or might violate conflict of interest rules or provisions.

Finally, note that the costs of the allocation are currently being borne by EPA and that the Agency is not requesting that parties pay to participate in the allocation.

Sincerely,

Eric J. Wilson
Deputy Director for Enforcement and Homeland Security
Emergency and Remedial Response Division

**ARR0201**

cc:    David Batson, Esq., AlterEcho
        Mary Apostolico, CSRA
        Kathryn Barton, EPA - OARM

**ARR0202**



**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY**
REGION 2
290 BROADWAY
NEW YORK, NY  10007-1866

JAN − 5  2018

**Via Electronic Mail**

To:     Diamond Alkali – Lower 8.3 Miles Contact Group

Re:     Allocation for Operable Unit 2 Remedial Action
        Diamond Alkali Superfund Site, Essex and Hudson Counties, New Jersey

Dear Sir/Madam:

I am writing to follow-up on my letter of November 28, 2017, as well as to address communications received by the U.S. Environmental Protection Agency (EPA) since that time with respect to the allocation for the lower 8.3 miles of the Lower Passaic River Study Area.

As you know, the allocator, Mr. David Batson, Esq., has informed EPA of the issues raised to him by the allocation parties. Several parties have also contacted EPA directly, both in writing and by phone, to express their views and concerns regarding the allocation process as it is currently structured. After careful consideration, EPA has arrived at the following determinations:

1.      The Agency is prepared to increase the current number of documents subject to the allocation process. The current allocation contract allows for up to 150,000 pages of documents to be submitted and reviewed as part of the allocation. EPA will, as necessary, modify the allocation contract to allow additional documents to be submitted by the allocation parties and be reviewed by Mr. Batson and his team. The allocation parties who sign the Participation Agreement will be provided access to a SharePoint site with documents relevant to the allocation. Each party should review the documents on the SharePoint site and provide Mr. Batson with a list of documents (including the number of pages) that the party seeks to add to the allocation process. EPA, in consultation with Mr. Batson, will evaluate the documents for relevance to the allocation and consider an appropriate increase to the existing contract. Note, however, that the document submission and review portion of the allocation process is not intended to duplicate the full discovery process that a court would include, and therefore, there may be some documents that will be beyond the scope of the process.

2.      EPA understands and appreciates that parties to the allocation need sufficient time to communicate directly with Mr. Batson to address their views regarding their potential allocation share and the share potentially attributed to other allocation parties. The Agency is therefore prepared to increase the current allocation contract to allow additional time for parties to meet with and discuss their positions and concerns with Mr. Batson. EPA will consult with Mr. Batson on an appropriate amount of time to add to the existing contract.

ARR0203

3.      Several parties in the allocation have contacted EPA claiming to be similarly situated to parties that received an "early" cash out settlement offer from EPA. Those parties requested that the allocation process provide for an early determination (an "off-ramp") that they are in fact similarly situated to the early cash out parties and should receive a similar cash out offer from EPA prior to the completion of the allocation process. EPA agrees that an early determination should be provided for in the allocation process to allow such parties, if any exist, to exit the allocation process prior to its completion. EPA will work with Mr. Batson to incorporate an early exit into the allocation process.

4.      Finally, at the present time, EPA is not adding more parties to the allocation. As we have previously stated, if we receive or gather evidence that a party that has not yet received a notice letter is responsible for the release or discharge of a hazardous substance into the lower 8.3 miles, then we would consider issuing a notice letter to such a party and adding that party to the allocation process.

Also, as EPA has indicated, the Passaic Valley Sewerage Commission and the four municipalities identified as potential responsible parties are uniquely situated to provide in-kind services with respect to the remedy selected for Operable Unit 2 (OU2) of the Diamond Alkali Superfund Site. EPA has been in discussions with those parties regarding the substantial contributions that, collectively, they may make to the OU2 remedy, and the Agency has facilitated conversations between technical personnel from PVSC and Occidental Chemical Corporation (OCC) related to the OU2 remedial design, which OCC is performing pursuant to a settlement agreement and order on consent with EPA.

We look forward to your continued participation in the allocation process, and we will continue to work with Mr. Batson to ensure it proceeds in a fair and efficient manner. Please contact Juan M. Fajardo at 212 637-3132 if you have questions regarding this matter.

Very truly yours,

Eric J. Wilson
Deputy Director for Enforcement and Homeland Security
Emergency and Remedial Response Division

cc:     David Batson, Esq., AlterEcho (by email)
        Mary Apostolico, CSRA (by email)
        David Moora, EPA (by email)

**ARR0204**



**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY**
REGION 2
290 BROADWAY
NEW YORK, NY 10007-1866

FEB 16 2018

Via Electronic Mail

To:  Diamond Alkali – Lower 8.3 Miles Contact Group

Re:  Allocation for Operable Unit 2 Remedial Action
     Diamond Alkali Superfund Site, Essex and Hudson Counties, New Jersey

Dear Sir/Madam:

We understand from the Small Parties Group[1] and David Batson, the allocator, among others, that some of the parties that agreed to participate in the Operable Unit 2 (OU2) allocation are seeking to "convene" with the U.S. Environmental Protection Agency (EPA or Agency) to further discuss issues previously raised and addressed by EPA in its letter to the parties of January 5, 2018. I am writing to further address those issues to ensure that the allocation for OU2 proceeds on schedule.

First, the remedial design for OU2 is on schedule for completion in September 2020, and the allocation is intended to be completed prior to that date in order for EPA to have an enforcement document in place for the timely initiation of the remedial action for OU2. For that reason, EPA strongly encourages the parties participating in the allocation to work towards its timely completion.

Second, while we are willing to increase the number of documents that the parties may submit in the allocation and the time to communicate directly with Mr. Batson in order to make the allocation a success (i.e., by providing a basis for a remedial action consent decree and potential cash out settlements), we reiterate that the process is not intended to duplicate the full discovery process that litigation would include. We are aware that when private parties undertake an allocation, it can sometimes evolve into a process that stretches on for many years, and become almost as burdensome as litigation. In contrast, this allocation should follow the basic structure established in the work plan that Mr. Batson shared with the group after the initial meeting in October 2017.

---

[1] EPA was notified that there is a "Small Parties Group" and received a memorandum dated February 9, 2018 on behalf of that Group. However, the members of that Group have not been identified.

**ARR0205**

Documents Relevant to the Allocation

The purpose of the allocation is to determine a share of relative responsibility among the allocation parties[2] for costs associated with the remedial design and remedial action to be undertaken for OU2 of the Diamond Alkali Superfund Site (Site). Accordingly, documents providing information or related to the following factors would be relevant to the allocation for OU2[3]:

- Identification of the contaminants of concern (COCs), as defined in the March 2016 Record of Decision (ROD) for Diamond Alkali OU2, released or discharged to the Lower Passaic River from a facility with which a party is associated;

- The amount of COCs involved in such release or discharge;

- The likelihood that discharged COCs reached an area of the river associated with the selected remedy;

- The degree of control and care exercised by the party with respect to the released COC, taking into account the characteristics of such hazardous substance and the associated risk to public health or the environment about which the party should have been aware;

- The degree of cooperation by the party with federal, state, or local officials to prevent any harm to the public health or the environment related to the release; and,

- The extent to which a release impacted the need for or cost of the remedy.

As described in EPA's January 5, 2018 letter, the parties that have agreed to participate in the allocation should review the documents on the SharePoint site established by Mr. Batson and his team to support the allocation. Each party should provide Mr. Batson with a list of documents (including number of pages) that the party seeks to add to the allocation process. Using the factors above, EPA, in consultation with Mr. Batson, will evaluate the documents for relevance to the allocation and increase as appropriate the number of pages to be reviewed for the allocation under EPA's contract with CSRA-AlterEcho. In order for the allocation to proceed expeditiously, parties should provide Mr. Batson with their lists of documents to be added to the SharePoint site by March 2, 2018.

---

[2] The allocation parties are the potential responsible parties (PRPs) that received a notice letter from EPA for OU2, with the exception of those parties to whom EPA offered an "early" cash out settlement, the Passaic Valley Sewerage Commission (PVSC), and the four municipal PRPs.

[3] The relative toxicity of the COCs involved is a factor for the allocator to consider. That information is found in the ROD for OU2.

ARR0206

Opportunities to Communicate with Mr. Batson

As described in the work plan that Mr. Batson provided to you shortly after the initial allocation meeting in October 2017, the allocation process provides for the parties to communicate with Mr. Batson as follows:

- Under Task 2 (Public Announcement of Project), a meeting with the allocation parties to introduce the allocation; and communication via email or phone with the allocation parties as a group to answer questions about and obtain execution of the Participation Agreement.

- Under Task 5 (Meeting with PRPs on Draft Allocation Process and Database Design), a meeting with the allocation parties to describe to and obtain comments from the parties on the anticipated conduct of the allocation process, and the anticipated organization of data and contents of the database; and communications between Mr. Batson and the parties by phone, email or other electronic media averaging 20 minutes for each party to obtain additional information, if any, for the allocation database.

- Under Task 6 (Final Allocation Design), communications between Mr. Batson and the allocation parties by phone, email or other electronic media averaging 20 minutes for each party to obtain any additional comments from the parties regarding the allocation process design.

- Under Task 8 (Final Data Reports), communications by Mr. Batson with individual allocation parties as required to answer questions regarding the contents of their data report.

EPA is prepared to modify the allocation contract to allow for additional communications with Mr. Batson. Parties seeking additional opportunities to meet or communicate with Mr. Batson should provide, in detail, such a request to EPA by March 2, 2018 and the Agency will promptly respond to the request.

Passaic Valley Sewerage Commission (PVSC) and the Municipalities

EPA has explained in several letters (including most recently in EPA's January 5, 2018 letter to the allocation parties) the basis on which we have chosen not to add to the allocation PVSC and the four municipalities that were notified of their status as PRPs for OU2. We also informed the allocation parties that EPA has facilitated conversations between technical personnel from PVSC and Occidental Chemical Corporation (OCC) related to the OU2 remedial design. We understand that some parties would prefer for PVSC and the municipalities to participate in the allocation or to be assigned a share of liability in the allocation, but at the present time the Agency is not adding more parties to the allocation.

ARR0207

Other Non-Notified Parties

Similarly, EPA has notified the allocation parties that the Agency will not be expanding the allocation to include parties to which EPA has not issued a notice of liability. Mr. Batson has informed EPA of several parties that, while not yet in receipt of a notice of liability, are expecting to participate. Where warranted, EPA will issue notice letters to those parties.

With respect to the list of industrial users of PVSC that William Hengemihle of FTI Consulting provided to EPA in February 2017, the list includes a number of entities that EPA (and/or the Cooperating Parties Group) evaluated in the past, and some of them received notice letters. In other cases, EPA could not establish sufficient information to support a notice of potential responsibility and some of the entities on the list are defunct. In short, as discussed with Mr. Hengemihle at the time, the list itself is not an especially useful indication of the existence of additional PRPs.

Early Cash Out Settlement Criteria

As you know, EPA made early cash out settlement offers to 20 PRPs identified by EPA as "not associated with the release or disposal of any of the COCs for OU2" (EPA's May 17, 2017 letter)[4]. EPA has stated that it will, as part of the allocation, consider making additional early cash out settlement offers to parties similarly situated. The Agency recognizes that AlterEcho, and then EPA, may need to determine, based on the available information, whether a party is responsible for the release or disposal of a COC for OU2.

Certification

We agree that parties participating in the allocation should certify that they have conducted a thorough, comprehensive, good faith search for documents, and have fully and accurately disclosed all relevant information to Mr. Batson for his consideration in the allocation.

---

[4] As you also know, 15 of those PRPs have entered into a proposed cash out settlement agreement with EPA.

ARR0208

Finally, as you know, the next step of the allocation process is for you to review and comment on the draft allocation process and database design document, which you may have received from AlterEcho by now. In order to keep the allocation moving in a timely manner, we urge you to give that document, and this letter, your immediate attention.

Sincerely,

Eric J. Wilson
Deputy Director for Enforcement and Homeland Security

cc:     David Batson, Esq., AlterEcho (by email)
        Mary Apostolico, CSRA (by email)
        David Moora, EPA (by email)

**ARR0209**

For Public Disclosure by Consent of the Participating Allocation Parties and EPA (Fall 2022)

ARR0210



**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY**
REGION 2
290 BROADWAY
NEW YORK, NY 10007-1866

FEB 2 3 2018

Via Electronic Mail

To:     Diamond Alkali – Lower 8.3 Miles Contact Group

Re:     Allocation for Operable Unit 2 Remedial Action
        Diamond Alkali Superfund Site, Essex and Hudson Counties, New Jersey

Dear Sir/Madam:

In my letter of February 16, 2018 regarding the allocation for Operable Unit 2 (OU2) of the Diamond Alkali Superfund Site (Site), I stated that parties participating in the allocation should provide David Batson with a list of documents to be added to the SharePoint site by March 2, 2018. Some participants to the allocation have, since receipt of my February 16th letter, requested that the United States Environmental Protection Agency (EPA or Agency) extend the March 2, 2018 deadline. This letter serves to modify that deadline.

We understand that the allocation parties are providing input to Mr. Batson on the development of an allocation process and database design document specifying the allocation factors, and that the final allocation process design will be issued by David Batson to the parties by the end of May 2018.

Some of the parties participating in the allocation would like to have the opportunity to submit documents after the final allocation design is completed. While we recognize that some parties may benefit by having an opportunity to review the final allocation design prior to identifying the documents they seek to include in the allocation (since the identification of the documents is influenced by the allocation factors), we also realize that the factors themselves are unlikely to change much, if at all, from the factors in my February 16th letter, which are drawn from the draft allocation process design document David Batson provided to the parties.

Importantly, the parties that contacted EPA maintained that the parties participating in the allocation understand that the remedial design for OU2 is on schedule for completion in September 2020, and that the allocation must be completed prior to that date.

Based on the above, EPA is modifying the March 2, 2018 deadline for each party to submit a list of additional documents to April 13, 2018 which should provide the parties sufficient time to examine the material presently in SharePoint and to review the factors relevant to the allocation as they relate to documents parties would like to have made part of the allocation. It is important

that the additional documents submitted by parties not duplicate the materials already in SharePoint. We also welcome receipt of the information prior to April 13. The list of documents should be submitted in the following format:

| Document Date | Title | Number of Pages | Document Type | Addressee Name & Organization | Author Name & Organization | Reason Relevant to Allocation & Relevant Party |
|---|---|---|---|---|---|---|
| | | | | | | |

If after receipt of the final allocation design a party believes it has documents pertinent to the allocation which it did not identify by the April 13th deadline, such party may identify such documents within two weeks of receipt of the final allocation design, provide an explanation why each document was not identified by the April 13th deadline and request that the Agency have the documents included in the allocation.

Finally, please note that the March 2, 2018 deadline for submitting to EPA a request for additional opportunities to communicate with Mr. Batson has not been changed.

Sincerely,

Eric J. Wilson
Deputy Director for Enforcement and Homeland Security

cc:    David Batson, Esq., AlterEcho (by email)
       Mary Apostolico, CSRA (by email)
       David Moora, EPA (by email)

ARR0212

For Public Disclosure by Consent of the Participating Allocation Parties and EPA (Fall 2022)



**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY**

REGION 2

290 BROADWAY

NEW YORK, NY 10007-1866

MAY — 1 2018

By Email and Regular Mail

David G. Mandlebaum, Esq.
Eric S. Aronson, Esq.
Greenberg Traurig, LLP
2700 Two Commerce Square
2001 Market Street
Philadelphia, PA 19103

Re:   Diamond Alkali Superfund Site ("Site") - OU2 Allocation Proceeding

Dear Messrs. Mandlebaum and Aronson:

We understand that David Batson of AlterEcho will be responding to your letter of April 10, 2016 [sic] regarding the allocation process for Operable Unit 2 (OU2) of the Diamond Alkali Superfund Site (Site). There are, however, statements in your letter that the U.S. Environmental Protection Agency (EPA) Region 2 seeks to clarify and correct.

The OU2 allocation process is not mandatory. As you know, Eric Wilson of EPA issued a letter dated September 18, 2017 to 80 potentially responsible parties (PRPs) inviting those parties to participate in the allocation. Some of the parties have declined to do so, including, as you note, Occidental Chemical Corporation (OCC). That EPA's contractor AlterEcho, after consideration of the facts through the allocation, will assign a share to all 80 PRPs invited to participate does not make participation in the allocation process mandatory.

Your letter also states that EPA prohibited the parties from undertaking their own allocation. That is not the case. Rather than preventing the parties from undertaking an allocation, EPA initiated the allocation process because of the unwillingness (or inability) of the PRPs to undertake and complete their own allocation. For example, the Lower Passaic River Cooperating Parties Group (CPG) retained an allocator in 2015, but failed to complete the allocation. Similarly, in 2012, the CPG initiated an allocation effort intended to apply to the costs of the removal action at River Mile 10.9, an effort that also was unsuccessful. This track record is what has led EPA to offer the PRPs the opportunity to participate in the present allocation process.

**ARR0213**

Initially, EPA intended to facilitate a more limited allocation process than the present one.  As you know, EPA intended to limit the allocation to parties not associated with the release of dioxin, furans and polychlorinated biphenyls (PCBs), the contaminants of concern (COCs) driving the remedy for OU2. Numerous parties contacted EPA, requesting that we expand the allocation process to include all the OU2 PRPs. After much consideration, EPA agreed to include all OU2 PRPs, apart from the PRPs that settle pursuant to EPA's "early" cash out settlement offered in March 2017, and the Passaic Valley Sewerage Commission and four municipal PRPs.

Further, EPA has responded to concerns raised by parties participating in the allocation and supplemented the allocation contract to allow the parties to submit additional documents, to provide additional time for the parties to consult with the allocator and to include an "off-ramp" in the allocation process.

Confidentiality

For the OU2 allocation, confidentiality is addressed in EPA's prime contract with CSRA (through which EPA retained AlterEcho), [1] and in the Task Order Statement of Work (SOW), pursuant to which AlterEcho is performing the allocation. The SOW, a copy of which was provided to the allocation parties, contains the confidentiality terms in EPA's agreement with CSRA-AlterEcho and references the Administrative Dispute Resolution Act of 1996 (ADR Act).

Section 2.0 of the SOW states, in relevant part:

> Unless otherwise noted herein, all allocation related communications by the CSRA Team involving the OU2 PRPs or representatives of EPA or DOJ, individually or in groups, will be held confidential pursuant to the provisions of the ADR Act of 1996, 5 USC 574.

> In order to ensure a common expectation of confidentiality, all PRP participants in the allocation process will be required to enter, and EPA will appropriately acknowledge, a confidentiality agreement.

Section 3.0 of the SOW reads, in relevant part:

> CSRA will approach this task in accordance with the basic terms of the contract and according to the established norms and ethical standards of ADR professionals. Except as otherwise noted herein, information provided to the ADR professional by any of the parties, including EPA, communications between parties and the ADR professional, and notes and dispute resolution work product generated by the ADR professional during

---

[1] The allocation parties were also provided with the web link (https://www.epa.gov/sites/production/files/2015-09/documents/adr_contract_sow.pdf) to EPA's prime contract with CSRA when the OU2 allocation SOW was provided to the parties.

ARR0214

work pursuant to the Task Order will be maintained as confidential by the ADR professional pursuant to the provisions of the ADR Act of 1996 (Public Law 104-320; 5 USC 571 et al.) and applicable federal, state and judicial requirements.

The information that is not confidential is noted in Section 4, Task 3 of the SOW that reads, in relevant part:

> The allocation process will be designed based upon information received during consultations with EPA and OU2 PRPs on the allocation database and using all relevant non-confidential received information, including data, records, and other documents.

> No confidential information will be included in the allocation database. Though to be designed for purposes of conducting the allocation, the database will be designed in such a way as to allow access and use by EPA and DOJ staff for their settlement purposes following submission of the Allocation Data Reports in Task 8.

Confidentiality is also addressed in the ADR Act, a federal statute that EPA, as a federal agency, is required to abide by even in the absence of a signed confidentiality agreement. The Interagency ADR Working Group, established by Presidential Memorandum dated May 1, 1998, provides guidance on the confidentiality provisions of the ADR Act at https://www.adr.gov/adrguide/ch29.html. In summary, the guidance states the following:

- The ADR Act affirmatively bans neutrals from voluntarily disclosing dispute resolution communications and any communication provided in confidence to the neutral unless one of four statutory exceptions apply (see guidance for exceptions).
- Parties to an ADR proceeding have a similar prohibition on releasing information unless one of seven exceptions apply. Those exceptions include the following (see guidance for a listing of all seven exceptions):
  - Dispute resolution communications relevant in disputes involving a settlement agreement reached in an ADR; and
  - A dispute resolution communication **(except those generated by the neutral)** that was provided or available to all parties to the ADR proceeding.
- The common law of evidence and Federal Rules of Evidence (FRE) 408 have long restricted the admission of settlement discussions – like those in ADR – into evidence to prove or disprove liability or a defense.
- It should be noted that confidentiality clauses in a settlement agreement may not withstand a request under FOIA

ARR0215

With the above guidance in mind, EPA has endeavored to protect the confidentiality of the OU2 allocation communications as much as possible in the following ways:

- EPA does not participate in the meetings between AlterEcho and the allocation parties.
- The allocation work plan specifies that AlterEcho will provide summaries of input obtained from the allocation parties at various steps in the allocation process, without attribution to contributions of individual participants.
- AlterEcho will not share with EPA the position briefs and reply briefs submitted by the allocation parties.

However, given the limitations in the ADR Act, there are allocation documents that EPA does not believe can be protected. First, the nexus documents contained in the document repository (or SharePoint site) are not confidential. In addition, EPA does not expect it will be able to protect the data in the allocation database from disclosure under FOIA or common law protection or privilege. Accordingly, the SOW specifies that "No confidential information will be included in the allocation database".[2] The allocation parties should not, therefore, include confidential information in their submissions to the document repository. If a document is within the categories of documents that must be submitted and certified to, and it contains confidential business information, it would be prudent to redact the protected information. If the allocation parties are concerned that the certification requires them to submit documents or material that is entitled to confidentiality under the attorney-client privilege or other privilege, that concern could be resolved by addressing the language of the certification.

With respect to the Allocation Data Reports and the draft and final Allocation Recommendation Reports, which are the work product of neutral but that the allocation parties and EPA will all receive and review, EPA has the following observations:

- In responding to a FOIA request, EPA may assert FOIA Exemption 3, which allows the withholding of information prohibited from release by another federal statute, in this case the ADR Act, as a basis to withhold disclosure of any confidential communication in the possession of an internal neutral. Note that this protection from disclosure pursuant to FOIA does not apply to communications not protected by the ADR Act, such as written communications shared directly by a party with all other parties to the process, even if the parties have agreed in writing that such communications are confidential. Also, because the contents of the Data Reports and the draft and final Allocation Recommendation Reports will be shared with the allocation parties and EPA, and will be relevant to any settlement that the United States is able to enter into, it is possible that

---

[2] Also note that the ADR Act does not protect documents that are exchanged during an ADR process but were produced for an entirely different purpose, and are not otherwise protected from disclosure, such as a document required to be prepared by regulation or discussions regarding an unrelated subject. Much of the information submitted by the allocation parties is likely to fall into this category.

