**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**NEWARK VICINAGE**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>-v-<br>ALDEN LEEDS, INC., et al.,<br>Defendants. | Hon. Madeline Cox Arleo<br>Civil Action No. No. 2:22-cv-07326<br>**DECLARATION OF ZAKARIAH E. SABATKA** |

I, ZAKARIAH E. SABATKA, declare the following pursuant to 28 U.S.C. § 1746:

1. I submit this declaration on behalf of Intervenor Nokia of America Corporation ("Nokia") and in support of Nokia's Response to the United States's Motion to Enter Consent Decree.

2. I am presently employed by Nokia as a Remediation Project Manager in its Real Estate, Americas Market Division.

3. I either have personal knowledge of the matters discussed herein or have reviewed documents in Nokia's files, or discussed matters with other Nokia employees or outside counsel, concerning these matters.

4. The United States Environmental Protection Agency ("EPA") has notified Nokia that it is potentially responsible for the cleanup of the Lower Passaic

River (the "LPR") portion of the Diamond Alkali Superfund Site (the "Superfund Site").

5. Nokia is the contractual successor to the environmental liabilities of the Western Electric Company for its former Kearny Works facility in Kearny, New Jersey.

6. Closed in 1984, the Kearny Works manufactured equipment for The Bell Operating System, the group of telecommunication companies, led by the Bell Telephone Company and later by the American Telephone and Telegraph Company ("AT&T").

7. At all times, the Kearny Works was on the eastern bank of the LPR and had no physical connection or commercial relationship with the Passaic Valley Sewerage Commission (the "PVSC").

8. From the fall of 2017 until December 2020, Nokia participated fully as a Participating Allocation Party ("PAP") in the allocation (the "Allocation") sponsored by EPA.

9. After the Allocator issued the final Allocation Recommendation Report (the "Final Allocation Report"), Nokia made two offers to the United States to settle its fair, relative share of responsibility for costs to clean up the LPR:

a. First, in 2021, Nokia and Pharmacia LLC ("Pharmacia") included a "Tier 2" offer as part of a counteroffer by the Settling Defendants.

b. Second, in June 2022, Nokia sent the United States a letter including a good-faith settlement offer.

10. Since making both offers, Nokia has reached out to the United States numerous times to attempt to discuss the offers and settlement generally. To date, the United States has not responded to Nokia's offers with a substantive counteroffer.

11. In a 2021 phone conference, EPA and the United States Department of Justice ("DOJ") informed Nokia, Pharmacia, and Public Service Electric & Gas Co. ("PSEG") that they, along with Occidental Chemical Corporation ("OxyChem"), had been designated "work parties" responsible for performing the LPR cleanup. A true and correct copy of a March 2022 notice letter from EPA to Nokia (and others) documenting this phone conference is attached as **Exhibit A**.

12. In the March 2022 notice letter, EPA also requested that Nokia, along with OxyChem, Pharmacia, PSEG and PMC, submit a "good-faith offer" to negotiate a consent decree with the United States to fully finance and perform the LPR cleanup. (Exh. A at 4.)

13. Since EPA designated the LPR as part of the Superfund Site, Nokia has for nearly 20 years cooperated with EPA in efforts to investigate, clean up, and restore the LPR.

14. I declare, under penalty of perjury, that the foregoing is true and correct.

Executed on: March 29, 2024

Zakariah E. Sabatka
Remediation Project Manager
Nokia of America Corporation

# EXHIBIT A

**U.S. Environmental Protection Agency**
**Region 2**
**290 Broadway**
**New York, New York 10007**

March 02, 2022

**Urgent Legal Matter**
**Prompt Reply Necessary**
**Via Email and Certified Mail,**
**Return Receipt Requested**

To: Addressees (See Attachment A)

Re: Notice of Potential Liability and Notice of Consent Decree Negotiations
Lower Passaic River Study Area, Diamond Alkali Superfund Site, New Jersey

Dear Counsellors:

Under the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), commonly known as the federal "Superfund" law, EPA is responsible for responding to the release or threat of release of hazardous substances, pollutants or contaminants into the environment. EPA has documented the release and threatened release of hazardous substances into the environment at the Lower Passaic River Study Area (LPRSA), which is part of the Diamond Alkali Superfund Site (Site), and in response to such releases and the threat of future such releases, EPA has spent public funds and anticipates spending additional public funds.