ARR0216

the data reports and the final allocation report cannot be protected from disclosure under FOIA, unless they are deemed to comprise communications generated by the neutral, which under Section 574(7) would not be subject to release.

As described in EPA's September 18, 2017 letter, the OU2 allocation is intended to result in cash-out settlement offers from EPA to those parties that are not associated with the release or disposal of dioxin, furans and/or PCBs, and is also intended to identify those parties that should participate in consent decree negotiations for the performance of the remedial action for OU2 due to their association with the release or disposal of dioxin, furans and/or PCBs into the lower 8.3 miles of the Lower Passaic River.

Any settlement entered into by EPA will require public notice before becoming effective, thereby providing interested parties with an opportunity to comment on the proposed settlement. EPA will respond to comments received and may modify or withdraw from the proposed settlement if comments demonstrate that the proposed settlement is inappropriate, improper or inadequate. In responding to any such comments, and in seeking entry by the court of a consent decree, EPA will very likely need to rely on documentary evidence. EPA, along with the Department of Justice, will make every effort to use documents that are not confidential, such as those from the SharePoint site. However, even if the court were to request the Allocation Recommendation Report, EPA and the Department of Justice can take steps to protect it, such as objecting or moving to file it under seal.

We hope this letter clarifies for you EPA's position with respect to the various categories of information that will be part of the OU2 allocation process.

Sincerely,

Juan M. Fajardo
Assistant Regional Counsel

cc:    David Batson, Esq., AlterEcho *(by email)*
       Brian Donohue, Esq., USDOJ *(by email)*
       Laura Rowley, Esq., USDOJ *(by email)*
       David Moora, Esq., US EPA *(by email)*
       Allocation Parties, Appendix A *(by email)*

ARR0217

ARR0218

## Appendix A
## Diamond Alkali Superfund Site - Operable Unit 2
## Participating Allocation Parties

1. 21st Century Fox
2. Alliance Chemical
3. Arkema / Legacy Site Services
4. Ashland
5. Atlantic Richfield
6. Atlas Refinery
7. BASF
8. Benjamin Moore
9. Campbell Foundry
10. Canning Gumm
11. CBS Corp
12. Celanese
13. Chargeurs
14. Chevron Environmental Management
15. Coats & Clark
16. Congoleum
17. Conopco
18. Cooper Industries
19. Covanta Essex
20. Croda
21. Curtiss Wright
22. Darling Ingredients
23. DII
24. Eden Wood
25. Elan Chemical
26. EnPro Holdings
27. EPEC Polymers
28. Essex Chemical
29. Everett Smith Group
30. Franklin Burlington
31. Garfield Molding
32. General Electric
33. Givaudan Fragrances
34. Goodrich
35. Hartz Consumer Group
36. Hexcel
37. Hoffman – LaRoche
38. Honeywell
39. ISP Chemicals
40. ITT/Excelis/Harris
41. Kearney Smelting
42. Leemilt Petroleum
43. Legacy Vulcan
44. Lucent Technologies
45. National Standard
46. Newark Group
47. Newark Morning Ledger
48. Newell Brands
49. Okonite
50. Otis Elevator
51. Palin Industries
52. Pabst Brewing
53. Passaic Properties
54. Pharmacia
55. Pitt-Consol Chemical
56. PPG Industries
57. PSEG
58. Purdue Pharma Technologies
59. Quality Carriers
60. Revere Smelting
61. Safety Kleen – McKesson
62. Sequa
63. Sherwin Williams
64. Spectraserv
65. Stanley Back & Decker
66. STWB
67. Sun Chemical
68. Tate & Lyle
69. Teval
70. Textron
71. Tiffany

**ARR0219**

For Public Disclosure by Consent of the Participating Allocation Parties and EPA (Fall 2022)

ARR0220

**Diamond Alkali Superfund Site OU2**
**Allocation Guide**

# Attachment D

*Public Version*

# Revised Work Plan

## EPA Conflict Prevention and Resolution Services Contract

## Contract # EP-W-14-020

## Work Plan for Task Order #096

## Diamond Alkali-Lower Passaic River Allocation

**Prepared for:**

US Environmental Protection Agency
Washington, DC 20460

| | |
|---|---|
| EPA Program Office: | Region 2 |
| EPA Task Order Contracting Officer's Representative (TOCOR): | Alice Yeh |
| CSRA Task Order Manager (TOM): | Mary Apostolico |
| Subcontractor Task Manager: | ~~David Batson~~  Judy Manley |
| | TechLaw / AlterEcho |

This **Revised** Work Plan describes CSRA's approach for performing the tasks described in the **Revised** Statement of Work. It includes a description of the activities associated with each task as well as a list of transmittals and deliverables and their due dates. A cost estimate for this Task Order Work Plan is provided as a separate attachment.  **Revisions to this work plan are presented with strike thru and in bold blue.  This modification adds additional documents relevant to the allocation to be submitted by the PRPs (along with associated time to evaluate the documents for relevance), additional time for PRPs to communicate, meet, and exchange information with the allocator, and a step for early identification of PRPs who are similarly situated to the parties that received the first round of cash out settlement offers from EPA for EPA's use in making early settlement determinations.**

The Work Plan is organized as follows:

Section 1.0 - Background
Section 2.0 - Assumptions
Section 3.0 - Project Methodology and Approach
Section 4.0 - Work Tasks
Section 5.0 - Reports, Transmittals and Deliverables
Section 6.0 - Staffing Plan
Section 7.0 - Quality Management
Section 8.0 - Conflict of Interest
Section 9.0 - Cyber Security
Section 10.0 - Project Budget
Section 11.0 - Period of Performance

## 1.0    Background

The Diamond Alkali Site (the Site) has a long history, involving over 100 potentially responsible parties (PRPs). Since the late 1800s, the Lower Passaic River has been a highly industrialized waterway, receiving direct and indirect discharges from numerous industrial facilities. Data collected in the Lower Passaic River, and EPA's analyses, show that contaminated sediment in the lower 8.3 miles are a major source of contamination to the rest of the river and Newark Bay and pose an unacceptable risk to human health and the environment due to the presence of a variety of contaminants that stay in the environment for a long time and can build up in fish and shellfish. These contaminants include dioxins and furans, PCBs, mercury, DDT and its primary breakdown products, copper, dieldrin, PAHs, and lead.

On March 4, 2016, EPA issued a record of decision selecting the remedy for the lower 8.3 miles of the Lower Passaic River, which is Operable Unit 2 (OU2) of the Site. Currently, the remedial design (RD) for OU2 is being performed by Occidental Chemical Corporation (OCC) pursuant to an administrative order on consent. The cost of the remedial action (RA), estimated for purposes of remedy selection, is $1.38 billion.

Region 2 has issued a notice of potential liability to approximately 100 parties, informing them of their responsibility for the RD/RA for OU2. The Region has offered a first round of cash-out settlements to a group of approximately 20 PRPs. The Region expects to separately address the liability of municipalities and public entities. For the remaining PRPs, the Region expects to enter into settlement negotiations for performance and funding of the remedy with OCC and other parties (the "Major PRPs") that the Region considers to be major PRPs for OU2. The Region plans another round of cash-out settlements with "Middle Tier PRPs", i.e., not part of the phase 1 cash-out group, but also not Major PRPs. The Region requires the services of a third

party allocator to develop a settlement framework and evaluate the 80 Middle Tier and Major parties within the framework.

Region 2 understands that the PRP group (the Cooperating Parties Group, or CPG) has made at least two previous attempts to develop a mutually acceptable allocation of liability to promote settlement with EPA for costs and work at the Site, however both efforts fell short of agreement. Region 2 believes that because of these previous efforts, additional information available from responses to CERCLA 104(e) letters, information available from previous litigation at the state level and numerous conversations with PRPs over the years, the project will be able to be built primarily upon existing information and contacts. Some minor augmentation of background, data and allocation factors may need to occur to develop what is hoped to be an acceptable settlement proposal and structure. In 2016, the Department of Justice retained a mediator/allocation specialist, David Batson of TechLaw/AlterEcho, to assist in settlement analysis. Those discussions and analyses have resulted in this effort.


## 2.0    Assumptions

This work plan and the attached cost estimate are based on the following assumptions, in addition to Task-specific assumptions noted in Section 4.0 of the Work Plan. All work will be conducted in accordance with the specific tasks in the Work Plan to the performance metrics specified therein.

General Assumptions:

- EPA will provide the CSRA Team with a list of parties noticed regarding their responsibility for the RD/RA for OU2, including:
  - a list of Major and Middle Tier Parties ("OU2 PRPs");
  - a list of Phase 1 cash-out parties; and
  - a list of other OU2 parties, including municipalities and other entities
- Maximum of 80 PRPs will be provided an opportunity to participate in or be evaluated for the purpose of determining a share of responsibility in the allocation process
- All OU2 PRPs will be provided an opportunity to participate in the design of the allocation database and process and to provide additional Site-related information for possible addition to the database, and will be designated a share of responsibility in the Final Allocation Recommendation Report
- The Final Allocation Recommendation Report will also divide the parties into logical groupings of similarly-situated PRPs
- EPA will provide the CSRA Team with a listing and contact information for each OU2 PRP; Reference herein to meetings or other forms of communication with the OU2 PRPs means communication with the identified representatives of such parties
- A maximum of ~~150,000~~ *290,000* pages of documents will *be* reviewed and utilized to conduct the allocation, including;
  - A maximum of 130,000 pages of documents received from EPA for CSRA Team review
  - A maximum of ~~20,000~~ *160,000* extra pages of documents received from PRPs for CSRA review
- All communications by the CSRA Team will be by phone or email unless meeting noted
- *The CSRA Team estimates 8-10 hours of communications per party over the remainder of the project. This time is presented as 2 hours per party in Tasks 5.A.1 and 6.A.4; additional meetings (5.A.1, 5.B.1, 9, 10.2); and an undefined number of calls and e-mails allowed for in remaining tasks.*
- Maximum of 4 hours of combined project status/update calls will be held by the CSRA Team with EPA per month

- Out-of-DC Area Meetings:
  - ~~3~~ *6* meetings involving 2 contractor staff
- Out-of-DC area meetings will be held at the EPA Region 2 offices or other location in the greater New York City metropolitan area as determined by EPA, or OU2 PRPs they supply meeting space
- Travel for and timing of out-of-DC area meetings will be scheduled to allow CSRA Team members to travel from Washington, DC and return on the same day
- Meetings will be scheduled and held within noted timeframes
- The allocation database will be designed and organized primarily for purposes of allocation
- Space and equipment for meetings will be provided by EPA or PRPs
- The CSRA Team will provide EPA with a copy of all communications sent to OU2 PRPs regarding the subject, substance, and logistics of OU2 PRP meetings with CSRA Team members
- Any part of a communication, attachment to a communication, presentation, or written material provided to OU2 PRPs by the CSRA Team that involves a description of the Site or EPA actions or activities will be provided to EPA for review and approval prior to submission to the OU2 PRPs
- Unless otherwise noted herein, all allocation related communications by the CSRA Team involving the OU2 PRPs or representatives of EPA or DOJ, individually or in groups, will be held confidential pursuant to the provisions of the ADR Act of 1996, 5 USC 574
- In order to ensure a common expectation of confidentiality, all PRP participants in the allocation process will be required to enter, and EPA will appropriately acknowledge, a confidentiality agreement
- The CSRA Team will provide invoices to EPA at the end of each month in which a task is completed (activity, transmittal, and/or deliverable) identified in Section 4.0 of the Work Plan, with a written Progress Report detailing associated activities accomplished during the reporting period, how such activities meet Task Order performance standards, and associated labor and other direct costs
- "Staffing" referenced in Section 4.0 Work Tasks refers to TechLaw staff.
- This Task Order can be modified to change the statement of work or add funding.

## 3.0    Project Methodology and Approach

The proposed methodology and approach consists of the following:
- To support this Task Order, CSRA selected TechLaw support.
- CSRA and TechLaw (the CSRA Team) will not interpret EPA policy on behalf of the EPA or make decisions on items of policy, regulation or statutes. The CSRA Team also will not take a stand on the merits of substantive items under discussion including, but not limited to, any substantive issues raised by OU2 PRPs.  The CSRA Team will not interpret EPA's March 4, 2016, record of decision selecting the remedy for OU2 of the Site.
- In gathering information or performing research with parties outside the EPA, CSRA Team members will identify themselves as contractors to EPA and not as EPA employees.
- CSRA will approach this task in accordance with the basic terms of the contract and according to the established norms and ethical standards of ADR professionals. Except as otherwise noted herein, information provided to the ADR professional by any of the parties, including EPA, communications between parties and the ADR professional, and notes and dispute resolution work product generated by the ADR professional during

work pursuant to the Task Order will be maintained as confidential by the ADR professional pursuant to the provisions of the ADR Act of 1996 (Public Law 104-320; 5 USC 571 et al.) and applicable federal, state and judicial requirements.

- To enhance the positive substantive, relational, and procedural outcomes from ADR cases, CSRA will direct all ADR professionals providing ADR services under this task order to do the following prior to the mediation or facilitation and throughout the process:
  - o Inquire about whether individual participants have the time, financial, and logistical resources necessary to participate effectively in the process and – where resources are inadequate – assist them in identifying appropriate resources or in making necessary adjustments to the process to accommodate resource constraints;
  - o Assist the participants in identifying the issues that are important to resolving any controversy and solutions that will address the needs shared by the participants;
  - o Conduct the process to promote active engagement from all participants;
  - o Explore with the participants appropriate ways to incorporate high quality and relevant information resources necessary to resolve the issues; and
  - o To support productive dialogue and effective implementation of any agreements reached by the participants, ensure that participants have appropriate authority to make commitments on behalf of their organizations.

As prime contractor, CSRA will support this Task Order through the following activities:

- Provide progress reports at the end of each month in which an activity, transmittal, and/or deliverable identified in Section 5.0 of the Work Plan is completed;
- Communicate and coordinate with the EPA Task Order Contracting Officer's Representative (TOCOR) by phone as needed;
- Coordinate with the subcontractor, TechLaw;
- Incorporate the principles of Quality Management while carrying out this task;
- Provide deliverables in electronic format (as agreed to by the TOCOR) to the EPA TOCOR; and
- NOTIFY THE EPA PROJECT DIRECTOR AND PROGRAM OFFICE CONTACT WHEN 75% OF THE FUNDS PROVIDED HAVE BEEN EXPENDED.


## 4.0   Work Tasks

Task 0.0       **Task Order Management**

In accordance with proper contract implementation, CSRA and TechLaw will ensure effective management of the resources and deliverables required by EPA.

Specifically, the CSRA Task Order Manager (TOM) for this effort will:

- Ensure that all technical direction received falls into the scope of work prior to initiating any action;
- Ensure completion and maintain copies of all contract transmittals and deliverables;
- Oversee subcontractor activities through regular and periodic conversations with the subcontractor to ensure effective performance;
- Ensure that progress and financial reports accurately clearly articulate the work completed as per the approved work plan, and identify any problems encountered and activities to address them;
- Speak on an as-needed basis with the EPA TOCOR to review the financial and work status of the project;

- Review the progress report and invoice with the EPA TOCOR; and
- Update the Dashboard task order management tracking system as invoices are submitted.

The CSRA Team developed this Work Plan to provide a detailed explanation of all activities associated with and a proposed approach for completing each of the defined tasks. The CSRA Team identified the transmittals and deliverables and their associated due dates and developed a detailed fixed price budget, including a breakout of labor and travel costs.

| Item | Title | Due No Later Than† | Type |
|------|-------|--------------------|------|
| 0.1 | Work Plan | Within 10 days* of SOW issuance or as approved by the EPA CO | **Deliverable** |
| *0.1a* | *Revised Work Plan* | *Within 10 days* of SOW issuance or as approved by the EPA CO* | *Deliverable* |
| 0.2 | Progress Reports | Submitted after completion of each task and with submission of invoice | **Deliverable** |

† Or as otherwise directed by the TOCOR
* All references to "days" refer to business days

## Task 1        **Preliminary Work** - Complete

| Item | Title | Due No Later Than† | Type |
|------|-------|--------------------|------|
| 1.1 | Task Order Kick-Off Meeting | Within 20 days* of Task Order approval | Transmittal |

† Or as otherwise directed by the TOCOR
* All references to "days" refer to business days

The CSRA Team will prepare for and participate in a meeting with EPA to discuss tasks described in the Task Order, EPA's expectations for the project, and a plan for conducting the outreach to PRPs. Prior to the meeting, the CSRA Team will develop its overall strategy for conduct of the allocation process, including a timeline of tasks and strategy for communications with the OU2 PRPs.  During the meeting, the EPA will advise the CSRA Team regarding the identity of the OU2 PRPs and the scope and nature of the selected remedy.  Following the meeting, the CSRA Team will send an email summarizing the agreed-upon PRP Outreach Plan for approval of the EPA technical lead in consultation with EPA legal personnel.  The developed PRP outreach plan will include a process for contacting and receiving information from PRPs, including for meetings and conference calls with the OU2 PRPs as a group, and individual OU2 PRP contacts via email, letter, or phone, and confidentiality procedures.

This task will require the following efforts on the part of the CSRA Team:
- Development of a plan for conducting outreach to OU2 PRPs that includes an opportunity for all OU2 PRPs to (1) provide feedback on the design of the allocation, including additional data, information or factors which should be considered in design of the database, (2) review their individual PRP data report for accuracy, (3) provide suggestions regarding design of the allocation  process and (4) provide feedback on the allocation report. The plan will also explain how the CSRA Team will update EPA on PRP outreach efforts
- Drafting and submission of an email summarizing the agreed-upon PRP outreach plan for approval of the EPA technical lead
- The CSRA Team will supply two (2) senior staff located in Washington, DC for the meeting

Tech Law Staffing - Senior Allocation Specialist; Senior Project Manager

*Performance Standards/Metrics:*
- The CSRA Team participates in the Task Order Kick-Off Meeting
- The submitted summary of the PRP Outreach Plan provides a summary of the agreement reached at the Task Order Kick-Off Meeting regarding the plan for communications by the CSRA Team with the OU2 PRPs

**Task 2**      **Public Announcement of Project** **- Complete**

| Item | Title | Due No Later Than$^†$ | Type |
|------|-------|----------------------|------|
| 2.1 | EPA Project Public Announcement Meeting | Within 40 days* of Task Order approval | Activity |

† Or as otherwise directed by the TOCOR
* All references to "days" refer to business days

The CSRA Team will participate in a meeting, sponsored by EPA, with the OU2 PRPs to announce and explain the allocation project, including opportunities for participation of the OU2 PRPs in the development of the allocation process.  Following the project announcement meeting noted in Task 2, the CSRA Team will work to obtain and record signatures of the OU2 PRPs and acknowledgement of EPA to the Participation Agreement distributed during the project announcement meeting.

This task will require the following efforts on the part of the CSRA Team:
- Preparation of talking points and handout material for participants regarding the allocation process in consultation with the EPA technical lead in consultation with EPA legal personnel
- Preparation of a written Participation Agreement for consideration and execution of the OU2 PRPs, incorporating an explanation of relevant confidentiality protections and requirements associated with the allocation process
- The CSRA Team will supply two (2) senior staff located in Washington, DC to participate in the meeting
- Communication via email, and as required via phone, with the OU2 PRPs as a group regarding execution of and to answer questions regarding the Participation Agreement
- Recording and compilation of executed Participation Agreement signature pages

Conduct of this task is dependent upon EPA's ability to successfully make arrangements for and schedule the meeting, and communicate with OU2 PRPs regarding the meeting, and upon receipt of EPA's final approval of the PRP outreach plan agreed upon during the Task Order Kick-Off Meeting within 10 business days of the meeting.

Staffing - Senior Allocation Specialist, Senior Project Manager

*Performance Standards/Metrics:*
- Talking points and materials prepared for the meeting provide an overview of the project and opportunities for PRP participation noted in the PRP Outreach Plan developed in Task 1
- The CSRA Team participates in the Task Order Kick-Off Meeting
- A majority of the members of the OU2 PRPs execute the Participation Agreement

**Task 3**        **Initial Allocation Process and Database Design**

| Item | Title | Due No Later Than[†] | Type |
|------|-------|--------------------|------|
| 3.1 | Submit initial allocation process and database design to EPA | Within 100 days* of Task Order approval | Transmittal |

† Or as otherwise directed by the TOCOR
* All references to "days" refer to business days

The CSRA Team will review documents received from EPA and prepare a written descriptive summary of the initial design for the allocation process, including a design of the allocation database, and submit to EPA for review.

The allocation process will be designed based upon information received during consultations with EPA and OU2 PRPs on the allocation database and using all relevant non-confidential received information, including data, records, and other documents. The initial design will include recommendations for: (1) data sources to be considered for the allocation; (2) applicable allocation factors; and (3) methodology for determination of shares.

The searchable database will be designed to have the capability to contain and organize all of the information and data used in the allocation, including received PRP disclosure statements and nexus documents from third party litigation. No confidential information will be included in the allocation database. Though to be designed for purposes of conducting the allocation, the database will be designed in such a way as to allow access and use by EPA and DOJ staff for their settlement purposes following submission of the Allocation Data Reports in Task 8. The CSRA Team will, as an interim measure, create and provide EPA access to a SharePoint site in which any site documents received from the OU2 PRPs will be maintained.

This task will require the following efforts on the part of the CSRA Team:
- Conduct a preliminary review of Site data on OU2 contaminants of concern as identified in the OU2 ROD to determine appropriate allocation data sets
- Conduct preliminary research, analysis, and determine applicable case law, legal requirements, and equitable considerations for use in conducting allocation
- Conduct initial review and analysis of EPA selected remedy for OU2 to determine method to account for differential impact of contaminants of concern and source location
- Conduct a preliminary review of information received from EPA, including PRP disclosure statements and nexus documents from third party litigation, in order to determine the appropriate design of the database required to support conduct of the allocation process
- Conduct initial coding of data and loading of coded data into database to determine credibility of database design concept
- Establish preliminary recommendations regarding allocation computations appropriate for OU2, procedures for use of data in allocation computations, and appropriate allocation methodology, and the design of a searchable database with capability to contain and organize all of the information and data used in the allocation
- Preparation of a written descriptive summary of the initial design for the allocation process, including (1) a timeline for submission of allocation related documents,

including PRP position briefs and reply briefs, and (2) a written description of the design of the database with a suggested method for providing OU2 PRPs specific information on the contents of the database, suggestions on methods for resolving data gaps in data regarding OU2 PRPs not identified in documents received from EPA, and if practical, images of anticipated data screens.