**Notice of Potential Liability**

Under CERCLA, specifically Sections 106(a) and 107(a), potentially responsible parties (PRPs) may be required to perform cleanup actions to protect the public health, welfare, or the environment. PRPs may also be responsible for costs incurred by EPA in cleaning up a site. PRPs include, among others, current and former owners and operators of a site, as well as persons who arranged for treatment and/or disposal of any hazardous substances found at the site, and persons who accepted hazardous substances for transport and disposal of hazardous substances to a site.

Based on information collected, EPA believes that the entities listed on Attachment A are liable under Section 107(a) of CERCLA for releases or threatened releases of hazardous substances into the LPRSA. EPA has previously notified the parties listed on Attachment A that it considers them to be PRPs with respect to the Site and by this letter is notifying those parties that they are PRPs for the LPRSA and encourages them to voluntarily finance and perform the remedies selected in the Record of Decision (ROD) for Operable Unit (OU) 2 and the ROD for OU4 of the Site.

**The Site**

The Site consists of the former Diamond Alkali facility located at 80-120 Lister Avenue in Newark, New Jersey, the LPRSA, the Newark Bay Study Area and the areal extent of contamination. In response to releases and threated releases of hazardous substances at and from the former Diamond Alkali facility, EPA placed the Site on the National Priorities List (NPL) in 1984. In 1987, EPA issued a ROD for the former Diamond Alkali facility, which is OU1 of the Site. Construction of the interim remedy selected in the 1987 ROD was carried out by, among others, the Occidental Chemical Corporation (OCC) under EPA oversight. OCC continues to perform response work at OU1, under EPA oversight, related to the remedy selected in the 1987 ROD.

The LPRSA, which flows through Essex, Hudson, Passaic and Bergen Counties, New Jersey, is the 17-mile tidal portion of the Lower Passaic River from the river's confluence with Newark Bay to Dundee Dam. The LPRSA is OU4 of the Site and includes the lower 8.3 miles of the Lower Passaic River, from River Mile (RM) 0 to RM 8.3, which is OU2 of the Site. The sediments in the lower 8.3 miles of the river have been identified as a major source of contamination to the rest of the Lower Passaic River and to Newark Bay. EPA concluded that the lower 8.3 miles of the river contained the bulk of the contaminated sediment and that addressing that portion of the river first would better support the overall protection of human health and the environment than would awaiting the outcome of the 17-mile remedial investigation and feasibility study. Accordingly, on March 3, 2016, EPA issued a ROD for OU2. In September 2016, EPA entered into an administrative settlement agreement and order on consent with OCC for OCC to perform, under EPA oversight, the remedial design for the remedy selected in the OU2 ROD.

The remedial investigation and feasibility study for the LPRSA continued while work on OU2 was performed, and on September 28, 2021, EPA issued a ROD selecting an interim remedy for OU4 to address contamination in the upper 9 miles of the Lower Passaic River from River Mile 8.3 to the Dundee Dam. The interim remedy addresses contaminated sediments in the upper 9 miles of OU4 that are sources of contamination, in that they have elevated contaminant concentrations and act as a reservoir for potential migration of contamination to the water column, other areas of the sediment bed, and plant and animal life in the LPRSA. The interim remedy selected for OU4 complements the remedy selected in the OU2 ROD and together, the remedies are expected to address the human health and ecological risks posed by the releases and threatened releases of hazardous substances into the LPRSA. The OU2 and OU4 RODs may be found at www.epa.gov/superfund/diamond-alkali, under Site Documents & Data, Administrative Records.

The Newark Bay Study Area is OU3 of the Site and includes Newark Bay and portions of the Hackensack River, the Arthur Kill, and the Kill van Kull. The remedial investigation and feasibility study for the Newark Bay Study Area are on-going and are

being performed by OCC under EPA oversight pursuant to an administrative order on consent issued by EPA in 2004.