- Establish a SharePoint site that provides EPA access to documents received from OU2 PRPs

Conduct of this task is dependent upon; (1) receipt of all allocation documents and information regarding the site remedy from EPA within 20 business days of approval of the Task Order, and (2) receipt of all information from EPA as individual documents in OCR searchable pdf format to allow loading into the allocation database.

Staffing - Senior Allocation Specialist; Senior Project Manager; Database Designer

*Performance Standards/Metrics:*

- The CSRA Team submits a written descriptive summary of the initial design for the allocation process, including a database design, within the noted timeframe
- The submitted written descriptive summary of the initial design for the allocation process includes a summary of the basis of and anticipated conduct the allocation process, including preliminary recommendations on data sources to be considered for the allocation, applicable allocation factors, and methodology for determination of shares
- The submitted initial database design provides a written description of the database, including, suggested method for providing OU2 PRPs specific information on the contents of the database, suggestions on methods for resolving data gaps in data regarding OU2 PRPs not available in documents received from EPA, and if practical, images of anticipated data screens

## Task 4        Conference Call w EPA on Initial Database Design

| Item | Title | Due No Later Than[†] | Type |
|------|-------|---------------------|------|
| 4.1 | Conference Call with EPA on Initial Allocation Process and Database Design | Within 10 days* of submission of initial allocation process and database design | Activity |

† Or as otherwise directed by the TOCOR
* All references to "days" refer to business days

Task 4.1 – The CSRA Team will prepare for and participate in a conference call with EPA regarding the initial allocation process and database design. The purpose of the call will be to advise and consult with EPA regarding the submitted initial allocation process and database design and to discuss and resolve any EPA comments. Following the conference call, the CSRA Team will edit the initial allocation process and database design based on received EPA comments to create a draft design for submission to the OU2 PRPs.

This task will require the following efforts on the part of the CSRA Team:

- The CSRA Team will supply two (2) senior project staff located in Washington, DC to participate in the conference call
- Conference call assumed to be no more than two (2) hours in length

Staffing – Senior Allocation Specialist; Senior Project Manager

*Performance Standards/Metrics:*
- The CSRA Team participates in the draft Database Design conference call

**Task 5**   **Meeting with PRPs on Draft Allocation Process ~~and~~ /Database Design, and Initiation of early Settlement Process**

| Item | Title | Due No Later Than† | Type |
|------|-------|-------------------|------|
| 5.A.1 | Conduct *two* Meeting*s* with PRPs on Draft Allocation Process and Database Design | Within 40 days* of submission of initial allocation process and database design to EPA | Activity |
| 5.A.2 | Conference Call with EPA on Meeting*s* with PRPs on Draft Allocation Process and Database Design | Within 10 days* following the Meeting with PRPs on Draft Allocation Process and Database Design | Activity |
| *5.B.1* | *Submit guidance on preparation of allocation submissions to EPA and PRPs* | *Within 5 days of Revised Task Order Approval* | *Transmittal* |
| *5.B.2* | *Submit recommendation on relevancy of documents provided by OU2 PRPs to EPA and PRPs* | *Within 30 days of Revised Task Order Approval* | *Transmittal* |

† Or as otherwise directed by the TOCOR
* All references to "days" refer to business days

Task 5.A.1 - The CSRA Team will plan, schedule, and conduct ~~a meeting~~ *two meetings* with ~~the~~ OU2 PRPs ~~as a group~~ regarding the draft design of the allocation process and database. The purpose of the meeting*s* will be to advise the OU2 PRPs as a group regarding the anticipated conduct of the allocation process and the anticipated organization of data and contents of the database, and to obtain PRP comments regarding the draft allocation process and database design. The CSRA Team will also communicate with the OU2 PRPs individually to obtain the input of OU2 PRPs, including those that did or were unable to attend the outreach meeting*s*, regarding suggestions on the effective design and conduct of the allocation process and database, and to obtain additional records and information, if any, for the allocation database. ~~The CSRA Team will establish a deadline of 60 business days following the meeting with PRPs on draft allocation process and database design for the submission by OU2 PRPs of additional data for inclusion in the allocation database.~~

This task will require the following efforts on the part of the CSRA Team:
- Making arrangements for a meeting in the greater New York City metropolitan area sufficient to accommodate the OU2 PRPs as a group
- Coordination of meeting space and equipment for meetings provided by EPA or OU2 PRPs
- Communication via email with the OU2 PRPs regarding substance, date/time, and location of meeting

- Development of meeting agenda
- Development of participant materials, including a descriptive summary of Site information received from EPA and a description of the draft allocation process and database design
- Travel of two (2) senior staff from Washington, DC to attend meeting
- Communications by Senior Allocation Specialist via phone, email, or other electronic media as required with OU2 PRPs; ~~Communications will be limited to an average of 20 minutes for each OU2 PRP~~
- *Communications will be limited to an average of 2 hours for each OU2 PRP*
- Record PRP comments regarding allocation process and database design and conduct, without attribution to individual OU2 PRP comments

Staffing – Senior Allocation Specialist; Senior Project Manager

*Performance Standards/Metrics:*
- The CSRA Team conducts a meeting with the OU2 PRPs as a group regarding design of the allocation process and database
- A majority of the members of the OU2 PRPs as a group attend the meeting either in person or remotely
- The CSRA Team copies the EPA technical lead on its email communication to the OU2 PRPs regarding substance, date/time, and location of meeting, and provides EPA with a copy of utilized meeting materials

Task 5.*A.*2 - The CSRA Team will schedule and hold, within 10 business days of holding the meeting*s* with the OU2 PRPs on the draft allocation process and database design, a conference call with EPA regarding the findings of the meeting*s*.

This task will require the following efforts on the part of the CSRA Team:
- Scheduling and participating in ~~a~~ *two* conference call*s* with EPA to provide EPA information on the meeting*s*, including a list of participants at the meeting and summary of suggestions received regarding the allocation process and database design
- Conference call assumed to be no more than two (2) hours in length

Timing of this task is dependent upon the availability of assigned EPA staff to participate in a conference call within noted timeframe.

Staffing – Senior Allocation Specialist; Senior Project Manager

*Performance Standards/Metrics:*
- The CSRA Team participates in a conference call with EPA regarding the findings of the meeting following the Database Design Outreach Meeting
- In conducting the post-meeting conference call with EPA, the CSRA Team provides a summary of information and suggestions obtained from the OU2 PRPs without attribution to contributions of individual participants

*Task 5.B.1 - The CSRA Team will prepare a written guide regarding the format and preparation of written submissions by OU2 PRPs pursuant to the allocation process and submit to EPA and the OU2 PRPs*

*The preparation guide will be designed based upon information received during consultations with EPA and OU2 PRPs on the allocation process.  The preparation guide will include the format and content of required allocation documents, including: (1) initial equitable factors brief; (2) preliminary factual submission; (3) document submission certification; and (4) notification of early settlement eligibility.*

*This task will require the following efforts on the part of the CSRA Team:*

- *Conduct a conference call with OU2 PRPs to announce and explain modifications to the allocation project, including opportunities for participation of the OU2 PRPs in the development of the allocation process*
- *Conduct of communications, including a meeting, with OU2 PRPs regarding recommended format and content of above noted required allocation submissions*
- *Preparation of written guide regarding the format and preparation of written submissions by OU2 PRPs pursuant to the allocation process for review by EPA*
- *Preparation of written guide based upon EPA comments and suggestions for review by OU2 PRPs.*
- *Preparation of a final written guide regarding the format and preparation of written submissions by OU2 PRPs pursuant to the allocation process based upon comments and suggestions received from the OU2 PRPS and EPA*

*Staffing - Senior Allocation Specialist; Senior Project Manager*

*Performance Standards/Metrics:*

- *The CSRA Team conducts a call with OU2 PRPs as a group to announce and explain modifications to the allocation project, including opportunities for participation of the OU2 PRPs in the development of the allocation process*
- *The CSRA Team submits a written guide regarding the format and preparation of written submissions by OU2 PRPs pursuant to the allocation process to EPA for review within the noted timeframe.*
- *The CSRA Team submits a written guide to the OU2 PRPs within the noted timeframe*
- *The submitted written guide includes the format and content of required allocation documents, including: (1) initial equitable factors brief; (2) preliminary factual submission; (3) document submission certification; and (4) notification of early settlement eligibility.*

*Task 5.B.2 – The CSRA Team will organize and conduct a review of initial indices of documents proposed for inclusion in the Allocation Document Database by OU2 PRPs to develop a recommendation on the relevancy of proposed documents to the allocation process.*

*This task will require the following efforts on the part of the CSRA Team:*

- *Conduct an analysis of document information contained in indices received from the OU2 parties to determine if the proposed documents meet established relevancy criteria for inclusion in Allocation Document Repository*
- *Drafting of a written recommendation indicating which of the recommended documents are deemed    to meet the established relevancy criteria for inclusion in Allocation Document Repository, with an explanation of the rationale for the exclusion of any recommended document*

*Staffing - Data Analysts; Senior Project Manager; Senior Allocation Specialist*

**ARR0233**

*Performance Standards/Metrics*
- *The CSRA Team submits the written recommendation regarding the relevancy of OU2 PRP documents to EPA, with a copy to the OU2 PRPs, within the noted timeframe*
- *The submitted written recommendation indicates which of the documents recommended by OU2 PRPs are deemed to meet the established relevancy criteria for inclusion in Allocation Document Repository, with an explanation of the rationale for the exclusion of any recommended document*

**Task 6**        **Final Allocation Design** *and Early settlement PRP Data Reports*

| Item | Title | Due No Later Than† | Type |
|------|-------|---------------------|------|
| 6.*A* 1 | Submit Final Allocation Design to EPA and PRPs | Within 50 days* following the Meeting with PRPs on Draft Allocation Process and Database Design | Transmittal |
| *6.B.1* | *Submit draft PRP Data Reports regarding Early Settlement PRPs to PRPs and EPA* | *Within 10 days* of EPA final decision regarding additional documents for inclusion in repository* | *Transmittal* |
| *6.B.2* | *Submit final PRP Data Reports regarding Early Settlement PRPs to PRPs and EPA* | *Within 15 days of submission of Draft Early Settlement Part Data Reports* | *Transmittal* |

† Or as otherwise directed by the TOCOR
* All references to "days" refer to business days

*Task 6.A. -* The CSRA Team will complete the design of the allocation process based on input received from EPA and PRPs for submission to the OU2 PRPs and EPA.

This task will require the following efforts on the part of the CSRA Team:
- Conduct coding of data and loading of coded data into database
- Communications by Senior Allocation Specialist via phone, email, or other electronic media as required with OU2 PRPs; Communications will be limited to an average of *2 hours* ~~20 minutes~~ for each OU2 PRP
- *Review of factors statements by OU2 PRPs regarding suggestions on protocol and equitable factors for use in allocation*
- Record, compile, and organize suggestions of OU2 PRPs regarding allocation process design and conduct without attribution to individual comments
- *Conduct a call with EPA to discuss suggestions received from OU2 PRPs regarding allocation process design and conduct without attribution to individual comments*
- Edit draft allocation design based on analysis of received Site data, EPA comments on the draft allocation design, and consideration of input received from OU2 PRPs during meeting and other outreach methods to prepare a written descriptive summary of the final allocation design and submit to EPA and the OU2 PRPs

Staffing - Senior Allocation Specialist; Senior Project Manager

*Performance Standards/Metrics:*

- The CSRA Team submits a written descriptive summary of the final design for the allocation process within the noted timeframe
- The submitted written descriptive summary of the final design for the allocation process includes a description of the basis of and anticipated conduct of the allocation process, addresses any identified ambiguities in the draft report, and includes a summary of how the comments of EPA and the OU2 PRPs regarding the draft allocation design were, or were not, taken into account in the final allocation design, without attribution.

*Task 6.B.1. -  The CSRA Team will organize and conduct a technical and scientific evaluation of data in the allocation database to develop individual data reports for each of the OU2 Early Settlement PRPs. The PRP Data Reports will provide selected information regarding each OU2 Early Settlement PRP's relation to OU2 and OU2 contaminants of concern that will be used in conduct of the allocation.  The CSRA Team will establish a deadline of 10 business days from receipt of the data report for submission of corrections or suggestions by the OU2 PRPs for improving the quality of the received OU2 Early Settlement PRP's data report.*

*This task will require the following efforts on the part of the CSRA Team:*
- *Conduct a call with EPA to discuss the Allocation Team recommendation regarding the relevancy to the allocation of documents provided by OU2 Early Settlement PRPs*
- *Conduct coding of data and loading of coded data into database obtained from OU2 Early Settlement PRPs*
- *Review preliminary factual submission by OU2 Early Settlement PRPs*
- *Review Site data loaded into database to determine appropriate organization for allocation*
- *Compile and organize Site data in database to support allocation analysis and share computations*
- *Organize data in allocation database and draft individual OU2 Early Settlement PRP data reports*
- *Provide a copy of the Early Settlement PRP data reports to the OU2 PRPs for review*

*Conduct of this task is dependent upon the following:*
- *Access by the CSRA Team to EPA technical data regarding Site conditions and the selected OU2 remedy*
- *Sufficient data on identified Early Settlement PRPs to allow analysis of associated contaminants of concern and hazardous substance fate and transport at the Site*
- *Successful establishment of the allocation database*
- *Receipt of additional data from OU2 Early Settlement PRPs for inclusion in the allocation database*

*Staffing - Data Analysts; Senior Scientist; Senior Project Manager; Senior Allocation Specialist*

*Performance Standards/Metrics*
- *The CSRA Team submits the PRP Data Reports to the OU2 PRPs within the noted timeframe*

- *The submitted written individual PRP Data Reports include a summary of information in the allocation database that is relevant to a determination regarding the associated OU2 Early Settlement PRP's relation to OU2 and OU2 contaminants of concern for use in conduct of the allocation*
- *The CSRA Team copies the EPA technical lead on the email communications to the OU2 Early Settlement PRPs providing a copy of their data report*

*Task 6.B.2. - The CSRA Team will analyze corrections or suggestions for improving the quality of the data reports received from OU2 PRPs to determine whether modifications of the original data reports are warranted.  Based on this analysis, the CSRA Team will modify the data reports, as deemed appropriate.  The CSRA Team will then provide a copy of all of the revised data reports to EPA and a revised copy of individual data reports will be uploaded to the document repository for access by all of the OU2 PRPs, with an explanation of how suggested changes were, or were not, incorporated.*

*This task will require the following efforts on the part of the CSRA Team:*
- *Analyze received suggestions and corrections to data reports in relation to existing Site data and the final allocation design in order to determine appropriate modifications*
- *Modify the individual data reports, as warranted based on above analysis*
- *Provide an explanation to the OU2 Early Settlement PRPs regarding whether, and if so how, received suggestions resulting in changes to their individual data report, including a description of why their suggestions and comments were, or were not, taken into account*
- *Upload final OU2 Settlement PRP data reports to allocation document repository*
- *As required, the CSRA Team will conduct communications with individual OU2 Early Settlement PRPs to answer questions regarding their final data report*

*Timing of this task is dependent upon the following:*
- *Receipt of EPA's determination regarding the relevancy to the allocation of documents provided by OU2 Early Settlement PRPs within established timeframe*
- *Receipt of comments from OU2 Early Settlement PRPs regarding their data report within established timeframes*

*Staffing - Data Analysts; Senior Scientist; Senior Project Manager; Senior Allocation Specialist*
*Performance Standards/Metrics*
- *The CSRA Team submits the Final PRP Data Reports to EPA and OU2 Early Settlement PRPs within the noted timeframe, and uploads data reports to document repository*
- *The submitted revised Final PRP Data Reports address any identified ambiguities in the draft reports and includes a summary of how received comments regarding the draft PRP Data Reports were, or were not, taken into account in the final reports*
- *Certifications regarding the completeness of document/data searches conducted by the OU2 Early Settlement PRPs are uploaded to the Allocation Document Repository*
- *The CSRA Team copies the EPA technical lead on the email communications to the OU2 Early Settlement PRPs providing a copy of their individual data report*

**ARR0236**

**Task 7**       **Draft PRP Data Reports**

| Item | Title | Due No Later Than† | Type |
|------|-------|-------------------|------|
| *7.A.1* | *Submit recommendation on relevancy of documents provided by OU2 PRPs to EPA and PRPs* | *Within 10 days of OU2 Party submission of document indices* | *Submittal* |
| 7.A.2 | Submit Draft PRP Data Reports to PRPs | Within ~~100~~ *75* days* *of EPA final decision regarding additional documents for inclusion in repository* ~~following the Meeting with PRPs on Draft Allocation Process and Database Design~~ | Transmittal |
| *7.B* | *Submit recommendation on eligibility of PRPs for early settlement to EPA* | *Within 20 days of loading of Final Early Settlement Party Data Reports* | *Transmittal* |

† Or as otherwise directed by the TOCOR
* All references to "days" refer to business days

*Task 7.A.1 - The CSRA Team will organize and conduct a review of indices of remaining documents proposed for inclusion in the Allocation Document Database by OU2 PRPs to develop a recommendation on the relevancy of proposed documents to the allocation process.*

*This task will require the following efforts on the part of the CSRA Team:*
- *Conduct an analysis of document information contained in indices received from the OU2 PRPs to determine if the proposed documents meet established relevancy criteria for inclusion in Allocation Document Repository*
- *Drafting of a written recommendation indicating which of the recommended documents are deemed    to meet the established relevancy criteria for inclusion in Allocation Document Repository, with an explanation of the rationale for the exclusion of any recommended document*

*Staffing - Data Analysts; Senior Project Manager; Senior Allocation Specialist*

*Performance Standards/Metrics*
- *The CSRA Team submits the written recommendation regarding the relevancy of remaining OU2 PRP documents to EPA, with a copy to the OU2 PRPs, within the noted timeframe*
- *The submitted written recommendation indicates which of the documents recommended by OU2 PRPs are deemed to meet the established relevancy criteria for inclusion in Allocation Document Repository, with an explanation of the rationale for the exclusion of any recommended document*

*Task 7.A.2* - The CSRA Team will organize and conduct a technical and scientific evaluation of data in the allocation database to develop individual data reports for each of the OU2 PRPs. The PRP Data Reports will provide selected information regarding each OU2 PRP's relation to OU2 and OU2 contaminants of concern that will be used in conduct

of the allocation.  The CSRA Team will establish a deadline of 40 business days from receipt of the data report for submission of corrections or suggestions by the OU2 PRPs for improving the quality of the received OU2 PRP's data report.

This task will require the following efforts on the part of the CSRA Team:

- *Conduct a call with EPA to discuss the Allocation Team recommendation regarding the relevancy to the allocation of documents provided by OU2 PRPs*
- Conduct coding of data and loading of coded data into database obtained from OU2 PRPs
- ~~Review Site data loaded into database to determine appropriate organization for allocation~~
- ~~Compile and organize Site data in database to support allocation analysis and share computations~~
- *Review preliminary factual submission by OU2 PRPs*
- *Review Site data loaded into database to determine appropriate organization for allocation*
- *Compile and organize Site data in database to support allocation analysis and share computations*
- Organize data in allocation database into *and draft* individual *OU2* PRP data reports
- Provide a copy of the PRP data reports to the OU2 PRPs *for review*

*Timing of this task is dependent upon the following:*

- *Receipt of EPA's determination regarding the relevancy to the allocation of documents provided by OU2 PRPs within established timeframe*
- *Receipt of comments from OU2 PRPs regarding their data report within established timeframes*

Conduct of this task is dependent upon the following:

- Access by the CSRA Team to EPA technical data regarding Site conditions and the selected OU2 remedy
- Sufficient data on identified PRPs to allow analysis of associated contaminants of concern and hazardous substance fate and transport at the Site
- Successful establishment of the allocation database
- Receipt of additional data from OU2 PRPs for inclusion in the allocation database *within established timeframes* ~~by 60 business days following the meeting with PRPs on draft allocation process and database design~~

Staffing - Data Analysts; Senior Scientist; Senior Project Manager; Senior Allocation Specialist

*Performance Standards/Metrics*

- The CSRA Team submits the PRP Data Reports to the OU2 PRPs within the noted timeframe
- The submitted written individual PRP Data Reports include a summary of information in the allocation database that is relevant to a determination regarding the associated OU2 PRP's relation to OU2 and OU2 contaminants of concern for use in conduct of the allocation
- The CSRA Team copies the EPA technical lead on the email communications to the OU2 PRPs providing a copy of their data report

*Task 7.B - The CSRA Team will organize and conduct an analysis of information regarding the relationship of OU2 Early Settlement PRPs to the Site and Site remedy, including relevant documents in the Allocation Document Repository, PRP Data Reports, and Preliminary Submissions, to develop a recommendation on the eligibility of OU2 Early Settlement PRPs for the opportunity to enter negotiations with EPA regarding a cash-out settlement.  The recommendation will be based upon eligibility criteria specified by EPA in its May 17, 2017 to OU2 PRPs on the subject; specifically that "(t)he parties that EPA identified as eligible for an early cash out settlement are those that, based on information reviewed by EPA, are not associated with the release or disposal of any of the COCs for OU2, as identified in the ROD, into the Lower Passaic River.*

*This task will require the following efforts on the part of the CSRA Team:*
- *Conducting an analysis of documents and other information submitted by OU2 Early Settlement PRPs and contained in the Allocation Document Repository to determine whether the OU2 Early Settlement PRPs meet the eligibility criteria specified by EPA.*
- *Drafting of a written recommendation indicating which of the OU2 Early Settlement PRPs are deemed    to meet the specified eligibility criteria for the opportunity to enter negotiations with EPA regarding a cash-out settlement, with an explanation of the rationale for the exclusion of any OU2 Early Settlement PRP.*

*Staffing - Data Analysts; Senior Scientist; Senior Project Manager; Senior Allocation Specialist*

*Performance Standards/Metrics*
- *The CSRA Team submits the written recommendation on the eligibility of OU2 Early Settlement PRPs for the opportunity to enter negotiations with EPA regarding a cash-out settlement, within the noted timeframe*
- *The submitted written recommendation indicates which of the OU2 Early Settlement PRPs are deemed  to meet the specified eligibility criteria for the opportunity to enter negotiations with EPA regarding a cash-out settlement, with an explanation of the rationale for the exclusion of any OU2  Early Settlement PRP*

## Task 8        **Final Data Reports**

| Item | Title | Due No Later Than[†] | Type |
|------|-------|---------------------|------|
| 8.1 | Submit Final PRP Data Reports to EPA and PRPs | Within 40 days* ~~following the~~ *of the* deadline ~~for submission of corrected~~ *OU2 PRPs corrections to* PRP data reports | Transmittal |
| 8.2 | Provide EPA Access to Allocation Database | Upon ~~submission~~ *loading* of corrected PRP data reports | Activity |

† Or as otherwise directed by the TOCOR
* All references to "days" refer to business days

The CSRA Team will analyze corrections or suggestions for improving the quality of the data reports received from OU2 PRPs to determine whether modifications of the original data reports are warranted.  Based on this analysis, the CSRA Team will modify the data reports, as deemed appropriate.  The CSRA Team will then provide a copy of all of the revised data reports to EPA and a revised copy of their own individual data reports to each

For Public Disclosure by Consent of the Participating Allocation Parties and EPA (Fall 2022)
Case 2:22-cv-07326-MCA-LDW   Document 289-2   Filed 01/31/24   Page 167 of 231 PageID: 5057
*Public Version*

of the OU2 PRPs, with an explanation of how suggested changes were, or were not, incorporated.