**Potentially Responsible Parties for the LPRSA**

On March 30, 2016, shortly after issuance of the OU2 ROD, EPA notified over 100 parties, including those listed in Attachment A, that they are PRPs under Section 107(a) of CERCLA for the Site. The notice letter also invited OCC to perform the remedial design for the remedy selected in the OU2 ROD and advised the parties that the PRPs are not all similarly situated, with some having a greater responsibility for releases of hazardous substances into the river than others and, therefore, some would be identified as parties that should perform and/or fund the remedial action for OU2 while others would be identified as "cashout" parties.

EPA has implemented its enforcement strategy by: 1) issuing on September 30, 2016, Administrative Settlement Agreement and Order on Consent for Remedial Design, CERCLA Docket No. 02-2016-2021, under which OCC is performing the OU2 remedial design; 2) entering into two separate cashout settlement agreements with parties not associated with the release or disposal into the River of any of the eight contaminants of concern identified for the LPRSA; and 3) retaining a third-party neutral who performed an allocation that assigned non-binding shares of responsibility to the private party PRPs and determined relative groupings, or tiers, corresponding to the private party PRPs' liability.

A Final Allocation Recommendation Report was issued in December 2020. EPA and the U.S. Department of Justice (DOJ) reviewed the Report and underlying information and identified two classes of parties: those whose share of liability is such that they would be appropriate for a cashout settlement, and those whose share of liability is large enough that they should participate in the performance and/or funding of the cleanups for OU2 and OU4 (hereinafter, "work parties").

In 2021, EPA and DOJ informed Pharmacia, Nokia and Public Service Electric & Gas Co. (PSE&G) that they, along with OCC, were identified as work parties. We encouraged them to communicate with each other about the performance of the remedial work. By this letter, EPA notifies PMC, Inc. (PMC) that it, too, has been identified as a work party. The United States offered PMC an opportunity to participate in a cashout settlement, but PMC declined the offer. EPA continues to encourage the work parties, including PMC, to discuss the funding and performance of the OU2 and OU4 remedies.

If the work parties reach an impasse in their discussions with each other regarding the funding and performance of work, EPA, through its Conflict Prevention and Resolution Center, may be able to offer alternative dispute resolution assistance to the parties, depending on circumstances and timing. You may contact Juan Fajardo of EPA at 212 637-3132 if you are interested in such assistance.

The Passaic Valley Sewerage Commission (PVSC) and the municipalities of Newark, East Newark, Harrison, and Kearny, New Jersey are also PRPs for the LPRSA. EPA and DOJ have been in discussions with PVSC and the municipalities for several years regarding their liability for the Site and how those parties could best contribute to the cleanup of the LPRSA. In addition, OCC has been involved in discussions with PVSC regarding the use of PVSC property for the siting and construction of an upland processing facility that is needed to implement the remedies for the LPRSA. While PVSC and the municipalities were not part of the allocation, EPA and DOJ have notified those parties that they should participate in the performance of the remedies selected for the LPRSA through the contribution of in-kind services.

**Notice of Consent Decree Negotiations**

By this letter, EPA wishes to determine whether the private parties listed in Attachment A are interested in fully financing and performing the remedial action (RA) for the remedy selected in the ROD for OU2 and the remedial design (RD) and remedial action (RA) for the remedy selected in the ROD for OU4. In addition, EPA wishes to determine precisely what in-kind services PVSC and the municipalities listed in Attachment A are willing to offer. If any party, or group of parties, is interested in fully financing and performing the OU2 RA and the OU4 RD/RA, such party or group of parties must submit a written "good faith offer" to EPA **on or before forty-five (45) calendar days** after the date of its receipt of this letter.