This task will require the following efforts on the part of the CSRA Team:
- Analyze received suggestions and corrections to data reports in relation to existing Site data and the final allocation design in order to determine appropriate modifications
- Modify the individual data reports, as warranted based on above analysis
- Provide an explanation to the OU2 PRPs regarding whether, and if so how, received suggestions resulting in changes to their individual data report, including a description of why their suggestions and comments were, or were not, taken into account. *Upload final OU2 Settlement PRP data reports to allocation document repository*
- As required, the CSRA Team will conduct communications with individual OU2 PRPs to answer questions regarding their final data report

Timing of this task is dependent *upon the following:*
- Receipt of comments from OU2 PRPs regarding their data report within established timeframes

Staffing - Data Analysts; Senior Scientist; Senior Project Manager; Senior Allocation Specialist

*Performance Standards/Metrics*
- The CSRA Team submits the Final PRP Data Reports to EPA and OU2 PRPs within the noted timeframe, *and uploads data reports to document repository*
- The submitted revised Final PRP Data Reports address any identified ambiguities in the draft reports and includes a summary of how received comments regarding the draft PRP Data Reports were, or were not, taken into account in the final reports
- The CSRA Team copies the EPA technical lead on the email communications to the OU2 PRPs providing a copy of their individual data report

**Task 9**          **Draft Allocation Report**

| Item | Title | Due No Later Than† | Type |
|------|-------|-------------------|------|
| 9.1 | Submit Draft Allocation Recommendation Report | Within 90 days* following submittal of *Response Briefs by PRPs* ~~final PRP Data Reports~~ | Transmittal |

† Or as otherwise directed by the TOCOR
* All references to "days" refer to business days

*Task 9 -* The CSRA Team will prepare a first draft of the allocation recommendation report and submit to the OU2 PRPs and EPA for review.  The draft allocation report will designate shares of responsibility among the OU2 PRPs, as appropriate based on the allocation analysis.  The draft allocation report will include a recommendation on the possible grouping of the OU2 PRPs into tiers of similar levels of responsibility.

This task will require the following efforts on the part of the CSRA Team:

- *Conduct of communications, including a conference call, with OU2 PRPs regarding recommendations on legal/equitable theories pertinent to conduct of the allocation included in Position and Response Briefs received from the OU2 PRPs*
- Review and consideration of input regarding allocation received from the OU2 PRPs and EPA
- Review and understand the basis for EPA's selected remedy for OU2, in consultation with EPA technical and legal personnel
- Review and understand the relative toxicity of identified contaminants of concern relevant to the selection of the OU2 remedy, in consultation with EPA technical and legal personnel
- Analyze the relative toxicity of materials discharged by OU2 PRPs and other differentiating factors, including fate and transport of hazardous substances released by PRPs based on the data contained in the RI/FS, in relation to the selected remedy
- Compilation and analysis of allocation data related to each OU2 PRP, including contaminants of concern, to establish the relative impact of the actions of each OU2 PRP on the conditions that resulted in EPA selecting the OU2 remedy
- Establish appropriate allocation algorithms
- Load compiled PRP data into allocation calculations to determine relative relationships among the OU2 PRPs
- As appropriate, establish appropriate tiers of OU2 PRP responsibility based on calculations and consideration of equitable factors
- Prepare draft allocation recommendation report
- Submission of the draft report to the OU2 PRPs and EPA

Timing of this task is dependent upon receipt of position briefs and reply briefs regarding allocation from OU2 PRPs within established timeframes

Staffing - Senior Allocation Specialist; Senior Project Manager

*Performance Standards/Metrics:*
- The CSRA Team submits the Draft Allocation Recommendation Report within the noted timeframe

For Public Disclosure by Consent of the Participating Allocation Parties and EPA (Fall 2022)
Case 2:22-cv-07326-MCA-LDW   Document 289-2   Filed 01/31/24   Page 169 of 231 PageID: 5059

*Public Version*

- The submitted written Draft Allocation Recommendation Report includes an overview of the basis for the determinations of shares among the OU2 PRPs, including a description of the use of data sources and application of allocation factors and methodology utilized, and reason for potential vulnerabilities, if any, in the resulting allocation
- The report identifies and explains the rationale, if applicable, for grouping OU2 PRPs into tiers of similar relative responsibility

**Task 10       Final Allocation Recommendation Report**

| Item | Title | Due No Later Than† | Type |
|------|-------|---------------------|------|
| 10.1 | ~~Conference Call~~ *Meeting* with EPA regarding Draft Allocation Recommendation Report | Within 10 days* of submittal of Draft Allocation Report | Transmittal |
| *10.2* | *Conduct Meeting with PRPs on Draft Allocation Report* | *Within 20 days of submittal of Draft Allocation Report* | *Activity* |
| *10.3* | *Conference Call with EPA on Meeting with PRPs on Draft Allocation Report* | *Within 10 days* following the Meetings with PRPs on Draft Allocation Report* | *Activity* |
| 10.*4*~~2~~ | Submit Final Allocation Recommendation Report to OU2 PRPs and EPA | Within 60 days* of submittal of Draft Allocation Report | **Deliverable** |

† Or as otherwise directed by the TOCOR
* All references to "days" refer to business days

Task 10.1 - The CSRA Team will prepare for and participate in a meeting with EPA regarding the submitted draft allocation recommendation report. The purpose of the meeting will be to obtain EPA comments regarding the submitted draft allocation report, including the basis and findings of the draft allocation report and the report format.

This task will require the following efforts on the part of the CSRA Team:
- The CSRA Team will supply one (2) senior staff located in Washington, DC to *attend the meeting* ~~participate in the conference call~~
- ~~Conference call assumed to be no more than two (2) hours in length~~
- *Meeting assumed to be no more than four (4) hours in length*

Staffing - Senior Allocation Specialist; *Senior Project Manager*

Performance Standards/Metrics:
- The CSRA Team participates in the meeting regarding the submitted draft allocation recommendation report

*Task 10.2 – The CSRA Team will plan, schedule, and conduct a meeting with the OU2 PRPs as a group regarding the draft allocation recommendation report. The purpose of the meeting will be to advise the OU2 PRPs as a group regarding the draft allocation recommendation report and to obtain preliminary PRP comments regarding the draft allocation recommendation report. The CSRA Team will also communicate with the OU2 PRPs individually to obtain the input of OU2 PRPs, including those that did or were unable to attend the meeting, regarding draft allocation recommendation report.*

*This task will require the following efforts on the part of the CSRA Team:*

- *Making arrangements for a meeting in the greater New York City metropolitan area sufficient to accommodate the OU2 PRPs as a group*
- *Coordination of meeting space and equipment for meetings provided by EPA or OU2 PRPs*
- *Communication via email with the OU2 PRPs regarding substance, date/time, and location of meeting*
- *Development of meeting agenda*
- *Development of participant materials, a needed*
- *Travel of two (2) senior staff from Washington, DC to attend meeting*
- *Communications by Senior Allocation Specialist via phone, email, or other electronic media as required with OU2 PRPs*
- *Recording of PRP comments regarding the draft allocation recommendation report, without attribution to individual OU2 PRP comments*

*Staffing – Senior Allocation Specialist; Senior Project Manager*

*Performance Standards/Metrics:*

- *The CSRA Team conducts a meeting with the OU2 PRPs as a group regarding the draft allocation recommendation report*
- *A majority of the members of the OU2 PRPs as a group attend the meeting either in person or remotely*
- *The CSRA Team copies the EPA technical lead on its email communication to the OU2 PRPs regarding substance, date/time, and location of meeting, and provides EPA with a copy of utilized meeting materials*

*Task 10.3 - The CSRA Team will schedule and hold, within 10 business days of holding the meeting with the OU2 PRPs on the draft allocation recommendation report, a conference call with EPA regarding the findings of the meeting.*

*This task will require the following efforts on the part of the CSRA Team:*

- *Scheduling and participating in a conference call with EPA to provide EPA information on the meeting, including a list of participants at the meeting and summary of suggestions received regarding the draft allocation recommendation report*
- *Conference call assumed to be no more than two (2) hours in length*

*Timing of this task is dependent upon the availability of assigned EPA staff to participate in a conference call within noted timeframe.*

*Staffing – Senior Allocation Specialist; Senior Project Manager*

*Performance Standards/Metrics:*

- *The CSRA Team participates in a conference call with EPA regarding the findings of the meeting with PRPs regarding the draft allocation recommendation report*
- *In conducting the post-meeting conference call with EPA, the CSRA Team provides a summary of information and suggestions obtained from the OU2 PRPs without attribution to contributions of individual participants*

Task 10.*4* 2 - The CSRA Team will prepare a Final Allocation Recommendation Report. The Final Allocation Recommendation Report will take into consideration comments on the draft allocation recommendation report received during consultation with EPA and during meetings with and received in position and reply briefs from the OU2 PRPs.

This task will require the following efforts on the part of the CSRA Team:
- Review and consider the comments by OU2 PRPs and EPA regarding the draft allocation recommendation report
- Editing of the draft allocation recommendation report to incorporate appropriate modifications based on OU2 and EPA comments to produce the Final Allocation Recommendation Report

Staffing - Senior Allocation Specialist; Senior Project   Manager

*Performance Standards/Metrics:*
- The CSRA Team submits a Final Allocation Recommendation Report within the noted timeframe
- The submitted Final Allocation Recommendation Report includes the elements of the Draft Allocation Recommendation Report described in Task 17, addresses any identified ambiguities in the draft report, and provides a summary, without attribution to individual comments, of how comments of the OU2 PRPs and EPA regarding the Draft Allocation Recommendation Report were, or were not, taken into account in the final report, without attribution.

## Task 11          Final PRP Outreach Report

| Item | Title | Due No Later Than[†] | Type |
|------|-------|---------------------|------|
| 11.1 | Submit Final PRP Outreach Report | Within 10 days* of submittal of Final Allocation Report | Activity |

† Or as otherwise directed by the TOCOR
* All references to "days" refer to business days

The CSRA Team will prepare and provide to EPA a report regarding outreach efforts conducted with the OU2 PRPs, including a list of participants in outreach efforts, a description of topics discussed, and a summary of issues or concerns raised.

This task will require the following efforts on the part of the CSRA Team:
- Review and organize the comments of OU2 PRPs received during conduct of the Task Order, without attribution to individual OU2 PRPs
- Prepare and provide EPA an overview of conducted outreach efforts, including a list of OU2 PRPs that have participated in outreach meetings, conference calls, or individual communications with the CSRA Team and a summary of suggestions received from the OU2 PRPs regarding the allocation process

Staffing - Senior Allocation Specialist; Senior Project Manager

*Performance Standards/Metrics:*
- The CSRA Team submits a written summary of PRP outreach efforts within the noted timeframe
- The Final PRP Outreach Report includes a summary of conducted PRP outreach efforts, including a list of OU2 PRPs that have participated in outreach meetings,

conference calls, or individual communications with the CSRA Team and a summary of suggestions received from the OU2 PRPs regarding the allocation process

- In drafting the Final PRP Outreach Report, the CSRA Team provides a summary of information and suggestions obtained from the OU2 PRPs without attribution to contributions of individual participants

## Task 12       **Task Order Closeout Report**

| Item | Title | Due No Later Than[†] | Type |
|------|-------|---------------------|------|
| 12.1 | Submit Draft Task Order Closeout Report | Within 10 days* of submittal of Final Allocation Report | Transmittal |
| 12.2 | Final Task Order Closeout Report | Within 10 days* of receipt of EPA's comments on Draft Task Order Closeout Report | **Deliverable** |

† Or as otherwise directed by the TOCOR
* All references to "days" refer to business days

Task 12.1 - The CSRA Team will design and produce the first draft of a report regarding the conduct of tasks pursuant to the Task Order and submit it for review by EPA. The report will not contain any confidential or sensitive information. The contents of the Draft Task Order Close-Out Report will include:

- A half-page description of the project that describes the nature of the project, the parties, the process, and the outcomes
- If appropriate, a short section reflecting on the process and procedural lessons learned and recommendation for improvements and identification of those activities conducted that contributed to the success of the process
- A brief summary of the final costs of the project broken out by percentage of labor hours and other direct costs

This task will require the following efforts on the part of the CSRA Team:

- Review of project activities and compilation of project summary
- Consideration and compilation of thoughts on lessons learned regarding project
- Compilation of project budget costs
- Preparation of the Draft Task Order Close-out Report

Staffing - Senior Allocation Specialist; Senior Project Manager

*Performance Standards/Metrics:*

- The CSRA Team submits a Draft Task Order Closeout Report within the noted timeframe
- The submitted Draft Task Order Closeout Report includes the items noted above as contents of the report

Task 12.2 - The CSRA Team will prepare a Final Task Order Closeout Report and submit to EPA. The Final Task Order Closeout Report will take into consideration comments received from EPA regarding the draft of the Task Order closeout report. CSRA will provide one (1) copy of the Final Task Order Closeout Report to the PO and one (1) copy to the TOCOR in electronic format.

This task will require the following efforts on the part of the CSRA Team:
- Review and consideration of comments by EPA regarding the draft Task Order Closeout Report
- Editing, and as required redesign, of the closeout report to incorporate modifications based on EPA comments in order to produce the Final Task Order Closeout Report

Staffing - Senior Allocation Specialist; Senior Project Manager

*Performance Standards/Metrics:*
- The CSRA Team submits a Final Task Order Closeout Report within the noted timeframe
- The submitted Final Task Order Closeout Report addresses any identified ambiguities in the draft report and includes a summary of how EPA's comments regarding the Draft Allocation Recommendation Report were, or were not, taken into account in the final report

## 5.0   Reports, Transmittals and Deliverables

CSRA will provide EPA all reports in accordance with the contract. *If EPA responds with a request for additional information, Subcontractor is required to provide information, as requested.*

Copies of all contract deliverables will be sent to both the PO and the TOCOR. If oral briefings are scheduled for EPA staff, the PO will be notified in time to attend.

Schedule

| Item | Title | Due No Later Than† | Type |
|---|---|---|---|
| 1 | Task Order Kick-Off Meeting | Within 20 days* of Task Order approval | Transmittal |
| 2 | EPA Project Public Announcement Meeting | Within 40 days* of Task Order approval | Activity |
| 3 | Submit initial allocation process and database design to EPA | Within 100 days* of Task Order approval | Transmittal |
| 4 | Conference Call with EPA on Initial Allocation Process and Database Design | Within 10 days* of submission of initial allocation process and database design | Activity |
| 5.*A*.1 | Conduct *two* Meeting*s* with PRPs on Draft Allocation Process and Database Design | Within 40 days* of submission of initial allocation process and database design to EPA | Activity |
| 5.*A*.2 | Conference Call with EPA on Meeting*s* with PRPs on Draft Allocation Process and Database Design | Within 10 days* following the Meeting with PRPs on Draft Allocation Process and Database Design | Activity |

| Item | Title | Due No Later Than† | Type |
|------|-------|-------------------|------|
| *5.B.1* | *Submit guidance on preparation of allocation submissions to EPA and PRPs* | *Within 5 days of Revised Task Order Approval* | *Transmittal* |
| *5.B.2* | *Submit recommendation on relevancy of documents provided by OU2 PRPs to EPA and PRPs* | *Within 30 days of Revised Task Order Approval* | *Transmittal* |
| 6.*A* ~~1~~ | Submit Final Allocation Design to EPA and PRPs | Within 50 days* following the Meeting with PRPs on Draft Allocation Process and Database Design | Transmittal |
| *6.B.1* | *Submit draft PRP Data Reports regarding Early Settlement PRPs to PRPs and EPA* | *Within 10 days* of EPA final decision regarding additional documents for inclusion in repository* | *Transmittal* |
| *6.B.2* | *Submit final PRP Data Reports regarding Early Settlement PRPs to PRPs and EPA* | *Within 15 days of submission of Draft Early Settlement Part Data Reports* | *Transmittal* |
| *7.A.1* | *Submit recommendation on relevancy of documents provided by OU2 PRPs to EPA and PRPs* | *Within 10 days of OU2 Party submission of document indices* | *Submittal* |
| 7.*A.2* | Submit Draft PRP Data Reports to PRPs | Within ~~100~~ *75* days* *of EPA final decision regarding additional documents for inclusion in repository* ~~following the Meeting with PRPs on Draft Allocation Process and Database Design~~ | Transmittal |
| *7.B* | *Submit recommendation on eligibility of PRPs for early settlement to EPA* | *Within 20 days of loading of Final Early Settlement Party Data Reports* | *Transmittal* |
| 8.1 | Submit Final PRP Data Reports to EPA and PRPs | Within 40 days* ~~following the~~ *of the* deadline ~~for submission of corrected~~ *OU2 PRPs corrections to* PRP data reports | Transmittal |
| 8.2 | Provide EPA Access to Allocation Database | Upon ~~submission~~ *loading* of corrected PRP data reports | Activity |
| 9.1 | Submit Draft Allocation Recommendation Report | Within 90 days* following submittal of *Response Briefs by PRPs* ~~final PRP Data Reports~~ | Transmittal |
| 10.1 | ~~Conference Call~~ *Meeting* with EPA regarding Draft Allocation Recommendation Report | Within 10 days* of submittal of Draft Allocation Report | Transmittal |

| Item | Title | Due No Later Than[†] | Type |
|------|-------|---------------------|------|
| *10.2* | *Conduct Meeting with PRPs on Draft Allocation Report* | *Within 20 days of submittal of Draft Allocation Report* | *Activity* |
| *10.3* | *Conference Call with EPA on Meeting with PRPs on Draft Allocation Report* | *Within 10 days\* following the Meetings with PRPs on Draft Allocation Report* | *Activity* |
| 10.~~4~~2 | Submit Final Allocation Recommendation Report to OU2 PRPs and EPA | Within 60 days\* of submittal of Draft Allocation Report | **Deliverable** |
| | | | |
| 11 | Submit Final PRP Outreach Report | Within 10 days\*  of submittal of Final Allocation Report | Activity |
| 12.1 | Submit Draft Task Order Closeout Report | Within 20 days\*  of submittal of Final Allocation Report | Transmittal |
| 12.2 | Final Task Order Closeout Report | Within 10 days\* of receipt of EPA's comments on Draft Task Order Closeout Report | **Deliverable** |

*\* All references to days in this chart refer to business days*

## 6.0    Staffing Plan

This Task Order will be staffed as follows:

| Team Member Name[†] | Role in the Project |
|---------------------|---------------------|
| Mary Apostolico CSRA International | Overall Contract Management, Quality Assurance, Task Order Management |
| Jennifer Cutrona CSRA | Dashboard and Financial Tracking |
| David Batson TechLaw | Senior Allocation Specialist |
| Judy Manley TechLaw | Senior Project Manager |
| Travis Kline TechLaw | Senior Toxicologist |
| Erman Evcimen TechLaw | Database Designer |
| Amber Kozacek TechLaw | Researcher |

[†]Other team members than those listed in the above table may work on this task order to complete the required work.

[*]The task order mainly will be managed by the TOM listed in the above table; however, additional team members may conduct task order management activities to ensure coverage during periods when the TOM is unavailable (e.g., vacation, illness, business travel, time constraints).

## 7.0   Quality Management

As part of its quality assurance practices, CSRA TOM will:
- Review this Work Plan with the EPA TOCOR, as requested by the TOCOR;
- Meet or hold conference calls as needed with the TOCOR to review progress; and
- Speak regularly with the subcontractor to receive project status updates.

In addition, all work on this Task Order will be performed in accordance with CSRA's strict quality assurance practices, including but not limited to incorporating quality management principles and processes into the development of the required transmittals, deliverables, and the consulting services offered. Although CSRA will ensure the timely delivery of all transmittals and deliverables, CSRA will not perform a review of these documents prepared by the subcontractor.

## 8.0   Conflict of Interest

Based on our review and understanding of the legal requirements of this work, CSRA certifies that no real, apparent, or potential organizational or individual conflict of interest exists with this assignment, based on previous or ongoing work, or other potential conflicts.

## 9.0   Cyber Security

CSRA has interpreted compliance with information assurance / security provisions contained in this contract as a requirement to provide its standard CSRA information system and procedures. CSRA contract pricing does not include or reflect any additional requirements or certification and accreditation for the CSRA information system or procedures, connectivity to the Government system(s), or storage of any Government-provided data or project data, or for stand-alone development or storage environments. Should the Government require increased or specialized information assurance security or other actions beyond those reflected in the standard CSRA information system or procedures, then the Government will notify CSRA and such revisions will be provided in accordance with the "changes" clause of this contract.

## 10.0   Project Budget

The budget for this task is provided as an Attachment.

## 11.0   Period of Performance

The task order period of performance runs through June 15, 2019.

**Diamond Alkali Superfund Site OU2
Allocation Guide**

# Attachment E

ARR0250

For Public Disclosure by Consent of the Participating Allocation Parties and EPA (Fall 2022)



**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY**
REGION 2
290 Broadway
New York, NY  10007-1866

MAY 17 2017,

<u>BY EMAIL AND REGULAR MAIL</u>

To:    <u>See List of Addressees – Attachment A</u>

Re:    <u>Diamond Alkali Superfund Site, Lower 8.3 Miles of Lower Passaic River,
       Essex and Hudson Counties, New Jersey</u>

Dear Sir/Madam:

On March 30, 2017 the U.S. Environmental Protection Agency (the "EPA") notified 20 parties that EPA had identified them as candidates for an early cash out settlement related to their potential liability for Operable Unit 2 ("OU2") of the Diamond Alkali Superfund Site (the "Site"). On that same date, EPA wrote to all of the potentially responsible parties ("PRPs") for OU2 notifying them of, among other things, EPA's early cash out offer to the 20 parties. Since then, EPA has been contacted by several PRPs requesting information on EPA's proposed early cash out offer and requests to be included in the early cash out settlement.

EPA's decision to offer an early cash out settlement to 20 parties is based on a number of factors, tied to the remedial action selected in the Record of Decision ("ROD") issued for OU2.