In order for a proposal by OCC, Pharmacia, Nokia, PSE&G, and PMC – either individually or jointly -- to be considered a "good faith offer," it must be consistent with the OU2 and OU4 RODs and must include the following elements:

1. a statement of your willingness to fully finance and/or perform the response work selected in and consistent with the OU2 and OU4 RODs and to negotiate a consent decree with the United States for the same;[1]
2. a demonstration of your technical capability to carry out the response work in the RODs, including identification of the firm(s) that may actually conduct the work or a description of the process you will use to select the firm(s);
3. a demonstration of your ability to finance the necessary response actions;
4. a statement of your willingness to reimburse EPA for costs incurred in overseeing your conduct of the response work; and
5. the name, address, and phone number of the individual(s) who will represent you in the negotiations.

[1] EPA would also consider entering into an administrative order on consent for the OU4 RD if the negotiations for the administrative order proceed in tandem with the negotiation of a consent decree for the OU2 RA and OU4 RA.

PVSC and the municipalities of Newark, East Newark, Harrison, and Kearny, NJ, while performing a public service of wastewater management, released wastewater into the Lower Passaic River through their combined sewer outfalls. PVSC and those four municipalities have offered to participate in the performance of the OU2 and OU4 remedies by providing in-kind services, including the use of PVSC property for the siting and construction of an upland processing facility for the dewatering of sediment removed from the river.

A joint offer from PVSC and the municipalities of Newark, East Newark, Harrison, and Kearny may be considered a "good faith offer" if the following elements are included:

1. Enumeration of a satisfactory set of in-kind services that PVSC and the municipalities are willing to provide, in support of the OU2 and OU4 remedies, and a statement of their willingness to negotiate a consent decree with the United States that encompasses the same; and

2. the name, address, and phone number of the individual(s) who will represent the municipalities in the negotiations.

A joint "good faith offer" from PVSC and the municipalities must be submitted in writing to EPA **on or before forty-five (45) calendar days** after the date of its receipt of this letter.

Any agreement to conduct a remedial action must be finalized in a judicial consent decree, pursuant to Section 122 of CERCLA, 42 U.S.C. § 9622. Depending on the responses we receive to this letter, EPA will provide you with a draft proposed consent decree and statement of work that will be based on the latest model RD/RA consent decree. The current version is available at: https://cfpub.epa.gov/compliance/models/view.cfm?model_ID=81.

On January 13, 2022, EPA Region 2 received a letter from OCC containing, among other things, a proposal to perform the RD and RA for OU4, with several conditions. On February 3, 2022, EPA and DOJ representatives met with representatives of OCC to discuss the proposal in OCC's January 13, 2022 letter. The United States has not accepted the terms of OCC's offer.

EPA's priority is implementation of the remedial actions for OU2 and OU4. Consistent with the above request for a good faith offer, we would like to begin negotiations in the coming weeks on a consent decree for the performance and funding of those remedies. Should EPA determine that such a good faith offer has not been submitted by the deadline referred to above, EPA may thereafter initiate a federally-funded remedial action at the Site, the costs for which you may be held liable under CERCLA. EPA may also take any enforcement action it deems necessary, including issuing one or more administrative order(s) under Section 106(a) of CERCLA, 42 U.S.C. § 9606(a),

to require you to carry out the remedial action selected in the OU2 ROD and/or the remedial design and remedial action for the interim remedy selected in the OU4 ROD.

Some or all of the costs associated with this notice may be covered by current or past insurance policies issued to you. Most insurance policies will require that you timely notify the carrier(s) of a claim against you. To evaluate whether you should notify your insurance carrier(s) of this demand, you may wish to review current and past policies, beginning with the date of your first contact with the Site, up to the present. Coverage depends on many factors, such as the language of the particular policy and state law.

In the event that an entity listed on Attachment A files for protection in a bankruptcy court, the entity must include the United States on behalf of EPA as creditor, because the United States has a potential claim against the entity. The United States reserves the right to file a proof of claim or application for reimbursement of administrative expenses.