<u>Lower 8.3 Miles of the Lower Passaic River – OU2</u>

On March 3, 2016 EPA issued the OU2 ROD to address unacceptable risks to human health and the environment posed by contaminated sediments in the lower 8.3 miles of the Lower Passaic River. While EPA has identified many hazardous substances in the lower 8.3 mile sediments, the ROD explains that eight hazardous substances pose the greatest potential risks to human health and the environment in the lower 8.3 miles. Those eight hazardous substances, namely, polychlorinated dibenzo-*p*-dioxins and furans ("dioxins/furans"), polychlorinated biphenyls ("PCBs"), mercury, dichlorodiphenyltrichloroethane ("DDT") (and its primary breakdown products), copper, dieldrin, lead and polycyclic aromatic hydrocarbons ("PAHs"), are identified in the OU2 ROD as the contaminants of concern ("COCs") for OU2. Accordingly, the objectives of remedial action selected for OU2 (see Section 8 of the OU2 ROD) are to:

- Reduce cancer risks and noncancer health hazards for people eating fish and crab by reducing the concentrations of COCs in the sediments of the lower 8.3 miles.

ARR0251

- Reduce the risks to ecological receptors by reducing the concentrations of COCs in the sediments of the lower 8.3 miles.

- Reduce the migration of COC-contaminated sediments from the lower 8.3 miles to upstream portions of the Lower Passaic River and to Newark Bay and the New York-New Jersey Harbor Estuary.

<u>Early Cash Out Settlement Recipients</u>

Prior to the issuance of the ROD, EPA received many requests from parties wishing to be considered for cash out settlements, presenting arguments and information in support of such settlements. In particular, certain parties argued that their legal exposure for the Site was such that the transaction costs for them to remain within a group of performing parties were disproportionate to their liability. EPA also received information that the Lower Passaic River Study Area Cooperating Parties Group ("CPG") was unwilling to undertake an allocation.

Based on the above, EPA reached several conclusions. One was that it would be useful for EPA to create a settlement framework to resolve the liability of parties that might be eligible to be cashed out from further OU2 work. Another was that this process would be sufficiently complex that in the interim it would be appropriate to offer a first, early cash out to those parties not associated with a release or disposal of a COC into the Lower Passaic River. The early cash out settlement would allow the parties to pay a sum certain to EPA and in return receive a covenant not to sue from EPA for OU2 as well as contribution protection related to OU2.

The parties that EPA identified as eligible for an early cash out settlement are those that, based on information reviewed by EPA, are not associated with the release or disposal of any of the COCs for OU2, as identified in the ROD, into the Lower Passaic River. Given the scope of the OU2 remedy, a remedial action that is expected to cost close to $1.4 billion dollars, the Agency has taken great care in identifying parties eligible for the settlement. For the proposed settling parties, the documents that EPA relied on are posted on the Diamond Alkali Superfund Site web site[1]. EPA also considered the "Tierra Solutions' Nexus Documents"[2] that were made available as part of the New Jersey Department of Environmental Protection's (NJDEP's) Passaic River Litigation. As proposed by EPA, each of the proposed settling parties would pay the same amount ($280,600). The settlement payment takes into account the cost of the remedial action, and EPA's policy requiring a premium to account for uncertainties associated with the cost of the future work.

EPA's goal in offering this settlement was to remove these 20 parties from the OU2 RD/RA process. It is important to note that EPA's settlement offer is limited to liability associated with releases or disposal from the identified facilities. If EPA learns that a party receiving an early cash out offer is responsible for another facility that released hazardous substances to the Lower Passaic River, potential liability associated with that other facility would not be covered by this cash out settlement. However, it is also important to understand that EPA's goal was not to settle

---

[1] https://cumulis.epa.gov/supercpad/SiteProfiles/index.cfm?fuseaction=second.scs&id=0200613
[2] http://www.nj.gov/dep/passaicdocs/thirdparty-tierra.html

ARR0252

parties out piece-meal, i.e., one facility at a time, but rather to identify the parties that could be released from OU2 altogether.

Some PRPs that did not receive the cash-out offer have contacted EPA to explain that they are similarly situated to certain proposed cash-out parties, and have argued that by analogy, they too should have received such an offer. If an early cash out settlement has not been offered by EPA to a PRP, it is because EPA could not determine with confidence that the PRP met the criteria for this early cash out settlement. Such PRPs may be considered by EPA for another cash out opportunity.

Moreover, if someone is aware of reasons that a proposed settling party should not have been included, that information should be provided to EPA. If evidence exists connecting a proposed settling party with a release of COCs to the Lower Passaic River, EPA will consider that information and evaluate whether to remove the party in question from the proposed cash out settlement. However, we do not expect to engage in an additional round of document review and negotiations aimed at expanding the parties subject to an early cash out settlement.

Rather, in order to address these complexities, as indicated in EPA's March 30, 2017 "Next Steps" letter to the PRPs, EPA intends to use the services of a third party allocator with the expectation of offering cash out settlements to additional parties. Thus, parties that have not received an early cash out settlement offer from EPA may still be able to participate in a cash out settlement for OU2 with EPA in the future.

Sincerely yours,

Eric J. Wilson
Deputy Director for Enforcement and Homeland Security
Emergency and Remedial Response Division

ARR0253

## Attachment A - List of Addressees

### Diamond Alkali Superfund Site
### Lower 8.3 Miles - Passaic River

| Company | Contact Information | Facility |
|---|---|---|
| A.E. Staley Manufacturing Co., Inc.<br>2200 E. Eldorado Street<br>Decatur, IL  62521-1578<br><br>Now Tate & Lyle Ingredients Americas LLC | John R. Holsinger, Esq.<br>Two University Plaza, Suite 300<br>Hackensack, NJ 07601<br>201-487-9000 (T)<br>johnh@jrholsinger.com<br><br>Heidi R. Balsley, Esquire<br>Corporate Counsel<br>A.E. Staley<br>Manufacturing Co., Inc.<br>2200 E. Eldorado Street<br>Decatur, IL  62521<br>Heidi.Balsley@tateandlyle.com | 320 Schuyler Avenue and 100 Third Avenue<br>Kearny, NJ |
| Alcan Corporation<br>Two Alliance Center<br>3560 Lenox Rd<br>Atlanta, GA 30326<br><br>Now Novelis Corp. | John Tillman, Esq.<br>North American Regional Counsel<br>Novelis Corporation<br>Two Alliance Center<br>3560 Lenox Rd<br>Atlanta, GA 30326<br>404-760-4049 (T)<br>John.tillman@novelis.com | Jacobus Ave.<br>Kearny, NJ |
| Alden Leeds Inc.<br>55 Jacobus Ave.<br>Kearny, NJ 07032 | Mark Epstein, President<br>Alden Leeds Inc.<br>55 Jacobus Ave.<br>Kearny, NJ 07032<br><br>Joseph Fiorenzo, Esq.<br>Sills Cummis & Gross<br>The Legal Center<br>One Riverfront Plaza<br>Newark, NJ 07102<br>973-643-7000 (T)<br>jfiorenzo@sillscummis.com | 2145 McCarter Highway<br>Newark, NJ<br><br>55 Jacobus Avenue<br>Kearny, NJ |
| Alliance Chemical, Inc.<br>Linden Avenue<br>Ridgefield, NJ 07657 | Fredi Pearlmutter, Esq.<br>Lindabury, McCormick, Estabrook & Cooper, P.C.<br>53 Cardinal Drive<br>Box 2369<br>Westfield, NJ  07091<br>908-233-6800 (T)<br>fpearlmutter@lindabury.com | 33 Avenue P<br>Newark, NJ |

ARR0254

| | | |
|---|---|---|
| American Ref-Fuel Co.<br>155 Chestnut Ridge Road<br>Montvale, NJ 07645<br><br>Now Covanta Essex Company | Nancy Tammi, Esq.<br>VP, Associate General Counsel<br>Covanta<br>445 South Street<br>Morristown, NJ 07960<br>862-345-5133<br><br>Barbara Hopkinson Kelly, Esq.<br>Wilson Elser Moskowitz Edelman &<br>Dicker LLP<br>200 Campus Drive<br>Florham Park, NJ 07932-0668<br>973.735.5765 (Direct)<br>609.213.8589 (Cell)<br>973.624.0808 (Fax)<br>barbara.kelly@wilsonelser.com | 183 Raymond Blvd & 66<br>Blanchard St<br>Newark, NJ |
| Arkema Incorporated<br>2000 Market Street<br>Philadelphia, PA 19103-3222 | Paula Martin, Esq.<br>Doug Loutzenhiser<br>Legacy Site Services, LLC<br>468 Thomas Jones Way, Suite 150<br>Exton, PA 19341-2528<br>Paula.martin@total.com | Wallace & Tiernan<br>25 Main Street<br>Belleville, NJ |
| Ashland, Inc.<br>5200 Blazer Parkway<br>Dublin, OH 43017 | Robin E. Lampkin<br>Ashland Inc.<br>5200 Blazer Parkway<br>Dublin, OH 43017<br>Telephone: 614-790-3019<br>realmpkin@ashland.com<br><br>William S. Hatfield, Esq.<br>Gibbons P.C.<br>One Gateway Center<br>Newark, NJ 07102<br>whatfield@gibbonslaw.com | 221 Foundry St.<br>Newark, NJ |
| Atlas Refining, Inc.<br>142 Lockwood Street<br>Newark, NJ 07105<br><br>Now Atlas Refinery, Inc. | Steven Schroeder, Jr., President & CEO<br>Atlas Refinery, Inc.<br>142 Lockwood Street<br>Newark, NJ 07105<br><br>Thomas Ryan, Esq.<br>Laddey, Clark & Ryan LLP<br>60 Blue Heron Road, Suite 300<br>Sparta, NJ 07871<br>973-729-1880(T)<br>tryan@lcrlaw.com | 142 Lockwood St.<br>Newark, NJ |

ARR0255

| | | |
|---|---|---|
| Automatic Electro Plating Corp. 185 Foundry Street, Suite 3 Newark, NJ 07105 | Michael O'Rourke, President Automatic Electro Plating Corp. 1017 Applegate Parkway Waxhaw, NC 28173-6738 Michael.orourke@aol.com | 185 Foundry Street Complex Newark, NJ (Bldgs 19, 21, 22) |
| BASF Catalysts LLC 100 Campus Drive Florham Park, NJ | Karyllan D. Mack, Esq. (see below) | Engelhard Corporation One West Central Avenue East Newark, NJ |
| BASF Corp. 3000 Continental Drive Mount Olive, NJ 07828 | Karyllan D. Mack, Esq. Environmental Counsel BASF Corporation 100 Park Avenue Florham Park, NJ 07932 Karyllan.mack@basf.com<br><br>David Schneider, Esquire Bressler, Amery & Ross Post Office Box 1980 Morristown, NJ 07962 dschneider@bressler.com | 50 Central Ave. Kearny, NJ & 150 Wagaraw Rd Hawthorne, NJ |
| Belleville Industrial Center 681 Main Street Building 43 Belleville, NJ 07109 | Carol Shapiro, President Belleville Industrial Center 681 Main Street, Building 43 Belleville, NJ 07109 973-751-0400 (T) shappyfam@aol.com<br><br>Ryder T. Ulon, Esq. Gary F. Werner, Esq. Schenck, Price, Smith & King, LLP 220 Park Avenue Post Office Box 991 Florham Park, NJ 07932 973-540-7321 (T) rtu@spsk.com gfw@spsk.com | Helion Industries, Inc. 681 Main St. Belleville, NJ |

3

ARR0256

| | | |
|---|---|---|
| Benjamin Moore & Co.<br>51 Chestnut Ridge Rd.<br>Montvale, NJ 07645 | Paul Sangillo, Esq.<br>Benjamin Moore & Co.<br>101 Paragon Drive<br>Montvale, NJ 07645<br>201.949.6318 (T)<br>Paul.sangillo@benjaminmoore.com<br><br>Eric S. Aronson, Esq.<br>David G. Mandelbaum, Esq.<br>GreenbergTraurig<br>500 Campus Drive<br>Suite 400<br>Florham Park, NJ 07932<br>aronsone@gtlaw.com<br>973-360-7935 | 134 Lister Ave.<br>Newark, NJ |
| Berol Corporation<br>c/o Newell Rubbermaid Inc.<br>2707 Butterfield Road, Suite 100<br>Oak Brook, IL 60523 | Andrew Sawula, Esq.<br>Schiff Hardin LLP<br>One Westminster Place, Suite 200<br>Lake Forest, IL 60045<br>847-295-4336 (T)<br>asawula@schiffhardin.com | Faber-Castell Corporation<br>41 Dickerson Street<br>Newark, NJ |
| Campbell Foundry Company<br>800 Bergen Street<br>Harrison, NJ 07029 | Timothy J. Corriston, Esq.<br>Connell Foley LLP<br>85 Livingston Avenue<br>Roseland, NJ 07068<br>973-535-0500 (T)<br>tcorriston@connellfoley.com | 800 Bergen Street<br>Harrison, NJ |
| Canning Gum LLC<br>c/o MacDermid Incorporated<br>1401 Blake Street<br>Denver, CO 80202 | John Cordani, Esq.<br>VP, General Counsel<br>MacDermid Inc.<br>245 Freight Street<br>Waterbury, CT 06702 | Frederick Gumm Chemical Co.<br>538 Forest Street<br>Kearny, NJ |

ARR0257

| | | |
|---|---|---|
| Celanese Ltd.<br>Route 202-206<br>P.O. Box 2500<br>Somerville, NJ 08876<br><br>CNA Holdings LLC<br>participating on behalf of<br>Celanese Ltd | Duke K. McCall, III, Esq.<br>Bingham McCutchen LLP<br>2020 K Street, N.W.<br>Washington, DC 20006-1806<br>202-373-6607 (T)<br>duke.mccall@bingham.com<br><br>James J. Dragna<br>Morgan Lewis<br>300 South Grand Ave., 22nd Floor<br>Los Angeles, CA 90071-3132<br>Jim.dragna@morganlewis.com<br><br>James O'Toole, Esq.<br>Buchanan Ingersoll & Rooney PC<br>Two Liberty Place<br>50 S. 16th Street, Suite 3200<br>Philadelphia, PA 19102-2555<br>James.otoole@blpc.com | 354 Doremus Ave<br>Newark, NJ |
| Chargeurs, Inc.<br>178 Wool Road<br>Jamestown, SC 29453 | James. R. Brendel, Esq.<br>Thorp Reed & Armstrong, LLP<br>One Oxford Centre<br>301 Grant Street, 14th floor<br>Pittsburgh, PA 15219-1425<br>412-394-2373 (T)<br>jbrendel@thorpreed.com | United Piece Dye Works<br>199 and 205 Main Street and<br>42 Arnot Street<br>Lodi, NJ |
| Chevron Texaco Corporation<br>6001 Bollinger Canyon Rd.<br>K-2056<br>San Ramon, CA 94583<br><br>Chevron Environmental<br>Management Company<br>participating for itself, Texaco,<br>Inc. and TRMI-H LLC | Shawn Raymond DeMerse<br>Chevron U.S.A. Inc.<br>Law Department<br>1400 Smith Street, Rm 07090<br>Houston, TX 77002<br>shawndemerse@chevron.com<br><br>Louis M. DeStefano, Esq.<br>Buchanan Ingersoll & Rooney, PC<br>550 Broad Street, Suite 810<br>Newark, NJ 07102-4517<br>973.273.9800 (T)<br>louis.destefano@bipc.com | Getty Newark Terminal<br>86 Doremus Ave.<br>Newark, NJ |
| Coats & Clark, Inc.<br>3420 Toringdon Way, Suite 301<br>Charlotte, NC 28277 | Dan Riesel, Esq.<br>Jeff Gracer, Esq.<br>Sive Paget & Riesel, P.C.<br>460 Park Avenue<br>New York, NY 10022<br>212-421-2150<br>driesel@sprlaw.com | Clark Thread Co.<br>260 Ogden Street<br>Newark NJ<br>900 Passaic Avenue<br>East Newark NJ<br>735 Broad Street<br>Bloomfield NJ |

ARR0258

| EnPro Holdings LLC as assignee of Coltec Industries Inc.<br><br>5605 Carnegie Boulevard Charlotte, NC 28209 | Tom Price, Esq.<br>EnPro Industries<br>5605 Carnegie Boulevard<br>Charlotte, NC 28209<br>704-731-1525 (T)<br>tom.price@enproindustries.com<br><br>Charles E. Merrill, Esquire<br>Husch Blackwell Sanders LLP<br>190 Carondelet Plaza, Suite 600<br>St. Louis, MO 63105<br>314-480-1952<br>charlie.merrill@huschblackwell.com | Crucible Steel Co.<br>1000 South Fourth St.<br>Harrison, NJ |
| --- | --- | --- |
| Congoleum Corp.<br>3705 Quakerbridge Road<br>Mercerville, NJ 08619 | Russell Hewit, Esq.<br>Dughi, Hewit & Domolewski, P.C.<br>340 North Avenue<br>Cranford, NJ 07016<br>908-272-0200(T)<br>rhewit@dughihewit.com | 195 Belgrove Drive<br>Kearny, NJ |
| Cooper Industries, Inc.<br>600 Travis Street<br>Houston, TX 77002 | Lisa D. Sutton<br>Vice Present/Chief Counsel – EHS<br>Eaton Corporation<br>1000 Eaton Boulevard<br>Cleveland, OH 44122<br>440-523-4358 (T)<br><br>John F. Cermak<br>Sonja A. Inglin<br>Baker Hostetler<br>11601 Wilshire Boulevard, Ste 1400<br>Los Angeles, CA 90025-0509<br>310-442-8889 (T) (Cermak)<br>310-442-8885 (T) (Inglin)<br>jcermak@bakerlaw.com<br>singlin@bakerlaw.com | J. Wiss & Sons Co<br>7, 13, 26 Bank Street and<br>33 Littleton Avenue (aka 400 West Market Street)<br>Newark, NJ |
| Cooper Industries, LLC<br>600 Travis Street, Suite 5800<br>Houston, TX 77002 | (see above) | Thomas A. Edison, Inc.<br>Belleville Avenue & Sherman Avenue<br>Bloomfield, NJ<br>75 Belmont Avenue<br>Belleville, NJ |
| Croda Inc.<br>300-A Columbus Circle<br>Edison, NJ 08837 | Stephen Swedlow, Esq.<br>Quinn, Emanuel, Urquhart & Sullivan, LLP<br>500 West Madison St., Suite 2450<br>Chicago, IL 60661<br>312-705-7400<br>stephenswedlow@quinnemanuel.com | Hummel Lanolin<br>185 Foundry Street Complex<br>Newark, NJ<br>(Block 5005, Lot 21; Bld 39) |

6

**ARR0259**

| | | |
|---|---|---|
| Curtiss-Wright Corp.<br>4 Becker Farm Road<br>Roseland, NJ 07068 | Diana Buongiorno<br>Chiesa Shahinian & Giantomassi, PC<br>One Boland Drive<br>West Orange, NJ 07052<br>973-530-2075(T)<br>dbuongiorno@csglaw.com | 1 Passaic St.<br>Woodridge, NJ |
| Darling International, Inc.<br>251 O'Connor Ridge Boulevard,<br>Suite 300<br>Irving, TX 75038 | Steven Singer, Esq.<br>34 Hillside Avenue<br>Montclair, NJ 07042<br>973-744-6093<br>stsinger@verizon.net | Standard Tallow Corp.<br>61 Blanchard Street,<br>Newark, NJ<br>1215 Harrison Avenue,<br>Kearny, NJ |
| DII Industries, LLC<br>c/o Halliburton<br>2101 City West Blvd.<br>Houston, TX 77042-3021 | Thomas C. Jackson, Esq.<br>Joshua Frank, Esq.<br>Baker Botts LLP<br>1299 Pennsylvania Ave., N.W.<br>Washington, DC 20004-2400<br>202-639-7710 (T)<br>Thomas.Jackson@bakerbotts.com<br>Joshua.frank@bakerbotts.com | Worthington Corp. &<br>Dresser Industries, Inc.<br>401 Worthington Avenue<br>Harrison, NJ |
| DiLorenzo Properties Company<br>c/o 401 East 74th Street<br>New York, NY 10021-3919 | David Kohane, Esq.<br>Cole Schotz, PC<br>PO Box 800<br>25 Main Street<br>Hackensack, NJ 07601-7015<br>DKohane@coleschotz.com<br><br>For estate of Alex DiLorenzo<br>Gary P. Gengel, Esq.<br>Latham & Watkins, LLP<br>885 Third Avenue<br>New York, NY 10022-4834<br>Gary.Gengel@lw.com | American Modern Metals<br>44 Passaic Ave. (a/k/a 25<br>Belgrove Drive)<br>Kearny, NJ |
| Drum Service of Newark, Inc.<br>38 Laurel Drive<br>Wayne, NJ 07470 | Ralph Foglia<br>38 Laurel Drive<br>Wayne, NJ 07470 | Hilton-Davis<br>120 Lister Ave.<br>Newark, NJ |
| Eden Wood Corporation<br>47 Parsippany Road<br>Whippany, NJ 07981 | Warren L. Dean, Jr.<br>Thompson Coburn LLP<br>1909 K Street, N.W.<br>Suite 600<br>Washington, D.C. 20006-1167<br>202.585.6908 (T)<br>wdean@thompsoncoburn.com | Whippany Paper Board<br>1 Ackerman Avenue<br>Clifton, NJ |

ARR0260

| E.I. duPont de Nemours & Co.<br>1007 Market Street<br>Wilmington, DE 19898 | Stephen Rahaim, Esq.<br>E.I. DuPont de Nemours &<br>Co.<br>974 Center Road<br>Building 721/1164<br>Wilmington, DE 19803<br>302-996-8278(T)<br>Stephen.Rahaim@dupont.com | Pitt Consol<br>191 Doremus Ave.<br>Newark, NJ |
| --- | --- | --- |
| Elan Chemical Co.<br>268 Doremus Ave.<br>Newark, NJ 07105 | Jocelyn Kapp Manship, CEO<br>Elan Chemical Company Inc.<br>268 Doremus Avenue<br>Newark, NJ 07105<br><br>Randy Schillinger, Esq.<br>Saiber Schlesinger Staz & Goldstein<br>One Gateway Center, 13th Fl<br>Newark, NJ 07102<br>973-622-3333(T)<br>rs@saiber.com | 268 Doremus Ave.<br>Newark, NJ |
| El Paso Tennessee Pipeline Co.<br>1001 Louisania Street<br>Houston, TX 77002<br><br>EPEC Polymers Inc.<br>participating on behalf of itself<br>and EPEC Oil Company<br>Liquidating Trust | Andrea A. Lipuma, Esquire<br>Saul Ewing LLP<br>750 College Road East<br>Suite 100<br>Princeton, NJ 08540-6617<br>Telephone: 609-452-5032<br>alipuma@saul.com | Tenneco, Inc.<br>290 River Drive<br>Garfield, NJ |
| EM Sergeant Pulp & Chemical<br>Co.<br>6 Chelsea Road<br>Clifton, NJ 07012 | Messrs. Scott and Alan Reisch<br>EM Sergeant Pulp & Chemical Co.<br>6 Chelsea Road<br>Clifton, NJ 07012<br><br>Mark L. Freed, Esq.<br>Curtin & Heefner LLP<br>Doylestown Commerce Center<br>2005 South Easton Road, Suite 100<br>Doylestown, PA 18901<br>MLF@curtinheefner.com<br>267 898-0507 | 120 Lister Avenue<br>Newark, NJ |