**Response Requested**

Your response to this notice letter should be sent by electronic mail to:

Alice Yeh
Remedial Project Manager
Diamond Alkali Superfund Site, Operable Unit 2
Superfund and Emergency Management Division
U.S. Environmental Protection Agency, Region 2
Yeh.Alice@epa.gov

Diane Salkie
Remedial Project Manager
Diamond Alkali Superfund Site, Operable Unit 4
Superfund and Emergency Management Division
U.S. Environmental Protection Agency, Region 2
Salkie.Diane@epa.gov

with a copy to:

Juan M. Fajardo
Assistant Regional Counsel
New Jersey Superfund Branch
Office of Regional Counsel
U.S. Environmental Protection Agency, Region 2
Fajardo.Juan@epa.gov

Frances Zizila
Assistant Regional Counsel
New Jersey Superfund Branch
Office of Regional Counsel

U.S. Environmental Protection Agency, Region 2
Zizila.Frances@epa.gov

EPA has decided not to use the special notice procedures set forth in Section 122(e) of CERCLA, 42 U.S.C. § 9622(e), because EPA does not believe that those procedures would facilitate an agreement or expedite remedial action at the Site.

Please give these matters your immediate attention. If you have any questions regarding this letter, please contact Mr. Fajardo at 212-637-3132 or Ms. Zizila at 212-637-3135 or the email addresses above.

EPA hopes that we can have productive discussions with you during the coming months.

Sincerely,

ERIC WILSON Digitally signed by ERIC WILSON
Date: 2022.03.02 13:16:53
-05'00'

Eric J. Wilson
Deputy Director for Enforcement and
Homeland Security
Superfund and Emergency Management Division

Enclosure

**ATTACHMENT A**
**ADDRESSEES**

Occidental Chemical Corporation
Occidental Tower
5005 LBJ Freeway
Dallas, TX 75244
c/o Larry Silver, Esq.
Langsam Stevens Silver & Hollaender, LLP
1818 Market Street, Suite 2610
Philadelphia, PA 19103
215- 239-9023 (T)
lsilver@lssh-law.com

Pharmacia LLC
7000 Portage Road
Kalamazoo, MI 49001
c/o John F. Gullace, Esq.
Manko, Gold, Katcher & Fox, LLP
401 City Avenue, Suite 500
Bala Cynwd, PA 19004
484-430-2326(T)
jgullace@mgkflaw.com

Nokia of America Corporation
600-700 Mountain Avenue
New Providence, NJ 07974
c/o Michael D. Lichtenstein, Esq.
Lowenstein Sandler
1251 Avenue of the Americas
New York, NY 10020
973-597-2408 (T)
mlichtenstein@lowenstein.com

PMC, Inc.
12243 Branford Street
Sun Valley, CA 91352
c/o Craig S. Provorny
Herold Law, P.A.
25 Independence Boulevard, Suite 301
Warren, NJ 07059
908-647-1022 (T)
cprovorny@heroldlaw.com

Public Service Electric & Gas Company
80 Park Plaza
Newark, NJ 07102
c/o Agnes Antonian
Connell Foley
56 Livingston Avenue
Roseland, NJ 07068
973-535-0500 (T)
aantonian@connellfoley.com

Passaic Valley Sewerage Commission
Attn: Michael D. Witt, Esq.
General Counsel
600 Wilson Avenue
Newark, NJ 07105
mwitt@pvsc.com

Grant P. Gilezan, Esq.
Dykema Gossett PLLC
400 Renaissance Center
Detroit, MI 48243
ggilezan@Dykema.com

City of Newark
920 Broad Street
Newark, NJ 07102
c/o Joanne Vos, Esq.
Maraziti Falcon, LLP
150 John F. Kennedy Parkway
Short Hills, NJ 07078
jvos@mfhenlaw.com

Borough of East Newark
34 Sherman Avenue
East Newark, NJ 07029
c/o Neil Marotta, Esq.
Marotta & Garvey
3916 Bergenline Ave., Ste. 2200
Union City, NJ 07087
mgclawyers@aol.com

Town of Harrison
318 Harrison Avenue
Harrison, NJ 07029
c/o Michelle Spencer, Esq.
Castano Quigley
155 Passaic Avenue, Suite 340
Fairfield, NJ 07004
mspencer@cq-law.com

Town of Kearny
402 Kearny Avenue
Kearny, NJ 07032
c/o Michelle Spencer, Esq.
Castano Quigley
155 Passaic Avenue, Suite 340
Fairfield, NJ 07004
mspencer@cq-law.com