ARR0261

| | | |
|---|---|---|
| Essex Chemical Corp.<br>2030 WMDC<br>Midland, MI 48674 | Kenneth Mack, Esq.<br>Linda Mack, Esq.<br>Fox Rothschild LLP<br>Post Office Box 5231<br>Princeton, NJ 08543-5231<br><br>Princeton Pike Corp. Center<br>997 Lenox Drive, Bldg. 3<br>Lawrenceville, NJ 08648<br>609-896-3000(T)<br>kmack@foxrothschild.com | 330 Doremus Ave.<br>Newark, NJ |
| Everett Smith Group, Ltd.<br>330 East Kilbourn Avenue, Ste 750<br>Milwaukee, WI 53202 | Sarah A. Slack, Esq.<br>Foley & Lardner, LLP<br>Suite 500<br>150 East Gilman Street<br>Madison, WI 53703-1482<br>608-258-4239<br>sslack@foley.com | Blanchard Bro. & Lane, Inc.<br>40 Bruen Street<br>Newark, NJ |
| Fiske Brothers Refining Co.<br>129 Lockwood Street<br>Newark, NJ | Damon Sedita, Esq.<br>Sedita, Campisano & Campisano, LLC<br>55 Lane Road, Suite 170<br>Fairfield, NJ 07004<br>973-787-0299<br>dsedita@scclegal.com | 129 Lockwood Street<br>Newark, NJ |
| Flexon Industries Corp.<br>One Flexon Plaza<br>366 Frelinghuysen Avenue<br>Newark, NJ 07114 | Tom Spiesman, Esq.<br>Porzio Bromberg & Newman, PC<br>100 Southgate Parkway<br>PO Box 1997<br>Morristown, NJ 07962<br>973-889-4208 (T)<br>tspiesman@pbnlaw.com | 666 Washington Avenue<br>Belleville, NJ |
| Foundry Street Corporation<br>67 Kettle Hole Road 2524<br>Montauk, NY 11954-5084 | Gerald Borriello<br>Foundry Street Corporation<br>67 Kettle Hole Road 2524<br>Montauk, NY 11954-5084 | 185 Foundry Street Complex<br>Newark, NJ<br>(Block 5005, Lot 22 – Bldgs 19, 21, 22) |

9

| | | |
|---|---|---|
| Fragrances North America<br>1775 Windsor Road<br>Teaneck, NJ 07666<br><br>Now Givaudan Corp. | Richard Wroblewski, P.G.<br>Environmental Specialist<br>Givaudan Fragrances Corp.<br>300 Waterloo Valley Road<br>Mount Olive, NJ 07828<br>richard.wroblewski@givaudan.com<br><br>William Hatfield, Esq.<br>Gibbons, PC<br>One Gateway Center<br>Newark, NJ 07102-5310<br>973-596-4511 (T)<br>whatfield@gibbonslaw.com | Givaudan Fragrances<br>125 Delawanna Avenue<br>Clifton, NJ |
| Franklin Burlington Plastics, Inc.<br>113 Passaic Ave.<br>Kearny, NJ 07032 | Norman Spindel, Esq.<br>Lowenstein Sandler PC<br>65 Livingston Avenue<br>Roseland, NJ 07068<br>973-597-2514(T)<br>nspindel@lowenstein.com | 113 Passaic Ave.<br>Kearny, NJ |
| Garfield Molding Company, Inc.<br>1115 Inman Avenue, #196<br>Edison, NJ 08820 | Patrick J. McStravick<br>Ricci Tyrrell Johnson & Grey<br>1515 Market Street, Suite 700<br>Philadelphia, PA 19102<br>215-320-2087 (T)<br>PMcStravick@rtjglaw.com | 10 Midland Avenue<br>Wallington, NJ |
| General Electric Company<br>3135 Easton Turnpike<br>Fairfield, CT 06828-0001 | Roger Florio, Esq.<br>General Electric<br>640 Freedom Business Center<br>King of Prussia, PA 19406<br>Roger.florio@ge.com<br><br>Gary P. Gengel, Esq.<br>Latham & Watkins, LLP<br>One Newark Center, 16th floor<br>Newark, NJ 07101<br>973-639-7287 (T)<br>gary.gengel@lw.com | 415 South 5th Street<br>& 1000 South 2nd Street<br>Harrison, NJ |

ARR0263

| | | |
|---|---|---|
| Goodrich Corporation<br>Four Coliseum Centre<br>2730 West Tyvola Road<br>Charlotte, NC 28217 | Earl W. Phillips, Jr., Esq.<br>Robinson & Cole LLP<br>280 Trumbull Street<br>Hartford, CT 06103-3597<br>860-275-8220 (T)<br>ephillips@rc.com<br><br>Brian Freeman, Esq.<br>Robinson & Cole LLP 280 Trumbull Street<br>Hartford, CT 06103-3597<br>860-275-8220 (T)<br>bfreeman@rc.com | Kalama Chemical<br>290 River Drive<br>Garfield, NJ |
| Harrison Supply Company<br>800 Passaic Avenue<br>East Newark, NJ 07029 | Timothy J. Corriston, Esq.<br>Connell Foley LLP<br>85 Livingston Avenue<br>Roseland, NJ 07068<br>973-535-0500 (T)<br>tcorriston@connellfoley.com | 800 Passaic Avenue<br>East Newark, NJ |
| Hexcel Corp.<br>2 Stamford Plaza<br>Stamford, CT 06901 | Steve Leifer, Esq.<br>Baker Botts LLP<br>1299 Pennsylvania Ave., NW<br>Washington, DC 20004<br>202-639-7723(T)<br>sleifer@bakerbotts.com | 205 Main St.<br>Lodi, NJ |
| Hoffman-La Roche Inc.<br>340 Kingsland Street<br>Nutley, NJ 07110 | John Klock, Esq.<br>Gibbons, PC<br>One Gateway Center<br>Newark, NJ 07102<br>jklock@gibbonslaw.com<br><br>Frederick Kentz, Esq.<br>Vice President and General Counsel<br>Hoffmann-La Roche Inc.<br>150 Clove Road,<br>Little Falls, NJ 07424 | 340 Kingsland Road<br>Nutley, NJ |

11

ARR0264

| | | |
|---|---|---|
| Honeywell International, Inc.<br>P.O. Box 2245<br>Morristown, NJ 07962 | Jeremy Karpatkin, Esq.<br>Arnold & Porter Kaye<br>Scholer LLP<br>601 Massachusetts Ave. NW<br>Washington, DC 20004-3743<br>202-942-5564 (T)<br>jeremy.karpatkin@apks.com | General Chemical Co.<br>65 Lodi Street/8th Street<br>Passaic, NJ |
| ISP Chemicals, Inc.<br>1361 Alps Road<br>Wayne, NJ 07470<br><br>now ISP Chemicals LLC | Robin E. Lampkin<br>Ashland Inc.<br>5200 Blazer Parkway<br>Dublin, OH 43017<br>614-790-3019 (T)<br>relampkin@ashland.com<br><br>William Hatfield, Esq.<br>Gibbons, PC<br>One Gateway Center<br>Newark, NJ 07102-5310<br>973-596-4511 (T)<br>whatfield@gibbonslaw.com | ISP Van Dyk, Inc.<br>1 Main St./11 William St.<br>Wayne, NJ |
| ITT Industries, Inc.<br>77 River Road<br>Clifton, NJ 07014<br><br>participating as Exelis Inc. for<br>itself and ITT Industries, Inc | Susanne Peticolas, Esq.<br>Gibbons, PC<br>One Gateway Center<br>Newark, NJ 07102-5310<br>973-596-4751 (T)<br>speticolas@gibbonslaw.com | 100 Kingsland Drive<br>Clifton, NJ |
| Kearny Smelting & Refining<br>936 Harrison Ave #5<br>Kearny, NJ 07032 | Ms. Francine Rothschild, President<br>Kearny Smelting & Refining<br>936 Harrison Ave<br>Kearny, NJ 07032<br>201-991-7276 (T)<br><br>Lee D. Henig-Elona, Esq.<br>Gordon & Rees<br>18 Columbia Turnpike, Suite 220<br>Florham Park, NJ 07932<br>973-549-2520(T direct)<br>973-549-2500(T office)<br>lhenig-elona@gordonrees.com | 936 Harrison Ave.<br>Kearny, NJ |

ARR0265

| | | |
|---|---|---|
| Lucent Technologies<br>600 Mountain Avenue<br>Murray Hill, NJ 07974<br><br>now Alcatel-Lucent USA, Inc. | Jay Stewart, Partner<br>Lowenstein Sandler LLP<br>65 Livingston Avenue<br>Roseland, NJ 07068<br>T 973.597.2522<br>F 973.597.2523<br>M 201.572.3844<br>jstewart@lowenstein.com<br><br>Gary M. Fisher, Esq.<br>Alcatel-Lucent<br>Environment, Health & Safety Corporate Center<br>600 Mountain Avenue<br>Room 1F-102G<br>Murray Hill, NJ 07974<br>gary.fisher@alcatel-lucent.com | AT&T/Western Electric<br>100 Central Ave.<br>Kearny, NJ |
| Mallinckrodt, Inc.<br>675 McDonnell Blvd.<br>Hazelwood, Missouri 63042 | William Hatfield, Esq.<br>Gibbons P.C.<br>One Gateway Center<br>Newark, NJ 07102<br>973-596-4511 (T)<br>whatfield@gibbonslaw.com<br><br>Eric Berry, Esq.<br>Vice President – Environmental Law<br>Mallinckrodt Pharmaceuticals<br>975 McDonnell Blvd<br>Hazelwood, MO 63042<br>Eric.Berry@mallinckrodt.com | 165-167 Main St.<br>Lodi, NJ |
| Monsanto Co.<br>800 North Lindbergh Blvd.<br>St. Louis, Missouri 63167<br><br>Pharmacia Corporation (f/k/a Monsanto Company) | John F. Gullace, Esq.<br>Manko, Gold, Katcher & Fox, LLP<br>401 City Avenue, Suite 500<br>Bala Cynwd, PA 19004<br>484-430-2326(T)<br>jgullace@mgkflaw.com | Monsanto Co.<br>Foot of Pennsylvania Ave.<br>Kearny, NJ |
| National-Standard Company<br>1618 Terminal Road<br>Niles, MI 49120<br><br>Now National-Standard LLC | Susanne Peticolas, Esq.<br>Gibbons, PC<br>One Gateway Center<br>Newark, NJ 07102-5310<br>973-596-4751(T)<br>speticolas@gibbonslaw.com | 714-716 Clifton Avenue<br>Clifton, NJ |

13

**ARR0266**

| | | |
|---|---|---|
| Newark Morning Ledger<br>1 Star Ledger Plaza<br>Newark, NJ 07102 | Michael J. Anderson, Esq.<br>Sabin, Bermant & Gould LLP<br>One World Trade Center, 44th Floor<br>New York, New York 10007<br>Direct No. (212) 381-7068<br>Fax No. (212) 381-7201<br>manderson@sabinfirm.com<br><br>Frances B. Stella, Esq.<br>Brach Eichler L.L.C.<br>101 Eisenhower Parkway<br>Roseland, New Jersey 07068<br>Direct No. (973) 403-3149<br>Fax No. (973) 618-5549<br>fstella@bracheichler.com | 1 Star Ledger Plaza<br>Newark, NJ |
| Newell Rubbermaid, Inc.<br>29 E. Stephenson Street<br>Freeport, IL 60132 | Andrew Sawula, Esq.<br>Schiff Hardin LLP<br>One Westminster Place, Suite 200<br>Lake Forest, IL 60045<br>847-295-4336 (T)<br>asawula@schiffhardin.com | Goody Products<br>969 Newark Turnpike<br>Kearny, NJ |
| News America Inc.<br>767 Fifth Ave., 46th Floor<br>New York, NY 10153<br><br>fka News Publishing Australia,<br>Ltd., now Twenty-First Century<br>Fox America | Peter Simshauer, Esq.<br>Skadden, Arps, Slate, Meagher & Flom LLP<br>500 Boylston Street<br>Boston, MA 02116<br>617-573-4880(T)<br>psimshau@skadden.com | Chris-Craft Inc./Montrose<br>Chemical Co.<br>100 Lister Ave.<br>Newark, NJ |
| Occidental Chemical Corp.<br>Occidental Tower<br>5005 LBJ Freeway<br>Dallas, TX 75244 | Dennis F. Blake<br>Senior Vice President<br>Occidental Chemical Corp.<br>5005 LBJ Freeway<br>Dallas, TX 75244<br><br>Larry Silver, Esq.<br>Langsam Stevens Silver<br>1818 Market Street, Suite 2610<br>Philadelphia, PA 19103-5319<br>215- 239.9023<br>lsilver@lssh-law.com | Diamond Shamrock<br>Chemicals Co.<br>80 and 120 Lister Ave.<br>Newark, NJ |
| The Okonite Company, Inc.<br>102 Hilltop Road<br>Ramsey, New Jersey 07446 | David Brook, Esq.<br>McCullough Ginsberg Montano &<br>Partners LLP<br>55 Bleeker Street<br>Millburn, NJ 07041<br>dbrook@mgpllp.com | Canal and Jefferson Streets<br>Passaic, NJ |

ARR0267

| | | |
|---|---|---|
| Otis Elevator Co.<br>North America Operations<br>10 Farm Springs Road<br>Farmington, CT 06032 | Earl W. Phillips, Jr., Esq.<br>Robinson & Cole LLP<br>280 Trumbull Street<br>Hartford, CT 06103-3597<br>860-275-8220(T)<br>ephillips@rc.com<br><br>Brian Freeman, Esq.<br>Robinson & Cole LLP<br>280 Trumbull Street<br>Hartford, CT 06103-3597<br>860-275-8220(T)<br>bfreeman@rc.com | 1000 First St.<br>Harrison, NJ |
| Pabst Brewing Company<br>9014 Heritage Parkway, Suite 308<br>Woodridge, IL 60517 | Eugene Kashper, Chairman & CEO<br>Pabst Brewing Company<br>10635 Santa Monica Blvd Ste 350<br>Los Angeles, CA 90025 | 400 Grove Street<br>Newark, NJ |
| Palin Enterprises | Mr. Michael Palin<br>Palin Enterprises<br>235 Park Avenue South, #8<br>New York, NY 10003-1045 | American Modern Metals<br>44 Passaic Ave. (a/k/a 25 Belgrove Drive)<br><br>Kearny, NJ |
| Passaic Pioneer Properties<br>PO Box 327<br>35 Eighth Street<br>Passaic, NJ 07055 | Timothy J. Corriston, Esq.<br>Connell Foley LLP<br>85 Livingston Avenue<br>Roseland, NJ 07068<br>973-535-0500 (T)<br>tcorriston@connellfoley.com | 35 Eighth Street<br>Passaic, NJ |
| Pfizer Inc.<br>235 E. 42nd St.<br>New York, NY 10017 | Seth Kerschner, Esq.<br>White & Case LLP 1155 Avenue of the Americas<br>New York, NY 10036-2787<br>212-819-8630(T)<br>212-354-8113(F)<br>Seth.kerschner@whitecase.com | 230 Brighton Road<br>Clifton, NJ |
| PMC, Inc.<br>12243 Branford Street<br>Sun Valley, CA 91352 | Phillip Kamins, President & CEO<br>PMC Global, Inc.<br>12243 Branford St<br>Sun Valley, CA 91352<br>818-896-1101(T) | Kleer Kast<br>450 Schuyler Avenue<br>Kearny, NJ |

ARR0268

| | | |
|---|---|---|
| Power Test of New Jersey, Inc.<br>125 Jericho Turnpike<br>Jericho, NY 11753<br><br>now Leemilt's Petroleum, Inc., successor to Power Test of NJ, Inc. | Christine Fitter, Asst Secretary<br>Leemilt's Petroleum, Inc.<br>125 Jericho Turnpike, Suite 103<br>Jericho, NY 11753<br>cfitter@gettyrealty.com<br><br>Nicole Moshang, Esq.<br>Manko, Gold Katcher & Fox LLP<br>401 City Avenue, Ste. 500<br>Bala Cynwyd, PA 19004<br>484-430-2324 (T)<br>nmoshang@mgkflaw.com | Getty Newark Terminal<br>86 Doremus Ave.<br>Newark, NJ |
| PPG Industries, Inc.<br>One PPG Place<br>Pittsburgh, PA 15272 | Gary P. Gengel, Esq.<br>Latham & Watkins, LLP<br>885 Third Avenue<br>New York, NY 10022-4834<br>gary.gengel@lw.com | 29 Riverside Ave.<br>Newark, NJ |
| PSE&G Corp.<br>P.O. Box 570<br>Newark, NJ 07101 | John F. Doherty, Esq.<br>Associate General Litigation Counsel<br>PSE&G Services Corporation<br>80 Park Plaza, T5D<br>Post Office Box 570<br>Newark, NJ 07102<br>973-430-6478(T)<br>John.doherty@pseg.com<br><br>Kevin R. Gardner, Esq.<br>Connell Foley<br>85 Livingston Avenue<br>Roseland, NJ 07068<br>973-535-0500(T)<br>kgardner@connellfoley.com | 155 Raymond Blvd.<br>Newark, NJ<br>&<br>4th St.<br>Harrison, NJ |
| Purdue Pharma Technologies, Inc.<br>One Stamford Forum<br>Stamford, CT 06901 | James (Jay) Stewart, Esq.<br>Lowenstein Sandler PC<br>65 Livingston Avenue<br>Roseland, NJ 07068<br>973-597-2522(T)<br>jstewart@lowenstein.com | Napp Technologies<br>199 Main St.<br>Lodi, NJ |
| Quality Distribution, Inc.<br>150 East Pennsylvania Avenue<br>Suite 450<br>Downingtown, PA 19335<br><br>Quality Carriers, Inc. | Bonni Kaufman, Esq.<br>Holland & Knight, LLP<br>800 17th Street N.W. Suite 1100<br>Washington, DC 20006<br>202-419-2547<br>Bonni.kaufman@hklaw.com | Chemical Leaman Tank Lines<br>80 Doremus Avenue<br>Newark, NJ |

16

ARR0269

| | | |
|---|---|---|
| Roman Asphalt Corporation<br>14 Ogden Street<br>Newark, NJ 07104 | Michael La Morgese, President<br>Roman Asphalt Corporation<br>14 Ogden St<br>Newark, NJ 07104<br>973-482-1113(T)<br>Roman@romanasphalt.com | 14 Ogden Street<br>Newark, NJ |
| Royce Associates<br>366 N. Broadway, Ste. 400<br>Jericho, NJ 11753 | A.J.Royce, President<br>Royce Associates, ALP<br>35 Carlton Ave<br>East Rutherford, NJ 07073<br>201-438-5200(T)<br><br>Ronald Bluestein, Esq.<br>Flamm Walton<br>794 Penllyn Pike<br>Blue Bell, PA 19422<br>267-419-1500 (T)<br>rbluestein@flammlaw.com | Royce Chemical Company<br>17 Carlton Avenue<br>East Rutherford, NJ |
| RSR Corp.<br>2777 Stemmons Freeway, Suite 1800<br>Dallas, TX 75207<br><br>now Revere Smelting and Refining Corporation | Jane C. Luxton, Esq.<br>Christopher Clare, Esq.<br>Clark Hill PLC<br>601 Pennsylvania Avenue NW<br>North Building, Suite 1000<br>Washington, DC 20004<br>202-572-8674(T)<br>703-598-3275(M)<br>jluxton@clarkhill.com<br>cclare@clarkhill.com | Revere Smelting & Refining<br>387 Avenue P<br>Newark, NJ |
| RTC Properties, Inc.<br>79 Fifth Avenue<br>New York, NY 10003 | John S. Stolz, Esq.<br>Lowenstein Sandler, PC<br>65 Livingston Avenue<br>Roseland, NJ 07068<br>973-597-6228(T)<br>mrodburg@lowenstein.com | AT&T/Western Electric<br>100 Central Ave.<br>Kearny, NJ |
| S&A Realty Corp.<br>55 Passaic Avenue<br>Kearny, NJ 07032 | Jeffrey Pollock, Esq.<br>Fox Rothschild<br>P.O. Box 5231<br>Princeton, NJ 08543<br>609-896-7660(T)<br>jmpollock@foxrothschild.com | American Modern Metals<br>44 Passaic Ave. (a/k/a 25 Belgrove Drive)<br>Kearny, NJ |
| Safety Kleen Envirosystems Co.<br>1301 Gervais St.<br>Columbia, SC 29201<br><br>McKesson Corporation for itself and for Safety-Kleen Envirosystems, Inc. | John Edgcomb, Esq.<br>Edgcomb Law Group, LLP<br>One Post Street, Suite 2100<br>San Francisco, California 94104-5225<br>415-399-1555 (T)<br>jedgcomb@edgcomb-law.com | 600 Doremus Ave.<br>Newark, NJ |

17

ARR0270

| | | |
|---|---|---|
| Schiffenhaus Packaging Corp.<br>c/o Rock-Tenn Company<br>504 Thrasher Street<br>Norcross, GA 30071 | Camille V. Otero, Esq.<br>Gibbons, PC<br>One Gateway Center<br>Newark, NJ 07102-5310<br>cotero@gibbonslaw.com | 204 Academy Street<br>49 Fourth Street<br>2013 McCarter Highway<br>Newark, NJ |
| Sequa Corporation<br>200 Park Avenue<br>New York, NY 10166 | Brian L. Buniva, Esq.<br>Senior Counsel & Senior Director<br>Environment, Health & Safety Sequa<br>Corporation<br>707 E. Main Street, Suite 1450<br>Richmond, VA 23219<br>845-230-7374 (Direct)<br>804-873-0610 (Mobile)<br>Brian_Buniva@sequa.com<br><br>Gary P. Gengel, Esq.<br>Kegan A. Brown, Esq.<br>Latham & Watkins, LLP<br>885 Third Avenue<br>New York, NY 10022-4834<br>gary.gengel@lw.com | Sun Chemical Corporation<br>185 Foundry Street<br>Newark, NJ<br>(prior to 1987) |
| Seton Company, Inc.<br>1000 Madison Avenue<br>Norristown, PA 19403\<br><br>now Seton Tanning | David M. Kohane, Esq.<br>Cole Schotz, PC<br>PO Box 800<br>25 Main Street<br>Hackensack, NJ 07601-7015<br>201-525-6267(T)<br>dkohane@coleschotz.com | Seton Leather Company<br>849 Broadway<br>Newark, NY 07104 |
| SpectraServ, Inc.<br>75 Jacobus Avenue<br>Kearny, NJ 07032 | Diana Buongiorno, Esq.<br>Chiesa Shahinian & Giantomassi, PC<br>One Boland Dr<br>West Orange, NJ 07052<br>973-530-2075(T)<br>dbuongiorno@csglaw.com | 75 Jacobus Ave.<br>Kearny, NJ |
| STWB, Inc.<br>c/o Bayer Corporation<br>100 Bayer Road<br>Pittsburgh, PA 15205 | Timothy I. Duffy, Esq.<br>Coughlin Duffy LLP<br>Post Office Box 1917<br>350 Mount Kemble Avenue<br>Morristown, NJ 07962-1917<br>973-631-6002(T)<br>tduffy@coughlinduffy.com<br>lhall@coughlinduffy.com (Assistant) | Lehn & Fink Products Corp.<br>192-194 Bloomfield Avenue<br>Bloomfield, NJ 07003<br><br>Thomasett Colors/Sterling<br>120 Lister Ave.<br>Newark, NJ |

ARR0271

| | | |
|---|---|---|
| Sun Chemical Corporation<br>35 Waterview Boulevard<br>Parsippany, NJ 07054-1285 | Warren W. Faure, Esq.<br>EH&S Counsel<br>Sun Chemical Corporation<br>35 Waterview Boulevard<br>Parsippany, NJ 07054<br>973-404-6590(T)<br>Warren.faure@sunchemical.com<br><br>Ted Wolff, Esq.<br>Manatt, Phelps & Phillips, LLP<br>7 Times Square<br>New York, NY 10036<br>twolff@manatt.com | Sun Chemical Corporation<br>185 Foundry Street<br>Newark, NJ<br>(1987 to present) |
| Teval Corporation<br>99 Cherry Hill Road, Suite 105<br>Parsippany, NJ 07054 | Lee D. Henig-Elona, Esq.<br>Gordon & Rees<br>18 Columbia Turnpike, Suite 220<br>Florham Park, NJ 07932<br>973-549-2520(T direct)<br>973-549-2500(T office)<br>lhenig-elona@gordonrees.com | Guyon Pipe<br>900-1000 South 4th Street<br>Harrison, NJ |
| Teva Pharmaceuticals USA, Inc.<br>1090 Horsham Road<br>North Wales, PA 19454 | Gail Port, Esq.<br>Proskauer Rose LLP<br>11 Times Square<br>New York, NY 10036-8299<br>212-969-3243(T)<br>gport@proskauer.com | Biocraft Laboratories<br>12 Industrial Park<br>Waldwick, NJ |
| Textron, Inc.<br>40 Westminster Street<br>Providence, RI 02903 | Jamie Schiff, Esq.<br>Textron, Inc.<br>40 Westminster Street<br>Providence, RI 02903<br>401-457-2422 (T)<br>jschiff@textron.com<br><br>Bonni Kaufman, Esq.<br>Holland & Knight<br>800 17th Street, NW<br>Suite 1100<br>Washington, DC 20006<br>202 955-3000<br>bonni.kaufman@hklaw.com | Spencer Kellogg Division<br>400 Doremus Avenue<br><br>Newark, NJ |
| The Andrew Jergens Co.<br>2535 Spring Grove Ave.<br>Cincinnati, OH 45214<br><br>now KAO U.S.A Inc. | Richard T. La Jeunesse, Esq.<br>Graydon Head & Ritchey LLP<br>1900 Fifth Third Center<br>511 Walnut Street<br>Cincinnati, OH 45202<br>513-629-2702(T)<br>rlajeunesse@graydon.com | 1 Franklin Ave.<br>Belleville, NJ |

ARR0272

| | | |
|---|---|---|
| The BOC Group, Inc.<br>575 Mountain Avenue<br>Murray Hill, NJ 07974<br><br>now Linde LLC on behalf of<br>The BOC Group, Inc. | James (Jay) Stewart, Esq.<br>Lowenstein Sandler PC<br>65 Livingston Avenue<br>Roseland, NJ 07068<br>973-597-2522(T)<br>jstewart@lowenstein.com | 681 Main Street<br>Belleville, NJ |
| The Hartz Mountain<br>Corporation<br>400 Plaza Drive<br>Secaucus, NJ 07094<br><br>The Hartz Consumer Group,<br>Inc. on behalf of The Hartz<br>Mountain Corporation | Curtis L. Michael, Esq.<br>Horowitz, Rubino & Patton<br>400 Plaza Drive<br>PO Box 2038<br>Secaucus, NJ 07094-2038<br>Curt.michael@hrplaw.com | 600/700 South 4th Street<br>Harrison, NJ |
| The Newark Group, Inc.<br>20 Jackson Drive<br>Cranford, NJ 07016 | David M. Meezan, Esq.<br>Kazmarek Mowrey Cloud Laseter LLP<br>1230 Peachtree Street N.E.<br>Suite 3600<br>Atlanta, GA 30309<br>404-969-0733<br>dmeezan@kmcllaw.com | The Newark Boxboard Co.<br>17 Blanchard Street<br>Newark, NJ |
| The Sherwin Williams Co.<br>101 Prospect Ave., N.W.<br>Cleveland, OH 44115 | Jason Perdion<br>The Sherwin Williams Co.<br>101 Prospect Ave, NW<br>Cleveland, OH 44115<br>216-566-3741(T)<br>216-515-4400(F)<br>don.j.mcconnell@sherwin.com<br><br>Herbert (Bart) Bennett, Esq.<br>Sokol, Behot & Fiorenzo<br>229 Nassau Street<br>Princeton, NJ 08542-4601<br>609-279-0900(T)<br>hbennett@cullenanddykman.com | 60 Lister Ave.<br>Newark, NJ |
| The Stanley Works<br>1000 Stanley Drive<br>New Britain, CT 06053<br><br>now Stanley Black & Decker,<br>Inc. | Andrew Kolesar, Esq.<br>Thompson Hine LLP<br>312 Walnut Street, 14th Floor<br>Cincinnati, OH 45202<br>513-352-6545(T)<br>andrew.kolesar@thompsonhine.com | Stanley Tools<br>140 Chapel St.<br>Newark, NJ |

20

ARR0273

| | | |
|---|---|---|
| Three County Volkswagen<br>701 Riverside Ave.<br>Lyndhurst, NJ 07071 | Lee D. Henig-Elona, Esq.<br>Gordon & Rees<br>18 Columbia Turnpike, Suite 220<br>Florham Park, NJ 07932<br>973-549-2520(T direct)<br>973-549-2500(T office)<br>lhenig-elona@gordonrees.com | 701 Riverside Ave.<br>Lyndhurst, NJ |
| Tiffany & Co.<br>727 Fifth Avenue<br>New York, NY 10022 | John Klock, Esq.<br>Gibbons, PC<br>One Gateway Center<br>Newark, NJ 07102-5310<br>973-596-4757 (T)<br>jklock@gibbonslaw.com | 820 Highland Avenue<br>Newark, NJ |
| Unilever Bestfoods<br>International Plaza<br>Sylvan Avenue<br>Englewood Cliffs, NJ 07632<br><br>Conopco, Inc., d/b/a Unilever<br>(as successpr to CPC/Bestfoods,<br>former parent of the Penick<br>Corporation | Joshua Frank, Esq.<br>Baker Botts<br>1299 Pennsylvania Ave., N.W.<br>Washington, DC 20004-2400<br>202-639-7710 (T)<br>Joshua.frank@bakerbotts.com<br><br>Andrew Shakalis, Esq.<br>Associate General Counsel – Environmental<br>& Safety<br>Unilever<br>700 Sylvan Avenue<br>Englewood Cliffs, NJ 07632<br>201-894-2763 (T)<br>201-894-2727 (F)<br>Andrew.shakalis@unilever.com | Penick Corporation<br>540 New York Avenue<br>Lyndhurst, NJ |
| Viacom Inc.<br>11 Stanwix St.<br>Pittsburgh, PA 15222<br><br>Now CBS Corporation | Jeffrey B. Groy, Esq.<br>VP, Sr. Counsel/ Environmental<br>CBS Law Department<br>CBS Corporation<br>2 East Mifflin Street, Suite 200<br>Madison, WI 53703<br>262 705-0579(T)<br>Jeff.Groy@cbs.com | Westinghouse Electric<br>95 Orange St.<br>Newark, NJ |

21

ARR0274

| | | |
|---|---|---|
| Vulcan Materials Co.<br>1200 Urban Center Drive<br>Birmingham, AL 35242<br><br>Now Legacy Vulcan Corp. | Eva Fromm O'Brien, Esq.<br>Fulbright & Jaworski<br>Fulbright Tower<br>1301 McKinney<br>Suite 5100<br>Houston, TX 77010-3095<br>713-651-5321 (T)<br>713-651-5246 (F)<br>eobrien@fulbright.com<br><br>John M. Floyd, Esq.<br>Senior Attorney<br>Vulcan Materials Company<br>1200 Urban Center Drive<br>Birmingham, AL 35242<br>205-298-3745 (Direct)<br>205-492-4219 (Cell)<br>205-298-2960 (F)<br>floydj@vmcmail.com | 600 Doremus Ave.<br>Newark, NJ |
| Wiggins Plastics Inc.<br>186 Kingsland Road<br>Clifton, NJ 07014 | Glenn Tucker, Esq.<br>Sheryl Reba, Esq.<br>Greenberg Dauber<br>One Gateway Center, Suite 600<br>Newark, NJ 07102<br>973-643-3700(T)<br>973-643-1218(F)<br>gtucker@greenbergdauber.com<br>sreba@greenbergdauber.com | 180 Kingsland Road<br>Clifton, NJ |
| Wyeth<br>5 Giralda Farms<br>Madison, NJ 07940 | Ronald J. Schott, Esq.<br>Corporate Counsel<br>Pfizer<br>5 Giralda Farms<br>Madison, NJ 07940<br>973-660-6641(T)<br>973-660-7176(F)<br>ronald.schott@pfizer.com<br><br>Seth Kerschner, Esq.<br>White & Case LLP 1155 Avenue of the Americas<br>New York, NY 10036-2787<br>212-819-8630(T)<br>212-354-8113(F)<br>Seth.kerschner@whitecase.com | Shulton Inc. and<br>American Cyanamid Co.<br>697 Route 46<br>Clifton, NJ |

ARR0275

| | | |
|---|---|---|
| Passaic Valley Sewerage Commission | Gregory A. Tramontozzi, Esq<br>Executive Director<br>Passaic Valley Sewerage Commissioners<br>600 Wilson Avenue<br>Newark, NJ 07105<br><br>Michael Witt, Esq.<br>Chasan Leyner & Lamparello, PC<br>300 Harmon Meadow Blvd.<br>Secaucus, NJ 07094<br>201-801-6093<br>mwitt@chasanlaw.com | |
| City of Newark | Joanne Vos, Esq.<br>Maraziti Falcon, LLP<br>150 John F. Kennedy Parkway<br>Short Hills, NJ 07078<br>973 912-9008<br>jvos@mfhenlaw.com<br><br>Angela Foster, Esq.<br>First Assistant Corporation Counsel<br>City of Newark Department of Law<br>Room 316, City Hall<br>920 Broad Street<br>Newark, NJ 07102<br>973-733-3880<br>fostera@ci.newark.nj.us | |
| Borough of East Newark | Honorable Joseph R. Smith, Mayor<br>Borough of East Newark<br>34 Sherman Avenue<br>East Newark NJ 07029 | |
| Town of Harrison | Honorable James A. Fife, Mayor<br>Town of Harrison<br>318 Harrison Avenue<br>Harrison, New Jersey 07029<br><br>Mr. Paul J. Zarbetski, Esq.<br>Town of Harrison<br>318 Harrison Avenue<br>Harrison, New Jersey 07029 | |
| Town of Kearny | Honorable Alberto G. Santos, Mayor<br>Town of Kearny<br>402 Kearny Avenue<br>Kearny, NJ 07032 | |

**ARR0276**

**Diamond Alkali Superfund Site OU2**
**Allocation Guide**

# Attachment F

ARR0277

Common Interest/Joint Defense
Attorney Work Product
### DRAFT

### Draft List of Relevant Document Categories for Allocation

**A. April 13 - Initial Index Submissions - Public documents relating to purchase, maintenance, manufacture of, and disposal of 8 COCs identified in the EPA OU2 ROD**

I.  ISRA/ECRA Documents and other NJDEP site remediation matters - Identifying 8 COCs referenced in the ROD for OU2
    a.  Initial filings identifying areas of concern:
        i.   ECRA - Site Evaluation Submission (SES) for process description, materials usage
        ii.  ISRA - Preliminary Assessment Report and required reporting form(s)
        iii. Applications for Letters of Non-Applicability (LNA) and issued LNAs/DEP response if LNAs based on absence of COCs.
        iv.  Alternative compliance filings and approvals if based on absence of COCs.
    b.  Substantive correspondence/report submissions made to and/or received from DEP, including underlying records and data.
        i.   Include:
            1. Preliminary assessment reports (Phase 1 Reports)
            2. Site Investigation/Remedial Investigation Reports (Phase 2 Reports)
            3. Remedial Alternative Evaluation or Feasibility Studies (Phase 3 Reports)
            4. Correspondence Between PRP and Agency
                a. Remedy Decision Documents
                b. Notices of Deficiency and Responses
                c. Consent Orders or Agreements
    c.  Final Remediation Documents
        i.   Remedial Action Reports (Phase 4 Reports)
            1. Include Text, Tables, Figures/Plates
            2. Include Field/Boring/Well Construction Logs
            3. Exclude Other Appendices/Raw Data
        ii.  Remedy Completion Reports (Phase 5 Reports)
        iii. Engineering and Institutional Controls (Deed Notice, Classification Exception Area, Well Restriction Area), No Further Action, Negative Declaration, Response Action Outcome.

II. Other Document Categories
    a.  Community Right to Know filings (listing 8 COCs)
    b.  Spill Plans – DPCC/DCR; SPCC avoid submittal of duplicate plans
    c.  Permits and applications – e.g., NPDES/NJPDES, Water and Air Permits
    d.  Aerial Photographs
    e.  Spill Incident Records
        i.   Reports to or notices from PVSC, Coast Guard, NJDEP, EPA/NRC, New Jersey police

4456260-5

**ARR0278**

Privileged and Confidential Attorney Client Communication
Attorney Work Product

## **DRAFT**

    f. Site Remediation Documents (e.g., state and federal: SRRA/ARRCS, CERCLA, TSCA, etc.)

        i. Same Assumptions as ISRA/ECRA Documents

    g. Discharge Monitoring Reports - Only to the Extent Same Address 8 COCs

    h. Demolition Documents/Reports (e.g., detailing material disposal/analysis)

    i. Agency Correspondence (e.g., regarding spills, investigations, inspections, etc.) Only to the Extent Same Address 8 COCs

    j. Court records or filings related to site contamination involving 8 COCs

    k. Industrial Waste Surveys (e.g., to PVSC)

**B. June 15 - Allocation parties provide preliminary indices of remaining documents for inclusion, post-finalization of allocation guidelines for sites**

**C. Expert Report Submissions (citing business confidential documents, periodicals, references relied on, plant/site diagrams depicting operational areas, etc.)**

2

**ARR0279**

**Diamond Alkali Superfund Site OU2
Allocation Guide**

# Attachment G

**ADR Confidential**

### *Template & Instructions for Creation of Allocation Party Data Reports*

*Review the company's preliminary submission/questionnaire and documents in the repository associated with the company and the facility address to fill out the information noted below.*

*Remember to:*

- *Copy referenced documents into the appropriate company name folder under G:_____/NEXUS REPORTS.*
- *Focus on the COCs.*
- *Include the Bates Numbers located on each document page to reference where the information used in data report comes from.  For example:  Company X began operations at the 100 ABC Street facility on January 1, 1965 (PAS-00000001).*
- *Make sure to include dates and entities involved.  For instance, if there has been sampling conducted, include the date and the entity that conducted the sampling.*
- *Include attributes to note where referenced information has been taken from, such as "According to the 1987 Feasibility Study."  Do not make conclusions.*
- *Include maps/drawings in the report using the Snipping tool.*
- *Make sure to incorporate all information from the Questionnaire (including all subsections) in the appropriate section as noted below.*
- Include Allocation Party (company) name at top right of each page.

**COMPANY NAME** [Questionnaire Section 1.1.1]

**Facility Name, Address and Size:**  List the facility address and acreage.  Note if the acreage is not available.   [Questionnaire Section 1.1.2 and 1.1.4]

1. **Business Type:**  State the general business type (e.g. - metal recycler, manufacturer of X, etc.) [Questionnaire Section 1.1.3]

2. **Significant Findings and Observations:** Summarize the story of how this company is or is not associated with the sediment in the Lower 8.3 miles of the Passaic River. Include materials used, release pathways, evidence of on-site contamination associated with this company's facility ownership or operations.  This should be a brief paragraph/executive summary.

3. **Time Period of Ownership/Operations:** Note the time frame the company owned and/or operated at this facility.  Distinguish between the two if necessary.  Include the following at the beginning of this section. [Questionnaire Section 1.2]

   > **Operator:**  XXXX to XXXX [dates]
   > **Owner:**  XXXX to XXXX [dates]

   Note if there is a Corporate Successor identified.  Also, note if there is a different current owner.

1

ARR0281

Note if the company did not own, operate, or occupy the Property at the time of a release or disposal of a COC, what their connection or relationship was to the corporate entity or entities that did.  [Questionnaire Section 1.3]

4.  **Operational History/COC Use and Presence at the Facility** [Questionnaire Section 2]**:** What operations have occurred over time at the facility?  What were the facility hazardous materials disposal practices related to the COCs?  Are there site layouts showing sewers that received discharges from the facility, or where the operations that used chemicals were located?  Where did they store chemicals?  Include maps/layouts if available.

5.  **Identified COCs** [Questionnaire Section 3]**:**  What COCs were used, stored, disposed of, generated, or otherwise handled at the facility.  Note each of the following chemicals for which there is evidence of this company's use, generation, or release at the facility and/or detection in on-site sampling.  If historic fill is present and contains COCs, describe any activities that would have disturbed the fill and therefore potentially allowed the release of COCs to surface water, groundwater, or sewer systems.  At the beginning of the section, for each such COC, note in parenthesis after the chemical name whether the evidence shows use, handling, generation, release or a combination of the foregoing.  Evidence of release would include information from inspections/violations, sampling on-site, etc.  Only include information for the time-period that this entity owned/operated at the site.

- Polychlorinated biphenyls (PCBs)
- Dioxins and Furans
- Polycyclic aromatic hydrocarbons (PAHs)
- Dieldrin
- DDx (DD and its breakdown products)
- Mercury
- Copper
- Lead

If the facts indicate that the facility is not the source of a COC at the Facility, describe where the COC came from including associated parties and dates.

6.  **COC Pathways** [Questionnaire Section 4]**:**  Describe all routes through which the COCs discharged at the facility by this company could be released to the Passaic River sediment.  Include information on sewer systems (sanitary, storm, CSO), as well as direct release.  Include information on the movement of COCs via the natural flow of rainwater and groundwater only to the extent of evidence that substantial action by the Allocation Party (such as a major spill or drum burial) has caused such contamination by COCs of groundwater or rainwater.  Include maps/figures if available.

7.  **Regulatory History/Enforcement Actions** [Questionnaire Sections 5 and 7]**:**  What inspections, violations, permits are associated with this company at this facility pertaining to the COCs?  Make sure to include dates and  note specific COCs.  Also include information on whether the party has been cooperative or uncooperative with the

**ARR0282**

Diamond Alkali OU2 Allocation

**ADR Confidential**

regulatory agency regarding the prevention of any harm to the public health or the environment specifically related to OU2 and the COCs.

8. **Response Actions** [Questionnaire Section 6]:  What sampling/site characterization has occurred on-site?  Summarize the various documents such as sampling activities, RI/FS, remedial activities, etc. that indicate potential or known off-site migration of contaminants.

9. **Summary of Asserted Defenses** [Questionnaire Section 8]**:**  Summarize the defenses asserted in the questionnaire responses.  This summary does not constitute a statement on the merits of the asserted defenses, which will be determined later in the allocation process.

ARR0283

**Diamond Alkali Superfund Site OU2
Allocation Guide**

# Attachment H

ARR0284

**ADR CONFIDENTIAL**

DIAMOND ALKALI SUPERFUND SITE – LOWER 8.3 MILES OF
LOWER PASSAIC RIVER ("OU2")

**CERTIFICATION OF ALLOCATION PARTY
REGARDING NON-CONFIDENTIAL INFORMATION**

[Insert Allocation Party Name]

[Insert Facility Site Name/Address]

By signing this Certification, the Allocation Party identified below certifies that, to the best of its knowledge and belief, it:

      a.     has conducted a thorough, good faith search for documents in its possession or control consistent with guidance set forth in the June 8, 2018 Diamond Alkali OU2 Allocation Guide ("Guide") developed by David C. Batson ("Allocator"), and consistent with the Guide has accurately disclosed to the Allocator non-confidential information identified in such search sufficient for the Allocator's use in preparing a Data Report regarding such Allocation Party's ownership, operation, and/or activities, including those of other persons or entities for which such Allocation Party has responsibility, regarding the above-enumerated facility site that was identified by EPA for inclusion in the Diamond Alkali OU2 allocation.

      b.     after the receipt of a General Notice Letter from EPA regarding OU2, has not altered, mutilated, discarded, destroyed, or otherwise disposed of or withheld, any records, reports, documents, or other information (including records, reports, documents, or other information in electronic form) (other than identical copies) for which a search consistent with the Guide could have been conducted that (i) supports the Allocation Party's Preliminary Questionnaire submission, or (ii) if available would have resulted in the material modification by the Allocator of a material fact in the Allocation Party's Data Report.

      c.     Nothing herein shall be deemed to waive any Allocation Party's attorney client, work product, joint defense privilege, or any other applicable protections or rights.

**FOR** _____**:**
             [Insert Name of Allocation Party]

_____

Dated                   [Name]
                             [Title]
                             [Company]
                             [Address]

**ARR0285**

**Diamond Alkali Superfund Site OU2
Allocation Guide**

# Attachment I

*Diamond Alkali OU2*
**ADR CONFIDENTIAL**

## ALLOCATION INITIAL SUBMISSION QUESTIONNAIRE

*NOTE: This questionnaire is designed and formatted for use as an online form, with drop down menus to facilitate efficiency of data compilation and liberal opportunities for written answers. The online form of this questionnaire will be available for use in mid-June 2018.*

### GENERAL INSTRUCTIONS

The following general instructions are applicable to all questions unless an individual question indicates otherwise.

You are to provide full and complete answers to all questions. If You believe a "yes" or "no" response by You requires further explanation because, for example, it would be materially misleading in the absence of further explanation, please provide the necessary explanation, including appropriate supporting facts on a separate sheet that references the relevant question.

You may cite to supporting documents where appropriate (e.g., for sample results), but also provide a narrative response for each question.

Unless otherwise indicated, the questions are, and Your responses should be, confined to the Relevant Time Period, as defined below.

### DEFINITIONS

"Affiliate" means any entity with which the Allocation Party answering this questionnaire is related to directly or indirectly, whether by common ownership or other means of control, or indemnitees of the Respondent for that facility, or for which Respondent has or may have CERCLA liability for that facility.

"Allocation Party" or "Allocation Parties" means any entity or entities listed as an Allocation Party on the Master List of Allocation Parties.

"COCs" means the eight (8) chemicals defined as Chemicals of Concern (COCs) in Section 2.e. of the Diamond Alkali Superfund Site OU2 Allocation Guide, dated June 11, 2018.

"Disposal" shall have the meaning set forth in CERCLA sec.101 (29).

"Enforcement Action" means any administrative, regulatory, or legal proceeding.

"Facility" means and includes all parcels of land and improvements thereon that, during the Relevant Time Period, formed a part of the Facility that the Allocation Party answering this questionnaire or an Affiliate owned, operated, occupied, or used and that is the subject of this Allocation.

"Historic Fill" on Your Facility shall have the meaning set forth in NJAC:26E-1.8 and the NJDEP Historic Fill Technical Guidance, version 2.0, dated April 29, 2013.

1

ARR0287

*Diamond Alkali OU2*
**ADR CONFIDENTIAL**

"Release" shall have the meaning set forth in CERCLA se.101 (22).

"Relevant Time Period" means the period the Respondent or an Affiliate owned, operated, occupied, or used all or any portion of the Facility.

"Respondent", "You", or "Your" means the Allocation Party answering this questionnaire and any Affiliate of that party.

Fill out one form per Respondent, per Facility.

## 1.   GENERAL BACKGROUND

1.1.   Provide the following information about the Respondent and Facility:

a.   Name of the Respondent (include the current name and all prior names, including those of Affiliates during the Relevant Time Period)

b.   Facility name (include all names by which the Facility has been known)

c.   Type of Business/Industrial Operation

d.   Facility address (include all addresses that are part of the Facility and any former address(es) at which the Facility was listed)

e.   Facility acreage and changes in acreage over time.

1.2.   Provide the following information about the Respondent's connection to the Facility:

a.   Dates of ownership.

b.   Dates of operation.

c.   Dates of occupancy or use, if different from above.

1.3   If You did not own, operate, or occupy the Facility at the time of a release or disposal of a COC, please describe Your connection or relationship to the corporate entity or entities that did.

## 2.   FACILITY OPERATIONS

Describe the operations (e.g. - including without limitations, all chemical processes, manufacturing activities, etc.), that Respondent including Affiliate conducted at the Facility.  If the nature of the operations changed or varied over time, identify the years Respondent conducted each operation and explain how the operations varied.

**ARR0288**

*Diamond Alkali OU2*
**ADR CONFIDENTIAL**

## 3.    COC USE AND PRESENCE AT THE FACILITY

3.1.    Have You used, stored, disposed of, generated, or otherwise handled at the Facility any of the following COCs?

| | |
|---|---|
| Dioxins and furans | Y / N |
| PCBs | Y / N |
| Mercury | Y / N |
| DDx | Y / N |
| Copper | Y / N |
| Dieldrin | Y / N |
| PAHs | Y / N |
| Lead | Y / N |

If so, provide the following information for each Yes.

   a.   Explain how You used, stored, disposed of, generated or otherwise handled the COC at the Facility.

   b.   State the time period (or date range) of each use, storage, disposal, generation, or handling of the COC.

   c.   Identify where at the Facility the COC was used, stored, disposed of, generated, or otherwise handled.

   d.   Identify the quantities of the COC used, stored, disposed of, generated, or otherwise handled at the Facility.

   e.   Explain how the COC was transported to and received at the Facility, if applicable.

   f.   Identify the source(s) from which the COC was obtained, if applicable.

   g.   Provide the date, quantity, and location of any known disposal of the COC at the Facility.

   h.   Identify the actions taken to respond to any known disposal of the COC, if applicable

3.2    Did any of the use, storage, disposal of, generation, or handling of COCs noted in response to Section 3.1 result in the placement, deposition, or otherwise result in the location of COCs, on or in the soils or other non-impervious surfaces of the facility?                Y/N

**ARR0289**

*Diamond Alkali OU2*
**ADR CONFIDENTIAL**

3.3     Is Historic Fill present at the Facility?  Y/N
             If so, provide the following information.

    a.   What is the evidence that Historic Fill is present?

    b.   Have COCs been detected in the Historic Fill?  Y/N
               If so, identify the detected COCs.

    c.   Is the Historic Fill co-located with any other areas of soil in which COCs have been detected?   Y/N

    d.   Was the Historic Fill area paved?  Y/N
               If so, provide the dates and specifications of the paving.

    e.   Is there any evidence that the Historic Fill at the Facility was disturbed (i.e., through on-site construction, grading, or other activities) during Your period of ownership, operation or occupancy of the Facility?   Y/N

    f.   Has a Deed Notice or declaration of environmental restrictions (DER) been placed or proposed to be placed on any portion of the Facility because of the presence of Historic Fill, in whole or in part?  Y/N
               If so, provide the following information.

        (i) all COCs that are subject to the deed notice

        (ii) if applicable, the date NJDEP approved the Deed Notice or DER and its book and page number.

3.4.    If Your answer to Question 3.2 was Yes and the placement, deposition, or location of a COC could contaminate surface water or groundwater at the Facility that had the potential for release of such contamination to the Passaic River, provide the following information for each occurrence involving a COC.

    a.   The type and nature of each placement, deposition, location, or disturbance.

    b.   The amount of COC involved.

    c.   The location on the facility of each placement, deposition, location or disturbance.

    d.   The time period of each placement, deposition, location, or disturbance.

    e.   If  testing identified a COC, identify the nature of the sampling and testing, the number of samples taken, and the date and location of any samples tested.  You may refer to reports or other documentation in response to this question, but please also provide a narrative summary of the sampling results.

**ARR0290**

*Diamond Alkali OU2*
**ADR CONFIDENTIAL**

3.5.    If Your answer to Question 3.3(e) was Yes and the disturbance was of such a magnitude or nature as to allow for contamination of surface water or groundwater at the Facility that had the potential for release of such contamination to the Passaic River, provide the following information for each occurrence involving a COC.

   a.   The type and nature of each placement, deposition, location, or disturbance.

   b.   The amount of COC involved.

   c.   The location on the facility of each placement, deposition, location or disturbance.

   d.   The time period of each placement, deposition, location, or disturbance.

   e.   If testing identified a COC, identify the nature of the sampling and testing, the number of samples taken, and the date and location of any samples tested.  You may refer to reports or other documentation in response to this question, but please also provide a narrative summary of the sampling results.

3.6    Regardless of your answers to 3.1 through 3.5, have any of the following COCs ever been detected at your facility?

| | |
|---|---|
| Dioxins and furans | Y / N |
| PCBs | Y / N |
| Mercury | Y / N |
| DDx | Y / N |
| Copper | Y / N |
| Dieldrin | Y / N |
| PAHs | Y / N |
| Lead | Y / N |

3.7    If You contend that You are not responsible for the presence of a COC at the Facility for which You answered "yes" in response to 3.2, 3.3, or 3.6, identify the COC by answering Yes below and provide the following information.

| | |
|---|---|
| Dioxins and furans | Y / N |
| PCBs | Y / N |
| Mercury | Y / N |
| DDx | Y / N |
| Copper | Y / N |
| Dieldrin | Y / N |

ARR0291

*Diamond Alkali OU2*
**ADR CONFIDENTIAL**

PAHs                                                 Y / N

Lead                                                 Y / N

    a.    Provide a brief explanation of how You contend the COC was released, discharged, migrated onto, or was deposited at the Facility.

    b.    Identify the date(s) You contend the COC was released, discharged, migrated onto, or was deposited at the Facility.

    c.    Identify the party(ies) You contend are responsible for the release or discharge of the COC.

    d.    Identify any reports or analyses that support Your contention, providing references to the relevant pages.

## 4.     PATHWAYS AND DISCHARGES TO THE PASSAIC RIVER

4.1.    Provide a brief description of how effluent from operations at the Facility has been generated, handled, and discharged, including the dates each distinct process was used and where the industrial effluent was discharged, including a citation, including date, author, title, and location of relevant plans, maps or diagrams depicting the manner in which effluent from operations at the Facility has been generated, handled, or discharged.

4.2.    Provide a brief description of how storm water at the Facility has been handled, including the dates each distinct storm water handling method was used and where the storm water was discharged, including a citation, including date, author, title, and location, of relevant plans, maps or diagrams depicting the manner in which storm water at the Facility has been handled.

4.3.    Identify all permits issued for the discharge of effluent or storm water at or from the Facility, including in Your description the date of the permit, the issuing authority, the nature of the permit, the permit number, and discharge limitations, and please list any violations of Your permit limitations involving COCs.

4.4.    Identify all outfalls or other discharge points from the Facility to the Passaic River.

4.5.    If the Facility was connected to the Passaic Valley Sewerage Commission system, provide the following information.

    a.    Identify the dates the Facility was connected to the PVSC system.

    b.    Identify the manner in which the Facility was connected to the PVSC system, including the nature and location of where the Facility was connected to the PVSC system.

**ARR0292**

     (i)    If the manner of connection varied over time, provide a separate description of each connection, including connection type and the dates the connection was used.

    c.    Identify any outfalls to the Passaic River between the point at which the Facility connects to the PVSC system and the PVSC treatment plant, if You know.

    d.    Describe the nature, time periods, discharge rates, discharge volumes and water quality data for all discharges. You may refer to reports in response to this question, but please also provide a narrative summary of the discharges from the Facility.

4.6.    If the Facility was connected to any other public or private sewer system (including any storm water system), provide the following information

    a.    Identify the dates the Facility was connected to the sewer system.

    b.    Identify the manner in which the Facility was connected to the sewer system, including the nature and location of where the Facility was connected to the sewer system.

     (i)    If the manner of connection varied over time, provide a separate description of each connection, including connection type and the dates the connection was used.

    c.    Identify the dates of operation of the sewer system and where effluent or water from the system ultimately was discharged, if You know.

    d,    Identify any outfalls to the Passaic River between the point at which the Facility connects to the sewer system and its ultimate discharge point.

    e.    Describe the nature, time periods, discharge rates, discharge volumes and water quality data for all discharges to the sewer system.

4.7.    Identify all other known, suspected, or alleged pathways by which COCs from the Facility may have been discharged to the Passaic River.

4.8.    If You contend that any of the pathways described above did not result in a discharge or release of COCs to the Passaic River, provide a <u>brief</u> explanation of the factual bases for Your contention. You may supplement this response at a later stage in a position paper and/or expert report.

4.9.    If You contend that any of the COCs discharged or released to the Passaic River were removed by navigational dredging, provide a brief description of the factual basis for Your contention. You may supplement this response at a later stage in a position paper and/or expert report.

**ARR0293**

*Diamond Alkali OU2*
**ADR CONFIDENTIAL**

5.    **ENFORCEMENT ACTIONS**

Identify all enforcement actions taken by any federal, state, or local agency concerning the release or discharge of any COCs at the Facility, including the agency(ies) involved, the date(s) of each action, the COCs involved, and the resolution of the action.

6.    **RESPONSE ACTIONS**

6.1.   If You identified any COCs as present or used at the Facility in response to Question 3.1, for each COC state whether any investigation or other response action has been performed at the Facility at any point in time under:

| | |
|---|---|
| ECRA | Y/N |
| ISRA | Y/N |
| NEW JERSEY SPILL ACT | Y/N |
| CERCLA | Y/N |
| RCRA | Y/N |
| TSCA | Y/N |
| SOLID WASTE MANAGEMENT ACT | Y/N |
| NEW JERSEY RIGHT TO KNOW ACT | Y/N |
| SPCC | Y/N |

Any other environmental law, rule, or regulation, or for any other reason.    (Specify)          Y/N

6.2.   For each investigation or other response action listed in response to 6.1, identify:

a.   The federal, state, and local agencies involved.

b.   The regulations governing the actions taken.

c.   How You remediated the COC at the Facility.

d.   Where at the Facility the COC was remediated.

e.   The quantities of the COC remediated at the Facility.

f.   The time period (or date range) of each action taken.

g.   All final investigative, remediation, or response action reports related to the action taken.

ARR0294

6.3.　　Was the Facility subject to spill or release reporting requirements under any of the environmental laws listed in 6.1?  Y/N

　　　a.　If so, list each report prepared for the Facility that listed, discussed, or otherwise analyzed one or more COC, including the date of the report, the nature of the reporting requirement, the author of the report, the agency the report was submitted to, and the time period covered by the report.

6.4.　　Has a Classification Exception Area (CEA) been approved or proposed for groundwater beneath and/or emanating from the site?   Y/N

　　　a.　If so, state (a) any COCs constituents covered by the CEA, (b) the date the CEA was approved and its's duration, and (c) whether any constituents were present because of Historic Fill at the Facility.

6.5.　　Has the Facility, or any part thereof, been the subject of a "No Further Action" letter (NFA) issued by NJDEP or "Comfort/Status Letter" issued by USEPA and/or a Response Action Outcome (RAO) issued by an LSRP?

　　　a.　If yes, state (a) the date of each NFA or RAO, (b) whether the NFA or RAO was issued subject to a "Restricted Use" condition, and (c) if so, the nature and bases for the Restricted Use requirement.

## 7.　　COOPERATION AND PASSAIC RIVER RESPONSE ACTION

7.1.　　Did You receive a general notice letter (GNL) from EPA?  Y/N

7.2.　　Did You participate in the Cooperating Parties Group (CPG)?  Y/N
　　　　　If so, (a) are You a current member, and (b) when did You join?

7.3.　　If You are not currently a member of the CPG, did You otherwise contribute to the costs of the RI/FS, RM 10.9, or other Passaic-related costs?

7.4.　　Have You otherwise cooperated with regulatory agencies at the Diamond Alkali Superfund Site to prevent any harm to the public health or the environment?  Y/N
　　　　　If so, please explain.

## 8.　　DEFENSES

If You plan to assert that Your allocation should be reduced based on any defense to liability or unique factors related to Your Facility, identify the defense or factors and provide a brief explanation of the factual bases for the defense and/or unique circumstances.  Failure to assert a defense at this stage will not result in waiver of the defense or Your ability to assert it at a later stage in the allocation.

**ARR0295**

*Diamond Alkali OU2*
**ADR CONFIDENTIAL**

## 9.    INFORMATION REVIEWED

9.1.    Provide a brief description of Your efforts to collect information about Your potential liability for the release or discharge of COCs to the Passaic River, including but not limited to whether You have searched for and reviewed relevant documents in Your possession, custody or control, whether You have interviewed current and/or former employees, and whether You have submitted information requests under FOIA and/or OPRA.

9.2.    Identify the general sources of information reviewed in responding to this questionnaire.

9.3.    If You were unable to locate information responsive to any of the questions above, describe the efforts You took to locate responsive information and why You were unable to locate responsive information.

CERTIFICATION

By signing this certification, the Allocation Party identified below certifies that, to the best of its knowledge and belief, the factual information reflected in its responses to this Preliminary Questionnaire are (1) true, correct, and complete, and (2) based on the result of the search for documents pursuant to the Allocation Guide. The Allocation Party further certifies that to the extent it relied on documents in preparing its response to this Preliminary Questionnaire that had not already been submitted to the Allocator, it has submitted such documents to the Allocator for inclusion in the appropriate allocation document repository and use in the Allocation.

FOR _____:
                      [Insert Name of Allocation Party]


_____                    _____
Dated                              [Name]
                                   [Title]
                                   [Company]
                                   [Address]

**ARR0296**

# Diamond Alkali Superfund Site OU2
# Allocation Guide

# Attachment J

ARR0297

## Diamond Alkali Superfund Site OU2 Allocation
## Confidentiality Agreement

This Confidentiality Agreement made and entered into by and among the Allocation Neutral and those Participants whose authorized representatives have executed this Agreement (collectively, the "Participants" and individually, a "Participant").

## RECITALS

1.    The Participants to this Confidentiality Agreement have been offered an opportunity to participate in the design and conduct of an allocation of certain costs associated with remediation of OU2 of the Diamond Alkali Superfund Site (the "Site") as described in the letter from Eric Wilson, Deputy Director for Enforcement and Homeland Security, Emergency and Remedial Response Division, US EPA, dated September 18, 2017.  The allocation is intended to establish an impartial third-party expert recommendation that may be considered by the United States and the Participants as the basis of settlements equitably resolving potential liabilities associated with the Site.

2.    The Participants have a common interest in working together to consider and establish a fair and reasonable, impartial allocation process for equitably resolving potential liabilities associated with the Site.

3.    The Confidentiality Agreement is intended to document the common understanding of the Participants regarding the confidentiality of the allocation process and shall not be construed as an admission of liability or against interest or otherwise cited or used in any way against any Participant in any other dispute or proceeding.

## AGREEMENT

1.    <u>Confidentiality</u>.

(a)    To promote frank and productive discussion, the Participants agree that the allocation process shall be confidential.  All oral and written communications regarding this matter by or between the Participants, including communications at meetings (whether by telephone or in person) with Participants present, or by or to the Allocation Neutral, shall be Dispute Resolution Communications.  Such Dispute Resolution Communications are confidential, and shall not be disclosed to third persons by the Allocation Neutral, any Participant, their elected and appointed officials and officers, representatives, employees, agents, financial auditors, insurance carriers, or other persons associated with the Participant, except as provided elsewhere in the agreement, or with the consent of the Participants to this dispute, or as required by law to be made public.

ADR CONFIDENTIAL

**ARR0298**

**Diamond Alkali Superfund Site OU2**
**ALLOCATION CONFIDENTIALITY AGREEMENT**

(b)     The allocation process, including all dispute resolution communications, is confidential pursuant to the Administrative Dispute Resolution Act of 1996, 5 U.S.C. Section 574, ("ADR Act") and all other applicable federal and state laws. The allocation process shall be treated as compromise negotiations under Rule 408 of the Federal Rules of Evidence and applicable state law.

(c)     The Allocation Neutral shall not disclose to any Participant or any third party information conveyed to him in confidence by any other Participant, unless authorized to do so by that Participant or as required by law, of which requirement Allocation Neutral shall advise the Participant in writing prior to disclosure.  Except as specified in the allocation process design, the Allocation Neutral shall, upon termination of the allocation process, destroy any notes and written records created by or provided to him, unless a Participant requests the return of written records, in which case the Allocation Neutral shall return the original and all copies of the requested materials to the Participant. Allocation meetings and other sessions shall not be recorded verbatim and no formal minutes or transcripts shall be maintained.

(d)     Participation in the allocation process, including attendance at meetings, statements made and documents prepared or furnished by any Participant, or other participant, for the purposes of the process shall not be construed as an admission of liability or against interest or otherwise cited or used in any way against any Participant in any other dispute or proceeding.  Where a Participant references, discusses, or produces documents or information during settlement discussions, doing so will not render otherwise discoverable documents or information confidential, privileged, non-discoverable, or inadmissible.

(e)     The Allocation Neutral shall not be deemed a "necessary or indispensable" party, as defined in Rule 19 of the Federal Rules of Civil Procedure and any equivalent state law, in any pending or future judicial, administrative or arbitral action related to matters discussed in the allocation process.  No Participant shall subpoena or otherwise seek from the Allocation Neutral any information provided to him by another Participant that relates to the allocation. In no event shall the Allocation Neutral voluntarily testify on behalf of a Participant, or participate as a consultant or expert, in any pending or future judicial, administrative, or arbitral action related to matters discussed in the allocation.

(f)     The Participants and the Allocation Neutral shall remain bound by these confidentiality provisions following termination or expiration of this Agreement without regard to whether any legal actions or issues arising out of the case are settled or concluded by final judgment or otherwise.

2.     Expiration.  This Confidentiality Agreement will expire upon completion of the allocation process or as otherwise agreed by a consensus of the Participants.

ARR0299

**Diamond Alkali Superfund Site OU2**
**ALLOCATION CONFIDENTIALITY AGREEMENT**

3.   <u>Withdrawal</u>.  Any Participant may withdraw from the allocation referred to herein upon written notice to the other Participants and Allocation Neutral.

4.   <u>Modification</u>.  All provisions of this Confidentiality Agreement may be modified by unanimous written consent of all Participants, who have not withdrawn from this Agreement.

5.   <u>Counterparts</u>.  This Confidentiality Agreement may be executed in multiple counterparts, each of which will be deemed an original, but all of which will constitute one and the same instrument.

6.   <u>Entire Agreement</u>.  This Confidentiality Agreement constitutes the entire understanding of the Participants with respect to its subject matter.

7.   <u>Governing Law</u>.  This Confidentiality Agreement is to be construed under and in accordance with the laws of the State of New Jersey.

8.   <u>Survival</u>.   The respective obligations of the Allocation Neutral and the Participant hereunder shall survive the expiration or sooner termination of this Confidentiality Agreement.

9.   <u>Recitals</u>.   The recitals to this Confidentiality Agreement are incorporated herein as though set forth in full.


[Signatures follow on succeeding pages]

ARR0300

**Diamond Alkali Superfund Site OU2**
**ALLOCATION CONFIDENTIALITY AGREEMENT**

**We agree to abide by the terms and conditions of this Confidentiality Agreement and indicate our assent by signing this document below.**

Date: _____     By: _____

Title: _____

_____
[Signature]

On Behalf of: _____

Page 4 of 5

**ARR0301**

**Diamond Alkali Superfund Site OU2**
**ALLOCATION CONFIDENTIALITY AGREEMENT**

**I agree to abide by the terms and conditions of this Confidentiality Agreement and indicate my assent by signing this document below.**

**ALLOCATION NEUTRAL:**

Date:  <u>October 17, 2017</u>      _____

David C. Batson

ARR0302

## Diamond Alkali Superfund Site OU2
## Allocation Guide

# Attachment K

ARR0303

RECORD OF DECISION

Lower 8.3 Miles of the Lower Passaic River

Part of the Diamond Alkali Superfund Site

Essex and Hudson Counties, New Jersey

https://semspub.epa.gov/work/02/396055.pdf

ARR0304